## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CAYMAN SECURITIES CLEARING
AND TRADING LTD; THE HURRY
FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

                                         CASE NO.:

       Plaintiffs,

vs.

CHRISTOPHER FRANKEL,

       Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Cayman Securities Clearing and Trading LTD, the Hurry Family Revocable Trust, Scottsdale Capital Advisors, and Alpine Securities Corporation, (collectively the "Plaintiffs"), sue Defendant, Christopher Frankel ("Defendant"), and allege:

## NATURE OF THIS ACTION

1.     This action arises from Defendant's unlawful misappropriation and use of confidential information and trade secrets obtained from the Plaintiffs to destroy their businesses, abscond with their clients, and unfairly compete with them.

## PARTIES, JURISDICTION, AND VENUE

2.     This is an action for declaratory relief, injunctive relief, and damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

3.      Plaintiff, Cayman Securities Clearing and Trading LTD ("CSCT"), is a limited company, organized and existing under the laws of the Cayman Islands with its principal place of business in the Cayman Islands.

4.      Plaintiff, the Hurry Family Revocable Trust (the "Hurry Trust"), is a Nevada trust, and its trustees are permanent citizens of Nevada and Arizona.

5.      Plaintiff, Scottsdale Capital Advisors Corporation ("Scottsdale"), is a corporation organized and existing under the laws of the State of Arizona, with its principal place of business in Maricopa County, Arizona.

6.      Plaintiff, Alpine Securities Corporation ("Alpine"), is a corporation organized and existing under the laws of the State of Utah, with its principal place of business in Salt Lake County, Utah.

7.      Defendant is an individual who resides in and is a permanent citizen of Hillsborough County, Florida.

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 18 U.S.C. § 1836(c), and 28 U.S.C. §1332(a)(1).

9.      This Court has personal jurisdiction over Defendant because Defendant resides in Florida, is engaged in business in Florida, is engaged in substantial and not isolated activities in Florida, and committed many of the tortious acts alleged herein in Florida.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District, and a substantial part of the events giving rise to the claims herein occurred in this district.

## **GENERAL ALLEGATIONS**

11.     CSCT, Scottsdale, and Alpine are each involved in the broker-dealer business. Scottsdale is full service broker-dealer focused on serving the OTC (over the counter) securities market.  Alpine is a registered broker-dealer that is an industry leader for clearing OTC stock. CSCT serves as a conduit through which foreign financial institutions deposit penny stocks at Scottsdale for resale in the U.S. securities market.   CSCT, Scottsdale, and Alpine were previously indirectly owned and/or controlled by the Hurry Trust.

12.     In 2015, Plaintiffs hired Defendant to help run their various broker-dealer businesses.  From approximately August 2015 through July 2018, Defendant served as CEO of Alpine, and from July 2018 through September 2018 was a consultant to Alpine.

13.     Prior to hiring Defendant, Plaintiffs were aware Defendant would be exposed to and entrusted with information that is commercially valuable to Plaintiffs and not generally known or readily ascertainable in the broker-dealer securities industry or the public at large, including *inter alia*, Plaintiffs' business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information of Plaintiffs and their clients.   Consequently, Plaintiffs and Defendant entered into a written Non-Disclosure Agreement ("NDA") to protect Plaintiffs' numerous trade secrets and confidential information.

14.     Attached hereto as **Exhibit 1** and incorporated herein by reference is a true and correct copy of the NDA dated June 22, 2015 between Defendant and each of the Plaintiffs.

15.     According to the NDA, it "shall be governed and construed in accordance with the laws applicable in the State of Arizona."

16.     As acknowledged in the NDA, Defendant was given access to information that is Plaintiffs' "sole property" "and highly confidential in nature."

17.     According to the NDA:

"Confidential Information" means any data or information that is proprietary to the [Plaintiffs] and not generally known to the public, whether in tangible or intangible form, whenever and however disclosed, including, but not limited to: (i) any marketing strategies, plans, financial information, or projections, operations, sales estimates, business plans and performance results relating to the past, present or future business activities of such party, its affiliates, subsidiaries and affiliated companies; (ii) plans for products or services, (iii) customer lists and account information; (iv) any scientific or technical information, invention, design, process, procedure, formula, improvement, technology or method; (v) any concepts, reports, data, know-how, works in-progress, designs, development tools, specifications, computer software, source code, object code, flow charts, databases, inventions, information and trade secrets; and (vi) any other information that should reasonably be recognized as confidential information of the [Plaintiffs].

