UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAYMAN SECURITIES CLEARING
AND TRADING LTD; THE HURRY
FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

    Plaintiffs,

v.                                                                      Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

    Defendant.
_____/

### Frankel's Answer, Defenses, and Counterclaim

The defendant, Christopher L. Frankel ("**Frankel**"), through counsel, answers the complaint and counterclaims against the plaintiffs, Cayman Securities Clearing and Trading Ltd. ("**Cayman Securities**"), The Hurry Family Revocable Trust ("**Hurry Trust**"), Scottsdale Capital Advisors Corporation ("**Scottsdale Capital**"), and Alpine Securities Corporation ("**Alpine Securities**"), as follows:

### Nature Of This Action

1.    This action arises from Defendant's unlawful misappropriation and use of confidential information and trade secrets obtained from the Plaintiffs to destroy their businesses, abscond with their clients, and unfairly compete with them.

**Response:**  Denied.

## Parties, Jurisdiction, and Venue

2. This is an action for declaratory relief, injunctive relief, and damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

**Response:** Admitted for purpose of jurisdiction. Otherwise denied.

3. Plaintiff, Cayman Securities Clearing and Trading LTD ("CSCT"), is a limited company, organized and existing under the laws of the Cayman Islands with its principal place of business in the Cayman Islands.

**Response:** Without knowledge and therefore denied.

4. Plaintiff, the Hurry Family Revocable Trust (the "Hurry Trust"), is a Nevada trust, and its trustees are permanent citizens of Nevada and Arizona.

**Response:** Without knowledge and therefore denied.

5. Plaintiff, Scottsdale Capital Advisors Corporation ("Scottsdale"), is a corporation organized and existing under the laws of the State of Arizona, with its principal place of business in Maricopa County, Arizona.

**Response:** Admitted.

6. Plaintiff, Alpine Securities Corporation ("Alpine"), is a corporation organized and existing under the laws of the State of Utah, with its principal place of business in Salt Lake County, Utah.

**Response:** Admitted.

7. Defendant is an individual who resides in and is a permanent citizen of Hillsborough County, Florida.

**Response:** Admitted.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 18

U.S.C. § 1836(c), and 28 U.S.C. §1332(a)(1).

**Response:** Admitted for purpose of jurisdiction. Otherwise denied.

9. This Court has personal jurisdiction over Defendant because Defendant resides in Florida, is engaged in business in Florida, is engaged in substantial and not isolated activities in Florida, and committed many of the tortious acts alleged herein in Florida.

**Response:** Admitted that the Court has personal jurisdiction over Frankel because he lives in the Middle District of Florida. Otherwise denied.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District, and a substantial part of the events giving rise to the claims herein occurred in this district.

**Response:** Admitted that venue is proper because Frankel lives in the Middle District of Florida. Otherwise denied.

### General Allegations

11. CSCT, Scottsdale, and Alpine are each involved in the broker-dealer business. Scottsdale is full service broker-dealer focused on serving the OTC (over the counter) securities market. Alpine is a registered broker-dealer that is an industry leader for clearing OTC stock. CSCT serves as a conduit through which foreign financial institutions deposit penny stocks at Scottsdale for resale in the U.S. securities market. CSCT, Scottsdale, and Alpine were previously indirectly owned and/or controlled by the Hurry Trust.

**Response:** Admitted that Alpine is a registered broker-dealer which clears over-the-counter stocks. Otherwise denied.

12. In 2015, Plaintiffs hired Defendant to help run their various broker-dealer businesses. From approximately August 2015 through July 2018, Defendant served as CEO of

Alpine, and from July 2018 through September 2018 was a consultant to Alpine.

>   **Response:**  Admitted that Alpine employed Frankel as CEO from approximately August 2015 through July 2018, and Alpine thereafter engaged Frankel as a consultant from approximately August 2018 through October 2018.  Otherwise denied.

13.     Prior to hiring Defendant, Plaintiffs were aware Defendant would be exposed to and entrusted with information that is commercially valuable to Plaintiffs and not generally known or readily ascertainable in the broker-dealer securities industry or the public at large, including *inter alia*, Plaintiffs' business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information of Plaintiffs and their clients. Consequently, Plaintiffs and Defendant entered into a written Non-Disclosure Agreement ("NDA") to protect Plaintiffs' numerous trade secrets and confidential information.

