UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAYMAN SECURITIES CLEARING
AND TRADING LTD; THE HURRY
FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

      Plaintiffs,

v.                                      Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

      Defendant.

_____/

## FRANKEL'S MOTION FOR BOND UNDER § 501.211(3)

The defendant, Christopher L. Frankel, through counsel and under section 501.211(3), Florida Statutes (2018), requests entry of an order requiring the plaintiffs to post a bond to indemnify Frankel for his damages, including reasonable attorney's fees, costs, and expenses caused by the plaintiffs' frivolous lawsuit.

## I.  INTRODUCTION

The plaintiffs have alleged no facts to support their complaint because the plaintiffs have no facts to support their complaint, and Frankel did nothing wrong. Without evidence and without agreements restricting Frankel's ability to compete, the plaintiffs have unlawfully sued, making unsubstantiated, vexatious allegations that the Non-Disclosure Agreement attached to their complaint somehow prevents Frankel from competing and re-entering the securities business. The plaintiffs never requested or obtained from Frankel a non-compete or non-solicitation agreement, and Frankel has not misappropriated or disclosed any of the plaintiffs' confidential information.

1

The plaintiffs sent a cease-and-desist letter alleging that Frankel had breached the Non-Disclosure Agreement, without explaining why or how, and without identifying any confidential document or information that Frankel had misappropriated. Frankel asked the plaintiffs why they believed he had breached the Agreement and even offered to return all of their documents if the plaintiffs could not identify which documents they considered to be confidential.

Instead of responding to Frankel, the plaintiffs filed this action based on spurious, vague, and unsubstantiated allegations that Frankel "knowingly, willfully, and maliciously" had breached the Non-Disclosure Agreement and had violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) and other statutes. To provide FDUTPA defendants with an opportunity for redress for the damages caused by the harassment of frivolous actions, FDUTPA authorizes defendants to move to require plaintiffs to post a bond, before proceeding, to indemnify the defendants for damages, attorney's fees, and costs. Frankel requests that the plaintiffs be required to post such a bond before pursuing their lawsuit, and further requests that the Court conduct an expedited, half-day evidentiary hearing concerning Frankel's bond request.

## II.  FACTS

Frankel has worked in the securities business since 1989. Frankel Decl. ¶ 3. Frankel has worked in a management role in "clearing trades" for securities transactions since 1994. *Id.* ¶ 4. "Clearing" trades of micro-cap securities is the process by which micro-cap securities are transferred in compliance with federal securities laws and regulations. *Id.* ¶ 5. "Clearing trades" for securities transactions has long been a standard process widely known and commonly utilized in the securities business. *Id.* ¶ 6. The process for "clearing trades" is not confidential or a trade secret. *Id.*

From June 5, 2009 through July 24, 2015, non-party Legent/COR Clearing employed Frankel as its CEO. *Id.* ¶ 7. Legent/COR was one of plaintiff Alpine Securities' chief

2

competitors, until September 28, 2018, in the business of clearing trades of micro-cap securities. *Id.*

As CEO of Legent/COR, Frankel and his colleagues co-authored a comprehensive guidebook on clearing trades of micro-cap securities in 2009. *Id.* ¶ 8; Ex. 1.

On August 4, 2015, plaintiff Alpine Securities Corporation hired Frankel as its CEO; Alpine Securities employed Frankel as its CEO until August 1, 2018. *Id.* ¶ 9. Frankel believes that Alpine Securities hired him as CEO based on his extensive experience in the securities business and particularly his experience with clearing trades of micro-cap securities. *Id.* ¶ 10.

In late July 2018, Alpine Securities effectively terminated Frankel's employment by proposing to reduce his annual salary by 90%. *Id.* ¶ 11. Alpine Securities thereafter engaged Frankel as a non-exclusive consultant for $2,500 per month from approximately August 2, 2018 through October 31, 2018. *Id.* ¶ 12.

Alpine Securities is an SEC regulated broker-dealer and publishes its financial statements, fee schedules, commission schedules, and Non-DTC Eligible Securities Policy on its web site and other public websites including that of The Securities Exchange Commission. *Id.* ¶ 23. The plaintiff, Scottsdale Capital Advisors Corporation, like Alpine Securities, is an SEC regulated broker-dealer which also publishes its financial statements, fee schedules, and commission schedules on public websites. *Id.*

Cayman Securities Clearing and Trading Ltd., The Hurry Family Revocable Trust, or Scottsdale Capital Advisors Corporation never employed Frankel or engaged him as a consultant. *Id.* ¶ 17.

