UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAYMAN SECURITIES CLEARING
AND TRADING LTD; THE HURRY
FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

    Plaintiffs,

v.                                  Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

    Defendant.
_____/

## DECLARATION OF CHRISTOPHER FRANKEL

    Under 28 U.S.C. § 1746, I, Christopher L. Frankel, declare that the following information is true:

    1.    I am more than 18 years old.

    2.    I have personal knowledge and am otherwise competent to testify regarding the information in this Declaration. I believe to be true my statement of belief in paragraph 10.

    3.    I have worked in the securities business since 1989.

    4.    I have been in a management role in "clearing trades" for securities transactions since 1994.

    5.    "Clearing" trades of micro-cap securities is the process by which micro-cap securities are transferred in compliance with federal securities laws and regulations.

    6.    "Clearing trades" for securities transactions has long been a standard process widely known and commonly utilized in the securities business. The process for "clearing trades" is not confidential or a trade secret.

1

7. From June 5, 2009 through July 24, 2015, Legent/COR Clearing employed me as its CEO. Legent/COR was one of Alpine Securities' chief competitors, until September 28, 2018, in the business of clearing trades of micro-cap securities.

8. As CEO of Legent/COR, colleagues and I co-authored a comprehensive guidebook on clearing trades of micro-cap securities in 2009. The 2013 version of that guidebook is attached as **Exhibit 1**.

9. On August 4, 2015, Alpine Securities Corporation hired me as its CEO; Alpine Securities employed me as its CEO until August 1, 2018.

10. I believe that Alpine Securities hired me as CEO based on my extensive experience in the securities business and particularly my experience with clearing trades of micro-cap securities

11. In late July 2018, Alpine Securities effectively terminated my employment by proposing to reduce my annual salary by 90%.

12. Alpine Securities thereafter engaged me as a non-exclusive consultant for $2,500 per month from approximately August 2, 2018 through October 31, 2018.

13. None of the plaintiffs in this case ever asked me to enter into a non-compete agreement, and I never entered into a non-compete or any other agreement that prohibits me from competing with Alpine Securities or the other plaintiffs.

14. None of the plaintiffs in this case ever asked me to enter into a non-solicitation agreement, and I never entered into a non-solicitation or any other agreement that prohibits me from soliciting any clients of Alpine Securities or the other plaintiffs.

15. I knew and worked with most of Alpine Securities' largest clients (based on commissions and fees), or their beneficial owners, while working for prior employers, Sterne,

Agee & Leach (July 1994 through June 2006) and Legent/COR (June 2009 through July 2015) before Alpine Securities employed me as its CEO (August 2015 through August 1, 2018).

16. After my employment with Alpine Securities ended, a client—with whom I had worked at Legent/COR—contacted me about an opportunity to buy a broker-dealer in Chicago. I did not know about this opportunity until this client of Legent/COR brought the opportunity to my attention. I did not learn of the opportunity through any confidential information of the plaintiffs.

17. Cayman Securities Clearing and Trading Ltd., The Hurry Family Revocable Trust, or Scottsdale Capital Advisors Corporation never employed me or engaged me as a consultant.

18. Attached as **Exhibit 2** is a copy of the cease-and-desist letter that I received on Friday, November 9, 2018, from counsel for the plaintiffs in this case.

19. Attached as **Exhibit 3** is a copy of the email that I sent on Monday, November 12, 2018, to counsel for the plaintiffs in this case.

20. Counsel for the plaintiffs did not respond to my November 12 email, and instead sued me on November 21, 2018.

21. To the best of my knowledge, I have no documents which the plaintiffs have marked or designated as confidential.

22. Alpine Securities and the other plaintiffs have never told me what documents or information they consider to be confidential. Indeed, the plaintiffs' lawyer declined to respond to my November 12 email asking him to tell me what documents the plaintiffs considered to be confidential, or alternatively, offering to return all of the plaintiffs' documents, if the plaintiffs could not identify what documents they considered to be confidential.

23. Alpine Securities is an SEC regulated broker-dealer and publishes its financial statements, fee schedules, commission schedules, and its Non-DTC Eligible Securities Policy on its web site and other public websites including that of The Securities Exchange Commission. The plaintiff, Scottsdale Capital Advisors Corporation, like Alpine Securities, is an SEC regulated broker-dealer which also publishes its financial statements, fee schedules, and commission schedules on public websites.

24. I did not use any confidential information or trade secrets of the plaintiffs to make a bid for a broker-dealer in Chicago, as alleged in the plaintiffs' complaint.

25. I did not use any confidential information or trade secrets of the plaintiffs to solicit capital, establish banking relations, recruit plaintiffs' clients, or compete with the plaintiffs' businesses, as alleged in the plaintiffs' complaint.

26. I am free to re-enter the securities business, to compete with Alpine Securities and the other plaintiffs, and to solicit the clients of the Alpine Securities and the other plaintiffs, if I wish to do so. I did not agree to restrict my ability to do these things.

I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on December 17, 2018.

_____
CHRISTOPHER L. FRANKEL