UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAYMAN SECURITIES CLEARING
AND TRADING LTD., THE HURRY
FAMILY REVOCABLE TRUST,
SCOTTSDALE CAPITAL ADVISORS
CORPORATION, and ALPINE
SECURITIES CORPORATION,

    Plaintiffs,

v.                          Case No. 8:18-cv-2869-T-33CPT

CHRISTOPHER FRANKEL,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Christopher Frankel's Motion for Bond Under Section 501.211(3) and Request for Oral Argument and Evidentiary Hearing (Doc. ## 16, 17), filed on December 17, 2018. Plaintiffs Cayman Securities Clearing and Trading Ltd., Scottsdale Capital Advisors, Alpine Securities Corporation, and the Hurry Family Revocable Trust responded in opposition on January 10, 2019. (Doc. # 24). For the reasons that follow, the Motion is denied.

**I.**   **Background**

Cayman, Scottsdale, and Alpine are involved in the broker-dealer business, and "were previously indirectly owned

1

and/or controlled by the Hurry Trust." (Doc. # 1 at ¶ 11). Frankel was Alpine's Chief Executive Officer from August of 2015 until July of 2018. (Id. at ¶ 12). Then, Frankel served as a consultant to Alpine from July of 2018 until September of 2018. (Id.). As part of this business relationship, Frankel was required to sign a nondisclosure agreement because he was entrusted with commercially valuable information, such as Plaintiffs' business practices, client lists, pricing information, and private financial information. (Id. at ¶ 13).

According to the Complaint, after the parties' business relationship terminated, Frankel breached the agreement by using confidential information and trade secrets to, among other things, attempt to acquire a broker-dealer in Chicago. (Id.). Consequently, on November 21, 2018, Plaintiffs initiated this action against Frankel for breach of contract and common law unfair competition, as well as for violations of the Defend Trade Secrets Act, Florida's Uniform Trade Secrets Act, and Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). (Id. at 5-11).

On December 17, 2018, Frankel filed his Answer and the instant Motion for Bond Under Section 501.211(3), which was accompanied by a Request for Oral Argument and Evidentiary

2

Hearing. (Doc. ## 16, 17). Plaintiffs filed a response on January 10, 2019, (Doc. # 24), and the Motion is ripe for review.

**II. Analysis**

Courts may require a party instituting a FDUTPA action to post a bond. Specifically, Section 501.211(3), Florida Statues, provides:

> In any action brought under this section, upon motion of the party against whom such action is filed alleging that the action is frivolous, without legal or factual merit, or brought for the purpose of harassment, the court may, after hearing evidence as to the necessity therefor, require the party instituting the action to post a bond in the amount which the court finds reasonable to indemnify the defendant for any damages incurred, including reasonable attorney's fees. This subsection shall not apply to any action initiated by the enforcing authority.

Fla. Stat. § 501.211(3).

Therefore, to demonstrate the necessity of a bond, the defendant must provide evidence showing the action is frivolous, for the purpose of harassment, or otherwise without merit. Id.; ICON Health & Fitness, Inc. v. IFITNESS, Inc., No. 12-20125-CIV-MORENO, 2012 U.S. Dist. LEXIS 46830, at *2 (S.D. Fla. Apr. 2, 2012). If the plaintiff fails to refute the evidence presented, the Court will conduct an evidentiary hearing on the merits of the action to determine

the appropriateness and amount of a bond. See Sanborn v. Jagen Pty. Ltd., No. 8:10-cv-142-T-30MAP, 2010 WL 1730756, at *2 (M.D. Fla. Apr. 28, 2010) (holding bond hearing was necessary after the plaintiff failed to refute the defendant's evidence that the FDUPTA claim was frivolous). Thereafter, if it is apparent the action lacks merit, the Court may require the plaintiff to post a bond. Hamilton v. Palm Chevrolet-Oldsmobile, Inc., 366 So. 2d 1233, 1234-35 (Fla. 2nd DCA 1979). "[T]he decision of whether a plaintiff should be required to post a bond is within the trial court's discretion . . . ." Mukamal v. Bakes, No. 07-20793-CIV-GOLD/McALILEY, 2008 WL 11406180, at *3 (S.D. Fla. Sept. 11, 2008).

Here, Frankel avers this action has no merit, but instead was filed to prevent him from competing in the securities markets, even though Plaintiffs have no right to prevent him from competing. (Doc. # 16 at 9). Frankel supports this argument with his own affidavit, a cease and desist letter sent by Plaintiffs' counsel demanding Frankel stop using Plaintiffs' confidential information, and Frankel's response to the letter, in which Frankel states he will return any confidential documents in his possession. (Doc. ## 16-1, 16-4, 16-5). Accordingly, Frankel contends a bond is necessary to protect him against the harassment of this action because

4

it is damaging his reputation and business opportunities, as well as causing him to incur substantial attorney's fees. (Id.). The Court disagrees.

First, the evidence submitted to support Frankel's Motion does not establish that Plaintiffs' FDUTPA claim is meritless or asserted to harass Frankel. Specifically, Frankel's affidavit states, among other things, that he did not enter noncompete or nonsolicitation agreements with Plaintiffs. (Doc. # 16-1 at ¶¶ 13-14). But Plaintiffs' FDUTPA claim is based on Frankel's alleged use of confidential information and trade secrets. (Doc. # 1 at ¶ 57). And the use of another's confidential information or trade secrets can violate the FDUTPA. See, e.g., Furmanite Am., Inc. v. T.D. Williamson, Inc., 506 F. Supp. 2d 1134, 1146-47 (M.D. Fla. 2007) (holding defendant's alleged misappropriation of plaintiff's confidential information and trade secrets would constitute unlawful and unfair acts under the FDUTPA). Therefore, even if Frankel never entered noncompete or nonsolicitation agreements with Plaintiffs, it is still possible he could have violated the FDUTPA if he used Plaintiffs' confidential information or trade secrets.

Additionally, the affidavit further states that Frankel did not learn about the broker-dealer opportunity in Chicago

from Plaintiffs' confidential information. (Doc. # 16-1 at ¶ 16). Yet all this establishes is that there is a factual dispute as to how Frankel discovered the opportunity. It does not, however, indicate that the FDUTPA claim is meritless. Similarly, the cease and desist letter sent by Plaintiffs' counsel and Frankel's response evidence only that there is a factual dispute regarding the use of confidential information. This factual dispute will be parsed out through discovery, which remains ongoing.

Second, Plaintiffs have provided evidence that refutes the evidence offered by Frankel. In particular, the affidavit of John Hurry states that Frankel was using Plaintiffs' confidential information and trade secrets for the benefit of Frankel's new business ventures. (Doc. # 24-1 at ¶ 7). Third, in addition to the FDUTPA claim, the Complaint contains multiple federal and state law claims. Therefore, the Court will not attempt to single out the amount of Frankel's purported damages and attorney's fees attributable solely to the FDUTPA claim.

In sum, it is not apparent to the Court at this juncture that Plaintiffs' FDUPTA claim lacks merit and was asserted for the sole purpose of harassing Frankel. The Complaint alleges sufficient facts to support a FDUTPA claim, and

Frankel's challenges to the claim may be more appropriately asserted at the summary judgment stage.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

Defendant Christopher Frankel's Motion for Bond Under Section 501.211(3) and Request for Oral Argument and Evidentiary Hearing (Doc. ## 16, 17) are **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 15th day of January, 2019.

*/s/ Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE