UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAYMAN SECURITIES CLEARING
AND TRADING LTD; THE HURRY
FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

    Plaintiffs,

v.      Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

    Defendant.
_____/

**FRANKEL'S OPPOSITION
TO PLAINTIFFS' MOTION TO AMEND COMPLAINT**

The plaintiffs should not be permitted to amend to file their current, proposed amended complaint (Doc. # 34-1) because they have repeatedly refused to allege or disclose any facts or evidence demonstrating that they have plausible or meritorious claims. The plaintiffs' current, proposed amended complaint, like its prior iterations, alleges no facts or evidence suggesting that they have viable claims. The plaintiffs should instead be required to file an amended complaint which alleges facts and evidence demonstrating that they have viable claims.

**I. BACKGROUND**

Before suing, plaintiffs' counsel sent Frankel a letter demanding that he return their "Confidential Information" and cease and desist from breaching his non-disclosure agreement by "further disclosure and/or usage of Confidential Information." (Doc. # 16-4). The letter did not identify a single confidential document or a single instance of Frankel disclosing or using confidential information. Frankel timely responded by offering to return all of the plaintiffs' documents, if they could not tell him which ones they considered to be confidential, and asking

1

why the plaintiffs believed he had breached, and offering to address any perceived breach. (Doc. # 16-5). The plaintiffs ignored Frankel's response, declined to tell him what documents they considered confidential, ignored his offer to return all of their documents in his possession, and sued him instead.

The plaintiffs filed an initial complaint that alleged no facts, only conclusory allegations of misappropriation. *See* Doc. # 1, ¶ 19 (alleging that Frankel "received confidential information from each of the Plaintiffs, including *inter alia*, their business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information of the Plaintiffs and their clients"); ¶ 20 (alleging that Frankel "used confidential information obtained from Plaintiffs to solicit capital, establish banking relations, recruit Plaintiffs' clients, and compete with Plaintiffs' business … make a bid for a broker-dealer in Chicago."). Similarly, the plaintiffs' current, proposed amended complaint alleges conclusory allegations and no facts. *See* Doc. # 34-1, ¶¶ 23, 24 (same allegations as Doc. # 1, ¶¶ 19, 20).

After the plaintiffs sued, Frankel moved to require the plaintiffs to post a FDUTPA bond as security for his claim for attorney's fees and costs. (Doc. # 16). The plaintiffs responded by filing John Joseph Hurry's conclusory declaration that Frankel "was using Alpine's and the other Hurry Parties' confidential information and trade secrets for the benefit of his new business ventures." (Doc. #24-1, ¶ 7). At the earliest opportunity, Frankel served an interrogatory requesting the facts and evidence supporting Hurry's conclusory declaration, and the plaintiffs' answer (attached as Exhibit 1) provided none. *See* Ex. 1, ¶ 9. The answer instead offered John Hurry's speculation that Frankel did not have the clients or "financial wherewithal to consummate" the purchase of a broker without using the plaintiffs' (still undisclosed) confidential information. (Ex 1, ¶ 9).

On February 1, 2019, the plaintiffs served their initial disclosures (attached as Exhibit 2) in which they again disclosed no facts or evidence, and refused to produce or even identify any documents which allegedly supported their claims. The plaintiffs refused to provide information and documents regarding the irreparable harm and damages which they had allegedly sustained, admitting that did not know whether they had been harmed or damaged. (Ex. 2, ¶ 3 ("Plaintiffs' damages and losses arising from Defendant's misconduct continues to be discovered, and are unknown at this time.")).

Frankel produced with his initial disclosures (attached as Exhibit 3) the documents which he had offered to produce to the plaintiffs in response to their pre-suit demand, all of their documents in his possession including the Employee Confidentiality Agreement under which the plaintiffs now wish to sue. The plaintiffs figured out from Frankel's document production that they had sued under the wrong agreement.

At the earliest opportunity, Frankel had served interrogatories and a request for production, again asking the plaintiffs to disclose the facts and evidence supporting their allegations, including the confidential information that Frankel had allegedly misappropriated, what he had done with the confidential information to misappropriate it, and to whom Frankel had disclosed the confidential information. The plaintiffs again refused to disclose their evidence, giving non-responses to Frankel's interrogatories and document requests. The plaintiffs produced only two documents with their response (attached as Exhibit 4) to Frankel's document requests: the Non-disclosure Agreement attached to their initial complaint (Doc. # 1-1); and the Employee Confidentiality Agreement attached to their current, proposed amended complaint (Doc. # 34-1) and produced by Frankel.

The plaintiffs' pre-suit investigation of their claims, if they did one, was so shoddy that they had to determine from Frankel's document production the correct agreement under which to sue.

The plaintiffs' refusal or inability to produce any documents concerning their claim is also telling. *See* Ex. 4. Either the plaintiffs have no documents supporting their alleged claims, or the plaintiffs contend that every document supporting their claim is confidential, so confidential that they cannot even describe or identify the document. *See id.*

The plaintiffs refused to disclose and describe the facts, evidence, and documents supporting their alleged claims in their interrogatory "answers." *See* Ex. 1. For example, the plaintiffs refused to identify their documents containing confidential information which Frankel allegedly had misappropriated in dodging interrogatory 2.

