UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAYMAN SECURITIES CLEARING
AND TRADING LTD; THE HURRY
FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

     Plaintiffs,

v.                                  Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

     Defendant.

_____/

# <u>EXHIBIT 5</u>

## Emails

## Harold D. Holder

| | |
|---|---|
| **From:** | Jordan Susman <jsusman@harderllp.com> |
| **Sent:** | Friday, February 8, 2019 6:28 PM |
| **To:** | David C. Banker |
| **Cc:** | Harold D. Holder; Anita Flowers; 'kturkel@bajocuva.com'; 'svogt@bajocuva.com' (svogt@bajocuva.com); Charles Harder; Margo Arnold; Anita Flowers |
| **Subject:** | RE: Plaintiffs' proposed first amended complaint and stipulation / order permitting amendment - Case 8:18-cv-02869-VMC-CPT Cayman Securities Clearing and Trading Ltd. et al v. Frankel |

David,

The proposed amended complaint was intended to simplify the case—less parties, less contracts. However, if your client is going to seek fees and costs based upon our willingness to streamline the case, we will amend the complaint in a manner that keeps Cayman and the Trust in the case, but modifies Scottsdale's and Alpine's claims to conform to the later agreement between them and Frankel.

Please let me know by the end of the day on Monday how you wish to proceed.

Thanks

---

**From:** David C. Banker [mailto:dbanker@bushross.com]
**Sent:** Friday, February 8, 2019 12:02 PM
**To:** Jordan Susman <jsusman@harderllp.com>
**Cc:** Harold D. Holder <hholder@bushross.com>; Anita Flowers <aflowers@bushross.com>; 'kturkel@bajocuva.com' <kturkel@bajocuva.com>; 'svogt@bajocuva.com' (svogt@bajocuva.com) <svogt@bajocuva.com>; Charles Harder <charder@harderllp.com>; Margo Arnold <marnold@harderllp.com>; Anita Flowers <aflowers@bushross.com>
**Subject:** Plaintiffs' proposed first amended complaint and stipulation / order permitting amendment - Case 8:18-cv-02869-VMC-CPT Cayman Securities Clearing and Trading Ltd. et al v. Frankel

Jordan,

I received your proposed amended complaint and your request to amend.  I need to discuss with the client, and I also need to figure out if Cayman and the Hurry Trust owe fees and costs based on their proposed withdrawal of their claims.  Seems like they do.

You have a typo in proposed amended complaint.  Paragraphs 26 and 27 run together.

I will get back to you promptly.

David C. Banker, Esq.
Board Certified Civil Trial Lawyer
Bush Ross, P.A.
1801 North Highland Avenue
Tampa, Florida 33602-2656
(813) 224-9255  [Phone]
(813) 223-9620  [Fax]
(813) 204-6411  [Direct Line]
dbanker@bushross.com

www.bushross.com
Mailing Address:
Post Office Box 3913
Tampa, Florida 33601-3913



**Privileged and Confidential:** Unless otherwise indicated or obvious from the nature of the transmittal, the information contained in this message is privileged and/or confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication or any of the information in it is strictly prohibited. If you have received this communication in error, please advise the sender by reply e-mail and then delete the message. Thank you.

**From:** Jordan Susman [mailto:jsusman@harderllp.com]
**Sent:** Thursday, February 7, 2019 1:06 PM
**To:** David C. Banker
**Cc:** Harold D. Holder; kturkel@bajocuva.com; 'svogt@bajocuva.com' (svogt@bajocuva.com); Charles Harder; Anita Flowers; Margo Arnold
**Subject:** Plaintiffs' proposed first amended complaint and stipulation / order permitting amendment - Case 8:18-cv-02869-VMC-CPT Cayman Securities Clearing and Trading Ltd. et al v. Frankel

David,

Plaintiffs intend to file an amended complaint that removes Cayman and the Trust as plaintiffs, and identifies the correct agreement upon which the Breach of Contract Claim is based.
Attached for your review is a draft stipulation to amend. Please let me know by the end of the day on Monday, February 11, if the stipulation is agreeable, and we will add your signature and file.
Thanks

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SCOTTSDALE CAPITAL ADVISORS
CORPORATION and ALPINE SECURITIES
CORPORATION,

        Plaintiffs,

        CASE NO.:  8:18-cv-02869

vs.

CHRISTOPHER FRANKEL,

        Defendant.

