UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAYMAN SECURITIES CLEARING
AND TRADING LTD; THE HURRY
FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

    Plaintiffs,

v.                                                    Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

    Defendant.
_____/

**FRANKEL'S MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendant, Christopher Frankel, through counsel and under Federal Rule of Civil Procedure 12(b)(6), moves to dismiss the First Amended Complaint (Doc. # 37) for failure to state a claim upon which relief can be granted. Before proceeding with claims based on alleged misappropriation, a plaintiff must raise a right to belief beyond mere speculation through plausible factual allegations (a) identifying the information misappropriated, (b) establishing that the information is protected, and (c) describing how and when the defendant misappropriated the information. *See infra* Part I. Here, the plaintiffs allege five claims based on conclusory allegations of misappropriation that are so broad and vague that they are meaningless. *See infra* Part II. The First Amended Complaint should be dismissed with prejudice because amendment would be futile, as demonstrated by the plaintiffs' failure in each of their six prior opportunities to disclose the factual basis for their claims. *See infra* Part III.

1

## **MEMORANDUM OF LAW**

To state a claim upon which relief can be granted, a plaintiff must allege "sufficient factual material to raise a right to relief beyond mere speculation." *Allmond v. Bank of Am.*, No. 3:07-CV-186-J-33JRK, 2008 WL 205320, at *3 (M.D. Fla. Jan. 23, 2008) (Covington, J.) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "To raise a right to relief beyond the speculative level, a complaint must contain 'enough factual matter (taken as true) to suggest' each material element of a claim." *Id.* (citing *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555))). This requirement 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the elements." *Id.* "Thus, a complaint must state factual allegations that are not merely consistent with the material elements of a claim, but rather, that plausibly suggest the elements." *Id.* (citing *Twombly*, 550 U.S. at 555). Part I below outlines the standards of this requirement in the context of misappropriation claims.

In this case, the First Amended Complaint (Doc. # 37) includes only a conclusory allegation that Frankel misappropriated the plaintiffs' information. Based on this conclusory allegation of misappropriation, the plaintiffs claim Frankel breached non-disclosure agreements (Counts 1 and 2) and violated the federal Defend Trade Secrets Act (Count 3), the Florida Uniform Trade Secrets Act (Count 4), and the Florida Deceptive and Unfair Trade Practices Act (Count 5). In all five counts, the plaintiffs have incorporated the same conclusory allegations (Doc. # 37, ¶¶ 23, 24) that do not (a) identify the information allegedly misappropriated, (b) establish that the information is protected, or (c) describe how and when Frankel misappropriated the information. All five counts should therefore be dismissed. Part II below discusses the inadequacy of the plaintiffs' allegations.

The First Amended Complaint (Doc. # 37) should be dismissed with prejudice because it would be futile to grant the plaintiffs leave to amend. *See, e.g.*, *Patel v. Georgia Dep't BHDD*, 485 F.App'x 982, 982 (11th Cir. 2012) ("Futility justifies the denial of leave to amend where the complaint, as amended, would still be subject to dismissal." (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir.1999)). The plaintiffs have not, and cannot, allege that Frankel agreed not to compete in the securities business or refrain from communicating with the plaintiffs' clients. *See* Doc. # 37. The plaintiffs have only alleged that Frankel agreed not to use or disclose confidential information. *See id.* The plaintiffs have failed in each of their six prior opportunities to disclose the factual basis for their conclusory allegation of misappropriation, as discussed below in Part III. Granting the plaintiffs a further opportunity would be futile, so their complaint should be dismissed with prejudice.

## I.  PLEADING REQUIREMENTS FOR MISAPPROPRIATION CLAIMS

To state a claim based on misappropriation, the allegations must (a) identify the information misappropriated, (b) establish that the information is protected, and (c) describe how and when the defendant misappropriated the information. *DynCorp Int'l v. AAR Airlift Group, Inc.*, 664 F.App'x 844, 849–50 (11th Cir. 2016); *Am. Registry, LLC v. Hanaw*, No. 2:13-CV-352-FTM-29UAM, 2013 WL 6332971, at *3–4 (M.D. Fla. Dec. 5, 2013). The allegations must be plead with sufficient particularity to put the defendant on notice as to the basis for the plaintiffs' claims. *DynCorp Int'l*, 664 F.App'x at 847 (citing *Twombly*, 550 U.S. at 555–56; *AAR Mfg., Inc. v. Matrix Composites, Inc.*, 98 So. 3d 186, 188 (Fla. 5th DCA 2012)).

