UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAYMAN SECURITIES CLEARING
AND TRADING LTD; THE HURRY
FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; ALPINE SECURITIES
CORPORATION,

    Plaintiffs,

vs.

CHRISTOPHER FRANKEL,

    Defendant.
_____/

CASE NO.: 8:18-cv-02869-VMC-CPT

**RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT[1]**

Plaintiffs, Cayman Securities Clearing and Trading LTD, the Hurry Family Revocable Trust, Scottsdale Capital Advisors, and Alpine Securities Corporation (collectively the "Hurry Parties"), respond in opposition to Defendant Christopher Frankel's ("Frankel") Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion") [Doc. 38], as follows:

**I.  PLAUSIBLY ALLEGED FACTS**

On November 21, 2018, the Hurry Parties commenced this action to stop and remedy Frankel's continuing use of their proprietary information and to remedy their losses. [Doc. 1]. Frankel did not seek to dismiss the original complaint, although he did file a Motion for Bond Under section 501.211(3) (the "Bond Motion"), claiming the lawsuit was frivolous. [Doc. 16]. On

---

[1] Defendant's Motion should have been titled a **partial** motion to dismiss because it does not address the Hurry Parties' breach of contract claims.

January 15, 2019, the Court denied Frankel's Bond Motion and his Request for Oral Argument and Evidentiary Hearing. [Doc. 31].

On February 11, 2019, the Hurry Parties moved for leave to amend their Complaint [Doc. 34] to ensure the proper parties were seeking to enforce the proper written agreements with the Defendant. The Defendant opposed the amendment [Doc. 35], arguing there were "no facts demonstrating the plaintiffs have meritorious, plausible claims."

On February 26, 2019, the Court granted the Hurry Parties leave to amend, and they filed the operative FAC. [Doc. 36, 37].

On March 12, 2019, Frankel filed the current Motion. [Doc. 38]. The Motion seeks to partially dismiss the FAC; it does not seek the dismissal of the Hurry Parties' breach of contract claims. (Doc. 38 at 6-9 & 14-15). The Motion only attacks the Hurry Parties' claims for violation of the Defend Trade Secrets Act, violation of the Florida Uniform Trade Secret Act ("FUTSA"), and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). (*Id.*).

The Motion should be denied because the Hurry Parties plausibly allege Frankel misappropriated their confidential and trade secret information. Further, the FUTSA claim does not preempt the FDUTPA claim because the FUTSA claim is based on Frankel's **misappropriation** of information whereas their FDUTPA claim is based upon Frankel's **use** of the information.

## II.   PLAUSIBLY ALLEGED FACTS

From August 2015 through October 2018, Defendant worked for Alpine Securities Corporation ("Alpine"), a full service broker-dealer, as a high-level employee. (First Amended Complaint ("FAC") [Doc. 37], ¶¶ 11-12). As part of his employment, Frankel was exposed to and entrusted with information that is commercially valuable to Alpine and the other Hurry Parties.

2

(*Id.* at ¶¶ 13 & 23). To ensure that this information remained secret and was not used outside the scope of Frankel's employment, the Hurry Parties and Frankel entered into two written nondisclosure agreements (the "NDAs"). (*Id.* at ¶¶ 13-22, Exhs. 1-2).

Frankel left Alpine in October 2018, and Hurry Parties soon thereafter learned that Frankel was using their confidential information and trade secrets for the benefit of his new business ventures. (*Id.* at ¶¶ 23-24). Specifically, Frankel was using confidential information about Alpine's clients, finances, financial relationships, and business practices to solicit capital, establish banking relations, and recruit clients of the Hurry Parties so that he could purchase his own broker-dealer and compete with the Hurry Parties' businesses. (*Id.* at ¶ 24).

### III.  STANDARD OF REVIEW FOR MOTION TO DISMISS

A motion to dismiss cannot be granted if the allegations in the complaint, when taken as true and construed in the light most favorable to the plaintiff, "state a claim to relief that is plausible on its face." *DynCorp Int'l v. AAR Airlift Grp., Inc.,* 664 F. App'x. 844, 847 (11th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (this requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" but does not rise to the level of "detailed factual allegations"). When deciding a motion to dismiss, the court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. *Lowe v. STME, LLC*, 354 F. Supp. 3d 1311 (M.D. Fla. 2019).

