UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAYMAN SECURITIES CLEARING
AND TRADING LTD; THE HURRY
FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

    Plaintiffs,

v.                                    Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

    Defendant.
_____/

## FRANKEL'S RESPONSE TO PLAINTIFFS' MOTIONS TO COMPEL

The defendant, Christopher L. Frankel, through counsel, requests that the Court deny the plaintiffs' motions to compel (Doc. ## 40, 41) and require the plaintiffs to pay Frankel's costs and attorney fees incurred in opposing the motions.

## MEMORANDUM OF LAW

As set forth in Frankel's pending motion to dismiss (Doc. # 38), which is set for hearing on April 26, 2019 (Doc. # 42), the plaintiffs are attempting to proceed with five purported claims, each of which is based on conclusory allegations of misappropriation. But the plaintiffs have repeatedly failed to identify the information allegedly misappropriated, to establish that the information is protected, and to describe how and when Frankel allegedly misappropriated the information.[1]

---

[1] *See* Doc. # 38 at 6–9 (discussing plaintiffs' failure to identify the factual basis for their claims in their first amended complaint); *id.* at 10–12 (outlining plaintiffs' failure to identify the factual basis for the claims in their presuit demand, initial complaint, response to Frankel's motion for bond, initial disclosures, responses to interrogatories, and responses to document requests).

1

The plaintiff in a misappropriation case is not entitled to use discovery for a fishing expedition. The plaintiff must first identify the misappropriation so that the scope of discovery may be ascertained. Otherwise the plaintiff might try to mold the alleged causes of action to the documents and information obtained through discovery. And the plaintiff might attempt to improperly use discovery to monitor the defendant's business and obtain information that the plaintiff could not otherwise learn. In misappropriation cases, courts mitigate these risks by narrowing the scope of discovery to the misappropriation at issue, which the plaintiff must first identify before compelling discovery from the defendant.

In this case, the improper purposes behind the plaintiffs' discovery requests are apparent. The plaintiffs are seeking to monitor Frankel's communications with their (unidentified) current and former clients and financial institutions even though there is no agreement prohibiting Frankel from soliciting or doing business with their current or former clients and financial institutions. Notably, before plaintiff Alpine hired Frankel as its CEO, Frankel had 25 years of experience in the securities business, during which Frankel knew and worked with Alpine's clients. The plaintiffs are also seeking to monitor Frankel's competition with the plaintiffs and his contemplated purchases of broker dealers even though no agreement prohibits him from competing in the securities business or from purchasing a broker-dealer.

To prevent the plaintiffs from using discovery for these improper purposes, the scope of discovery should be limited to the alleged misappropriation upon which the plaintiffs' claims are based. Because the plaintiffs have repeatedly failed to identify the basis for their claims, they cannot show that their requests are within the permissible scope of discovery. This Court should therefore deny the plaintiffs' motions to compel and award Frankel the costs and attorney fees incurred in opposing the plaintiffs' unjustified motions.

**I.      DISCOVERY IN MISAPPROPRIATION CASES**

All five of the plaintiffs' purported claims in this case are based on alleged misappropriation of (unidentified) information that the plaintiffs allege is protected by non-disclosure agreements and state and federal trade secret statutes. (*See* Doc. # 36). Resolving discovery disputes in misappropriation cases involves balancing competing interests of allowing discovery and protecting against discovery abuses. *Arthrex, Inc. v. Parcus Med., LLC*, No. 2:10-CV-151, 2010 WL 11622727, at *1 (M.D. Fla. Dec. 16, 2010). The "court must balance the competing interests with the specific facts in the case." *Id.* at *2.

In *Arthrex*, the court "weighed the competing interests of [the plaintiff] needing discovery on the issue of the trade secrets it alleges to have been misappropriated, and [the defendant's] need to provide discovery on only the trade secrets at issue in the case." *Id.* The court considered the plaintiff's interrogatory responses and determined that the plaintiff had provided a sufficient description of the trade secrets allegedly misappropriated and how the defendants had misappropriated the trade secrets. *See id.* (finding that the plaintiff had identified the specific products that the trade secrets were regarding; the specific information allegedly misappropriated (information on customers, costs, volume, profit, market strategies, marketing and sales, manufacturing techniques, and distributors); and the specific ways that defendant used the information (among other things, to develop knock-off products, market the knock-off products to the plaintiff's customers, and to target the plaintiff's employees and distributors)).

