UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAYMAN SECURITIES CLEARING
AND TRADING LTD; THE HURRY
FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

     Plaintiffs,

v.                                         Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

     Defendant.

_____/

## FRANKEL'S MOTION TO COMPEL INTERROGATORY ANSWERS

The defendant, Christopher L. Frankel, through counsel and under Federal Rule of Civil Procedure 37, requests an order compelling the plaintiffs to answer his interrogatories 1–7 and 9 and awarding his expenses, including attorney fees, incurred in making this motion.

## MEMORANDUM OF LAW

The plaintiffs' purported claims are based on conclusory, boilerplate allegations that Frankel misappropriated unidentified confidential information. Throughout this lawsuit (and before suing) the plaintiffs have never identified any facts supporting their conclusory allegations of misappropriation, which were made upon information and belief. Frankel served simple and straightforward interrogatories for the facts, if there are any, that support the plaintiffs' conclusory allegations of misappropriation. The plaintiffs served meritless objections and evasive answers, in which the plaintiffs have re-asserted their vague, uninformative accusations and have speculated that Frankel somehow must have misappropriated their unidentified confidential information.

1

The plaintiffs' evasive interrogatory answers disclosed no evidence to support their alleged claims. The reason is obvious: the plaintiffs have no evidence and are on a fishing expedition. This is apparent from the plaintiffs' *we-don't-know* objection to Frankel's fourth interrogatory, which requested disclosure of the facts, witnesses, and documents supporting the boilerplate allegation that Frankel "used confidential information obtained from the Plaintiffs to solicit capital, establish banking relations, recruit Plaintiffs' clients, and compete with Plaintiffs' businesses." (Doc. # 35-1, at 4). The plaintiffs objected that the interrogatory "requests information solely known to Defendant which Plaintiffs will only be able to ascertain through their own discovery requests." (Doc. # 35-1, at 5).[1] In other words, the plaintiffs do not know of any supporting facts but are hoping to discover documents or information to which they can mold their alleged misappropriation claims. The plaintiffs should not be permitted to use discovery to fish for facts that support their alleged claims.

The plaintiffs' alleged claims should each be dismissed with prejudice, as requested in Frankel's pending motion to dismiss, which is set for hearing on April 26, 2019. (Doc. ## 38, 43). If the plaintiffs are entitled to continue pursuing their alleged claims, then the Court should require the plaintiffs to disclose the factual support for their conclusory allegations. The procedures for discovery in misappropriation cases require that the misappropriation plaintiffs first disclose the factual basis for their claims so that the scope of permissible discovery from defendant may be ascertained. The Court should overrule the plaintiffs' objections to Frankel's interrogatories and compel non-evasive, candid answers that either disclose the supporting facts or state that there are no supporting facts. And the Court should award Frankel the costs and attorney fees incurred in making this motion.

---

[1] The information known to Frankel is set forth in his declaration, which denied misappropriation and explained that he has done nothing wrong. (Doc. # 16-1).

2

## I.    DISCOVERY IN MISAPPROPRIATION CASES

All five of the plaintiffs' purported claims in this case are based on alleged misappropriation of (unidentified) information that the plaintiffs allege is protected by non-disclosure agreements and state and federal trade secret statutes. (*See* Doc. # 36). In resolving discovery disputes in misappropriation cases, courts require plaintiffs to first disclose the factual basis for their claims, including identifying (with specificity sufficient to frame the scope of discovery) the information misappropriated and how it was misappropriated. *See, e.g.*, *Arthrex, Inc. v. Parcus Med., LLC*, No. 2:10-CV-151, 2010 WL 11622727, at *1–2 (M.D. Fla. Dec. 16, 2010) (following this procedure to balance competing interests of allowing discovery and protecting against discovery abuses; noting concerns "that the trade secret plaintiff could be on a 'fishing expedition'"; that "until the trade secret is identified, the parties and the court cannot determine if the discovery requested is relevant"; and that "requiring a trade secret plaintiff to specifically identify the trade secrets at issue will ensure that the trade secret plaintiff does not mold its cause of action to the discovery it obtains." (citing *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680–81 (N.D. Ga. 2007))).

## II.    BACKGROUND

### A.    After decades of securities experience, Frankel accepts position as CEO of plaintiff Alpine Securities.

Before plaintiff Alpine Securities hired Frankel as its CEO, Frankel worked in the securities business for 25 years and in a management role in "clearing trades" for securities transactions for 15 years. (Doc. # 16-1, ¶¶ 3, 4). Before Alpine hired Frankel, he was CEO of one of Alpine's chief competitors in the micro-cap securities business (*id.* ¶ 7); he co-authored a

comprehensive guidebook on clearing trades of micro-cap securities (*id.* ¶ 8; Ex. 1); and he knew and had worked with most of Alpine's largest clients (*id.* ¶ 15).

Frankel entered non-disclosure agreements regarding unidentified "confidential information" of the four plaintiffs. (Doc. # 37, Exs. A, B). The non-disclosure agreements did not prohibit Frankel from competing with the plaintiffs or soliciting the plaintiffs' clients, and Frankel did not enter into any agreement that prohibited him from competing with the plaintiffs or soliciting the plaintiffs' clients. (*Id.* ¶¶ 13, 14).

