UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAYMAN SECURITIES CLEARING
AND TRADING LTD; THE HURRY
FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

    Plaintiffs,

v.                                                                                                     Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

    Defendant.
_____/

**OPPOSITION TO DEFENDANT'S MOTION TO COMPEL INTERROGATORY ANSWERS**

Plaintiffs, Cayman Securities Clearing and Trading LTD, the Hurry Family Revocable Trust, Scottsdale Capital Advisors, and Alpine Securities Corporation (collectively the "Hurry Parties"), oppose Defendant Christopher Frankel's ("Defendant") Motion Compel Interrogatory Answers ("Motion") [Doc. 46], and state as follows.

**I.     INTRODUCTION**

The Hurry Parties do not dispute that Defendant should receive the information sought in Interrogatory Nos. 2, 3, 4, 5, 6, 7, and 9.  They simply require a confidentiality agreement with Defendant before they disclose information pertaining to their trade secrets and other confidential information ("Confidential Information").  Because this lawsuit arises from Defendant's misappropriation and unlawful use of their Confidential Information, the Hurry Parties' requirement of a confidentiality agreement is justified.

The Hurry Parties' first addressed the need for a confidentiality agreement during the parties telephonic pre-Rule 26 conference on January 4, 2019. Defendant's counsel offered to take the lead on drafting the confidentiality agreement and, after some negotiations, counsel

ultimately reached a draft that they both deemed acceptable. **Defendant then refused to sign the agreement.** Instead, Defendant filed this instant Motion, falsely represented that the Hurry Parties are wrongfully withholding information, and demand the disclosure of Confidential Information without protections in place to prevent the Hurry Parties' disclosure from further damaging them. Defendant's Motion, as set forth below, should be denied, and Defendant should be required to pay the Hurry Parties' attorneys' fees and costs pursuant to FRCP 37(a)(5)(B).

First, this Motion should be denied because the Hurry Parties' confidentiality objections – the only objections upon which they are withholding information - are proper. Courts recognize the need to protect trade secrets and other corporate confidential information from public disclosure or misuse in litigation and will routinely require a confidentiality agreement to be in place before ordering the disclosure of such information. *See, e.g., Selectica, Inc. v. Novatus, Inc.,* No. 6:13-CV-1708-ORL-36, 2014 WL 1930426, at *5 (M.D. Fla. May 14, 2014) ("In the absence of a confidentiality agreement or protective order, Defendant should not have unfettered access to Plaintiff's trade secrets."); *Capital Corp. Mergers & Acquisitions v. Arias Co.,* No. 6:04CV158ORL28JGG, 2006 WL 1208012, at *2 (M.D. Fla. May 4, 2006); *Barnette v. Ross Dress for Less, Inc.,* No. 8:07-CV-1716-T-30EAJ, 2008 WL 11336592, at *2 (M.D. Fla. Nov. 20, 2008). The Hurry Parties are ready and willing to enter into the confidentiality agreement primarily **drafted by Defendant's counsel**. Upon its execution, they will be able to withdraw their confidentiality objections and amend their Interrogatory responses.

Second, Defendant's Motion should be denied because the Hurry Parties fully and completely responded to the interrogatories at issue. Like most plaintiffs, the Hurry Parties will not know many of the specific facts relating to Defendant's misappropriation of their trade secrets until engaging in the discovery process because most of that information is only known to Defendant. *See Am. Registry, LLC v. Hanaw*, No. 2:13-CV-352-FTM-29, 2013 WL 6332971, at *3 (M.D. Fla. Dec. 5, 2013) ("It is not common for a trade secret misappropriation plaintiff to know, prior to discovery, the details surrounding the purported misappropriation."). At this stage in the litigation, the Hurry Parties cannot respond to Defendant's interrogatories with specific

details about how he misappropriated and unlawfully used their Confidential Information. They can only respond with the information they presently know: that Defendant learned certain information from his employment and, after terminating his employment, told people that he would be opening a competing business – something the Hurry Parties knew he could not do unless he was utilizing their Confidential Information. (Dkt. 35-1, pp. 3-11).

Defendant's Motion does not stem from the Hurry Parties' withholding of information, but rather from Defendant's refusal to engage in the litigation process. His Motion should be denied.

