UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAYMAN SECURITIES CLEARING            )  Tampa, Florida
AND TRADING, LTD., et al.,            )
                                      )
                      Plaintiffs,     )  No. 8:18-cv-2869-T-33CPT
                                      )
                                      )  Docket No. 50
              vs.                     )
                                      )  April 26, 2019
CHRISTOPHER FRANKEL,                  )
                                      )
                      Defendant.      )  Courtroom 14B
_____)

**TRANSCRIPT OF MOTION HEARING**
BEFORE THE HONORABLE VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

*Official Court Reporter:*

*Scott Gamertsfelder, RMR, FCRR*
*801 North Florida Avenue*
*Tampa, Florida 33602*
*Telephone:  (813) 301-5898*

*(Proceedings reported by stenotype; Transcript produced by computer-aided transcription.)*

### A P P E A R A N C E S

**PLAINTIFF COUNSEL:**

> **Jordan Susman, Esq.**
> Harder, LLP
> 132 South Rodeo Drive, 4th Floor
> Beverly Hills, California 90212
> (424) 203-1600

**DEFENSE COUNSEL:**

> **David C. Banker, Esq.**
> **Harold D. Holder, Esq.**
> Bush Ross, PA
> 1801 North Highland Avenue
> Tampa, Florida 33601
> (813) 224-9255

**ALSO PRESENT:**

> Christopher Frankel

- - -

**P R O C E E D I N G S**

April 26, 2019                                          3:05 p.m.

- - -

COURT SECURITY OFFICER:  All rise.

The United States District Court in and for the Middle District of Florida is now in session.  The Honorable Virginia M. Hernandez Covington presiding.

Please be seated.

THE COURT:  Good afternoon, everyone.  I appreciate everybody being here.

I think there are some discovery motions still pending in front of the magistrate judge.  The motion to compel responses and another motion to compel responses.

MR. BANKER:  Yes, Your Honor.

THE COURT:  And motion to compel interrogatory answers.  We have got several, but in front of the magistrate judge.

MR. BANKER:  Yes, yes, that's correct, Judge.

THE COURT:  Very good.  I wanted to see if there was anything else new before I begin the hearing.  Thank you.

We are here for a hearing on the motion to dismiss in Cayman Securities Clearing and Trading, Ltd., et al., versus Christopher Frankel.  It's Case No. 8:18-cv-2869-T-33CPT.

I'll begin by having counsel state their

1   appearances.  Who do we have for the plaintiff?

2            MR. SUSMAN:  Jordan Susman of Harder, LLP, for the

3   plaintiffs.

4            THE COURT:  Thank you.  Welcome, Mr. Susman.

5            MR. SUSMAN:  Thank you very much.

6            THE COURT:  Who do we have for the defendant?

7            MR. BANKER:  For the defendant, Your Honor, we

8   have David Banker, and to my right is Harold Holder, from

9   Bush Ross, and also with us is Mr. Frankel.

10           THE COURT:  Welcome.  I'm glad everybody is here.

11           So I've pulled up some information and reviewed

12  some matters in preparation for the hearing today.

13           Your pro hac vice is all -- Mr. Susman, has all

14  been taken care of, it looks like.

15           MR. SUSMAN:  It has, Your Honor.

16           THE COURT:  I'm double-checking that I wouldn't

17  need to admit you right now just to get it all done.  Okay.

18  We are all set.

19           So let me just put some things on the record.

20  And, Mr. Banker, will you be arguing the motion for the

21  defendants?

22           MR. BANKER:  Yes, Your Honor, for the defendant.

23           THE COURT:  Just Mr. Frankel, of course.  So let

24  me just put some things on the record; and if I say something

25  incorrect or make a mistake or anything you disagree with,

1   please let me know.  So what I will do, after I put these

2   things on the record, Mr. Banker, is you should go ahead and

3   argue the motion on behalf of Mr. Frankel.  And then,

4   Mr. Susman, you can respond to that.  Normally I don't put a

5   time limit on these, but if I see that it's getting a little

6   bit too long, I may say something.

7           So here's what I have.  Plaintiffs Cayman

8   Securities Clearing and Trading, Ltd., Scottsdale Capital

9   Advisors Corporation, and Alpine Securities Corporation are

10  involved in the broker-dealer business and were previously

11  indirectly owned by The Hurry Family Revocable Family Trust.

12          Mr. Frankel was Alpine's CEO from August 2015

13  until July 2018 and then served as a consultant to Alpine

14  from July 2018 to September 2018.

15          The plaintiffs knew that Mr. Frankel would be

16  entrusted with commercially valuable information that was not

17  generally known or readily ascertainable in the broker-dealer

18  securities industry.

19          This information included the plaintiffs' business

20  practices, financial relationships and terms of those

21  relationships, client lists, pricing information, private

22  financial information of the plaintiffs and their clients.

23          So the parties entered into a Non-Disclosure

24  Agreement initially on June 22nd, 2015, and then entered into

25  another Non-Disclosure Agreement, superseding the original,

1    on July 1st, 2015.

2          So the plaintiffs have brought suit against

3    Mr. Frankel for breach of contract in Counts One and Two and

4    for violation of the Defend Trade Secrets Act in Count Three,

5    the Florida Uniform Trade Secrets Act in Count Four, and the

6    Florida Deceptive and Unfair Trade Practices Act, and that's

7    Count Five.

8          With leave of Court, the plaintiffs have filed

9    their Amended Complaint.  Mr. Frankel has moved to dismiss

10   the Amended Complaint under Rule 12(b)(6) for failure to

11   state a claim.

12         So Counts One and Two are not at issue here

13   because Mr. Frankel's motion to dismiss does not address the

14   plaintiff's breach of contract claim.  We are here on

15   Count Two and Count Five, right?  Did I miss one count?

16   Counts Two and Five.

17         MR. BANKER:  Your Honor, that was an excellent

18   recitation of the allegations, not that you need my approval

19   of the allegations that the plaintiffs have made.

20         I would say two things.  No. 1, we, obviously,

21   disagree that any confidential information has been

22   misappropriated or any breach has occurred.  So we don't

23   concede that.  And then the second point -- and this is

24   really critical.  We moved to dismiss the entire complaint.

25         THE COURT:  Okay.  That must be my -- that's one

1  of the reasons why I set this for oral argument.  I didn't

2  see that the breach of contract claims were really a part of

3  it.  What I saw mostly was the failure to state a claim for

4  Count Two and a failure to state a claim for Count Five.

5         So the violation of FUTSA, as we call it, and the

6  violation of FDUTPA, those are the two that I saw that were

7  primarily at issue, so the Florida Deceptive and Unfair Trade

8  Practices Act, the Florida Uniform Trade Secrets Act.

9         Go ahead.  If you would like to start your oral

10  argument, Mr. Banker, you can go ahead and address that and

11  tell me why those are at issue, as well.  If you can come up

12  to the podium, I would very much appreciate it.

