## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

THE HURRY FAMILY REVOCABLE TRUST       CASE NO.: 8:18-cv-02869-VMC-CPT
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; ALPINE SECURITIES
CORPORATION,

     Plaintiffs,

vs.

CHRISTOPHER FRANKEL,

     Defendant.

_____/

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

Plaintiffs, the Hurry Family Revocable Trust (the "Hurry Trust"), Scottsdale Capital Advisors ("Scottsdale"), and Alpine Securities Corporation ("Alpine") (collectively the "Hurry Parties"), oppose defendant Christopher Frankel's ("Defendant") Motion to Dismiss the Second Amended Complaint ("Motion") [Dkt. 68], and state as follows.

## I.   INTRODUCTION

On April 26, 2019, the Court dismissed the Hurry Parties' First Amended Complaint ("FAC") with leave to amend on the basis that the Hurry Parties had not sufficiently identified the confidential and trade secret information misappropriated by Defendant.  The Second Amended Complaint ("SAC") [Dkt. 61] has remedied those deficiencies, and precisely identifies the confidential and trade secret information misappropriated by Defendant, including:

     (1)    the confidential information that Defendant disclosed to third parties (SAC ¶¶ 41, 51, 62);

     (2)    the confidential information Defendant used for his own benefit (SAC ¶¶ 42, 51, 62);

(3)    the confidential information that Defendant failed and refused to return upon his termination (SAC ¶¶ 43, 51, 62).

In addition, the SAC identifies the exact dates that Defendant unlawfully sent confidential information to his personal email account (SAC ¶ 25).

The Motion is, therefore, meritless and does not identify any valid deficiencies in the SAC. The Court should deny the Motion.

## II.    STANDARD OF REVIEW FOR MOTION TO DISMISS

A motion to dismiss cannot be granted if the allegations in the complaint, when taken as true and construed in the light most favorable to the plaintiff, "state a claim to relief that is plausible on its face." *DynCorp Int'l v. AAR Airlift Grp., Inc.,* 664 F. App'x. 844, 847 (11th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (this requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" but does not rise to the level of "detailed factual allegations").  When deciding a motion to dismiss, the court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.  *Lowe v. STME, LLC*, 354 F. Supp. 3d 1311 (M.D. Fla. 2019).

As set forth herein, the SAC sufficiently alleges plausible claims for relief and the Motion should be denied.

## III.    THE SAC SUFFICIENTLY PLEADS THAT DEFENDANT BREACHED TWO NONDISCLOSURE AGREEMENTS

The SAC pleads that Defendant breached two separate nondisclosure agreements: (1) the Original NDA with the Hurry Trust, and (2) the Employee NDA with Alpine and Scottsdale.  Both of these claims are pleaded with requisite specificity.

**A.     The SAC Sufficiently Pleads That Defendant Breached The Original NDA**

The first breach of contract claim, brought by the Hurry Trust, is based entirely on Defendant's failure to return documents containing Confidential Information.

As stated in the SAC, the Original NDA required Defendant to return any Confidential Information in his possession upon written request.  (SAC ¶ 16, Exh. 1).  On October 7, 2018, Defendant sent an email from his Alpine email account to his personal email account that contained The First Amendment to the Hurry Family Revocable Trust, a Certificate of Trust regarding the Hurry Trust, and portions of the Hurry Trust document. (SAC ¶¶ 25, 29, 34).  These documents constitute Confidential Information under paragraph 1(a) of the Original NDA in that such information is proprietary to the Hurry Trust and not generally known to the public.  (SAC ¶ 34).  On November 9, 2018, the Hurry Trust sent a written request to Defendant demanding the return of all documents, records and copies thereof that contain any Confidential Information.  (SAC ¶¶ 27, 35).  In breach of the Original NDA, Defendant failed and refused to comply with Plaintiffs' November 9, 2018, written request for the return of their Confidential Information, including the Confidential Information that he emailed to his personal email account on October 7, 2018.  (SAC ¶¶ 28, 36).

All of the foregoing is specifically pleaded by Plaintiffs in the SAC.  Consequently, there is no basis for dismissing the first claim for breach of contract.

