UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE HURRY FAMILY REVOCABLE
TRUST, SCOTTSDALE CAPITAL
ADVISORS CORPORATION, and
ALPINE SECURITIES CORPORATION,

    Plaintiffs,

v.                                   Case No. 8:18-cv-2869-T-33CPT

CHRISTOPHER FRANKEL,

    Defendant.
_____/

**ORDER**

This matter comes before the Court in consideration of Defendant Christopher Frankel's Motion to Dismiss All Counts of Plaintiffs' Second Amended Complaint (Doc. # 68), filed on May 24, 2019. Plaintiffs the Hurry Family Revocable Trust, Scottsdale Capital Advisors Corporation, and Alpine Securities Corporation responded on June 7, 2019 (Doc. # 71), and the Court held oral argument on July 2, 2019. For the reasons that follow and those stated during oral argument, the Motion is denied.

**I.   Background**

Plaintiffs Cayman Securities Clearing and Trading LTD, the Hurry Family Revocable Trust, Scottsdale Capital Advisors Corporation, and Alpine Securities Corporation initiated this action against Frankel on November 21, 2018. (Doc. # 1). The

1

initial complaint alleged five counts: (1) breach of contract involving a nondisclosure agreement; (2) violations of the Defend Trade Secrets Act (DTSA); (3) violations of the Florida Uniform Trade Secret Act (FUTSA); (4) violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA); and (5) common law unfair competition. (Id. at ¶¶ 28-65).

All counts relate to the same underlying facts – Plaintiffs allege that Frankel, a former CEO and consultant to Alpine Securities, misappropriated confidential information (trade secrets) from Plaintiffs after the parties' business relationship ended. (Id. at ¶¶ 11-20). Frankel allegedly did so to "solicit capital, establish banking relations, recruit Plaintiffs' clients, and compete with Plaintiffs' businesses [by] . . . mak[ing] a bid for a broker-dealer in Chicago." (Id. at ¶ 20).

Plaintiffs filed an amended complaint on February 26, 2019, after learning during discovery that the parties had entered into a second nondisclosure agreement that superseded the original nondisclosure agreement. (Doc. # 37). The amended complaint alleged five counts: (1) breach of contract involving the original nondisclosure agreement between Cayman Securities, the Hurry Trust, and Frankel; (2) breach of contract involving the second nondisclosure agreement between Alpine Securities, Scottsdale Capital, and Frankel; (3) violations of the DTSA; (4) violations of the FUTSA; and (5) violations of the FDUTPA. (Id. at 6-11).

Plaintiffs dropped the common law unfair competition count in the amended complaint.

The Court dismissed the amended complaint after hearing oral argument and determining that Plaintiffs failed to plead sufficient facts to provide Frankel with notice of the trade secrets he allegedly misappropriated. (Doc. # 47). The Court also ruled that the FUTSA claim preempted the FDUTPA claim as alleged because both claims were based upon the same set of underlying factual allegations - that Frankel unlawfully used Plaintiffs' trade secrets after misappropriating materials containing those secrets. (Id.).

Cayman Securities subsequently dropped all counts and the remaining Plaintiffs filed a second amended complaint alleging four counts: (1) breach of the original nondisclosure agreement between the Hurry Trust and Frankel; (2) breach of the second nondisclosure agreement between Alpine Securities, Scottsdale Capital, and Frankel; (3) violations of the DTSA; and (4) violations of the FUTSA. (Doc. # 61 at ¶¶ 32-64). As a basis for those claims, Plaintiffs identify more than fifteen specific documents containing trade secrets that Frankel allegedly misappropriated by forwarding materials from his work email account to his personal email account. (Id.). Frankel subsequently filed this Motion to Dismiss All Counts of Plaintiffs' Second Amended Complaint on May 24, 2019. (Doc. # 68). The Hurry Trust,

3

Scottsdale Capital, and Alpine Securities have responded, (Doc. # 71), and the Motion is now ripe.

## II. Discussion

Frankel argues that all counts in the second amended complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for two reasons. First, Plaintiffs "failed to identify how and when Frankel misappropriated their allegedly confidential information." (Doc. # 68 at 2). Second, Plaintiffs' "conclusory allegations upon information and belief do not meet the plausibility requirement for statutory and contractual claims based on misappropriation." (Id. at 5). Frankel also argues that, even if the Court does not dismiss the DTSA count, "there is no factual support for [Plaintiffs'] allegations that [Plaintiffs] are entitled to exemplary damages" under the DTSA. (Id. at 7-8).

Although the second amended complaint includes four counts, each count is predicated on a finding that Frankel misappropriated Plaintiffs' confidential information/trade secrets. (Doc. # 61 at ¶¶ 32-64). The same analysis is used when considering both statutory and contractual claims for misappropriation of trade secrets. See Am. Registry, LLC v. Hanaw (Am. Registry I), No. 2:13-cv-352-FtM-29UAM, 2013 WL 6332971, at *2-4 (M.D. Fla. Dec. 5, 2013)(dismissing both contractual and statutory claims alleging misappropriation of trade secrets because "the [statutory]

allegations suffer from the same deficiencies as the previous [breach of contract] count").

