UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| THE HURRY FAMILY REVOCABLE TRUST; SCOTTSDALE CAPITAL ADVISORS CORPORATION; ALPINE SECURITIES CORPORATION, | CASE NO.: 8:18-cv-02869-VMC-CPT |
| Plaintiffs, | <u>Dispositive Motion</u> |
| vs. | |
| CHRISTOPHER FRANKEL, | |
| Defendant. | |

## PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION

Plaintiffs, The Hurry Family Revocable Trust, Scottsdale Capital Advisors, and Alpine Securities Corporation, move for summary adjudication as to the issue of Defendant Christopher Frankel's liability for their breach of contract claims, and state as follows.

### I. INTRODUCTION

Through Defendant Christopher Frankel's ("Frankel") employment with Plaintiff Alpine Securities Corporation ("Alpine"), he received confidential information regarding Alpine and Plaintiffs The Hurry Family Revocable Trust ("The Trust") and Scottsdale Capital Advisors Corporation ("Scottsdale") (collectively, "Plaintiffs"). Consequently, Plaintiffs required Frankel to execute two nondisclosure agreements: one prior to working at Alpine and a second agreement upon the start of his employment.

Frankel violated numerous provisions within the two nondisclosure agreements by (i) accessing Alpine's documents for his personal use, (ii) emailing Plaintiffs' documents to his personal email address, and (iii) distributing Alpine's confidential information to third parties.

Plaintiffs now seek summary judgment as to Frankel's liability for breaching the two nondisclosure agreements. There is no need to burden a jury with this issue because the undisputed facts evidence Frankel's culpability.

Frankel admitted in deposition that he accessed Alpine's electronic servers on multiple occasions for his personal use. Frankel further admitted to sending over a dozen emails from his Alpine email to his personal email address that collectively contained more than 200 pages of Plaintiffs' confidential documents. Frankel admitted that he used some of these documents for his own personal use and benefit. In addition, Frankel sent Alpine's confidential business information to several third parties.

As a matter of law, Frankel breached his nondisclosure agreements with Plaintiffs, and their Motion for Partial Summary Adjudication should be granted.

## II.     SUMMARY OF UNDISPUTED MATERIAL FACTS

### A.     The Original Non-Disclosure and Confidentiality Agreement

Scottsdale and Alpine are each involved in the broker-dealer business. Scottsdale is a full service broker-dealer focused on serving the OTC (over the counter) securities market. Alpine is a registered broker-dealer that is an industry leader for clearing OTC stock. Scottsdale and Alpine were previously indirectly owned and/or controlled by The Trust.

In 2015, Plaintiffs considered hiring Frankel to help run their broker-dealer businesses. (SMF # 1). They engaged in discussions with him about the businesses. (SMF # 2). Plaintiffs were aware that these discussions would expose Frankel to, and entrust him with, information that is commercially valuable to Plaintiffs and not generally known or readily ascertainable in the broker-dealer securities industry or the public at large. (SMF # 3). In order to protect this information, Plaintiffs required Frankel to enter into a written non-disclosure agreement (the

"NDA") that would limit his use of Plaintiffs' numerous trade secrets and confidential information.  (SMF # 4).

The NDA, which was signed by Frankel on June 22, 2015, acknowledged that Frankel would be exposed to information that is the "sole property" of the Plaintiffs "and highly confidential in nature." (SMF # 5).  Under the NDA, Frankel agreed that "[w]ithin ten business days of receipt of the [Plaintiffs'] written request, [Frankel] will return to the [Plaintiffs] all documents, records and copies thereof containing Confidential Information." (SMF # 6).  "Confidential Information" was defined as "any data or information that is proprietary to the Plaintiffs and not generally known to the public, whether in tangible or intangible form, whenever and however disclosed." (SMF # 7).

### B. Employee Nondisclosure & Computer Use Agreement

Alpine ultimately hired Frankel.  (SMF # 8).  From approximately July 2015 through July 2018, Frankel served as CEO of Alpine, and from July 2018 through October 2018 was a consultant to Alpine.  (SMF # 9).

