UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAYMAN SECURITIES CLEARING
AND TRADING LTD; THE HURRY
FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; ALPINE SECURITIES
CORPORATION,

                CASE NO.: 8:18-cv-02869-VMC-CPT

           Plaintiffs,

vs.

CHRISTOPHER FRANKEL,

           Defendant.

_____/

## DECLARATION OF MIKE CRUZ IN SUPPORT OF PLAINTIFFS' MOTION

## FOR SUMMARY ADJUDICATION

Under 28 U.S.C. § 1746, I, Mike Cruz, declare that the following information

is true:

1.     I am over 18 years old.

2.     I am the general counsel for plaintiff Scottsdale Capital Advisors.

3.     I have personal knowledge and am otherwise competent to testify regarding the

information in this Declaration.

4.     In 2015, Scottsdale Capital Advisors, Alpine Securities Corp. and the Hurry

Family Revocable Trust (collectively, "Plaintiffs") considered hiring defendant Christopher

Frankel ("Frankel") to help run their broker-dealer businesses, and engaged in discussions with

Frankel about their businesses.

5.     Plaintiffs were aware that these discussions about their businesses would expose

Frankel to, and entrust him with, information that is commercially valuable to Plaintiffs and not

generally known or readily ascertainable in the broker-dealer securities industry or the public at large.

6.      In order to protect their confidential information, Plaintiffs required Frankel to enter into a written non-disclosure agreement (the "NDA") that would limit his use of Plaintiffs' numerous trade secrets and confidential information.  A true and correct copy of the NDA is attached hereto as Exhibit 1.

7.      On July 1, 2015, Alpine, Scottsdale, and Frankel entered into a second nondisclosure agreement entitled the "Employee Nondisclosure & Computer Use Agreement" ("Nondisclosure & Use Agreement"), a true and correct copy of which is attached hereto as Exhibit 2.

8.      Beginning in or about June 2015, and continuing through September 2018, The Trust, Alpine, and Scottsdale provided Frankel with access to information necessary for his employment, including, Plaintiffs' business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information of the Plaintiffs and their clients.

9.      Exhibit 5 to the deposition of John Hurry, and Exhibit 20 to the deposition of Frankel is a true and correct copy of two days' of Alpine's trade runs from August 27 and 28, 2018.  This document is proprietary to Alpine as it is shows all of the trades cleared through Alpine on those dates.  This information is not publicly available and Alpine derives economic advantages by the public not knowing this information.  Further, Alpine did not authorize or approve the production of this material to Frankel.

10.      Upon Frankel's final termination from Alpine in October 2018, he did not notify Scottsdale or Alpine that he had their documents in his possession or return said documents.

I declare under penalty of perjury that the foregoing statements are true and correct.


Executed on August 23, 2019.


MIKE CRUZ

# Exhibit 1

**CONFIDENTIAL**

 SCOTTSDALE CAPITAL ADVISORS

7170 E. McDonald Road, Suite 6, Scottsdale, Arizona  Tel. 480-603-4900 Fax. 480-603-4901

## NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT

This NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT (the "Agreement") is made as of _June 22nd_, 2015, by _Christopher Lee Frenkel_ (the "Recipient") and SCOTTSDALE CAPITAL ADVISORS CORPORATION, an Arizona corporation, Alpine Securities Corporation an Utah corporation, Cayman Securities Clearing and Trading LTD a Cayman Limited Company and any associated company of the Hurry Family Revocable Trust (the "Discloser").

### RECITALS:

WHEREAS, Recipient and Disclosure have entered into discussions to form a business or employment relationship in connection with the Disclosure's business; and

WHEREAS, in connection with such discussions, the Discloser will communicate to the Recipient and grant the Recipient access to Confidential Information (as defined below) pertaining to Discloser's business, which Confidential Information the Recipient recognizes to be the sole property of the Discloser and highly confidential in nature and the transmission of which is granted in consideration of the Recipient's acceptance to sign this Agreement.

