UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


THE HURRY FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

     Plaintiffs,

v.                                                              Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

     Defendant.

_____/

CHRISTOPHER L. FRANKEL,

     Counter-claimant,

v.

CAYMAN SECURITIES CLEARING
AND TRADING LTD; THE HURRY
FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

     Counter-defendants.

_____/

**FRANKEL'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.   **Introduction** .................................................................................................**3**

II.  **Statement of Material Facts** .....................................................................**3**

    Frankel's Decades of Experience in the Securities Business................................3

    The Nature of Micro-cap Securities Clearing ...................................................4

    Frankel's Tenure at Alpine ...............................................................................4

    The Non-Disclosure Agreements .......................................................................5

    Plaintiffs' Perfunctory Demand Letter...............................................................7

    Plaintiffs' Attempt to Fabricate Claims .............................................................8

    Plaintiffs' Lack of Evidence ...........................................................................10

    Plaintiffs' Failing Enterprise..........................................................................12

III. **Memorandum of Law** ...............................................................................**14**

    A.    Frankel is entitled to summary judgment on Hurry Trust's claim for breach of contract...................................................................................... 15

    B.    Frankel is entitled to summary judgment on Alpine and Scottsdale's claim for breach of contract. ...................................................................... 16

    C.    Frankel is entitled to summary judgment on Alpine and Scottsdale's claims for violation of the Defend Trade Secrets Act and the Florida Uniform Trade Secrets Act. ............................................................... 18

        1.    Alpine and Scottsdale cannot meet their burden of proving that Frankel misappropriated any trade secret of Alpine or Scottsdale. ...........18

        2.    Alpine and Scottsdale cannot meet their burden of proving that they are entitled to any remedies under DTSA or FUTSA........................19

IV.  **Conclusion** ..............................................................................................**20**

## I.      INTRODUCTION

The defendant, Christopher L. Frankel ("**Frankel**"), through counsel and under Federal Rule of Civil Procedure 56, moves for summary judgment on the remaining plaintiffs' claims in their second amended complaint (Doc. 61), including Count I, for breach of contract, brought by The Hurry Family Revocable Trust ("**Hurry Trust**"); Count II, for breach of contract, brought by Alpine Securities Corporation ("**Alpine**") and Scottsdale Capital Advisors Corporation ("**Scottsdale**"); Count III, for violation of the Defend Trade Secrets Act, brought by Alpine and Scottsdale; and Count IV, for violation of the Florida Uniform Trade Secrets Act, brought by Alpine and Scottsdale.

## II.     STATEMENT OF MATERIAL FACTS

### *Frankel's Decades of Experience in the Securities Business*

1.      Frankel has worked in the securities business since 1989. Frankel Decl. ¶ 3 (Doc. 16-1).

2.      Frankel has been in a management role in "clearing trades" for securities transactions since 1994. Frankel Decl. ¶ 4 (Doc. 16-1).

3.      From June 5, 2009 through July 24, 2015, Legent/COR employed Frankel as its CEO. Frankel Decl. ¶ 7 (Doc. 16-1).

4.      Legent/COR was one of Alpine's chief competitors, until September 28, 2018, in the business of clearing trades of micro-cap securities. Frankel Decl. ¶ 7 (Doc. 16-1).

5.      As CEO of Legent/COR, Frankel co-authored a comprehensive guidebook on clearing trades of micro-cap securities in 2009. Frankel Decl. ¶ 8 (Doc. 16-1).

6.      Before working for Alpine as its CEO, Frankel knew and worked with most of Alpine's largest clients (based on commissions and fees), or their beneficial owners, while working for prior employers. Frankel Decl. ¶ 15 (Doc. 16-1).

### The Nature of Micro-cap Securities Clearing

7.      "Clearing" trades of micro-cap securities is the process by which micro-cap securities are transferred in compliance with federal securities laws and regulations. Frankel Decl. ¶ 5 (Doc. 16-1).

