# EMPLOYEE NONDISCLOSURE & COMPUTER USE AGREEMENT

This agreement (the "Agreement") is entered into by _Alpine Securities / Scottsdale Capital_ and its subsidiaries and affiliates ("Company") and _Christopher L. Frankel_ ("Employee").

In consideration of the commencement of Employee's employment with Company and the compensation that will be paid, Employee and Company agree as follows:

## 1. Company's Confidential Information

In the performance of Employee's job duties with Company, Employee will be exposed to Company's Confidential Information. "Confidential Information" shall mean all written or oral information of a proprietary, intellectual or similar nature relating to Company's business, projects, operations, activities or affairs whether of a technical or financial nature or otherwise. Confidential Information includes, but is not limited to:

(a) technical information concerning Company's products and services, including product know-how, formulas, designs, devices, diagrams, software code, test results, processes, inventions, research projects and product development, technical memoranda and correspondence;

(b) information concerning Company's business, including cost information, profits, sales information, accounting and unpublished financial information, business plans, markets and marketing methods, customer lists and customer information, purchasing techniques, supplier lists and supplier information and advertising strategies;

(c) information concerning Company's employees, including salaries, strengths, weaknesses and skills;

(d) information submitted by Company's customers, suppliers, employees, consultants or co-venture partners with Company for study, evaluation or use; and

(e) any other information not generally known to the public which, if misused or disclosed, could reasonably be expected to adversely affect Company's business.

## 2. Nondisclosure of Trade Secrets

Company's Confidential Information are 'trade secrets' as defined in Arizona Revised Statutes, Sections 44-401 et seq. Employee shall keep Company's Confidential Information, whether or not prepared or developed by Employee, in the strictest confidence. Employee will not disclose such information to anyone outside Company without Company's prior written consent. Nor will Employee make use of any Confidential Information for Employee's own purposes or the benefit of anyone other than Company.

However, Employee shall have no obligation to treat as confidential any information which:

(a) was in Employee's possession or known to Employee, without an obligation to keep it confidential, before such information was disclosed to Employee by Company;

(b) is or becomes public knowledge through a source other than Employee and through no fault of Employee; or

(c) is or becomes lawfully available to Employee from a source other than Company.

## 3. Confidential Information of Others

Employee will not disclose to Company, use in Company's business, or cause Company to use, any trade secret of others.

## 4. Return of Materials

When Employee's employment with Company ends, for whatever reason, Employee will promptly deliver to Company all originals and copies of all documents, records, software programs, media and

EXHIBIT 4
Deponent: HURRY
Depo Date: 8/7/19
Reporter: Niki Noojin
Anthem Reporting, LLC

CF
4

other materials containing any Confidential Information. Employee will also return to Company all equipment, files, software programs and other personal property belonging to Company.

5. **Confidentiality Obligation Survives Employment**

Employee's obligation to maintain the confidentiality and security of Confidential Information remains even after Employee's employment with Company ends and continues for so long as such Confidential Information remains a trade secret.

6. **Computer Access and Use**

As part of Employee's duties, Employee will have access to Company's Electronic Communication Systems (ECS), which includes without limitation, its computers, network systems, Internet connection, Intranet, electronic mail, voicemail, facsimiles, telephones and other information systems used for the transmission of electronic communications. As a condition of employment, Employee agrees to the following restrictions on the access and use of Company's ESS:

(a) Any access and use of ESS is strictly limited for purposes relating to Employee's duties and responsibilities as an employee, official business within Company and other activities approved in writing (including e-mail approval) by Company.

(b) All information or messages that are created, sent, received or stored using Company's ESS remain the property of Company. Company has the absolute right to monitor and log all aspects of its ESS. Employee understands and agrees that electronic communications are neither private nor secure.

(c) Employee is the sole person authorized to use the computer account(s) issued to him/her by Company, and Employee will not share his/her password(s) with anyone. If Employee suspects that someone else knows his/her password(s), Employee will notify his/her supervisor immediately.

(d) Employee will only access those computing resources that he/she has authorization from Company to use and will only use such resource in carrying out his/her job duties.

(e) Employee is responsible for all computing activities that occur under his/her personal computer account(s). If Employee suspects or knows that activities by any individual or entity are in violation of this agreement, Employee agrees to immediately report it to his/her supervisor.

(f) Prohibited actions using Company's ECS include, but are not limited to the following: (1) entering data under another person's computer account or permitting another to enter data under his/her account; (2) helping an unauthorized person gain access to a Company computer or information asset; (3) accessing personal Internet email accounts (e.g., Hotmail, Yahoo, AOL, etc.); (4) sending or displaying materials that are sexually explicit, threatening, discriminatory, harassing, illegal or otherwise inappropriate; (5) using the system for illegal or criminal activities, commercial ventures, private profit, religious or political causes, any form of solicitation (except those approved by Company); (6) sending or receiving documents in violation of copyright laws; (7) transmitting confidential patient, business or risk management information to any non-Company email address; (8) attaching unauthorized devices to Company's computer network; and (9) attempting to gain access to an unauthorized area of any computing system or disabling it in any way.

7. **General Provisions**

(a) Affiliates and Subsidiaries. For purposes of sections 1, 2, 3, 4, and 5 of this Agreement, the term "Company" shall include all affiliates and subsidiaries of Company, all directors, shareholders, and officers of Company, and all directors, shareholders and officers of Company's affiliates and subsidiaries.

(b) Relationships: Nothing contained in this Agreement shall be deemed to make Employee a partner or joint venturer of Company for any purpose.

*CF*

(c) Severability: If a court finds any provision of this Agreement invalid or unenforceable, the remainder of this Agreement shall be interpreted so as best to effect the intent of Company and Employee.

(d) Integration: This Agreement expresses the complete understanding of the parties with respect to the subject matter and supersedes all prior proposals, agreements, representations and understandings. This Agreement may not be amended except in a writing signed by both Company and Employee.

(e) Waiver: The failure to exercise any right provided in this Agreement shall not be a waiver of prior or subsequent rights.

(f) Injunctive Relief: Any misappropriation of any of the Confidential Information in violation of this Agreement may cause Company irreparable harm, the amount of which may be difficult to ascertain, and therefore Employee agrees that Company shall have the right to apply to a court of competent jurisdiction for an order enjoining any such further misappropriation and for such other relief as Company deems appropriate. This right is to be in addition to the remedies otherwise available to Company.

(g) Indemnity: Employee agrees to indemnify Company against any and all losses, damages, claims or expenses incurred or suffered by Company as a result of Employee's breach of this Agreement.

(h) Attorney Fees and Expenses: In a dispute arising out of or related to this Agreement, the prevailing party shall have the right to collect from the other party its reasonable attorney fees and costs and necessary expenditures.

(i) Governing Law. This Agreement shall be governed in accordance with the laws of the State of Arizona.

(j) Jurisdiction. Employee consents to the exclusive jurisdiction and venue of the federal and state courts located in Maricopa County, Arizona in any action arising out of or relating to this Agreement. Employee waives any other venue to which Employee might be entitled by domicile or otherwise.

(k) Successors & Assigns. This Agreement shall bind each party's heirs, successors and assigns. Company may assign this Agreement to any party at any time. Employee shall not assign any of his or her rights or obligations under this Agreement without Company's prior written consent. Any assignment or transfer in violation of this section shall be void.

8. Signatures

Employee has carefully read all of this Agreement and agrees that all of the restrictions set forth are fair and reasonably required to protect Company's interests. Employee has received a copy of this Agreement as signed by Employee.

Employee:

_____ (Signature)

Chris Frenkel (Typed or Printed Name)

Date: 07/91/2015