UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE HURRY FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; ALPINE SECURITIES
CORPORATION,

    Plaintiffs,

vs.

CHRISTOPHER FRANKEL,

    Defendant.
_____

CASE NO.: 8:18-cv-02869-VMC-CPT

**PLAINTIFFS' OPPOSITION TO FRANKEL'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, The Hurry Family Revocable Trust (the "Trust"), Scottsdale Capital Advisors ("Scottsdale"), and Alpine Securities Corporation ("Alpine") (collectively, "Plaintiffs"), submit this Opposition to Defendant Christopher Frankel's ("Frankel") motion for summary judgment (the "Motion"), and state as follows.

**I.    INTRODUCTION**

Frankel's Motion is remarkable for its level of gratuitous comments about Plaintiffs and irrelevant facts. It is most remarkable, however, for the number of admissions by Frankel that it concedes or omits.

The Motion concedes, as it must, that Frankel secretly sent over a dozen of Plaintiffs' confidential documents to his personal email account and retained those documents until long after Plaintiffs commenced this litigation. (Frankel Material Fact ("FMF") # 18, 39; Additional Material Fact ("AMF") # 1, 2).

The Motion omits Frankel's admission that he used at least some of these confidential documents for his own personal purposes. (AMF # 3).

The Motion omits Frankel's admission that, after his termination from Alpine, he wrongfully directed an Alpine employee to create and give him a confidential blotter showing two days' of Alpine's trade runs. (AMF # 4).

The Motion omits Frankel's admission that he then sent Alpine's confidential blotter of trade runs to a broker dealer in Chicago. (AMF # 5).

The foregoing admissions by Frankel by themselves are fatal to his Motion. Other undisputed facts further defeat his Motion.

First, Frankel's admission that he failed to return confidential documents belonging to the Trust within ten business days of a written request by the Trust is a prima facie breach of the Original NDA, which requires the return of such material in said timeframe. (AMF # 6, 7). Frankel's admission by itself defeats his attempt to dismiss the Trust's claim for breach of contract.

Second, Frankel's admission that he sent to his personal email address over a dozen confidential documents belonging to Alpine and Scottsdale is a prima facie breach of the Employee NDA, which prohibits the transmission of confidential information to any non-company email address. (AMF # 1, 8). In addition, Frankel's admission that he retained Alpine's and Scottsdale's confidential documents after his employment ended is an additional breach of the Employee NDA, which prohibits the retention of such documents. (AMF # 2, 9). Finally, Frankel's admission that he sent the confidential trade blotter to a third party constitutes an additional breach of the Employee NDA. (AMF # 5, 10). All of the foregoing admissions defeat Frankel's attempt to dismiss Alpine's and Scottsdale's claim for breach of contract.

Third, Frankel's admission that he sent Alpine's confidential trade blotter of trade runs to a broker dealer in Chicago (AMF # 5) defeats his attempt to dismiss Plaintiffs' DTSA and FUTSA claims.

Frankel's Motion is a misguided attempt to disparage Plaintiffs with irrelevant facts. As a legal document, the Motion is baseless and should be denied by the Court.

## II.   RELEVANT FACTS

### The Original Non-Disclosure and Confidentiality Agreement

On or about June 22, 2015, Frankel entered into the Original NDA. (AMF # 11). The first sentence of the Original NDA provides: "This NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT (the "Agreement") is made as of June 22nd, 2015 by Christopher Lee Frankel (the "Recipient") and SCOTTSDALE CAPITAL ADVISORS CORPORATION, an Arizona corporation, Alpine Securities Corporation an Utah corporation, Cayman Securities Clearing and Trading LTD a Cayman Limited Company and any associated company of the Hurry Family Revocable Trust (the "Discloser")." (AMF # 12).

The Original NDA defines "Confidential Information" as "any data or information that is proprietary to the Discloser and not generally known to the public, whether in tangible or intangible form, whenever and however disclosed . . . ." (AMF # 13).

Paragraph 5 of the Original NDA provides in relevant part: "Within ten (10) business days of receipt of the Discloser's written request, the Recipient will return to the Disclosure all documents, records and copies thereof containing Confidential Information." (AMF # 14).

