# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

THE HURRY FAMILY REVOCABLE TRUST;     CASE NO.: 8:18-cv-02869-VMC-CPT
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; ALPINE SECURITIES
CORPORATION,

      Plaintiffs,

vs.

CHRISTOPHER FRANKEL,

      Defendant.

_____

## PLAINTIFFS' RESPONSE TO FRANKEL'S STATEMENT OF MATERIAL FACTS

## AND ADDITIONAL MATERIAL FACTS

| FRANKEL'S MATERIAL FACT | ADMIT / DENY / SUBJECT TO MOTION TO STRIKE |
|---|---|
| 1. | Admit. |
| 2. | Admit. |
| 3. | Admit. |
| 4. | Deny.<br><br>Cruz Decl. ¶ 4 (COR was not a competitor of Alpine). |
| 5. | Admit. |
| 6. | Deny.<br><br>Frankel Depo. 15:3-5; 22:25-23:3 (Frankel brought no clients to Alpine). |

|  | Frankel Depo. 11:11-19 (Frankel had no personal clients at COR, the place he worked prior to Alpine).<br><br>Frankel depo. 23:4-18 (Frankel was introduced to Jim Kelly while working at Alpine).<br><br>Frankel depo. 24:13-23 (Frankel was introduced to John Fife while working at Alpine).<br><br>Frankel Depo. 35:7-9 (Frankel was introduced to Lakeside Bank while working at Alpine). |
|---|---|
| 7. | Admit. |
| 8. | Admit. |
| 9. | Deny.<br><br>Cruz Decl. ¶ 5 (The manner in which Alpine and Scottsdale process trades with their clients is confidential.). |
| 10. | Deny.<br><br>Cruz Decl. ¶ 6 (Not all information Alpine's balance sheets is published.).<br><br>Frankel Depo. 119:23-120:16 (Not all information on Alpine's financial statements is publically available.). |
| 11. | Deny.<br><br>Cruz Decl. ¶ 7 (Not all information Scottsdale's balance sheets is published.). |
| 12. | Admit. |
| 13. | Deny.<br><br>Hurry Depo. 44:24-45:9 (Hurry doubts Frankel's experience with clearing firms.). |
| 14. | Admit. |

| | |
|---|---|
| 15. | Admit. |
| 16. | Admit. |
| 17. | Admit. |
| 18. | Deny.<br><br>Frankel depo. 62:24-63:17; 121:2-16 (Frankel used documents he sent himself for personal use.). |
| 19. | Admit. |
| 20. | Admit. |
| 21. | Deny.<br><br>Second Amended Complaint ("SAC") [Dkt. 61], Exh. 1 (Original NDA defines "Discloser" as Scottsdale, Alpine, Cayman Securities, and "any associated company of the Hurry Family Revocable Trust."). |
| 22. | Deny.<br><br>SAC [Dkt. 61], Exh. 1, ¶ 2(b) (Agreement requires Frankel to use confidential information solely for the benefit of Plaintiffs.). |
| 23. | Deny.<br><br>SAC [Dkt. 61], Exh. 2, ¶ 3 (Agreement states Frankel will not disclose to Scottsdale or Alpine, or use in Scottsdale or Alpine's business or cause Scottsdale or Alpine to use any trade secrets of others.).<br><br>SAC [Dkt. 61], Exh. 2, ¶ 4 (Agreement states that Frankel will return to Scottsdale and Alpine all equipment, files, software programs and other personal property of Scottsdale and Alpine.). |

|  | SAC [Dkt. 61], Exh. 2, ¶ 6 (Agreement limits Frankel's computer access and use, including a prohibition against sending confidential information to a non-company email address). |
|---|---|
| 24. | Admit. |
| 25. | Admit. |
| 26. | Admit. |
| 27. | Deny. <br><br> SAC [Dkt. 61], Exh. 2 ¶ 5 (The provision cited by Frankel only applies to the confidentiality of things deemed Confidential Information under the agreement; it does not cover other information protected by the agreement.). |
| 28. | Deny. <br><br> SAC [Dkt. 61], Exh. 2 ¶ 5 (Agreement requires Frankel to maintain confidentiality and security of Plaintiffs' confidential information.). |
| 29. | Deny. <br><br> SAC [Dkt. 61], Exh. 2, ¶¶ 1, 2, 5 (Agreement restricts Frankel's use of client information). |
| 30. | Admit. |
| 31. | Admit. |
| 32. | Admit. |
| 33. | Admit. |
| 34. | Admit. |
| 35. | Deny. |

