UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| THE HURRY FAMILY REVOCABLE TRUST; SCOTTSDALE CAPITAL ADVISORS CORPORATION; ALPINE SECURITIES CORPORATION, | CASE NO.: 8:18-cv-02869-VMC-CPT |
| Plaintiffs, | |
| vs. | |
| CHRISTOPHER FRANKEL, | |
| Defendant. _____/ | |
| CHRISTOPHER FRANKEL, | |
| Counter-claimant, | |
| vs. | |
| CAYMAN SECURITIES CLEARING AND TRADING LTD; THE HURRY FAMILY REVOCABLE TRUST; SCOTTSDALE CAPITAL ADVISORS CORPORATION; ALPINE SECURITIES CORPORATION, | |
| Counter-defendants. | |

## PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

Plaintiffs the Hurry Family Revocable Trust, Scottsdale Capital Advisors, and Alpine Securities Corporation (collectively "Plaintiffs"), through counsel and under Federal Rule of Evidence 201, requests judicial notice of the following evidence:

1

**Exhibit 1**: Securities and Exchange Commission Order Granting Stay of FINRA decision barring John Hurry from associating with any FINRA member firm. Admin. Proc. File No. 3-18612 (August 6, 2018).

## MEMORANDUM OF LAW

The Court may take judicial notice of facts that are not subject to reasonable dispute in that they are either "(1) generally known within the trial court's territorial jurisdiction or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b). The Court may take judicial notice of documents filed in other courts "to establish the fact of such litigation and related filings" and of orders for the purpose of "recognizing the 'judicial act' that the order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

## LOCAL RULE 3.01(G) CERTIFICATION

The undersigned counsel certifies that counsel for the Plaintiffs has conferred with counsel for the Defendant, and the Defendant does not oppose the relief requested.

/s/ Jordan Susman
Charles J. Harder, Esq.
Jordan Susman, Esq.
HARDER LLP
132 South Rodeo Drive, Fourth Floor
Beverly Hills, CA  90212-2406
Tel: (424) 203-1600
Fax: (424) 203-1601
E-mail:  charder@harderllp.com
E-mail:  jsusman@harderllp.com

Kenneth G. Turkel – FBN 867233
Shane B. Vogt – FBN 257620
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel:  (813) 443-2199

Fax: (813) 443-2193
E-mail: kturkel@bajocuva.com
E-mail: svogt@bajocuva.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 6, 2019, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

*/s/ Jordan Susman*
Attorney

# Exhibit 1

UNITED STATES OF AMERICA
before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 83783 / August 6, 2018

Admin. Proc. File No. 3-18612

---

In the Matter of the Application of

SCOTTSDALE CAPITAL ADVISORS CORPORATION,
JOHN J. HURRY, TIMOTHY B. DIBLASI, AND
D. MICHAEL CRUZ

For Review of Disciplinary Action Taken by

FINRA

---

Appeal and Stay Motion Filed:  July 23, 2018
Last Brief Received:  July 30, 2018

ORDER GRANTING STAY

John J. Hurry appeals from a FINRA decision barring him from associating with any FINRA member firm and moves to stay that decision pending our consideration of his appeal. FINRA opposes the motion. For the reasons discussed below, Hurry's motion is granted.

## I. Background

In its complaint, FINRA's Department of Enforcement alleged that Hurry violated Section 5 of the Securities Act of 1933 and therefore FINRA Rule 2010. Section 5 of the Securities Act prohibits the sale of securities in interstate commerce unless a registration statement is in effect or there is an applicable exemption from the registration requirement.[1] FINRA Rule 2010 requires the observance of "high standards of commercial honor and just and equitable principles of trade." A "violation of the Securities Act, including a sale of unregistered securities in violation of Section 5, violates Rule 2010."[2] Enforcement's complaint alleged that Hurry violated Section 5 and thus Rule 2010 because he was a "necessary participant and substantial factor" in the unregistered sale of the securities of three issuers, Neuro-Hitech, Inc.

