UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE HURRY FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

    Plaintiffs,

v.                                                  Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

    Defendant.
_____/

CHRISTOPHER L. FRANKEL,

    Counter-claimant,

v.

CAYMAN SECURITIES CLEARING
AND TRADING LTD; THE HURRY
FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

    Counter-defendants.
_____/

**FRANKEL'S REPLY TO PLAINTIFFS' OPPOSITION (DOC. 126) TO FRANKEL'S MOTION FOR SUMMARY JUDGMENT**

    The defendant, Christopher L. Frankel ("**Frankel**"), replies to the opposition (Doc. 126) of the three remaining plaintiffs, Hurry Family Revocable Trust ("**Hurry Trust**"), Scottsdale Capital Advisors Corporation ("**Scottsdale**"), and Alpine Securities Corporation ("**Alpine**"), to Frankel's motion for summary judgment (Doc. 118). Frankel continues to request summary judgment on all four counts of the second amended complaint (Doc. 61).

The plaintiffs characterize Frankel's motion for summary judgment as "misguided" "baseless" "risible" "misleading" and "disingenuous." (Doc. 126 at 3, 8, 10, 11). The plaintiffs assert that Frankel's admissions preclude entry of summary judgment when, in fact, the plaintiffs' admissions require entry of summary judgment.[1]

## I.   SUMMARY JUDGMENT ON HURRY TRUST'S CLAIM

### A.   Hurry Trust is not a "Discloser" and has no claim under the Original NDA.

The plaintiffs admit that Frankel's confidentiality obligations in the Original NDA extended only to the "Discloser." (Doc. 126-1 at 3 (admitting Doc. 118, ¶ 20)). The Original NDA identified the parties to the Agreement as "Recipient" and "Discloser":

> This NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT (the "Agreement") is made as of June 22nd, 2015, by Christopher Lee Frankel (the "Recipient") and SCOTTSDALE CAPITAL ADVISORS CORPORATION, an Arizona corporation, Alpine Securities Corporation, an [sic] Utah corporation, Cayman Securities Clearing and Trading LTD[,] a Cayman Limited Company[,] and any associated company of the Hurry Revocable Trust (the "Discloser").

(Doc. 61 at 19).

Thus, the Original NDA defined "Discloser" as specified companies, Scottsdale, Alpine, Cayman Securities, "and any associated *company* of the Hurry Family Revocable Trust." (Doc. 61 at 19 (italics added)). The Hurry Family Revocable Trust is a trust, not a company, and certainly not an "associated company of the Hurry Family Revocable Trust." (Doc. 61 at 19). Hurry Trust had no employment relationship with Frankel. (Frankel Decl. ¶ 17 (Doc. 16-1)). The Hurry Trust's only claim in the Second Amended Complaint is for breach the Original NDA, and Hurry Trust has no claim under the Original NDA.

---

[1] See Doc. 128-1 for Frankel's point-by-point reply to (Doc. 126-1) Plaintiffs' Response to Frankel's Material Facts and Additional Material Facts.

2

**B.      Hurry Trust ignored Frankel's offer to return documents and did not allow Frankel ten business days to return documents as required under the Original NDA.**

Frankel did not breach the Original NDA because Hurry Trust ignored his offer to return documents and did not give him the required ten business days to do so. Frankel received the plaintiffs' letter demanding return of their confidential information on Friday, November 9, 2018. (Doc. 126-1 at 4 (admitting Doc. 118, ¶ 33)). Section 5 of the Original NDA gave Frankel "ten (10) business days of receipt of the Discloser's written request … [to] return to the Discloser all documents, records and copies thereof containing Confidential Information." (Doc. 61 at 25). But the plaintiffs did not give Frankel ten business days to return their documents.

On Monday, November 12, the next business day after Frankel received the plaintiffs' request, Frankel sent plaintiffs' counsel an email offering to return documents which the plaintiffs considered confidential, or all of their documents, if they could not determine which documents they considered confidential. (Doc. 126-1 at 4 (admitting Doc. 118, ¶¶ 33, 34)). Frankel's email asked plaintiffs' counsel to let him know what the plaintiffs wanted him to do. *Id.* The plaintiffs ignored Frankel's e-mail, and instead sued him on November 21, 2018, eight business days after Frankel received the demand letter. (Doc. 1; Doc. 126-1 at 4 (admitting Doc. 118, ¶ 34)). *The plaintiffs sued Frankel less than ten business days after* demanding return of their confidential documents. (Doc. 1).

