UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE HURRY FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

    Plaintiffs,

v.                                            Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

    Defendant.
_____/

CHRISTOPHER L. FRANKEL,

    Counter-claimant,

v.

CAYMAN SECURITIES CLEARING
AND TRADING LTD; THE HURRY
FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

    Counter-defendants.
_____/

**FRANKEL'S RESPONSE TO
(DOC. 114) PLAINTIFFS' MOTION
FOR SUMMARY ADJUDICATION**

I.     **INTRODUCTION**

The defendant, Christopher L. Frankel ("Frankel") requests an order denying the motion for summary adjudication (Doc. 114) filed by the remaining plaintiffs, The Hurry Family Revocable Trust ("**Hurry Trust**"), Alpine Securities Corporation ("**Alpine**"), and Scottsdale Capital Advisors Corporation ("**Scottsdale**").

The plaintiffs tellingly seek summary adjudication only on the issue of Frankel's liability for allegedly breaching two non-disclosure agreements. The plaintiffs argue that they will be entitled to nominal damages. But under Arizona law, the plaintiffs will not be entitled to recover nominal damages because they cannot establish any actual damages. The remedy of nominal damages does not relieve the plaintiffs of their burden of proving that Frankel caused them to suffer an injury or loss. The plaintiffs have not met this burden and therefore are not entitled to summary adjudication on the issue of Frankel's liability.

Furthermore, the plaintiffs have not met their burden of establishing that Frankel breached either of the non-disclosure agreements.

Hurry Trust's claim is for breach of the Original NDA. But Hurry Trust has no rights or claim under the Original NDA because Hurry Trust is not included as a "Discloser" under the Original NDA. Frankel did not breach the Original NDA by failing to return documents to Hurry Trust. Hurry Trust ignored Frankel's timely offer to return documents and sued him before expiration of ten business days, the time period allowed for returning documents.

Scottsdale and Alpine's claim is for breach of the Employee NDA.  Scottsdale and Alpine argue that Frankel "(i) access[ed] Alpine's documents for his personal use, (ii) email[ed] the Plaintiffs' documents to his personal email address, and (iii) distribut[ed] Alpine's confidential information to third parties." (Doc. 114 at p. 1).  There is no evidence that Frankel

used for his own benefit or disclosed to third parties any of Scottsdale or Alpine's confidential information. Furthermore, Scottsdale and Alpine did not sue for breach of the computer use provision. And even if they had sued under the computer use provision, it does not prohibit Frankel from emailing documents to his personal email address to work for Alpine. Finally, Scottsdale and Alpine have not established that Frankel breached the Employee NDA by failing to return documents. At minimum, a myriad of factual disputes precludes partial summary judgment for the plaintiffs.[1]

## II.   STATEMENT OF MATERIAL FACTS

1.   Frankel incorporates the material facts set forth in his motion for summary judgment (Doc. 118) and his reply to the plaintiffs' response to his material facts (Doc. 128-1).

2.   The plaintiffs attached to their motion for summary adjudication a statement of material facts (Doc. 114-1), to which Frankel has responded in the attached chart that includes record citations refuting the plaintiffs' material facts. (Doc. 131-1).

### *Frankel Timely and Promptly Offered to Return Documents under the Original NDA, the Agreement that the Plaintiffs Said Controlled*

3.   Hurry Trust's claim is under the Non-Disclosure and Confidentiality Agreement identified in the second amended complaint as the "Original NDA" and attached thereto as Exhibit 1. (Doc. 61, at 3, ¶ 12, at 19, Ex. 1).

4.   Hurry Trust is not a company. (Hurry Dep. Ex. 7 at 1571, 1573 (Doc. 115)).

5.   The Original NDA's definition of "Discloser" did not include Hurry Trust. (Doc. 61 at 19).

---

[1] The undisputed facts support entry of summary judgment against the plaintiffs on all four counts of their second amended complaint, as discussed in Frankel's motion for summary judgment (Doc. 118) and his reply (Doc. 128) to the plaintiffs' opposition to summary judgment.

6. On November 9, 2018, the Hurry Trust sent Frankel a letter requesting that Frankel return documents under the Original NDA. (Doc. 16-1, ¶ 18; Doc. 16-4).

7. The Original NDA allows ten business days to comply with a request for the return of documents. (Doc. 61 at 20, § 5).

8. On November 12, 2018, the next business day after Frankel received Hurry Trust's letter, Frankel offered to return documents. (Doc. 16-1, ¶ 19, Doc. 16-5).

