UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| THE HURRY FAMILY REVOCABLE TRUST; SCOTTSDALE CAPITAL ADVISORS CORPORATION; ALPINE SECURITIES CORPORATION,<br><br>    Plaintiffs,<br><br>vs.<br><br>CHRISTOPHER FRANKEL,<br><br>    Defendant.<br>_____ | CASE NO.: 8:18-cv-02869-VMC-CPT |

## PLAINTIFFS' REPLY IN RESPONSE TO FRANKEL'S OPPOSITION (DKT. 131) TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION

Plaintiffs, The Hurry Family Revocable Trust (the "Trust"), Scottsdale Capital Advisors ("Scottsdale"), and Alpine Securities Corporation ("Alpine") (collectively, "Plaintiffs"), submit this Reply to Defendant Christopher Frankel's ("Frankel") opposition (Dkt. 131) to Plaintiffs' Motion for Summary Adjudication (Dkt. 114), and state as follows.

### I.     INTRODUCTION

The Opposition seeks to escape summary adjudication of Plaintiffs' breach of contract claims in the oldest way know to litigants: by proffering red herrings, misleading statements, and outright falsehoods in an effort to cloud the issues and manufacture triable issues of fact where none exist.  Frankel even uses his own failure to respond to discovery as proof that certain evidence does not exist, when, in fact, such evidence was produced by third parties.

No amount of dissembling, however, can obscure what is undisputed:

- Frankel failed and refused to return documents to the Trust within ten business days of receiving a written request for their return, in violation of the Original NDA.

- Frankel accessed Alpine's and Scottsdale's documents for purposes other than those related to his employment duties and responsibilities, in breach of the Employee NDA.

- Frankel transmitted Alpine's and Scottsdale's documents to his personal, "non-Company email address", in breach of the Employee NDA.

- Frankel used Alpine and Scottsdale's information for his "own purposes or the benefit of anyone other than Company" and also disclosed Alpine's information to third parties without Alpine's consent, in violation of the Employee NDA.

- Frankel failed to return documents belonging to Alpine and Scottsdale upon his termination, in violation of the Employee NDA.

Because the foregoing facts are **undisputed**, the Court can and should enter summary judgment on Plaintiffs' breach of contract claims.

## II.   ANALYSIS

### A.   Frankel Breached the Original NDA

It is undisputed that Frankel breached the Original NDA by failing to return documents containing confidential information to the Trust ten business days after the Trust requested their return.

Frankel first argues that the Trust is not entitled to summary judgment on its claim for because the Trust is not a "Discloser" under the Original NDA. This argument is based upon a deliberately obtuse reading of the Original NDA which defines "Discloser" as Scottsdale,

Alpine, Cayman Securities Clearing and Trading LTD, "and any associated company of the Hurry Family Revocable Trust." (Dkt. 118-3). Frankel's argument that the Trust is not a "Discloser" under the Original NDA is absurd and therefore fails as a matter of law. *Roe v. Austin*, 246 Ariz. 21, 433 P.3d 569, 575 (Ct. App. 2018) ("courts must avoid an interpretation of a contract that leads to an absurd result"). The Trust is one of only four entities identified by name as a "Discloser" (the others being Scottsdale, Alpine, and Cayman), and Frankel, in fact, received confidential documents from the Trust.

Frankel next argues that he cannot be liable for breach of contract because he "offered to return" the Trust's confidential documents. This argument ignores the text of the Original NDA, which requires the actual *return* of all documents containing confidential information within ten business days of Plaintiffs' request—not merely an offer to return documents. (Dkt. 118-3). Frankel's purported offer to return material did not absolve him of his obligation to comply with the actual terms of the Original NDA.

Frankel then bizarrely argues that, because the Trust commenced this action less than ten business days after it demanded the return of documents, it "prevented" his performance of his obligations under the Original NDA. This argument stacks several astonishing assumptions atop one another to reach its meritless conclusion. **First**, nothing, including the filing of this action, prevented Frankel from returning the confidential documents to the Trust. Frankel could have returned the confidential documents at any time before the ten business days expired—he simply chose not to.[1] **Second**, Frankel's purported "offer" was a sham offer, because he alone knew what documents he illegally retained, and the Original NDA did not require the Trust to identify

---

[1] The Complaint was not even served upon Frankel until more than ten business days after the request was made. (Dkt. 6).

documents in order to secure their return. **Third**, even if Plaintiffs commenced this action before the claim was ripe, Federal Rule of Civil Procedure 15(d) expressly permits "a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Because the operative SAC, which was filed on May 10, 2019 (Dkt. 61), succeeded the initial complaint, and it is indisputable that Frankel did not return confidential documents to the Trust more than ten business days after the Trust demanded their return, Frankel is liable for breaching the Original NDA.