18.     Pursuant to the NDA, Defendant agreed to "keep all Confidential Information strictly confidential by using a reasonable degree of care [and]… not disclose any Confidential Information received by [him] to any third parties."  Defendant further agreed "to use the Confidential Information solely in connection with the current or contemplated business relationship between the parties and not for any purpose other than as authorized by this Agreement without the prior written consent of an authorized representative of [Plaintiffs]."

19.     Beginning in or about June 2015, and continuing through September 2018, Defendant received confidential information from each of the Plaintiffs, including *inter alia*, their business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information of the Plaintiffs and their clients.

20.     Upon information and belief, after leaving Alpine, if not earlier, Defendant knowingly, willfully, and maliciously breached his obligations to Plaintiffs under the NDA and used confidential information obtained from Plaintiffs to solicit capital, establish banking

relations, recruit Plaintiffs' clients, and compete with Plaintiffs' businesses.  Among other things, Plaintiffs are informed and believe Defendant used the foregoing confidential information obtained from Plaintiffs to make a bid for a broker-dealer in Chicago.

21.     Pursuant to the NDA, Defendant acknowledged the unauthorized disclosure or use of confidential information could cause irreparable harm and significant injury to Plaintiffs. Defendant also agreed Plaintiffs have the right to seek and obtain injunctive relief to enforce the obligations under the NDA in addition to any other rights and remedies it may have.

22.     In addition to the damages caused by Defendant's misconduct, Plaintiffs have suffered and will continue to suffer irreparable harm absent the entry of an injunction, for which there is no adequate remedy at law.

23.     Plaintiffs have a substantial likelihood of success on the merits of their claims set forth below against Defendant.

24.     Plaintiffs have a clear legal right to the entry of an injunction under the NDA and pursuant to the Defend Trade Secrets Act, Florida's Uniform Trade Secrets Act, and Florida's Deceptive and Unfair Trade Practices Act.

25.     The public interest is served by enjoining Defendant's misconduct in violation of the NDA and Federal and Florida statutory law.

26.     All conditions precedent to the filing and maintenance of this action have been performed, have occurred, have been waived, and/or would be futile.

27.     Plaintiffs retained the undersigned attorneys to represent them in this action and are obligated to pay them a reasonable fee for their services.

## COUNT I:  BREACH OF CONTRACT

28.     Plaintiffs incorporate by reference paragraphs 1-27 as if fully restated herein.

29.     The NDA is a valid and enforceable contract between Plaintiffs and Defendant.

30.     Defendant materially breached the NDA by disclosing Confidential Information (as defined in the NDA) to third parties in breach of paragraph 2(a) of the NDA.  In addition, Defendant materially breached paragraph 2(b) of the NDA by using Confidential Information for his own benefit and not for the benefit of Plaintiffs.

31.     As a direct and proximate result of Defendant's breaches of the NDA, Plaintiffs each have suffered and will continue to suffer irreparable harm and economic damages, including but not limited to, actual damages, compensatory damages, and lost profits.

32.     Moreover, it was foreseeable that Plaintiffs would suffer damages if Defendant disclosed Confidential Information to third parties and/or used Confidential Information for his own benefit.

WHEREFORE, Plaintiffs, Cayman Securities Clearing and Trading LTD, the Hurry Family Revocable Trust, Scottsdale Capital Advisors, and Alpine Securities Corporation demand judgment against Defendant, Christopher Frankel, for actual, compensatory, and special damages, including lost profits, injunctive relief, reasonable attorneys' fees pursuant to Arizona Revised Statute § 12-341.01, interest, costs, and such further relief as the Court deems just and proper.