>   **Response:**  Admitted that Frankel entered into the written Non-Disclosure Agreement with Scottsdale Capital, Alpine Securities, and Cayman Securities on or about June 22, 2015, and that the Non-Disclosure Agreement is attached as Exhibit 1 to the Complaint and to this Answer, Defenses, and Counterclaim.  Otherwise denied.

14.     Attached hereto as **Exhibit 1** and incorporated herein by reference is a true and correct copy of the NDA dated June 22, 2015 between Defendant and each of the Plaintiffs.

>   **Response:**  Admitted that Frankel entered into the written Non-Disclosure Agreement with Scottsdale Capital, Alpine Securities, and Cayman Securities on or about June 22, 2015, and that the Non-Disclosure Agreement is attached as Exhibit 1 to the Complaint and to this Answer, Defenses, and Counterclaim.  Otherwise denied.

15.     According to the NDA, it "shall be governed and construed in accordance with the laws applicable in the State of Arizona."

**Response:**  Admitted.

16.  As acknowledged in the NDA, Defendant was given access to information that is Plaintiffs' "sole property" "and highly confidential in nature."

**Response:**  Denied.

17.  According to the NDA:

> "Confidential Information" means any data or information that is proprietary to the [Plaintiffs] and not generally known to the public, whether in tangible or intangible form, whenever and however disclosed, including, but not limited to: (i) any marketing strategies, plans, financial information, or projections, operations, sales estimates, business plans and performance results relating to the past, present or future business activities of such party, its affiliates, subsidiaries and affiliated companies; (ii) plans for products or services, (iii) customer lists and account information; (iv) any scientific or technical information, invention, design, process, procedure, formula, improvement, technology or method; (v) any concepts, reports, data, know-how, works in-progress, designs, development tools, specifications, computer software, source code, object code, flow charts, databases, inventions, information and trade secrets; and (vi) any other information that should reasonably be recognized as confidential information of the [Plaintiffs].

**Response:**  Admitted that the quoted portion of paragraph 1(a) of the Non-Disclosure Agreement so states.  Otherwise denied.

18.  Pursuant to the NDA, Defendant agreed to "keep all Confidential Information strictly confidential by using a reasonable degree of care [and]… not disclose any Confidential Information received by [him] to any third parties." Defendant further agreed "to use the Confidential Information solely in connection with the current or contemplated business relationship between the parties and not for any purpose other than as authorized by this Agreement without the prior written consent of an authorized representative of [Plaintiffs]."

**Response:**  Denied.

19.  Beginning in or about June 2015, and continuing through September 2018,

Defendant received confidential information from each of the Plaintiffs, including *inter alia*, their business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information of the Plaintiffs and their clients.

**Response:**  Denied.

20. Upon information and belief, after leaving Alpine, if not earlier, Defendant knowingly, willfully, and maliciously breached his obligations to Plaintiffs under the NDA and used confidential information obtained from Plaintiffs to solicit capital, establish banking relations, recruit Plaintiffs' clients, and compete with Plaintiffs' businesses. Among other things, Plaintiffs are informed and believe Defendant used the foregoing confidential information obtained from Plaintiffs to make a bid for a broker-dealer in Chicago.

**Response:**  Denied.

21. Pursuant to the NDA, Defendant acknowledged the unauthorized disclosure or use of confidential information could cause irreparable harm and significant injury to Plaintiffs. Defendant also agreed Plaintiffs have the right to seek and obtain injunctive relief to enforce the obligations under the NDA in addition to any other rights and remedies it may have.

**Response:**  Denied.

22. In addition to the damages caused by Defendant's misconduct, Plaintiffs have suffered and will continue to suffer irreparable harm absent the entry of an injunction, for which there is no adequate remedy at law.

**Response:**  Denied.

23. Plaintiffs have a substantial likelihood of success on the merits of their claims set forth below against Defendant.

**Response:**  Denied.

24. Plaintiffs have a clear legal right to the entry of an injunction under the NDA and pursuant to the Defend Trade Secrets Act, Florida's Uniform Trade Secrets Act, and Florida's Deceptive and Unfair Trade Practices Act.

**Response:** Denied.

25. The public interest is served by enjoining Defendant's misconduct in violation of the NDA and Federal and Florida statutory law.

**Response:** Denied.

26. All conditions precedent to the filing and maintenance of this action have been performed, have occurred, have been waived, and/or would be futile.

**Response:** Denied.

27. Plaintiffs retained the undersigned attorneys to represent them in this action and are obligated to pay them a reasonable fee for their services.