None of the plaintiffs in this case ever asked Frankel to enter into a non-compete agreement, and Frankel never entered into a non-compete or any other agreement that prohibits him from competing with Alpine Securities or the other plaintiffs. *Id.* ¶ 13.

None of the plaintiffs in this case ever asked Frankel to enter into a non-solicitation agreement, and Frankel never entered into a non-solicitation or any other agreement that prohibits him from soliciting any clients of Alpine Securities or the other plaintiffs. *Id.* ¶ 14.

Frankel knew and worked with most of Alpine Securities' largest clients (based on commissions and fees), or their beneficial owners, while working for prior employers, Sterne, Agee & Leach (July 1994 through June 2006) and Legent/COR (June 2009 through July 2015), before Alpine Securities employed Frankel as its CEO (August 2015 through August 1, 2018). *Id.* ¶ 15.

After Frankel's employment with Alpine Securities ended, a client—with whom Frankel had worked at Legent/COR—contacted Frankel about an opportunity to buy a broker-dealer in Chicago. *Id.* ¶ 16. Frankel did not know about this opportunity until this client of Legent/COR brought the opportunity to Frankel's attention. *Id.* Frankel did not learn of the opportunity through any confidential information of the plaintiffs. *Id.*

On November 9, 2018, counsel for the plaintiffs sent Frankel a cease-and-desist email / letter vaguely alleging "numerous material breaches of the [Non-Disclosure Agreement]" by "disclosing Confidential Information to third parties and using Confidential Information in connection with a competing business." *Id.* ¶ 18; Ex. 2. The plaintiffs demanded that Frankel cease and desist from "any and all further disclosure and/or usage of Confidential Information." *Id.* The plaintiffs also demanded that Frankel return "any and all documents, records, and/or copies thereof in your possession, custody, or control that contain any Confidential Information."

*Id.* The plaintiffs did not identify a single instance of wrongful disclosure or misuse of any confidential information. *See id.* Nor did the plaintiffs identify a single document containing confidential information that Frankel should return.

On November 12, 2018, Frankel sent a timely email response to the demand, asking why the plaintiffs believed he had breached the agreement and offering to return any documents that the plaintiffs considered to be confidential. Frankel Decl. Ex. 3. Frankel explained that he had not knowingly breached the agreement, and Frankel asked: "If you are in possession of any specifics regarding the alleged breach, kindly reply and I will respond appropriately." *Id.*

Frankel also offered to comply with the plaintiffs' demand for return of Confidential Information. In the same email to the plaintiffs' counsel, Frankel wrote:

> I am willing to search for any Confidential documents that may be in my possession. Please let me know what documents you believe I have that are confidential and I will provide those to you. If you are not able to provide specifics pertaining to the documents you seek, simply let me know and I will provide a copy of all documents and communication from your clients which are in my possession.

*Id.*

Counsel for the plaintiffs did not respond to Frankel's November 12 email, and instead sued him on November 21, 2018. In their complaint, the plaintiffs alleged no facts to support any breach of the Non-Disclosure Agreement; the plaintiffs identified no confidential information which Frankel had allegedly misused or disclosed. The complaint instead asserted conclusory claims for breach of the Non-Disclosure Agreement (Count I); violations of the Defend Trade Secrets Act (Count II), the Florida Uniform Trade Secret Act (Count III), and the Florida Deceptive and Unfair Trade Practices Act (Count IV); and common law unfair competition (Count V).[1]

---

[1] This Motion summarizes, but does not admit, the plaintiffs' allegations.

The plaintiffs vaguely alleged that Frankel "received confidential information from each of the Plaintiffs, including *inter alia*, their business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information of the Plaintiffs and their clients," Compl. ¶ 19, without identifying any information or documents which Frankel had wrongfully used or disclosed, how he had misused the information or documents, or to whom he had wrongfully disclosed the information or documents.