> **Interrogatory 2**: Identify each document containing Confidential Information which you contend Chris Frankel has used unlawfully.
>
> **Answer:** Plaintiffs object to this Interrogatory on the grounds that it requests confidential information and trade secrets and that there is not yet a confidentially agreement in this case that would prevent Defendant from using such requested information for his own, non-litigation related benefit. Plaintiffs object to this Interrogatory on the grounds that it is unnecessarily burdensome and duplicative because Defendant has already requested that Plaintiffs produce such documents. In light of the foregoing objections, Plaintiffs will produce responsive documents once a confidentially agreement is entered into.

(Ex. 1, ¶ 2).

In dodging interrogatory 3, the plaintiffs refused to disclose what Frankel had done to misappropriate the plaintiffs' confidential information.

> **Interrogatory 3**: State in detail what you contend Chris Frankel has done that constitutes unlawful use of all Confidential Information which you contend that Chris Frankel has used unlawfully.
>
> **Answer**: Plaintiffs object to this Interrogatory on the grounds that it is unintelligible and confusing in its word choice. To the extent that Plaintiffs understand the Interrogatory, they state that Frankel has used their confidential

4

information, information which he agreed to keep "strictly confidential" and to "not disclose… to any third parties," to further his own business interests. This information includes, without limitation, client account information, contact information, and transaction history, Plaintiffs' financial relationships and the terms of those relationships. Using the foregoing information, Defendant attempted to solicit Plaintiffs' clients; sought financial backing from entities and individuals with whom Plaintiffs had relationships; attempted to purchase a broker-dealer based.

(Ex. 1, ¶ 2).

In dodging interrogatory 4, the plaintiffs refused to disclose the facts and evidence supporting their allegation that Frankel used their undisclosed, confidential information "to solicit capital, establish banking relations, recruit Plaintiffs' clients, and compete with Plaintiffs' businesses."

> **Interrogatory 4**: Regarding your allegation in paragraph 20 of your complaint, which states: "Upon information and belief, after leaving Alpine, if not earlier, Defendant [Chris Frankel] knowingly, willfully, and maliciously breached his obligations to Plaintiffs under the NDA and used confidential information obtained from Plaintiffs to solicit capital, establish banking relations, recruit Plaintiffs' clients, and compete with Plaintiffs' businesses. Among other things, Plaintiffs are informed and believe Defendant used the foregoing confidential information obtained from Plaintiffs to make a bid for a broker-dealer in Chicago", provide the following information:
>
> a. State all facts which support your allegation including the Confidential Information used, the capital solicited, the banking relations established, the clients recruited, the activity competitive with the plaintiffs in which Chris Frankel engaged, and the broker-dealer on which Chris Frankel bid;
>
> b. Identify all persons having knowledge of the facts which support your allegation, and the facts known by each person; and
>
> c. Identify all documents which support your allegation.
>
> **Answer:** Plaintiffs object to this Interrogatory because it is compound and should have been separated into multiple individual interrogatories. Plaintiffs object to this Interrogatory on the grounds that it requests confidential information and trade secrets and that there is not yet a confidentially agreement in this case that would prevent Defendant from using such requested information for his own, non-litigation related benefit. Plaintiffs object to this Interrogatory on the grounds that it requests information solely known to Defendant which Plaintiffs will only be able to ascertain through their own discovery requests. In light of the foregoing objections, Plaintiffs will not identify the confidential information used until a

>confidentiality agreement is entered into. Without waiving the foregoing objections, Plaintiffs state that John Hurry, Mike Cruz, Henry Diekmann, Joseph Walsh, and Jim Kelley have knowledge that Defendant was not a "producer" in that he did not have clients or capital to establish or purchase a broker-dealer.
>
>However, during his employment by Plaintiffs, Defendant obtained confidential information regarding their business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information. Shortly after leaving Alpine, Defendant contacted Kelley and informed him that he had entered into an agreement to purchase a new broker dealer, with capabilities equal, if not superior, to those at Alpine. Although Defendant had no clients of his own, or the financial wherewithal to consummate such an endeavor, he informed Kelley that he, in fact, had sufficient clients and capital to outperform Alpine. Discovery is ongoing.

(Ex. 1, ¶ 4).

The plaintiffs also refused to disclose any facts, evidence, or documents supporting their alleged claim that Frankel had misappropriated their confidential information to make a bid on a Chicago broker-dealer. Ex. 1, ¶ 5; *see also* Ex. 1, ¶¶ 6–10.