_____/

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Scottsdale Capital Advisors and Alpine Securities Corporation, (collectively the "Hurry Parties"), sue Defendant, Christopher Frankel ("Defendant"), and allege:

## NATURE OF THIS ACTION

1.    This action arises from Defendant's unlawful use of confidential information obtained from the Hurry Parties to destroy their businesses, abscond with their clients, and unfairly compete with the Hurry Parties.

## PARTIES, JURISDICTION, AND VENUE

2.    This is an action for damages in excess of $75,000.00, exclusive of interest, costs and attorneys' fees.

3.    Plaintiff Scottsdale Capital Advisors Corporation ("Scottsdale") is a corporation organized and existing under the laws of the State of Arizona, with its principal place of business in Maricopa County, Arizona.

1

4.      Plaintiff Alpine Securities Corporation ("Alpine") is a corporation organized and existing under the laws of the State of Utah, with its principal place of business in Salt Lake County, Utah.

5.      Defendant is an individual who resides in Hillsborough County, Florida.

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1).

7.      This Court has personal jurisdiction over Defendant because Defendant resides in Florida, is engaged in business in the state, and committed many of the tortious acts alleged herein in the state.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District, and a substantial part of the events giving rise to the claims herein occurred in this district.

## GENERAL ALLEGATIONS

9.      Scottsdale and Alpine are each involved in the broker-dealer business.  Scottsdale is full service broker-dealer focused on serving the OTC (over the counter) securities market. Alpine is a registered broker-dealer that is an industry leader for clearing OTC stock.

10.      In 2015, the Hurry Parties hired Defendant to help run their various broker-dealer businesses.  From approximately August 2015 through July 2018, Defendant served as CEO of Alpine, and from July 2018 through September 2018 was a consultant to Alpine.

11.      Prior to hiring Defendant, the Hurry Parties were aware that Defendant would be exposed to, and entrusted with, information that is commercially valuable to the Hurry Parties and not generally known or readily ascertainable in the broker-dealer securities industry or the public at large, including *inter alia*, the Hurry Parties' business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial

information of the Hurry Parties and their clients.  Consequently, the Hurry Parties (and others) and Defendant entered into a written non-disclosure agreement (the "Original NDA") to protect the Hurry Parties' numerous trade secrets and confidential information.  Attached hereto as Exhibit 1 and incorporated by this reference is a true and correct copy of the Original NDA.

12.     On July 1, 2015, the Hurry Parties and Defendant entered into a second nondisclosure agreement entitled the "Employee Nondisclosure & Computer Use Agreement" ("Employee Nondisclosure Agreement"), which superseded the Original NDA, to protect the Hurry Parties' numerous trade secrets and confidential information.

13.     Attached hereto as Exhibit 2 and incorporated by this reference is the Employee Nondisclosure Agreement.

14.     According to the Employee Nondisclosure Agreement, it "shall be governed in accordance with the laws of the State of Arizona."

15.     Per the Employee Nondisclosure Agreement, "Employee shall keep Company's Confidential Information, whether or not prepared or developed by Employee, in the strictest confidence. Employee will not disclose such information to anyone outside Company without Company's prior written consent. Nor will Employee make use of any Confidential Information for Employee's own purposes or the benefit of anyone other than Company." Under the Employee Nondisclosure Agreement, Confidential Information is defined as:

> (a) technical information concerning Company's products and services, including product know-how, formulas, designs, devices, diagrams, software code, test results, processes, inventions, research projects and product development, technical memoranda and correspondence; (b) information concerning Company's business, including cost information, profits, sales information, accounting and unpublished financial information, business plans, markets and marketing methods, customer lists and customer information, purchasing techniques, supplier lists and supplier information and advertising strategies; (c) information concerning Company's employees, including salaries, strengths, weaknesses and skills; (d) information submitted by Company's customers, suppliers, employees,

3

consultants or co-venture partners with Company for study, evaluation or use; and (e) any other information not generally known to the public which, if misused or disclosed, could reasonably be expected to adversely affect Company's business.

16.     Beginning in or about June 2015, and continuing through September 2018, Defendant received confidential information from each of the Hurry Parties, including *inter alia*, the Hurry Parties' business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information of the Hurry Parties and their clients.