### A.  The complaint must identify the information misappropriated.

In *DynCorp*, the court held that the complaint's allegations sufficiently identified the information misappropriated because the plaintiffs "did not just identify broad categories of

information, such as financial and technical data, but specifically identified financial and technical data related to [a specific contractual relationship that the plaintiffs identified in the complaint]." 664 F.App'x at 849 (noting that the plaintiffs "specifically identified financial and technical data related to [a] pre-existing WASS contract, including personnel lists, salary and pay differentials, and pricing data related to staffing and business operations").

On the other hand, in *American Registry*, the court held that "plaintiff's list of trade secrets does not adequately inform defendants what they supposedly misappropriated." 2013 WL 6332971, at *3. In that case, the plaintiff alleged a list of trade secrets that included, among other things, "customer lists," "sales and operation procedures," "financial data," and "sales and marketing strategies and data." *Id.* The court described this list of trade secrets as "nearly identical to the list of confidential and proprietary information contained in the [defendant's agreement]" and "so broad as to be meaningless." *Id.* at *4. The court reasoned that the plaintiff "need not disclose secret information in its pleadings, but must identify it with enough specificity as to give defendants notice of what was misappropriated." *Id.* The court ruled that the plaintiff had merely listed "broad and generic categories of information" that "provide insufficient notice as to the actual trade secrets misappropriated." *Id.*

### B.   The complaint must establish that the information is protected.

In *DynCorp*, the court ruled that the complaint's allegations, if taken as true, established that the information was protected under the plaintiffs' non-disclosure agreements and constituted a trade secret under Florida law. 664 F.App'x at 850.

In *American Registry*, the court did not reach the issue of whether the complaint's allegations, if taken as true, established that the information was protected, most likely because

4

of the plaintiffs' failure to identify the information allegedly misappropriated. *See* discussion *supra* Part A.

      **C.    The complaint must describe how and when the defendant misappropriated the protected information.**

In *DynCorp*, the court held that the complaint's allegations sufficiently described the misappropriation because the plaintiff's complaint "was very specific in identifying the information allegedly divulged by [the defendant]" and "also alleged a specific time period when [the defendant] divulged this information . . . , the people to whom he divulged it . . . , and the 'large black, zippered portfolio' in which he stored the materials." 664 F.App'x at 850.

On the other hand, in *American Registry*, the court held that the complaint's allegations did not sufficiently describe the misappropriation when the plaintiff alleged that "defendants misappropriated the trade secrets by using them in the formation and operation of [a new, competing venture]." 2013 WL 6332971, at 4. The court reasoned that the complaint was "devoid of any factual allegations supporting this assertion," and the court cited other cases in which courts dismissed misappropriation claims "consisting of conclusory allegations" that "gave no details on how the trade secrets were misappropriated." *Id.* (citing *Knights Armament Co. v. Optical Sys. Tech.*, 568 F.Supp.2d 1369, 1377 (M.D. Fla. 2008); *All Bus. Sols., Inc. v. NationsLine, Inc.*, 629 F.Supp.2d 553, 558–59 (W.D. Va. 2009)).

As explained in *Knights Armament Co.*, 568 F.Supp.2d at 1377, "a formulaic recitation of the elements of a cause of action will not suffice to state a claim" and "bare allegations" of misappropriation that "lack factual support" should be dismissed.

## II.    PLAINTIFFS' FAILURE TO STATE MISAPPROPRIATION CLAIMS

In the First Amended Complaint (Doc. # 37), the plaintiffs claim that Frankel breached non-disclosure agreements (Counts 1 and 2) and violated the federal Defend Trade Secrets Act (Count 3), the Florida Uniform Trade Secrets Act (Count 4), and the Florida Deceptive and Unfair Trade Practices Act (Count 5). In all five counts, the plaintiffs have incorporated the same conclusory allegations that Frankel:

- received confidential information about the plaintiffs' "business practices, financial relationships and the terms of those relationships, client lists, pricing information, and private financial information" (Doc. # 37, ¶ 23); and

- used this unidentified confidential information "to solicit capital, establish banking relations, recruit clients of the [plaintiffs], and compete with the [plaintiffs'] businesses" and to "make a bid for a broker-dealer in Chicago" (Doc. # 37, ¶ 24).