### IV. MISAPPROPRIATION OF TRADE SECRETS CLAIMS ARE PLAUSIBLY ALLEGED

Misappropriation claims under the Defend Trade Secrets Act and the FUTSA are sufficiently pleaded if the complaint: (A) identifies the information misappropriated, (B) establishes that the information is protected, and (C) describes how and when the defendant misappropriated the information. *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1293 (M.D. Fla. 2018) (Defend Trade Secrets Act); *DynCorp Int'l v. AAR Airlift Group, Inc.*, 664 F. App'x at 849–50 (FUTSA).  The FAC satisfies these requirements.

#### A. The FAC Sufficiently Identifies The Information Misappropriated

In order to sufficiently "identify the information misappropriated," a plaintiff "need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." *DynCorp Int'l*, 664 F. App'x. at 848 (citing *Twombly*, 550 U.S. at 555–56.)  While this requires more than "broad categories of information, such as financial and technical data," the plaintiff is **not** obligated to identify each trade secret with reasonable particularity. *DynCorp Int'l*, 664 F. App'x. at 848.

Frankel's Motion cites to *DynCorp Int'l*, in which the plaintiff sufficiently identified the information misappropriated by stating:

> "[t]he trade secrets obtained by AAR included confidential and proprietary [DynCorp] financial and technical data relating to the Incumbent [WASS] Contract, such as lists of the personnel employed by [DynCorp] to provide services under the Incumbent Contract, the salaries and pay differentials for those personnel on the Incumbent Contract, other pricing and financial data about [DynCorp's] performance on the Incumbent Contract, and technical data about [DynCorp's] staffing approach and business operations pertaining to the Incumbent Contract."

664 F. App'x at 848.  Here, the FAC identifies the information misappropriated in a similar manner:

> "Beginning in or about June 2015, and continuing through September 2018, Defendant received confidential information from each of the Hurry Parties, including inter alia, the Hurry Parties' business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information of the Hurry Parties and their clients. [¶]
> Frankel used "confidential information obtained from the Hurry Parties to solicit capital, establish banking relations, recruit clients of the Hurry Parties, and compete with the Hurry Parties' businesses."

(FAC, ¶¶ 23-24).

The Hurry Parties did not plead that Frankel "broad categories of information." They specified Frankel misappropriated certain types of confidential financial information and the terms of the Hurry Parties' relationships with financial institutions, as well as business practices, client lists, and pricing information. (*Id.*).

The FAC adequately identifies the information Frankel misappropriated to the extent required at the dismissal stage. Consequently, the Motion should be denied.

### B. The FAC Sufficiently Alleges The Information Frankel Misappropriated Is Protected

To sufficiently plead that information is protected, a plaintiff need only allege that it took reasonable steps to maintain the secrecy of the information. *Am. Registry, LLC v. Hanaw*, No. 2:13-CV-352-FTM-29, 2013 WL 6332971, at *3 (M.D. Fla. Dec. 5, 2013). "[W]hether a party has taken reasonable steps under the circumstances to preserve its trade secrets is a factual inquiry that cannot be resolved on a motion to dismiss." *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1287 (S.D. Fla. 2010).

Courts routinely hold that a complaint sufficiently alleges information is protected by stating the plaintiff instructed persons to maintain the confidentiality of the information or to sign nondisclosure agreements regarding such information. *See e.g., Supercase Enter. Co. v. Marware,*

*Inc.*, No. 14-CV-61158-CIV, 2015 WL 11622424, at *7 (S.D. Fla. Oct. 26, 2015); *Treco Int'l S.A.*, 706 F. Supp. 2d at 1287.  Here, the FAC alleges Frankel signed two NDAs that required him to "keep all Confidential Information strictly confidential by using a reasonable degree of care [and]… not disclose any Confidential Information received by [him] to any third parties." (FAC, ¶¶ 13-22 & Exhs. 1-2).  The second NDA required Frankel to return all originals and copies of all documents, records, software programs, media and other materials containing any "Confidential Information" at the termination of his employment. (FAC, Exh. 2).  The FAC alleges "Plaintiffs took reasonable measures to safeguard their Trade Secrets by, among other things, restricting access to the Trade Secrets, and taking other security measures to protect their confidentiality." (FAC ¶¶ 9-10, 21)