The court in *Arthrex* based its consideration of the sufficiency of the plaintiff's interrogatory responses on the following four policy concerns considered by other district courts in resolving similar disputes:

(1) "that the trade secret plaintiff could be on a 'fishing expedition' to discover trade secrets of a competitor";

> (2) "until the trade secret is identified, the parties and the court cannot determine if the discovery requested is relevant";
>
> (3) "a defendant cannot mount a defense until it knows with some certainty which trade secrets were allegedly misappropriated"; and
>
> (4) "requiring a trade secret plaintiff to specifically identify the trade secrets at issue will ensure that the trade secret plaintiff does not mold its cause of action to the discovery it obtains."

*Id.* at *1–2 (citing *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680–81 (N.D. Ga. 2007)).

## II.  PLAINTIFFS' MOTIONS TO COMPEL SHOULD BE DENIED

In this case, the plaintiffs have repeatedly failed to identify the information allegedly misappropriated and how Frankel allegedly misappropriated the information. *See supra* note 1. Unlike the plaintiff in *Arthrex*, the plaintiffs in this case served non-responsive interrogatory answers (Doc. # 35-1) that do not identify the information allegedly misappropriated or how Frankel allegedly misappropriated the information.

Instead of identifying the information misappropriated, the plaintiffs' interrogatory answers list broad, boilerplate, generic categories of information that do not provide sufficient notice as to the information misappropriated; instead the answers merely recite the categories of information listed in Frankel's non-disclosure agreements. *Compare* Doc. # 35-1, ¶ 3, *with* Doc. # 36, Exs. A, B. *See Am. Registry, LLC v. Hanaw*, No. 2:13-CV-352, 2013 WL 6332971, at *3–4 (M.D. Fla. Dec. 5, 2013) (finding broad categories that were nearly identical to the list of information in the defendant's agreement to be insufficient).

Instead of identifying how Frankel misappropriated the information, the plaintiffs' interrogatory answers provide mere speculation that Frankel did not have the "wherewithal" to

4

purchase his own broker dealer firm and compete with his former employer. *See* Doc. #35-1, ¶ 4 (repeated in ¶¶ 5, 6, 7, 9). Unlike the plaintiff's interrogatory answers in *Arthrex*, the plaintiffs' interrogatory answers in this case do not provide sufficient information to determine the scope of discovery. *See* 2010 WL 11622727, at *2 (finding sufficient the plaintiff's interrogatory answer, which specifically identified that defendants were, among other things, misappropriating trade secrets to develop knock-offs of specific products and market those knock-off products to plaintiff's customers).

In this case, the plaintiffs argue that they are entitled to broad discovery, but they fail to mention that this Court should also consider Frankel's interest in limiting discovery to the misappropriation at issue (if there actually was any).[2] Because the plaintiffs have not identified the information allegedly misappropriated or how Frankel allegedly misappropriated the information, "the parties and the court cannot determine if the discovery requested is relevant." *Arthrex, Inc.*, 2010 WL 11622727, at *1 (citing *DeRubeis*, 244 F.R.D. at 680).

The plaintiffs should not be permitted on a "fishing expedition" to discover information about Frankel's business activities and to "mold [their] cause[s] of action to the discovery [they] obtain[]." *Id.* at *1 (citing *DeRubeis*, 244 F.R.D. at 680–81). Frankel's responses and objections to the plaintiffs' document requests and interrogatories (discussed individually below) are therefore appropriate, and the plaintiffs' motions to compel should be denied.

---

[2] Frankel worked in the securities business for 25 years before plaintiff Alpine hired Frankel as CEO. (Doc. # 16-1, ¶¶ 3, 9). Before working for Alpine, Frankel co-authored a comprehensive guidebook on clearing micro-cap securities, he worked for one of Alpine's chief competitors, and he knew and worked with Alpine's clients. (*Id.* ¶¶ 7, 8, 15). Frankel is not aware of there being anything proprietary or confidential about the plaintiffs' business. Frankel does not expect that the plaintiffs will be able to identify any misappropriation of confidential information or trade secrets. The reason that the plaintiffs have failed to do so at every opportunity in this case is because there is no merit to the plaintiffs' conclusory allegations of misappropriation upon which their five alleged causes of action are purportedly based.