Three of the plaintiffs (Cayman Securities, Hurry Trust, and Scottsdale Capital) never employed Frankel or engaged him as a consultant. (*Id.* ¶ 17). Frankel worked as CEO of Alpine for nearly three years before Alpine effectively terminated his employment by proposing to reduce his annual salary by 90%. (*Id.* ¶ 11). After Frankel stopped working as CEO, Alpine engaged him as a non-exclusive consultant for approximately three months. (*Id.* ¶ 12).

**B.      Shortly after Frankel stops working for Alpine, the plaintiffs demand that he cease and desist from misappropriating unidentified confidential information but refuse to explain the basis for their demand.**

Shortly after Frankel finished working as a non-exclusive consultant for Alpine, the plaintiffs' counsel sent Frankel a letter demanding that he return their "Confidential Information" and cease and desist from breaching his non-disclosure agreement by "further disclosure and/or usage of Confidential Information." (Doc. # 16-4). The letter did not identify a single confidential document or a single instance of Frankel disclosing or using confidential information. (*See id.*)

Frankel timely responded by offering to return all of the plaintiffs' documents in his possession and explaining that he had not misused any confidential information (Doc. # 16-5). Frankel asked why the plaintiffs apparently believed otherwise and offered to address any

4

perceived misuse. (*Id.*) The plaintiffs ignored Frankel's response and did not tell him what documents they considered to be confidential or what they believed he had done.

### C.    The plaintiffs sue Frankel for misappropriation but do not identify the information allegedly misappropriated or how it was misappropriated.

The plaintiffs filed an initial complaint that alleged no facts, only conclusory allegations that Frankel "received confidential information from each of the Plaintiffs, including *inter alia*, their business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information of the Plaintiffs and their clients"; "used confidential information obtained from Plaintiffs to solicit capital, establish banking relations, recruit Plaintiffs' clients, and compete with Plaintiffs' business"; and used confidential information "to make a bid for a broker-dealer in Chicago." (Doc. # 1, ¶¶ 19, 20). The plaintiffs made these conclusory allegations of misappropriation "[u]pon information and belief." (*Id.* ¶ 20). The plaintiffs did not state any facts supporting their conclusory allegations, and it does not appear that the plaintiffs investigated the veracity of their conclusory allegations before suing.

The plaintiffs' pre-suit investigation, if they did one, was so shoddy that they apparently did not figure out until after suing that they should not have sued on behalf of Cayman Securities and The Hurry Trust,[2] and that neither Cayman Securities nor The Hurry Trust own any confidential information allegedly misappropriated. *See* Answer to Interrogatory 1 ("Plaintiffs

---

[2] As explained in Frankel's opposition (Doc. # 35) to the plaintiffs' motion to amend their complaint (Doc. # 34), the plaintiffs' counsel asked Frankel's counsel to stipulate to an amended complaint which dropped Cayman Securities and The Hurry Trust as plaintiffs. (Doc. # 35 at 6, Ex. 5).  Frankel's counsel responded that he would first have to determine whether Frankel could recover his fees and costs against Cayman Securities and The Hurry Trust for withdrawal of their claims. (*Id.*)  Rather than wait for Frankel's counsel's research and risk a fee award, the plaintiffs moved to amend and to retain Cayman Securities and The Hurry Trust as plaintiffs. (*Id.*)

state that the owners of all the confidential information which they contend Defendant used

unlawfully are: Scottsdale Capital Advisors and Alpine Securities Corporation.").

> **D.     To avoid posting a FDUTPA bond, the plaintiffs file John Hurry's conclusory declaration that does not identify the information allegedly misappropriated or how Frankel misappropriated the unidentified information.**

Frankel denied the original complaint's conclusory allegations (Doc. # 15) and moved to

require the plaintiffs to post a FDUTPA bond as security for his claim for attorney fees and costs.

(Doc. # 16). Frankel filed his declaration in support of his bond motion, explaining that he had

done nothing wrong. (Doc. # 16-1).

In his declaration, Frankel refuted the plaintiffs' vague allegation that he had somehow

used the plaintiffs' undisclosed, confidential information to try to buy a Chicago broker-dealer.

Frankel explained that a client, with whom Frankel had worked at Legent/COR, had contacted

Frankel about an opportunity to buy a broker-dealer in Chicago after Frankel's employment with

Alpine Securities had ended (*id.* ¶ 16); that Frankel had not learned about the opportunity until

the client of Legent/COR brought the opportunity to Frankel's attention (*id.*); and that Frankel

had not learned of the opportunity through any confidential information of the plaintiffs. (*Id.*)

The plaintiffs opposed Frankel's bond motion, but presented no facts, evidence, or documents to

support their conclusory allegations. (Doc. # 24). Instead, the plaintiffs submitted the declaration

of John Joseph Hurry who identified no confidential information, stated no misappropriation

facts, and instead vaguely claimed that Frankel "was using Alpine's and the other Hurry Parties'

confidential information and trade secrets for the benefit of his new business ventures." (Doc #

24-1, ¶ 7). Frankel requested that the plaintiffs disclose the factual support for Hurry's

declaration. *See* Interrogatory 7 (quoted below). But the plaintiffs served meritless objections and

an evasive answer that does not disclose any facts supporting Hurry's declaration. *See* Response to Interrogatory 7 (quoted below).