## II. THE HURRY PARTIES WILL DISCLOSE CONFIDENTIAL INFORMATION WHEN A CONFIDENTIALITY AGREEMENT IS IN PLACE

To the extent that the Hurry Parties are withholding any information from their Interrogatory responses, they are doing so based on their objection that the Interrogatories call for the disclosure of confidential information and trade secrets.  **The Hurry Parties will readily provide this information when a confidentiality agreement is in place** that will protect their Confidential Information from wrongful disclosure.

### A. The Hurry Parties Have Requested a Confidentiality Agreement for Almost Four Months

The Hurry Parties first articulated their need for a confidentiality agreement at the parties' Rule 26 telephonic preconference on January 4, 2019. (Affidavit of Jordan Susman ("Susman Aff."), ¶ #). Defendant's counsel offered to draft an agreement because he was more familiar with Middle District confidentiality agreements. (*Id.* at ¶ #). It took Defendant's counsel nearly a month to circulate a draft agreement on February 4, 2019.  (*Id.* at ¶ #). Counsel for both parties negotiated revisions to the draft and ultimately came to an agreement that all counsel deemed acceptable. (*Id.* at ¶ #). Defendant, without explanation, then refused to sign the agreement. (*Id.* at ¶ #).

On April 22, 2019, the Hurry Parties, in a good faith effort to finalize a confidentiality agreement, accepted **all** of the material terms of the confidentiality agreement drafted by

Defendant's counsel . (*Id.* at ¶ #; Exhibits A-B). Defendant, however, refused to take "yes" for an answer and refused to sign the agreement, this time claiming that there is no need for a discovery confidentiality agreement because he already has confidentiality agreements with the Hurry Parties by virtue of the nondisclosure agreements at issue in this lawsuit. (*Id.* at ¶ #; Exhibit C).

In Defendant's Motion, he tries to justify his refusal to sign a confidentiality agreement by arguing that the agreement would "impair Defendant's ability to comply with regulatory and legal authorities investigating the Hurry Parties and their principals." (Motion, p. 13).  Prior to filing his Motion, Defendant never raised this excuse with the Hurry Parties' counsel.

### B.  The Prior Nondisclosure Agreements Between The Hurry Parties and Defendant Do Not Apply to Information Learned in This Lawsuit

Defendant's arguments for refusing to enter into a confidentiality agreement demonstrate the Hurry Parties' need for such a confidentiality agreement before they disclose their Confidential Information.

First, the nondisclosure agreements that Defendant signed as part of his employment with the Hurry Parties do not extend to information that he receives in this litigation. (Doc. 37, pp. 13-19). Therefore, without a confidentially agreement that protects discovery in this action, Defendant could easily take the information he obtains in this litigation and use it for his own financial gain without liability.

Second, even if the nondisclosure agreements that Defendant previously signed extended discovery obtained in this action (which they don't), this litigation is premised on Defendant's breach of those agreements. It would, therefore, be illogical for the Hurry Parties to give Defendant additional Confidential Information and expect him to keep it confidential based on agreements he has already breached.

Third, the nondisclosure agreements that Defendant previously signed do not address the filing of Confidential Information. The Hurry Parties need a mechanism by which Confidential Information is sealed before it is publicly filed.

### C. Defendant Admits That he Intends to Disclose The Hurry Parties' Confidential Information to Third Parties

Defendant further demonstrates the Hurry Parties' need for a confidentiality agreement by admitting that he has and intends to continue to share the Hurry Parties' Confidential Information with third parties. (Motion, p. 8). The purpose of civil discovery is not to fish for documents and information to then turn over to other regulatory agencies. Yet, Defendant boldly states that he will be doing just that. (*Id.*).

This argument, that Defendant cannot sign the confidentiality agreement **drafted by his own counsel** because it prevents him from speaking with regulatory authorities, is a red herring because the draft confidentiality agreement contains a specific provision for dealing with subpoenas or requests for confidential information in other matters that would enable Defendant to comply with regulatory agencies' requests. (*See* Susman Aff., Exhibit B). Defendant's proclamation that he plans to speak with regulatory authorities about the Hurry Parties reads like an extortion attempt in which the Hurry Parties must either drop their lawsuit or expect that more of their Confidential Information will be handed over to third parties. The Hurry Parties will not be bullied into dropping their lawsuit and will not provide Defendant with Confidential Information until he agrees to safeguard the information as set forth by the confidentiality agreement **drafted by his counsel.**

### III. THE HURRY PARTIES' CONFIDENTIAL INFORMATION OBJECTIONS TO INTERROGATORIES 1, 2, 4, 5, 6, 7, AND 9 ARE PROPER

Defendant argues that the Hurry Parties' confidentiality objections should be overruled and the Hurry Parties should be ordered to identify the Confidential Information at issue "by Defendant's bates number, or by title, author, recipient, date, and subject matter."