13         MR. BANKER:  Absolutely.

14         If you look at our memorandum of law in support of

15  the motion to dismiss --

16         THE COURT:  I have it right in front of me.  Go

17  ahead.

18         MR. BANKER:  If you look at Page 2, for example,

19  at the bottom of the memorandum, in all five counts the

20  plaintiffs have incorporated the same conclusionary

21  allegations that do not identify the information allegedly

22  misappropriated or established that the information is

23  protected and describe how and when Frankel misappropriated

24  the information.

25         All five counts should, therefore, be dismissed.

1          The authority for that proposition -- the best

2    authority is the primary case on which we rely, which is the

3    *American Registry* case versus *Hanaw*.  And that is an

4    excellent case because that's the same case.

5          In *American Registry*, the claims were for breach

6    of a confidentiality agreement and the trade-secret-type

7    claim.  Judge Steele said, in that case, that when the

8    underlying claim is misappropriation, even when it's a

9    confidentiality or nondisclosure agreement, you still have to

10   allege the elements to support the misappropriation element,

11   which is really the breach of the contract.

12         So *American Registry* -- in fact, I would encourage

13   you -- I think that the cases that I think are the most

14   critical cases to read and that bear most directly are the

15   *American Registry* case, the *DynCorp International versus AAR*

16   *Airlift* case.  These are all cited prominently in our brief.

17         I think that Judge Bucklew's opinion in *Trinity*

18   *Graphic versus Tervis Tumbler* is helpful where she says,

19   on Page 1291, "The standard on a 12(b)(6) motion, a motion to

20   dismiss, is not whether a plaintiff will ultimately prevail

21   on his or her theories, but whether the allegations are

22   sufficient to allow the plaintiff to conduct discovery in an

23   attempt to prove the allegations."

24         And I know that this is not before you today, but

25   the discovery case that we have really recited in our motion

1   to compel, which I think is an excellent case, is the *Anthrex*

2   *versus Parcus Medical* case, which we commend to you, which

3   talks about the abuse inherent and the duty of the Court, the

4   responsibility of the Court or the magistrate to protect

5   defendants in these types of claims where the claim is

6   misappropriation of confidential information.

7           The requirements to put the plaintiff on notice to

8   describe with particularity the confidential information at

9   issue in the case and to show and establish that the

10  information is protected and to allege facts showing how and

11  when the defendant misappropriated the information.

12          These cases say that without those allegations the

13  defendant is not adequately protected.  That is particularly

14  true in this case, and this is really interesting because we

15  have been practicing or been a judge for a long time and the

16  law has really changed in this area.

17          The Supreme Court in *Gibson versus Conley*, [sic]

18  the pleadings standard was much, much lower, and it was kind

19  of a little bit of the wild, wild west.  Then the Supreme

20  Court comes along with *Twombly* and with *Iqbal*.  And I think

21  the Supreme Court realized that we have got abuse.  We have

22  got defendants who are subjected to lawsuits without factual

23  support.  So we are going to require plaintiffs to plead

24  facts which demonstrate that they have plausible claims; and

25  without pleading facts to support the elements of the claim,

1    the complaint does not state a cause of action.

2            I think the helpful language for me -- and I used

3    boilerplate in the discovery motion because that's kind of

4    what I grew up on, but what they say -- and I think this is

5    what the Supreme Court is getting at, you can't just go with

6    a formulaic recitation of the elements of the cause of action.

7            THE COURT:  Mr. Banker, let me ask you something.

8    I want to make certain that I understand it correctly.  When

9    I gave a summary of this at the beginning, I said it sounds

10   to me like we are just here on certain counts of the motion

11   to dismiss.  You told me that we are here on Counts One and

12   Two, the breach of contract.

13           So I want to make certain that I can see on your

14   motion where it covers that because, for instance, if you

15   look at the *DynCorp* case, that was for violations of FUTSA,

16   not breach of contract.  The *American Registry* case does

17   discuss breach of contract but not Defend Trade Secrets Act,

18   Count Three.

19           I think the plaintiff viewed it as a partial

20   motion to dismiss, if you look at the footnote on page 1 of

21   his response.  So I want to make certain that I am correctly

22   analyzing it, but those are just some of the things that have

23   jumped out at me.

24           MR. BANKER:  Well, Judge, I recognize that that's

25   the tack that the plaintiff took in its response and said

1  that we didn't move to dismiss Counts One and Two, but that's

2  not what we said.  If you look at the bottom of page 2 in our

3  motion, we say, "In all five counts the plaintiffs have

4  incorporated the same conclusory allegations that do not

5  identify the information allegedly misappropriated, establish

6  that the information is protected, or describe how and when

7  Frankel misappropriated the information.  All five counts

8  should, therefore, be dismissed."

9         The cleanest case, the best case is *American*

10 *Registry versus Hanaw* where Judge Steele dismissed the breach

11 of contract claim because it did not describe the

12 confidential information, it did not establish that the

13 confidential information was protected, and it did not allege

14 how and when and what the defendant did to misappropriate it.

15 How and when the defendant misappropriated it.

16        Then, if you look on page 7, for example, under

17 subparagraph B on page 7, at the bottom, the plaintiffs

18 failed to establish that the information is protected.  The

19 plaintiff's failure to identify the information

20 misappropriated results in a further deficiency in their

21 claims.  The plaintiffs have failed to allege facts that, if

22 proven, would establish that the information is protected

23 under the nondisclosure agreements.  Allegedly breached

24 Counts One and Two or the statutory provisions allegedly

25 violated Counts Three, Four, and Five.

1        We were very clear that -- and let me tell you why

2   that's the case.  If you look at these confidentiality

3   agreements, for example -- this is really interesting, Judge.

4   In order to establish that information is protected under a

5   confidentiality agreement you need to allege facts

6   identifying the information and showing that it's protected.

7        Now, if you take the employment confidentiality

8   agreement, which they are saying now superseded the original

9   confidentiality agreement, and you look at paragraph 5 of

10  that agreement, it's very peculiar language.  Very peculiar

11  language.

12       It talks about -- this is an exhibit to the

13  Amended Complaint, paragraph 5.  It says, "Confidentiality

14  obligation survives employment."  And I'm quoting.

15  "Employee's obligation to maintain the confidentiality and

16  security of confidential information" -- and that's

17  capitalized -- "remains even after employee's employment with

18  the company ends and continues for so long as such

19  confidential information remains a trade secret."  And trade

20  secret is not capitalized.

21       So under this agreement -- it's a very unusual

22  agreement, so they are saying that the employee's obligation

23  of confidentiality ceases after the employee leaves unless

24  the plaintiffs who are parties to this confidentiality

25  agreement have taken steps and continue to take steps to

1   protect that information.