**B.     The SAC Sufficiently Pleads That Defendant Breached the Employee NDA**

The second breach of contract claim, brought by Scottsdale and Alpine, is based upon three independent breaches of the Employee NDA: (1) Defendant's failure to return Confidential Information to Alpine and Scottsdale upon his termination; (2) Defendant's disclosure of Confidential Information to third parties, and; (3) Defendant's use of Confidential Information for his own benefit.  All of these breaches are pleaded with specificity.

1. **Defendant Breached the Employee NDA by Failing to Return Confidential Information**

The Employee NDA provides in relevant part: "When Employee's [Defendant] employment with Company [Alpine and Scottsdale] ends, for whatever reason, Employee will promptly deliver to Company all originals and copies of documents, records, software programs, media and other materials containing any Confidential Information."  (SAC ¶ 23, Exh. 2).

On at least 16 (sixteen) separate occasions, Defendant forwarded emails containing Confidential Information from his employee email account to his personal email account. (SAC ¶ 25).   In breach of the Employee NDA, Defendant failed to promptly return all documents containing Confidential Information to Alpine and Scottsdale upon his termination, including *inter alia*:

 a. Alpine's annual audit report for the fiscal year ending September 20, 2016 that included a statement of Alpine's financial condition, statement of Alpine's income, statement of changes in stockholders' equity, statement of Alpine's cash flow, notes on Alpine's financial statements, computation of Alpine's net capital, computation for determination of customer reserve requirements, computation for determination of PAB account reserve requirements;

 b. Statements of accounts for Alpine and Scottsdale on April 10, 2017, including number of accounts, market value and cash/money market;

 c. Alpine's blanket fidelity bond for fiscal year ending November 1, 2017;

 d. A May 7, 2018 email from an attorney for Alpine that included a term sheet for a multi-million dollar secured revolving credit facility;

 e. An April 13, 2018 email from the general counsel for Alpine with a draft employment agreement (that Defendant requested for use as a template);

f.      A July 31, 2018 internal email regarding Alpine's fee schedule that included a listing of Alpine's top-50 accounts by commission amount;

g.      An August 21, 2017 email from the general counsel of Scottsdale that included a term sheet for a loans to Alpine to fund National Securities Clearing Corporation calls;

h.      A July 12, 2017 email from a consultant for Alpine that included the consulting agreement between consultant and Alpine;

i.      A confidential letter dated February 22, 2017 from FINRA to Alpine with a request for information;

j.      An April 12, 2017 email from counsel for Alpine that contained a consultant agreement with the law firm to support its representation of Alpine and Scottsdale;

k.      January 3, 2017 email from FINRA to Alpine regarding due diligence documents;

l.      Internal email correspondence from September 2016 and October 2016 regarding Alpine and Scottsdale's proposed fee schedule;

m.      An internal audit report dated May 1, 2016 prepared by Alpine's chief compliance officer;

n.      Internal emails from September and October 2016 that included Financial and Operations Principal's report dated April 18, 2016;

o.      Internal emails from August 2016 that included drafts of Alpine's correspondent fees and customer fee schedules;

p.      An August 19, 2016 email from FINRA regarding certain proposed changes in Scottsdale's business operations.

(SAC ¶ 43).

All of the foregoing is specifically pleaded by Plaintiffs in the SAC.  Consequently, there is no basis for dismissing the second claim for breach of contract, as the SAC sufficiently pleads

that Defendant breached the Employee NDA by failing to return Confidential Information upon his termination.

### 2. Defendant Breached the Employee NDA by Disclosing Confidential Information to Third Parties

As stated in the SAC, the Employee NDA prohibits Defendant from disclosing Confidential Information to third parties without consent. (SAC ¶ 41, Exh. 2). In breach of the Employee NDA, Defendant disclosed the following Confidential Information to third parties without consent:

a.  Alpine's annual audit report for the fiscal year ending September 20, 2016 that included a statement of Alpine's financial condition, statement of Alpine's income, statement of changes in stockholders' equity, statement of Alpine's cash flow, notes on Alpine's financial statements, computation of Alpine's net capital, computation for determination of customer reserve requirements, computation for determination of PAB account reserve requirements;

b.  Statements of accounts for Alpine and Scottsdale on April 10, 2017, including number of accounts, market value and cash/money market;

c.  A May 7, 2018 email from an attorney for Alpine that included a term sheet for a multi-million dollar secured revolving credit facility;

d.  A July 31, 2018 internal email regarding Alpine's fee schedule that included a listing of Alpine's top-50 accounts by commission amount;

e.  An August 21, 2017 email from the general counsel of Scottsdale that included a term sheet for a loans to Alpine to fund National Securities Clearing Corporation calls;

f.  An internal audit report dated May 1, 2016 prepared by Alpine's chief compliance officer.