> ### A. Plaintiffs' Alleged Failure to Identify How and When Frankel Misappropriated Protected Information

To state a claim for trade secret misappropriation under the FUTSA, a plaintiff must allege: (1) it possessed secret information and took reasonable steps to protect its secrecy; and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it. Audiology Distrib., LLC v. Simmons, No. 8:12-cv-02427-JDW-AEP, 2014 WL 12620835, at *1 (M.D. Fla. Jan. 8, 2014). Courts in the Eleventh Circuit will not dismiss a complaint alleging misappropriation of trade secrets when the alleged trade secrets are identified with sufficient particularity "to put [a defendant] on notice as to what material formed the basis for [the] claims." DynCorp Int'l v. AAR Airlift Grp., Inc., 664 F. App'x 844, 849-50 (11th Cir. 2016). Still, the complaint must contain factual allegations, taken as true, to show that the misappropriated information constitutes a trade secret within the meaning of the FUTSA. Id. at 850.

Frankel asserts that Plaintiffs "have not met DynCorp's requirement of specifically identifying how and when the information was misappropriated." (Doc. # 68 at 6). However, that assertion misconstrues the holding in DynCorp. The court did not

hold that a plaintiff must allege a specific time period when the defendant divulged the trade secrets, the people to whom the defendant divulged it, or the manner in which the defendant stored the materials. While those allegations may be pled to help put a defendant on notice as to the materials that were allegedly misappropriated, they are not required. DynCorp, 664 F. App'x at 849-50.

District courts in the Eleventh Circuit have generally followed the DynCorp decision in holding that a plaintiff sufficiently alleges a misappropriation claim when a complaint identifies trade secrets related to specific clients, competitors, and projects. See, e.g., Developmental Techs., LLC v. Mitsui Chems., Inc., No. 8:18-cv-1582-T-27TGW, 2019 WL 1598808, at *3 (M.D. Fla. Apr. 15, 2019)(holding that the complaint sufficiently stated a claim for misappropriation because it identified several categories of confidential and proprietary information, including photographs of active tests, system configurations, and visual demonstrations); Sentry Data Sys., Inc. v. CVS Health, 361 F. Supp. 3d 1279, 1294 (S.D. Fla. 2018)(holding that the complaint sufficiently stated a claim for misappropriation because it identified specific trade secrets, including a Pharmacy Service Agreement template, proprietary software programs, and proprietary configurations and data specifications of software).

6

Plaintiffs' second amended complaint now alleges that Frankel "forwarded emails containing Confidential Information from his employee email account to his personal email account" on sixteen specific dates from August 15, 2016, to October 7, 2018. (Doc. # 61 at ¶ 25). The second amended complaint asserts that Frankel forwarded the following confidential information:

- the First Amendment to the Hurry Family Revocable Trust
- a Certificate of Trust regarding the Hurry Trust
- portions of the Hurry Trust document
- Alpine Securities' annual audit report for the fiscal year ending September 20, 2016
- statements of accounts for Alpine Securities and Scottsdale Capital
- a term sheet for a multi-million dollar secured revolving credit facility relating to Alpine Securities
- an email regarding Alpine Securities' fee schedule including a listing of Alpine Securities' top fifty accounts by commission amount
- a term sheet for loans to Alpine Securities to fund National Securities Clearing Corporation calls
- an internal audit report dated May 1, 2016, prepared by the Chief Compliance Officer of Alpine Securities
- Alpine Securities' blanket fidelity bond

7

- a draft employment agreement template sent by an attorney from Alpine Securities
- a consulting agreement between a consultant and Alpine Securities
- internal emails from September and October 2016, including a Financial and Operations Principal's report dated April 18, 2016
- an email from FINRA to Alpine Securities regarding due diligence documents
- internal emails from August 2016 containing drafts of Alpine Securities' correspondent fees and customer fee schedules
- an email from FINRA regarding certain proposed changes in Scottsdale Capital's business operations

(Id. at ¶ 34-64). Those factual allegations are pled "with reasonable particularity [to identify] the trade secrets allegedly misappropriated by [Frankel]." AAR Mfg. v. Matrix Composites, Inc., 98 So. 3d 186, 187 (Fla. 5th DCA 2012). Even if Plaintiffs are required to plead how and when the information was misappropriated, they have done so by alleging specific dates on which Frankel allegedly forwarded the materials to his personal email account.

The second amended complaint now provides Frankel with fair notice of the specific materials he allegedly misappropriated from Plaintiffs and the specific dates upon which such alleged misappropriation took place. Therefore, Frankel's Motion is due to be denied as to his first argument underlying all four counts.