On July 1, 2015, Alpine, Scottsdale, and Frankel entered into a second nondisclosure agreement entitled the "Employee Nondisclosure & Computer Use Agreement" ("Nondisclosure & Use Agreement"), which superseded the NDA with regard to Alpine and Scottsdale.  (SMF # 10).

The Nondisclosure & Use Agreement defined "Confidential Information" as:

> (a) technical information concerning Company's products and services, including product know-how, formulas, designs, devices, diagrams, software code, test results, processes, inventions, research projects and product development, technical memoranda and correspondence; (b) information concerning Company's business, including cost information, profits, sales information, accounting and unpublished financial information, business plans, markets and marketing methods, customer lists and customer information, purchasing techniques, supplier lists and supplier information and

{00102519;2}

>advertising strategies; (c) information concerning Company's employees, including salaries, strengths, weaknesses and skills; (d) information submitted by Company's customers, suppliers, employees, consultants or co-venture partners with Company for study, evaluation or use; and (e) any other information not generally known to the public which, if misused or disclosed, could reasonably be expected to adversely affect Company's business.

(SMF # 11)

The Nondisclosure and Use Agreement limited Frankel's access to Confidential Information through the following provisions:

>As part of Employee's duties, Employee will have access to Company's Electronic Communication Systems (ECS), which includes without limitation, its computers, network systems, Internet connection, Intranet, electronic mail, voicemail, facsimiles, telephones and other information systems used for the transmission of electronic communications. As a condition of employment, Employee agrees to the following restrictions on the access and use of Company's ESS:
>
>(a) Any access and use of ESS is strictly limited for purposes relating to Employee's duties and responsibilities as an employee, official business within Company and other activities approved in writing (including e-mail approval) by Company.
>…
>(d) Employee will only access those computing resources that he/she has authorization from Company to use and will only use such resource in carrying out his/her job duties.
>…
>(f) Prohibited actions using Company's ECS include, but are not limited to the following: … using the system for illegal or criminal activities, commercial ventures, private profit, religious or political causes, any form of solicitation (except those approved by Company); [and] transmitting confidential patient, business or risk management information to any non-Company email address.

(SMF # 12).

The Nondisclosure & Use Agreement also required that Frankel "shall keep Company's Confidential Information, whether or not prepared or developed by [Frankel], in the strictest confidence. [Frankel] will not disclose such information to anyone outside Company without

Company's prior written consent. Nor will [Frankel] make use of any Confidential Information for [Frankel's] own purposes or the benefit of anyone other than Company." (SMF # 13).

Upon Frankel's termination from Alpine, the Nondisclosure & Use Agreement mandated that he "promptly deliver to Company all originals and copies of all documents, records, software programs, media and other materials containing any Confidential Information. Employee will also return to Company all equipment, files, software programs and other personal property belonging to Company." (SMF # 14).

### C.   Plaintiffs Provide Frankel with Access to Their Information

Beginning in or about June 2015, and continuing through September 2018, The Trust, Alpine, and Scottsdale complied with their respective obligations under the NDA and Nondisclosure & Use Agreement by providing Frankel with access to information which he needed for his employment: Plaintiffs' business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information of the Plaintiffs and their clients. (SMF # 15).

On numerous occasions, without Plaintiffs knowledge or consent, Frankel accessed Plaintiffs' confidential information for his own personal uses. (SMF # 16). Further, on August 15, 2016, August 28, 2016, October 6, 2016, October 13, 2016, January 3, 2017, April 12, 2017, May 2, 2017, July 13, 2017, August 31, 2017, July 31, 2018, August 8, 2018, September 18, 2018, October 7, 2018, Frankel sent emails containing Confidential Information and Plaintiff's documents from his employee email account to his personal email accounts. (SMF # 16—28). These documents included a list of Alpine's top 50 clients based on commission, term sheets for funding agreements Alpine designed for specific clients, and communications and documents detailing Alpine and Scottsdale internal business procedures. (SMF # 16—28).

Frankel also directed an Alpine employee to gather and give him two days' worth of Alpine's trade runs. (SMF # 29). The blotter of Alpine's trade runs is proprietary to Alpine as it is shows all of the trades cleared through Alpine on those dates. (SMF # 30). This information is not publicly available, and Alpine derives economic advantages by the public not knowing this information. (SMF # 30). This material was not provided by Alpine to Frankel. (SMF # 29, 30).

### D. Frankel's Failure to Return Documents

Frankel's employment was terminated in October 2018. (SMF # 31). Upon his termination, Frankel did not notify Plaintiffs that he had their documents in his possession, nor did Defendant delete or return said documents. (SMF # 32).

On November 9, 2018, Plaintiffs sent a letter to Frankel, requesting the return of all documents, records, and/or copies thereof in his possession, custody, or control that contain any Confidential Information. (SMF # 33). Despite having Plaintiffs' documents in his possession, Frankel did not return any documents in response to this request. (SMF # 34).

Plaintiffs commenced this lawsuit on November 21, 2018. On February 11, 2019, Defendant made his first document production, which included Plaintiffs' documents and information that Frankel previously emailed to himself. (SMF # 35).

### E. Frankel Discloses Alpine's Confidential Information to Third Parties

Shortly after Frankel's termination from Alpine and after Plaintiffs requested the return of their information, Frankel sent the trade run document to the owner of Ziv Investment Company ("Ziv"), a broker-dealer that he was attempting to purchase, as evidence of the amount of daily activity that he believed he could achieve. (SMF # 36). Frankel also worked with AtlasBanc Holdings Corporation / Atlas FinTech Holdings Corp. ("Atlas") to acquire Koonce

Securities ("Koonce"). (SMF # 37).  As part of this process, Frankel provided Alpine's trade runs to Atlas, Koonce, and the Depository Trust & Clearing Corporation ("DTCC"). (SMF # 38).

## III.  STANDARD OF REVIEW

"[S]ummary judgment is appropriate where 'there is no genuine issue as to any material fact and… the moving party is entitled to judgment as a matter of law.'" *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.,* 496 F.3d 1231, 1241 (11th Cir. 2007), quoting Fed. R. Civ. P. 56(c). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Scharba v. Braden*, No. 8:07-CV-1294-T-33TBM, 2008 WL 11336591, at *1 (M.D. Fla. Aug. 25, 2008) (citing *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593-94 (11th Cir. 1995)).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (cited by *Edwards v. Exec. Office for U.S. Attorneys*, No. 808-CV-1956-T-33TBM, 2010 WL 1038465, at *2 (M.D. Fla. Mar. 19, 2010)).

## IV.  ANALYSIS

### A.  Frankel Breached the NDA with The Trust

Under Arizona law, which governs the NDA, "to bring an action for a breach of a contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages." *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975).

Here, it is undisputed, that as a matter of law, Frankel breached the NDA that he had with The Trust.

Frankel acknowledged the existence of the NDA with The Trust. (SMF # 4). The NDA required that, "[w]ithin ten (10) business days of receipt to [The Trust's] written request, [Frankel] will return to [The Trust] all documents, records and copies thereof containing Confidential Information." (SMF # 6).

In breach of the foregoing provision, Frankel failed to turn over the First Amendment to the Hurry Family Revocable Trust and the Certificate of Trust for The Hurry Family Revocable Trust within ten business days after The Trust's counsel sent him a written request for the return of its Confidential Information. (SMF # 33, 34). Frankel did not deliver these documents to Plaintiffs until after this lawsuit commenced. (SMF # 35).

Frankel's breach has caused The Trust damages. Under Arizona law, "nominal damages are awarded where actual damages are slight or difficult to calculate" provided that the plaintiffs show "they have suffered (or will suffer) an injury of some kind." *Firetrace USA, LLC v. Jesclard*, No. CV-07-02001-PHX-ROS, 2010 WL 3523067, at *1–3 (D. Ariz. Sept. 3, 2010). Frankel injured The Trust when he unlawfully retained possession of its Confidential Information. *See Avina v. Spurlock,* 28 Cal. App. 3d 1086, 105 Cal. Rptr. 198, 200 (1972) ("Nominal damages are properly awarded ... [w]here there is no loss or injury to be compensated but where the law still recognizes a technical invasion of a plaintiff's rights or a breach of a defendant's duty ...").

As a matter of law, Frankel is liable to The Trust for breach of the NDA and summary adjudication as to the issue of his liability should be granted.

  **B.**  **Frankel Breached the Nondisclosure & Use Agreement with Alpine and Scottsdale**

Under Utah law, which governs the Nondisclosure & Use Agreement, "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking

recovery, (3) breach of contract by the other party, and (4) damages." *Bair v. Axiom Design, L.L.C.,* 2001 UT 20, ¶ 14, 20 P.3d 388.

Here, it is undisputed that as a matter of law Frankel breached the Nondisclosure and Use Agreement with Alpine and Scottsdale.

Frankel, Alpine, and Scottsdale entered into the Nondisclosure & Use Agreement on July 1, 2015, which governed Frankel's access to and use of Alpine and Scottsdale's Confidential Information. (SMF # 10).

Alpine and Scottsdale performed their obligations under the Nondisclosure & Use Agreement by providing Frankel with the Confidential Information he needed in order to perform his job function. (SMF # 15).

Frankel breached multiple provisions of the Nondisclosure & Use Agreement.  In violation of the Computer Access and Use provision, Frankel accessed Alpine and Scottsdale's documents for purposes other than those related to his employment duties and responsibilities. (SMF # 16).  Frankel also transmitted Alpine and Scottsdale documents to his personal, non-company, email addresses. (SMF # 17—28).

Similarly, in violation of the Nondisclosure of Trade Secrets provision, Frankel used Alpine and Scottsdale's information for his "own purposes or the benefit of anyone other than Company" and also disclosed Alpine's information to third parties without Alpine's consent. (SMF # 16).  Specifically, Frankel sent a document showing two-days of Alpine's trade runs to Ziv, Koonce, Atlas, and the DTCC.  (SMF # 36, 37, 38).

Lastly, Frankel breached the Nondisclosure and Use Agreement by failing to return Alpine and Scottsdale's documents upon his termination. Frankel was terminated as an employee

in July 2018 (SMF # 9) and terminated as a consultant in October 2018 (SMF #9), yet he did not return confidential documents to Plaintiffs until Plaintiffs commenced this lawsuit. (SMF # 35).

Under Utah law, "it is well settled that nominal damages are recoverable upon a breach of contract if no actual or substantial damages resulted from the breach or if the amount of damages has not been proven." *Bair v. Axiom Design, L.L.C.,* 20 P.3d 388, 392–93 (Utah 2001). Thus, even if "Plaintiffs are unable to prove actual or substantial damages resulting from the breach, the Plaintiffs may nevertheless seek nominal damages to sustain a breach of contract claim." *Terry v. Hinds*, 47 F. Supp. 3d 1265, 1275 (D. Utah 2014). For example, in *Turtle Mgmt., Inc. v. Haggis Mgmt., Inc.*, 645 P.2d 667, 670 (Utah 1982), the court found that the defendant violated a covenant not to compete and awarded the plaintiff a nominal one dollar even though the plaintiff could not establish actual damages. Scottsdale and Alpine were injured when Frankel unlawfully accessed, used, and distributed their confidential information in violation of the procedures they set forth to prevent such conduct. This injury entitles them to nominal damages, which satisfy the damage element of a breach of contract claim.

As a matter of law, Frankel is liable to Alpine and Scottsdale for breach of the Nondisclosure and Use Agreement and summary adjudication as to the issue of his liability should be granted.

V.   **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that this Court summarily adjudicate their breach of contract claims against Defendant on the issue of liability.

Dated this 23rd day of August 2019.

                              */s/ Jordan Susman*
                              Charles J. Harder, Esq.

Jordan Susman, Esq.
HARDER LLP
132 South Rodeo Drive, Fourth Floor
Beverly Hills, CA 90212-2406
Tel: (424) 203-1600
Fax: (424) 203-1601
E-mail: charder@harderllp.com
E-mail: jsusman@harderllp.com

Kenneth G. Turkel – FBN 867233
Shane B. Vogt – FBN 257620
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel: (813) 443-2199
Fax: (813) 443-2193
E-mail: kturkel@bajocuva.com
E-mail: svogt@bajocuva.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 23, 2019, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

*/s/ Jordan Susman*
Attorney