NOW, THEREFORE, THE PARTIES HERETO HEREBY AGREE AS FOLLOWS:

1.      CONFIDENTIAL INFORMATION DEFINITION

(a)     For purposes of this Agreement, "**Confidential Information**" means any data or information that is proprietary to the Discloser and not generally known to the public, whether in tangible or intangible form, whenever and however disclosed, including, but not limited to: (i) any marketing strategies, plans, financial information, or projections, operations, sales estimates, business plans and performance results relating to the past, present or future business activities of such party, its affiliates, subsidiaries and affiliated companies; (ii) plans for products or services, (iii) customer lists and account information; (iv) any scientific or technical information, invention, design, process, procedure, formula, improvement, technology or method; (v) any concepts, reports, data, know-how, works-in-progress, designs, development tools, specifications, computer software, source code, object code, flow charts, databases, inventions, information and trade secrets; and (vi) any other information that should reasonably be recognized as confidential information of the Discloser. Confidential Information need not be novel, unique, patentable, copyrightable or constitute a trade secret in order to be designated Confidential Information. The Recipient acknowledges that the Confidential Information is proprietary to the Discloser, has been developed and obtained through great efforts by the Discloser and that Discloser regards all of its Confidential Information as trade secrets under the Arizona Trade Secrets Act, as amended (A.R.S. §44-401 set seq.).

(b)     Notwithstanding anything in the foregoing to the contrary, Confidential Information shall not include information which: (i) was known by the Recipient prior to receiving the Confidential Information from the Discloser; (b) becomes rightfully known to the Recipient from a third-party source not known (after diligent inquiry) by the Recipient to be under an obligation to Discloser to maintain confidentiality; (c) is or becomes publicly available through no fault of or failure to act by the Recipient in breach of this Agreement; (d) is required to be disclosed in a judicial or administrative proceeding, or is otherwise requested or required to be disclosed by law or regulation, although the requirements of paragraph 4 hereof shall apply prior to any disclosure being made; and (e) is or has been independently developed by employees, consultants or agents of the Recipient without violation of the terms of this Agreement or reference or access to any Confidential Information.

2.      NON-DISCLOSURE AND NON-USE OF CONFIDENTIAL INFORMATION.

(a)     With respect to Confidential Information obtained by Recipient, Recipient (i) will not, and will not permit its officers, directors, employees, agents, independent contractors, advisors and affiliates (the "Representatives") to disclose, publish or disseminate Confidential Information to anyone other than its employees and agents on a need-to-know basis; (ii) advise its Representatives of the proprietary nature of the Confidential Information and of the obligations set forth in this Agreement; and require such Representatives to keep the Confidential Information confidential; (iii) shall keep all Confidential Information strictly confidential by using a reasonable degree of care, but not less than the degree of care used by it in safeguarding its own confidential information; and (iv) not disclose any Confidential Information received



(sca: 06-2015)                          Page 1 of 2

HURRY0206

CONFIDENTIAL

CONFIDENTIALITY AGREEMENT

by it to any third parties (except as otherwise provided for herein).

(b)     The Recipient agrees to use the Confidential Information solely in connection with the current or contemplated business relationship between the parties and not for any purpose other than as authorized by this Agreement without the prior written consent of an authorized representative of the Discloser. No other right or license, whether expressed or implied, in the Confidential Information is granted to the Recipient hereunder. Title to the Confidential Information will remain solely in the Discloser. All use of Confidential Information by the Recipient shall be for the benefit of the Discloser and any modifications and improvements thereof by the Recipient shall be the sole property of the Discloser.

3.     NO WARRANTY. All information is provided "AS IS" and without any warranty, whether express or implied, as to its accuracy or completeness.

4.     DISCLOSURE BY LAW. If Recipient or its Representatives is requested or required by any law, courtor governmental order to disclose any Confidential Information, Recipient agrees to provide Disclosure with prompt written notice of each such request, to the extent practical, so that Discloser may seek an appropriate protective order or waive compliance by the Recipient with the provisions of this Agreement or both. If, absent the entry of a protective order or the receipt of a waiver under this Agreement, the Recipient or its Representatives is legally compelled or required to disclose such Confidential Information, Recipient may disclose such information to the persons and to the extent required without liability under this Agreement.

5.     RETURN OF DOCUMENTS. Within ten (10) business days of receipt of the Discloser's written request, the Recipient will return to the Discloser all documents, records and copies thereof containing Confidential Information. For purposes of this section, the term "documents" includes all information fixed in any tangible medium of expression, in whatever form or format.

6.     EQUITABLE RELIEF. The Recipient hereby acknowledges that unauthorized disclosure or use of Confidential Information could cause irreparable harm and significant injury to the Discloser. Accordingly, the Recipient agrees that the Discloser will have the right to seek and obtain immediate injunctive relief to enforce obligations under this Agreement in addition to any other rights and remedies it may have.

7.     NOTICE OF BREACH. Recipient shall notify the Discloser immediately upon discovery of any unauthorized use or disclosure of Confidential Information by Recipient or its Representatives, or any other breach of this Agreement by Recipient or its Representatives, and will cooperate with efforts by the Discloser to help the Discloser regain possession of Confidential Information and prevent its further unauthorized use.

8.     ENTIRE AGREEMENT AND GOVERNING LAW. This Agreement sets forth the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior discussions, representations and agreements with respect to same. No modification to this Agreement shall be binding unless in writing and signed by both parties. This Agreement shall be governed and construed in accordance with the laws applicable in the State of Arizona.

9.     EXECUTION. This agreement may be executed by facsimile or other electronic signature. In the event that any signature is delivered by facsimile transmission or by email delivery of an electronic format data file (e.g., .pdf, .tiff, etc.), such signature shall create a valid and binding obligation of the party executing with the same force and effect as if such facsimile or electronic data file signature page were an original thereof.

**RECIPIENT**

By: _C. Frahel_

Name: _Christopher Frankel_

Title: _N/a_

ADDRESS: _4301 W Waterous Au_
_Tampa   FL   33629_

PHONE: _(813) 393-0939_

EMAIL: _Chrisfrankel13@gmail.com_

# Exhibit 2

CONFIDENTIAL

## EMPLOYEE NONDISCLOSURE & COMPUTER USE AGREEMENT

This agreement (the "Agreement") is entered into by _Alpine Securities / Scottsdale Capital_ and its subsidiaries and affiliates ("Company") and ___ _Christopher L Frankel_ ("Employee").

In consideration of the commencement of Employee's employment with Company and the compensation that will be paid, Employee and Company agree as follows:

### 1.  Company's Confidential Information

In the performance of Employee's job duties with Company, Employee will be exposed to Company's Confidential Information. "Confidential Information" shall mean all written or oral information of a proprietary, intellectual or similar nature relating to Company's business, projects, operations, activities or affairs whether of a technical or financial nature or otherwise. Confidential Information includes, but is not limited to:

(a)  technical information concerning Company's products and services, including product know-how, formulas, designs, devices, diagrams, software code, test results, processes, inventions, research projects and product development, technical memoranda and correspondence;

(b)  information concerning Company's business, including cost information, profits, sales information, accounting and unpublished financial information, business plans, markets and marketing methods, customer lists and customer information, purchasing techniques, supplier lists and supplier information and advertising strategies;

(c)  information concerning Company's employees, including salaries, strengths, weaknesses and skills;

(d)  information submitted by Company's customers, suppliers, employees, consultants or co-venture partners with Company for study, evaluation or use; and

(e)  any other information not generally known to the public which, if misused or disclosed, could reasonably be expected to adversely affect Company's business.

### 2.  Nondisclosure of Trade Secrets

Company's Confidential Information are 'trade secrets' as defined in Arizona Revised Statutes, Sections 44-401 et seq.  Employee shall keep Company's Confidential Information, whether or not prepared or developed by Employee, in the strictest confidence. Employee will not disclose such information to anyone outside Company without Company's prior written consent. Nor will Employee make use of any Confidential Information for Employee's own purposes or the benefit of anyone other than Company.

However, Employee shall have no obligation to treat as confidential any information which:

(a)  was in Employee's possession or known to Employee, without an obligation to keep it confidential, before such information was disclosed to Employee by Company;

(b)  is or becomes public knowledge through a source other than Employee and through no fault of Employee; or

(c)  is or becomes lawfully available to Employee from a source other than Company.

### 3.  Confidential Information of Others

Employee will not disclose to Company, use in Company's business, or cause Company to use, any trade secret of others.

### 4.  Return of Materials

When Employee's employment with Company ends, for whatever reason, Employee will promptly deliver to Company all originals and copies of all documents, records, software programs, media and

_CF_

Page 1 of 3

(EE NDA:01-2013)

HURRY0303

CONFIDENTIAL

other materials containing any Confidential Information. Employee will also return to Company all equipment, files, software programs and other personal property belonging to Company.

## 5.   Confidentiality Obligation Survives Employment

Employee's obligation to maintain the confidentiality and security of Confidential Information remains even after Employee's employment with Company ends and continues for so long as such Confidential Information remains a trade secret.

## 6.   Computer Access and Use

As part of Employee's duties, Employee will have access to Company's Electronic Communication Systems (ECS), which includes without limitation, its computers, network systems, Internet connection, Intranet, electronic mail, voicemail, facsimiles, telephones and other information systems used for the transmission of electronic communications.  As a condition of employment, Employee agrees to the following restrictions on the access and use of Company's ESS:

(a) Any access and use of ESS is strictly limited for purposes relating to Employee's duties and responsibilities as an employee, official business within Company and other activities approved in writing (including e-mail approval) by Company.

(b) All information or messages that are created, sent, received or stored using Company's ESS remain the property of Company. Company has the absolute right to monitor and log all aspects of its ESS. Employee understands and agrees that electronic communications are neither private nor secure.

(c) Employee is the sole person authorized to use the computer account(s) issued to him/her by Company, and Employee will not share his/her password(s) with anyone.  If Employee suspects that someone else knows his/her password(s), Employee will notify his/her supervisor immediately.

(d) Employee will only access those computing resources that he/she has authorization from Company to use and will only use such resource in carrying out his/her job duties.

(e) Employee is responsible for all computing activities that occur under his/her personal computer account(s).  If Employee suspects or knows that activities by any individual or entity are in violation of this agreement, Employee agrees to immediately report it to his/her supervisor.

(f) Prohibited actions using Company's ECS include, but are not limited to the following: (1) entering data under another person's computer account or permitting another to enter data under his/her account; (2) helping an unauthorized person gain access to a Company computer or information asset; (3) accessing personal Internet email accounts (e.g., Hotmail, Yahoo, AOL, etc.); (4) sending or displaying materials that are sexually explicit, threatening, discriminatory, harassing, illegal or otherwise inappropriate; (5) using the system for illegal or criminal activities, commercial ventures, private profit, religious or political causes, any form of solicitation (except those approved by Company); (6)sending or receiving documents in violation of copyright laws; (7) transmitting confidential patient, business or risk management information to any non-Company email address; (8) attaching unauthorized devices to Company's computer network; and (9) attempting to gain access to an unauthorized area of any computing system or disabling it in any way.

## 7.   General Provisions

(a) Affiliates and Subsidiaries. For purposes of sections 1, 2, 3, 4, and 5 of this Agreement, the term "Company" shall include all affiliates and subsidiaries of Company, all directors, shareholders, and officers of Company, and all directors, shareholders and officers of Company's affiliates and subsidiaries.

(b) Relationships: Nothing contained in this Agreement shall be deemed to make Employee a partner or joint venturer of Company for any purpose.

CF

HURRY0204

CONFIDENTIAL

HURRY0305

(c)  <u>Severability</u>: If a court finds any provision of this Agreement invalid or unenforceable, the remainder of this Agreement shall be interpreted so as best to effect the intent of Company and Employee.

(d)  <u>Integration</u>: This Agreement expresses the complete understanding of the parties with respect to the subject matter and supersedes all prior proposals, agreements, representations and understandings. This Agreement may not be amended except in a writing signed by both Company and Employee.

(e)  <u>Waiver</u>: The failure to exercise any right provided in this Agreement shall not be a waiver of prior or subsequent rights.

(f)  <u>Injunctive Relief</u>: Any misappropriation of any of the Confidential Information in violation of this Agreement may cause Company irreparable harm, the amount of which may be difficult to ascertain, and therefore Employee agrees that Company shall have the right to apply to a court of competent jurisdiction for an order enjoining any such further misappropriation and for such other relief as Company deems appropriate. This right is to be in addition to the remedies otherwise available to Company.

(g)  <u>Indemnity</u>: Employee agrees to indemnify Company against any and all losses, damages, claims or expenses incurred or suffered by Company as a result of Employee's breach of this Agreement.

(h)  <u>Attorney Fees and Expenses</u>: In a dispute arising out of or related to this Agreement, the prevailing party shall have the right to collect from the other party its reasonable attorney fees and costs and necessary expenditures.

(i)  <u>Governing Law</u>. This Agreement shall be governed in accordance with the laws of the State of Arizona.

(j)  <u>Jurisdiction</u>. Employee consents to the exclusive jurisdiction and venue of the federal and state courts located in Maricopa County, Arizona in any action arising out of or relating to this Agreement. Employee waives any other venue to which Employee might be entitled by domicile or otherwise.

(k)  <u>Successors & Assigns</u>. This Agreement shall bind each party's heirs, successors and assigns. Company may assign this Agreement to any party at any time. Employee shall not assign any of his or her rights or obligations under this Agreement without Company's prior written consent. Any assignment or transfer in violation of this section shall be void.

## 8.  Signatures

Employee has carefully read all of this Agreement and agrees that all of the restrictions set forth are fair and reasonably required to protect Company's interests. Employee has received a copy of this Agreement as signed by Employee.

Employee:

_____ (Signature)

Chris Frenkel (Typed or Printed Name)

Date: 07/01/2015

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 23, 2019, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

/s/ Jordan Susman
Attorney