8.      "Clearing trades" for securities transactions has long been a standard process widely known and commonly utilized in the securities business. Frankel Decl. ¶ 6 (Doc. 16-1).

9.      The process for "clearing trades" is not confidential or a trade secret. Frankel Decl. ¶ 6 (Doc. 16-1).

10.     Alpine is an SEC regulated broker-dealer and publishes its financial statements, fee schedules, commission schedules, and its Non-DTC Eligible Securities Policy on its web site and other public websites including the SEC's website. Frankel Decl. ¶ 23 (Doc. 16-1).

11.     Scottsdale is an SEC regulated broker-dealer and publishes its financial statements, fee schedules, and commission schedules on its web site and other public websites including the SEC's website. Frankel Decl. ¶ 23 (Doc. 16-1).

### Frankel's Tenure at Alpine

12.     On August 4, 2015, Alpine Securities Corporation hired Frankel as its CEO. Frankel Decl. ¶ 9 (Doc. 16-1).

13.     Alpine Securities hired Frankel as CEO based on Frankel's extensive experience in the securities business and particularly his experience with clearing trades of micro-cap securities. Frankel Decl. ¶ 10 (Doc. 16-1); Hurry Dep. 43–45 (Doc. 115).

14.     In late July 2018, Alpine terminated Frankel's employment as CEO. Frankel Decl. ¶ 11 (Doc. 16-1); Hurry Dep. 56 (Doc. 115).

15.     Alpine Securities employed Frankel as its CEO until August 1, 2018. Frankel Decl. ¶ 9 (Doc. 16-1).

16.     From August 2, 2018, through October 31, 2018, Alpine engaged Frankel as a non-exclusive consultant. Frankel Decl. ¶ 11 (Doc. 16-1).

17.     During Frankel's tenure as CEO of Alpine and as a non-exclusive consultant for Alpine, Frankel worked remotely from his home. Frankel Dep. 81, 95 (Doc. 116).

18.     While working remotely for Alpine, Frankel emailed documents to his personal email accounts so that he could access the documents on his home computer and work remotely on projects for Alpine. Frankel Dep. 81, 95 (Doc. 116).

19.     Neither Hurry Trust nor Scottsdale ever employed Frankel or engaged him as a consultant. Frankel Decl. ¶ 17 (Doc. 16-1).

### The Non-Disclosure Agreements

20.     The Non-Disclosure and Confidentiality Agreement dated June 22, 2015, which the second amended complaint defines as the Original NDA, only protects "Confidential Information" of the "Discloser." (Doc. 61 at 19).

21.     Hurry Trust is not included in the definition of "Discloser" under the Original NDA. (Doc. 61 at 19).

22.     The Original NDA does not prohibit competition with the Discloser or solicitation of the Discloser's clients. (Doc. 61 at 19–20).

23.     The Employee Nondisclosure & Computer Use Agreement dated July 1, 2015, which the second amended complaint defines as the Employee NDA, only protects "Confidential Information" of the "Company." Second Am. (Doc. 61 at 22).

24.     Hurry Trust is not included in the definition of the "Company" under the Employee NDA. Second Am. Compl. Ex. 1 (Doc. 61 at 22).

25.     With respect to Alpine and Scottsdale, the Employee NDA replaced the Original NDA. Hurry Dep. 41 (Doc. 115).

26.     The Employee NDA defines Frankel as "Employee" and provides that "Employee shall have no obligation to treat as confidential any information which: (a) was in Employee's possession or known to Employee, without an obligation to keep it confidential, before such information was disclosed to Employee by Company; (b) is or becomes public knowledge through a source other than Employee and through no fault of Employee; or (c) is or becomes lawfully available to Employee from a source other than the Company." Employee NDA § 2 (Doc. 61 at 22).

27.     The Employee NDA provides that Frankel's confidentiality obligation under the Employee NDA "continues for so long as such Confidential Information remains a trade secret." Employee NDA § 5 (Doc. 61 at 23).

28.     The Employee NDA does not prohibit competition with the Company or solicitation of the Company's clients. (Doc. 61 at 22–24).

29.     Frankel never entered into a non-compete, non-solicitation, or any other agreement that would prohibit Frankel from competing with Hurry Trust, Scottsdale, or Alpine, or from soliciting their clients. Frankel Decl. ¶¶ 13, 14 (Doc. 16-1).

### *Plaintiffs' Perfunctory Demand Letter*

30.     After Frankel stopped working as a non-exclusive consultant for Alpine, Frankel received from counsel for the plaintiffs, Jordan Susman, a demand letter (the "**Demand Letter**") on behalf of Cayman Securities Clearing and Trading Ltd. ("**Cayman**"), Hurry Trust, Scottsdale, and Alpine. Frankel Decl. ¶ 18 (Doc. 16-1); Frankel Decl. Ex. 2 (Doc. 16-4).

31.     The Demand Letter demanded that Frankel cease and desist from "any and all further disclosure and/or usage of Confidential Information," but did not identify any instances of Frankel using or disclosing Confidential Information. (Doc. 16-4).

32.     The Demand Letter demanded that Frankel "return to this firm any and all documents, records, and/or copies thereof in your possession, custody, or control that contain any Confidential Information," but did not identify a single document that Frankel should return. (Doc. 16-4).

33.     Frankel received the Demand Letter by email on Friday, November 9, 2018, and responded by email on Monday, November 12, 2018. Frankel. Decl. ¶ 19 (Doc. 16-1); Frankel Decl. Ex. 3 (Doc. 16-5).

34.     Frankel offered to return documents to Susman in compliance with the Demand Letter. (Doc. 16-5). Frankel stated:

> In accordance with your demand, I am willing to search for any Confidential documents that may be in my possession. Please let me know what documents you believe I have that are confidential and I will provide those to you. If you are not able to provide specifics pertaining to the documents you seek, simply let

know and I will provide a copy of all documents and communication from clients
which are in my possession.

(Doc. 16-5).

35.     Frankel waited for instructions on complying with the demand for return of
documents, but Frankel never received a response. Frankel Decl. ¶ 20 (Doc. 16-1).

36.     Instead, on November 21, 2018, Susman filed on behalf of Cayman, Hurry Trust,
Scottsdale, and Alpine the original complaint in this action, which alleged that Frankel
misappropriated the plaintiffs' confidential information, without identifying a single instance of
misappropriation and without identifying a single piece of confidential information.  (Doc. 1).

### *Plaintiffs' Attempt to Fabricate Claims*

37.     On December 17, 2018, Frankel filed an answer (Doc. 14) denying the original
complaint's conclusory allegations of misappropriation; and Frankel moved to require the
plaintiffs to post a bond under FDUTPA. (Doc. 16).

38.     On January 7, 2019, John Hurry signed a declaration in which he stated that soon
after Frankel left Alpine in October 2018, Alpine learned that Frankel "was using Alpine's and
the other Hurry Parties' confidential information and trade secrets for the benefit of his new
business ventures." Hurry Decl. ¶ 7 (Doc. 24-1). The plaintiffs filed this declaration with their
opposition to Frankel's motion for bond. (Doc. 24). Neither the declaration nor the opposition
brief identified a single instance of misappropriation or a single piece of confidential
information. (Docs. 24, 24-1).

39.     On February 1, 2019, Frankel served initial disclosures (Doc. 35-3) with which he
produced the documents that he originally offered to return to the plaintiffs in response to the
Demand Letter. (Doc. 16-5). Frankel used an independent, third-party vendor to collect all of the

files stored in his personal email accounts, then retrieved all emails and documents received from Alpine and Scottsdale email addresses, as well as John Hurry and Justine Hurry's personal email addresses. (Doc. 35-3 at 3). Frankel produced with his initial disclosures all of these emails and documents as portable document files bates numbered FRANKEL_000001 to FRANKEL_002246. (Doc. 35-3 at 3).

40.     After Frankel served his initial disclosures, the plaintiffs realized that Alpine and Scottsdale sued under the wrong agreement. (Doc. 34).

41.     On February 26, 2019, the plaintiffs filed their first amended complaint, which did not identify a single instance of misappropriation or a single piece of confidential information (Doc. 37).

42.     On April 29, 2019, the Court granted Frankel's motion to dismiss (Doc. 38) the first amended complaint for failing to identify the confidential information misappropriated. (Doc. 47). The court authorized plaintiffs to file a second amended complaint. (Doc. 47).

43.     Cayman did not join in the second amended complaint.

44.     On May 10, 2019, the remaining plaintiffs, Hurry Trust, Alpine, and Scottsdale filed their second amended complaint. (Doc. 61).

45.     The second amended complaint identified documents that Frankel allegedly misappropriated (Doc. 61). But every single document identified in the second amended complaint came from the documents bates numbered FRANKEL_000001 to FRANKEL_002246 that Frankel produced with his initial disclosures (Doc. 35-3).

46.     On June 7, 2019, Alpine and Scottsdale served supplemental interrogatory answers (Doc. 118-8) that identified documents allegedly misappropriated by Frankel, which the plaintiffs produced and bates numbered as HURRY 0006 to HURRY 0260. Every single

document identified in the interrogatory answers and produced by the plaintiffs came from the documents bates numbered FRANKEL_000001 to FRANKEL_002246 that Frankel produced with his initial disclosures (Doc. 61).

47.     The plaintiffs designated the documents bates numbered HURRY 0006 to HURRY 0260 as confidential under a discovery confidentiality agreement entered in this case. Therefore, Frankel cannot attach those documents to this motion without moving to file them all under seal.

48.     Thus, more than six months after the plaintiffs sued Frankel, the only instances of misappropriation that the plaintiffs alleged were based on emails that Frankel produced with his initial disclosures when he returned all of the communications and documents that he had ever received from the plaintiffs. (Doc. 61).

49.     Plaintiffs outrageously contend that Frankel was plotting against the plaintiffs (rather than working on their business) by forwarding emails from his work email account to his personal account during the entire 3 years and 3 months that he worked for Alpine.

### *Plaintiffs' Lack of Evidence*

50.     There is no evidence that Frankel used or disclosed the documents bates numbered HURRY 00006 to HURRY 02620 and identified in the Second Amended Complaint as "Confidential Information."

51.     In their initial interrogatory responses (served February 13, 2019), the plaintiffs could only offer their speculation that Frankel must have misappropriated their allegedly confidential information in attempting to purchase a broker-dealer because the plaintiffs believed that Frankel "was not a producer" and "had no clients of his own" and did not have "the financial wherewithal to consummate such an endeavor." (Doc. 35-1 at 4–5).

52.     The plaintiffs' supplemental interrogatory responses added no evidence, only the "surmise" of Jim Kelly that Frankel must somehow have been using the plaintiffs' confidential information to attempt to purchase a broker-dealer in Chicago. (Doc. 118-8 at 7).

53.     Frankel's attempt to purchase a broker-dealer in Chicago arose when a client— with whom Frankel had worked when he was CEO of Legent/COR—contacted Frankel about the opportunity to purchase the broker-dealer. Frankel Decl. ¶ 18 (Doc. 16-1); Frankel Dep. 33–34 (Doc. 116). Frankel did not learn of the opportunity through any confidential information of the plaintiffs. Frankel Decl. ¶ 18 (Doc. 16-1).

54.     No evidence supports the plaintiffs' damages allegations.  The plaintiffs admitted in their initial disclosures that their "damages and losses arising from Defendant's misconduct continues to be discovered, and are unknown at this time." (Doc. 35-2). The plaintiffs' initial response (served February 13, 2019) to Frankel's request for production of "All documents which support the damage allegations in your complaint" indicated that the plaintiffs would provide "documents sufficient to show their damages." (Doc. 35-4). Then, the plaintiffs served a supplemental response (on June 7, 2019) in which they stated that "they have no responsive documents in their possession, custody, or control." (Doc. 118-9). Then, the plaintiffs served a further supplemental response (on August 5, 2019) in which they stated that would provide "documents sufficient to show their damages." (Doc. 118-10).

55.     The documents that the plaintiffs produced that supposedly support their damages allegations were marked as Exhibits 29 to 34 of the deposition of John Hurry as corporate representative for Hurry Trust, Alpine, and Scottsdale. Hurry Dep. 156 (Doc. 115). But as corporate representative of Alpine and Scottsdale, Hurry could only testify that the documents show drops in revenue during certain time periods that he thinks Frankel somehow caused. Hurry

Dep. 156–177 (Doc. 115). Hurry admitted that the plaintiffs have no damages analysis. Hurry Dep. 157 (Doc. 115).

56.     No evidence supports the plaintiffs' allegations of irreparable harm. The plaintiffs' initial response (served February 13, 2019) to Frankel's request for production of "All documents which support your allegations of irreparable harm in your complaint" indicated that the plaintiffs "have no responsive documents in their possession, custody, or control." (Doc. 35-4).

57.     As Hurry acknowledged in his deposition, the plaintiffs have done no analysis to support any claim for damages. Hurry Dep. 157 (Doc. 115).

58.     There is no evidence of any wrongdoing by Frankel causing Hurry Trust, Alpine, or Scottsdale to suffer any harm or damages.

### *Plaintiffs' Failing Enterprise*

59.     On July 20, 2018, FINRA barred Hurry from participating in the securities markets regulated by FINRA and imposed a $1.5 million fine against Scottsdale (Doc. 15-2).

60.     The National Adjudicatory Council concluded that "Hurry knowingly facilitated the evasion of federal securities laws enacted to protect investors and, in doing so, made millions of dollars"; that "Hurry's misconduct was purposeful, egregious, and antithetical to the underpinnings of securities regulation as a whole"; and that "Hurry presents a threat to investors and the integrity of the securities markets." (Doc. 15-2 at 101–02).

61.     The SEC is seeking to impose a $22 million fine against Alpine. Hurry Dep. 192 (Doc. 115).

62.     On July 25, 2019, FINRA filed a Disciplinary Complaint against Alpine alleging that Alpine had:

    a.  had "implemented a series of exorbitant and arbitrary fees" including a "$5,000 *monthly* account fee – which represented an astounding increase of approximately 60,000% from the firm's prior $100 *annual* account fee";

    b.  had used the increased account fee as "a pretext to convert its [Alpine's] retail customers' securities";

    c.  had "convert[ed] millions of shares of securities [worth nearly $910,000] from its customers for its own benefit"; and

    d.  had been "looting" Alpine by capital withdrawals not authorized by FINRA "under the guise of sham expense payments to affiliates ultimately owned and controlled by John Joseph Hurry."

FINRA Disciplinary Complaint at 1– 2,  20–23 (Hurry Dep. Ex. 36 (Doc. 118-5)).

63.    The FINRA Disciplinary Complaint alleged a "sham" loan to remove capital from Alpine, without required authorization from FINRA, under which Alpine "agreed to pay $4.8 million dollars annually for the right to borrow up to $5 million (at an annual interest rate of 120%)."  FINRA Disciplinary Complaint at 21 (Doc. 118-5).

64.    The FINRA Disciplinary Complaint alleged "purported common area maintenance charges" of $610,372.98 paid by Alpine on April 3, 2019, to remove capital from Alpine without required authorization from FINRA.  FINRA Disciplinary Complaint at 22 (Doc. 118-5).

65.    Hurry agreed that Alpine implemented the fee increase to $5,000 per month. Hurry Dep. 182 (Doc. 115).

66.     Hurry acknowledged ownership and control over Alpine and the affiliates to whom Alpine made the "sham" loan and purported maintenance payment described in the FINRA Disciplinary Complaint. Hurry Dep. 196, 203 (Doc. 115).

67.     Hurry agreed that FINRA accurately characterized the terms of the loan and maintenance payment. Hurry Dep. 197–99, 202–04 (Doc. 115).

68.     On August 15, 2019, FINRA suspended Alpine and Scottsdale's membership in FINRA. *Dep't Enforcement v. Alpine & Scottsdale*, Expedited Proceeding Nos. FPI190001, FPI190002. The suspension is under an interim stay pending briefing on whether there should be stay during Alpine and Scottsdale's appeal of the suspension. *See* In the Matter of Alpine, Scottsdale, SEC Admin. Proc. File No. 3-19360, *available at*   https://www.sec.gov/litigation/opinions/2019/34-86719.pdf.

## III.    MEMORANDUM OF LAW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods,*

*Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Ultimately, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. *Gray v. Novell, Inc.*, No. 8:06-cv-1950-T-33TGW, 2009 WL 425958, at *8 (M.D. Fla. Feb. 20, 2009) (quoting *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir.1981)).

### A. Frankel is entitled to summary judgment on Hurry Trust's claim for breach of contract.

Hurry Trust's claim in Count I is for breach of contract under Arizona law. Second Am. Compl. ¶¶ 32–38 (Doc. 61). "It is well established that, in an action based on breach of contract, the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages." *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004). Hurry Trust alleges that Frankel breached the Original NDA by refusing to return "Confidential Trust Information." Second Am. Compl. ¶ 36 (Doc. 61). Hurry Trust does not allege that Frankel used or disclosed the "Confidential Trust Information," Second Am. Compl. ¶¶ 32–38 (Doc. 61), and there is no evidence that he did so.

Hurry Trust is not a "Discloser" under the Original NDA. (Doc. 61 at 19). Thus, the "Confidential Trust Information" identified in the second amended complaint is not subject to

the Original NDA, and Frankel cannot have breached the Original NDA by allegedly refusing to return the "Confidential Trust Information." On these grounds alone, Frankel is entitled to summary judgment on Count I.

Furthermore, even assuming for argument's sake that the "Confidential Trust Information" is subject to the Original NDA, the undisputed evidence shows that Frankel offered to return the documents, and Hurry Trust ignored the offer and instead sued Frankel. Frankel Decl. ¶ 20 (Doc. 16-1); Frankel Decl. Ex. 3 (Doc. 16-5); Compl. (Doc. 1). Frankel returned all of the documents in his possession that he had received from the plaintiffs and John and Josephine Hurry (including the "Confidential Trust Information") in the document production with his initial disclosures in the lawsuit (Doc. 35-3).

Furthermore, there is no evidence of any damages resulting to Hurry Trust from Frankel's alleged refusal to return documents. Hurry Trust therefore cannot prove this required element of its claim for breach of contract under Arizona law. *Chartone*, 83 P.3d at 1111.

Frankel is thus entitled to summary judgment on the Hurry Trust's breach of contract claim in Count I because the Hurry Trust is not a Discloser under the Original NDA, the Hurry Trust ignored Frankel's offer to return its documents, and the Hurry Trust cannot prove any resulting damages.

**B.      Frankel is entitled to summary judgment on Alpine and Scottsdale's claim for breach of contract.**

Alpine and Scottsdale's claim in Count II is for breach of contract under Arizona law. Alpine and Scottsdale have "the burden of proving the existence of a contract, breach of the contract, and resulting damages." *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004). Alpine and Scottsdale allege that Frankel breached the Employee NDA by using for his

own benefit, disclosing to third parties, and refusing to return the "Confidential Information" identified in the second amended complaint. Second Am. Compl. ¶¶ 41–43 (Doc. 61).

There is no evidence that Frankel used for his own benefit or disclosed to third parties the documents bates numbered HURRY 00006 to HURRY 02620 and identified in the Second Amended Complaint as "Confidential Information." The plaintiffs have only offered speculation and "surmise" that Frankel misappropriated their information. *See* Statement of Material Facts, *supra*, ¶¶ 50–52.

Frankel is not prohibited from competing with Alpine and Scottsdale or soliciting their clients. *Id.* ¶¶ 28–29. Frankel knew the clients from his decades of experience working in the securities business, during which he co-authored a comprehensive guidebook on clearing trades. *Id.* ¶¶ 1–6. The Employee NDA does not impose a confidentiality obligation on information already known to Frankel. Employee NDA § 2 (Doc. 61 at 22).

Furthermore, the allegation that Frankel refused to return the "Confidential Information" identified in the second amended complaint is conclusively refuted by the undisputed evidence that Frankel agreed to return and did return all of the documents and communications in his possession that he received from Scottsdale and Alpine. Frankel Decl. ¶ 20 (Doc. 16-1); Frankel Decl. Ex. 3 (Doc. 16-5); Frankel's Initial Disclosures (Doc. 35-3).

Furthermore, there is no evidence of any damages resulting to Alpine or Scottsdale from Frankel's alleged breach of the Employee NDA. Therefore, Alpine and Scottsdale cannot prove this required element of their claim for breach of contract under Arizona law. *Chartone*, 83 P.3d at 1111.

**C.      Frankel is entitled to summary judgment on Alpine and Scottsdale's claims for violation of the Defend Trade Secrets Act and the Florida Uniform Trade Secrets Act.**

Alpine and Scottsdale's claims in Count III, for violation of the Defend Trade Secrets Act (DTSA), and Count IV, for violation of the Florida Uniform Trade Secrets Act (FUTSA), make the same allegations that Frankel misappropriated Alpine and Scottsdale's trade secrets. Second Am. Compl. ¶¶ 46–55, 56–64 (Doc. 61). Alpine and Scottsdale allege that Frankel misappropriated their trade secrets "to solicit capital and establish financial relations so that he could make a bid for a broker-dealer in Chicago." Second Am. Compl. ¶¶ 51, 62 (Doc. 61).

**1.      Alpine and Scottsdale cannot meet their burden of proving that Frankel misappropriated any trade secret of Alpine or Scottsdale.**

Under both DTSA and FUTSA, Alpine and Scottsdale must prove that the Frankel misappropriated their "Confidential Information" and that their "Confidential Information" is a trade secret. *Advantor Sys. Corp. v. DRS Tech. Services, Inc.*, 678 Fed. Appx. 839, 853 (11th Cir. 2017) (explaining elements of FUTSA claim are that plaintiff (1) "possessed a 'trade secret' and (2) the secret was misappropriated"); *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1293 (M.D. Fla. 2018) (explaining elements of DTSA claim are that plaintiff "(i) 'possessed information of independent economic value' that (a) 'was lawfully owned by the plaintiff' and (b) for which the plaintiff 'took reasonable measures to keep secret,' and (ii) the defendant 'used and/or disclosed that information,' despite (iii) 'a duty to maintain its secrecy'").

Frankel is entitled to summary judgment because there is no evidence of Frankel misappropriating trade secrets to make a bid for a broker-dealer in Chicago. The opportunity came to Frankel from a client with whom Frankel worked while he was CEO of COR/Legent, and it was the client who solicited Frankel. Frankel Decl. ¶ 18 (Doc. 16-1); Frankel Dep. 33–34 (Doc. 116).   The plaintiffs can only offer their speculation and surmise that Frankel must have

misappropriated their information. *See* Statement of Material Facts, *supra*, ¶¶ 50–52. There is no evidence that Frankel used or disclosed the documents bates numbered HURRY 00006 to HURRY 02620 and identified in the Second Amended Complaint as "Confidential Information."

Furthermore, there is no evidence that any of Alpine or Scottsdale's information rises to the level of a trade secret. There are no trade secrets in the business of clearing micro-cap securities. *See* Statement of Material Facts, *supra*, ¶¶ 7–11. "Clearing" securities transactions has long been a standard process widely known and commonly utilized in the securities business, and subject to federal securities laws and regulations. *Id.* Frankel worked in the securities business for decades and co-authored a comprehensive guidebook on clearing. *Id.* ¶¶ 1–6. Before, he began working for Alpine, Frankel knew the clients and he knew the industry. *Id.* There is no evidence that any of the documents bates numbered HURRY 00006 to HURRY 02620 and identified in the Second Amended Complaint as "Confidential Information" rise to the level of a "trade secret."

**2.     Alpine and Scottsdale cannot meet their burden of proving that they are entitled to any remedies under DTSA or FUTSA.**

The remedies available to a plaintiff under DTSA and FUTSA are an award of damages or an injunction preventing misappropriation. 18 U.S.C. 1836(b)(3)(A); §§ 688.003, .004, Fla. Stat. In this case, Alpine and Scottsdale have no evidence of damages and no damages analysis. *See* Statement of Material Facts, *supra*, ¶¶ 54–55. Therefore, the Alpine and Scottsdale are not entitled to an award of damages under DTSA or FUTSA. Furthermore, Alpine and Scottsdale have no evidence to support their allegation of irreparable harm. *See* Statement of Material Facts, *supra*, ¶ 56. *See also DTC Energy Group, Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (noting that "[n]either the Defend Trade Secrets Act nor the Colorado Uniform Trade Secrets Act allow a presumption of irreparable harm"); *Everest Nat'l Ins. Co. v. Rockhill Ins.*

*Co.*, 8:16-CV-2803-T-35JSS, 2016 WL 8914546, at *5 (M.D. Fla. Nov. 10, 2016) (noting that "FUTSA does not expressly adopt a statutory presumption of irreparable harm").

## IV.    CONCLUSION

The remaining plaintiffs have adduced no evidence to support the allegations of their second amended complaint or their entitlement to damages or an injunction. Summary judgment should therefore be entered against the remaining plaintiffs on all four counts of their second amended complaint.

WHEREFORE, the defendant, Christopher L. Frankel, requests that the Court grant this Motion and (a) enter summary judgment in his favor and against the remaining plaintiffs on all four counts their second amended complaint; (b) award Frankel the costs and attorney's fees incurred in this action; and (c) grant any further relief deemed proper to protect Frankel's interests and rights.

Dated: August 23, 2019                     By:    */s/ Harold Holder*
                                                 David C. Banker (Fla. Bar No. 352977)
                                                 Harold D. Holder (Fla. Bar No. 118733)
                                                 BUSH ROSS, PA
                                                 1801 N. Highland Avenue
                                                 Tampa, Florida 33602
                                                 Phone: 813-224-9255
                                                 Fax:    813-223-9620
                                                 Primary: dbanker@bushross.com;
                                                 hholder@bushross.com
                                                 Secondary: aflowers@bushross.com
                                                 *Attorneys for Defendant*

20

## <u>CERTIFICATE OF SERVICE</u>

   I HEREBY CERTIFY that on August 23, 2019, all counsel of record who consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/EFC participants:

   Shane B. Vogt, Esquire
   Kenneth G. Turkel, Esquire
   BAJO | CUVA | COHEN | TURKEL
   100 North Tampa Street, Suite 1900
   Tampa, FL  33602
   kturkel@bajocuva.com
   svogt@bajocuva.com

   Charles J. Harder, Esquire
   Jordan Susman, Esquire
   HARDER LLP
   132 South Rodeo Drive, Suite 301
   Beverly Hills, CA 90212-2406
   charder@harderllp.com
   jsusman@harderllp.com
   *Attorneys for Plaintiffs*

        By: *Harold Holder*_____