The Original NDA is governed by Arizona law. (AMF # 15).

**Frankel Does Not Return Documents To The Trust**

On November 9, 2018, counsel for Plaintiffs sent a demand letter (the "Demand Letter") to Frankel, requesting the return of "any and all documents, records, and/or copies thereof in your possession, custody of control that contain any Confidential Information." (FMF # 32, 33).

At the time of his receipt of the Demand Letter, Frankel had in his possession the First Amendment to the Hurry Family Revocable Trust and the Certificate of Trust for The Hurry Family Revocable Trust (collectively, the "Trust Documents"). (AMF # 17). The Trust Documents contain information that is proprietary to the Trust and not generally known to the public. (AMF # 18). Frankel did not return the foregoing documents to Plaintiffs within ten business days of receiving Plaintiffs' request for their return. (AMF # 19).

**The Employee Nondisclosure & Computer Use Agreement**

On July 1, 2015, Alpine, Scottsdale, and Frankel entered into a second nondisclosure agreement entitled the "Employee Nondisclosure & Computer Use Agreement" (the "Employee NDA"), which superseded the NDA with regard to Alpine and Scottsdale. (AMF # 20). The first sentence of the Employee NDA states: "This agreement (the "Agreement") is entered into by Alpine Securities/Scottsdale Capital and its subsidiaries and affiliates ("Company") and Christopher L. Frankel ("Employee")." (AFM # 21).

> Paragraph 1 of the Employee NDA defines "Confidential Information" as *inter alia*:
>
>> . . . (b) information concerning Company's business, including cost information, profits, sales information, accounting and unpublished financial information, business plans, markets and marketing methods, customer lists and customer information, purchasing techniques, supplier lists and supplier information and advertising strategies; (c) information concerning Company's employees, including salaries, strengths, weaknesses and skills; (d) information submitted by Company's customers, suppliers, employees, consultants or co-venture partners with Company for study,

Case 8:18-cv-02869-VMC-CPT   Document 126   Filed 09/06/19   Page 5 of 13 PageID 2533

evaluation or use; and (e) any other information not generally known to the public which, if misused or disclosed, could reasonably be expected to adversely affect Company's business.

(AMF # 22).

Paragraph 2 of the Employee NDA provides in relevant part: "Employee shall keep Company's Confidential Information, whether or not prepared or developed by Employee, in the strictest confidence. Employee will not disclose such information to anyone outside Company without Company's prior written consent. Nor will Employee make use of any Confidential Information for Employee's own purposes or the benefit of anyone other than Company." (AFM # 23).

Paragraph 4 of the Employee NDA provides: "When Employee's employment with Company ends, for whatever reason, Employee will promptly deliver to Company all originals and copies of all documents, records, software programs, media and other materials containing any Confidential Information. Employee will also return to Company all equipment, files, software programs and other personal property belonging to Company. (AFM # 24).

Paragraph 6 of the Employee NDA provides in relevant part: "Prohibited actions using Company's ECS [Electronic Communication Systems] include, but are not limited to the following . . . transmitting confidential patient, business or risk management information to any non-Company email address." (AMF # 25).

**Frankel Sends Confidential Documents to His Personal Email and Fails to Return Them to Plaintiffs**

Frankel sent more than a dozen documents containing confidential information to his personal email address. (FMF # 18; AMF # 1). At his deposition, Frankel admitted that information in these documents contained confidential information. (AMF # 1).

{00102863;2}   5

Frankel failed to return dozens of documents containing confidential information after his employment ended with Alpine in October 2018.  (AMF # 2).  Frankel did not return any of those documents until Plaintiffs commenced this lawsuit, and even then waited until February 2019.  (FMF # 39; AMF # 2, 26).

### Frankel Uses Confidential Documents for Personal Use

Frankel admitted at his deposition that on September 18, 2018, he sent a term sheet for a secured revolving credit facility belonging to Alpine to his personal email account.  (AMF # 27).  Frankel further admitted that the document was marked confidential and Plaintiffs wanted to keep it confidential. (AMF # 28).  Frankel admitted that he later used the document for his personal use.  (AMF # 29).

Similarly, Frankel admitted at his deposition that on October 7, 2018, he emailed confidential financial document regarding Alpine and Scottsdale to his personal email address.  (FMF # 18; AMF # 30).  Frankel further admitted that he sent this information to himself in order "to help another group [i.e., not Plaintiffs] try to become a nonbank custodian."  (AMF # 31).

### Frankel Sends Confidential Information to Third Parties

After he was terminated from Alpine, Frankel contacted an employee there and requested a blotter of Alpine's trade runs.  (AMF # 32).  The blotter of Alpine's trade runs is proprietary to Alpine as it is shows all of the trades cleared through Alpine on those dates.  (AMF # 33).  This information is not publicly available, and Alpine derives economic advantages by the public not knowing this information.  (AMF # 34).  Frankel admitted that the information on the blotter could not be obtained from a public source in the format he received.  (AMF # 35). Frankel

further admitted that he sent the trade blotter to Ziv Investment Company ("Ziv"), a broker dealer in Chicago that he was attempting to purchase. (AMF # 36).

Frankel did not produce the confidential trade blotter in discovery in this matter, despite his obligation to do so.[1] (AMF # 37, 38). Nor did Frankel produce the email in which he sent the trade blotter to Ziv, despite his obligation to do so. (AMF # 39). Instead, Plaintiffs obtained this from third parties in response to subpoenas. (AMF # 40).

Frankel sent the same confidential blotter of Alpine's trade runs to two additional broker dealers and the Depository Trust and Clearing Corporation ("DTCC"). (AMF # 41). Frankel did not produce these communications in discovery. (AMF # 42). Instead, Plaintiffs obtained Frankel's emails to third parties in response to subpoenas to those parties. (AMF # 43).

---

[1] The trade blotter and Frankel's emails containing it are responsive to Request for Production number 2, which requested, "All Documents and Communications containing Plaintiffs' business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information of Plaintiffs and their clients that You sent from Your personal email addresses to yourself or anyone else since June 1, 2015."

The trade blotter and Frankel's emails containing it are also responsive to Request for Production number 9, which requested, "All Documents and Communications that pertain to Your attempts, inquiries, preparations, or desire to purchase any broker-dealer since August 1, 2018."

The trade blotter and Frankel's emails containing it are also responsive to Request for Production number 10, which requested, "All Documents and Communications between You and any broker-dealers that you have considered purchasing since August 1, 2018."

The trade blotter and Frankel's emails containing it are also responsive to Request for Production number 11, which requested, "All Documents and Communications between You and Ziv Investment Company since August 1, 2018." (AMF # 37).

### III. ANALYSIS

#### A. Frankel Is Not Entitled To Summary Judgment on the Trust's Claim for Breach of Contract

Frankel argues that he is entitled to summary judgment on the Trust's claim for breach of contract because the Trust is not a "Discloser" under the Original NDA. This argument ignores the very text of the Original NDA, which defines "Discloser" as Scottsdale, Alpine, Cayman Securities Clearing and Trading LTD, "and any associated company of the Hurry Family Revocable Trust." (AMF # 12). Based upon the plain language of the Original NDA, the suggestion that the Trust is not any associated company of the Trust is risible. *See James v. Gulf Life Ins. Co.*, 66 So. 2d 62, 63 (Fla. 1953) ("The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and one which will not give one of them an unfair or unreasonable advantage over the other. So that interpretation which evolves the more reasonable and probable contract should be adopted, and a construction leading to an absurd result should be avoided.").

Frankel next argues that he cannot be liable for breach of contract because he "offered to return" the Trust's confidential documents. This argument also ignores the text of the Original NDA which requires the *return* of all documents containing confidential information within ten business days of Plaintiffs' request. (AMF # 14). Frankel's purported offer to return material did not absolve him of his obligation to comply with the Original NDA. Production of documents in discovery months later does not constitute the "return" of documents.

Frankel's final argument, that there is no evidence of damages resulting from his refusal to return the Trust's confidential documents, ignores Arizona law (which controls the agreement) and misstates the evidence. **First**, under Arizona law, "nominal damages are awarded where

actual damages are slight or difficult to calculate" provided that the plaintiffs show "they have suffered (or will suffer) an injury of some kind." *Firetrace USA, LLC v. Jesclard*, No. CV-07-02001-PHX-ROS, 2010 WL 3523067, at *1–3 (D. Ariz. Sept. 3, 2010). Frankel injured the Trust when he unlawfully retained possession of its Confidential Information. *See Avina v. Spurlock,* 28 Cal. App. 3d 1086, 105 Cal. Rptr. 198, 200 (1972) ("Nominal damages are properly awarded ... [w]here there is no loss or injury to be compensated but where the law still recognizes a technical invasion of a plaintiff's rights or a breach of a defendant's duty ..."). **Second**, the Trust has never stated that it has no damages, only that it did not have *documents* showing its damages. The absence of documents is not the same as the absence of evidence. At a minimum, whether the Trust suffered damages is a question of fact for a jury to decide.

### B. Frankel is Not Entitled to Summary Judgment on Alpine & Scottsdale's Claim for Breach of Contract

#### 1. Frankel Admitted He Breached the Employee NDA

Frankel's request that Scottsdale's and Alpine's breach of contract claim be dismissed ignores his numerous admissions that he, in fact, breached the Employee NDA.

First, the Employee NDA prohibited Frankel from sending confidential documents to his personal, non-company, email addresses. (AMF # 8). Frankel, however, admitted sending more than a dozen such documents to his personal email. (AMF # 1).

Second, the Employee NDA prohibited Frankel from using Alpine's and Scottsdale's information for his "own purposes or the benefit of anyone other than Company." (AMF # 23). Yet again, Frankel admitted using confidential documents for his own purposes. (AMF # 29). In particular, Frankel used a confidential credit term sheet and confidential financial documents belonging to Alpine and Scottsdale for his personal use. (AMF #27-29).

Third, the Employee NDA prohibited Frankel from disclosing Alpine's confidential information to third parties without Alpine's consent. (AMF # 23). Frankel admitted that he sent Alpine's proprietary trade runs to a third party broker dealer he was attempting to purchase. (AMF # 5). In fact, Frankel sent the confidential trade blotter to two additional broker dealers and the DTCC. (AMF # 40).

Fourth, the Employee NDA required Frankel to return confidential documents "promptly" upon his termination. (AMF # 24). Frankel was terminated as an employee in August 2018 and terminated as a consultant in October 2018 (FMF # 14, 16; AMF # 44), yet he did not produce confidential documents to Plaintiffs until February 2019—after Plaintiffs commenced this lawsuit. (FMF # 39; AMF # 26).

By his own admissions, Frankel's attempt to dismiss Alpine's and Scottsdale's breach of contract claim fails.

### 2. Frankel's Arguments to Dismiss Scottsdale's and Alpine's Breach of Contract Claim are Baseless

Frankel first argues that there is no evidence that he used for his own benefit or disclosed to third parties any of the documents he produced as part of his initial disclosures. This argument is both false and misleading.

It is false because Frankel admitted at his deposition that he, in fact, used a term sheet for a secured revolving credit facility for his own personal use. (AMF # 3). In addition, Frankel used Alpine's confidential trade blotter in his effort to purchase Ziv, a broker dealer in Chicago. (AMF # 5).

The argument is misleading because it ignores documents that Frankel failed to produce in discovery—in particular, Alpine's confidential trade blotter. (AMF # 37). Frankel did not produce the blotter in discovery, and he did not produce his emails to other broker dealers, in

which he disclosed the confidential blotter to third parties. (AMF # 37-42). Therefore, Frankel's attempt to mislead the Court by saying he did not disclose to third parties documents produced in his initial disclosures is disingenuous.

Frankel next argues that he cannot be liable for breach of contract because he supposedly "agreed to return and did return all documents and communication in his possession that he received from Scottsdale and Alpine." This argument fails on numerous grounds. **First**, the Employee NDA required the return of documents "promptly" upon termination. (AMF # 24). Frankel did not return any documents until Plaintiffs commenced this lawsuit, and even then waited to produce copies with his initial disclosures—three months after his termination. (AMF # 26). **Second**, Frankel did not return the confidential trade blotter at any time. (AMF # 37-42). **Third**, even after Plaintiffs requested the return of their confidential materials, Frankel sent the trade blotter to third parties. (AMF # 36). In fact, Frankel emailed confidential internal communications regarding customer fee schedules to FINRA *after* the lawsuit commenced. (AMF # 45). **Fourth**, Frankel's claim that he cannot be liable for breach of contract because he produced documents in this lawsuit ignores the numerous other provisions of the Employee NDA that he admittedly breached, including the prohibitions against emailing documents to his personal email account and using confidential information for his personal benefit.

Frankel's final argument, that Alpine and Scottsdale cannot prove damages, is simply false. Alpine and Scottsdale produced statements of income, trend reports, and profit & loss statements showing the loss of hundreds of thousands of dollars in revenue. (AMF # 46).

    **C.**    **Frankel is Not Entitled to Summary Judgment on Alpine & Scottsdale's DTSA and FUTSA Claims**

Frankel argues that he is entitled to summary judgment on the DTSA and FUTSA claims because there is no evidence of him misappropriating trade secrets to make a bid for a broker

dealer in Chicago. Frankel is wrong. After Frankel left Alpine, and after Plaintiffs requested the return of their confidential information, Frankel emailed Alpine's confidential trade blotter to Ziv. (AMF #5). Frankel's reference to documents he produced in discovery is disingenuous because it overlooks documents produced by third parties in response to subpoenas, and it ignores Frankel's own admissions that the trade blotter is not publicly available in the form that he (illegally) obtained from an Alpine employee. (AMF #5).

Frankel next argues that Alpine and Scottsdale cannot prove they are entitled to any remedies. This argument has been constructed out of whole cloth. Alpine and Scottsdale produced statements of income, trend reports, and profit & loss statements that demonstrate significant losses attributable to Frankel's conduct. (AMF # 46). In addition, Alpine and Scottsdale are entitled to injunctive relief because Frankel has and continued to disseminate Plaintiffs' confidential information after Plaintiffs demanded the return of such information and after the commencement of this lawsuit. (AMF # 5, 36, 41, 45). *See Heralds of Gospel Found., Inc. v. Varela*, No. 17-22281-CIV, 2017 WL 3868421, at *4 (S.D. Fla. June 23, 2017) ("Both the Federal Defend Trade Secrets Act (the 'DTSA') and Florida's Uniform Trade Secrets Act (the 'FUTSA') authorize a court to grant an injunction to prevent 'actual' or 'threatened' misappropriation of a 'trade secret.'"). Moreover, "the loss of customers and goodwill is an 'irreparable' injury." *Fortiline, Inc. v. Moody*, No. 12-CV-81271, 2013 WL 12101142, at *5 (S.D. Fla. Jan. 7, 2013) (quoting *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991)). Absent an injunction, Frankel will continue to share Plaintiffs' confidential information and steal Alpine and Scottsdale's customers, causing Plaintiffs irreparable harm.

## IV. CONCLUSION

For the reasons stated herein, the Court should deny Frankel's Motion.

Dated this 6th day of September 2019.

/s/ Jordan Susman
Charles J. Harder, Esq.
Jordan Susman, Esq.
HARDER LLP
132 South Rodeo Drive, Fourth Floor
Beverly Hills, CA 90212-2406
Tel: (424) 203-1600
Fax: (424) 203-1601
E-mail: charder@harderllp.com
E-mail: jsusman@harderllp.com

Kenneth G. Turkel – FBN 867233
Shane B. Vogt – FBN 257620
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel: (813) 443-2199
Fax: (813) 443-2193
E-mail: kturkel@bajocuva.com
E-mail: svogt@bajocuva.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 6, 2019, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

/s/ Jordan Susman
Attorney