| | |
|---|---|
| | Frankel Depo. 46:23-25 (Frankel retained confidential until Plaintiffs commenced this action.).<br><br>Frankel Depo. 152:13-23; 155:7-156:5; 156:13-17; Exh. 20; Susman Decl. ¶¶ 4-7, Exhs. 1, 2 (After Plaintiffs requested the return of their information, Frankel sent confidential documents to the owner of a broker-dealer.). |
| 36. | Deny.<br><br>Original Complaint [Dkt. 1], ¶ 20 ("Defendant knowingly, willfully, and maliciously breached his obligations to Plaintiffs under the NDA and used confidential information obtained from Plaintiffs to solicit capital, establish banking relations, recruit Plaintiffs' clients, and compete with Plaintiffs' businesses. Among other things, Plaintiffs are informed and believe Defendant used the foregoing confidential information obtained from Plaintiffs to make a bid for a broker-dealer in Chicago.").<br><br>Original Complaint [Dkt. 1], ¶ 57 ("Defendant engaged in unfair methods of competition and deceptive and/or unfair business practices by using Plaintiffs' confidential information and Trade Secrets to solicit Plaintiffs' clients, establish relationships with their financial institutions and investors, and attempt to acquire a broker-dealer in Chicago."). |
| 37. | Admit.<br><br>Subject to Motion to Strike because it proffers facts that are not necessary for the Court to determine the issues presented in the motion for summary judgment. |
| 38. | Deny.<br><br>Plaintiffs' Opposition to Motion to Dismiss [Dkt. 24], pg. 4. ("Complaint clearly states that Defendant violated the NDA by using the Hurry Parties' trade secrets and confidential information for his own business purposes. (Complaint at ¶ 20) ("Defendant knowingly, willfully, and maliciously breached his obligations to Plaintiffs under the NDA and used confidential information obtained from Plaintiffs to solicit capital, establish banking relations, recruit Plaintiffs' clients, and compete with Plaintiffs' businesses. Among other things, Plaintiffs are informed and believe Defendant used the |

|   | foregoing confidential information obtained from Plaintiffs to make a bid for a broker-dealer in Chicago.")). |
|---|---|
|   | Plaintiffs' Opposition to Motion to Dismiss [Dkt. 24], pg. 6. ("As stated in the Complaint, Defendant used the Hurry Parties' trade secrets and confidential information to solicit capital, establish banking relations, recruit the Hurry Parties' clients, and make a bid on a Chicago-based broker-dealer."). |
|   | Subject to Motion to Strike because it proffers facts that are not necessary for the Court to determine the issues presented in the motion for summary judgment. |
| 39. | Deny. |
|   | Frankel Depo. 46:23-25 (Frankel did not return documents by the date requested.). |
| 40. | Deny. |
|   | Plaintiffs' Motion for Leave to File Amended Complaint [Dkt. 34], pg. 2 ("Upon reviewing their files to respond to the document requests, the Hurry Parties realized that Scottsdale Capital Advisors, Alpine Securities Corporation, and Frankel had entered into a second nondisclosure agreement . . . that superseded the Original NDA as to those parties."). The other claims in the Complaint were not affected. |
| 41. | Deny. |
|   | First Amended Complaint ("FAC") [Dkt. 37], ¶ 24 ("Defendant knowingly and willfully breached his obligations to them under the NDA and under the Employee Nondisclosure Agreement by using confidential information obtained from the Hurry Parties to solicit capital, establish banking relations, recruit clients of the Hurry Parties, and compete with the Hurry Parties' businesses. Among other things, the Hurry Parties are informed and believe that Defendant has used the foregoing confidential information obtained from the Hurry Parties to make a bid for a broker-dealer in Chicago."). |
|   | FAC [Dkt. 37] ¶ 27 ("Defendant engaged in deceptive and/or unfair practices by using the Hurry Parties' confidential information and trade secrets to solicit the Hurry Parties' clients, establish |

| | |
|---|---|
| | relationships with the Hurry Parties' financial institutions and investors, and attempt to acquire broker-dealer in Chicago."). |
| 42. | Deny.<br><br>Court Order [Dkt. 47] (Court granted motion to dismiss for reasons stated on record at the hearing on April 26, 2019, namely the trade secret information needed to be identified with more specificity.). |
| 43. | Admit. |
| 44. | Admit. |
| 45. | Admit. |
| 46. | Deny.<br><br>Supplemental Interrogatory Responses [Dkt.118-8], Nos. 5, 6, 9 ("Based on documents received from Ziv [Investment Company], including a November 13, 2018, email from Defendant to Peter Ziv, Plaintiffs believe that Defendant disclosed their Confidential Information to Ziv and Peter Ziv in an attempt to purchase Ziv."). |
| 47. | Admit. |
| 48. | Deny.<br><br>Supplemental Interrogatory Responses [Dkt.118-8], No. 6 ("Plaintiffs state that they learned Defendant had and was using their Confidential Information from Jim Kelley. Jim Kelly alerted Plaintiffs after Defendant contacted him, seeking an indication of interest, and informed him that Defendant had entered into an agreement to purchase a broker dealer in Chicago, Ziv Investment Company ("Ziv"). Defendant told Kelley that Ziv would have capabilities equal, if not superior, to those at Alpine, and made reference to trading that mimicked that of Alpine with a similar customer base. Defendant also informed Kelley that he had sufficient clients and capital to outperform Alpine. Kelley knew that Defendant had no clients of his own or the financial wherewithal to consummate such an endeavor and surmised that Defendant was using Plaintiffs' Confidential Information to purchase Ziv.").<br><br>Supplemental Interrogatory Responses [Dkt.118-8], Nos. 5, 6, 9 ("Based on documents received from Ziv, including a November 13, 2018, email from Defendant to Peter Ziv, Plaintiffs believe that |

| | |
|---|---|
| | Defendant disclosed their Confidential Information to Ziv and Peter Ziv in an attempt to purchase Ziv."). |
| | Subject to Motion to Strike because legal argument should not be included in the statement of material facts. |
| 49. | Deny.

Frankel Depo. 40:8-41:19; 43:19-44:7; 44:14-17; 59:15-60:10; 60:23-62:2; 62:16-63:17; 66:18-67:1; 67:15-17; 69:13-70:14; 70:24-71:2; 71:21-23; 76:2-77:16; 78:11-14; 79:20-80:15; 81:6-8; 86:15-20; 89:11-90:15; 91:5-7; 92:1-12; 92:19-93:6; 114:5-14; 115:3-18; 116:11-117:2; 117:16-121:14; 122:10-124:1; 124:10-18; 125:10-22; 128:14-129:20; 130:7-131:20; 132:6-133:19; 134:1; 135:14-136:25; 137:6-8; 152:13-153:13; 155:2-156:5; Exhs. 2, 6—19 (On numerous occasions, without Plaintiffs' knowledge or consent, Frankel would access Plaintiffs' Confidential Information for his own personal uses.).

Frankel Depo. 152:13-153:13; 155:2-6; Exh. 20 (Frankel directed an Alpine employee to gather and give him two days' worth of Alpine's trade runs.).

Cruz Decl. ¶ 8; Frankel Depo. 155:2-6 (The blotter of Alpine's trade runs is proprietary to Alpine as it is shows all of the trades cleared through Alpine on those dates.  This information is not publicly available, and Alpine derives economic advantages by the public not knowing this information.).

Frankel Depo. 44:24-45:4; 63:18-22; 64:16-19; 66:2-4; 71:21-23; 75:18-24: 78:11-14; 78:18-20; 85:8-18; 90:19-24; 96:12-14; 122:1-7; 124:3-8; 127:25-128:13; 129:21-130:4; 131:21-132:3; 133:20-25: 137:13-21 (Upon his termination, Frankel did not notify Plaintiffs that he had their documents in his possession, nor did Frankel delete or return confidential documents.).

Frankel Depo. 152:13-23; 155:7-156:5; 156:13-17; Exh. 20 (Shortly after Frankel's termination from Alpine and after Plaintiffs requested the return of their information, Frankel sent the trade run document to the owner of a broker-dealer that he was attempting to purchase as evidence of the amount of daily activity that he believed he could achieve.).

Susman Decl. ¶¶ 4-7, Exhs. 1, 2 (Frankel provided Alpine's trade runs to Ziv, Atlas, Koonce, and the DTCC.). |

|   | Subject to Motion to Strike because legal argument should not be included in the statement of material facts. |
|---|---|
| 50. | Deny.<br><br>Frankel depo. 62:24-63:17; 121:2-16 (Frankel admitted using documents he sent himself for personal use.). |
| 51. | Deny.<br><br>Plaintiffs' Interrogatory Responses [Dkt. 35-1], No. 6; Susman Decl. ¶¶ 4-8, Exhs. 1, 2; Frankel Depo. 152:13-23; 155:7-156:5; 156:13-17; Exh. 20 (Plaintiffs provided circumstantial evidence of Frankel's misappropriation. This evidence was later substantiated by documents received from third parties in response to subpoenas.). |
| 52. | Deny.<br><br>Supplemental Interrogatory Responses [Dkt.118-8], No. 6 ("Plaintiffs state that they learned Defendant had and was using their Confidential Information from Jim Kelley. Jim Kelly alerted Plaintiffs after Defendant contacted him, seeking an indication of interest, and informed him that Defendant had entered into an agreement to purchase a broker dealer in Chicago, Ziv Investment Company ("Ziv"). Defendant told Kelley that Ziv would have capabilities equal, if not superior, to those at Alpine, and made reference to trading that mimicked that of Alpine with a similar customer base. Defendant also informed Kelley that he had sufficient clients and capital to outperform Alpine. Kelley knew that Defendant had no clients of his own or the financial wherewithal to consummate such an endeavor and surmised that Defendant was using Plaintiffs' Confidential Information to purchase Ziv.").<br><br>Supplemental Interrogatory Responses [Dkt.118-8], Nos. 5, 6, 9 ("Based on documents received from Ziv, including a November 13, 2018, email from Defendant to Peter Ziv, Plaintiffs believe that Defendant disclosed their Confidential Information to Ziv and Peter Ziv in an attempt to purchase Ziv."). |
| 53. | Admit. |
| 54. | Deny. |

| | |
|---|---|
| | Hurry Depo. 156:4-157:1, Exhs. 29-34 (Plaintiffs produced documents showing losses of revenue that coincide with Frankel's wrongful activities.). |
| | Subject to Motion to Strike because legal argument should not be included in the statement of material facts. |
| 55. | Deny. |
| | Hurry Depo. 156:4-157:13, Exhs. 29-34 (Plaintiffs produced documents showing losses of revenue that coincide with Frankel's wrongful activities. Hurry stated that no *expert* has performed an analysis.). |
| | Subject to Motion to Strike because legal argument should not be included in the statement of material facts. |
| 56. | Deny. |
| | Frankel Depo. 138:10-23, 152:13-23, 155:2-6, Exhs. 19, 20; Susman Decl. ¶¶ 4-8, Exhs. 1, 2 (Frankel continued to send Plaintiffs' confidential information to third parties after Plaintiffs requested their return and after Plaintiffs commenced this lawsuit. These documents were obtained from third parties in discovery.) |
| | Subject to Motion to Strike because legal argument should not be included in the statement of material facts. |
| 57. | Deny. |
| | Hurry depo. 157:2-13 (Hurry stated that there had been no "expert analysis."). |
| 58. | Deny. |
| | Hurry Depo. 156:4-157:1, Exhs. 29-34 (Plaintiffs produced documents showing losses of revenue that coincide with Frankel's wrongful activities.). |
| | Subject to Motion to Strike because legal argument should not be included in the statement of material facts. |
| 59. | Deny. |
| | Request for Judicial Notice, 1 at pp. 4, 5, 6 (The decision referenced by Frankel was stayed by the SEC as to Hurry on appeal "because |

|  | [the SEC] find[s] that Hurry has at least raised serious legal questions about the NAC's findings, and that the balance of hardships tips decidedly in favor of a stay . . . at this [preliminary stage of appeal] we find that Hurry has raised a serious legal question as to whether FINRA provided him with fair notice of the allegation forming the basis of its finding that he violated Rule 2010 . . . FINRA now admits that Hurry's conduct was 'not a direct violation of Section 5 [of the Act].").<br><br>Subject to Motion to Strike because it proffers facts that are not necessary for the Court to determine the issues presented in the motion for summary judgment. |
|---|---|
| 60. | Deny.<br><br>Request for Judicial Notice, 1 at pp. 4, 5, 6 (The decision referenced by Frankel was stayed by the SEC as to Hurry on appeal "because [the SEC] find[s] that Hurry has at least raised serious legal questions about the NAC's findings, and that the balance of hardships tips decidedly in favor of a stay . . . at this [preliminary stage of appeal] we find that Hurry has raised a serious legal question as to whether FINRA provided him with fair notice of the allegation forming the basis of its finding that he violated Rule 2010 . . . FINRA now admits that Hurry's conduct was 'not a direct violation of Section 5 [of the Act].").<br><br>Subject to Motion to Strike because it proffers facts that are not necessary for the Court to determine the issues presented in the motion for summary judgment. |
| 61. | Subject to Motion to Strike because it proffers facts that are not necessary for the Court to determine the issues presented in the motion for summary judgment. |
| 62. | Subject to Motion to Strike because it proffers facts that are not necessary for the Court to determine the issues presented in the motion for summary judgment. |
| 63. | Subject to Motion to Strike because it proffers facts that are not necessary for the Court to determine the issues presented in the motion for summary judgment. |
| 64. | Subject to Motion to Strike because it proffers facts that are not necessary for the Court to determine the issues presented in the motion for summary judgment. |

| 65. | Deny.<br><br>Hurry Depo. 182:24-185:12 (Hurry testified that the fee was waived for customers who did a significant amount of business or took their business elsewhere.).<br><br>Subject to Motion to Strike because it proffers facts that are not necessary for the Court to determine the issues presented in the motion for summary judgment. |
|---|---|
| 66. | Deny.<br><br>Hurry Depo. 8:12-16 (Hurry does not control Alpine.)<br><br>Hurry Depo. *passim* (Hurry did not say anything about a purported "sham" loan in his deposition.).<br><br>Subject to Motion to Strike because it proffers facts that are not necessary for the Court to determine the issues presented in the motion for summary judgment. |
| 67. | Deny.<br><br>Hurry depo. 197:21-199:1; 199:22-200:1 (Hurry disputed FINRA's characterization of the loan transaction.).<br><br>Subject to Motion to Strike because it proffers facts that are not necessary for the Court to determine the issues presented in the motion for summary judgment. |
| 68. | Subject to Motion to Strike because it proffers facts that are not necessary for the Court to determine the issues presented in the motion for summary judgment. |

## ADDITIONAL MATERIAL FACTS

| 1.<br><br>[Frankel] sent over a dozen of Plaintiffs' confidential documents to his personal email account. | Frankel Depo. 40:8-41:19; 43:19-44:7; 44:14-17; 59:15-60:10; 60:23-62:2; 62:16-63:17; 66:18-67:1; 67:15-17: 69:13-70:14; 70:24-71:2: 71:21-23; 76:2-77:16; 78:11-14; 79:20-80:15; 81:6-8; |
|---|---|

| | |
|---|---|
| | 86:15-20; 89:11-90:15; 91:5-7; 92:1-12; 92:19-93:6; 114:5-14; 115:3-18; 116:11-117:2: 117:16-121:14; 122:10-124:1; 124:10-18; 125:10-22; 128:14-129:20; 130:7-131:20; 132:6-133:19; 134:1; 135:14-136:25; 137:6-8; 152:13-153:13; 155:2-156:5; Exhs. 2, 6—19 |
| 2.<br><br>[Frankel] retained those documents until Plaintiffs commenced this litigation. | Frankel Depo. 46:23-25 |
| 3.<br><br>[Frankel] used at least some of these confidential documents for his own personal purposes. | Frankel depo. 62:24-63:17; 121:2-16 |
| 4.<br><br>[A]fter his termination from Alpine, [Frankel] wrongfully directed an Alpine employee to create and give him a confidential blotter showing two days' of Alpine's trade runs. | Frankel Depo. 152:13-153:13; 155:2-6; Exh. 20<br><br>Cruz Decl. ¶ 8 |
| 5.<br><br>[Frankel] sent Alpine's confidential blotter of trade runs to a broker dealer in Chicago. | Frankel Depo. 152:13-23; 155:7-156:5; 156:13-17; Exh. 20<br><br>Cruz Decl. ¶ 8<br><br>Susman Decl. ¶ 6, 7, Exh. 2 |
| 6.<br><br>[Frankel] failed to return confidential documents belonging to the Trust within ten business days of a written request by the Trust. | Frankel Depo. 46:23-25 |
| 7. | Frankel Depo. 16:17-25; Exh. 1 ¶ 5 |

| | |
|---|---|
| The Original NDA, [] requires the return of such material in said timeframe [within ten business days of a written request by the Trust] | SAC [Dkt. 61], Exh. 1 ¶ 5 |
| 8.<br><br>the Employee NDA, [] prohibits the transmission of confidential information to any non-company email address | Frankel Depo. 16:17-17; 18:7-25; Exh. 2 ¶ 6(f)<br><br>SAC [Dkt. 61], Exh. 2 ¶ 6(f) |
| 9.<br><br>the Employee NDA, which prohibits the retention of such documents | Frankel Depo. 54:18-55:8; Exh. 5 ¶ 4<br><br>SAC [Dkt. 61], Exh. 2 ¶ 4 |
| 10.<br><br>Frankel's admission that he sent the confidential trade blotter to a third party constitutes an additional breach of the Employee NDA | Frankel Depo. 54:18-55:8; Exh. 5 ¶ 2<br><br>SAC [Dkt. 61], Exh. 2 ¶ 2 |
| 11.<br><br>On or about June 22, 2015, Frankel entered into the Original NDA. | Frankel Depo. 16:17-25; Exh. 1<br><br>SAC [Dkt. 61], Exh. 1 |
| 12.<br><br>The first sentence of the Original NDA provides: "This NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT (the "Agreement") is made as of June 22nd, 2015 by Christopher Lee Frankel (the "Recipient") and SCOTTSDALE CAPITAL ADVISORS CORPORATION, an Arizona corporation, Alpine Securities Corporation an Utah corporation, Cayman Securities Clearing and Trading LTD a Cayman Limited Company and any associated company of the Hurry Family Revocable Trust (the "Discloser")." | Frankel Depo. 16:17-25; Exh. 1<br><br>SAC [Dkt. 61], Exh. 1 |
| 13.<br><br>The Original NDA defines "Confidential Information" as "any data or information that is proprietary to the Plaintiffs and not generally known to the public, whether in tangible or intangible form, whenever and however disclosed." | Frankel Depo. 16:17-25; Exh. 1 ¶ 1<br><br>SAC [Dkt. 61], Exh. 1 ¶ 1 |

| | |
|---|---|
| 14.<br><br>Paragraph 5 of the Original NDA provides in relevant part: "Within ten (10) business days of receipt of the Discloser's written request, the Recipient will return to the Disclosure all documents, records and copies thereof containing Confidential Information." | Frankel Depo. 16:17-25; Exh. 1 ¶ 5<br><br>SAC [Dkt. 61], Exh. 1 ¶ 5 |
| 15.<br><br>The Original NDA is governed by Arizona law. | Frankel Depo. 16:17-25; Exh. 1 ¶ 8<br><br>SAC [Dkt. 61], Exh. 1 ¶ 8 |
| 16.<br><br>INTENTIONALLY OMITTED | |
| 17.<br><br>At the time of his receipt of the Demand Letter, Frankel had in his possession the First Amendment to the Hurry Family Revocable Trust and the Certificate of Trust for The Hurry Family Revocable Trust (collectively, the "Trust Documents"). | Frankel Depo. 40:8-41:19; 43:19-44:7; 46:23-25; Exh. 2 |
| 18.<br><br>The Trust Documents contain information that is proprietary to the Trust and not generally known to the public. | Cruz Decl. ¶ 9 |
| 19.<br><br>Frankel did not return the foregoing documents to Plaintiffs within ten business days of receiving Plaintiffs' request for their return. | Frankel Depo. 45:7-46:1; 46:15-25 |
| 20.<br><br>On July 1, 2015, Alpine, Scottsdale, and Frankel entered into a second nondisclosure agreement entitled the "Employee Nondisclosure & Computer Use Agreement" (the "Employee NDA"), which superseded the NDA with regard to Alpine and Scottsdale. | Frankel Depo. 54:18-55:8; Exh. 5<br><br>SAC [Dkt. 61], Exh. 2 |
| 21. | Frankel Depo. 54:18-55:8; Exh. 5 |

| | |
|---|---|
| The first sentence of the Employee NDA states: "This agreement (the "Agreement") is entered into by Alpine Securities/Scottsdale Capital and its subsidiaries and affiliates ("Company") and Christopher L. Frankel ("Employee")." | SAC [Dkt. 61], Exh. 2 |
| 22.<br><br>Paragraph 1 of the Employee NDA defines "Confidential Information" as *inter alia*:<br>. . . (b) information concerning Company's business, including cost information, profits, sales information, accounting and unpublished financial information, business plans, markets and marketing methods, customer lists and customer information, purchasing techniques, supplier lists and supplier information and advertising strategies; (c) information concerning Company's employees, including salaries, strengths, weaknesses and skills; (d) information submitted by Company's customers, suppliers, employees, consultants or co-venture partners with Company for study, evaluation or use; and (e) any other information not generally known to the public which, if misused or disclosed, could reasonably be expected to adversely affect Company's business. | Frankel Depo. 54:18-55:8; Exh. 5, ¶ 1<br><br>SAC [Dkt. 61], Exh. 2 ¶ 1 |
| 23.<br><br>Paragraph 2 of the Employee NDA provides in relevant part: "Employee shall keep Company's Confidential Information, whether or not prepared or developed by Employee, in the strictest confidence. Employee will not disclose such information to anyone outside Company without Company's prior written consent. Nor will Employee make use of any Confidential Information for Employee's own purposes or the benefit of anyone other than Company." | Frankel Depo. 54:18-55:8; Exh. 5, ¶ 2<br><br>SAC [Dkt. 61], Exh. 2 ¶ 2 |
| 24.<br><br>Paragraph 4 of the Employee NDA provides: "When Employee's employment with Company ends, for whatever reason, Employee will promptly deliver to Company all originals and copies of all documents, records, software programs, media and other materials containing any Confidential Information. Employee will also return to Company all equipment, files, software programs and other personal property belonging to Company. | Frankel Depo. 54:18-55:8; Exh. 5, ¶ 4<br><br>SAC [Dkt. 61], Exh. 2 ¶ 4 |

| | |
|---|---|
| 25.<br><br>Paragraph 6 of the Employee NDA provides in relevant part: "Prohibited actions using Company's ECS [Electronic Communication Systems] include, but are not limited to the following . . . transmitting confidential patient, business or risk management information to any non-Company email address." | Frankel Depo. 54:18-55:8; Exh. 5, ¶ 6<br><br>SAC [Dkt. 61], Exh. 2 ¶ 6 |
| 26.<br><br>Frankel did not return any of those documents until Plaintiffs commenced this lawsuit, and even then waited until February 2019. | Frankel Depo. 45:24-46:1; 66:2-4; 75:21-24: 85:14-18; 90:22-24; 122:5-7; 124:6-8; 128:8-13; 130:2-4; 132:1-3; 133:23-25: 137:19-21 |
| 27.<br><br>Frankel admitted at his deposition that on September 18, 2018, he sent a term sheet for a secured revolving credit facility belonging to Alpine to his personal email. | Frankel Depo. 59:15-60:10; 60:23-62:2; 62:16-18; Exh. 6 |
| 28.<br><br>Frankel further admitted that the document was marked confidential and Plaintiffs wanted to keep it confidential. | Frankel Depo. 61:24-62:5 |
| 29.<br><br>Frankel admitted that he later used the document for his personal use. | Frankel Depo. 62:24-63:17 |
| 30.<br><br>Frankel admitted at his deposition that on October 7, 2018, he emailed confidential financial document regarding Alpine and Scottsdale to his personal email address. | Frankel Depo. 40:8-41:19; 43:19-44:7; 114:5-14; 115:3-8; 116:11-117:3: 117:16-20; 119:1-121:4; Exhs. 2, 12 |
| 31.<br><br>Frankel further admitted that he sent this information to himself in order "to help another group [i.e., not Plaintiffs] try to become a nonbank custodian." | Frankel Depo. 121:2-9 |
| 32. | Frankel Depo. 152:13-153:13; 155:2-6; Exh. 20 |

| | |
|---|---|
| After he was terminated from Alpine, Frankel contacted an employee there and requested a blotter of Alpine's trade runs. | |
| 33.<br><br>The blotter of Alpine's trade runs is proprietary to Alpine as it is shows all of the trades cleared through Alpine on those dates. | Cruz Decl. ¶ 8<br><br>Frankel Depo. 155:2-6 |
| 34.<br><br>This information is not publicly available, and Alpine derives economic advantages by the public not knowing this information. | Cruz Decl. ¶ 8<br><br>Frankel Depo. 155:2-6 |
| 35.<br><br>Frankel admitted that the information on the blotter could not be obtained from a public source in the format he received. | Frankel Depo. 155:2-6 |
| 36.<br><br>Frankel further admitted that he sent the trade blotter to Ziv Investment Company ("Ziv"), a broker dealer in Chicago that he was attempting to purchase. | Frankel Depo. 152:13-23; 155:7-156:5; 156:13-17; Exh. 20 |
| 37.<br><br>The trade blotter and Frankel's emails containing it are responsive to Request for Production number 2, which requested, "All Documents and Communications containing Plaintiffs' business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information of Plaintiffs and their clients that You sent from Your personal email addresses to yourself or anyone else since June 1, 2015." The trade blotter and Frankel's emails containing it are also responsive to Request for Production number 9, which requested, "All Documents and Communications that pertain to Your attempts, inquiries, preparations, or desire to purchase any broker-dealer since August 1, 2018." The trade blotter and Frankel's emails containing it are also responsive to Request for Production number 10, which requested, "All Documents and Communications between You and any broker-dealers that you have considered purchasing since August 1, 2018." The trade blotter and Frankel's emails containing it are also responsive | Susman Decl. ¶ 9, Exh. 3 |

| | |
|---|---|
| to Request for Production number 11, which requested, "All Documents and Communications between You and Ziv Investment Company since August 1, 2018." | |
| 38.<br><br>Frankel did not produce the confidential trade blotter in discovery in this matter. | Susman Decl. ¶ 8 |
| 39.<br><br>Nor did Frankel produce the email in which he sent the trade blotter to Ziv. | Susman Decl. ¶ 8 |
| 40.<br><br>Plaintiffs obtained this from third parties in response to subpoenas. | Susman Decl. ¶ 8 |
| 41.<br><br>Frankel sent the same confidential blotter of Alpine's trade runs to two additional broker dealers and the Depository Trust and Clearing Corporation ("DTCC"). | Susman Decl. ¶¶ 4, 5, Exh. 1 |
| 42.<br><br>Frankel did not produce these communications in discovery. | Susman Decl. ¶ 8 |
| 43.<br><br>Plaintiffs obtained Frankel's emails to third parties in response to subpoenas to those parties. | Susman Decl. ¶ 8 |
| 44.<br><br>Frankel was terminated as an employee in August 2018 and terminated as a consultant in October 2018 | Hurry Depo. 48:9-25; 56:16-18; 61:24-62:6<br><br>Frankel Depo. 22:13-20; 26:4-13 |
| 45.<br><br>Frankel emailed a confidential internal communications regarding customer fee schedules to FINRA *after* the lawsuit commenced. | Frankel Depo. 130:7-131:20 |

| | |
|---|---|
| 46.<br><br>Alpine and Scottsdale produced statements of income, trend reports, and profit & loss statements showing the loss of hundreds of thousands of dollars in revenue. | Hurry Depo. 156:4-157:13, Exhs. 29-34 |

Dated this 6th day of September 2019.

*/s/  Jordan Susman*
Charles J. Harder, Esq.
Jordan Susman, Esq.
HARDER LLP
132 South Rodeo Drive, Fourth Floor
Beverly Hills, CA  90212-2406
Tel: (424) 203-1600
Fax: (424) 203-1601
E-mail:  charder@harderllp.com
E-mail:  jsusman@harderllp.com

Kenneth G. Turkel – FBN 867233
Shane B. Vogt – FBN 257620
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel:  (813) 443-2199
Fax: (813) 443-2193
E-mail:  kturkel@bajocuva.com
E-mail:  svogt@bajocuva.com
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 6, 2019, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

<u>*/s/ Jordan Susman*</u>
Attorney