---

[1]  15 U.S.C. § 77e(a), (c).

[2]  *KCD Fin. Inc.*, Exchange Act Release No. 80340, 2017 WL 1163328, at *4 (Mar. 29, 2017).

("NHPI"), Voip-Pal.com ("VPLM"), and Orofino Gold Corporation ("ORFG"), without an available exemption.[3]  Hurry's indirectly-owned broker-dealer, Scottsdale Capital Advisors Corporation ("SCA"), was alleged to have executed those sales on behalf of foreign financial institutions.

FINRA's National Adjudicatory Council ("NAC") disregarded Enforcement's allegation that Hurry violated Section 5 by stating that it need not address "whether Hurry was a necessary participant and substantial factor in the unlawful sales of NHPI, VPLM, and ORFG" to find that Hurry violated Rule 2010.  Instead, the NAC predicated liability on the basis that Hurry's creation, indirect ownership, control, and management of the day-to-day business of a foreign broker dealer, Cayman Securities Clearing and Trading SEZC Ltd. ("CSCT"), was unethical in violation of Rule 2010.  The NAC found that Hurry created CSCT for the sole purpose of insulating SCA from regulatory scrutiny.  It stated that Hurry founded CSCT to take from SCA the responsibility of interacting directly with the foreign financial institutions that were selling securities through SCA, that CSCT deposited securities at SCA for those foreign financial institutions, and that Hurry managed CSCT's day-to-day operations and attempted to conceal his involvement with CSCT.  The NAC did not address Hurry's contention that he created CSCT for tax purposes—that, as a foreign broker-dealer approved by the IRS as a Qualified Intermediary, CSCT could relieve the tax withholding obligations of Hurry's clearing firm, Alpine Securities Corporation ("Alpine"), with respect to transactions by foreign financial institutions.

The NAC barred Hurry from association with a FINRA member firm based on its finding of a Rule 2010 violation, and Hurry seeks to stay that bar pending his appeal to the Commission.

## II.    Analysis

A stay pending appeal is an "'extraordinary remedy.'"[4]  In deciding whether to grant a stay under Rule of Practice 401,[5] the Commission determines whether the moving party has established that a stay is warranted.[6]  The Commission considers whether:  (i) there is a strong likelihood that the moving party will eventually succeed on the merits of the appeal; (ii) the moving party will suffer irreparable harm without a stay; (iii) another party will suffer substantial harm as a result of a stay; and (iv) a stay is likely to serve the public interest.[7]  "The

---

[3]   *See SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1255 (9th Cir. 2013) ("With respect to Section 5, a defendant's role in the transaction must be a significant one before liability will attach.  Defendants play a significant role when they are both a necessary participant and substantial factor in the sales transaction.") (internal quotations and citations omitted).

[4]   *Bloomberg L.P.*, Exchange Act Release No. 83755, 2018 WL 3640780, at *7 (July 31, 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 432-434 (2009)).

[5]   17 C.F.R. § 201.401; *see also* Exchange Act Section 19(d)(2), 15 U.S.C. § 78s(d)(2) (authorizing Commission to stay challenged self-regulatory organization action).

[6]   *Bruce Zipper*, Exchange Act Release No. 82158, 2017 WL 5712555, at *6 (Nov. 27, 2017).

[7]   *Id.*

appropriateness of a stay turns on a weighing of the strengths of these four factors; not all four factors must favor a stay for a stay to be granted."[8]  "The first two factors are the most critical, but a stay decision rests on the balancing of all four factors."[9]

Under this approach, in order to obtain a stay a movant need not necessarily establish that it is likely to succeed on the merits of its appeal but must at least show "that the other factors weigh heavily in its favor" and that it has "raised a serious legal question on the merits."[10]  "In other words, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the [stay opponent] if a stay is granted, [it] is still required to show, at a minimum, serious questions going to the merits."[11]  "Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that the 'balance of the hardships tips *decidedly*' in its favor, its overall burden is no lighter than the one it bears under the 'likelihood of success' standard."[12]

We grant a stay because we find that Hurry has at least raised serious legal questions about the NAC's findings, and that the balance of hardships tips decidedly in favor of a stay.[13]

**A.    Hurry has raised a serious legal question on the merits.**

Our analysis of the merits of Hurry's appeal is preliminary.[14]  Nonetheless, at this stage we find that Hurry has raised a serious legal question as to whether FINRA provided him with fair notice of the allegation forming the basis of its finding that he violated Rule 2010.  The NAC acknowledged that Enforcement "alleged that Hurry was a 'necessary participant and substantial factor'" in "unregistered [sales] of NHPI, VPLM, and ORFG" but said it would not "examine Hurry's conduct within the construct of the necessary participant and substantial factor analysis" but rather would "examine whether Hurry's establishment of [CSCT], indirect ownership of

---

[8]     *Bloomberg*, 2018 WL 3640780, at *7.

[9]     *Id.*

[10]    *Zipper*, 2017 WL 5712555, at *6 (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392-393 (D.C. Cir. 2011)); *see also Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843-44 (D.C. Cir. 1977) (stating that the "necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other factors" and that a "court, when confronted with a case in which the other three factors strongly favor interim relief may exercise its discretion to grant a stay if the movant has made a substantial case on the merits").

[11]    *Id.* (cleaned up) (quoting *In re Revel AC, Inc.*, 802 F.3d 558, 570 (3d Cir. 2015).

[12]    *Id.* (cleaned up) (quoting *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (emphasis in original)).

[13]    *See, e.g.*, *Scattered Corp.*, 52 S.E.C. 1314, 1997 SEC LEXIS 2748, at *11-12 (Apr. 28, 1997) (granting a stay where it was "unclear . . . due to the complexity" of the case whether applicants had "a strong likelihood" of success, because the applicants had "shown this to be a substantial case on the merits and . . . the other three factors" supported a stay).

[14]    *Zipper*, 2017 WL 5712555, at *3 (citation omitted).

[CSCT], management of [CSCT's] business, control over [CSCT] and its personnel, and prospecting for [CSCT's] customers was unethical, regardless of whether Hurry was a necessary participant and substantial factor in the unlawful sales of NHPI, VPLM, and ORFG."

Hurry contends that he has a high likelihood of success on appeal because of "serious flaws" in the NAC's approach. According to Hurry, the NAC devised a new theory of liability under Rule 2010 because Enforcement could not prove, as the complaint alleged, that he violated Section 5 of the Securities Act as a "necessary participant and substantial factor" in the unregistered transactions. Hurry claims that the NAC's theory of liability under Rule 2010 was uncharged, that he therefore lacked fair notice, and that he was prejudiced because the Section 5 charges formed the basis for the presentation of his defense. In light of the factors discussed below, we need not determine the probability that Hurry will succeed on this claim at this juncture. It is sufficient that the issue of fair notice seems to be at least a serious legal question.

FINRA now admits that Hurry's conduct was "not a direct violation of Section 5." Nonetheless, FINRA contends that Hurry had adequate notice because the complaint charged him with violating "Rule 2010, not Section 5," and because the complaint "specified that it was Hurry's activities at [CSCT]" that caused the Rule 2010 violation. While FINRA is correct that Hurry was charged with only a Rule 2010 violation, it appears to be mistaken in arguing that the charge was based generally on "Hurry's activities at [CSCT]." Rather, it appears that the Rule 2010 charge was premised on Hurry's alleged underlying violation of Section 5—a violation that FINRA now admits Hurry did not commit. Whether Hurry was denied fair notice when the NAC found him liable for violating Rule 2010 on a basis that appears not to have been alleged in the complaint is a serious legal question on the merits.[15]

**B.     Hurry has shown that the remaining factors tip decidedly in favor of a stay.**

Hurry has shown that he will suffer irreparable harm without a stay. A movant "must show an injury that is 'both certain and great' and 'actual and not theoretical'" and "'must show that the alleged harm will directly result from the action which the movant seeks to [stay].'"[16]

---

15     *See* 15 U.S.C. § 78*o*-3(h)(1) (ensuring fairness in SRO disciplinary proceedings by requiring that the SRO "bring specific charges" and "notify such member or person of, and give him an opportunity to defend against, such charges"); *Wanda P. Sears*, Exchange Act Release No. 58075, 2008 WL 2597567, at *1, *3-4 (July 1, 2008) (setting aside FINRA's findings of unauthorized trades in customer accounts because the applicant "lacked adequate notice" of the claim, which was not charged in the complaint and for which Enforcement, at the hearing, "did not indicate that it sought to hold [the applicant] liable"); *see generally* FINRA Rule 9212(b) (stating that the Hearing Officer may grant a motion by Enforcement "to amend the complaint, including amendments so as to make the complaint conform to the evidence presented, after considering whether . . . Enforcement . . . has shown good cause for the amendment and whether any Respondent will suffer any unfair prejudice if the amendment is allowed").

16     *Zipper*, 2017 WL 5712555, at *4.

And the Commission has held that "the fact that an applicant may suffer financial detriment does not rise to the level of irreparable injury warranting issuance of a stay."[17]

Nonetheless, the Commission has also held that "the destruction of a business, absent a stay, is more than just 'mere' economic injury, and rises to the level of irreparable injury."[18] Hurry claims that the hardship he faces is not "finding another job or source of income pending the Commission's decision" but that in the absence of a stay the bar will harm his businesses. According to Hurry, absent a stay he "will be forced to divest his control interests in the entities within the SCA and Alpine ownership structures." He also states that "the inability of SCA and Alpine to access capital from Mr. Hurry could threaten or significantly limit ongoing operations, which could negatively impact numerous employees of those firms" as well as "the investments of thousands of customers." Hurry supports these contentions with a declaration from the manager of the holding companies for SCA and Alpine, who declares under the penalty of perjury that if "SCA and Alpine lose access to funds associated with Mr. Hurry, SCA and Alpine will likely be forced to cut staff and will likely become insolvent, causing the loss of a large percentage of jobs and the stoppage and closure of many customer accounts." In light of this declaration, Hurry's claim that he will suffer harm absent a stay does not appear merely theoretical or speculative. Hurry also contends that there would be "no practical way to undo those consequences should [he] ultimately prevail on appeal," and FINRA does not dispute this.

Nor does FINRA dispute Hurry's contention that he will likely be forced to divest control of SCA and Alpine if a stay is denied.[19] Rather, it asserts that "Hurry's position that loss of corporate control can qualify as irreparable harm has never been adopted by the Commission." But the Second Circuit has stated as a "general principle[]" that "denial of a controlling ownership interest in a corporation may constitute irreparable harm."[20] In any case, we need not address whether the loss of corporate control constitutes irreparable harm here. FINRA has not addressed Hurry's contention that his businesses would be threatened if they are cut off from his capital. As discussed above, this contention presents a credible claim of irreparable harm.[21]

---

[17] *Robert J. Prager*, Exchange Act Release No. 50634, 2004 WL 2480717, at *1 (Nov. 4, 2004).

[18] *Scattered Corp.*, 1997 SEC LEXIS 2748, at *15; *accord Atlantis Internet Grp. Corp.*, Exchange Act Release No. 70620, 2013 WL 5519826, at *5 n.14 (Oct. 7, 2013); *see also Wash. Metro. Area Transit Comm'n*, 559 F.2d at 843 (stating that the destruction of a business constituted "irreparable injury" for purposes of stay of permanent injunction).

[19] *See* FINRA Rule 8311 (providing that "[i]f a person is subject to a . . . bar from association with a member . . . a member shall not allow such person to be associated with it in any capacity that is inconsistent with the sanction imposed").

[20] *Wisdom Import Sales Co., LLC v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 114 (2d Cir. 2003).

[21] *Zipper*, 2017 WL 5712555, at *4; *see also Scattered Corp.*, 1997 SEC LEXIS 2748, at *15 (finding "credible [movant]'s contention that an immediate expulsion might destroy its business and have dire consequences for its employees and for the securities for which it makes

(*continued ...*)

With respect to the remaining factors, at this early stage we cannot find that granting a stay would substantially harm other persons or be contrary to the public interest. FINRA contends that the NAC's finding that Hurry violated Rule 2010 through egregious misconduct demonstrates that Hurry poses a threat to investors and the securities markets. But Hurry has raised serious legal questions concerning that finding.[22] FINRA also contends that staying the bar would provide "Hurry with unfettered access to [SCA] and would allow Hurry to direct [SCA's] employees and activities with the potential to continue to flood the US markets with millions of shares of unregistered microcap securities." But FINRA acknowledges that it did not find that Hurry was a necessary participant or substantial factor in the sale of unregistered securities in violation of Section 5.

The Commission "may grant a stay in whole or in part, and may condition relief . . . upon such terms, or upon the implementation of such procedures, as it deems appropriate."[23] Hurry states that he "would be amenable to the Commission conditioning a stay on his commitment to remain uninvolved in the stock deposit review process or from otherwise managing the affairs of [SCA or Alpine] or of any other SEC registered broker-dealer during the pendency of the Commission's review of this matter." FINRA does not suggest any other conditions. The conditions Hurry consents to would protect the public while the Commission considers the merits of Hurry's appeal. Thus, a stay under these conditions would prevent irreparable harm should he prevail in his appeal and would not harm investors and the securities markets.

\* \* \*

Any "[f]inal resolution must await the Commission's determination of the merits of [Hurry's] appeal."[24] Nonetheless, at this point Hurry has raised serious legal questions on the merits and has shown that the balance of the hardships tips decidedly in favor of a stay. Accordingly, IT IS ORDERED that Hurry's motion for a stay is granted subject to the condition that he "remain uninvolved in the stock deposit review process" and otherwise refrain from

---

(... *continued*)
markets"). S*ee generally Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (finding "irreparable harm where a party is threatened with the loss of a business" because "the right to continue a business 'is not measurable entirely in monetary terms'"); *Atwood Turnkey Drilling, Inc. v. Petroleo Brasilerio, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989) (finding irreparable harm where the absence of a stay would "threaten the existence of the movant's business") (collecting cases); *Tri-State Generation and Transmission Ass'n Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 356 (10th Cir. 1986) (stating that a "threat to trade or business viability may constitute irreparable harm") (collecting cases).

[22]   *See Scattered Corp.*, 1997 SEC LEXIS 2748, at \*14-15 (rejecting SRO's argument that the permanent bar and expulsion it imposed on the applicants showed that a stay of those sanctions could result in public injury because the applicants had shown "a substantial case on the merits" as to the violations upon which those sanctions were based).

[23]   Rule of Practice 401(b), 17 C.F.R § 201.401(b).

[24]   *Bloomberg*, 2018 WL 3640780, at \*7 (citation omitted).

7

"managing the affairs of [SCA or Alpine] or of any other SEC registered broker-dealer during the pendency of the Commission's review of this matter."[25]

       For the Commission, by the Office of the General Counsel, pursuant to delegated authority.

                                          Brent J. Fields
                                          Secretary

---

[25] FINRA moves to strike the reply brief Hurry filed in support of his stay request on the ground that Rule of Practice 401(d)(3) prohibited its filing. We deny FINRA's motion because Rule of Practice 154(b) permits the filing of reply briefs in response to oppositions to motions, and such reply briefs are not prohibited by Rule 401(d)(3). 17 C.F.R. §§ 201.154(b), 401(d)(3).