The plaintiffs never told Frankel what documents to return, and the plaintiffs did not give Frankel ten business days to return their documents. Thus, the plaintiffs cannot prove that Frankel breached the Original NDA by failing to return Hurry Trust's documents within ten business days. *See Williams v. Nall*, 420 P.2d 988, 992 (Ariz. Ct. App. 1966) ("[T]he one who prevents performance of a contract may not complain of such nonperformance." (citing 17A C.J.S. Contracts s. 468; 17 Am.Jur.2d Contracts s. 426)).

3

### C. Hurry Trust has not suffered any loss or injury.

Frankel was waiting for the plaintiffs to tell him which documents to return when they sued him. (Doc. 16-1, ¶ 20; Doc. 126-1 at 4 (admitting Doc. 118, ¶ 34)). After the plaintiffs sued, Frankel retained a forensic firm to retrieve all of the documents he received from the plaintiffs, produced the documents to the plaintiffs with his initial disclosures, then deleted the documents. (Doc. 35-3; Frankel Dep. 47:9–48: 3 (Doc. 116)). The plaintiffs have adduced no evidence of any loss or injury to Hurry Trust, and Hurry Trust has no damages.

The plaintiffs' opposition to summary judgment quotes California law that "nominal damages are properly awarded . . . [w]here there is no loss or injury to be compensated." (Doc. 126 at 9 (quoting *Avina v. Spurlock*, 28 Cal. app. 3d 1086, 105 Cal. Rptr. 198, 200 (1972)). But this is contrary to Arizona law, which only allows nominal damages if there are "actual damages" that are "slight or difficult to calculate." *Firetrace USA, LLC v. Jesclard*, No. CV-07-2001, 2010 WL 3523067, at *1–3 (D. Ariz. Sep. 3, 2010). The plaintiffs admit Arizona law is "controlling" and cite *Firetrace USA*, which requires plaintiffs seeking nominal damages to first show that "they have suffered (or will suffer) an injury of some kind." (Doc. 126 at 9). The plaintiffs have adduced no evidence of any loss or injury to Hurry Trust. The Hurry Trust has no actual damages and therefore is not entitled to nominal damages. *See Firetrace USA*, 2010 WL 3523067 at *1–3.

## II. SUMMARY JUDGMENT ON ALPINE AND SCOTTSDALE'S CLAIMS

### A. Frankel's emails to his personal account are not actionable.

The plaintiffs argue that "Frankel secretly sent over a dozen of Plaintiffs' confidential documents to his personal email account." (Doc. 126 at 1). It was no secret that Frankel sent emails to his personal email address so that he could print them and work on them using his

home computer. (Frankel Dep. 81:9–82:10 (Doc. 116)). Alpine permitted employees to work remotely from their personal computers. (*E.g.*, Jarvis Decl. ¶ 4 (Doc. 128-2)).

Alpine's employees worked remotely from their own computers or devices, and it was common for Alpine's employees to forward emails from their Alpine accounts to their personal accounts. (Jarvis Decl. ¶¶ 5, 6 (Doc. 128-2)). Alpine has a record of each time an employee forwards an email from their Alpine account to their personal account—FINRA and the SEC required Alpine to save all of its employees' emails and Alpine did so. (Hurry Dep. 96:10–23 (Doc. 115)). Thus, it was no secret that Frankel sent emails from his Alpine account to his personal account.

There is no evidence that Frankel disclosed to third parties or used for his own benefit any of the emails that Frankel forwarded to his personal account. Thus, the plaintiffs do not have a claim for misappropriation under DTSA or FUTSA, nor do they have a claim for breach of section 2 of the Employee NDA based on the emails. So the plaintiffs have now pivoted to section 6(f)(7) of the Employee NDA, which they argue that Frankel violated each time he forwarded an email to his personal account. (Doc. 126 at 2, 9). But section 6(f)(7) of the Employee NDA only prohibits transmission of information outside the Company:

> Prohibited actions using Company's ECS include, but are not limited to the following: . . . transmitting confidential patient, business, or risk management information to any non-Company email address.

(Doc. 61 at 23). Section 6(f)(7) does not prohibit internal transmission of the Company's information to persons who work for the Company; nor does it prohibit a person who works for the company from forwarding an email to his personal account. (Doc. 61 at 23).

The plaintiffs' argument depends on construing section 6(f)(7) as prohibiting Alpine's employees from sending the Company's information to any email account other than *alpine-securities.com*, even if the recipient is an employee of Alpine. (Doc. 126 at 2, 9). This

5

construction is inconsistent, however, with how Alpine actually operated. For example, Frankel and other Alpine employees' job responsibilities included sending emails containing Alpine's information to, among others: John Hurry, via email to jhurry@jhurry.com; Mike Cruz, via email to mike@scalawyer.com; and Richard Nummi, via email to rnummi@mac.com. (*E.g.*, Jarvis Decl. ¶ 7 (Doc. 128-2)). Each of these emails would be a violation of section 6(f)(7) of the Employee NDA, according to the plaintiffs' argument. The more reasonable construction is that section 6(f)(7) only prohibits transmission of information outside the Company. *See generally United Calif. Bank v. Prudential Ins. Co. of Am.*, 681 P.2d 390, 418 (Ariz. Ct. App. 1983) ("The acts of the parties themselves, before disputes arise, are the best evidence of the meaning of doubtful contractual terms."). Thus, Frankel did not breach section 6(f)(7) of the Employee NDA by sending emails from his Alpine account to his personal account.

Nor did Frankel breach section 4 of the Employee NDA by failing to return the emails sent to his personal account. As discussed above, Frankel offered to return documents to the plaintiffs and was waiting for the plaintiffs to tell him which documents to return when they sued him. (Doc. 16-1, ¶ 20; Doc. 126-1 at 4 (admitting Doc. 118, ¶ 34)). Frankel even offered to return all of the documents he ever received from the plaintiffs if they did not wish to identify the documents that they were requesting for him to return. *Id.* But the plaintiffs ignored his offer.

**B.      Frankel did not disclose any confidential information to third parties.**

The plaintiffs argue that Frankel breached the Employee NDA and violated DTSA and FUTSA by disclosing to third parties a blotter of Alpine's trades. (Doc. 126 at 10, 12). But the plaintiffs did not identify the trade blotter as the subject of their misappropriation claims in their second amended complaint. (Doc. 61). Nor did the plaintiffs include the trade blotter in their interrogatory answers listing the documents which they claim are confidential and were misappropriated. (Doc. 118-8 at 2–3).

The trade blotter is not Confidential Information protected under the Employee NDA because Frankel did not receive the blotter "in the performance of [his] job duties with Company [Alpine]." (Doc. 61 at 22, § 1; Frankel Dep. 152:15–153:19 (Doc. 116)). Frankel obtained the blotter after his employment and non-exclusive consulting relationship with Alpine had concluded. (Frankel Dep. 152:15–153:19 (Doc. 116)).

Furthermore, as John Hurry acknowledged in testifying as corporate representative for all of the plaintiffs on August 7, 2019, two days before the close of discovery, the trade blotter by itself is not confidential. (Hurry Dep. 83:15–24 (Doc. 115)). The trades listed on the blotter are publicly available. (Frankel Dep. 153:23–155:6 (Doc. 116)). The trade blotter does not disclose the customers who made the trades or the broker-dealer. (Hurry Dep. Ex. 20).

Hurry explained that customer information, combined with the blotter, makes the blotter confidential and potentially useful to a competitor. "[I]f you know all the customers and all the trades, you have information that the market does not have." (Hurry Dep. at 83:15–24 (Doc. 115)). Hurry, as corporate representative, conceded that he did not know whether Frankel had disclosed the customer information necessary to make the blotter confidential or potentially useful to competitor: "It looks like, since we are speculating, that Chris Frankel is essentially telling Ziv that he's going to basically take all of Alpine's business and giving them a sample of all the business he's going to take, because he knows all the customers and basically ran Alpine, has access to all kinds of confidential trade secrets that he can just move it over." (Hurry Dep. at 84:16–25 (Doc. 115)).

When asked why the trade blotter would be useful to a third party, Hurry again speculated: "I think Chris was trying to convey, since we are speculating, that he could simply take all of Alpine's business because he was the CEO and had all this information, confidential

7

and trade secret, that he could just move it over from Alpine to Ziv, based on his deal with Ziv, that Ziv would somehow benefit from this." (Hurry Dep. 85:19–25; 86:1–2 (Doc. 115)).

### C. Frankel did not use any confidential information for his own benefit.

The plaintiffs argue that Frankel breached the Employee NDA by using their credit term sheet and financial documents. (Doc. 126 at 9, 12). But there is no evidence that Frankel used the credit term sheet or financial documents.

**Term sheet**: Frankel testified that he thought about using the credit term sheet's template but never actually used the template. (Frankel Dep. 62:10–15 (Doc. 116)) ("I thought about using this template to draft an idea to raise capital. But I never attempted to raise any capital or solicited any capital. It wasn't going to be this exact structure at all. But, you know, the template in terms of borrower, lender, instrument, maturity, that type of thing."). Frankel did not even think about using anything other than the document's template. *Id.* And he never actually used the document's template. *Id.*

**Financial documents**: Frankel testified that he forwarded himself emails attaching the financial documents so that he would have the contact information for the email's recipients, whom he had known for 20-plus years. (Frankel Dep. 44:8–13; 121:5–16 (Doc. 116)). Frankel did not use or disclose any of the other information in or attached to the emails. (Frankel Dep. 44:17–18; 117:11–14; 170:7–171:4 (Doc. 116)). The contacts were not "Confidential Information" under the Employee NDA because they were known to Frankel before his employment with Alpine. ((Doc. 61 at 22, § 2(a)).

### III. THE PLAINTIFFS HAVE ADDUCED NO EVIDENCE OF HARM OR DAMAGE.

The plaintiffs have adduced no evidence to show harm or damage. In their initial disclosures, the plaintiffs admitted that they had no knowledge of any damages or losses caused

by Frankel. (Doc 35-2). At the close of discovery, the plaintiffs still had not adduced evidence of harm or damage. When asked whether the plaintiffs had done any damage analysis, Hurry, as their corporate representative, testified: "We've looked at the evidence and the timeline, and we've seen revenues significantly drop accordingly. At this point, without having the full discovery, we are still piecing that together." (Hurry Dep. 155:14–20 (Doc. 115)). When asked when the damage analysis would be done and who would do it, Hurry responded: "It's in the process." (Hurry Dep. 173:24–174:1 (Doc. 115)). When asked whether exhibits 29 through 33 were the documents that plaintiffs would use to determine their damages, Hurry testified "they certainly could be some of them." (Hurry Dep. 174:10–13 (Doc. 115)).

Hurry acknowledged that the plaintiffs had received adverse publicity and regulatory scrutiny which "had not been helpful." (Hurry Dep. 192:7–23 (Doc. 115)). Hurry acknowledged that the extraordinary Common Area Maintenance charge, for which FINRA had sued and challenged as an unauthorized capital extraction, may have rendered Alpine at least temporarily unprofitable, but that Alpine had nonetheless "been able to pay all the bills and stay in capital." (Hurry Dep. 202:12–25; 203:1–19 (Doc. 115)). The plaintiffs clearly had not done and could not offer any meaningful damage analysis which had factored in the numerous variables which potentially could have affected the plaintiffs' revenue and profits since Alpine terminated Frankel's employment at the end of July 2018.

The plaintiffs asserted they needed an expert witness "to opine on the value of the confidential information misappropriated and misused by Defendant as well as Plaintiffs' damages" (Doc 83 at 3), but the plaintiffs never offered an expert opinion valuing their allegedly misappropriated information or determining damages. The plaintiffs had not even determined by the close of discovery what information should be utilized to determine whether any speculative

wrongdoing by Frankel could have harmed or damaged them. (Hurry Dep. 174:10–13 (Doc. 115)).

WHEREFORE, Frankel requests entry of summary judgment on all four counts of the remaining plaintiffs' second amended complaint.

Dated: September 20, 2019     By:   */s/Harold D. Holder*
David C. Banker (Fla. Bar No. 352977)
Harold D. Holder (Fla. Bar No. 118733)
BUSH ROSS, PA
1801 N. Highland Avenue
Tampa, Florida 33602
Phone: 813-224-9255
Fax:    813-223-9620
Primary: dbanker@bushross.com;
hholder@bushross.com
Secondary: aflowers@bushross.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 20, 2019, all counsel of record who consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/EFC participants:

Shane B. Vogt, Esquire
Kenneth G. Turkel, Esquire
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, FL  33602
kturkel@bajocuva.com
svogt@bajocuva.com

Charles J. Harder, Esquire
Jordan Susman, Esquire
HARDER LLP
132 South Rodeo Drive, Suite 301
Beverly Hills, CA 90212-2406
charder@harderllp.com
jsusman@harderllp.com
*Attorneys for Plaintiffs*

By: /s/*Harold D. Holder*

10