9. Frankel asked which documents to return and offered to return all documents that he received from the plaintiffs if they did not want to specify which documents to return. (Doc. 16-5).

10. Hurry Trust never responded to Frankel's offer. (Doc. 16-1, ¶ 20).

11. On November 21, 2018, less than ten business days after sending Frankel the letter requesting that he return documents under the Original NDA, Hurry Trust filed the original complaint in this case. (Doc. 1).

12. The documents that are the subject of Hurry Trust's claims are documents intended to be presented to third parties to show who has authority to deal with third parties on Hurry Trust's behalf. (Hurry Dep. 111:12–112:30 (Doc. 115)).

13. With respect to the documents that are the subject of Hurry Trust's claims, John Hurry, testifying on Hurry Trust's behalf as its corporate representative, could not explain how the documents might possibly be used to the advantage of Frankel or any other broker dealer; nor could Hurry explain how the documents might possibly be used to the disadvantage of Hurry Trust. (Hurry Dep. 112:21–113:17 (Doc. 115)).

14. When Frankel's employment as CEO of Alpine ended, neither Alpine nor Scottsdale requested that Frankel return any of their documents. (Doc. 16-1, ¶¶ 9–12, 18).

15. When Frankel's employment as CEO of Alpine ended, he continued working as a non-exclusive consultant for Alpine. (Doc. 16-1, ¶ 12).

16. After Frankel stopped working as a non-exclusive consultant for Alpine, Frankel received, on November 9, 2018, a letter from Alpine and Scottsdale requesting that he return documents. (Doc. 16-1, ¶ 18; Doc. 16-4).

17. Alpine and Scottsdale enclosed the Original NDA with their letter requesting that Frankel return documents. (Doc. 16-4).

18. Alpine and Scottsdale's letter to Frankel stated that "the [Original NDA] requires you to return any and all documents, records, and copies that contain Confidential Information within ten (10) business days of written request for the same." (Doc. 16-4).

19. On November 12, 2018, the next business day after Frankel received Alpine and Scottsdale's letter, Frankel offered to return documents. (Doc. 16-1, ¶ 19, Doc. 16-5).

20. Frankel asked which documents to return and offered to return all documents that he received from the plaintiffs if they did not want to specify which documents to return. (Doc. 16-5).

21. Neither Alpine nor Scottsdale responded to Frankel's offer. (Doc. 16-1, ¶ 20).

22. On November 21, 2018, less than ten business days after sending Frankel the letter requesting that he return documents under the Original NDA, Alpine and Scottsdale filed the original complaint in this case. (Doc. 1).

23. Alpine and Scottsdale's letter requesting that Frankel return documents did not reference the Employee NDA. (Doc. 16-4).

24.     Alpine and Scottsdale did not allege in the original complaint (Doc. 1), or even their first amended complaint (Doc. 37), that Frankel breached the Employee NDA by failing to return documents.

*Frankel Did Not Breach the Employee NDA Computer Use Provision*

25.     Alpine and Scottsdale claim that Frankel breached the Employee NDA's computer use provision in section 6 of the Employee NDA by sending emails from his @alpine-securities.com email account to his personal email account.

26.     Alpine and Scottsdale did not allege in the original complaint (Doc. 1), the first amended complaint (Doc. 37), or even the second amended complaint (Doc. 61) that Frankel breached section 6 of the Employee NDA.

27.     The second amended complaint only alleged that Frankel breached sections 2 and 3 of the Employee NDA. (Doc. 61, ¶¶ 41–43).

28.     Alpine permitted its employees to work remotely on Alpine's business from their personal computers that were not owned by Alpine. (*E.g.*, Doc. 128-2, ¶ 4).

29.     Alpine employees often worked remotely, in most instances from their own personal computers or devices that were not owned by Alpine. (*E.g.*, Doc. 128-2, ¶ 5).

30.     Alpine employees commonly forwarded emails from their Alpine email accounts to their personal email accounts to work on Alpine's business. (*E.g.*, Doc. 128-2, ¶ 6).

31.     Alpine employees' job responsibilities included sending (and it was common for Alpine employees to send) emails about Alpine to: John Hurry, via his non-Company email: jhurry@jhurry.com; Mike Cruz, via his non-Company email: mike@scawlawyer.com; and Richard Nummi, via his non-Company email: rnummi@mac.com. (*E.g.*, Doc. 128-2, ¶ 7).

32. By law, Alpine must save and archive all emails including employee emails from Alpine email addresses to their personal email adresses—FINRA and the SEC required Alpine to save and archive all of its employee emails, and Alpine did so. (Hurry Dep. 96:10–23 (Doc. 115)).

*Frankel Did Not Use or Disclose Any Confidential Information*

33. Alpine and Scottsdale claim that Frankel used for his own benefit the credit term sheet included as an attachment in the email marked as Exhibit 6 to Frankel's deposition and as Exhibit 13 to Hurry's deposition (the "**Term Sheet**").

34. Frankel testified that he thought about using the Term Sheet as a template, but did not do so. (Frankel Dep. 62:10–15 (Doc. 116)).

35. Alpine and Scottsdale claim that Frankel used for his own benefit financial documents that were included as attachments in the email marked as Exhibit 12 to Frankel's deposition and as Exhibit 7 to Hurry's deposition (the "**Financial Documents**").

36. Frankel testified that he forwarded himself emails attaching the Financial Documents simply because he wanted current contact information for Acsensus employees with whom he had worked for 20-plus years. (Frankel Dep. 44:8–13; 121:5–16 (Doc. 116)). Frankel did not use or disclose the Financial Documents or any of the other information in or attached to the emails. (Frankel Dep. 44:17–18; 117:11–14; 170:7–171:4 (Doc. 116)). The identities and Acsensus contact information were not Alpine's or Scottsdale's "Confidential Information" under the Employee NDA and were known to Frankel before his employment with Alpine. ((Doc. 61 at 22, § 2(a)).

37.     Alpine and Scottsdale claim that Frankel disclosed to third parties a blotter of Alpine's trades marked as Exhibit 20 to Frankel's deposition and Exhibit 5 to Hurry's deposition (the "**Trade Blotter**").

38.     The Employee NDA governed information provided to Employee "[i]n the performance of Employee's job duties with Company." (Doc. 61 at 22, § 1).

39.     Frankel did not receive the Trade Blotter "in the performance of [his] job duties with Company." (Frankel Dep. 152:15–153:19 (Doc. 116)).

40.     Frankel received the Trade Blotter after his employment as CEO and his engagement as a non-exclusive consultant ended. (Frankel Dep. 152:15–153:19 (Doc. 116)).

41.     Frankel asked Randy Jones for a sample trade blotter, and Jones sent Frankel a sample blotter. (Frankel Dep. 152:15–153:19 (Doc. 116)).

42.     The Trade Blotter does not include any confidential information of Alpine and did not reference Alpine or any customers. (Frankel Dep. Ex. 10; Hurry Dep. Ex. 5).

43.     All of the trade data in the blotter is publicly available. (Frankel Dep. 153:23–155:6 (Doc. 116)). The only thing that would be different if the trade information was obtained from a public source would be the format. *Id.*

44.     Hurry acknowledged that the blotter does not identify Alpine or the customers who made the trades, and that the blotter is only confidential if coupled with identification of the customers who made the trades. (Hurry Dep. 90:15–91:10 (Doc. 115)).

45.     There is no evidence that Frankel ever received the information on the customers that made the trades in the blotter, let alone any evidence that Frankel disclosed such information to any third party.

III.     ARGUMENT

    A.     **Hurry Trust's claim under the Original NDA**

Frankel's confidentiality obligations in the Original NDA extended only to the "Discloser." (Doc. 126-1 at 3 (admitting Doc. 118, ¶ 20)). The Original NDA identified the parties to the Agreement as "Recipient" and "Discloser":

> This NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT (the "Agreement") is made as of June 22<u>nd</u>, 2015, by <u>Christopher Lee Frankel</u> (the "Recipient") and SCOTTSDALE CAPITAL ADVISORS CORPORATION, an Arizona corporation, Alpine Securities Corporation, an [sic] Utah corporation, Cayman Securities Clearing and Trading LTD[,] a Cayman Limited Company[,] and any associated company of the Hurry Revocable Trust (the "Discloser").

(Doc. 61 at 19). Thus, the Original NDA defined "Discloser" as specified companies, Scottsdale, Alpine, Cayman Securities, "and any associated *company* of the Hurry Family Revocable Trust." (Doc. 61 at 19 (italics added)).

Hurry Trust is a trust, not a company, and certainly not an "associated company of the Hurry Family Revocable Trust." (Doc. 61 at 19). Hurry Trust had no employment relationship with Frankel. (Frankel Decl. ¶ 17 (Doc. 16-1)). Thus, Frankel had no obligation to Hurry Trust under the Original NDA, and Hurry Trust may not bring a claim under the Original NDA.

Furthermore, Frankel timely offered to return documents to Hurry Trust, but Hurry Trust ignored Frankel's offer to return documents and did not give him the required ten business days to do so. Section 5 of the Original NDA gave Frankel "ten (10) business days of receipt of the Discloser's written request … [to] return to the Discloser all documents, records and copies thereof containing Confidential Information." (Doc. 61 at 25).

Frankel received the Hurry Trust's request on Friday, November 9, 2018. (Doc. 126-1 at 4 (admitting Doc. 118, ¶ 33)). On Monday, November 12, the next business day after Frankel received the plaintiffs' demand, Frankel sent plaintiffs' counsel an email offering to return

9

documents which the plaintiffs considered confidential, or all of their documents, if they could not determine which documents they considered confidential. (Doc. 126-1 at 4 (admitting Doc. 118, ¶¶ 33, 34)). The plaintiffs ignored Frankel's e-mail, and instead sued him on November 21, 2018, eight business days after Frankel received the demand letter. (Doc. 1; Doc. 126-1 at 4 (admitting Doc. 118, ¶ 34)).

Hurry Trust did not tell Frankel what documents to return and did not give Frankel ten business days to return documents. Thus, Hurry Trust has not established that Frankel breached the Original NDA. *See Williams v. Nall*, 420 P.2d 988, 992 (Ariz. Ct. App. 1966) ("[T]he one who prevents performance of a contract may not complain of such nonperformance." (citing 17A C.J.S. Contracts s. 468; 17 Am.Jur.2d Contracts s. 426)).

### B. Alpine and Scottsdale's claim under the Employee NDA.

#### 1. There is no evidence that Frankel used or disclosed confidential information in violation of section 2 of the Employee NDA.

In their motion, the plaintiffs argue that Frankel breached section 2 of the Employee NDA by using confidential information for his own benefit (Doc. 114 at 9). The only evidence they cite is Frankel's deposition testimony. (Doc. 114-1, ¶ 16). But none of the cited testimony establishes that Frankel used confidential information for his own benefit. (*See* Doc. 131-1 (addressing in detail each portion of testimony cited and refuting the plaintiffs' assertion with respect to each)).

The plaintiffs also argue that Frankel breached the Employee NDA by sending the Trade Blotter to third parties. But the Trade Blotter was not protected by the Employee NDA. The Employee NDA only applied to information provided to Employee "[i]n the performance of Employee's job duties with Company." (Doc. 61 at 22, § 1). Frankel did not receive the Trade Blotter "in the performance of [his] job duties with Company." (Frankel Dep. 152:15–153:19

(Doc. 116)). Frankel received the Trade Blotter after his employment as CEO and his engagement as a non-exclusive consultant ended. (Frankel Dep. 152:15–153:19 (Doc. 116)). Frankel lawfully requested and obtained a sample blotter from Randy Jones. (Frankel Dep. 152:15–153:19 (Doc. 116)).

The Trade Blotter did not contain Confidential Information. (Frankel Dep. Ex. 10; Hurry Dep. Ex. 5). All of the trade data in the blotter is publicly available. (Frankel Dep. 153:23–155:6 (Doc. 116)). Hurry acknowledged that the blotter does not identify Alpine or the customers who made the trades, and that the blotter is confidential only if coupled with identification of the customers who made the trades. (Hurry Dep. 90:15–91:10 (Doc. 115)). The plaintiffs adduced no evidence that Frankel attempted to identify customers who made trades and then shared the coupled information with third parties.

### 2. Frankel did not breach the computer use provisions in section 6 of the Employee NDA by sending emails to his personal email address.

Scottsdale and Alpine did not allege in their second amended complaint that Frankel breached section 6 of the Employee NDA, but even if they had asserted a claim for breach of section 6, Frankel did not breach section 6 by sending emails to his personal account.

Section 6(f)(7) of the Employee NDA only prohibits transmission of information outside the Company:

> Prohibited actions using Company's ECS include, but are not limited to the following: . . . transmitting confidential patient, business, or risk management information to any non-Company email address.

(Doc. 61 at 23). Section 6(f)(7) does not prohibit internal transmission of the Company's information to persons who work for the Company; nor does it prohibit a person who works for the company from forwarding an email to his personal account. (Doc. 61 at 23).

The plaintiffs' argument depends on construing section 6(f)(7) as prohibiting Alpine's employees from sending the Company's information to any email account other than *alpine-securities.com*, even if the recipient is an employee of Alpine. (Doc. 126 at 2, 9). This construction is inconsistent, however, with how Alpine actually operated. For example, Frankel and other Alpine employees' job responsibilities included sending emails containing Alpine's information to, among others: John Hurry, via email to jhurry@jhurry.com; Mike Cruz, via email to mike@scalawyer.com; and Richard Nummi, via email to rnummi@mac.com. (*E.g.*, Jarvis Decl. ¶ 7 (Doc. 128-2)). Each of these emails would be a violation of section 6(f)(7) of the Employee NDA, according to the plaintiffs' argument. The more reasonable construction is that section 6(f)(7) only prohibits transmission of information outside the Company. *See generally United Calif. Bank v. Prudential Ins. Co. of Am.*, 681 P.2d 390, 418 (Ariz. Ct. App. 1983) ("The acts of the parties themselves, before disputes arise, are the best evidence of the meaning of doubtful contractual terms."). Thus, Frankel did not breach section 6(f)(7) of the Employee NDA by sending emails from his Alpine account to his personal account.

### 3. Scottsdale and Alpine have not established that Frankel is liable for failing to return documents under section 4 of the Employee NDA.

Alpine and Scottsdale argue that Frankel breached section 4 of the Employee NDA, which states: "When Employee's employment with Company ends, for whatever reason, Employee will promptly deliver to Company all originals and copies of all documents, records, software programs, media and other materials containing Confidential Information." (Doc. 61 at 22–23, § 4). But when Frankel's employment with Alpine ended, Frankel continued working as a non-exclusive consultant for Alpine. (Doc. 16-1, ¶ 12). Neither Alpine nor Scottsdale requested that Frankel return any documents, and it would not have made sense for Frankel to attempt to

return any documents when he was continuing to work on Alpine's business as a non-exclusive consultant for Alpine. (*See* Doc. 16-1, ¶¶ 9–12, 18).

After Frankel stopped working as a non-exclusive consultant for Alpine, Frankel received a letter in which Scottsdale and Alpine represented that the Original NDA (not the Employee NDA) applied to their request for return of documents, and that Frankel had 10 business days to return documents. (Doc. 16-4). The next business day after Frankel received Alpine and Scottsdale's letter, Frankel offered to return documents. (Doc. 16-5). Scottsdale and Alpine had not identified any specific documents that they were requesting for Frankel to return. (Doc. 16-4). So Frankel asked which documents to return and offered to return all of their documents if they did not want to specify which documents to return. (Doc. 16-5). Instead of responding to Frankel's offer, Scottsdale and Alpine sued Frankel, less than 10 business days after their request that he return documents within 10 business days. (Doc. 1).

Scottsdale and Alpine have not established liability under section 4 of the Employee NDA. They did not even treat that provision as applicable in their request to Frankel. (Doc. 16-4). They sued Frankel without specifying which documents he should return and without allowing Frankel 10 business days to return their documents. (*See* Doc. 16-1, ¶¶ 9–12, 18; Doc. 16-4, -5; Doc. 1). Thus, Scottsdale and Alpine prevented Frankel's performance. *See Williams v. Nall*, 420 P.2d 988, 992 (Ariz. Ct. App. 1966) ("[T]he one who prevents performance of a contract may not complain of such nonperformance." (citing 17A C.J.S. Contracts s. 468; 17 Am.Jur.2d Contracts s. 426)).

**C.    Summary judgment must be entered against the plaintiffs because they have adduced no evidence of injury or loss.**

The plaintiffs' motion quotes California law that "nominal damages are properly awarded . . . [w]here there is no loss or injury to be compensated." (Doc. 114 at 8 (quoting *Avina v.*

13

*Spurlock*, 28 Cal. app. 3d 1086, 105 Cal. Rptr. 198, 200 (1972)). And the plaintiffs' motion cites Utah cases applying the same rule. (Doc. 114 at 10). Neither California nor Utah law apply here.

The plaintiffs concede that Arizona law governs the Original NDA (Doc. 114 at 7), but inexplicably argue that Utah law governs the Employee NDA. (Doc. 114 at 8, 10). The Employee NDA states that it "shall be governed in accordance with the laws of the State of Arizona." (Doc. 61 at 24, § 7(i)).

Arizona law does not allows nominal damages unless the plaintiff has adduced evidence showing "actual damages" that are "slight or difficult to calculate." *Firetrace USA, LLC v. Jesclard*, No. CV-07-2001, 2010 WL 3523067, at *1–3 (D. Ariz. Sep. 3, 2010) (also cited by plaintiffs in their motion (Doc. 114 at 8)). Under Arizona law, plaintiffs seeking nominal damages must show that the plaintiffs "have suffered (or will suffer) an injury of some kind." *Id.*

In this case, the plaintiffs have adduced no evidence to show harm or damage. In their initial disclosures, the plaintiffs admitted that they had no knowledge of any damages or losses caused by Frankel. (Doc 35-2). At the close of discovery, the plaintiffs still had not adduced evidence of harm or damage. When asked whether the plaintiffs had done any damage analysis, Hurry, as their corporate representative, testified: "We've looked at the evidence and the timeline, and we've seen revenues significantly drop accordingly. At this point, without having the full discovery, we are still piecing that together." (Hurry Dep. 155:14–20 (Doc. 115)). When asked when the damage analysis would be done and who would do it, Hurry responded: "It's in the process." (Hurry Dep. 173:24–174:1 (Doc. 115)). When asked whether exhibits 29 through 33 were the documents that plaintiffs would use to determine their damages, Hurry testified "they certainly could be some of them." (Hurry Dep. 174:10–13 (Doc. 115)).

Hurry acknowledged that the plaintiffs had received adverse publicity and regulatory scrutiny which "had not been helpful." (Hurry Dep. 192:7–23 (Doc. 115)). Hurry acknowledged that the extraordinary Common Area Maintenance charge, for which FINRA had sued and challenged as an unauthorized capital extraction, may have rendered Alpine at least temporarily unprofitable, but that Alpine had nonetheless "been able to pay all the bills and stay in capital." (Hurry Dep. 202:12–25; 203:1–19 (Doc. 115)). The plaintiffs clearly had not done and could not offer any meaningful damage analysis which had factored in the numerous variables which potentially could have affected the plaintiffs' revenue and profits since Alpine terminated Frankel's employment at the end of July 2018.

The plaintiffs asserted they needed an expert witness "to opine on the value of the confidential information misappropriated and misused by Defendant as well as Plaintiffs' damages" (Doc 83 at 3), but the plaintiffs never offered an expert opinion valuing their allegedly misappropriated information or determining damages. The Court has stricken the plaintiffs' damages expert. (Doc. 130).

## IV.   CONCLUSION

Hurry Trust has no claim under the Original NDA, and Hurry Trust ignored Frankel's timely offer to return any documents belonging to the Trust which the Trust considered to contain Confidential Information. Scottsdale and Alpine did not sue for breach of the computer access provision in the Employee NDA, and Frankel did not breach the computer access provision in any event.

Scottsdale and Alpine did not sue for Frankel's failure to return their documents under the Employee NDA. Frankel timely offered to return Scottsdale's and Alpine's documents containing information which Scottsdale and Alpine considered confidential.

Frankel did not use any of the plaintiffs' Confidential Information for his own benefit. Frankel did not disclose any of the plaintiffs' Confidential Information to third parties.

The plaintiffs have no loss, injury, or damage, and they may not, therefore, recover nominal damages for breach of contract under Arizona law. The plaintiffs are not entitled to summary adjudication on the issue of Frankel's liability for their contract claims because loss, injury, or damage is an essential element of their claims under Arizona law, and the plaintiffs have adduced no evidence to show loss, injury, or damage.

WHEREFORE, Frankel requests an order denying the plaintiffs' motion for summary adjudication on the issue of Frankel's liability for allegedly breaching the Original NDA and Employee NDA and granting any relief deemed appropriate to protect Frankel's interests and rights.

Dated: September 23, 2019   By:   */s/ Harold Holder*
David C. Banker (Fla. Bar No. 352977)
Harold D. Holder (Fla. Bar No. 118733)
BUSH ROSS, PA
1801 N. Highland Avenue
Tampa, Florida 33602
Phone: 813-224-9255
Fax:    813-223-9620
Primary: dbanker@bushross.com;
hholder@bushross.com
Secondary: aflowers@bushross.com
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 23, 2019, all counsel of record who consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/EFC participants:

Shane B. Vogt, Esquire
Kenneth G. Turkel, Esquire
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, FL  33602
kturkel@bajocuva.com
svogt@bajocuva.com

Charles J. Harder, Esquire
Jordan Susman, Esquire
HARDER LLP
132 South Rodeo Drive, Suite 301
Beverly Hills, CA 90212-2406
charder@harderllp.com
jsusman@harderllp.com
*Attorneys for Plaintiffs*

By:  *Harold Holder*