In sum, there are indisputable facts supporting each of the elements of the Trust's claim for breach of the Original NDA. Accordingly, the Court should enter summary judgment on this claim.

    **B.**    <u>**Frankel Breached the Employee NDA**</u>

Frankel proffers several arguments to escape liability for breaching the Employee NDA. Each of these arguments is contradicted by undisputed facts.

        **1.**    **Frankel Admitted He Used Confidential Information for his Own Benefit**

Frankel argues that he did not admit to using confidential information for his own use. This argument is contradicted by Frankel's own deposition testimony, including two very specific incidents:

**First Undisputed Use of Plaintiffs' Confidential Information**

On September 18, 2018, Frankel sent a term sheet for a secured revolving credit facility belonging to Alpine to his personal email account. (Frankel Depo. 59:15-60:10; 60:23-62:2; 62:16-18; Exh. 6 (Dkt. 116). Frankel admitted that the document was marked confidential and Plaintiffs wanted to keep it confidential. (Frankel Depo. 61:24-62:5 (Dkt. 116). Frankel further admitted that he used the document for his personal use:

> Q: And why did you send this document to yourself four months after you received it?
> A [Frankel]: I was actually looking at the contemplated structure.
> Q: And why were you looking at the contemplated structure four months after you received it?
> A: Well, because, again, I, you know, was contemplating buying a broker-dealer and, you know, as part of your assertions, you know, if I bought one I could probably write a check for certain ones myself, but I would have to raise capital to fund it for additional capital. And so I thought about using this template to draft an idea to raise capital. But I never attempted to raise any capital or solicited any capital. It wasn't going to be this exact structure at all. But, you know, the template in terms of borrower, lender, instrument, maturity, that type of thing.
> Q: **So you wanted to use it for your personal use**?
> A: **Yes**, the template.

(Frankel Depo. 62:24-63:17 (Dkt. 116)).

Frankel's attempt to escape liability by claiming he used a confidential document belonging to Plaintiffs simply as a template is a distinction without a difference. The prohibition against using confidential information for personal purposes is absolute. ("Nor will Employee make use of any Confidential Information for Employee's own purposes . . . ."). (Dkt. 118-4).

**Second Undisputed Use of Plaintiffs' Confidential Information**

On October 7, 2018, Frankel emailed a number of Alpine's confidential documents to his personal email address. (Frankel Depo. 40:8-41:19; 43:19-44:7; 114:5-14; 115:3-8; 116:11-117:3:117:16-20; 119:1-121:4; Exhs. 2, 12 (Dkt. 116)). Frankel admitted that he sent this information to himself for personal use:

> Q: And you sent this to your personal e-mail on October 7, 2018; correct?
> A: Correct.
> Q: And you've already told us why. You want to tell us again why you sent that to yourself on October 7, 2018?
> A: Yeah, because **I was going to help another group** try to become a nonbank custodian.
> Q: Okay. So you were using it for personal reasons?

> A: I was using the contacts for personal reasons, yes, readily admit, but I also knew these people for 20-plus years.

(Frankel Depo. 121:2-9 (Dkt. 116)).

Again, Frankel's attempt to escape liability by narrowing the scope of his personal use of confidential documents is a red herring. The Employment NDA expressly states: "Nor will Employee make use of any Confidential Information for Employee's own purposes or the benefit of anyone other than the Company." (Dkt. 118-4). The Employee NDA does not contain exceptions for using Confidential Information to obtain "contacts for personal reasons . . . to help another group."

### 2. Frankel Illegally Obtained a Confidential Trade Blotter from Alpine and Sent it to Third Parties

Frankel's most egregious use of Plaintiffs' confidential information concerns a trade blotter of Alpine's trade runs (the "Trade Blotter") that Frankel illegally obtained from an employee after he left Alpine and subsequently sent to numerous third parties.[2] Given the clarity of the undisputed evidence, it is unsurprising that Frankel's arguments against liability are so deeply flawed.

Frankel first argues that the Trade Blotter is not protected by the Employee NDA because he did not obtain it in the performance of his job duties at Alpine (he illegally obtained it from an Alpine employee after he left). Nonsense. **The Employee NDA prohibits Frankel from disclosing any Confidential Information, no matter how it is obtained**. (Dkt. 118-4) ("Employee shall keep Company's Confidential Information, whether or not prepared or

---

[2] Contrary to Frankel's allegation that he acted legally, Utah's Trade Secret Act expressly prohibits a party from inducing another to breach a duty to maintain secrecy. Utah Code Ann. § 13-24-1 *et seq*. In addition, Frankel is liable for receipt of stolen property. Utah Code Ann. § 76-6-408.

{00103530;2}                                                     6

developed by Employee, in the strictest confidence.  Employee will not disclose such information to anyone outside the Company without Company's prior written consent.  Nor will Employee make use of the Confidential Information for Employee's own purposes or the benefit of anyone other than the Company.").  The portion of the Employee NDA disingenuously quoted (in part) by Frankel is not the definition of "Confidential Information," but merely states that Frankel will be exposed to Alpine's and Scottsdale's Confidential Information.  (Dkt. 118-4).  It says nothing about limiting Confidential Information to information received by Frankel in performance of his job duties.

Frankel next argues that the Trade Blotter does not contain confidential information because all of the information in it is publicly available.  This is false.  When asked at his deposition whether he could have obtained the information in the Trade Blotter from a public source in the format received from Alpine, Frankel replied: "In its totality, no. I mean, it's there, **but you wouldn't know it** verbatim."  (Frankel Depo. 155:2-6) (Dkt. 116)).  Per the Employee NDA, this is the very definition of Confidential Information: "any other information not generally known to the public which, if misused or disclosed, could reasonably be expected to adversely affect Company's business." (Dkt. 118-4).

Frankel then falsely alleges that Alpine stated that the Trade Blotter is confidential "only if coupled with the identification of the customers who made the trades."  This is a complete fabrication.  The portion of John Hurry's (Alpine's corporate representative) transcript cited by Frankel (Hurry Depo. 90:15-91:10 (Dkt. 115)) does not address confidentiality or contain the word "confidential."  In fact, Hurry repeatedly stated at his deposition that the Trade Blotter **is** "confidential." (Hurry Depo. 80:18-21, 83:15-17, 84:1-3, 84:4-15, 85:22-86:2, 86:22-23, 87:24-88:4 (Dkt. 115)).

Finally, Frankel sent the Trade Blotter to numerous third parties, including a broker-dealer he was attempting to purchase.³ (Frankel Depo. 34:7-12, 152:13-23, Exh. 20 (Dkt. 116)). As such, Frankel used the Trade Blotter for his own purposes and failed to keep the Trade Blotter in "strictest confidence" as required by the Employee NDA. (Dkt. 118-4). Frankel's liability for breach of the Employee NDA is, therefore, indisputable.

### 3. Frankel Breached Section 6 of the Employee NDA by Sending Confidential Documents to His Personal Email Address

Frankel also breached Section 6 of the Employee NDA by sending numerous confidential documents to his personal email address. Frankel's arguments regarding these breaches are based upon denials of the obvious and assertions of the manifestly untrue.

Frankel's first argument—that Scottsdale and Alpine did not allege that Frankel breached section 6 of the Employee NDA—is manifestly untrue. Paragraph 25 of the SAC states: "Unbeknownst to Plaintiffs, and in violation of the Original NDA and the Employee NDA, on August 15, 2016, August 28, 2016, September 9, 2016, October 6, 2016, October 13, 2016, October 14, 2016, November 8, 2016, January 3, 2017, April 12, 2017, May 2, 2017, July 13, 2017, August 31, 2017, July 31, 2018, August 8, 2018, September 18, 2018, October 7, 2018, Defendant forwarded emails containing Confidential Information from his employee email account to his personal email account." (Dkt. 61). These allegations are incorporated by reference as part of Scottsdale's and Alpine's claim for breach of contract. (SAC ¶ 39 (Dkt. 61)). Given the very specific allegations in Paragraph 25, it is readily apparent that they support Claim II for breach of the Employee NDA. *See Gaviria v. Maldonado Bros.*, No. 13-60321-CIV, 2013

---

³ Perhaps most tellingly, Frankel failed to produce in discovery the Trade Blotter or his emails to third parties that included it, despite such documents being responsive to numerous requests for production.

WL 3336653, at *7 (S.D. Fla. July 2, 2013) ("Though Counts II and IV do incorporate by reference all preceding paragraphs, this incorporation does not create an inscrutable tangle of facts and claims that would render the Complaint a shotgun pleading.").

Frankel's next argument—that the Employee NDA did not prohibit him from sending emails to his personal email address—denies the obvious. Section 6(f)(7) expressly prohibits the transmission of "confidential patient, business, or risk management information to **any non-Company email address**" (Dkt. 118-4), and Frankel admitted sending confidential information to his non-Company email address on more than a dozen occasions. (Frankel Depo. 40:8-41:19; 43:19-44:7; 59:15-60:10; 60:23-62:2; 62:16-18; 66:18-67:1; 67:15-17: 69:13-70:14; 70:24-71:2; 76:2-77:16; 78:11-14; 79:20-80:15; 81:6-8; 86:15-20; 89:11-90:15; 92:1-12; 92:19-93:6; 94:24-95:1; 114:5-14; 115:3-8; 116:11-117:3: 117:16-20; 119:1-121:4; 122:10-124:1; 124:10-18; 125:10-22; 128:14-129:20; 130:7-131:20; 132:6-133:19; 134:1; 135:14-136:25; Exhs. 2, 6—18) (Dkt. 116)). Although this should be end of the inquiry, and judgment entered against Frankel, he proffers several disingenuous arguments to try to cloud the facts.

First, Frankel argues that Section 6(f)(7) of the Employee NDA cannot mean what it clearly says, because he also sent emails to purported non-Company email addresses of John Hurry and attorneys for Alpine and Scottsdale. This argument fails as a matter of law because the plain meaning of "non-Company email address" is unambiguous and clearly refers to email addresses that are not those of the Company (i.e., Alpine, Scottsdale, or their affiliates). *See Shattuck v. Precision-Toyota, Inc.*, 115 Ariz. 586, 588, 566 P.2d 1332, 1334 (1977) (en banc) ("Where parties bind themselves by a lawful contract, in the absence of fraud a court must give effect to the contract as it is written, and the terms or provisions of the contract, where clear and unambiguous, are conclusive."). Because the Employee NDA is unambiguous, the Court

must give effect to its terms as written. Frankel's personal email address is, under no circumstances, an email address of Alpine, Scottsdale, or one of their subsidiaries and affiliates. Consequently, it is indisputable that Frankel breached the Employment NDA by sending more than a dozen confidential documents to his personal email address, and the Court should enter summary judgment on this claim.

Second, the fact that emails may have been sent to other purported non-Company email addresses is a red herring. Plaintiffs are not suing Frankel for sending emails to those other email addresses; Plaintiffs are suing Frankel for sending Confidential Information to his personal email account, as is their prerogative under the Employee NDA. (*See* Section 7(e) ("The failure to exercise any right provided in this Agreement shall not be a waiver of prior or subsequent rights.") (Dkt. 118-4)).

Frankel indisputably breached the Employee NDA by sending confidential information to his personal email address, and the Court should enter summary judgment on this claim.

### 4. Frankel Breached Section 4 of the Employee NDA by Failing to Return Documents

Section 4 of the Employee NDA is clear: when Frankel's employment ended, he was required to "promptly deliver" all materials containing Alpine and Scottsdale's Confidential Information. (118-4). This obligation was absolute: It did not depend upon receiving a request from Alpine or Scottsdale; nor did the filing of a lawsuit relieve Frankel of his contractual duty to return documents.

Frankel was terminated as an employee in August 2018 and terminated as a consultant in October 2018 (Frankel Depo. 26:4-13 (Dkt. 116)), yet he did not produce any confidential documents to Plaintiffs until February 2019—as part of his initial disclosures in litigation. (Frankel Depo. 45:24-46:1; 66:2-4; 75:21-24: 85:14-18; 90:22-24; 122:5-7; 124:6-8; 128:8-13;

130:2-4; 132:1-3; 133:23-25: 137:19-21 (Dkt. 116)). Moreover, Frankel did not return the confidential Trade Blotter at any time—despite it being his possession, custody and control. (Susman Decl. ¶¶ 4, 5, 8, 9 (Dkt. 126-2)). Finally, even after Plaintiffs requested the return of their confidential materials, Frankel sent the Trade Blotter to third parties. (Frankel Depo. 152:13-23; 155:7-156:5; 156:13-17; Exh. 20 (Dkt. 116)). And Frankel emailed confidential internal communications regarding customer fee schedules to FINRA *after* the lawsuit commenced. (Frankel Depo. 130:7-131:20 (Dkt. 116)).

Frankel's failure to return documents in a prompt manner is therefore indisputable and the Court should enter summary adjudication on Frankel's breach of Section 4 of the Employee NDA.

C.   **Plaintiffs' Damages**

Frankel's final argument against Plaintiffs' Motion for Summary Adjudication is that Plaintiffs have not adduced any evidence of injury or loss. This argument has been constructed out of whole cloth.

As an initial matter, Frankel misstates the law. Arizona (whose law controls the agreement) presumes damages when there is a breach of contract. "**Damages is not an essential element to a breach-of-contact claim. Even if [defendant's] alleged breach caused [plaintiff] no damages he would still be entitled to nominal damages**." *Jeffers v. Farm Bureau Prop. & Cas. Ins. Co.,* No. 2:12-CV-02444 JWS, 2014 WL 4259485, at *3 (D. Ariz. Aug. 28, 2014) (citing *Rawlings v. Apodaca,* 726 P.2d 565, 573 (Ariz. 1986) (en banc), and Restatement (Second) of Contracts § 346(2) (1981) ("If the breach caused no loss ... a small sum fixed without regard to the amount of loss will be awarded as nominal damages.")); *see also United States v. Gila Valley Irrigation Dist.*, No. CV 31-00059-TUC-SRB, 2018 WL 4361867, at *2 (D.

Ariz. Aug. 10, 2018) (holding that a "specific, measureable harm is unnecessary . . . the injury is the breach"). Therefore, even if Plaintiffs had no evidence of damages (they actually have substantial damages), Defendant would be liable for his breaches, and the Court should enter summary judgment on the breach of contract claims.

Second, Frankel falsely alleges that Plaintiffs have not produced any evidence of damages. In fact, Plaintiffs produced statements of income, trend reports, and profit & loss statements that demonstrate significant losses attributable to Frankel's conduct. (Hurry Depo. 156:4-157:13, Exhs. 29-34 (Dkt. 115)). When asked at deposition why those documents were produced, Plaintiffs' corporate representative responded: "they are showing on a timeline of events where revenues drop off is coinciding very closely to the time Chris Frankel's done certain things." (Hurry Depo. 156:24-157:1 (Dkt. 115)).

Third, Frankel falsely alleges that "Plaintiffs asserted they **needed** an expert witness 'to opine on the value of the confidential information misappropriated and misused by Defendants as well as Plaintiffs' damages.'" (Frankel Response, p. 15). Not true. Plaintiffs' Disclosure of Expert Testimony stated that they "**may**" call an expert witness. As a result of Frankel's discovery abuses, including his refusal to produce responsive documents prior to the close of discovery, Plaintiffs have decided to establish their damages through their own testimony and records, as is their right. *See* Fed. R. Evid. 701; *See Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, Ltd., 320 F.3d 1213, 1223 (11th Cir. 2003) (recognizing that an owner or officer of a business may testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert).

Finally, Frankel completely ignores that Alpine and Scottsdale are entitled to injunctive relief because Frankel continued to disseminate Plaintiffs' confidential information **after**

Plaintiffs demanded the return of such information and **after** the commencement of this lawsuit. (Frankel Depo. 130:7-131:20; 152:13-23; 155:7-156:5; 156:13-17, Exhs. 16, 20 (Dkt. 116); Susman Decl. ¶¶ 5, 6 Exh. 1 (Dkt. 114-2)).

Absent an injunction, Frankel will continue to share Plaintiffs' confidential information and steal Alpine and Scottsdale's customers, causing Plaintiffs irreparable harm. *See e.g., Fortiline, Inc. v. Moody*, No. 12-CV-81271, 2013 WL 12101142, at *5 (S.D. Fla. Jan. 7, 2013) (quoting *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991)) ("the loss of customers and goodwill is an 'irreparable' injury").

### III.  CONCLUSION

For the reasons stated herein, the Court should grant Plaintiffs summary adjudication on their breach of contract claims.

Dated this 4th day of October 2019.

/s/ Jordan Susman
Charles J. Harder, Esq.
Jordan Susman, Esq.
HARDER LLP
132 South Rodeo Drive, Fourth Floor
Beverly Hills, CA  90212-2406
Tel: (424) 203-1600
Fax: (424) 203-1601
E-mail:  charder@harderllp.com
E-mail:  jsusman@harderllp.com

Kenneth G. Turkel – FBN 867233
Shane B. Vogt – FBN 257620
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel:  (813) 443-2199
Fax: (813) 443-2193
E-mail:  kturkel@bajocuva.com
E-mail:  svogt@bajocuva.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 4, 2019, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

*/s/ Jordan Susman*
Attorney