### COUNT II:  VIOLATION OF DEFEND TRADE SECRETS ACT

33.     Plaintiffs incorporate by reference paragraphs 1-27 as if fully restated herein.

34.     During the course of his relationship with Plaintiffs, Defendant had access to confidential financial, business, and economic information of independent economic value, including *inter alia*, Plaintiffs' business practices and methods, financial relationships and terms

of those relationships, client lists, pricing information, and private financial information concerning Plaintiffs and their clients (collectively, the "Trade Secrets").

35.     Plaintiffs lawfully owned the Trade Secrets.

36.     Plaintiffs took reasonable measures to safeguard their Trade Secrets by, among other things, requiring employees and consultants to enter into NDAs, restricting access to the Trade Secrets, and taking other security measures to protect their confidentiality.

37.     Plaintiffs derive independent economic value, actual and potential, from their Trade Secrets not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

38.     Defendant gained access to Plaintiffs' Trade Secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use.

39.     Without Plaintiffs' express or implied consent, Defendant misappropriated, disclosed, and used the Trade Secrets for his own benefit.

40.     At the time of Defendant's misappropriation, disclosure, and use of Plaintiffs' Trade Secrets, Defendant knew or had reason to know that his knowledge of the Trade Secrets was acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use.

41.     As a direct and proximate result of Defendant's misappropriation, Plaintiffs suffered and will continue to suffer economic damages.

42.     Pursuant to 18 U.S.C. § 1836, Plaintiffs are entitled to an injunction to prevent the actual or threatened misappropriation of their Trade Secrets and/or requiring affirmative actions to protect the Trade Secrets, an award of damages for the actual loss caused by Defendant's

misappropriation, damages for unjust enrichment caused by the misappropriation, and/or a reasonable royalty, as well as attorneys' fees and costs.

43.     Because Defendant willfully and maliciously misappropriated Plaintiffs' Trade Secrets, Plaintiffs also are entitled to exemplary damages.

WHEREFORE, Plaintiffs, Cayman Securities Clearing and Trading LTD, the Hurry Family Revocable Trust, Scottsdale Capital Advisors, and Alpine Securities Corporation demand judgment against Defendant, Christopher Frankel, for injunctive relief, compensation for actual damages and unjust enrichment, imposition of a reasonable royalty, exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C), reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D), interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT III:  VIOLATION OF FLORIDA UNIFORM TRADE SECRET ACT

44.     Plaintiffs incorporate by reference paragraphs 1-27 and 34 as if fully restated herein.

45.     Plaintiffs lawfully owned the Trade Secrets.

46.     Plaintiffs took reasonable measures to safeguard their Trade Secrets by, among other things, requiring employees and consultants to enter into NDAs, restricting access to the Trade Secrets, and taking other security measures to protect their confidentiality.

47.     Plaintiffs derive independent economic value, actual and potential, from their Trade Secrets not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

48.     Defendant gained access to Plaintiffs' Trade Secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use.

49.     Without Plaintiffs' express or implied consent, Defendant misappropriated, disclosed, and used the Trade Secrets for his own benefit.

50.     At the time of Defendant's misappropriation, disclosure, and use of Plaintiffs' Trade Secrets, Defendant knew or had reason to know that his knowledge of the Trade Secrets was acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use.

51.     As a direct and proximate result of Defendant's misappropriation, Plaintiffs suffered and will continue to suffer economic damages.

52.     Pursuant to Florida Statutes § 688.003-005, Plaintiffs are entitled to an injunction to prevent the actual or threatened misappropriation of their Trade Secrets and/or requiring affirmative acts to protect the Trade Secrets, and damages for the actual loss caused by Defendant's misappropriation and unjust enrichment caused by the misappropriation, and/or a reasonable royalty, as well as attorneys' fees and costs.

53.     Because Defendant willfully and maliciously misappropriated Plaintiffs' Trade Secrets, Plaintiffs also are entitled to recover exemplary damages.

WHEREFORE, Plaintiffs Cayman Securities Clearing and Trading LTD, the Hurry Family Revocable Trust, Scottsdale Capital Advisors, and Alpine Securities Corporation, demand judgment against Defendant, Christopher Frankel, for injunctive relief, compensation for all actual damages and unjust enrichment, imposition of a reasonable royalty, exemplary damages pursuant to § 688.004(2), reasonable attorneys' fees pursuant to § 688.005, interest, costs, and such further relief as the Court deems just and proper.

## COUNT IV:  VIOLATION OF FLORIDA DECEPTIVE
## AND UNFAIR TRADE PRACTICES ACT

54.     Plaintiffs incorporate by reference paragraphs 1-27 and Counts II and III as if fully restated herein.

55.     Pursuant to Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), unconscionable, unfair, and deceptive acts or practices in the conduct of trade or commerce are unlawful.  Fla. Stat. § 501.204(1).  In addition, the violation of any "law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" constitutes a *per se* violation of FDUTPA. Fla. Stat. § 501.203(3)(c).

56.     Anyone aggrieved by a violation of FDUTPA may bring an action for actual damages, injunctive relief, and a declaratory judgment.  Fla. Stat. § 501.211 (1)-(2).

57.     Defendant engaged in unfair methods of competition and deceptive and/or unfair business practices by using Plaintiffs' confidential information and Trade Secrets to solicit Plaintiffs' clients, establish relationships with their financial institutions and investors, and attempt to acquire a broker-dealer in Chicago.

58.     Defendant engaged in the foregoing acts to unfairly compete with Plaintiffs. Defendant is a competitor of Plaintiffs for a common pool of customers and clients, financial institutions, and investors in the broker-dealer business.

59.     Defendant's acts offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious.

60.     As a direct and proximate result of Defendant's actions, each Plaintiff has suffered irreparable harm and actual damages.

61.     Plaintiffs have been aggrieved by Defendant's unfair and deceptive acts and/or practices, which were committed in the conduct of commerce or trade.  Accordingly, pursuant to §§ 501.211 and 501.2105, Florida Statutes, Plaintiffs are entitled to a declaration that Defendant's acts violate FDUTPA, an injunction prohibiting Defendant's unlawful conduct, recovery of their actual damages, and an award of attorneys' fees and costs.

WHEREFORE, Plaintiffs, Cayman Securities Clearing and Trading LTD, the Hurry Family Revocable Trust, Scottsdale Capital Advisors, and Alpine Securities Corporation, demand judgment against Defendant, Christopher Frankel, for actual damages, injunctive relief, declaratory relief, interest, costs, and attorneys' fees under §§ 501.2105 and 501.211, *Fla. Stat.*, and such other and further relief as the Court deems just and proper.

## COUNT V:  COMMON LAW UNFAIR COMPETITION

62.     Plaintiffs incorporate by reference paragraphs 1-27 and 34-40 as if fully restated herein.

63.     Defendant knowingly and intentionally engaged in unfair and unlawful conduct.

64.     Defendant engaged in this unfair and unlawful conduct to obtain an unfair competitive advantage over Plaintiffs.

65.     As a direct and proximate result, Plaintiffs suffered, will continue to suffer, and are entitled to recover compensatory, actual, and special damages, specifically including lost profits, and/or are entitled to disgorgement of Defendant's profits.

WHEREFORE, Plaintiffs, Cayman Securities Clearing and Trading LTD, the Hurry Family Revocable Trust, Scottsdale Capital Advisors, and Alpine Securities Corporation demand judgment against Defendant, Christopher Frankel, for damages, including, but not limited to, actual, compensatory, and special damages, including lost profits and/or disgorgement of

Defendant's profits, plus interest, costs, and such other and further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on issues so triable.

Dated this 21st day of November 2018.

<div style="margin-left:40%">

/s/ Shane B. Vogt

Kenneth G. Turkel
Florida Bar No. 867233
Shane B. Vogt
Florida Bar No. 257620
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel:  (813) 443-2199
Fax: (813) 443-2193
E-mail:  kturkel@bajocuva.com
E-mail:  svogt@bajocuva.com

Charles J. Harder[1]
Jordan Susman
HARDER LLP
132 South Rodeo Drive, Suite 301
Beverly Hills, CA  90212-2406
Tel: (424) 203-1600
Fax: (424) 203-1601
E-mail:  charder@harderllp.com
E-mail:  jsusman@harderllp.com

*Attorneys for Plaintiffs*

</div>

---

[1] *Pro Hac Vice* applications for Charles Harder and Jordan Susman to be filed.