**Response:** Without knowledge and therefore denied.

### Count I: Breach of Contract

28. Plaintiffs incorporate by reference paragraphs 1-27 as if fully restated herein.

**Response:** Frankel adopts and incorporates his prior responses in response to this paragraph.

29. The NDA is a valid and enforceable contract between Plaintiffs and Defendant.

**Response:** Denied.

30. Defendant materially breached the NDA by disclosing Confidential Information (as defined in the NDA) to third parties in breach of paragraph 2(a) of the NDA. In addition, Defendant materially breached paragraph 2(b) of the NDA by using Confidential Information for his own benefit and not for the benefit of Plaintiffs.

**Response:** Denied.

31. As a direct and proximate result of Defendant's breaches of the NDA, Plaintiffs each have suffered and will continue to suffer irreparable harm and economic damages, including but not limited to, actual damages, compensatory damages, and lost profits.

**Response:** Denied.

32. Moreover, it was foreseeable that Plaintiffs would suffer damages if Defendant disclosed Confidential Information to third parties and/or used Confidential Information for his own benefit.

**Response:** Denied.

### Count II: Violation of Defend Trade Secrets Act

33. Plaintiffs incorporate by reference paragraphs 1-27 as if fully restated herein.

**Response:** Frankel adopts and incorporates his responses to paragraphs 1-27 in response to this paragraph.

34. During the course of his relationship with Plaintiffs, Defendant had access to confidential financial, business, and economic information of independent economic value, including *inter alia*, Plaintiffs' business practices and methods, financial relationships and terms of those relationships, client lists, pricing information, and private financial information concerning Plaintiffs and their clients (collectively, the "Trade Secrets").

**Response:** Denied.

35. Plaintiffs lawfully owned the Trade Secrets.

**Response:** Denied.

36. Plaintiffs took reasonable measures to safeguard their Trade Secrets by, among other things, requiring employees and consultants to enter into NDAs, restricting access to the

Trade Secrets, and taking other security measures to protect their confidentiality.

**Response:** Denied.

37. Plaintiffs derive independent economic value, actual and potential, from their Trade Secrets not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

**Response:** Denied.

38. Defendant gained access to Plaintiffs' Trade Secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use.

**Response:** Denied.

39. Without Plaintiffs' express or implied consent, Defendant misappropriated, disclosed, and used the Trade Secrets for his own benefit.

**Response:** Denied.

40. At the time of Defendant's misappropriation, disclosure, and use of Plaintiffs' Trade Secrets, Defendant knew or had reason to know that his knowledge of the Trade Secrets was acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use.

**Response:** Denied.

41. As a direct and proximate result of Defendant's misappropriation, Plaintiffs suffered and will continue to suffer economic damages.

**Response:** Denied.

42. Pursuant to 18 U.S.C. § 1836, Plaintiffs are entitled to an injunction to prevent the actual or threatened misappropriation of their Trade Secrets and/or requiring affirmative actions to protect the Trade Secrets, an award of damages for the actual loss caused by Defendant's

misappropriation, damages for unjust enrichment caused by the misappropriation, and/or a reasonable royalty, as well as attorneys' fees and costs.

**Response:** Denied.

43. Because Defendant willfully and maliciously misappropriated Plaintiffs' Trade Secrets, Plaintiffs also are entitled to exemplary damages.

**Response:** Denied.

### Count III: Violation of Florida Uniform Trade Secret Act

44. Plaintiffs incorporate by reference paragraphs 1-27 and 34 as if fully restated herein.

**Response:** Frankel adopts and incorporates his responses to paragraphs 1–27 and 34 in response to this paragraph.

45. Plaintiffs lawfully owned the Trade Secrets.

**Response:** Denied.

46. Plaintiffs took reasonable measures to safeguard their Trade Secrets by, among other things, requiring employees and consultants to enter into NDAs, restricting access to the Trade Secrets, and taking other security measures to protect their confidentiality.

**Response:** Denied.

47. Plaintiffs derive independent economic value, actual and potential, from their Trade Secrets not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

**Response:** Denied.

48. Defendant gained access to Plaintiffs' Trade Secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use.

**Response:** Denied.

49. Without Plaintiffs' express or implied consent, Defendant misappropriated, disclosed, and used the Trade Secrets for his own benefit.

**Response:** Denied.

50. At the time of Defendant's misappropriation, disclosure, and use of Plaintiffs' Trade Secrets, Defendant knew or had reason to know that his knowledge of the Trade Secrets was acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use.

**Response:** Denied.

51. As a direct and proximate result of Defendant's misappropriation, Plaintiffs suffered and will continue to suffer economic damages.

**Response:** Denied.

52. Pursuant to Florida Statutes § 688.003-005, Plaintiffs are entitled to an injunction to prevent the actual or threatened misappropriation of their Trade Secrets and/or requiring affirmative acts to protect the Trade Secrets, and damages for the actual loss caused by Defendant's misappropriation and unjust enrichment caused by the misappropriation, and/or a reasonable royalty, as well as attorneys' fees and costs.

**Response:** Denied.

53. Because Defendant willfully and maliciously misappropriated Plaintiffs' Trade Secrets, Plaintiffs also are entitled to recover exemplary damages.

**Response:** Denied.

### Count IV: Violation of Florida Deceptive and Unfair Trade Practices Act

54. Plaintiffs incorporate by reference paragraphs 1-27 and Counts II and III as if

fully restated herein.

**Response:** Frankel adopts and incorporates his responses to paragraphs 1–27 and Counts II and III in response to this paragraph.

55. Pursuant to Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), unconscionable, unfair, and deceptive acts or practices in the conduct of trade or commerce are unlawful. Fla. Stat. § 501.204(1). In addition, the violation of any "law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" constitutes a *per se* violation of FDUTPA. Fla. Stat. § 501.203(3)(c).

**Response:** Denied.

56. Anyone aggrieved by a violation of FDUTPA may bring an action for actual damages, injunctive relief, and a declaratory judgment. Fla. Stat. § 501.211 (1)-(2).

**Response:** Denied.

57. Defendant engaged in unfair methods of competition and deceptive and/or unfair business practices by using Plaintiffs' confidential information and Trade Secrets to solicit Plaintiffs' clients, establish relationships with their financial institutions and investors, and attempt to acquire a broker-dealer in Chicago.

**Response:** Denied.

58. Defendant engaged in the foregoing acts to unfairly compete with Plaintiffs. Defendant is a competitor of Plaintiffs for a common pool of customers and clients, financial institutions, and investors in the broker-dealer business.

**Response:** Denied.

59. Defendant's acts offend established public policy and are immoral, unethical,

oppressive, unscrupulous, and substantially injurious.

    **Response:** Denied.

    60. As a direct and proximate result of Defendant's actions, each Plaintiff has suffered irreparable harm and actual damages.

    **Response:** Denied.

    61. Plaintiffs have been aggrieved by Defendant's unfair and deceptive acts and/or practices, which were committed in the conduct of commerce or trade. Accordingly, pursuant to §§ 501.211 and 501.2105, Florida Statutes, Plaintiffs are entitled to a declaration that Defendant's acts violate FDUTPA, an injunction prohibiting Defendant's unlawful conduct, recovery of their actual damages, and an award of attorneys' fees and costs.

    **Response:** Denied.

### Count V: Common Law Unfair Competition

    62. Plaintiffs incorporate by reference paragraphs 1-27 and 34-40 as if fully restated herein.

    **Response:** Frankel adopts and incorporates his responses to paragraphs 1–27 and 34–40 in response to this paragraph.

    63. Defendant knowingly and intentionally engaged in unfair and unlawful conduct.

    **Response:** Denied.

    64. Defendant engaged in this unfair and unlawful conduct to obtain an unfair competitive advantage over Plaintiffs.

    **Response:** Denied.

    65. As a direct and proximate result, Plaintiffs suffered, will continue to suffer, and are entitled to recover compensatory, actual, and special damages, specifically including lost

profits, and/or are entitled to disgorgement of Defendant's profits.

**Response:** Denied.

### **Affirmative Defenses**

1. The complaint fails to state a cause of action by failing to make any factual allegations to support any of the claims alleged against Frankel. Specifically, the complaint fails to identify the confidential information which Frankel allegedly used and/or disclosed, fails to allege why the information was confidential, fails to allege any measures which the plaintiffs took to safeguard the confidential information, fails to identify any "third party" to whom Frankel allegedly disclosed such information, and fails to allege how Frankel allegedly used the confidential information for his own benefit.

2. The complaint fails to state a cause of action for common law unfair competition because Florida and Arizona recognize no such cause of action.

3. The Hurry Trust is not a party to the subject Non-Disclosure Agreement upon which the plaintiffs have based all of their claims. Indeed, the plaintiffs have alleged no factual information to support their conclusory allegation that they protected their confidential information, other than having Frankel sign the Non-Disclosure Agreement. The Hurry Trust apparently took no steps to protect its (unidentified) confidential information because the Hurry Trust chose not to join in the Non-Disclosure Agreement, or to have the Agreement include protection for the Hurry Trust's confidential information. The Hurry Trust has thus failed to state any causes of action.

4. The plaintiffs have failed to state any causes of action because they have not alleged that they designated any information as confidential, as required by the Non-Disclosure Agreement. The Non-Disclosure Agreement required the plaintiffs to designate information as

confidential. Paragraph 1(a) thus stated in pertinent part: "Confidential Information need not be novel, unique, patentable, copyrightable or constitute a trade secret in order to be *designated* Confidential Information." (Italics added). The plaintiffs have not alleged that they complied with paragraph 1(a) by having designated as confidential any information allegedly misappropriated by Frankel.

5. The plaintiffs failed to perform a condition precedent before suing Frankel by ignoring Frankel's timely response and offer to comply with their pre-suit demand letter. On November 9, 2018, plaintiffs' counsel sent Frankel the email and letter attached as Exhibits 2(A) and 2(B), demanding that Frankel "**cease and desist** from any and all further disclosure and/or usage of Confidential Information…." The plaintiffs demanded further that Frankel return "any and all documents, records, and/or copies thereof in your possession, custody, or control that contain any Confidential Information no later than the close of business on **November 26, 2018.** Please confirm in writing by **12 p.m. PST on November 12, 2018** that the foregoing demands will be, and are being, fully complied with."

Frankel timely responded to plaintiffs' counsel's demand at 10:40 am EST on November 12, 2018, and offered to comply with their demand. Frankel sent the email attached as Exhibit 3, in which he responded: "I have not knowingly committed a breach of any component of my agreement. If you are in possession of any specifics regarding the alleged breach, kindly reply and I will respond appropriately." Frankel wrote further: "I am willing to search for any Confidential documents that may be in my possession. Please let me know what documents you believe I have that are confidential and I will provide those to you. If you are not able to provide specifics pertaining to the documents you seek, simply let me know and I will

provide a copy of all documents and communications from your clients which are in my possession."

The plaintiffs ignored Frankel's timely offer to comply with their demand, opting instead to sue on November 21, 2018. The plaintiffs thus failed to fulfill a condition precedent to bringing this action by refusing to notify Frankel what the plaintiffs believed he had done to breach the Agreement, by failing to disclose to Frankel what documents he had that the plaintiffs considered to be confidential, and by ignoring his offer to return all of the plaintiffs' documents.

6. By their inequitable conduct and unclean hands alleged in the preceding defense, the plaintiffs forfeited any claim for injunctive or other equitable relief.

7. The Non-Disclosure Agreement is unenforceable under Arizona law because the Agreement purports to be unlimited in time and geographic scope.

8. Frankel did not misappropriate any of the plaintiffs' information, confidential or otherwise. The plaintiffs' lawsuit is unfounded, frivolous, and wholly unnecessary. In accordance with Fla. Stat. § 501.211 and Frankel's accompanying motion, the plaintiffs' should be required to post a substantial bond to reimburse Frankel for the damage to his reputation, his employment and business opportunities, and his attorney's fees, costs, and expenses caused by the plaintiffs' spurious and unsubstantiated allegations of depraved misconduct in the highly regulated securities industry in which financial information, fees, and commissions must be publicized, and in which honorable business reputation is essential for success.

9. Frankel is entitled to set-off and judgment against the plaintiffs for all damages, attorney's fees, costs, and litigation expenses awarded on his counterclaims.

WHEREFORE, Frankel requests that the complaint be dismissed; that Frankel be awarded his costs, litigation expenses, and attorney's fees under Arizona Revised Statute §12-

341.01, 18 USC § 1836(b)(3)(D), Fla. Stat. § 688.005, and Fla. Stat. §§ 501.2105 and 501.211; and that Frankel be awarded such other relief as the Court deems proper. Frankel further demands trial by jury.

**Frankel's Counterclaim Against Plaintiffs and Demand for Jury Trial**

Frankel countersues the plaintiffs, Cayman Securities, Hurry Trust, Scottsdale Capital, and Alpine Securities, for a declaratory judgment under 28 U.S.C. § 2201 as follows:

1. In their complaint, the plaintiffs have asserted spurious claims against Frankel for breach of contract, misappropriation of trade secrets under the Federal and Florida Trade Secret Acts, violation of Florida's Unfair and Deceptive Trade Practices Act, and common law unfair competition.

2. The plaintiffs have no evidence to support their spurious allegations.

3. Frankel has not breached the Non-Disclosure Agreement, has not misappropriated the plaintiffs' trade secrets and / or confidential information, has not violated Florida's Unfair and Deceptive Trade Practices Act, and has not competed unfairly against the plaintiffs.

4. The plaintiffs never designated any of their information as confidential, as required by the Non-Disclosure Agreement.

5. The plaintiffs have refused to disclose to Frankel what documents the plaintiffs consider to be confidential.

6. The plaintiffs ignored Frankel's offer to return all of their documents.

7. By their spurious allegations of depraved misconduct, the plaintiffs have damaged, and are continuing to damage, Frankel's reputation, and employment and business opportunities.

8. The plaintiffs never obtained, or even requested, a non-competition or non-solicitation agreement from Frankel.

9. Frankel is entitled to re-enter the securities business, to compete with the plaintiffs, and to solicit the plaintiffs' clients if Frankel wishes to do so.

10. The plaintiffs allegedly dispute Frankel's ability to re-enter the securities business, compete with the plaintiffs, and solicit the plaintiffs' clients. Through this lawsuit, the plaintiffs are maliciously prosecuting Frankel by unlawfully attempting to convert the Non-Disclosure Agreement into a non-compete or non-solicitation agreement and thereby to damage Frankel's reputation and to impair his employment and business opportunities.

11. Frankel is in doubt about his obligations under the Non-Disclosure Agreement and specifically what information, if any, is confidential under that Agreement.

12. Absent the declaratory relief sought by Frankel, there will be a substantial and continuing controversy with the plaintiffs regarding Frankel's obligations under the Non-Disclosure Agreement.

13. There is a real and immediate threat that Frankel's unresolved dispute with the plaintiffs regarding Frankel's obligations under the Non-Disclosure Agreement will damage Frankel's reputation and impair Frankel's employment and business opportunities.

14. An actual controversy exists for which a declaratory judgment is appropriate to restore Frankel's reputation, and to remove the cloud on his employment and business opportunities caused by the plaintiffs' malicious, abusive, and frivolous lawsuit.

15.     Frankel reserves his right to amend his counterclaim to sue for malicious prosecution (and all other available claims) upon termination of the plaintiffs' lawsuit in his favor.

WHEREFORE, Frankel requests a jury trial and entry of a judgment under 28 U.S.C. § 2201 against the plaintiffs:

(a) declaring Frankel's obligations under the Non-Disclosure Agreement and identifying the confidential information, if any, that Frankel is prohibited from using or disclosing;

(b) declaring that Frankel is entitled to compete with plaintiffs and solicit plaintiffs' clients and that such competition or solicitation is not a breach of the Non-Disclosure Agreement, is not a misappropriation of the plaintiffs' trade secrets or confidential information, is not a violation of Florida's Unfair and Deceptive Trade Practices Act, and is not unlawful, unfair, or dishonorable competition with the plaintiffs; and

(c) awarding Frankel the costs incurred in bringing this counterclaim and granting any further relief deemed appropriate to protect Frankel's rights and interests.

Dated: December 17, 2018

*/s/ David C. Banker*
David C. Banker (Fla. Bar No. 352977)
Harold D. Holder (Fla. Bar No. 118733)
BUSH ROSS, PA
1801 N. Highland Avenue
Tampa, Florida 33602
Phone: 813-224-9255
Fax:    813-223-9620
Primary: dbanker@bushross.com;
hholder@bushross.com
Secondary: aflowers@bushross.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on December 17, 2018, all counsel of record who consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/EFC participants:

Shane B. Vogt, Esquire
Kenneth G. Turkel, Esquire
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, FL  33602
kturkel@bajocuva.com
svogt@bajocuva.com

Charles J. Harder, Esquire
Jordan Susman, Esquire
HARDER LLP
132 South Rodeo Drive, Suite 301
Beverly Hills, CA 90212-2406
charder@harderllp.com
jsusman@harderllp.com
*Attorneys for Plaintiffs*

                                            By:  */s/ David C. Banker*