The plaintiffs alleged that Frankel somehow had "used the foregoing [unspecified] confidential information obtained from Plaintiffs to make a bid for a broker-dealer in Chicago." *Id.* ¶ 20. The plaintiffs alleged that Frankel somehow had "used [unspecified] confidential information obtained from Plaintiffs to solicit capital, establish banking relations, recruit Plaintiffs' clients, and compete with Plaintiffs' business." *See id.*

Frankel did none of these things. Frankel did not learn of the opportunity to buy the broker-dealer through any confidential information of the plaintiffs. Frankel Decl. ¶ 16. And, of course, the Non-Disclosure Agreement does not prohibit Frankel from buying a broker-dealer or restrict his ability to work in the securities business. To the best of Frankel's knowledge, he has no documents which the plaintiffs have marked or designated as confidential. *Id.* ¶ 21.

Frankel did not use any confidential information or trade secrets of the plaintiffs to make a bid for a broker-dealer in Chicago, as alleged in the plaintiffs' complaint. *Id.* ¶ 24.

Frankel did not use any confidential information or trade secrets of the plaintiffs to solicit capital, establish banking relations, recruit plaintiffs' clients, or compete with the plaintiffs' businesses, as alleged in the plaintiffs' complaint. *Id.* ¶ 25.

Frankel is free to re-enter the securities business, to compete with Alpine Securities and the other plaintiffs, and to solicit the clients of the Alpine Securities and the other plaintiffs, if

Frankel wishes to do so. Frankel did not agree to restrict his ability to compete or to solicit clients. *Id.* ¶ 26.

John Joseph Hurry, who controls the plaintiffs, and plaintiff Scottsdale Capital, have filed vexatious, unfounded lawsuits in the past, apparently to try to chill or forestall a disciplinary investigation by the National Adjudicatory Council of the Financial Industry Regulatory Authority ("FINRA"). *See, e.g.*, Req. Judic. Not. Exs. 1–3. FINRA investigated and ultimately barred Hurry from participating in the securities markets regulated by FINRA. Req. Judic. Not. Ex. 1. The Adjudicatory Council concluded that "Hurry knowingly facilitated the evasion of federal securities laws enacted to protect investors and, in doing so, made millions of dollars"; that "Hurry's misconduct was purposeful, egregious, and antithetical to the underpinnings of securities regulation as a whole"; and that "Hurry presents a threat to investors and the integrity of the securities markets." *Id.* at 101–02.

Hurry and Scottsdale Capital sued a publication and author (which had published information about FINRA's investigation) for defamation in the United States District Court for New Hampshire. Req. Judic. Not. Ex. 2. Hurry and Scottsdale Capital also sued FINRA for defamation in the United Stated District Court in Arizona. Req. Judic. Not. Ex. 3.

The New Hampshire District Court described Hurry and Scottsdale Capital as having "a history of serial litigation invoking these [defamation] claims." Req. Judic. Not. Ex. 2 at 20. Hurry and Scottsdale Capital had initially sued the publication and author in New York, but withdrew the lawsuit as the publication and author were preparing to file their motion to dismiss. *Id.* at 21. Hurry and Scottsdale re-filed their lawsuit in New Hampshire, not because the lawsuit or defendants had any connection with New Hampshire, but because New Hampshire's statute of limitations for defamation had not yet expired. *Id.* at 2223, 22 n.36. The statutes of limitation in

other states, with personal jurisdiction over the publication and author, had expired. *Id.* The New Hampshire District Court dismissed the New Hampshire lawsuit for lack of personal jurisdiction. *Id.* at 24. Hurry and Scottsdale Capital thus displayed in their New Hampshire lawsuit their disregard for personal jurisdiction requirements. *See id.* at 21–24.

Hurry and Scottsdale Capital displayed in their lawsuit against FINRA their willingness to sue without evidence to support their lawsuit. Req. Judic. Not. Ex. 3 at 7–10. The Arizona District Court thus granted summary judgment for FINRA because Hurry and Scottsdale could offer no evidence to support their claims that FINRA had defamed or cast Hurry and Scottsdale in a false light. *Id.*

The plaintiffs' lawsuit against Frankel, like the prior defamation suits against FINRA and the publication and author, is vexatious and unfounded. FUDUTPA authorizes issuance of a bond under such circumstances.

### III.  FRANKEL'S ENTITLEMENT TO A BOND

**A.     The Florida Deceptive and Unfair Trade Practices Act provides for a bond to protect defendants against damages caused by frivolous allegations of wrongdoing.**

In an action that alleges that the defendant violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), the court may require the plaintiff to post a bond if the defendant presents evidence that requiring a bond is necessary because the action is frivolous. § 501.211(3), Fla. Stat.; *Hamilton v. Palm Chevrolet-Oldsmobile, Inc.*, 366 So. 2d 1233, 1234–35 (Fla. 2d DCA 1979). FDUTPA provides:

> In any action brought under this section, upon motion of the party against whom such action is filed alleging that the action is frivolous, without legal or factual merit, or brought for the purpose of harassment, the court may, after hearing evidence as to the necessity therefor, require the party instituting the action to post a bond in the amount which the court finds reasonable to indemnify the defendant for any damages incurred, including reasonable attorney's fees. This subsection shall not apply to any action initiated by the enforcing authority.

§ 501.211(3), Fla. Stat.

FDUTPA bonds provide redress for damages caused by harassment from a frivolous action. *Hamilton*, 366 So. 2d at 1234–35. If the defendant presents evidence that the action lacks merit, then the plaintiff must present evidence that refutes what the defendant has presented. *Sanborn v. Jagen Pty. Ltd.,* Case No. 8:10-cv-142, 2010 WL 1730756, *2 (M.D. Fla. 2010) (Moody, J.). If it is apparent to the court that the action lacks merit and was asserted to harass the defendant, then the court may require the plaintiff to post a bond. *See Clipper Marine, Ltd. v. Marlow-Hunter, LLC*, 8:14-cv-1559, 2014 WL 7178105, *5 (M.D. Fla. 2014) (Covington, J.).

The amount of the bond "should not exceed the amount of damages the defendants might legally be able to recover from the plaintiffs should the plaintiffs lose." *Hamilton*, 366 So. 2d at 1234–35; *e.g.*, *Sanborn*, 2010 WL 1730756, *2 (setting evidentiary hearing on appropriateness and amount of bond).

**B.    A bond is necessary to protect Frankel against the harassment of this frivolous action.**

The plaintiffs are controlled by John Joseph Hurry, who has a history of evading securities regulations and filing frivolous lawsuits. *See* Req. Judic. Not. Exs. 1–3. That pattern of misconduct continues in this action, which has no merit but was instead filed to try to prevent Frankel from competing in the securities markets. The plaintiffs have no right to prevent Frankel from competing, and this frivolous action is damaging Frankel's reputation and employment and business opportunities. It is also causing Frankel to incur substantial attorney's fees.

The plaintiffs have alleged no facts to support their allegations because the plaintiffs have no evidence to support their claims. In accordance with section 501.211(3), Florida Statutes, this Court should conduct an expedited evidentiary hearing requiring the plaintiffs to present the evidence upon which they have based their allegations. *See Sanborn,* 2010 WL 1730756, *2. If

the plaintiffs cannot present such evidence, then the plaintiffs should be required to post a bond to indemnify Frankel for the damages that he will be able to recover from the plaintiffs if he prevails in this action. *See Hamilton*, 366 So. 2d at 1234–35.

## IV.  CONCLUSION

Frankel requests entry of an order setting an expedited, half-day evidentiary hearing on the appropriateness and amount of a bond to indemnify Frankel for any damages incurred, including reasonable attorney fees, from this frivolous action filed by the plaintiffs.

## <u>LOCAL RULE 3.01(G) CERTIFICATION</u>

The undersigned counsel certifies that counsel for the defendant has conferred with counsel for the plaintiffs, and the plaintiffs have not agreed to the relief requested.

Dated: December 17, 2018           By:   */s/ David C. Banker*
                                       David C. Banker (Fla. Bar No. 352977)
                                       Harold D. Holder (Fla. Bar No. 118733)
                                       BUSH ROSS, PA
                                       1801 N. Highland Avenue
                                       Tampa, Florida 33602
                                       Phone: 813-224-9255
                                       Fax:    813-223-9620
                                       Primary: dbanker@bushross.com;
                                       hholder@bushross.com
                                       Secondary: aflowers@bushross.com
                                       *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 17, 2018, all counsel of record who consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/EFC participants:

Shane B. Vogt, Esquire
Kenneth G. Turkel, Esquire
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, FL  33602
kturkel@bajocuva.com
svogt@bajocuva.com

Charles J. Harder, Esquire
Jordan Susman, Esquire
HARDER LLP
132 South Rodeo Drive, Suite 301
Beverly Hills, CA 90212-2406
charder@harderllp.com
jsusman@harderllp.com
*Attorneys for Plaintiffs*

By:  */s/ David C. Banker*_____