## II. PLAINTIFFS' REQUEST TO AMEND

The plaintiffs initially submitted and asked Frankel's counsel to consent to filing of an amended complaint which abandoned the claims of Cayman Securities and the Hurry Trust. *See* Emails attached as Exhibit 5. Frankel's counsel replied that he would have to determine whether abandonment of the claims of Cayman Securities and the Hurry Trust would give rise to a claim for reimbursement of Frankel's substantial attorney's fees and costs. *See id.* Plaintiffs' counsel responded that he would retain Cayman Securities and the Hurry Trust as plaintiffs, and filed a motion to amend (Doc. # 34) which attached the current, proposed amended complaint (Doc. # 34-1). *See id.*

The current, proposed amended complaint—like its previous iterations, Hurry's declaration, the plaintiffs' non-responsive initial disclosures, the plaintiffs' non-responsive,

6

interrogatory answers, and the plaintiffs' refusal to produce documents—discloses no facts demonstrating that the plaintiffs have meritorious, plausible claims.

### III. GROUNDS FOR REQUIRING PLAINTIFFS TO PLEAD FACTS

Courts have discretion to impose reasonable conditions on leave to amend. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1271 (11th Cir. 2006). The plaintiffs should be required to file an amended complaint which pleads facts showing that they have viable, plausible claims. Frankel has been demanding the facts and evidence supporting the plaintiffs' meritless claims even before the plaintiffs sued, and yet, the plaintiffs still have not alleged or provided any facts or evidence to support their conclusory allegations, not in their pre-suit demand (Doc. # 16-4), their initial complaint (Doc. # 1), their proposed amended complaint abandoning the claims of Cayman Securities and the Hurry Trust (Ex. 5), or the current, proposed amended complaint. (Doc. # 34-1).

Frankel has not engaged in the securities business since leaving Alpine. *See* Frankel's registration history with FINRA, *available at* https://brokercheck.finra.org/individual/summary/1756659. Frankel has the right to do so, and John Hurry is trying to chill Frankel's business opportunities with this frivolous lawsuit. John Hurry has pursued frivolous claims in the past. *See* Doc. # 22 (granting request for judicial notice of Doc. ## 15-3, 15-4). The claims in this case are no different.

Frankel is justifiably concerned that the plaintiffs will not be in existence or have the financial wherewithal to reimburse his attorney's fees and costs when he prevails in this action. Two of the plaintiffs, Scottsdale Capital and Alpine Securities, face staggering FINRA and SEC fines that will likely render them insolvent. *See* Doc. 15-2 (fining Scottsdale $1.5 million and barring Hurry from securities markets in all capacities); Scottsdale Capital's Publicly Available Financial Statements, *available at* https://www.sec.gov/cgi-bin/browse-edgar?action=

getcompany&CIK=0001146301&owner=exclude&count=40&hidefilings=0 (disclosing $1.5 million FINRA fine, which will cause Scottsdale's liabilities to exceed its existing assets by more than $900,000); Alpine Securities' Publicly Available Financial Statements, *available at* https://www.sec.gov/Archives/edgar/data/1146301/000114630118000005/jun18_auditreport_sca5_full.pdf (showing $2.8 million of equity, which will be vastly eclipsed by fines of $80,000 per incident for the several thousand incidents of violations that the court ruled that the SEC had established in the order granting partial summary judgment recently entered on December 11, 2018 in *SEC v. Alpine Securities Corp.*, Case 1:17-cv-4179-DLC (S.D.N.Y.)).

Frankel does not know whether Cayman Securities does any business or has any assets. Frankel does not know whether the Hurry Trust has assets. Both Cayman Securities and the Hurry Trust are trying to figure out how to get out of this lawsuit without having to reimburse Frankel for his fees and costs.

## IV. CONCLUSION

The plaintiffs should be required at long last to disclose the facts and evidence, if any, which support their alleged claims. The plaintiffs' current proposed complaint does not do this.

The plaintiffs should be required to file an amended complaint which alleges facts showing that they have viable, plausible claims, *i.e.*, describing the specific, alleged confidential information which Frankel allegedly misappropriated; alleging to whom he disclosed the misappropriated information; and alleging how he used the confidential information to benefit himself or to harm the plaintiffs.

Dated: February 25, 2018                By:   *David C. Banker*
                                                      David C. Banker (Fla. Bar No. 352977)
                                                      Harold D. Holder (Fla. Bar No. 118733)
                                                      BUSH ROSS, PA
                                                      1801 N. Highland Avenue
                                                      Tampa, Florida 33602
                                                      Phone: 813-224-9255
                                                      Fax:    813-223-9620
                                                      Primary: dbanker@bushross.com;
                                                      hholder@bushross.com
                                                      Secondary: aflowers@bushross.com
                                                      *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on February 25, 2019, all counsel of record who consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/EFC participants:

    Shane B. Vogt, Esquire
    Kenneth G. Turkel, Esquire
    BAJO | CUVA | COHEN | TURKEL
    100 North Tampa Street, Suite 1900
    Tampa, FL  33602
    kturkel@bajocuva.com
    svogt@bajocuva.com

    Charles J. Harder, Esquire
    Jordan Susman, Esquire
    HARDER LLP
    132 South Rodeo Drive, Suite 301
    Beverly Hills, CA 90212-2406
    charder@harderllp.com
    jsusman@harderllp.com
    *Attorneys for Plaintiffs*

                                                      By:   */s/ David C. Banker*