17.     The Hurry Parties are informed and believe and thereon allege that after leaving Alpine, if not earlier, Defendant knowingly and willfully breached his obligations to them under the NDA and under the Employee Nondisclosure Agreement by using confidential information obtained from the Hurry Parties to solicit capital, establish banking relations, recruit clients of the Hurry Parties, and compete with the Hurry Parties' businesses.  Among other things, the Hurry Parties are informed and believe that Defendant has used the foregoing confidential information obtained from the Hurry Parties to make a bid for a broker-dealer in Chicago.

## COUNT I:  BREACH OF CONTRACT

18.     The Hurry Parties incorporate by reference all of the preceding paragraphs as though fully restated herein.

19.     The Employee Nondisclosure Agreement, to which Defendant agreed to be bound, constitutes a valid and enforceable contract between Scottsdale and Alpine, on the one hand, and Defendant, on the other hand.

20.     Notwithstanding Defendant's obligations under the Employee Nondisclosure Agreement, as described herein, he knowingly disclosed Confidential Information (as defined in the Employee Nondisclosure Agreement) to third parties in breach of paragraph 2 of the

4

Employee Nondisclosure Agreement.   In addition, Defendant breached paragraph 2 of the Employee Nondisclosure Agreement by using Confidential Information for his own benefit and not for the benefit of Scottsdale and Alpine.

21.     As a direct and proximate result of Defendant's breaches of the Employee Nondisclosure Agreement, Scottsdale and Alpine have suffered and will continue to suffer irreparable harm and economic damages.

22.     Moreover, it was foreseeable that Scottsdale and Alpine would suffer damages if Defendant disclosed Confidential Information to third parties, and used Confidential Information for his own benefit.

WHEREFORE, Plaintiffs, Scottsdale Capital Advisors and Alpine Securities Corporation demand judgment against Defendant, Christopher Frankel, for damages, including, but not limited to, actual damages, special damages, injunctive relief pursuant to the Employee Nondisclosure Agreement, reasonable attorneys' fees and costs pursuant to paragraph 7(e) of the Employee Nondisclosure Agreement, interest, and such further relief as the Court deems just and proper.

## COUNT II:  VIOLATION OF DEFEND TRADE SECRETS ACT

23.     The Hurry Parties incorporate by reference all of the preceding paragraphs as though fully restated herein.

24.     During the course of his relationship with Plaintiffs, Defendant had access to confidential financial, business, and economic information of independent economic value, including inter alia, Plaintiffs' business practices and methods, financial relationships and terms of those relationships, client lists, pricing information, and private financial information concerning Plaintiffs and their clients (collectively, the "Trade Secrets").

25.     Plaintiffs lawfully owned the Trade Secrets.

26.     Plaintiffs took reasonable measures to safeguard their Trade Secrets by, among

27.     other things, requiring employees and consultants to enter into NDAs, restricting access to the Trade Secrets, and taking other security measures to protect their confidentiality.

28.     Plaintiffs derive independent economic value, actual and potential, from their

29.     Trade Secrets not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

30.     Defendant gained access to Plaintiffs' Trade Secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use.

31.     Without Plaintiffs' express or implied consent, Defendant misappropriated, disclosed, and used the Trade Secrets for his own benefit.

32.     At the time of Defendant's misappropriation, disclosure, and use of Plaintiffs' Trade Secrets, Defendant knew or had reason to know that his knowledge of the Trade Secrets was acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use.

33.     As a direct and proximate result of Defendant's misappropriation, Plaintiffs suffered and will continue to suffer economic damages.

34.     Pursuant to 18 U.S.C. § 1836, Plaintiffs are entitled to an injunction to prevent the actual or threatened misappropriation of their Trade Secrets and/or requiring affirmative actions to protect the Trade Secrets, an award of damages for the actual loss caused by Defendant's misappropriation, damages for unjust enrichment caused by the misappropriation, and/or a reasonable royalty, as well as attorneys' fees and costs.

35.     Because Defendant willfully and maliciously misappropriated Plaintiffs' Trade Secrets, Plaintiffs also are entitled to exemplary damages.

WHEREFORE, Plaintiffs Scottsdale Capital Advisors and Alpine Securities Corporation demand judgment against Defendant, Christopher Frankel, for injunctive relief, compensation for actual damages and unjust enrichment, imposition of a reasonable royalty, exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C), reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D), interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT III: VIOLATION OF FLORIDA UNIFORM TRADE SECRET ACT

36.     The Hurry Parties incorporate by reference all of the preceding paragraphs as though fully restated herein.

37.     During the course of his relationship with the Hurry Parties, Defendant had access to the Hurry Parties' confidential business information and trade secrets, including *inter alia*, the Hurry Parties' business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information of the Hurry Parties and their clients.

38.     At all relevant times, the Hurry Parties undertook reasonable steps to safeguard their confidential business information by, among other things, causing their employees and consultants to enter into nondisclosure agreements.

7

39.     The Hurry Parties' confidential business information, including their business practices, pricing, clients, and private financial information, constitutes trade secrets.  Among other things, the Hurry Parties derive independent economic value, actual or potential, from their trade secrets not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.  In addition, the Hurry Parties' trade secrets are the subject of efforts to maintain their secrecy that are reasonable under the circumstances.

40.     As described herein, Defendant acquired the Hurry Parties' trade secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use.

41.     Without the Hurry Parties' consent, Defendant violated those duties by knowingly misappropriating and wrongfully using the Hurry Parties' trade secrets for his own benefit.

42.     As a direct and proximate result of Defendant's unauthorized misappropriation and use of the Hurry Parties' trade secrets, the Hurry Parties, and each of them, have suffered and will continue to suffer irreparable harm and economic damages.

WHEREFORE, Plaintiffs, Scottsdale Capital Advisors and Alpine Securities Corporation, demand judgment against Defendant, Christopher Frankel, for injunctive relief, compensation for all actual damages and unjust enrichment, exemplary damages, reasonable attorneys' fees because Defendant's misappropriation and wrongful use of the Hurry Parties' trade secrets was willful and malicious, interest, costs, and such further relief as the Court deems just and proper.

## COUNT IV:  VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

43.     The Hurry Parties incorporate by reference all of the preceding paragraphs as though fully restated herein.

44.     As alleged herein, Defendant engaged in deceptive and/or unfair practices by using the Hurry Parties' confidential information and trade secrets to solicit the Hurry Parties' clients, establish relationships with the Hurry Parties' financial institutions and investors, and attempt to acquire broker-dealer in Chicago.

45.     The foregoing acts of Defendant were done in order to unfairly compete with the Hurry Parties.  Defendant is a competitor of the Hurry Parties for a common pool of customers and clients, financial institutions, and investors in the broker-dealer business.

46.     As a direct and proximate result of Defendant's actions, the Hurry Parties, and each of them, have suffered irreparable harm and economic damage.

WHEREFORE, Plaintiffs, Scottsdale Capital Advisors and Alpine Securities Corporation, demand judgment against Defendant, Christopher Frankel, for actual damages, injunctive relief, , as well as interest, costs, attorneys' fees and such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on issues so triable.

Dated this 6 day of February 2019

*/s/ Jordan Susman*_____

Charles J. Harder, Esq.
Admitted Pro Hac Vice
Jordan Susman, Esq.
Admitted Pro Hac Vice

9

HARDER LLP
132 South Rodeo Drive, Suite 301
Beverly Hills, CA  90212-2406
Tel: (424) 203-1600
Fax: (424) 203-1601
Email:  charder@harderllp.com
Email:  jsusman@harderllp.com


-and-


Kenneth G. Turkel, Esq.
Florida Bar No. 867233
Shane B. Vogt, Esq.
Florida Bar No. 0257620
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel:  (813) 443-2199
Fax: (813) 443-2193
Email:  kturkel@bajocuva.com
Email:  svogt@bajocuva.com

EXHIBIT 1



# SCOTTSDALE CAPITAL ADVISORS

7170 E. McDonald Road, Suite 6, Scottsdale, Arizona  Tel. 480-603-4900 Fax. 480-603-4901

## NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT

This NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT (the "Agreement") is made as of _June 22nd_, 2015, by _Christopher Lee Frenkel_ (the "Recipient") and SCOTTSDALE CAPITAL ADVISORS CORPORATION, an Arizona corporation, Alpine Securities Corporation an Utah corporation, Cayman Securities Clearing and Trading LTD a Cayman Limited Company and any associated company of the Hurry Family Revocable Trust (the "Discloser").

### RECITALS:

**WHEREAS,** Recipient and Disclosure have entered into discussions to form a business or employment relationship in connection with the Disclosure's business; and

**WHEREAS,** in connection with such discussions, the Discloser will communicate to the Recipient and grant the Recipient access to Confidential Information (as defined below) pertaining to Discloser's business, which Confidential Information the Recipient recognizes to be the sole property of the Discloser and highly confidential in nature and the transmission of which is granted in consideration of the Recipient's acceptance to sign this Agreement.

**NOW, THEREFORE**, THE PARTIES HERETO HEREBY AGREE AS FOLLOWS:

1.      CONFIDENTIAL INFORMATION DEFINITION

(a)      For purposes of this Agreement, "**Confidential Information**" means any data or information that is proprietary to the Discloser and not generally known to the public, whether in tangible or intangible form, whenever and however disclosed, including, but not limited to: (i) any marketing strategies, plans, financial information, or projections, operations, sales estimates, business plans and performance results relating to the past, present or future business activities of such party, its affiliates, subsidiaries and affiliated companies; (ii) plans for products or services, (iii) customer lists and account information; (iv) any scientific or technical information, invention, design, process, procedure, formula, improvement, technology or method; (v) any concepts, reports, data, know-how, works-in-progress, designs, development tools, specifications, computer software, source code, object code, flow charts, databases, inventions, information and trade secrets; and (vi) any other information that should reasonably be recognized as confidential information of the Discloser. Confidential Information need not be novel, unique, patentable, copyrightable or constitute a trade secret in order to be designated Confidential Information. The Recipient acknowledges that the Confidential Information is proprietary to the Discloser, has been developed and obtained through great efforts by the Discloser and that Discloser regards all of its Confidential Information as trade secrets under the Arizona Trade Secrets Act, as amended (A.R.S. §44-401 set seq.).

(b)      Notwithstanding anything in the foregoing to the contrary, Confidential Information shall not include information which: (i) was known by the Recipient prior to receiving the Confidential Information from the Discloser; (b) becomes rightfully known to the Recipient from a third-party source not known (after diligent inquiry) by the Recipient to be under an obligation to Discloser to maintain confidentiality; (c) is or becomes publicly available through no fault of or failure to act by the Recipient in breach of this Agreement; (d) is required to be disclosed in a judicial or administrative proceeding, or is otherwise requested or required to be disclosed by law or regulation, although the requirements of paragraph 4 hereof shall apply prior to any disclosure being made; and (e) is or has been independently developed by employees, consultants or agents of the Recipient without violation of the terms of this Agreement or reference or access to any Confidential Information.

2.      NON-DISCLOSURE AND NON-USE OF CONFIDENTIAL INFORMATION.

(a)      With respect to Confidential Information obtained by Recipient, Recipient (i) will not, and will not permit its officers, directors, employees, agents, independent contractors, advisors and affiliates (the "Representatives") to disclose, publish or disseminate Confidential Information to anyone other than its employees and agents on a need-to-know basis; (ii) advise its Representatives of the proprietary nature of the Confidential Information and of the obligations set forth in this Agreement; and require such Representatives to keep the Confidential Information confidential; (iii) shall keep all Confidential Information strictly confidential by using a reasonable degree of care, but not less than the degree of care used by it in safeguarding its own confidential information; and (iv) not disclose any Confidential Information received



(sca: 06-2015)                    Page 1 of 2

CONFIDENTIALITY AGREEMENT

by it to any third parties (except as otherwise provided for herein).

(b)     The Recipient agrees to use the Confidential Information solely in connection with the current or contemplated business relationship between the parties and not for any purpose other than as authorized by this Agreement without the prior written consent of an authorized representative of the Discloser. No other right or license, whether expressed or implied, in the Confidential Information is granted to the Recipient hereunder. Title to the Confidential Information will remain solely in the Discloser. All use of Confidential Information by the Recipient shall be for the benefit of the Discloser and any modifications and improvements thereof by the Recipient shall be the sole property of the Discloser.

3.     NO WARRANTY. All information is provided "AS IS" and without any warranty, whether express or implied, as to its accuracy or completeness.

4.     DISCLOSURE BY LAW. If Recipient or its Representatives is requested or required by any law, courtor governmental order to disclose any Confidential Information, Recipient agrees to provide Disclosure with prompt written notice of each such request, to the extent practical, so that Discloser may seek an appropriate protective order or waive compliance by the Recipient with the provisions of this Agreement or both. If, absent the entry of a protective order or the receipt of a waiver under this Agreement, the Recipient or its Representatives is legally compelled or required to disclose such Confidential Information, Recipient may disclose such information to the persons and to the extent required without liability under this Agreement.

5.     RETURN OF DOCUMENTS. Within ten (10) business days of receipt of the Discloser's written request, the Recipient will return to the Discloser all documents, records and copies thereof containing Confidential Information. For purposes of this section, the term "documents" includes all information fixed in any tangible medium of expression, in whatever form or format.

6.     EQUITABLE RELIEF. The Recipient hereby acknowledges that unauthorized disclosure or use of Confidential Information could cause irreparable harm and significant injury to the Discloser. Accordingly, the Recipient agrees that the Discloser will have the right to seek and obtain immediate injunctive relief to enforce obligations under this Agreement in addition to any other rights and remedies it may have.

7.     NOTICE OF BREACH. Recipient shall notify the Discloser immediately upon discovery of any unauthorized use or disclosure of Confidential Information by Recipient or its Representatives, or any other breach of this Agreement by Recipient or its Representatives, and will cooperate with efforts by the Discloser to help the Discloser regain possession of Confidential Information and prevent its further unauthorized use.

8.     ENTIRE AGREEMENT AND GOVERNING LAW. This Agreement sets forth the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior discussions, representations and agreements with respect to same. No modification to this Agreement shall be binding unless in writing and signed by both parties. This Agreement shall be governed and construed in accordance with the laws applicable in the State of Arizona.

9.     EXECUTION. This agreement may be executed by facsimile or other electronic signature. In the event that any signature is delivered by facsimile transmission or by email delivery of an electronic format data file (e.g., .pdf, .tiff, etc.), such signature shall create a valid and binding obligation of the party executing with the same force and effect as if such facsimile or electronic data file signature page were an original thereof.

**RECIPIENT**

By: _C. Fnhl_____

Name: _Christopher Franke!_____

Title: _N/a_____

ADDRESS: _4301 W Waterous Av_

_Tampa  FL  33629_____

PHONE: ████████████

EMAIL: ████████████

# EXHIBIT 2

## EMPLOYEE NONDISCLOSURE & COMPUTER USE AGREEMENT

This agreement (the "Agreement") is entered into by Alpine Securities / Scottsdale Capital
and its subsidiaries and affiliates ("Company") and Christopher L Frankel
("Employee").

In consideration of the commencement of Employee's employment with Company and the compensation
that will be paid, Employee and Company agree as follows:

**1.   Company's Confidential Information**

In the performance of Employee's job duties with Company, Employee will be exposed to Company's
Confidential Information. "Confidential Information" shall mean all written or oral information of a
proprietary, intellectual or similar nature relating to Company's business, projects, operations, activities
or affairs whether of a technical or financial nature or otherwise. Confidential Information includes, but
is not limited to:

(a)  technical information concerning Company's products and services, including product know-how,
formulas, designs, devices, diagrams, software code, test results, processes, inventions, research
projects and product development, technical memoranda and correspondence;

(b)  information concerning Company's business, including cost information, profits, sales information,
accounting and unpublished financial information, business plans, markets and marketing methods,
customer lists and customer information, purchasing techniques, supplier lists and supplier information
and advertising strategies;

(c)  information concerning Company's employees, including salaries, strengths, weaknesses and skills;

(d)  information submitted by Company's customers, suppliers, employees, consultants or co-venture
partners with Company for study, evaluation or use; and

(e)  any other information not generally known to the public which, if misused or disclosed, could
reasonably be expected to adversely affect Company's business.

**2.   Nondisclosure of Trade Secrets**

Company's Confidential Information are 'trade secrets' as defined in Arizona Revised Statutes, Sections
44-401 et seq.  Employee shall keep Company's Confidential Information, whether or not prepared or
developed by Employee, in the strictest confidence. Employee will not disclose such information to
anyone outside Company without Company's prior written consent. Nor will Employee make use of any
Confidential Information for Employee's own purposes or the benefit of anyone other than Company.

However, Employee shall have no obligation to treat as confidential any information which:

(a)  was in Employee's possession or known to Employee, without an obligation to keep it confidential,
before such information was disclosed to Employee by Company;

(b)  is or becomes public knowledge through a source other than Employee and through no fault of
Employee; or

(c)  is or becomes lawfully available to Employee from a source other than Company.

**3.   Confidential Information of Others**

Employee will not disclose to Company, use in Company's business, or cause Company to use, any
trade secret of others.

**4.   Return of Materials**

When Employee's employment with Company ends, for whatever reason, Employee will promptly
deliver to Company all originals and copies of all documents, records, software programs, media and

(EE NDA:01-2013)

CF

other materials containing any Confidential Information. Employee will also return to Company all equipment, files, software programs and other personal property belonging to Company.

**5.   Confidentiality Obligation Survives Employment**

Employee's obligation to maintain the confidentiality and security of Confidential Information remains even after Employee's employment with Company ends and continues for so long as such Confidential Information remains a trade secret.

**6.   Computer Access and Use**

As part of Employee's duties, Employee will have access to Company's Electronic Communication Systems (ECS), which includes without limitation, its computers, network systems, Internet connection, Intranet, electronic mail, voicemail, facsimiles, telephones and other information systems used for the transmission of electronic communications.  As a condition of employment, Employee agrees to the following restrictions on the access and use of Company's ESS:

(a) Any access and use of ESS is strictly limited for purposes relating to Employee's duties and responsibilities as an employee, official business within Company and other activities approved in writing (including e-mail approval) by Company.

(b) All information or messages that are created, sent, received or stored using Company's ESS remain the property of Company. Company has the absolute right to monitor and log all aspects of its ESS. Employee understands and agrees that electronic communications are neither private nor secure.

(c) Employee is the sole person authorized to use the computer account(s) issued to him/her by Company, and Employee will not share his/her password(s) with anyone.  If Employee suspects that someone else knows his/her password(s), Employee will notify his/her supervisor immediately.

(d) Employee will only access those computing resources that he/she has authorization from Company to use and will only use such resource in carrying out his/her job duties.

(e) Employee is responsible for all computing activities that occur under his/her personal computer account(s).  If Employee suspects or knows that activities by any individual or entity are in violation of this agreement, Employee agrees to immediately report it to his/her supervisor.

(f) Prohibited actions using Company's ECS include, but are not limited to the following: (1) entering data under another person's computer account or permitting another to enter data under his/her account; (2) helping an unauthorized person gain access to a Company computer or information asset; (3) accessing personal Internet email accounts (e.g., Hotmail, Yahoo, AOL, etc.); (4) sending or displaying materials that are sexually explicit, threatening, discriminatory, harassing, illegal or otherwise inappropriate; (5) using the system for illegal or criminal activities, commercial ventures, private profit, religious or political causes, any form of solicitation (except those approved by Company); (6)sending or receiving documents in violation of copyright laws; (7) transmitting confidential patient, business or risk management information to any non-Company email address; (8) attaching unauthorized devices to Company's computer network; and (9) attempting to gain access to an unauthorized area of any computing system or disabling it in any way.

**7.   General Provisions**

(a) Affiliates and Subsidiaries. For purposes of sections 1, 2, 3, 4, and 5 of this Agreement, the term "Company" shall include all affiliates and subsidiaries of Company, all directors, shareholders, and officers of Company, and all directors, shareholders and officers of Company's affiliates and subsidiaries.

(b) Relationships: Nothing contained in this Agreement shall be deemed to make Employee a partner or joint venturer of Company for any purpose.

*CF*

(c)  Severability: If a court finds any provision of this Agreement invalid or unenforceable, the remainder of this Agreement shall be interpreted so as best to effect the intent of Company and Employee.

(d)  Integration: This Agreement expresses the complete understanding of the parties with respect to the subject matter and supersedes all prior proposals, agreements, representations and understandings. This Agreement may not be amended except in a writing signed by both Company and Employee.

(e)  Waiver: The failure to exercise any right provided in this Agreement shall not be a waiver of prior or subsequent rights.

(f)  Injunctive Relief: Any misappropriation of any of the Confidential Information in violation of this Agreement may cause Company irreparable harm, the amount of which may be difficult to ascertain, and therefore Employee agrees that Company shall have the right to apply to a court of competent jurisdiction for an order enjoining any such further misappropriation and for such other relief as Company deems appropriate. This right is to be in addition to the remedies otherwise available to Company.

(g)  Indemnity: Employee agrees to indemnify Company against any and all losses, damages, claims or expenses incurred or suffered by Company as a result of Employee's breach of this Agreement.

(h)  Attorney Fees and Expenses: In a dispute arising out of or related to this Agreement, the prevailing party shall have the right to collect from the other party its reasonable attorney fees and costs and necessary expenditures.

(i)  Governing Law. This Agreement shall be governed in accordance with the laws of the State of Arizona.

(j)  Jurisdiction. Employee consents to the exclusive jurisdiction and venue of the federal and state courts located in Maricopa County, Arizona in any action arising out of or relating to this Agreement. Employee waives any other venue to which Employee might be entitled by domicile or otherwise.

(k)  Successors & Assigns. This Agreement shall bind each party's heirs, successors and assigns. Company may assign this Agreement to any party at any time. Employee shall not assign any of his or her rights or obligations under this Agreement without Company's prior written consent. Any assignment or transfer in violation of this section shall be void.

**8.  Signatures**

Employee has carefully read all of this Agreement and agrees that all of the restrictions set forth are fair and reasonably required to protect Company's interests. Employee has received a copy of this Agreement as signed by Employee.

**Employee**:

_____ (Signature)

Chris Frenkel  (Typed or Printed Name)

Date: 07/01/2015

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CAYMAN SECURITIES CLEARING
AND TRADING LTD; THE HURRY
FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,                                          CASE NO.:  8:18-cv-02869
          Plaintiffs,

vs.

CHRISTOPHER FRANKEL,

          Defendant.
_____/

### STIPULATION AND ORDER ALLOWING PLAINTIFF TO FILE FIRST
### AMENDED COMPLAINT FOR DAMAGES

WHEREAS on November 21, 2018, plaintiffs Cayman Securities Clearing and Trading

LTD, The Hurry Family Revocable Trust, Scottsdale Capital Advisors Corporation, and Alpine

Securities Corporation (collectively "Plaintiffs") filed a Complaint in the above-titled case

against Defendant Christopher Frankel ("Defendant").

WHEREAS Plaintiffs seek to file a First Amended Complaint, which removes Cayman

Securities Clearing and Trading LTD and The Hurry Family Revocable Trust as plaintiffs from

this lawsuit and which identifies the correct agreement upon which the Breach of Contract Claim

is based.

WHEREAS a copy of Plaintiffs' proposed First Amended Complaint is attached hereto as

Exhibit "A."

IT IS HEREBY STIPULATED, by and between Plaintiffs and Defendant, by and through

their respective counsel, that:

1.     Plaintiff should be granted leave to amend to file their First Amended Complaint, a copy of which is attached hereto as Exhibit "A."

2.     Defendant's responsive pleading shall be due thirty (30) days after the First Amended Complaint is filed.

DATED: February ___, 2019          By: _____
                                                   Charles J. Harder, Esq.
                                                   Admitted Pro Hac Vice
                                                   Jordan Susman, Esq.
                                                   Admitted Pro Hac Vice
                                                   HARDER LLP
                                                   132 South Rodeo Drive, Suite 301
                                                   Beverly Hills, CA  90212-2406
                                                   Tel: (424) 203-1600
                                                   Fax: (424) 203-1601
                                                   Email: charder@harderllp.com
                                                   Email: jsusman@harderllp.com
                                                   Attorneys for Plaintiffs


DATED: February___, 2019          By: _____
                                                   David C. Banker (Fla. Bar No. 352977)
                                                   Harold D. Holder (Fla. Bar No. 118733)
                                                   BUSH ROSS, PA
                                                   1801 N. Highland Avenue
                                                   Tampa, Florida 33602
                                                   Phone: 813-224-9255
                                                   Fax: 813-223-9620
                                                   Primary: dbanker@bushross.com;
                                                   hholder@bushross.com
                                                   Secondary: aflowers@bushross.com
                                                   Attorneys for Defendant

**<u>ORDER</u>**

The Court having reviewed the foregoing Stipulation, and good cause appearing therefore:

IT IS HEREBY ORDERED that Plaintiffs Cayman Securities Clearing and Trading LTD, The Hurry Family Revocable Trust, Scottsdale Capital Advisors Corporation, and Alpine Securities Corporation are granted leave to amend to file their First Amended Complaint, a copy of which is attached hereto as Exhibit "A."

IT IS ALSO ORDERED that Defendant's responsive pleading shall be due thirty (30) days after the First Amended Complaint is filed.

IT IS FURTHER ORDERED that the First Amended Complaint is deemed filed as of the date this Order is transmitted via the CM/ECF system.

IT IS SO ORDERED.


Dated: February ___, 2019          _____

                                   UNITED STATES DISTRICT COURT JUDGE