These bare-bones, conclusory allegations fail to state a claim based on misappropriation: the allegations do not (a) identify the information misappropriated, (b) establish that the information is protected, or (c) describe how and when the defendant misappropriated the information. *See DynCorp Int'l*, 664 F.App'x at 849–50. As a result, the allegations do not provide sufficient particularity to put Frankel on notice as to the basis for the plaintiff's claims. *See id.* (citing *Twombly*, 550 U.S. at 555–56; *AAR Mfg., Inc.*, 98 So. 3d at 188).

### A.    The plaintiffs failed to identify the information misappropriated.

The plaintiffs' misappropriation claims are each based on the same conclusory allegation that Frankel received "confidential information" regarding the plaintiffs' "business practices, financial relationships and the terms of those relationships, client lists, pricing information, and

6

private financial information." (Doc. # 37, ¶ 23). This allegation does not adequately inform Frankel of what he supposedly misappropriated. *See Am. Registry, LLC*, 2013 WL 6332971, at *3 (holding that "customer lists," "sales and operation procedures," "financial data," "sales and marketing strategies and data" were "broad and generic categories of information" that "provide insufficient notice as to the actual trade secrets misappropriated"). Like the inadequate allegations in *American Registry*, the plaintiffs' inadequate allegations in this case are merely a recitation of the categories of confidential information listed in Frankel's non-disclosure agreements. (*Compare* Doc. # 37, ¶¶ 17, 22, *with* ¶ 23); *see Am. Registry, LLC*, 2013 WL 6332971, at *3–4 (finding the allegations to be "nearly identical to the list of confidential and proprietary information contained in the [defendant's agreement]" and "so broad as to be meaningless").

The plaintiffs have not met *DynCorp*'s requirement of "not just identify[ing] broad categories of information," but instead "specifically identif[ying]" the information in a manner that provides notice of the basis for their claims. 664 F.App'x at 849. The First Amended Complaint should therefore be dismissed.

B.     **The plaintiffs failed to establish that the information is protected.**

The plaintiffs' failure to identify the information misappropriated results in a further deficiency in their claims: the plaintiffs have failed to allege facts that, if proven, would establish that the information is protected under the non-disclosure agreements allegedly breached (counts 1 and 2) or the statutory provisions allegedly violated (counts 3, 4, 5). *See infra* Part A. For example, the non-disclosure agreements do not protect information that Frankel knew from his 25 years of experience in the securities industry before entering the agreements. (Doc. # 37, Ex. 1, § 1(b); Ex. 2, § 2(a)–(c)). And the non-disclosure agreements certainly do not prohibit Frankel

from doing business with any of the plaintiffs' clients or business contacts that initiate communications with Frankel. *See id.*

Furthermore, the non-disclosure agreements and statutory provisions allegedly violated only protects information that (1) the lawful owner has taken reasonable measures to keep secret and (2) derives independent economic value from being not generally known or ascertainable. *See* Doc. 37, Exs. 1, 2; 18 U.S.C. § 1839(3)(A)–(B) (requiring that "the owner thereof has taken reasonable measures to keep such information secret" and that "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information"); § 688.002(4)(a)–(b), Fla. Stat. (requiring that the information "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use"; and "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy"). *E.g.*, *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F.Supp.3d 1285, 1293 (M.D. Fla. 2018) ("A plaintiff bringing a claim under the [Defend Trade Secrets Act] must plausibly allege that it (i) "possessed information of independent economic value" that (a) "was lawfully owned by" the plaintiff and (b) for which the plaintiff "took reasonable measures to keep secret," and (ii) the defendant "used and/or disclosed that information," despite (iii) "a duty to maintain its secrecy.") (citing *Primo Broodstock, Inc. v. Am Mariculture, Inc.*, No. 2:17-CV-9-FTM-29CM, 2017 WL 1502714 (M.D. Fla. Apr. 27, 2017)).

Because the plaintiffs have failed to adequately identify any confidential information, they have also failed to establish that the information is protected under the non-disclosure

agreements (Counts 1 and 2), the federal Defend Trade Secrets Act (Count 3), or the Florida Uniform Trade Secrets Act (Count 4). *Cf. Am. Registry, LLC*, 2013 WL 6332971, at *3–4. Furthermore, the plaintiffs have not, and cannot, establish that their unidentified information is protected under the Florida Deceptive and Unfair Trade Practices Act (Count 5) because that act does not apply to misappropriation claims covered by the Florida Uniform Trade Secrets Act. *See* discussion *infra* Part II.C (citing *XTec, Inc. v. Hembree Consulting Servs., Inc.*, 183 F.Supp.3d 1245, 1262–63 (S.D. Fla. 2016)).

### C. The plaintiffs failed to describe how or when Frankel misappropriated protected information.

The plaintiffs' misappropriation claims are each based on the same conclusory allegation that Frankel used unidentified confidential information "to solicit capital, establish banking relations, recruit clients of the [plaintiffs], and compete with the [plaintiffs'] businesses" and to "make a bid for a broker-dealer in Chicago" (Doc. # 37, ¶ 24). These allegations do not sufficiently describe how or when Frankel misappropriated the information. *Am. Registry, LLC*, 2013 WL 6332971, at *3–4. The complaint is devoid of details on how Frankel is alleged to have used the plaintiffs' information to solicit capital, recruit clients, compete in business, or bid for a broker dealer in Chicago. Therefore, the allegations are conclusory and inadequate for the same reasons that the allegations in *American Registry* were conclusory and inadequate. *See id.* at *5 (dismissing complaint that alleged the defendants used protected information to form and operate a new, competing venture, without alleging details on how the protected information was misappropriated).

The plaintiffs have not met *DynCorp*'s requirement of specifically identifying how and when the information was misappropriated. *See* 664 F.App'x at 849–50 (reasoning that the plaintiff's complaint "was very specific in identifying the information allegedly divulged by [the

9

defendant]" and "also alleged a specific time period when [the defendant] divulged this information . . . , the people to whom he divulged it . . . , and the 'large black, zippered portfolio' in which he stored the materials").

**III.   THE DISMISSAL SHOULD BE WITH PREJUDICE BECAUSE AMENDMENT WOULD BE FUTILE**

Dismissal with prejudice is appropriate where granting leave to amend would be futile. *See, e.g.*, *Patel v. Georgia Dep't BHDD*, 485 F.App'x 982, 982 (11th Cir. 2012) ("Futility justifies the denial of leave to amend where the complaint, as amended, would still be subject to dismissal." (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999))).

**A.   The plaintiffs have failed in each of their six prior opportunities to disclose the factual basis for their conclusory allegations of misappropriation.**

The plaintiffs have had six prior opportunities to disclose the factual basis for their claims, but have failed to do so in each instance.

**1.   The plaintiffs did not respond to Frankel's request that they disclose the factual basis for the conclusory allegations of misappropriation in their presuit cease-and-desist letter.**

The plaintiffs sent a pre-suit cease-and-desist letter (Doc. # 16-4), which did not inform Frankel of what he should cease and desist from doing or identify any misappropriation by Frankel. *See* Frankel Decl. (Doc. # 16-1) ¶ 22. The plaintiffs then ignored Frankel's response (Doc. # 16-5) in which he requested more information about the cease-and-desist letter's conclusory allegations. *See* Frankel Decl. (Doc. # 16-1) ¶ 20. Instead of responding to Frankel, the plaintiffs filed their initial complaint (Doc. # 1).

    2.  **The plaintiffs' initial complaint failed to disclose the factual basis for their conclusory allegations of misappropriation.**

  After failing to disclose the factual basis for the conclusory allegations in their presuit cease-and-desist letter, the plaintiffs filed an initial complaint (Doc. # 1) that alleged no facts, only conclusory allegations of misappropriation. *See* Doc. # 1, ¶ 19 (alleging that Frankel "received confidential information from each of the Plaintiffs, including *inter alia*, their business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information of the Plaintiffs and their clients"); ¶ 20 (alleging that Frankel "used confidential information obtained from Plaintiffs to solicit capital, establish banking relations, recruit Plaintiffs' clients, and compete with Plaintiffs' business . . . make a bid for a broker-dealer in Chicago"). The plaintiffs' pre-suit investigation of their claims, if they did one, was so shoddy that they did not realize that they had sued under the wrong agreement until they received documents produced by Frankel with his initial disclosures (Doc. # 35-3).

  Frankel denied the initial complaint's allegations (Doc. # 14) and moved to require the plaintiffs to post a FDUTPA bond (Doc. # 16) for his attorney fees incurred in defending the plaintiffs' frivolous lawsuit.

    3.  **The plaintiffs' response to Frankel's motion for bond failed to disclose the factual basis for their conclusory allegations of misappropriation.**

  The plaintiffs responded to Frankel's motion to require a FDUTPA bond (Doc. # 24) by filing John Joseph Hurry's conclusory declaration that Frankel "was using Alpine's and the other Hurry Parties' confidential information and trade secrets for the benefit of his new business ventures." (Doc. # 24-1, ¶ 7). Hurry's declaration did not disclose the factual basis for this conclusory allegation, nor did the plaintiffs' response (Doc. # 24) in opposition to Frankel's motion.

    **4.**    **The plaintiffs' initial disclosures failed to disclose the factual basis for their conclusory allegations of misappropriation.**

The plaintiffs served initial disclosures (Doc. # 35-2) in which they again disclosed no facts or evidence, and refused to produce or even identify any documents which allegedly supported their conclusory allegations of misappropriation.

    **5.**    **The plaintiffs' responses to Frankel's interrogatories failed to disclose the factual basis for their conclusory allegations of misappropriation.**

Frankel served interrogatories, again asking the plaintiffs to disclose the facts and evidence supporting their conclusory allegations of misappropriation. The plaintiffs again refused to disclose the facts supporting their conclusory allegations, instead giving non-responses (Doc. # 35-1) to Frankel's interrogatories.

    **6.**    **The plaintiffs' responses to Frankel's document requests failed to disclose the factual basis for their conclusory allegations of misappropriation.**

The two non-disclosure agreements attached to the plaintiffs' First Amended Complaint are the only two documents that the plaintiffs produced with their responses (Doc. # 35-4) to Frankel's document requests. By this time, Frankel had collected all of the documents in his possession that he received from the plaintiffs, bates numbed the documents 0001 to 2246, and produced them to the plaintiffs. (Doc. # 35-2). But in their responses to Frankel's document requests, the plaintiffs could not even identify by bates number the documents containing the information that they are claiming Frankel has misappropriated. (*See* Doc. # 35-4).

    **B.**    **The plaintiffs have no evidence to support their claims and are instead on a fishing expedition.**

This plaintiffs' conclusory allegation of misappropriation does not appear to have any factual or evidentiary support: the plaintiffs state that they "are informed and believe and thereon allege that" Frankel used their unidentified confidential information "to solicit capital, establish

12

banking relations, recruit clients of the [plaintiffs], and compete with the [plaintiffs'] businesses" and to "make a bid for a broker-dealer in Chicago." (Doc. # 37, ¶ 24). In their responses to Frankel's interrogatories (Doc. # 35-1), the plaintiffs did not identify any facts or evidence supporting their conclusory allegations of misappropriation. Instead, the plaintiffs merely speculated that Frankel did not have "the wherewithal" to purchase a broker-dealer without using the plaintiffs' unidentified confidential information. (Doc. # 35-1).

In *American Registry*, the court noted a concern "that the complaint, as it stands, would allow plaintiff to embark on a fishing expedition for anything relevant to the broad categories of information identified in the complaint without specifying the trade secrets that have allegedly been misappropriated." 2013 WL 6332971, at *3. In this case, the plaintiffs' fishing expedition is apparent from their first set of interrogatories (attached as Exhibit A) and document production requests (attached as Exhibit B). The plaintiffs asked Frankel to identify and describe, among other things, all of his communications with "all current or former clients of Plaintiffs" (Ex. A, ¶ 2); "all financial institutions that currently have or previously had relationships with Plaintiffs" (Ex. A, ¶ 3); and "all broker-dealers that [Frankel] has contemplated purchasing, whether directly or indirectly, in whole or in part" (Ex. A, ¶ 4). The plaintiffs also requested that Frankel produce all of these communications (Ex. B, ¶¶ 3, 4, 10) as well as all documents and communications that pertain to his "attempts, inquiries, preparations, or desire to purchase any broker-dealer." (Ex. B, ¶ 9). The plaintiffs are on a fishing expedition for evidence of their conclusory allegations of misappropriation because they have no such evidence. *Cf. Am. Registry*, 2013 WL 6332971, at *3. Granting the plaintiffs leave to amend would therefore be futile.

> **C.    As a matter of law, the plaintiffs cannot state a claim for misappropriation under the Florida Deceptive and Unfair Trade Practices Act.**

To state a claim for relief under the Florida Deceptive and Unfair Trade Practices Act (FDUPTA), the plaintiffs must bring allegations that are separate and distinct from their claim for alleged misappropriation of trade secrets under the Florida Uniform Trade Secret Act (FUTSA). *XTec, Inc.*, 183 F.Supp.3d at 1262–63. The plaintiffs have not done so here. Thus, as a matter of law, their claim under FDUTPA fails.

In *XTec*, the court discussed that "the FUTSA displaces 'conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret,' but does not affect other 'civil remedies that are not based upon misappropriation of a trade secret.'" *Id.* at 1262 (quoting § 688.008, Fla. Stat. (2018)). The court noted prior holdings that "[i]n order to pursue claims for additional tort causes of action where there are claims for misappropriation of a trade secret, there must be material distinctions between the allegations comprising the additional torts and the allegations supporting the FUTSA claim." *Id.* at 1263 (quoting *New Lenox Indus., Inc. v. Fenton*, 510 F.Supp.2d 893, 908 (M.D. Fla. 2007) (emphasis added)). The court then "compare[d] the allegations of the FDUTPA claim and the FUTSA claim to determine if the allegations are separate and distinct." *Id.* (citing *Living Color Enters., Inc. v. New Era Aquaculture, Ltd.*, No. 14–62216–CIV, 2015 WL 1526177, at *5 (S.D. Fla. Apr. 3, 2015) (citing *American Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F.Supp.2d 1170, 1181 (M.D. Fla. 2005)).

The plaintiffs' conclusory allegations that Frankel violated FUTSA and FDUTPA are not materially distinct from one another. (*Compare* Doc. # 37, ¶¶ 19–25, *with* ¶¶ 26–29); *see XTec, Inc.*, 183 F.Supp.3d at 1262. The plaintiffs allege Frankel violated FDUTPA "by using the [plaintiffs'] confidential information and trade secrets." (Doc. # 37, ¶ 27). The plaintiffs allege

14

Frankel violated FUTSA "by knowingly misappropriating and wrongfully using the [plaintiffs'] trade secrets for his own benefit." (Doc. # 37, ¶ 24). The plaintiffs cannot state a claim under FDUTPA because their conclusory FDUTPA allegations are not separate and distinct from their conclusory FUTSA allegations. *See XTec, Inc.*, 183 F.Supp.3d at 1262.

## IV.   CONCLUSION

The First Amended Complaint was the plaintiffs' seventh opportunity to disclose the factual basis for their five purported claims. Instead, the plaintiffs are attempting to proceed based on conclusory allegations of misappropriation, in which plaintiffs have failed to (a) identify the information allegedly misappropriated, (b) establish that the information is protected, or (c) describe how and when Frankel misappropriated the information. Frankel therefore requests that this Court dismiss the First Amended Complaint for failure to state a claim upon which relief can be granted.

The dismissal should be with prejudice because it would be futile to grant the plaintiffs leave to amend. The plaintiffs have failed in each of their six prior opportunities to disclose the factual basis for their conclusory allegations of misappropriation. The plaintiffs are in no hurry to share the factual basis for their conclusory allegations because they are still fishing for those facts. Even after Frankel bates numbered and produced every document in his possession that he received from the plaintiffs, the plaintiffs cannot identify any information allegedly misappropriated.

It would be futile to grant the plaintiffs an eighth opportunity to allege the factual basis for their conclusory allegations of misappropriation. The First Amended Complaint should therefore be dismissed with prejudice.

Dated: March 12, 2019     By:  /s/ Harold Holder
David C. Banker (Fla. Bar No. 352977)
Harold D. Holder (Fla. Bar No. 118733)
BUSH ROSS, PA
1801 N. Highland Avenue
Tampa, Florida 33602
Phone: 813-224-9255
Fax:    813-223-9620
Primary: dbanker@bushross.com;
hholder@bushross.com
Secondary: aflowers@bushross.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 12, 2019, all counsel of record who consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/EFC participants:

Shane B. Vogt, Esquire
Kenneth G. Turkel, Esquire
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, FL  33602
kturkel@bajocuva.com
svogt@bajocuva.com

Charles J. Harder, Esquire
Jordan Susman, Esquire
HARDER LLP
132 South Rodeo Drive, Suite 301
Beverly Hills, CA 90212-2406
charder@harderllp.com
jsusman@harderllp.com
*Attorneys for Plaintiffs*

By:  *Harold Holder*