> Confidential Information is a defined term within the NDAs and includes:
>
> > (a) technical information concerning Company's products and services, including product know-how, formulas, designs, devices, diagrams, software code, test results, processes, inventions, research projects and product development, technical memoranda and correspondence; (b) information concerning Company's business, including cost information, profits, sales information, accounting and unpublished financial information, business plans, markets and marketing methods, customer lists and customer information, purchasing techniques, supplier lists and supplier information and advertising strategies; (c) information concerning Company's employees, including salaries, strengths, weaknesses and skills; (d) information submitted by Company's customers, suppliers, employees, consultants or co-venture partners with Company for study, evaluation or use; and (e) any other information not generally known to the public which, if misused or disclosed, could reasonably be expected to adversely affect Company's business.

(FAC, Exhs. 1-2).

The definition of Confidential Information encompasses the misappropriated information identified in the FAC. Accordingly, the Hurry Parties have sufficiently alleged the information at issue is protected, and the Motion should be denied.

### C. The FAC Sufficiently Describes How And When Frankel Misappropriated The Information

To state a claim for misappropriation, a complaint must include more than conclusory allegations regarding the defendant's misappropriation of information. *Am. Registry, LLC*, 2013 WL 6332971, at *3. However, this does not obligate the plaintiff to allege each specific instance of misappropriation. Courts are aware that "it is not common for a trade secret misappropriation plaintiff to know, prior to discovery, the details surrounding the purported misappropriation." *Id.* Consequently, a complaint sufficiently pleads misappropriation if it provides "adequate factual support" to "inform defendants what they supposedly misappropriated." *Id.* For example, in *Sentry Data Sys., Inc. v. CVS Health*, No. 18-CV-60257, 2018 WL 7081811, at *10 (S.D. Fla. Aug. 28, 2018), the court held that the complaint sufficiently alleged a claim because it alleged that the defendants misappropriated information by using confidential customer lists to call customers and convince them to switch to the defendants' company. Similarly, in *DynCorp Int'l*, the complaint was deemed sufficient because it alleged that the defendant gave his new employer a binder of plaintiff's employee lists, salary information, and other emails.[2] 664 F. App'x at 848.

Here, the FAC alleges more than enough facts to demonstrate Frankel misappropriated the Hurry Parties' information. (FAC, ¶ 24). Among other things, the FAC alleges that, in September 2018, after leaving Alpine, Frankel used the Hurry Parties' confidential information to:

---

[2] *DynCorp* is unique because a whistleblower notified the plaintiff that the defendant had and was using the plaintiff's material. 664 F. App'x. at 848. Typically, a plaintiff does not learn the specifics of the misappropriation until after discovery is underway. *See Am. Registry, LLC*, 2013 WL 6332971, at *3.

7

- Solicit capital;
- Establish banking relations;
- Recruit clients of the Hurry Parties, and;
- Compete with the Hurry Parties' businesses by using their confidential information to make a bid for a broker-dealer in Chicago.

(*Id.*).  Thus, the FAC sufficiently alleges Frankel misappropriated confidential information, and the Motion should be denied.

### V. THE HURRY PARTIES' FUTSA CLAIM DOES NOT PRECLUDE THEIR FDUTPA CLAIM

Frankel's argument that the Hurry Parties' FUTSA claim precludes their FDUTPA claim is wrong.  The FUTSA displaces "conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret," but does not affect other "civil remedies that are not based upon misappropriation of a trade secret." *XTec, Inc. v. Hembree Consulting Servs., Inc.,* 183 F. Supp. 3d 1245, 1262–63 (S.D. Fla. 2016) (quoting Fla. Stat. § 688.008).

Simply stated, the FUTSA would preempt the Hurry Parties' FDUTPA claim only if "allegations of trade secret misappropriation alone comprise the underlying wrong" of their FDUTPA claim. *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1180 (M.D. Fla. 2005).

That is not the case here.  The Hurry Parties' allege Frankel violated the FUTSA by **taking** their confidential information.  (FAC, ¶ 24) ("Defendant violated those duties by knowingly misappropriating and wrongfully using the Hurry Parties' trade secrets for his own benefit."). Their FDUTPA claim is based on what Frankel **did** with the information; specifically, that he used the information pertaining to "a common pool of customers and clients, financial institutions, and investors in the broker-dealer business" to "unfairly compete with the Hurry Parties." (FAC, ¶ 28).  Because there are material distinctions between the Hurry Parties'

8

FUTSA claim and their FDUTPA claim, dismissal on the basis of preemption is not warranted. *See e.g., B & D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, No. 16-62364-CIV, 2017 WL 8751753, at *3 (S.D. Fla. Feb. 10, 2017); *Allied Portables, LLC v. Youmans*, No. 2:15-CV-294-FTM-38CM, 2016 WL 259548, at *4 (M.D. Fla. Jan. 21, 2016); *Audiology Distribution, LLC v. Simmons*, No. 8:12-CV-02427-JDW, 2014 WL 7672536, at *10 (M.D. Fla. May 27, 2014) (finding no FUTSA preemption where "the crux of [tortious interference claim] is not the misappropriation of trade secrets, but the use of that information to interfere with [plaintiff's] business relationships"). Accordingly, the FDUTPA claim is not preempted and the Motion should be denied.

### VI.  IF FRANKEL'S MOTION IS GRANTED, IT SHOULD BE WITH LEAVE TO AMEND

"The grant or denial of an opportunity to amend is within the discretion of the district court." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. Pro. § 15(a)(2). In deference to Federal Rule of Civil Procedure 15(a)(2), courts will generally grant leave to amend unless the defendant can articulate a substantial reason to deny such relief. *Lytle v. Lowe's Home Centers, Inc*., No. 8:12-CV-1848-T-33TBM, 2013 WL 12155009, at *1 (M.D. Fla. July 2, 2013) (reasons to deny leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment").

If Frankel's Motion is granted, there is no substantial reason to deny the Hurry Parties leave to amend their complaint. Leave would not be futile because the Hurry Parties could and would supplement the FAC with additional allegations regarding (i) the types of information at issue, (ii)

9

the efforts they took to maintain their information's secrecy beyond requiring NDAs from those with access to the information, and (iii) how Frankel misappropriated their information.

Frankel's arguments concerning the Hurry Parties' alleged failure to provide him with documentary evidence of their confidential information or his misappropriation must be disregarded for several independent reasons. First, Frankel's argument regarding the Hurry Parties' purported failure to produce evidence in support of their claims is a red herring. Whether and what documents the Hurry Parties have produced thus far in discovery is not relevant to their ability to amend their complaint. Second, Frankel intentionally omits the fact that the Hurry Parties expressly stated in their discovery responses that they will produce documentary evidence as soon as the parties enter into a confidentiality agreement. Because this action arises from Frankel's misappropriation of confidential information, the Hurry Parties are justified in limiting certain details from the complaint and requiring a confidentiality agreement before they disclose detailed confidential information.

## VII.   CONCLUSION

For the above-mentioned reasons, the Motion should be denied. If the Motion is granted in whole or in part, the Hurry Parties respectfully request leave to amend to cure any pleading deficiencies.

Dated this 26th day of March 2019.

> */s/  Shane B. Vogt*
> Kenneth G. Turkel – FBN 867233
> Shane B. Vogt – FBN 257620
> BAJO | CUVA | COHEN | TURKEL
> 100 North Tampa Street, Suite 1900
> Tampa, Florida 33602
> Tel: (813) 443-2199
> Fax: (813) 443-2193
> E-mail: kturkel@bajocuva.com
> E-mail: svogt@bajocuva.com

and

Charles J. Harder
Jordan Susman
HARDER LLP
132 South Rodeo Drive, Fourth Floor
Beverly Hills, CA  90212-2406
Tel: (424) 203-1600
Fax: (424) 203-1601
E-mail:  charder@harderllp.com
E-mail:  jsusman@harderllp.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on March 26, 2019, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

    */s/ Shane B. Vogt*
    Attorney