5

### A. The court should sustain Frankel's objections to the plaintiffs' third, fourth, ninth, tenth, and eleventh document requests.

The plaintiffs requested that Frankel produce all documents and communications with: "Plaintiffs' current or former clients" and "financial institutions that currently have or previously had relationships with Plaintiffs." (Doc. # 41 at 4–5, 7 (quoting Request Nos. 3, 4)). During Frankel's 25 years in the securities business before Alpine hired Frankel as CEO, Frankel knew and worked with the plaintiffs' clients. (*Id.* ¶¶ 3, 9, 10, 15). This case does not involve a non-solicitation agreement. Frankel is allowed to communicate with the plaintiff's current and former clients and financial institutions. The plaintiffs may not use discovery to monitor Frankel's lawful communications.

The plaintiffs requested that Frankel produce all documents and communications with: "any broker-dealers that you have considered purchasing" and "that pertain to Your attempts, inquiries, preparations, or desire to purchase any broker-dealer." (Doc. # 41 at 6–7 (quoting Request Nos. 9, 10)). The plaintiffs also requested that Frankel produce all documents and communications with Ziv Investment Company, a broker-dealer that Frankel was considering purchasing. (Doc. # 41 at 7 (quoting Request No. 11)). This case does not involve a non-compete agreement. Frankel is allowed to purchase a broker dealer and compete in the securities market. The plaintiffs may not use discovery to monitor Frankel's lawful competition in the securities market.

Furthermore, none of these broad requests for documents and communications are limited in any way to the subject matter of the plaintiffs' claims in this case—alleged misappropriation of information protected under non-disclosure agreements and state and federal trade secret statutes. As discussed above in Part I, the case law on discovery disputes in misappropriation cases provides for narrowing the scope of discovery to the misappropriation identified by the

plaintiff. Because plaintiffs have repeatedly failed to identify the alleged misappropriation, the permissible scope of discovery in this case is not ascertainable. This Court should therefore sustain Frankel's objections and deny the plaintiffs' motion to compel responses to Requests 3, 4, 9, 10, and 11.

The plaintiffs' argument that they are offering a confidentiality agreement skips the first step of the analysis—whether the plaintiffs are entitled to the discovery in the first place. And Frankel has legitimate concerns that entry of a confidentiality agreement will not prevent the plaintiffs from improperly using the information learned in discovery. The plaintiffs are controlled by John Joseph Hurry, who has a history of breaking the rules to gain a competitive advantage and filing lawsuits as a tactic rather than for the purpose of resolving a legitimate dispute. *See* Doc. # 22 (granting Frankel's request that the court take judicial notice of Docs. ## 15-2, 15-3, and 15-4).

### B.     Frankel's response to the plaintiffs' seventh document request is sufficient.

The plaintiffs' motion to compel is also directed to Request No. 7, for documents and communications with Jim Kelly. (Doc. # 41 at 6 (quoting Request No. 7)). Frankel did not object to this request, and nothing is unclear about Frankel's response. (*See id.*) The plaintiffs contemporaneously served an interrogatory requesting that Frankel "Identify the date, time, place, and a summary of all oral communications between you and Jim Kelly since August 1, 2018." (Doc. # 40 at 7 (quoting Interrogatory No. 7)). Frankel answered "I recall speaking with Jim Kelly once after August 1, 2018, to ask his opinion regarding the value of a broker-dealer which I was contemplating purchasing." (Doc. # 40 at 7 (quoting answer to Interrogatory No. 7)). In his contemporaneously served response to the document request, Frankel stated: "No written or electronic documents concerning my phone call with Jim Kelly." (Doc. # 41 at 6

7

(quoting response to Request No. 7)). The plaintiffs know Jim Kelly. They disclosed him as a witness who allegedly has knowledge about the plaintiffs' claims. Nothing is unclear about Frankel's answer and response. The plaintiffs' motion to compel a different response to Document Request No. 7 should therefore be denied.

> **C.    The court should sustain Frankel's objection to the plaintiff's fourth interrogatory.**

The plaintiffs' fourth interrogatory requested that Frankel "Identify all broker-dealers that you have contemplated purchasing, whether directly, indirectly, in whole or in part, since August 1, 2018." (Doc. # 40 at 6 (quoting Interrogatory No. 4)). As discussed above, this case does not involve a non-compete agreement. Frankel is allowed to purchase a broker dealer and compete in the securities market. The plaintiffs should not be permitted to use discovery to monitor Frankel's competition in the securities market. The scope of discovery in this case should be limited to the misappropriation upon which the plaintiffs' claims are based. The plaintiffs, having repeatedly failed to identify the misappropriation upon which their claims are based, should not be permitted on a fishing expedition in which they can compel Frankel to disclose all of his business activities.

Furthermore, and as discussed above, the plaintiffs' argument that they are offering a confidentiality agreement skips the first step of the analysis—whether the plaintiffs are entitled to the discovery in the first place. And Frankel has legitimate concerns that entry of a confidentiality agreement will not prevent the plaintiffs from improperly using the information learned in discovery. The plaintiffs are controlled by John Joseph Hurry, who has a history of breaking the rules to gain a competitive advantage and filing lawsuits as a tactic rather than for the purpose of resolving a legitimate dispute. *See* Doc. # 22 (granting Frankel's request that the court take judicial notice of Docs. ## 15-2, 15-3, and 15-4).

**D.     The court should sustain Frankel's objection to the plaintiffs' definition of "identify" as it relates to the plaintiffs' second, third, and seventh interrogatories.**

Frankel answered the plaintiffs' second, third, and seventh interrogatories. The plaintiffs' motions to compel directed to these interrogatories is based on the plaintiffs' argument that Frankel's answers do not meet the plaintiffs' 183-word definition of "identify" that the plaintiffs' included with their interrogatories. (Doc. # 38-1). Frankel objected to this definition, and his objection should be sustained with respect to the plaintiffs' arguments that Frankel has not sufficiently answered the plaintiffs' second, third, and seventh interrogatories

The plaintiffs' second interrogatory requested that Frankel "Identify all current or former clients of Plaintiffs with whom you have communicated since August 1, 2018." (Doc. # 40 at 4 (quoting Interrogatory No. 2)). Frankel listed nine individuals and designated the entity or entities with which each individual was affiliated. (*Id.* at 4 (quoting Answer to Interrogatory No. 2)). The plaintiffs argue that this Court should compel Frankel to list "the full name, present or last known residential and business address and phone number(s), and such person's relationship, if any, to you" for each person identified. (*Id.* at 5). The plaintiffs should have contact information for their current and former clients. Among other things, federal securities laws require plaintiffs to keep records of their clients' contact information. To the extent that the plaintiffs do not have such information, Frankel should not be required to provide that information to the plaintiffs. The plaintiffs' request for this information illustrates that they are on a fishing expedition.

The plaintiffs' third interrogatory requested that Frankel "Identify all financial institutions that currently have or previously had relationships with Plaintiffs with whom you have communicated since August 1, 2018." (Doc. # 40 at 5 (quoting Interrogatory No. 3)). Frankel listed two financial institutions and stated that the "communications did not concern

9

plaintiffs' confidential information." (*Id.* at 5 (quoting Interrogatory Answer No. 3)). Frankel should not be required, as the plaintiffs argue, to list the "current name for each entity, its principal office address and telephone number, and the name of the person with whom most of the communications with such entity are made or the name of the person whom Defendant believes would have personal knowledge regarding the information sought in the interrogatory." (*Id.* at 6). The plaintiffs should not be permitted to fish for Frankel's contacts with these financial institutions. Nor should they be permitted to pry into Frankel's relationships with these financial institutions. Discovery in this case should be limited in scope to the misappropriation at issue, which the plaintiffs have failed to identify.

The plaintiffs' seventh interrogatory requested that Frankel "Identify the date, time, place, and summary of all oral communications between you and Jim Kelly since August 1, 2018." (Doc. # 40 at 7 (quoting Interrogatory No. 7)). Frankel answered: "I recall speaking with Jim Kelly once after August 1, 2018, to ask his opinion regarding the value of a broker-dealer which I was contemplating purchasing." (*Id.* at 7 (quoting Interrogatory Answer No. 7)). Frankel should not be required, as the plaintiffs argue, to "identif[y] the broker-dealer Defendant discussed with Jim Kelly." (*Id.* at 7). As discussed above, the plaintiffs should not be permitted to fish for information about broker-dealers that Frankel has considered purchasing. The scope of discovery in this case should be limited to the misappropriation at issue, which the plaintiffs have failed to identify.

### E.    The Court should deny the plaintiffs' request for costs and attorney fees and award Frankel his costs and attorney fees.

The plaintiffs' motions to compel are unjustified. The plaintiffs have repeatedly failed to identify the factual basis for their claims. *See supra* note 1. To the extent that the plaintiffs' claims are not dismissed with prejudice, as requested in Frankel's pending motion to dismiss

(Doc. # 38), which is set for hearing on April 26, 2019 (Doc. # 42), the plaintiffs should be required to disclose the factual basis for their claims in their interrogatory answers (Doc. # 35-1).

As with every other opportunity to disclose the factual basis for their claims, the plaintiffs have failed in their interrogatory answers to identify the information allegedly misappropriated or how Frankel allegedly misappropriated the information. Frankel intends to file a separate motion to compel regarding the plaintiffs' interrogatory answers. But the Court should also consider the inadequacy of the plaintiffs' interrogatory answers in considering the costs and attorney fees to award in resolving the plaintiffs' motions to compel. Because the plaintiffs' motions to compel are unjustified—particularly given the plaintiffs' repeated failures to disclose the factual basis for their claims—the plaintiffs should be required, under Federal Rule of Civil Procedure 37(a)(5)(B), to pay Frankel's costs and attorney fees.

### III.   CONCLUSION

Discovery disputes in misappropriation cases involve balancing competing interests of allowing discovery but protecting against discovery abuses. To strike this balance, courts require the plaintiff in a misappropriation case to identify the information misappropriated and how defendant misappropriated the information. If the plaintiff does not sufficiently identify these facts, then the relevancy of the plaintiffs' discovery requests cannot be ascertained. The plaintiff should not be permitted to conduct a fishing expedition, then later mold his cause of action to the discovery obtainer. Nor should the plaintiff be permitted to improperly use discovery to learn information about his competitor.

The plaintiffs in this case have repeatedly failed to identify the factual basis for their claims. The plaintiffs have not identified, in their pleadings or interrogatory responses, the information misappropriated or how Frankel allegedly misappropriated the information. The

plaintiffs should not be permitted to conduct a fishing expedition. The scope of discovery should be limited to the misappropriation that is the subject of the plaintiffs' claims. Because the plaintiffs have repeatedly failed to identify this misappropriation, their motions to compel should be denied, and plaintiffs should be required to pay Frankel's costs and attorney fees.

Dated: April 9, 2019                By:    */s/ Harold Holder*
                                           David C. Banker (Fla. Bar No. 352977)
                                           Harold D. Holder (Fla. Bar No. 118733)
                                           BUSH ROSS, PA
                                           1801 N. Highland Avenue
                                           Tampa, Florida 33602
                                           Phone: 813-224-9255
                                           Fax:    813-223-9620
                                           Primary: dbanker@bushross.com;
                                           hholder@bushross.com
                                           Secondary: aflowers@bushross.com
                                           *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 9, 2019, all counsel of record who consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/EFC participants:

Shane B. Vogt, Esquire
Kenneth G. Turkel, Esquire
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, FL  33602
kturkel@bajocuva.com
svogt@bajocuva.com

Charles J. Harder, Esquire
Jordan Susman, Esquire
HARDER LLP
132 South Rodeo Drive, Suite 301
Beverly Hills, CA 90212-2406
charder@harderllp.com
jsusman@harderllp.com
*Attorneys for Plaintiffs*

                                    By:    *Harold Holder*