### E.   Frankel produces every document in his possession that he received from the plaintiffs, but the plaintiffs steadfastly refuse to identify the information allegedly misappropriated or how Frankel misappropriated the unidentified information.

Frankel produced with his initial disclosures (Doc # 35-3) the documents which he had offered to produce in response to the plaintiffs' pre-suit demand. (Doc. 16-3). Because the plaintiffs had never told Frankel what documents they considered to be confidential, Frankel produced all of the plaintiffs' documents in his possession, bates numbered FRANKEL_000001 to FRANKEL_002246. (Doc. # 35-3).

At the earliest opportunity, on January 14, 2019, before the plaintiffs served their discovery requests, Frankel served his interrogatories and request to produce, requesting the facts, witnesses, and documents supporting the conclusory allegations in the plaintiffs' pre-suit demand, complaint, and Hurry's declaration. Frankel served the same interrogatories on each plaintiff.[3] As discussed in detail below, the plaintiffs joined in a singled response (Doc. #35-1), in which they asserted meritless objections and gave evasive answers.

On February 1, 2019, the plaintiffs served their initial disclosures (Doc # 35-2) in which they again disclosed no facts, documents, or evidence to support their claims. The plaintiffs admitted, however, that they had no knowledge of any damages or losses caused by Frankel. Doc # 35-2, ¶ 3 ("Plaintiffs' damages and losses arising from Defendant's misconduct continues to be discovered, and are unknown at this time."). The plaintiffs did not produce with their initial disclosures copies of any documents that support their alleged claims. (Doc. # 35-2 at 4, ¶ 2).

---

[3] Attached as Exhibit 1 is a copy of Frankel's Interrogatories to Alpine Securities Corporation. Frankel served the same interrogatories on the other three plaintiffs.

Instead, the plaintiffs conditioned production of such documents "upon the entry of an acceptable agreement between the parties for designating documents as confidential." (*Id.*)[4]

On February 4, 2019, Frankel's counsel prepared and emailed a proposed discovery confidentiality agreement to plaintiffs' counsel because the plaintiffs had claimed in their initial disclosures that they would require a confidentiality agreement regarding discovery. The plaintiffs never prepared or sent any discovery confidentiality agreement to Frankel. And, the plaintiffs refused to sign Frankel's proposed discovery confidentiality agreement, instead demanding more restrictive terms.

In the meantime, regulatory and legal authorities asked Frankel to provide information concerning the plaintiffs and their principals. Gun-shy from the plaintiffs' abuse of process in suing Frankel without basis under the non-disclosure agreement; concerned about potential abuse by the plaintiffs in over-designating documents as confidential; bewildered by the plaintiffs' demand for a discovery confidentiality agreement concerning documents in the highly regulated, public securities industry in which secrets are not permitted; and unwilling to compromise his ability to provide information to regulatory and legal authorities; Frankel refused to agree to the restrictive confidentiality revisions demanded by the plaintiffs.

The plaintiffs' unwillingness or inability to produce (or even to describe) any documents supporting their claims is telling. Either the plaintiffs have no documents supporting their alleged claims, or perhaps they contend that every document supporting their claim is confidential, so confidential that they cannot even describe or identify the document. *See id.* The plaintiffs'

---

[4] The plaintiffs have yet to designate any of the bates-numbered documents produced by Frankel as confidential under either of the non-disclosure agreements upon which the plaintiffs have sued. Nor have the plaintiffs stated any reasons why they cannot designate, by bates number, the documents that contain information that the plaintiffs consider to be confidential.

abusive conduct, both before and during this lawsuit, has made Frankel understandably reluctant to agree to the plaintiffs' demand for a more restrictive discovery confidentiality agreement.

**F.      The plaintiffs amend their complaint to sue under another agreement (based on Frankel's document production) but still do not identify the information allegedly misappropriated or how Frankel misappropriated the unidentified information.**

The plaintiffs have produced only two documents in this case: the Non-disclosure and Confidentiality Agreement (Doc # 37 Ex. A) upon which they initially sued, and the Employee Nondisclosure & Computer Use Agreement (Doc # 37 Ex. B), which they now allege "superseded" the Non-disclosure and Confidentiality Agreement. (Doc # 37 at ¶ 19). The plaintiffs' pre-suit investigation of their claims, if they did one, was so shoddy that they did not realize until Frankel produced his initial disclosure documents, which included the Employee Nondisclosure & Computer Use Agreement, that the plaintiffs had sued under the wrong agreement.(Doc. # 35 at 3–4).

The plaintiffs filed an amended complaint to add a claim based on the Employee Nondisclosure & Computer Use Agreement. (Doc. # 37). Frankel moved to dismiss the plaintiffs' amended complaint with prejudice based on the plaintiffs' repeated failures to disclose the factual basis for their claims. (Doc. # 38). The plaintiffs opposed Frankel's motion to dismiss their amended complaint, requested leave to amend further, if Frankel's motion is granted (Doc. 39), and moved to compel further interrogatory answers and document production from Frankel. (Doc. ## 40, 41). But the plaintiffs' motions to compel do not identify the information allegedly misappropriated or how Frankel misappropriated the unidentified information. (*Id.*)

## III.   PLAINTIFFS' MERITLESS OBJECTIONS AND EVASIVE ANSWERS

Frankel served simple and straightforward interrogatories that asked the plaintiffs to disclose the confidential information, the owners of the confidential information, the documents containing confidential information, and how Frankel is alleged to have misappropriated confidential information. *See* Frankel's Interrogatories 1–4 (Doc. # 35-1, at 2–5). The plaintiffs objected and refused to disclose any of these basic facts underlying their purported claims for misappropriation. *See* Plaintiffs' Answers to Interrogatories 1–4 (Doc. # 35-1 at 2–5).

Frankel also asked the plaintiffs to disclose the facts, documents, and witnesses supporting their conclusory allegations of misappropriation and Hurry's conclusory declaration. *See* Frankel's Interrogatories 5–7, 9 (Doc. # 35-1 at 5–11). The plaintiffs objected and stated evasive answers in which the plaintiffs speculate that Frankel must be misappropriating their confidential information but do not identify any facts supporting their speculation. *See* Plaintiffs' Answers to Interrogatories 5–7, 9 (Doc. # 35-1 at 5–11).

The Court should overrule the plaintiffs' objections and compel non-evasive, candid answers that disclose the facts supporting their claims or state that there are no supporting facts.

### A.   The Court should overrule the plaintiffs' general objections.

The plaintiffs stated three "general objections" to Frankel's interrogatories, each of which is boilerplate and does not identify anything specifically objectionable about the interrogatories:

GENERAL OBJECTIONS

1. Plaintiffs object to these interrogatories to the extent that they exceed or impose upon Plaintiffs duties beyond those required by the Federal Rules of Civil Procedure and/or other applicable law.

2. Plaintiffs object to the interrogatories to the extent that they seek information (a) that is not in the possession, custody, or control of Plaintiffs; (b) that Plaintiffs cannot locate after a reasonably diligent search; or (c) that refers to persons, entities, or

> events not known to Plaintiffs. To the extent that Plaintiffs provide information in response to the interrogatories, Plaintiffs do so based upon a reasonably diligent search for responsive information within their possession, custody or control.
>
> 3. Discovery is ongoing and Plaintiffs reserves [sic] the right at any time to revise, modify, supplement or clarify any of the responses herein set forth.

(Doc. # 35-1, at 1–2).

The Court should overrule the plaintiffs' improper and meritless general objections and compel the plaintiffs to answer the specific interrogatories without withholding any information based on general objections. *See, e.g.*, *Hilton v. IC Sys., Inc.*, Case No: 6:16-cv-1366-Orl-40TBS, 2017 WL 3118531, at *2 (M.D. Fla. July 21, 2017) (finding the defendant's "General Objections" to the plaintiff's discovery to be "inadequate and tantamount to not making any objection at all" (citing *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 186 (N.D. Iowa 2017))); *Desoto Health & Rehab, L.L.C. v. Phila. Indem. Ins. Co.*, No. 2:09-cv-599-FtM-99SPC, 2010 WL 2330286, at *1 (M.D. Fla. June 10, 2010) ("[O]bjections that are simply made as general blanket objections will be overruled by the [c]ourt.").

### B. The Court should overrule plaintiffs' confidentiality objection to Frankel's first interrogatory and compel plaintiffs to answer.

Interrogatory 1 asked the plaintiffs to identify the confidential information allegedly misappropriated and who owns the confidential information:

> State in detail all Confidential Information and the owners of all Confidential Information which you contend Chris Frankel has used unlawfully.

(Doc. # 35-1, at 3).

The plaintiffs refused to identify the confidential information and instead objected that the information is confidential:

> Plaintiffs object to this Interrogatory on the grounds that it requests confidential information and trade secrets and that there is not yet a confidentially agreement in this case that would prevent Defendant from using such requested information for his own, non-litigation related benefit. In light of the foregoing objection, Plaintiffs will not state in detail all Confidential Information which they contend Chris Frankel has used unlawfully until a confidentially agreement is entered into. Plaintiffs state that the owners of all the confidential information which they contend Defendant used unlawfully are: Scottsdale Capital Advisors Corporation and Alpine Securities Corporation.

(Doc. # 35-1, at 3).

The Court should overrule the confidentiality objection and compel an answer to Interrogatory 1. The plaintiffs are apparently taking the position that their alleged confidential information is so secret that it cannot be described. Description by Frankel's bates number, or by title, author, recipient, date, and subject matter would apparently somehow be too revealing. But this is precisely the information that the plaintiffs would be required to disclose if withholding documents from production based on a confidentiality or trade secret privilege. *See, e.g.*, *Roger Kennedy Const., Inc. v. Amerisure Ins. Co.*, Case 6:06-CV-1075, 2007 WL 1362746, at *1 (M.D. Fla. May 7, 2007) (considering trade secret objection and ordering party withholding the documents to produce a privilege log containing: "the name and job title or capacity of the author"; "the name and job title or capacity of each recipient"; "The date the document was prepared and, if different, the date(s) on which it was sent to or shared with persons other than its author(s)"; "the title and description of the document"; "the subject matter addressed in the document"; "the purpose(s) for which it was prepared or communicated"; and, "the specific basis for the claim that it is privileged").

Furthermore, the procedures for discovery in misappropriation cases require that the plaintiffs first disclose the information claimed to be confidential or trade secret, so that the

scope of discovery from the defendant may be ascertained. *See Arthrex, Inc.*, 2010 WL 11622727, at *1–2.

The plaintiffs' objection to identifying their confidential information on the grounds that it is confidential should therefore be overruled. And the existence of a discovery confidentiality agreement should not be a prerequisite to the plaintiffs' disclosing the title, author, recipient, date, and subject matter of their confidential information. *See Roger Kennedy Const., Inc.*, 2007 WL 1362746, at *1. Frankel has legitimate concerns about entering a restrictive discovery confidentiality agreement, particularly given the plaintiffs' abuse of the non-disclosure agreements and the potential for a discovery confidentiality agreement to impair Frankel's ability to comply with regulatory and legal authorities investigating the plaintiffs and their principals.

### C. The Court should overrule plaintiffs' confidentiality and burdensomeness objections to Frankel's second interrogatory and compel plaintiffs to answer.

Interrogatory 2 asked the plaintiffs to identify the confidential documents allegedly misappropriated:

> Identify each document containing Confidential Information which you contend Chris Frankel has used unlawfully.

(Doc. # 35-1, at 3).[5]

The plaintiffs refused to identify any documents and instead objected that the documents are confidential and that it would be unnecessarily burdensome and duplicative to answer:

> Plaintiffs object to this Interrogatory on the grounds that it requests confidential information and trade secrets and that there is not yet a confidentially agreement in this case that would prevent Defendant from using such requested information for his own, non-litigation related benefit. Plaintiffs object to this Interrogatory

---

[5] Frankel's interrogatories defined "Identify" as follows: "[W]ith respect to a document [identify] means to state the document's author, date, addressees, subject, and a brief description of its contents." *E.g.*, Frankel's Interrogatories to Alpine Securities Corporation, attached as Exhibit 1.

> on the grounds that it is unnecessarily burdensome and duplicative because Defendant has already requested that Plaintiffs produce such documents. In light of the foregoing objections, Plaintiffs will produce responsive documents once a confidentially agreement is entered into.

(Doc. # 35-1, at 3).

The Court should overrule the confidentiality and burdensomeness objections and compel an answer that identifies the documents that the confidential documents that are the subject of their misappropriation claims. For the same reasons as discussed above with respect to the plaintiffs' confidentiality objection to Frankel's first interrogatory, the Court should overrule the plaintiffs' confidentiality objection to Frankel's second interrogatory.

The plaintiffs have stated no facts to support undue burden; and it is not unduly burdensome for the plaintiffs to identify the documents containing the confidential information that is the subject of their alleged claims. In fact, it is required under the procedures for discovery in misappropriation cases. *See Arthrex, Inc.*, 2010 WL 11622727, at *1–2. Furthermore, the plaintiffs cannot claim duplication because they refused to produce documents in their initial disclosures and in response to Frankel's document request. (Doc. # 35-2).

The Court should compel the plaintiffs to identify the documents that contain the "confidential information" upon which their alleged misappropriation claims are based—either by identifying the bates number of the documents that Frankel produced, or by identifying the documents' title, author, recipient, date, and subject matter. *See Roger Kennedy Const., Inc.*, 2007 WL 1362746, at *1.

**D.     The Court should overrule plaintiffs' unintelligibility objection to Frankel's third interrogatory and compel a non-evasive, candid answer that either identifies instances of misappropriation or states that there are none.**

Interrogatory 3 asked the plaintiffs to state in detail how Frankel misappropriated confidential information:

> State in detail what you contend Chris Frankel has done that constitutes unlawful use of all Confidential Information which you contend that Chris Frankel has used unlawfully.

(Doc. # 35-1, at 3).

The plaintiffs objected that it was impossible to understand Interrogatory 3, then stated an evasive answer that does not identify a single instance of misappropriation:

> Plaintiffs object to this Interrogatory on the grounds that it is unintelligible and confusing in its word choice. To the extent that Plaintiffs understand the Interrogatory, they state that Frankel has used their confidential information, information which he agreed to keep "strictly confidential" and to "not disclose… to any third parties," to further his own business interests. This information includes, without limitation, client account information, contact information, and transaction history, Plaintiffs' financial relationships and the terms of those relationships. Using the foregoing information, Defendant attempted to solicit Plaintiffs' clients; sought financial backing from entities and individuals with whom Plaintiffs had relationships; attempted to purchase a broker-dealer based [sic].

(Doc. # 35-1, at 3).

The Court should overrule the unintelligibility objection. The plaintiffs do not explain how Interrogatory 3 is unintelligible, and the plain language used by Frankel is easy to understand: the interrogatory requires the plaintiffs to state in detail what Frankel has done to misappropriate their information.

In addition to overruling the unintelligibility objection, the Court should compel a non-evasive, candid answer that either identifies instances of misappropriation or states that the plaintiffs cannot identify any instances of misappropriation. The plaintiffs' evasive non-response

asserts the same boilerplate and conclusory allegations as the plaintiffs' complaint and Hurry's declaration. (*Compare* Doc. # 35-1, at 3, *with* Doc. ## 1, 24-1, 37).

The procedures for discovery in misappropriation cases require that the plaintiffs first disclose the alleged misappropriation so that the scope of discovery from the defendant may be ascertained. *See, e.g.*, *Arthrex, Inc.*, 2010 WL 11622727, at *1–2. Thus, the plaintiffs must state the facts supporting the conclusory allegations in their complaint. And if the plaintiffs do not know of any supporting facts, then the plaintiffs' answer should be "none."

> **E.** **The Court should overrule plaintiffs' compoundness, confidentiality, and *we-don't-know* objections to Frankel's fourth interrogatory and compel a non-evasive, candid answer that either states supporting facts or states that there are none.**

Interrogatory 4 asked the plaintiffs to disclose the facts, witnesses, and documents supporting their allegation that Frankel used confidential information "to solicit capital, establish banking relations, recruit Plaintiffs' clients, and compete with Plaintiffs' businesses":

> Regarding your allegation in paragraph 20 of your complaint, which states: "Upon information and belief, after leaving Alpine, if not earlier, Defendant [Chris Frankel] knowingly, willfully, and maliciously breached his obligations to Plaintiffs under the NDA and used confidential information obtained from Plaintiffs to solicit capital, establish banking relations, recruit Plaintiffs' clients, and compete with Plaintiffs' businesses. Among other things, Plaintiffs are informed and believe Defendant used the foregoing confidential information obtained from Plaintiffs to make a bid for a broker-dealer in Chicago", provide the following information:
>
> a. State all facts which support your allegation including the Confidential Information used, the capital solicited, the banking relations established, the clients recruited, the activity competitive with the plaintiffs in which Chris Frankel engaged, and the broker-dealer on which Chris Frankel bid;
>
> b. Identify all persons having knowledge of the facts which support your allegation, and the facts known by each person; and

      c.   Identify all documents which support your allegation.

(Doc. # 35-1, at 3–4).

      The plaintiffs objected that the Interrogatory 4 is compound, that it requests confidential information, and **that that they do not know any supporting facts**; then the plaintiffs stated an evasive answer that provides mere speculation, based on their self-serving opinion of Frankel's "wherewithal," without any supporting facts:

> Plaintiffs object to this Interrogatory because it is compound and should have been separated into multiple individual interrogatories. Plaintiffs object to this Interrogatory on the grounds that it requests confidential information and trade secrets and that there is not yet a confidentially agreement in this case that would prevent Defendant from using such requested information for his own, non-litigation related benefit. Plaintiffs object to this Interrogatory on the grounds that it requests information solely known to Defendant which Plaintiffs will only be able to ascertain through their own discovery requests. In light of the foregoing objections, Plaintiffs will not identify the confidential information used until a confidentiality agreement is entered into. Without waiving the foregoing objections, Plaintiffs state that John Hurry, Mike Cruz, Henry Diekmann, Joseph Walsh, and Jim Kelley have knowledge that Defendant was not a "producer" in that he did not have clients or capital to establish or purchase a broker-dealer.

> However, during his employment by Plaintiffs, Defendant obtained confidential information regarding their business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information. Shortly after leaving Alpine, Defendant contacted Kelley and informed him that he had entered into an agreement to purchase a new broker dealer, with capabilities equal, if not superior, to those at Alpine. Although Defendant had no clients of his own, or the financial wherewithal to consummate such an endeavor, he informed Kelley that he, in fact, had sufficient clients and capital to outperform Alpine. Discovery is ongoing.

(Doc. # 35-1, at 4–5).

      The Court should overrule the compoundness, confidentiality, and *we-don't-know* objections and compel a non-evasive, candid answer that either states supporting facts or states

that the plaintiffs do not have any supporting facts.

Rule 33 allows interrogatories to include subparts. The plaintiffs' compoundness objection is therefore meritless and should be overruled.

The Court should also overrule the plaintiffs' confidentiality objection, for the same reasons as discussed above with respect to the plaintiffs' confidentiality objection to Frankel's first interrogatory.

Finally, the Court should overrule the plaintiffs *we-don't-know* objection—that the interrogatory "requests information solely known to Defendant which Plaintiffs will only be able to ascertain through their own discovery requests." (Doc. # 35-1, at 4). Of course, lack of evidence is not a valid objection.

In their evasive answer, the plaintiffs speculated that Frankel might have done something wrong because he was not a "producer" and he did not appear to have sufficient capital to acquire a broker-dealer business and certainly not a broker-dealer that could out-perform Alpine Securities. But, of course, Frankel has the right to acquire a broker-dealer, to do business with clients and financial institutions which have done business with the plaintiffs, and to "out-perform" Alpine Securities through his own broker-dealer.

Lack of evidence is not an objection; speculation is not a response. The plaintiffs should be required to answer interrogatory 4, and the answer should be: "The plaintiffs have no evidence to support their claims."

**F.    The Court should overrule plaintiffs' compoundness and confidentiality objections to Frankel's fifth, sixth, seventh, and ninth interrogatories; and the Court should compel non-evasive, candid answers that either state supporting facts or state that there are none.**

Interrogatory 5 asked the plaintiffs to disclose the facts, witnesses, and documents supporting their allegation that Frankel "materially breached the NDA by disclosing confidential information to third parties":

> Regarding your allegation in paragraph 30 of your complaint that "Defendant [Chris Frankel] materially breached the NDA by disclosing Confidential Information (as defined in the NDA) to third parties in breach of paragraph 2(a) of the NDA. In addition, Defendant [Chris Frankel] materially breached paragraph 2(b) of the NDA by using Confidential Information for his own benefit and not for the benefit of Plaintiffs", provide the following information:
>
> a.   State all facts which support your allegation including the Confidential Information disclosed and the third parties to whom the Confidential Information was disclosed;
>
> b.   Identify all persons having knowledge of the facts which support your allegation, and the facts known by each person; and
>
> c.   Identify all documents which support your allegation.

(Doc. # 35-1, at 5).

The plaintiffs objected that Interrogatory 5 is compound and requests confidential information, then stated the same evasive answer as Interrogatory 4, repeating verbatim the same speculation, without any supporting facts:

> Plaintiffs object to this Interrogatory because it is compound and should have been separated into multiple individual interrogatories. Plaintiffs object to this Interrogatory on the grounds that it requests confidential information and trade secrets and that there is not yet a confidentially agreement in this case that would prevent Defendant from using such requested information for his own, non-litigation related benefit. In light of the foregoing objections, Plaintiffs will not identify the confidential information used until a confidentiality agreement is entered into. Without waiving the foregoing objections, Plaintiffs state that John Hurry, Mike Cruz,

> Henry Diekmann, Joseph Walsh, and Jim Kelley have knowledge that Defendant was not a "producer" in that he did not have clients or capital to establish or purchase a broker-dealer. However, during his employment by Plaintiffs, Defendant obtained confidential information regarding their business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information. Shortly after leaving Alpine, Defendant contacted Kelley and informed him that he had entered into an agreement to purchase a new broker dealer, with capabilities equal, if not superior, to those at Alpine. Although Defendant had no clients of his own, or the financial wherewithal to consummate such an endeavor, he informed Kelley that he, in fact, had sufficient clients and capital to outperform Alpine. Discovery is ongoing.

(Doc. # 35-1, at 5–6).

The Court should overrule the compoundness and confidentiality objections (for the reasons discussed above regarding these same meritless objections to previous interrogatories) and compel a non-evasive, candid answer to Interrogatory 5 that either states supporting facts or states that there are none. The plaintiffs' evasive answer does not identify any third parties to whom confidential information has been disclosed, nor does it identify any facts supporting the plaintiffs' speculation that Frankel must somehow be misusing the plaintiffs' unidentified confidential information. The plaintiffs should be required to disclose the facts, witnesses, and documents supporting their conclusory allegations of misappropriation or to state that there are no supporting facts.

Interrogatory 6 asked the plaintiffs to disclose the facts, witnesses, and documents supporting their allegation that Frankel "misappropriated, disclosed, and used trade secrets for his own benefit":

> Regarding your allegations in paragraphs 39 and 49 of your complaint that "Defendant [Chris Frankel] misappropriated, disclosed, and used the Trade Secrets for his own benefit", provide the following information:

      a. State all facts which support your allegation including the Trade Secrets which Chris Frankel misappropriated and disclosed, the third parties to whom he disclosed them, and how Chris Frankel used the Trade Secrets for his own benefit;

      b. Identify all persons having knowledge of the facts which support your allegation, and the facts known by each person; and

      c. Identify all documents which support your allegation.

(Doc. # 35-1, at 6).

      The plaintiffs' objection and evasive answer to Interrogatory 6 is the same objection and evasive answer stated in response to Interrogatory 5 (quoted above). The plaintiffs repeated, verbatim, their compoundness and confidentiality objections; and the plaintiffs repeated, verbatim, the same speculation without any supporting facts. For the same reasons discussed above, the Court should overrule the compoundness and confidentiality objections and compel a non-evasive, candid answer that either states supporting facts or states that there are none.

      Interrogatory 7 asked the plaintiffs to disclose the facts, documents, and evidence supporting their allegation that Frankel "engaged in unfair methods of competition and deceptive and/or unfair business practices":

      Regarding your allegation in paragraph 57 of your complaint that "Defendant [Chris Frankel] engaged in unfair methods of competition and deceptive and/or unfair business practices by using Plaintiffs' confidential information and Trade Secrets to solicit Plaintiffs' clients, establish relationships with their financial institutions and investors, and attempt to acquire a broker-dealer in Chicago", provide the following information:

      a. State all facts which support your allegation including the Confidential Information and Trade Secrets which Chris Frankel unlawfully used, the clients whom Chris Frankel solicited, the financial institutions and investors with whom Chris Frankel established relationships, the broker-dealer which Chris Frankel attempted to acquire, and how Chris Frankel used the Confidential Information and Trade Secrets unlawfully to do these things;

      b. Identify all persons having knowledge of the facts which support your

> allegation, and the facts known by each person; and
>
> c. Identify all documents which support your allegation.

(Doc. # 35-1, at 7–8).

The plaintiffs' objection and evasive answer to Interrogatory 7 is the same objection and evasive answer stated in response to Interrogatories 5 and 6 (quoted above). The plaintiffs repeated, verbatim, their compoundness and confidentiality objections; and the plaintiffs repeated, verbatim, the same speculation without any supporting facts. For the same reasons discussed above, the Court should overrule the compoundness and confidentiality objections and compel a non-evasive, candid answer that either states supporting facts or states that there are none.

Interrogatory 9 asked the plaintiffs to disclose the facts, witnesses, and documents supporting Hurry's Declaration that Frankel "was using Alpine's and the other Hurry Parties' confidential information and trade secrets for the benefit of his new business ventures":

> Regarding the statement in paragraph 7 of John Hurry's declaration filed in this case, that "Alpine soon thereafter learned that, despite Frankel having signed a nondisclosure and confidentiality agreement (the "NDA"), he was using Alpine's and the other Hurry Parties' confidential information and trade secrets for the benefit of his new business ventures", provide the following information:
>
> a. State in detail how Alpine learned that Frankel was using Alpine's and the other Hurry Parties' confidential information and trade secrets for the benefit of Chris Frankel's new business ventures, identify all of the facts that Alpine learned, and identify the persons from which Alpine learned each fact;
>
> b. State all of the Confidential Information and trade secrets that Frankel used, identify each of Frankel's new business ventures which benefited from Frankel's use of the confidential information and trade secrets, and state in detail how Frankel's new business ventures benefited.

(Doc. # 35-1, at 9–10).

The plaintiffs' objection and evasive answer to Interrogatory 9 is the same objection and evasive answer stated in response to Interrogatories 5, 6, and 7 (quoted above). The plaintiffs repeated, verbatim, their compoundness and confidentiality objections; and the plaintiffs repeated, verbatim, the same speculation without any supporting facts. For the same reasons discussed above, the Court should overrule the compoundness and confidentiality objections and compel a non-evasive, candid answer that either states supporting facts or states that there are none.

**G.     The Court should award Frankel his costs and attorney fees.**

In responding to Frankel's interrogatories, the plaintiffs' have again failed to disclose the factual basis for their claims. Rather than identify the information allegedly misappropriated or how Frankel allegedly misappropriated the information, the plaintiff's responses contain boilerplate objections and evasive answers that reassert their vague, uninformative allegations against Frankel. The plaintiffs will continue to dodge every opportunity to disclose the factual basis for their claims until the Court compels them to do so. The reason for this is clear: as the plaintiffs admitted in response to Frankel's fourth interrogatory, the plaintiffs do not know of any supporting facts but are hoping to discover documents or information to which they can mold their misappropriation claims. Because the plaintiffs have repeatedly failed to disclose the factual basis for their claims—coupled with the plaintiffs' *we-don't-know* objection to Frankel's fourth interrogatory—the plaintiffs should be required, under the Federal Rule of Civil Procedure 37(a)(5)(B), to pay Frankel's costs and attorney fees incurred in making this motion.

## IV.    CONCLUSION

From the outset, the plaintiffs have repeatedly refused to disclose the facts, witnesses, and documents supporting their alleged claims. This injustice must stop. If the plaintiffs' misappropriation claims are not dismissed with prejudice, then the Court should compel the plaintiffs to answer Frankel's interrogatories and either disclose the facts supporting their alleged claims or state that there are no facts supporting their alleged claims.

Frankel requests that the Court consider this motion to compel during the hearing scheduled for May 7, 2019 at 11:00 AM (Doc. # 45) on the plaintiffs' motions to compel (Docs. ## 40, 41). And, for the reasons set forth in Frankel's response (Doc. # 44) to those motions, Frankel requests that the Court compel the plaintiffs' to answer Frankel's interrogatories and disclose the factual basis for their claims (including the information misappropriated and how it was misappropriated) before compelling any discovery from Frankel. Until the plaintiffs disclose the factual basis for their claims, the permissible scope of discovery cannot be ascertained and there is nothing to protect Frankel from a fishing expedition by the plaintiffs.

Frankel also requests an award of the costs and attorney fees incurred in making this motion.

### CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 3.01(g)

On March 7, 2019, counsel for Frankel, David Banker and Harold Holder, conferred with counsel for the plaintiffs, Jordan Susman, in compliance with Local Rule 3.01(g), and were unable to agree regarding the relief requested herein.

Dated: April 16, 2019          By:   *David C. Banker*
                                          David C. Banker (Fla. Bar No. 352977)
                                          Harold D. Holder (Fla. Bar No. 118733)
                                          BUSH ROSS, PA
                                          1801 N. Highland Avenue
                                          Tampa, Florida 33602
                                          Phone: 813-224-9255
                                          Fax:    813-223-9620
                                          Primary: dbanker@bushross.com;
                                          hholder@bushross.com
                                          Secondary: aflowers@bushross.com
                                          *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

       I HEREBY CERTIFY that on April 16, 2019, all counsel of record who consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/EFC participants:

    Shane B. Vogt, Esquire
    Kenneth G. Turkel, Esquire
    BAJO | CUVA | COHEN | TURKEL
    100 North Tampa Street, Suite 1900
    Tampa, FL  33602
    kturkel@bajocuva.com
    svogt@bajocuva.com

    Charles J. Harder, Esquire
    Jordan Susman, Esquire
    HARDER LLP
    132 South Rodeo Drive, Suite 301
    Beverly Hills, CA 90212-2406
    charder@harderllp.com
    jsusman@harderllp.com
    *Attorneys for Plaintiffs*

                                                            By:  */s/ David C. Banker*