As an initial matter, Defendant does **not** argue that the Hurry Parties' confidentiality objections are improper. Defendant ignores the substance of the Hurry Parties' objections, thereby conceding their validity.

Second, Defendant's demand that the Hurry Parties identify Confidential Information within the documents he produced is the first time Defendant has offered to narrow his

Interrogatories in any manner. When counsel met and conferred, Defendant completely and utterly refused to discuss any potential compromises.

Third, Defendant's request that the Hurry Parties identify Confidential Information within the documents he produced wrongly assumes that Defendant's document production contains all of the Confidential Information at-issue. (It doesn't.) While this method may identify some of the Hurry Parties' Confidential Information, it would be incomplete. If Defendant simply signed the confidentiality agreement that his counsel drafted, the Hurry Parties would properly disclose all of their Confidential Information without concern as to how Defendant will then use the Information.

Fourth, requiring the Hurry Parties to identify the documents containing some of their Confidential Information without a confidentiality agreement in place could still cause the unprotected disclosure of confidential information. For example, if the Hurry Parties identified which documents from Defendant's document production contain Confidential Information, Defendant could then publicly file the documents without giving the Hurry Parties any advance notice to seek a seal. With that one action – which is protected from liability under the litigation privilege – the Hurry Parties' Confidential Information would become public and lose its value.

The Hurry Parties are not trying to keep information from Defendant. They simply are trying to protect their Confidential Information from further misuse and themselves from additional damage. This can only be done if the confidentiality agreement **drafted by Defendant's counsel** is entered prior to the Hurry Parties' disclosure of Confidential Information. Until that happens, Defendant's Motion must be denied.

## IV. THE HURRY PARTIES' RESPONSES TO INTERROGATORY NOS. 3, 4, 5, 6, 7, AND 9 ARE FULL AND COMPLETE

Defendant argues that the Hurry Parties' responses to Interrogatory Nos. 3, 4, 5, 6, and 9 are evasive and require further responses, because they do not specifically detail Defendant's misappropriations. According to Defendant, *Arthrex, Inc. v. Parcus Med.*, LLC, No. 210CV151FTM36DNF, 2010 WL 11622727 (M.D. Fla. Dec. 16, 2010) requires that "the Hurry

Parties first disclose the alleged misappropriation so that the scope of discovery from the defendant may be ascertained." Defendant's argument.

As an initial matter, Defendant misstates the holding in *Arthrex*. In *Arthrex*, the court held that a plaintiff needs to identify the trade secrets at-issue, **not the misappropriations that occurred**, so that discovery can be limited to only activities pertaining to those trade secrets. 2010 WL 11622727, at *1-2.

Second, the Hurry Parties' responses are not evasive. They include all responsive, non-Confidential Information that the Hurry Parties currently know. For instance, Interrogatory No. 3 appears to ask the Hurry Parties to detail how Defendant unlawfully used their Confidential Information. The Hurry Parties' response fully and completely states that Defendant used their Confidential Information to attempt to solicit their clients, seek financial backing from entities and individuals with whom they had relationships, and attempted to purchase a broker-dealer. (Dkt. 35, p. 3). The Hurry Parties cannot offer any more detailed information about Defendant's actions – such as the places and times – because they were not privy to those actions. The Hurry Parties can only state what they know at this time.

Similarly, Interrogatory Nos. 4, 5, 6, 7, and 9 ask the Hurry Parties to state all facts upon which they support their allegation that Defendant misappropriated their Confidential Information and materially breached the NDAs. The Hurry Parties did just that in their responses. According to the Hurry Parties, Defendant materially breached the NDAs and misappropriated Confidential Information based on:

- Defendant did not, prior to his employment at Alpine, have clients or capital to establish or purchase a broker-dealer,
- Defendant gained confidential information regarding Alpine's business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information during his employment,
- Defendant contacted and told John Kelley that he had entered into an agreement to purchase a new broker dealer, with capabilities equal, if not superior, to those at Alpine, and
- Defendant told John Kelley that he had sufficient clients and capital to outperform Alpine.

The Hurry Parties are confident that more information about the specifics of Defendant's misappropriation and unlawful use of the Hurry Parties' Confidential Information will become known as discovery continues. *See Am. Registry, LLC v. Hanaw*, No. 2:13-CV-352-FTM-29, 2013 WL 6332971, at *3 (M.D. Fla. Dec. 5, 2013) ("It is not common for a trade secret misappropriation plaintiff to know, prior to discovery, the details surrounding the purported misappropriation."). For the purposes of these Interrogatories, however, which asked the Hurry Parties for the facts "upon which they based their initial allegations," the Hurry Parties have answered in full subject to their valid confidentiality objection. Further responses should not be required.

## V. THE HURRY PARTIES' OTHER CONTESTED OBJECTIONS ARE PROPER

As stated above, the Hurry Parties are not withholding information based on any objection other than the unprotected disclosure of Confidential Information. Nevertheless, Defendant wants the Court to overrule the Hurry Parties' other objections. Defendant's requests should be denied because each of the objections at-issue was properly asserted.

### A. The Hurry Parties' General Objections Are Proper

General objections to interrogatories are disfavored by the courts when they delay discovery by failing to identify which specific interrogatories have which specific deficiencies. However, contrary to Defendant's argument, "general or blanket objections are authorized if applicable to every request." *Zurich Am. Ins. Co. v. Staffing Nat'l Concepts, Inc.*, No. 8:14-CV-0775-T-23MAP, 2015 WL 10818742, at *1 (M.D. Fla. June 17, 2015); *Middle District Discovery* (2001) at IV(A)(6) ("General or blanket objections should be used only when they apply to every request.").

The Hurry Parties' three general objections addressed in Defendant's Motion are applicable to each of Defendant's interrogatory requests. Specifically, these three objections clarify that the Hurry Parties are only answering each Interrogatory (i) to the extent that they are required by law, (ii) based on the information in their possession, custody, and control, and (iii) based on the information they presently know. Contrary to Defendant's arguments, these

{00099793;1}  8

objections do not delay discovery by requiring Defendant to meet and confer to find out whether information is being withheld because these objections do not require information to be withheld. Rather, they reserve the Hurry Parties' right to supplement their response should they become aware of additional information.

The Hurry Parties' general objections are not the evasive, boilerplate objections referenced in the cases cited by Defendant. They are in accordance with the *Middle District Discovery* handbook and should not be overruled.

### B. The Hurry Parties' Specific Objection to Interrogatory No. 2 is Proper

The Hurry Parties objected to Interrogatory No. 2 on the basis that it is burdensome. This objection is proper because interrogatories that are "designed to force an exhaustive or oppressive catalogue of information are generally improper." *Middle District Discovery* (2001) at IV(C)(4). Interrogatory No. 2 is improper because it seeks an exhaustive catalog of documents. Therefore, per FRCP Rule 33(d), the Hurry Parties may produce records in lieu of answering this interrogatory. *Middle District Discovery* (2001) at IV(C)(5). As stated within the Hurry Parties' response, the Hurry Parties will produce such records as soon as Defendant enters into the confidentiality agreement discussed herein in Section II.

### C. The Hurry Parties' Objection to Interrogatory No. 3 is Proper

Defendant requests that this Court overrule the Hurry Parties' objection to Interrogatory No. 3 for unintelligibility. This request should be denied because, as required in instances where the responding party does not understand an interrogatory, the Hurry Parties properly objected and then answered the Interrogatory to the extent they understood it.[1] *Middle District Discovery* (2001) at IV(A)(3) ("When in doubt about the meaning of an interrogatory, the responding party should give it a reasonable interpretation (which may be specified in the response) and offer an

---

[1] For clarity, The Hurry Parties believed that this Interrogatory was trying to ask them to state in detail how Defendant has unlawfully used their confidential information and answered the Interrogatory based on that understanding.

answer designed to provide, rather than deny, information."). This objection was proper and should not be overruled.

### D. The Hurry Parties' Objections to Interrogatory No. 4 Are Proper

Defendant requests that the Court overrule the Hurry Parties' objections Interrogatory No. 4 for compound interrogatories and for Defendant requesting information solely known to him. Both of these requests should be denied.

First, the Hurry Parties' objection that Interrogatory No. 4 is compound and should be broken into, and counted as, three interrogatories is proper because "Rule 33(a), Federal Rules of Civil Procedure, and Local Rule 3.03(a), Middle District of Florida, restrict to 25 (including all parts and subparts) the number of interrogatories a party may serve on any other party." *Middle District Discovery* (2001) at IV(A)(2) ("Pursuant to Rule 26(g), counsel's signature on interrogatories constitutes a certification of compliance with those limitations."). By adding subparts to his Interrogatories, Defendant exceeded the 25 interrogatory limit. Notwithstanding the validity of their objection, the Hurry Parties have not withheld any information pursuant to this objection.

Second, the Hurry Parties' objection that this Interrogatory requests information solely known to Defendant is valid. Interrogatories are meant to aid in the fact-gathering process, not serve as a vehicle to harass the respondent by making them respond to questions that the propounding party already knows the answer to. Defendant knows the capital he solicited, the banking relations he established, and the clients he recruited based on the Hurry Parties' Confidential Information. Defendant does not need to harass the Hurry Parties by asking for information he already knows. The Hurry Parties properly objected and still responded to the Interrogatory despite the objection.

### E. The Hurry Parties' Objections to Interrogatories 5, 6, 7, and 9 are Proper

Interrogatories Nos. 5, 6, 7, and 9 are compound, because each one has three subparts, and should of been broken into, and counted as, three interrogatories. *See Middle District Discovery* (2001) at IV(A)(2) ("Rule 33(a), Federal Rules of Civil Procedure, and Local Rule

3.03(a), Middle District of Florida, restrict to 25 (including all parts and subparts) the number of interrogatories a party may serve on any other party."). By adding subparts to his Interrogatories, Defendant exceeded the 25 interrogatory limit. Notwithstanding the validity of their objection, the Hurry Parties have not withheld any information pursuant to this objection.

## VI.     FEES AND COSTS

If this Motion is granted, which it should not be, Defendant cannot not recover his attorneys' fees and costs under FRCP 37(a)(5)(A) because (i) he filed this motion before attempting in good faith to obtain the discovery, and (ii) the Hurry Parties' objection and nondisclosure was substantially justified. **This entire motion process could have avoided if Defendant signed the confidentiality agreement drafted by his counsel.** Yet, Defendant has refused to sign the agreement without a good faith explanation, instead expecting the Hurry Parties to disclose confidential information, without any safeguards in place, to a person that unlawfully used their information. For that reason, the Hurry Parties were substantially justified in objecting to the Interrogatories based on confidentiality and requesting a confidentiality agreement prior to responding.

Alternatively, if Defendant's Motion is denied, (which it should be), the Hurry Parties should be awarded their attorneys' fees and costs pursuant to FRCP 37(a)(5)(B) because Defendant's Motion was not substantially justified for the following reasons:

- ***This entire motion process could have been avoided if Defendant signed the confidentiality agreement drafted by his counsel.***
- Defendant requested that the Hurry Parties' confidentiality objections be overruled despite failing to make one argument as to why the objections were improper.
- Defendant wrongfully claimed that general objections are invalid. This is directly contrary to the *Middle District Discovery* handbook.
- Defendant wrongfully claimed that the Hurry Parties' agreement to produce documents in response to an interrogatory seeking an exhaustive catalogue of information was invalid despite it being a permissible response pursuant to the *Middle District Discovery* handbook.
- Defendant wrongfully claimed that the Hurry Parties' intelligible objection was invalid despite it being a proper objection – and response – pursuant to the *Middle District Discovery* handbook.

- o Defendant wrongfully claimed that interrogatories could be in subparts, even though the *Middle District Discovery* handbook is clear that subparts cannot be used to circumvent the 25 interrogatory maximum – which is what Defendant did in his Interrogatories.

### VI. CONCLUSION

For the above-mentioned reasons, the Motion should be denied and the Hurry Parties should be awarded their attorneys' fees and costs.

Dated this 30th day of April 2019.

        /s/ Jordan Susman
        Charles J. Harder, Esq.
        Jordan Susman, Esq.
        HARDER LLP
        132 South Rodeo Drive, Fourth Floor
        Beverly Hills, CA  90212-2406
        Tel: (424) 203-1600
        Fax: (424) 203-1601
        E-mail: charder@harderllp.com
        E-mail: jsusman@harderllp.com

        Kenneth G. Turkel – FBN 867233
        Shane B. Vogt – FBN 257620
        BAJO | CUVA | COHEN | TURKEL
        100 North Tampa Street, Suite 1900
        Tampa, Florida 33602
        Tel:  (813) 443-2199
        Fax: (813) 443-2193
        E-mail: kturkel@bajocuva.com
        E-mail: svogt@bajocuva.com

        *Attorneys for Plaintiffs*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 30, 2019, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

        /s/ Jordan Susman
        Attorney