2          So as Judge Steele explained in the *American*

3   *Registry* court, even under the contract claims the plaintiffs

4   have to prove -- when the breach of contract is

5   misappropriation of the confidential information, the

6   plaintiffs have to establish by facts, plausible facts, what

7   the information is, and they need to establish that they

8   protected it and that it fits within the agreement.

9          The breach, of course, is what they did to

10  misappropriate it and not just a conclusionary allegation of

11  misappropriation and how specifically they used this

12  information to compete unfairly.

13         So if you look at the *DynCorp* case, which is the

14  other case I think that is very helpful -- and that's a

15  Southern District case.  But, you know, if you read these

16  cases, you'll see that the allegations -- for example, in the

17  *DynCorp* case, the allegations are very specific about what

18  the confidential information is.

19         There are two things that are at issue that are

20  very specifically described in the complaint in both of those

21  cases.  One is what they call a --

22         THE COURT:  What does PMA stand for?

23         MR. BANKER:  PMA is a spreadsheet with all of the

24  information, that big underlying data behind the aggrieved

25  party's bid.  It was very specifically described as a

1   particular spreadsheet, and the Court describes it.  That was

2   one of the things that was described as confidential

3   information.

4           The other thing that was described was this very

5   specific package of information that was going to be used to

6   prepare the aggrieved party's bid on this government

7   contract, a very specific contract, WASS contract.  All of

8   this is very specifically described.

9           The allegations in the complaint in that case

10  identified the trade secrets for which *DynCorp* was claiming

11  protection with sufficient particularity to survive a motion

12  to dismiss.  The amended complaint did not just identify

13  broad categories of information such as financial and

14  technical data, but specifically identified financial and

15  technical data related to *Dyncorp*'s pre-existing loss

16  contract, included personnel lists, salary and pay

17  differentials, and pricing data related to staffing and

18  business operations related to this particular contract.

19          That's very different from what we have here.  So

20  this case is a little bit unusual because we have gotten a

21  little bit down the road on it; but I will tell you, Judge,

22  that the plaintiffs have admitted that they have no facts to

23  support their claim.

24          THE COURT:  Where did they do that?

25          MR. BANKER:  They admitted that in -- it's

1    document 35-1, and it is their answers to our

2    interrogatories, and it's attached as an exhibit to our

3    motion to -- it was attached as an exhibit to our opposition

4    to their motion to amend.

5            In that interrogatory -- it was a very simple

6    interrogatory.  There are only two allegations in the

7    plaintiffs' complaint that purport to allege any type of

8    information that approaches fact.

9            No. 1 is paragraph 23 where they talk about what

10   they say the confidential information is:  Business

11   practices, financial relationships, client lists, pricing

12   information, and private financial information of the Hurry

13   parties.

14           Paragraph 24, they allege in formulaic recitation

15   the Hurry parties are informed and believe -- this is on

16   information and belief -- that after leaving Alpine, if not

17   earlier, Frankel knowingly and willingly breached his

18   obligations to them under the NDA, the employee nondisclosure

19   agreement, using confidential information obtained from the

20   Hurry parties to solicit capital, establish banking

21   relations, recruit clients, and compete with the Hurry

22   parties' business.

23           Among other things, the Hurry parties are informed

24   and believed that the defendant used the foregoing

25   confidential information to make a bid for a broker-dealer.

1       We took that interrogatory, verbatim, in

2   interrogatory four and we asked the basis for that allegation

3   about what Frankel did, and we asked, in the sub-parts, the

4   facts, the witnesses, and the documents that support that

5   allegation.

6       You know what the plaintiff said?  And this was

7   verified by all four plaintiffs.  Plaintiffs object to this

8   interrogatory on the grounds that it requests information

9   solely known to Frankel which plaintiffs will only be able to

10  ascertain through their discovery requests.

11      They admitted that they have no facts to support

12  their claim.  They admitted it.  I wish we could move for

13  summary judgment, but we are not there yet on the Court's

14  deadline for filing motions for summary judgment.

15      So if you look at this Complaint, it is nothing

16  other than a formulaic recitation of the elements for claims

17  for breach of the nondisclosure agreement, formulaic

18  recitation of the elements for breach of the employee

19  nondisclosure agreement, formulaic recitation of claims for

20  the Federal Trade Secrets Act, formulaic recitation of

21  claims.  It could go anywhere.  It could go anywhere for the

22  Florida Trade Secrets Act.

23      It's just a formulaic.  It's generic information.

24  It tells you nothing.  And we have made clear in our brief

25  and in the cases that we have cited that plaintiffs asserting

1    these claims have to allege facts to support

2    misappropriation, to demonstrate that they have plausible

3    viable claims.  They have to identify the confidential

4    information with particularity.  Now, admittedly, that's in a

5    misappropriation case, but that is the language that was used

6    in -- I think in *American Registry* and the *DynCorp* case.

7              They have to establish that the confidential

8    information is protected, and that's a requirement under the

9    contract claim.  They have to establish why this information

10   is not public information.  They need to establish why this

11   is so valuable and what they have done to protect it.

12             They need to show in this case that they have

13   continued to maintain this information as a trade secret

14   after Frankel's employment ceased at the end of July of 2015.

15   They certainly need to disclose what the information is, and

16   they need to allege how and when he misappropriated it.

17             Judge, this is a -- this is a case of injustice.

18   This a case of abuse.  And I'm sure people say that to you a

19   lot, but this has been terribly unfair to Mr. Frankel.  For

20   them to be able to put forth these formulaic recitation of

21   claims that you can apply to really any case and really say

22   nothing, to admit in an interrogatory answer that you have no

23   facts to support your claim, and to put Mr. Frankel through

24   these proceedings is outrageous.

25             It has been expensive.  Our first tack was to try

1   to get a bond posted, and I understand that's a very

2   difficult thing to do.

3           THE COURT:  It is.

4           MR. BANKER:  But we filed -- I understand.  And we

5   knew that it would be tough, but we thought that was a better

6   strategy than moving to dismiss because if you move to

7   dismiss, of course the plaintiff can just amend and try to

8   cure the deficiencies.  So we thought that the bond motion

9   was a better option to try to secure -- to get financial

10  protection for Mr. Frankel so that abuse would not occur

11  through this lawsuit.

12          We have also filed his affidavit in which he said,

13  I didn't do anything.  He went through in detail.  The guy is

14  fighting a negative.  He's fighting a negative.  They won't

15  even tell him what he did.

16          They sent him a demand letter.  They send him a

17  perfunctory demand letter, and he said, What are you talking

18  about?  I didn't misappropriate anything.  Tell me what you

19  think is confidential and what you think I did and let's

20  clarify it.  They didn't even wait for a response.  They sued

21  him.  That's the kind of people we are dealing with here,

22  Judge.

23          THE COURT:  I did see there were some discovery

24  issues.

25          MR. BANKER:  I know we are not here on discovery,

1    but I'm here on justice.  I'm here on justice, and this man

2    has been put to tremendous expense and burden.  And this is

3    particularly important in this case because in this case,

4    Judge -- this is another factor that's really important.

5    There is no noncompetition agreement.  There is no customer

6    non-solicitation agreement.

7            So what they are trying to do is they are trying

8    to morph -- by these boilerplate, formulaic recitations, they

9    are trying to get over on Mr. Frankel to squash his

10   activities, to monitor his activities, and to keep him from

11   entering into deals.

12           We have already had a deal that's failed because

13   of this lawsuit already because of Mr. Hurry's reputation in

14   this industry.

15           THE COURT:  I'm trying to resolve these things as

16   expeditiously as possibly, which is why I set it for hearing.

17   Mr. Banker, is there anything else on your motion that you

18   would like to say before I hear from Mr. Susman?

19           MR. BANKER:  I apologize for getting emotional,

20   and you've done a wonderful job of being very responsive and

21   dealing with motions immediately.  I commend you for that.

22           But I would ask for three things.  I mean, No. 1,

23   the least, the least -- at minimum the Complaint needs to be

24   dismissed and they need to amend to allege facts, which is

25   going to be a real problem in light of their interrogatory

1 answers saying they have none.  I don't know how they are

2 going to do that.

3          I think the fair thing is, given what they have

4 said in their interrogatory answers, given the six

5 opportunities they have had to come forward with the facts is

6 to dismiss with prejudice and give us an opportunity to file

7 our motion for fees and costs to get Mr. Frankel reimbursed

8 for all this.

9          THE COURT:  The only way we ever dismiss -- or I

10 ever dismiss with prejudice is where somebody cannot allege

11 any set of facts.  Otherwise, you've got to give people the

12 opportunity to do it.

13          I understand your frustration.  Let me just see,

14 what is the -- what was the docket number, again, that you

15 said was the discovery?

16          MR. BANKER:  Our motion to compel --

17          THE COURT:  Is that 41 or 46?  I'm sorry.

18          MR. BANKER:  It's docket 46.  I'm hoping that will

19 be heard.  It would be wonderful -- I know the magistrates

20 are here for discovery.  I would love for you to hear all the

21 discovery motions; but if we can get them all heard at the

22 same time, that would be terrific.  And then the final thing

23 that I would say --

24          THE COURT:  Where is the answer that you found so

25 troubling?  Where should I focus?

1          MR. BANKER:  So 35-1 is the interrogatory answer,

2    and the answer that I would encourage you to look for --

3          THE COURT:  Well, 35-1 is the exhibit.

4          MR. BANKER:  Is the exhibit.

5          THE COURT:  That's what I was looking for.

6          MR. BANKER:  The answer -- the response in the

7    interrogatory is -- it was the response to question 4, and

8    that's regarding the allegation.  It was then paragraph 20 in

9    their Complaint.  It's now the same allegation but it's a

10   different number in their Amended Complaint.

11         We recited that in full.  And if you look midway

12   down on their answer on Page 4 of that, Plaintiffs object to

13   this interrogatory on the grounds it requests information

14   solely known to the defendant -- solely known to the

15   defendant -- which plaintiffs will only be able to ascertain

16   through their own discovery requests.  Mr. Frankel has

17   already filed a declaration saying I didn't do anything

18   wrong.

19         THE COURT:  Those are discovery issues that need

20   to be fleshed out.  I do think it's very important that these

21   be fleshed out for sure.  There is no doubt about that.

22         MR. BANKER:  The other thing that I would say, in

23   light of these enhanced pleading requirements since *Twombly*

24   and *Iqbal*, it needs to stop right now.  At minimum, their

25   discovery requests -- they have issued a subpoena for

1  records.  All of that should be stayed until they demonstrate

2  to you that they have facts to support a plausible claim.

3          THE COURT:  Well, I normally don't stay things

4  either because then the case gets off track.  It just does.

5  It needs to keep on moving forward.  That's the only way I

6  can resolve things as expeditiously as possible.  So it would

7  be very unusual for me to stay things.

8          We have -- going back to this Case Management

9  Order, I think we have a discovery deadline of July 26th.  So

10  I can't stay anything.  There is no way we would get anything

11  done.

12          MR. BANKER:  I would be remiss if I didn't ask.

13          THE COURT:  Okay.  I understand.

14          MR. BANKER:  I would not be doing right by my

15  client if I didn't ask.

16          THE COURT:  I understand.

17          MR. BANKER:  If I don't ask, I'm not -- all I can

18  do is be denied.

19          THE COURT:  Okay.  All right.  Mr. Banker, thank

20  you very much.  I appreciate it.

21          Mr. Susman, let me begin by asking you -- I know I

22  saw that footnote in your response --

23          MR. SUSMAN:  Yes.

24          THE COURT:  -- with respect to Counts One and --

25  it's really One, Two, and Three.  The argument that I saw

1    seems to be about Count Four and about Count Five primarily,

2    but isn't it correct that some of the argument that he raised

3    with respect to Count Four and Five can be applied to those

4    other counts?

5              MR. SUSMAN:  That's incorrect, Your Honor.

6              THE COURT:  Tell me why.

7              MR. SUSMAN:  I'll tell you why.  It's very

8    disingenuous for counsel to stand up here and start saying

9    that defendant brought a motion to dismiss a breach of

10   contract claims, when if you look at the motion itself, it

11   doesn't even discuss the elements of what breach of contract

12   are.  It's nowhere in there.

13             THE COURT:  I went back and I looked at this, and

14   he does say "Frankel's Motion to Dismiss Plaintiffs' First

15   Amended Complaint."  It doesn't say Counts Four and Five.

16   Then it does say at the end, "Frankel, therefore, requests

17   that this Court dismiss the first Amended Complaint for

18   failure to state a claim upon which relief can be granted."

19   It doesn't say Counts Four and Five.  It says the amended

20   complaint.

21             Now, granted, there isn't the kind of information

22   that I normally look for when I see a motion to amend a

23   contract claim or breach of contract claim, but most

24   certainly some of the language in the cases that he cites are

25   most certainly applicable to different causes of action.

1          MR. SUSMAN:  But they are not applied to the

2   breach of contract claim in the motion.  If they were, we

3   would have opposed it.  So that's why we are now having a

4   speaking motion to dismiss by the defendant.

5          THE COURT:  If you do look at the -- if you do

6   look at the title of it, it does say Motion to Dismiss.

7          MR. SUSMAN:  It does, but I think it's either

8   careless, it's sloppy, or it's just ad hoc.  And I honestly

9   think we are looking at ad hocery more than anything else.

10         The fact that we do not have what are the elements

11  of the breach of contract.  What elements are missing from

12  the Complaint?  It doesn't say anywhere.

13         He cites the case of *American Registry* to say,

14  like *American Registry*, plaintiffs have failed to allege a

15  breach of contract or that case dismissed a breach of

16  contract claim.

17         Nowhere, nowhere in the motion does defendant

18  apply the standard of *American Registry* to the breach of

19  contract claims.  We absolutely would have opposed it if

20  there was something to oppose.

21         If defendant had said these are the elements of

22  breach of contract and these are the elements that the

23  Complaint fails to allege, we would have addressed those.

24  That doesn't exist.

25         THE COURT:  Why can't the grounds to dismiss Count

1    Four also support the dismissal of Counts One, Two, and Three?

2            MR. SUSMAN:  Because what those -- what is

3    addressed in the brief is the pleading standard for a

4    misappropriation claim, not for breach of contract.  And they

5    are different.  And the cases that are cited, particularly

6    *DynCorp* talks about how to plead misappropriation.  That's

7    what it says and that's what these cases are and that's what

8    this motion is.

9            I'm reading right now from *DynCorp*.  Florida

10   courts adjudicating FUTSA cases must look at what the

11   plaintiff is required to plead there.  But then it gives the

12   standard for federal court, again, for FUTSA cases.  Nowhere

13   does it talk about breach of contract.

14           Defendant didn't put that in their motion, so I

15   think it's a little -- that horse has left the barn, for

16   defendant to now say, oh, no, no, no.  Really we are trying

17   to dismiss the whole case.  And the standard -- again, we

18   haven't even heard what the standard is for breach of contract.

19           THE COURT:  Is there anything to stop him from

20   filing another motion to dismiss?

21           MR. SUSMAN:  Yes.

22           THE COURT:  What?

23           MR. SUSMAN:  The one-bite-at-the-apple rule.  Once

24   you bring a motion to dismiss on a claim, you cannot -- on an

25   action and then it is amended, you can't bring it again and

1  address a claim that you did not address before.

2           THE COURT:  Well, you can't have your cake and eat

3  it, too.  On the one hand you are saying he can't bring it up

4  again; on the other hand you are saying he didn't address it.

5           MR. SUSMAN:  Correct.  They accepted that it was

6  well-pleaded.  It's only now that they are facing the judge

7  that we pointed out in our brief that they did not bring a

8  motion to dismiss those claims that they are desperately tap

9  dancing here and trying to bring in outside evidence and

10  trying to convert this into a motion for summary judgment and

11  saying, Your Honor, why don't you look at interrogatory

12  responses?  Well, if we are going to open this up and make

13  this an MSJ, then I would ask the Court do so.

14           THE COURT:  I'm not treating it at all as a motion

15  for summary judgment.

16           MR. SUSMAN:  Thank you.

17           THE COURT:  So really the issue here is what does

18  this motion to dismiss cover.  Quite frankly, Mr. Susman, I

19  would be reticent to dismiss a complaint with prejudice.  I

20  would be reticent to not give somebody an opportunity to

21  replead it.  It would really have to be extraordinary

22  circumstances for me to do that.

23           So in terms of moving this case -- keeping this

24  case on track and moving things forward, I'm just trying to

25  determine what is the quickest and the most expedient way to

1    proceed here, because I have to say, the way I interpreted it

2    is not that different from the way you interpreted it.

3              When I analyzed this case, I looked at it as

4    primarily a motion to dismiss Counts Four and Five.  He

5    didn't say that.  He said motion to dismiss.  The title said

6    it; the end said it.

7              Some of the analysis is applicable to one, two,

8    and three -- Counts One, Two, and Three, but the bulk of his

9    argument is towards Counts Four and Five.  So I would give

10   you, most certainly, a chance to replead.  I have an analysis

11   I'm going to go through to explain what I think is missing

12   here.

13             You do need to allege facts.  There aren't

14   sufficient facts here, particularly when you look at --

15   normally what we like to see in these kinds of complaints and

16   the type of analysis and the type of facts, it's just missing

17   here.  It's just missing.

18             So I do agree with them.  It doesn't meet the

19   requirements of the Eleventh Circuit, but a dismissal with

20   prejudice, absolutely not.  That's not going to happen.  It's

21   an opportunity to replead.

22             So the problem is we have got those three

23   additional counts that, quite frankly, I haven't analyzed the

24   way I've analyzed Counts Four and Five.  I'm going to tell

25   you in a few minutes what I think is missing, just generally

1    speaking, from Counts Four and Five, but I don't have that

2    analysis with respect to One, Two, and Three except to how it

3    is that some of the language in those cases are also

4    applicable to One, Two, and Three.

5            So I'm going to give a general analysis,

6    specifically directed towards Four and Five, but much more

7    generally directed towards One, Two, and Three, more or less

8    in the way their motion was.

9            I'm going to go ahead and rule.  I'm going to give

10   you the opportunity to file an amended complaint, and they

11   have every opportunity to file another motion to dismiss.

12           So I'm trying to move it along as quickly as I

13   can, but that's going to be what I'm going to do here.  Is

14   there anything else that you would like to say before I rule?

15           MR. SUSMAN:  So the Court is not willing to

16   entertain oral argument from plaintiffs?

17           THE COURT:  Most certainly.  Please, go ahead.  Go

18   ahead.

19           MR. SUSMAN:  I don't want to waste anyone's time.

20           THE COURT:  If there is something I need to

21   consider that I've missed, by all means go ahead and do it.

22           MR. SUSMAN:  I think the issue is, among other

23   things, is as it says in the *DynCorp* case is that -- and this

24   is a difference between Florida law and federal cases is that

25   federal cases only require notice pleading, and the important

1   part is here is that we have alleged with reasonable

2   particularity -- pardon me, it's not necessary to plead with

3   reasonable particularity but, rather, sufficient facts to

4   plausibly show a trade secret was involved and to give notice

5   of the material it claims constituted the trade secret.

6           That's what we have here.  And, therefore, if you

7   look at, say, the *American Registry* case, the reason why the

8   Court dismissed the *American Registry* case was because the

9   purportedly misappropriated information was identical to the

10  confidential information that was defined in the agreement.

11          That's what the Court objected to.  And rightfully

12  so.  That is not the case here.  Here, if you look at the

13  pleadings and what it's identified as confidential

14  information -- and it talks about marketing strategies,

15  plans, financial information, projections.  It goes on and on

16  and on.  If you compare that to the allegations of what

17  Mr. Frankel misappropriated, it's much more circumscribed.

18          THE COURT:  Let's talk specifically about this

19  case.  It says you've identified the following trade secrets:

20  Business practices, financial relationships.  In terms of

21  those relationships, client lists, pricing information, and

22  private financial information of the plaintiffs and their

23  clients.

24          Aren't these broad and generic categories of

25  information that courts, generally speaking, have held to be

1    insufficient to state a claim for misappropriation?  Because

2    as best I can see, the only identifying information that

3    you've alleged is that they are informed and believe that

4    Frankel has used confidential information obtained from the

5    plaintiffs to make a bid for a broker-dealer in Chicago.  But

6    while this allegation may relate to a broker-dealer in

7    Chicago, it's really insufficient, and that's why I think

8    that you failed to sufficiently identify the trade secrets at

9    issue.

10           MR. SUSMAN:  Well, if you look at the *DynCorp*

11   case, what it objects to is broad categories of information.

12   And it says, such as, quote, financial and technical data.

13   If we had just said financial and technical data, that would

14   obviously be insufficient.

15           THE COURT:  Well, I beg to differ with you.  My

16   reading of these cases is that you need to specify these with

17   more particularity.

18           I think that in your second amended complaint you

19   need to -- well, you don't need to disclose the secret

20   information.  You need to identify it with enough specificity

21   as to give Mr. Frankel notice of what it was that was

22   misappropriated.  He doesn't have that notice.  He doesn't

23   know what you are talking about.

24           MR. SUSMAN:  He's well aware of the documents that

25   he illegally sent to his personal e-mail.

1          THE COURT:  Well, in looking at the Complaint,

2     Mr. Susman, I can't come to that conclusion.  I'm giving you

3     the opportunity to replead it.  I'm not dismissing it with

4     prejudice, but you need to allege that with specificity, and

5     that's what's missing here.

6          MR. SUSMAN:  Let me ask the Court while we are

7     here, what about the second element in terms of whether or

8     not the information is protected?  The case law is very clear

9     that having employees sign an NDA is sufficient to allege

10    with sufficient particularity regarding misappropriated

11    information is protected.  Has that satisfied the Court?

12         THE COURT:  You need to give him notice of what it

13    was that was misappropriated.  That's what I'm going to tell

14    you at this juncture.  You can file your amended complaint

15    and he can respond to it and that's when I will rule on it.

16         For you to ask me these questions piecemeal is

17    really not normally the way I do business.  What I'm telling

18    you is that there is not sufficient notification here to the

19    plaintiff [sic] as to what was misappropriated.

20         You don't need to specifically identify what the

21    trade secrets are.  You don't need to give -- you don't need

22    to disclose the trade secrets -- excuse me -- but you need to

23    identify it with specificity.  He doesn't know what you are

24    talking about.

25         MR. SUSMAN:  Okay.  But let me rephrase the

1  question, then.  My question is more on what basis the Court

2  is ruling.  It sounds like it's the first element and not the

3  second and third elements of the misappropriation claims.

4      THE COURT:  That's sufficient, quite frankly, to

5  dismiss this without prejudice.

6      MR. SUSMAN:  I understand that, but I would hate

7  to be here in the same place and we are looking at the exact

8  same motion if we have the complaint that says the exact same

9  thing and the motion says the exact same thing.  If that

10 doesn't --

11     THE COURT:  If he says the exact same thing, it's

12 going to be dismissed.  So I hope it doesn't.

13     MR. SUSMAN:  I'm talking about elements two and

14 three, though, Your Honor.

15     THE COURT:  All right.  As I said, I'll cross that

16 when I get there.  As far as I'm concerned you haven't

17 discussed this with sufficient particularity or specificity.

18     So what I will do is -- since we are talking about

19 the first one, why don't I go ahead and talk about the case

20 law a little bit.

21     So, generally speaking, to state a claim for trade

22 secret misappropriation a plaintiff must allege that it

23 possessed secret information and took reasonable steps to

24 protect its secrecy and the secret it possessed was

25 misappropriated either by one who knew or had reason to know

1  that the secret was improperly obtained or by one who used

2  improper means to obtain it.  And that's the *Audiology* case,

3  a Middle District of Florida case.

4        Florida courts adjudicating these types of cases

5  have said that the plaintiff is required to identify with

6  reasonable particularity the trade secrets at issue before

7  proceeding with discovery.  That's from the Florida Fifth

8  DCA, the *AAR Manufacturing* case.

9        However, to satisfy this requirement at the

10 dismissal stage in federal court, the plaintiff need only

11 allege sufficient facts to plausibly show a trade secret was

12 involved and to give the defendant notice of the material it

13 claims constituted a trade secret.  That's the *DynCorp* case,

14 the Eleventh Circuit case that we have talked about.

15       In *DynCorp*, the Eleventh Circuit did hold that the

16 district court erred in holding that the amended complaint

17 did not identify the claimed trade secrets with reasonable

18 particularity.  The Eleventh Circuit noted the amended

19 complaint did not just identify broad categories of

20 information, such as financial and technical data, but

21 specifically identified financial and technical data related

22 to the plaintiff's pre-existing contract, including personnel

23 list, salaries, pay differential, and pricing data.

24       District courts in the Eleventh Circuit have

25 generally followed *DynCorp* and have held that a plaintiff

1  sufficiently alleges a misappropriation claim where he

2  identifies trade secrets related to specific clients,

3  competitors, and projects.  For instance, the *Developmental*

4  *Technologies* cases that one of my fellow judges decided back

5  in -- actually, earlier this year.  Just a couple of weeks

6  ago -- holding that the complaint sufficiently stated a claim

7  for misappropriation because it identified several categories

8  of confidential and proprietary information disclosed to

9  defendant, including photographs of active tests and system

10 configurations and visual demonstrations of root biopsies and

11 the correlation and relationship of the plant's root

12 structure.

13         We also have the *Sentry Data Systems* case, holding

14 the complaint sufficiently alleged a claim for a

15 misappropriation because it alleged that defendant shared

16 trade secrets, including its pharmacy service agreement

17 template, proprietary software programs for administrating

18 the 340B program, proprietary configurations and data

19 specifications of Sentry software in order to submit properly

20 formatted data to Sentry for processing on behalf of CVS.

21         There are other cases, likewise, but district

22 courts have also held that allegations that the defendant

23 misappropriated broad and generic categories of information

24 are insufficient to state a claim for misappropriation.

25 That's what we have here.

1          Take a look at the *American Registry* case out of

2     the Fort Myers, 2013.  Software, financial data, lists, and

3     information and records are broad and generic categories of

4     information and provide insufficient notice as to the actual

5     trade secrets misappropriated.

6          In the *Taxinet* case, the Court granted the

7     defendant's motion to dismiss because the plaintiff only

8     alleged broad categories of information, such as confidential

9     business information, processes, techniques, software

10    applications, and services and business model.

11         The Court noted -- this is in *Taxinet* -- while the

12    plaintiff lists in its complaint certain characteristics of

13    its business model, including its taximeter, GPS navigation

14    system, a tracking system with a panic button, a payment

15    gateway for credit cards, and a future booking system, it

16    does not lay out in its complaint which of these trade

17    secrets were impermissibly used by the defendant.

18         That's what we really have here.  The plaintiffs,

19    as I said earlier, have identified a number of trade secrets,

20    but they are broad and generic categories of information that

21    other courts have held to be insufficient to state a claim

22    for misappropriation.  There just isn't sufficient

23    information for the defendant to be able to really file an

24    answer in this case.

25         So really what we have with respect to the

1    identifying information alleged by the plaintiff is that they

2    are informed and believe that Mr. Frankel has used the

3    foregoing confidential information obtained from the

4    plaintiffs to make a bid for a broker-dealer in Chicago.

5              This allegation is insufficient, and so the

6    plaintiffs have failed to sufficiently identify the trade

7    secrets at issue.  This is as to Count Four, as I said

8    earlier.

9              So I will dismiss it with prejudice.  I've told

10   you, Mr. Susman, what you need to state in your next amended

11   complaint.

12             MR. SUSMAN:  Without prejudice.

13             THE COURT:  Yes, it's without prejudice, of

14   course.  I would not dismiss this case with prejudice at this

15   juncture.

16             While you don't need to disclose the trade

17   secret -- excuse me, secret information, you must identify it

18   with enough specificity as to give Mr. Frankel notice of what

19   was misappropriated.  And at this juncture he simply doesn't

20   have that.

21             You've talked a little bit about the other

22   matters.  I will tell you that your other two arguments for

23   dismissal of this claim, which I believe my reading -- or I'm

24   sorry, Mr. Frankel's other two arguments for dismissal of

25   this claim are that the plaintiffs have failed to establish

1  the information is protected and failed to describe how or

2  when Mr. Frankel misappropriated the protected information,

3  but these issues are related to the lack of specificity that

4  I've discussed.

5          So that's my ruling with respect to Count Four.

6  You most certainly have the opportunity to file an amended

7  complaint.

8          Let's go on to Count Five, the violation of

9  FDUTPA, and I'm happy to hear your argument, if you would

10 like to make it at this time, to the extent that you haven't

11 already argued it.

12         MR. SUSMAN:  I think the issue was on whether or

13 not it was duplicative of the FUTSA claim.  The issue is, in

14 looking at that, whether it's preempted by the FUTSA claim,

15 and the issue there is whether it's materially different and

16 distinct.  The answer is yes, and it's right there in the

17 Amended Complaint.

18         It says, regarding the Trade Secrets Act claim

19 that it is based upon defendant's misappropriation and use of

20 trade secrets, quote, for his own benefit.  Whereas, when you

21 look at the FDUTPA claim, it's based upon defendant using

22 confidential information, trade secrets to unfairly compete

23 with the Hurry parties.  And those are two very different

24 things.  That is why the FDUTPA claim is not preempted by the

25 trade secret claim.

1      One is premised on the misuse of confidential

2  information by the defendant for his own benefit, his

3  self-enrichment, while the other is premised on defendant's

4  misuse of confidential information to unfairly compete.

5  Those are two different categories of wrongdoing by the

6  defendant.

7            THE COURT:  Okay.  Anything else?

8            MR. SUSMAN:  That is it for right now.  Thank you.

9            THE COURT:  Thank you.  You've argued that the

10  plaintiff's claim under FDUTPA fails as a matter of law --

11  I'm sorry, Mr. Frankel has argued that your client's claim

12  under FDUTPA fails as a matter of law because the FDUTPA

13  allegations are not separate and distinct from those

14  supporting the FUTSA claim.

15      So the provisions of FUTSA displace conflicting

16  tort and other laws of Florida providing civil remedies for

17  misappropriation of a trade secret.  So in other words, other

18  torts involving the same underlying factual allegations as a

19  claim for trade secrets, misappropriation will be preempted

20  by FUTSA.

21      The FUTSA does not preempt, however, other civil

22  remedies that are not based upon misappropriation of a trade

23  secret.  So in order to pursue claims for additional tort

24  causes of action where there are claims for misappropriation

25  of a trade secret, there must be material distinctions

1 between the allegations comprising the additional torts and

2 the allegations supporting the FUTSA claim.

3          So to conduct this analysis, the Court must

4 compare the allegations of the FDUTPA claim and the FUTSA

5 claim to determine if the allegations are separate and

6 distinct.

7          Here, the plaintiff's FUTSA claim alleges that

8 Mr. Frankel violated FUTSA by knowingly misappropriating and

9 wrongfully using the plaintiff's trade secrets for his own

10 benefit.  Similarly, the plaintiff's FDUTPA claim alleges

11 Frankel violated FDUTPA by using the plaintiff's confidential

12 information and trade secrets to solicit the plaintiff's

13 clients, establish relationship with the plaintiff's

14 financial institutions and investors, and attempt to acquire

15 broker-dealer in Chicago.

16          The use of confidential information appears to

17 support both the FUTSA claim and the FDUTPA claim.

18          The plaintiffs contend that their FUTSA claim is

19 based on Frankel's taking of their confidential information,

20 while their FDUTPA claim is based on Frankel's use of their

21 confidential information.

22          While it's true that courts have held the use of

23 confidential information is a separate allegation from the

24 misappropriation of confidential information -- and that's

25 the *Allied* case out of Fort Myers -- finding no FUTSA

1  preemption because tortious interference claim pertained to

2  attempted solicitation of plaintiff's customers and

3  employees, not solely taking customer lists and other

4  protected information.

5        The *Audiology* case, holding breach of fiduciary

6  and tortious interference claims, which were based on the use

7  of confidential information, were not preempted by FUTSA

8  claim, which was based on the misappropriation of

9  confidential information.

10        However, the plaintiffs' Amended Complaint fails

11  to allege this distinction.  Both the FUTSA claim and the

12  FDUTPA claim allege Mr. Frankel violated the statutory

13  provisions by using the plaintiff's confidential information.

14  So the plaintiffs need to reallege this claim.

15        So I'm dismissing without prejudice Count Four and

16  Count Five.

17        Thank you, Mr. Susman.  You can return to your

18  seat.  I didn't mean to have you stand there the whole time.

19  I'm so sorry.

20        MR. SUSMAN:  Thank you very much.

21        THE COURT:  Mr. Banker, I'm not quite certain what

22  to do with One, Two, and Three.  I think what I'm going to

23  do -- and you can tell me if you think it ought to be handled

24  differently.  What I think is I'm going to give Mr. Susman

25  the opportunity to file an amended complaint.

1              To the extent what I've said here covers your

2     arguments, I think you can file an amended complaint also

3     including additional allegations as to One, Two, and Three

4     because I think that your arguments as to Four and Five

5     generally covered One, Two, and Three.  So I think it would

6     be fair to do that.

7              Does that sound okay with you?

8              MR. BANKER:  I think the appropriate thing, given

9     your ruling and familiarity with the cases and the rules,

10    which you've obviously studied, I think it would be

11    appropriate to dismiss the entire complaint.  That's what the

12    *American Registry* case did, and give him the opportunity to

13    replead facts that support the claims.

14             THE COURT:  Okay.  I'm just going to dismiss your

15    Complaint without prejudice, and you can reallege facts as to

16    One, Two, and Three.  True, I haven't really discussed them

17    in detail.  My analysis went as to Four and Five, but I think

18    that's the fairest and the best way.

19             Mr. Susman, what's the least amount of time that

20    you need to file an amended complaint, given what I've just

21    said?

22             There will not be a written order.  I've done it

23    this way to get this done as quickly as possible, and this is

24    the quickest way that I know how to do this, to rule from the

25    bench and to have a bench memo as opposed to a full-fledged

1 order here.

2          When do you think -- how long will take you?  How

3 long do you need, Mr. Susman?

4          MR. SUSMAN:  Three weeks sound reasonable?

5          THE COURT:  That's too long.  The most I would

6 give you is 14 days.  So if you need 14 days, I'm going to

7 give it to you, but not 21 days.

8          MR. SUSMAN:  I'll take 14 days, then, Your Honor.

9          THE COURT:  All right, 14 days.  So today is April

10 26th.  May 10th.  Your amended complaint is due on May 10th,

11 and their response is due under the Federal Rules of Civil

12 Procedure.  You just follow the appropriate timeline --

13          MR. BANKER:  Yes, Your Honor.  Will do.

14          THE COURT:  -- for either your motion to dismiss

15 or answer, depending on what Mr. Susman says in his amended

16 complaint.

17          Now, I am sorry not to have something else to be

18 able to do today to get this case -- to make certain it gets

19 resolved.  I see the motion to compel interrogatory answers

20 filed on April 16th.  It's not been responded to.  Motion to

21 compel by the plaintiffs.  Motion to compel responses, let's

22 see, filed by the plaintiffs.

23          Has that been set yet?  That has not been set yet?

24          MR. SUSMAN:  I believe it has been set.

25          MR. BANKER:  Yes, the plaintiffs' motions to

1  compel I think are set for May 6th.

2        THE COURT:  So, then, you will -- good, you'll

3  have a hearing then.

4        MR. BANKER:  I was hoping we could have all the

5  motions heard together before the magistrate if that's

6  possible.

7        THE COURT:  I think that's a good idea.

8        What do you think about that, Mr. Susman?

9        MR. SUSMAN:  I would object to that because we

10  filed our motions to compel weeks -- weeks before defendant

11  filed his motion, and we are eager to get this case moving

12  along.

13        One of the issues being that defendant's counsel

14  drafted a confidentiality agreement and now won't sign it,

15  even though we have agreed to all of the language.  So we

16  would really like to have our motion heard as soon as possible.

17        THE COURT:  What would be wrong with adding this

18  motion, with your responding to it, and my asking the

19  magistrate judge to hear it all at once?  What's wrong with

20  that?

21        MR. SUSMAN:  What would be the hearing date?  If

22  the hearing date would be on the earliest date, that would be

23  terrific.

24        THE COURT:  I would ask the magistrate judge if he

25  could do that.  So the hearing date is May the 7th.  So that

1  would be -- May 7th is a week from this Tuesday, but it

2  hasn't been responded to.  Let's see your response, 4-16.

3  The response is due --

4          MR. SUSMAN:  I believe it's due on Monday or

5  Tuesday, so that would work perfect.

6          MR. BANKER:  I wasn't talking about backing up the

7  hearing.  I want to move forward, too, and that will save you

8  another trip.

9          THE COURT:  I'll ask the magistrate judge if the

10 magistrate judge can hear all of this all at once.  I'll do

11 an order asking the magistrate judge if it's possible to do

12 that.

13         MR. BANKER:  That would be terrific.

14         MR. SUSMAN:  That's great for everyone.

15         THE COURT:  I think that would be a great idea,

16 then.

17         I didn't have a case management hearing in this

18 case.  I don't do it in all cases.  I do it in some cases.

19 Is there anything else anybody would like me to know about in

20 this case?  Anything else anybody would like to say?

21         I mean, I heard your passion there, Mr. Banker, so

22 I got a feel for what is going on, but is there anything else

23 you would like to tell me about this case?  Or Mr. Susman?

24         MR. SUSMAN:  Nothing at this time, Your Honor.

25         THE COURT:  Thank you.

1           MR. FRANKEL:  I've got plenty.

2           THE COURT:  I kind of figured.  That's quite

3  all right.  Everything at its time and everything -- time for

4  everything.  Let's put it that way.

5           MR. BANKER:  I know it's unusual to move for

6  summary judgment before discovery is closed but, I mean, is

7  there any prohibitions against doing that?

8           THE COURT:  No, but here's the problem.  You only

9  get one bite at the apple.  If you move for summary judgment

10  now -- or let's say in a month or two months, you can't move

11  again, and it's an issue if there is discovery outstanding

12  that has to do with the matters raised in summary judgment.

13          I even get a little bit concerned about it if

14  there are disputes as to summary judgment.  So, for instance,

15  let's just say you were to file a motion for summary judgment

16  tomorrow and we have motions to compel.  That would be a

17  problem.

18          Well,  I want to thank everybody for being here.

19  Mr. Susman, thank you so much.  I knew you flew in from the

20  West Coast.  I really appreciate you being here today.

21          MR. SUSMAN:  Thank you very much, Your Honor.  It

22  was a pleasure.

23          THE COURT:  Mr. Banker, Mr. Holder, thank you very

24  much.  Mr. Frankel, thank you for coming.  I always think

25  it's good when the parties are able to come to the hearings.

1    I'm glad that you were here.

2              We are in recess.

3              (Proceedings concluded at 4:13 p.m.)

4                        - - -

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT   )
                               )
MIDDLE DISTRICT OF FLORIDA     )


**REPORTER CERTIFICATE**


        I, Scott N. Gamertsfelder, Official Court Reporter

for the United States District Court, Middle District of

Florida, do hereby certify that pursuant to Section 753,

Title 28, United States Code, that the foregoing is a true

and correct transcript from the stenographic notes taken by

the undersigned in the matter of *CAYMAN SECURITIES CLEARING*

*AND TRADING, LTD. Vs. CHRISTOPHER FRANKEL*, Case No.

8:18-cv-2869-T-33CPT (Pages 1 through 46), and that the

transcript page format is in conformance with the regulations

of the Judicial Conference of the United States.



 /s/ *Scott N. Gamertsfelder*, RMR, FCRR

 *Official Court Reporter*

                                Date: May 7, 2019