(SAC ¶ 41).

All of the foregoing is specifically pleaded by Plaintiffs in the SAC.  Consequently, there is no basis for dismissing the second claim for breach of contract, as the SAC sufficiently pleads that Defendant breached the Employee NDA by disclosing Confidential Information to third parties without consent.

**3.    Defendant Breached the Employee NDA by Using Confidential Information for his Own Benefit**

As stated in the SAC, the Employee NDA prohibits Defendant from using Confidential Information for his own benefit.  (SAC ¶ 42, Exh. 2). In breach of the Employee NDA, Defendant used the following Confidential Information for his own benefit:

a.    Alpine's annual audit report for the fiscal year ending September 20, 2016 that included a statement of Alpine's financial condition, statement of Alpine's income, statement of changes in stockholders' equity, statement of Alpine's cash flow, notes on Alpine's financial statements, computation of Alpine's net capital, computation for determination of customer reserve requirements, computation for determination of PAB account reserve requirements;

b.    Statements of accounts for Alpine and Scottsdale on April 10, 2017, including number of accounts, market value and cash/money market;

c.    Alpine's blanket fidelity bond for fiscal year ending November 1, 2017;

d.    A May 7, 2018 email from an attorney for Alpine that included a term sheet for a multi-million dollar secured revolving credit facility;

e.    An April 13, 2018 email from the general counsel for Alpine with a draft employment agreement (that Defendant requested for use as a template);

     f.     A July 31, 2018 internal email regarding Alpine's fee schedule that included a listing of Alpine's top-50 accounts by commission amount;

     g.     An August 21, 2017 email from the general counsel of Scottsdale that included a term sheet for a loans to Alpine to fund National Securities Clearing Corporation calls;

     h.     A July 12, 2017 email from a consultant for Alpine that included the consulting agreement between consultant and Alpine;

     i.     An internal audit report dated May 1, 2016 prepared by Alpine's chief compliance officer;

     j.     Internal emails from September and October 2016 that included Financial and Operations Principal's report dated April 18, 2016.

(SAC ¶ 42).

All of the foregoing is specifically pleaded by Plaintiffs in the SAC. Consequently, there is no basis for dismissing the second claim for breach of contract, as the SAC sufficiently pleads that Defendant breached the Employee NDA by using Confidential Information for his own benefit.

## IV.   THE SAC SUFFICIENTLY PLEADS THAT DEFENDANT MISAPPROPRIATED PLAINTIFFS' CONFIDENTIAL INFORMATION IN VIOLATION OF THE DTSA AND FUTSA

Defendant argues that the Hurry Parties have not sufficiently pleaded "how and when Defendant misappropriated their confidential information" (Motion at p. 3).[1] Defendant is wrong. The SAC pleads two different kinds of misappropriation of Confidential Information under the

---

[1] Defendant does not challenge the sufficiency of the SAC with respect to the first two elements of statutory misappropriation (identification of the trade secrets and establishing that the secrets are protected). Consequently, Defendant has waived any subsequent argument regarding the sufficiency of these elements. *Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, No. 13-80831-CIV, 2014 WL 1154075, at *2 (S.D. Fla. Mar. 21, 2014) (failure to raise an argument in a party's moving papers constitutes waiver).

Defendant Trade Secret Act ("DTSA") and Florida Uniform Trade Secrets Act ("FUTSA")—unlawful *acquisition* of Confidential Information **and** unlawful *use* of Confidential Information—both of which are pleaded with specificity.

> **A.    The SAC Sufficiently Describes Defendant's Wrongful Acquisition of Confidential Information**

In his Motion, Defendant ignores that Plaintiffs' claims are based upon wrongful acquisition of Plaintiffs' Confidential Information and instead focusses exclusively on Defendant's wrongful use of Confidential Information.   Notwithstanding Defendant's waiver of his right to challenge this portion of the SAC,[2] it has been pleaded with requisite specificity.

Allegations that a defendant "physically thieved, copied, reproduced, replicated, converted, and misappropriated" information without consent are sufficient to state a plausible claim for misappropriation.  *Am. Registry, LLC v. Hanaw*, 2014 WL 12606501, at *4 (M.D. Fla. July 16, 2014) ("*Am. Registry II*").

Here, the SAC alleges that Defendant misappropriated its Confidential Information through wrongful acquisition:

> Unbeknownst to Plaintiffs, and in violation of the Original NDA and the Employee NDA, on August 15, 2016, August 28, 2016, September 9, 2016, October 6, 2016, October 13, 2016, October 14, 2016, November 8, 2016, January 3, 2017, April 12, 2017, May 2, 2017, July 13, 2017, August 31, 2017, July 31, 2018, August 8, 2018, September 18, 2018, October 7, 2018, Defendant forwarded emails containing Confidential Information from his employee email account to his personal email account.

(SAC, ¶ 25).

The foregoing allegations in the SAC sufficiently detail Defendant's wrongful acquisition of their Confidential Information.   Accordingly, the Hurry Parties' misappropriation claims are pleaded with requisite specificity and should not be dismissed.

---

[2] *See Altman Contractors, Inc.*, No. 13-80831-CIV, 2014 WL 1154075, at *2 (failure to raise an argument in a party's moving papers constitutes waiver).

**B.      The SAC Sufficiently Describes Defendant's Wrongful Use of Confidential Information**

In addition to Defendant's wrongful *acquisition* of Confidential Information, the SAC sufficiently alleges that Defendant wrongfully *used* that information.

In alleging that a defendant misused confidential information, a plaintiff must plead "more than a sheer possibility that a defendant has acted unlawfully," and include "factual allegations supporting [the] assertion." *Am. Registry, LLC v. Hanaw*, 2013 WL 6332971, at *2 & 4 (M.D. Fla. Dec. 5, 2013) ("*Am. Registry I*").[3]

In *Am. Registry I,* U.S. District Judge Steele held that the plaintiff's second amended complaint did not sufficiently describe defendants' misappropriation because the plaintiff only alleged that "defendants misappropriated the trade secrets by using them in the formation and operation of [a new, competing venture]." *Id.* at *4.   The plaintiff subsequently filed a third amended complaint and alleged that the defendants used plaintiff's confidential information "without plaintiff's consent in order to emulate plaintiff's business model and to directly target plaintiff's customers."  *Am. Registry II,* at *4.    Judge Steele held that the amended complaint contained "enough factual matter which plausibly suggest that [defendants] have misappropriated plaintiff's trade secrets in violation of the FUTSA."  *Id.*

Similarly, in *Sentry Data Sys., Inc. v. CVS Health*, No. 18-CV-60257, 2018 WL 7081811, at *10 (S.D. Fla. Aug. 28, 2018), the court held that the complaint sufficiently alleged a claim for misappropriation because it alleged that the defendants had misappropriated information by using confidential customer lists to call customers and convince them to switch to the defendants' company.

---

[3] Defendant contends that *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 850 fn. 3 (11th Cir. 2016) created a "requirement of specifically identifying how and when the information was misappropriated." (Motion. at p. 6).  This is incorrect.  The issue in front of the Court of Appeals in *DynCorp* was whether the trial court correctly held that the plaintiffs had not identified the claimed trade secrets with reasonable particularity. Whether the plaintiff had sufficiently pleaded that the information was misappropriated was "not challenged on appeal." *Id.*

Like the plaintiffs in *Am. Registry II* and *Sentry Data Sys.*, the Hurry Parties' allegations of Defendant's use of Confidential Information go far beyond conclusory statements. The Hurry Parties expressly state that Defendant used their Confidential Information to "solicit capital and establish financial relations so that it could make a bid for a broker-dealer in Chicago" (SAC ¶¶ 30, 51, 62). Elsewhere, the Hurry Parties state that Defendant used their Confidential Information to "create a broker-dealer that could provide fees and services competitive to Alpine and then us[ed] Plaintiffs' Confidential Information to solicit their top clients" (SAC ¶ 31). The SAC further alleges that these actions occurred after Defendant left Alpine in September 2018. (SAC ¶¶ 26, 30).

The SAC, therefore, sufficiently alleges that Defendant misappropriated the Hurry Parties' Confidential Information, and the misappropriation claims should not be dismissed.

## V.    THE SAC SUFFICIENTLY PLEADS EXEMPLARY DAMAGES

In the Motion, Defendants argue for the first time that there is no factual support for the Hurry Parties' allegations that Defendant's misappropriation was willful and malicious. [4]

As an initial matter, the Court should ignore this argument, because it is not based on the Hurry Parties' amended allegations and could have been brought in Defendant's Motion to Dismiss the FAC. *See Fla. Family Ass'n, Inc. v. Sch. Bd. of Hillsborough Cty.*, No. 8:05CV2045 T24TGW, 2006 WL 3667281, at *2 (M.D. Fla. Dec. 12, 2006).

Notwithstanding that Defendant's waiver, the SAC sufficiently pleads that Defendant's conduct was willful and malicious. The SAC states Defendant knew "that his knowledge of the Trade Secrets was acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use." (SAC ¶¶ 52, 61). Among other things, the Hurry Parties required Defendant to sign two separate written nondisclosure agreements that agreements expressly required Defendant to keep the Hurry Parties' Confidential Information "strictly confidential" (SAC ¶ 12, Exh. 1) and "in the strictest confidence." (SAC ¶ 21, Exh. 2). The Original NDA required the return of

---

[4] The Motion does not challenge the sufficiency of the Hurry Parties' request for exemplary damages on their FUTSA claims.

Confidential Information upon written request (SAC ¶ 16, Exh. 1), and the Employee NDA required the return of Confidential Information upon termination.  (SAC ¶ 23, Exh. 2).  Defendant willfully disregarded his obligations by emailing the Hurry Parties' confidential and trade secret information to his personal email account and using the Trade Secrets to solicit clients, and otherwise unfairly compete with the Hurry Parties' business. (SAC ¶¶ 25, 29-31, 34, 51, 62).

The SAC clearly alleges facts to support that Defendant's violation of the DTSA was willful and malicious.  Consequently, the Hurry Parties' request for exemplary damages under the DTSA should not be dismissed.

## VI.    IF DEFENDANT'S MOTION IS GRANTED, IT SHOULD BE WITH LEAVE TO AMEND

"The grant or denial of an opportunity to amend is within the discretion of the district court." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. Pro. § 15(a)(2).  In deference to Federal Rule of Civil Procedure 15(a)(2), courts generally grant leave to amend unless the defendant can articulate a substantial reason to deny such relief.  *Lytle v. Lowe's Home Centers, Inc.*, No. 8:12-CV-1848-T-33TBM, 2013 WL 12155009, at *1 (M.D. Fla. July 2, 2013) (reasons to deny leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment").

If Defendant's Motion is granted, there is no substantial reason to deny the Hurry Parties leave to amend their complaint.  Leave would not be futile because the Hurry Parties could and would supplement the SAC with additional allegations regarding how Defendant has willfully and maliciously misappropriated their information.

## VII.    <u>CONCLUSION</u>

For the above-mentioned reasons, the Motion should be denied.  If the Motion is granted in any part, the Hurry Parties respectfully request leave to amend their complaint to cure the deficiencies.

Dated this 7th day of June 2019.

/s/ Jordan Susman
Charles J. Harder, Esq.
Jordan Susman, Esq.
HARDER LLP
132 South Rodeo Drive, Fourth Floor
Beverly Hills, CA  90212-2406
Tel: (424) 203-1600
Fax: (424) 203-1601
E-mail:  charder@harderllp.com
E-mail:  jsusman@harderllp.com

Kenneth G. Turkel – FBN 867233
Shane B. Vogt – FBN 257620
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel:  (813) 443-2199
Fax: (813) 443-2193
E-mail:  kturkel@bajocuva.com
E-mail:  svogt@bajocuva.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 7, 2019, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

/s/ Jordan Susman
Attorney