B. **Plaintiffs' Alleged Failure to Meet the Plausibility Requirement**

Courts have held that "[a]lthough [the defendant's] use of confidential information is certainly conceivable, the plausibility standard requires 'more than a sheer possibility that a defendant has acted unlawfully.'" Am. Registry I, 2013 WL 6332971, at *2 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In American Registry I, the plaintiff alleged that the defendant was utilizing confidential information and trade secrets in the creation and operation of a competitor solely "upon information and belief". Id. at *1. As those alleged facts were not enough to meet the plausibility standard, the court dismissed the complaint. Id. at *5. Frankel asserts that, like the plaintiff in American Registry I, Plaintiffs here do not plausibly allege that Frankel acted unlawfully. Instead, Frankel argues that Plaintiffs' statements that they "are informed and believe . . . [Frankel] used [the trade secret materials]" are not enough to meet the plausibility standard. (Doc. # 61 at ¶ 51, 62).

Frankel's argument fails to consider that the plaintiff in American Registry I subsequently amended the complaint to replace "the long and broad list of alleged trade secrets found in the Second Amended Complaint with ten specific categories of trade secrets." Am. Registry, LLC v. Hanaw (Am. Registry II), No. 2:13-cv-352-FtM-29UAM, 2014 WL 12606501, at *4 (M.D. Fla. July 16, 2014). The plaintiff also amended the complaint to allege that the defendant "acquired its Proprietary Information through the use of improper means [when], . . . prior to having his sales agency relationship terminated, [the defendant] physically thieved, copied, reproduced, replicated, converted, and misappropriated American Registry's Proprietary Information." Id. The court declined to dismiss the amended complaint in American Registry II.

Here, Plaintiffs' second amended complaint is similar to the amended complaint in American Registry II. Plaintiffs expressly allege that Frankel used misappropriated, confidential information after he left Alpine Securities to "create a broker-dealer that could provide fees and services competitive to Alpine and then us[ed] Plaintiffs' Confidential Information to solicit their top clients." (Doc. # 61 at ¶ 31). While Plaintiffs utilize language similar to "upon information and belief" within Counts III and IV of the second amended complaint, Plaintiffs also provide numerous examples of documents allegedly misappropriated by Frankel that could be used "to solicit capital and establish financial relations

so that he could make a bid for a broker-dealer in Chicago." (Id. at ¶ 30). Those examples are enough to "plausibly suggest that [Frankel] misappropriated [Plaintiffs'] trade secrets." Am. Registry II, 2014 WL 12606501, at *4. Therefore, Frankel's Motion is also due to be denied as to his second argument underlying all four counts.

   C.   **Exemplary Damages under the DTSA**

   The DTSA states, in relevant part, that a court may award exemplary damages "if the trade secret is willfully and maliciously misappropriated." 18 U.S.C. § 1836(b)(3)(C). In two sentences and without citing legal authority, Frankel argues that Plaintiffs are not entitled to exemplary damages. He only asserts that "there is no factual support for the allegation that [he] misappropriated any of the allegedly confidential information . . . [or] for the allegation that the (unidentified) misappropriation was willful and malicious." (Doc. # 68 at 7-8).

   The DTSA does not define "willful" or "malicious." See API Ams. Inc. v. Miller, No. 2:17-cv-02617-HLT, 2019 WL 1506955, at *8 (D. Kan. Apr. 5, 2019)("[N]either the legislature nor the courts have defined what constitutes 'willful' or 'malicious' conduct . . . under . . . the DTSA."). Frankel's Motion does not define or suggest a proper definition for the term willful or malicious conduct.

Relevant case law on the issue is sparse; however, courts have held that plaintiffs do not have to establish specific proof in support of damages — including exemplary damages — resulting from the misappropriation of trade secrets to survive a motion to dismiss. See, e.g., Sterling Computs. Corp. v. Haskell, No. 4:17-CV-04073-KES, 2018 WL 671210, at *4-5 (D.S.D. Feb. 1, 2018)(finding that allegations for damages under the DTSA withstood a motion to dismiss because the plaintiff plausibly alleged that the defendant unlawfully retained trade secrets that could entitle the plaintiff to monetary relief); Atl. Fiberglass USA, LLC v. KPI, Co., 911 F. Supp. 2d 1247, 1259 (N.D. Ga. 2012)(holding that the plaintiff stated a plausible misappropriation of trade secrets claim where the plaintiff alleged that it developed trade secrets, it licensed those trade secrets to the defendant on a limited basis, and the defendant misappropriated those trade secrets willfully and maliciously). A ruling that Plaintiffs are not entitled to exemplary damages would be premature at this stage of the litigation.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Christopher Frankel's Motion to Dismiss All Counts of Plaintiffs' Second Amended Complaint (Doc. # 68) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 3rd day of July, 2019.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE