## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

THE HURRY FAMILY REVOCABLE TRUST;     CASE NO.: 8:18-cv-02869-VMC-CPT
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; ALPINE SECURITIES
CORPORATION,

     Plaintiffs,

vs.

CHRISTOPHER FRANKEL,

     Defendant.

_____

### PLAINTIFFS' REPLY TO (DKT. 131-1) FRANKEL'S RESPONSE TO PLAINTIFFS'
### MATERIAL FACTS

| PLAINTIFFS' MATERIAL FACT | FRANKEL'S RESPONSE | PLAINTIFFS' REPLY |
|---|---|---|
| 1.<br><br>In 2015, Plaintiffs considered hiring Frankel to help run their broker-dealer businesses. Cruz Decl. ¶ 4. | Admit | |
| 2.<br><br>Plaintiffs engaged in discussions with Frankel about their businesses. Cruz Decl. ¶ 4. Frankel Depo. 17:9-17; 18:7-25 | Admit that Frankel discussed Alpine's business with Alpine. Frankel never discussed Cayman's business or the Trust. (Frankel Dep. 39: 23-25; 40: 1-10) | Frankel testified under oath at a FINRA hearing that he discussed Cayman (CSCT). Request for Judicial Notice 1. |
| 3.<br><br>Plaintiffs were aware that these discussions about their businesses would expose | Deny. Frankel explained in his declaration filed early on that the plaintiffs had very little, if any, confidential information concerning their | The Original NDA, which Frankel signed, states: "Recipient [Frankel] and Disclosure [defined therein] have entered into |

| | | |
|---|---|---|
| Frankel to, and entrust him with, information that is commercially valuable to Plaintiffs and not generally known or readily ascertainable in the broker-dealer securities industry or the public at large. Hurry Depo. 25:16-23<br><br>Cruz Decl. ¶ 5 | highly regulated businesses. (Doc 16-1 at ¶¶ 6 and 23) (Process for clearing trades for securities transactions has long been standard and widely known in securities business. Alpine and Scottsdale are regulated by SEC and publish their financial statements, fee schedules, and commission schedules). | discussions for form a business or employment relationship in connection with Discloser's business . . . in connection with such discussions, the Discloser will communicate to the Recipient and grant the Recipient access to Confidential Information (as defined below) pertaining to Discloser's business."<br><br>Frankel Depo. Exh. 1<br><br>Dkt. 118-3 |
| 4.<br><br>In order to protect this information, Plaintiffs required Frankel to enter into a written non-disclosure agreement (the "NDA") that would limit his use of Plaintiffs' numerous trade secrets and confidential information. Hurry Depo. 24:16-25; 25:16-23; Exh. 3<br><br>Cruz Decl. ¶ 6; Exh. 1<br><br>Frankel Depo. 16:17-17; 18:7-25 | Deny. The plaintiffs misrepresented Frankel's testimony. Frankel did not concede that the plaintiffs required a non-disclosure agreement to protect trade secrets or confidential information. In the quoted excerpts, he identified his signature on the initial Non-Disclosure Agreement and agreed that the plaintiffs shared SEC exams with him which he "supposed" the plaintiffs might consider confidential. (Frankel Dep. 16:17; 18:7-25). He did not concede that the SEC exams "could reasonably be expected to adversely affect Company's business," a confidentiality requirement under 1(e) of the Employee Non-disclosure & Computer Use Agreement (Doc 118-4). Frankel did not concede any use or disclosure which could reasonably have been expected adversely to affect any of the plaintiffs. | Document speaks for itself.<br><br>Frankel improperly proffers legal argument. |

| | | |
|---|---|---|
| 5.<br><br>The NDA, signed by Frankel on June 22, 2015, acknowledged that Frankel would be exposed to information that is the "sole property" of the Plaintiffs "and highly confidential in nature." Hurry Depo. Exh. 3<br><br>Cruz Decl. ¶ 6; Exh. 1<br><br>Frankel Depo. 16:17-25; Exh. 1 | Deny. The plaintiffs again misrepresented Frankel's testimony. Frankel did not testify that the plaintiffs gave him any information that was "highly confidential." In the cited passage, Frankel merely acknowledged that he signed the initial Non-Disclosure Agreement. (Frankel Dep. 16: 17-25). | Document speaks for itself.<br><br>Frankel improperly proffers legal argument. |
| 6.<br><br>The NDA requires that, "[w]ithin ten business days of receipt of the [Plaintiffs'] written request, [Frankel] will return to the [Plaintiffs] all documents, records and copies thereof containing Confidential Information." Hurry Depo. Exh. 3 ¶ 5<br><br>Cruz Decl. ¶ 6; Exh. 1 ¶ 5<br><br>Frankel Depo. 16:17-25; Exh. 1 ¶ 5 | Admitted that the initial Non-Disclosure Agreement, under which the plaintiffs demanded that Frankel return their Confidential documents, gave Frankel ten business days to do so. In accordance with the Agreement, Frankel responded the next business day after receiving the demand that he would return Confidential documents, if the plaintiffs would tell him what they considered confidential, or all documents if they could not decide what was confidential. The plaintiffs ignored Frankel's response and sued him before expiration of the 10 business day period. (Frankel Declaration and Exhibits (Doc. 16-1 through 16-5)). | Document speaks for itself.<br><br>Frankel improperly proffers legal argument. |
| 7.<br><br>The NDA defined "Confidential Information" as "any data or information that is proprietary to the Plaintiffs and not generally known to the public, | Deny. The plaintiffs again misrepresented Frankel's testimony. On cited page 16, Frankel acknowledged his signature; on un-cited page 18: 17-25, Frankel recalled receiving SEC exams before | Document speaks for itself.<br><br>Frankel improperly proffers legal argument. |

| | | |
|---|---|---|
| whether in tangible or intangible form, whenever and however disclosed." Hurry Depo. Exh. 3 ¶ 5<br><br>Cruz Decl. ¶ 6; Exh. 1 ¶ 5<br><br>Frankel Depo. 16:17-25; Exh. 1 ¶ 5 | joining Alpine, which he "supposed" the plaintiffs might have considered confidential. Frankel was not asked, however, about his understanding of the definition of Confidential Information in either the Initial or the Employee Nondisclosure & Computer Use Agreement. Provision 1(e) of the Employee Nondisclosure & Computer Use Agreement, among other things, required that disclosure of confidential information "reasonably be expected to adversely affect Company's business" in order to qualify as Confidential. (Doc 118-4). Frankel did not concede any access, use, or disclosure which could reasonably have been expected adversely to affect any of the plaintiffs. | |
| 8.<br><br>Alpine ultimately hired Frankel. Hurry Depo. 48:9-25<br><br>Frankel Depo. 22:13-15 | Admit that Frankel began working for Alpine as an employee on or about August 5, 2015. (Frankel Dep. 22: 13-15). | |
| 9.<br><br>From approximately July 2015 through July 2018, Frankel served as CEO of Alpine, and from July 2018 through October 2018 was a consultant to Alpine.  Hurry Depo. 48:9-25; 56:16-18; 61:24-62:6<br><br>Frankel Depo. 22:13-20; 26:4-13 | Admit that Alpine employed Frankel as its CEO from August 5, 2015 (Frankel Dep. 22: 13-20), until August 1, 2018 (Frankel Dep. 26: 4-6), and that Alpine thereafter engaged Frankel as a non-exclusive consultant until October 31, 2018. (Frankel Dep. 26: 4-13; Frankel Declaration (Doc. 16-1) at ¶12) | |

| 10.<br><br>On July 1, 2015, Alpine, Scottsdale, and Frankel entered into a second nondisclosure agreement entitled the "Employee Nondisclosure & Computer Use Agreement" ("Nondisclosure & Use Agreement"). Hurry Depo. 36:23-37:6; Exh. 4<br><br>Cruz Decl. ¶ 7 Exh. 2<br><br>Frankel Depo. 54:18-55:8; Exh. 5 | Admit | |
| --- | --- | --- |
| 11.<br><br>The Nondisclosure & Use Agreement defined "Confidential Information" as:<br><br>  "(a) technical information concerning Company's products and services, including product know-how, formulas, designs, devices, diagrams, software code, test results, processes, inventions, research projects and product development, technical memoranda and correspondence; (b) information concerning Company's business, including cost information, profits, sales information, accounting and unpublished financial information, business plans, markets and marketing methods, customer lists and customer information, purchasing techniques, supplier lists and supplier information and | Admitted that the plaintiffs appear accurately to have quoted Provision 1 of the Employee Nondisclosure & Computer Use Agreement (Doc 118-4) including the requirements at the end that Confidential "information not generally [be] known to the public" and be information that "if misused or disclosed, could reasonably be expected to adversely affect Company's business." Frankel never conceded that he used or disclosed any information which could reasonably have been expected adversely to affect the plaintiffs | Document speaks for itself.<br><br>Frankel improperly proffers legal argument. |

| | | |
|---|---|---|
| advertising strategies; (c) information concerning Company's employees, including salaries, strengths, weaknesses and skills; (d) information submitted by Company's customers, suppliers, employees, consultants or co-venture partners with Company for study, evaluation or use; and (e) any other information not generally known to the public which, if misused or disclosed, could reasonably be expected to adversely affect Company's business. Hurry Depo. Exh. 4 ¶ 1<br><br>Frankel Depo. 54:18-55:8; Exh. 5 ¶ 1 | | |
| 12.<br><br>The Nondisclosure and Use Agreement limited Frankel's access to Confidential Information through the following provisions:<br><br>As part of Employee's duties, Employee will have access to Company's Electronic Communication Systems (ECS), which includes without limitation, its computers, network systems, Internet connection, Intranet, electronic mail, voicemail, facsimiles, telephones and other information systems used for the transmission of electronic communications. As a condition of employment, Employee | Deny. The plaintiffs again misrepresented Frankel's testimony. The plaintiffs did not ask Frankel about his understanding of quoted Provision 6 in the Employee Nondisclosure & Computer Use Agreement (Doc. 118-4) and particularly sub paragraph (f)(7), purporting to restrict use of private health and medical risk management information. Sub-paragraph (f)(7) prohibited transmission of "confidential patient, business or risk management information to any non-Company email address." The only reasonable interpretation of sup paragraph (f)(7) is that it prohibited email | Document speaks for itself.<br><br>Frankel improperly proffers legal argument. |

| | | |
|---|---|---|
| agrees to the following restrictions on the access and use of Company's ESS:<br><br>(a) Any access and use of ESS is strictly limited for purposes relating to Employee's duties and responsibilities as an employee, official business within Company and other activities approved in writing (including e-mail approval) by Company.<br>…<br>(d) Employee will only access those computing resources that he/she has authorization from Company to use and will only use such resource in carrying out his/her job duties.<br>…<br>(f) Prohibited actions using Company's ECS include, but are not limited to the following: … using the system for illegal or criminal activities, commercial ventures, private profit, religious or political causes, any form of solicitation (except those approved by Company); [and] transmitting confidential patient, business or risk management information to any non-Company email address.<br>Hurry Depo. Exh. 4 ¶ 6<br><br>Frankel Depo. 54:18-55:8; Exh. 5 ¶ 6 | transmission of confidential information to non-company employees. The plaintiffs have adduced no evidence that Frankel ever transmitted any of their confidential information to an email address of any non-company employee or representative. | |

| | | |
|---|---|---|
| 13.<br><br>The Nondisclosure and Use Agreement also required that Frankel "shall keep Company's Confidential Information, whether or not prepared or developed by [Frankel], in the strictest confidence. [Frankel] will not disclose such information to anyone outside Company without Company's prior written consent. Nor will [Frankel] make use of any Confidential Information for [Frankel's] own purposes or the benefit of anyone other than Company." Hurry Depo. Exh. 4 ¶ 2<br><br>Frankel Depo. 54:18-55:8; Exh. 5 ¶ 2 | Admit that Alpine and Scottsdale self-servingly claimed in the first sentence of Provision 2 of the Employee Nondisclosure & Computer Use Agreement (Doc. 118-4) that their Confidential Information qualified as trade secrets under Arizona's Trade Secret Act. Admit that the plaintiffs accurately quoted the second sentence of Provision 2, but omitted the limitations in Provision 2(a),(b), and (c), which state that information is not confidential if Frankel already knew about the information, if the information is publically available, or if Frankel lawfully obtained the information from a source other than Alpine or Scottsdale. Frankel did not concede disclosing to third parties, or using for his own benefit, any information which satisfied all requirements of Provision 2. | Document speaks for itself.<br><br>Frankel improperly proffers legal argument. |
| 14.<br><br>Upon Frankel's termination from Alpine, the Nondisclosure and Use Agreement mandated that he "promptly deliver to Company all originals and copies of all documents, records, software programs, media and other materials containing any Confidential Information. Employee will also return to Company all equipment, files, software programs and other personal | Deny. Frankel continued as a non-exclusive consultant for Alpine until October 31, 2018. (Frankel Dep. 26: 4-13; Frankel Declaration (Doc. 16-1) at ¶12). The plaintiffs did not ask Frankel in his deposition, at pages 54 and 55 or anywhere else, about his understanding of or compliance with Provision 4 of the Employee Nondisclosure & Computer Use Agreement. Provision 4 stated that Frankel would | Document speaks for itself.<br><br>Frankel improperly proffers legal argument. |

| | | |
|---|---|---|
| property belonging to Company." Hurry Depo. Exh. 4 ¶ 4<br><br>Frankel Depo. 54:18-55:8; Exh. 5 ¶ 4 | "promptly deliver … all documents … containing any Confidential Information" upon termination of his employment with Alpine. (Doc. 118-4 at Provision 4). Frankel tried "promptly" to return Confidential Information by offering to deliver all documents containing Confidential Information, if the plaintiffs would tell him what they considered confidential, or all documents, if the plaintiffs could not decide what was confidential. The plaintiffs ignored Frankel's offer and sued him less than 10 business days after Frankel received the plaintiffs' demand. In their demand, the plaintiffs referenced and attached the Initial Nondisclosure Agreement, not the Employee Nondisclosure & Computer Use Agreement. The Initial Nondisclosure Agreement gave Frankel ten business days to return confidential documents after receipt of written request from the plaintiffs. (Frankel Declaration and attachments (Doc. 16-1 through 16-5). | |
| 15.<br><br>Beginning in or about June 2015, and continuing through September 2018, The Trust, Alpine, and Scottsdale complied with their respective obligations under the NDA and Nondisclosure & Use Agreement by providing | Deny. The plaintiffs misrepresented Frankel's testimony. Frankel did not concede in the cited excerpts or elsewhere that the plaintiffs provided him with information which "could reasonably be expected to adversely affect Company's business," as required by | Frankel improperly proffers legal argument. |

| | | |
|---|---|---|
| Frankel with access to the information by which he needed for his employ, i.e., the Plaintiffs' business practices, financial relationships and terms of those relationships, client lists, pricing information, and private financial information of the Plaintiffs and their clients. Hurry Depo. 68:11-69:1; 78:15-19; 126:11-19; Exh. 12<br><br>Cruz Decl. ¶ 8<br><br>Frankel Depo. 38:4-19; 39:23-40:10: 115:3-116:16 | 1(e) of the Employee Nondisclosure & Computer Use Agreement (Doc 118-4). At page 38: 4-18, Frankel said he had some interaction with clients while working and consulting for Alpine. At pages 39: 23-25; 40: 1-10, Frankel said he did not recognize and had never looked at the Trust documents which he sent to himself. At pages 170: 6-25; 171: 1-4; 115: 3-15; 116: 1-16, Frankel explained that he sent himself the email on October 7, 2018, which included Trust documents as attachments, simply to get the current email address of persons at Ascensus with whom he had worked for 20-plus years, and that he did not care about, misuse, or disclose the attachments. Frankel did not concede disclosing the attachments to anyone or using them for his own benefit or to harm the plaintiffs. | |
| 16.<br><br>On numerous occasions, without Plaintiffs knowledge or consent, Frankel would access Plaintiffs' Confidential Information for his own personal uses. Frankel Depo. 40:8-41:19; 43:19-44:7; 44:14-17; 59:15-60:10; 60:23-62:2; 62:16-63:17; 66:18-67:1; 67:15-17: 69:13-70:14; 70:24-71:2: 71:21-23; 76:2-77:16; 78:11-14; 79:20-80:15; 81:6-8; 86:15-20; 89:11-90:15; 91:5-7; 92:1-12; 92:19-93:6; 114:5-14; 115:3-18; | Deny. Frankel never conceded that any of the plaintiffs' information was confidential under the operative provisions of the Nondisclosure Agreements. Frankel never conceded that he misused or disclosed confidential information. Frankel never conceded that he accessed confidential information in contravention of sub-paragraph (f)(7), prohibiting transmission of "confidential patient, business or risk management | On September 18, 2018, Frankel sent a term sheet for a secured revolving credit facility belonging to Alpine to his personal email account to use as a template for his personal use. Frankel Depo. 62:16-63:17<br><br>On October 7, 2018, Frankel emailed a number of Alpine's confidential documents to his personal email address.  Frankel |

| | | |
|---|---|---|
| 116:11-117:2; 117:16-121:14; 122:10-124:1; 124:10-18; 125:10-22; 128:14-129:20; 130:7-131:20; 132:6-133:19; 134:1; 135:14-136:25; 137:6-8; 152:13-153:13; 155:2-156:5; Exhs. 2, 6—19 | information to any non-Company email address." Frankel never conceded emailing any "Confidential Information" to non-employees or non-representatives of Alpine or Scottsdale. Frankel testified as follows in the citations which the plaintiffs have misrepresented as supporting Fact 16: Frankel Dep. 40: 8-25; 41: 1-19; 43: 19-25; 44: 1-7; 44: 14-17 (Frankel never looked at, cared about, misused, or disclosed Trust documents); Frankel Dep. 59: 15-25; 60: 1-10; 60: 23-25; 61: 1-25; 62: 1-2; 63: 16-17 (Frankel considered using loan document subject headings for a template to create a possible capital raise document, but Frankel never created capital raise document and never raised capital; no admission that Frankel misused or disclosed loan document); Frankel Dep. 66: 18-25; 67:1; 67: 15-17; 69: 13-25; 70: 1-14; 70: 24-25; 71: 1-2; 71: 21-23 (No admission that Frankel misused or disclosed employee's draft employment agreement; to the contrary, Frankel testified that he worked on draft employment agreement for Alpine to try to retain employee for Alpine); Frankel Dep. 76: 2-25; 77: 1-16; 78: 11-14 (No admission that Frankel emailed himself FINRA 3120 Report in 2016 for any reason other than to | admitted he needed the contact information therein "to help another group try to become a nonbank custodian." Frankel Depo. 117:16-121:14

After he left Alpine, Frankel obtained a confidential trade blotter from an employee at Alpine, and sent it to a third party in an effort to obtain another broker dealer. Frankel Depo. 152:13-153:13; 155:2-156:5 |

|  | work on document for Alpine); Frankel Dep. 79: 20-25; 80: 1-15; 81: 6-8 (No admission that Frankel emailed himself FINOP Pre-Exit Meeting Report in 2016 for any reason other than to work on document for Alpine); Frankel Dep. 86: 15-20; 88: 4-25; 89: 1-10; 89: 11-25; 90: 1-15; 90: 16-25; 91: 1-4; 91: 5-7 (Frankel emailed himself list of top 50 clients as "wrap-up" work for Alpine to determine adverse impact Hurry's proposed fee increase might have on Alpine's business; did not disclose list or use for personal benefit); Frankel Dep. 92: 1-12; 92: 19-25; 93: 1-6; 94: 24-25; 95: 1-7 (Frankel emailed himself loan term sheet to work on the term sheet for Alpine; Frankel did not disclose term sheet, did not use for personal benefit, and did not use to harm Alpine or Scottsdale); Frankel Dep. 114: 5-14; 115: 3-18; 116: 11-25; 117: 1-15; 117: 16 - 121: 16 (Frankel sent himself email regarding non-custodial bank application to get current addresses of Acsensus employees with whom he had worked for 20-plus years (121: 5-16); Frankel did not send email or attachments to anyone else; Frankel did not disclose attachments, or use attachments for his benefit or to harm Alpine or Scottsdale); Frankel Dep. |  |

122: 10 – 124:2 (In July
2017, Frankel emailed
himself Gribben consulting
agreement to work on
agreement for Alpine);
Frankel Dep. 124: 10-18;
125: 10-22; 127: 3-24 (On
May 2, 2017, Frankel sent
himself FINRA inquiry to
work on inquiry for Alpine);
Frankel Dep. 128: 14 – 129:
20 (In 2017, Frankel sent
himself public relations
document to work on for
Alpine); Frankel Dep. 130: 7
– 131: 20 (In January 2017,
Frankel sent himself FINRA
inquiry to work on for
Alpine); Frankel Dep. 132: 6
– 133: 19 (On August 28,
2016, Frankel sent himself
FINRA inquiry to work on
for Alpine); Frankel Dep.
134:1 – 137:8 (On August
15, 2016, Frankel sent
himself FINRA inquiry to
work on for Alpine); and
Frankel Dep. 152: 13 – 154:
1; 155: 2 – 156: 17; 29: 6-23
(Frankel lawfully requested
and obtained what he
understood to be a sample
trade blotter, which
contained publicly available
information. Frankel sent the
sample blotter to Ziv, a
Chicago broker-dealer, as a
sample of type of business
Frankel "would like to do" if
he were to acquire Ziv (or
any other brokerdealer).
Frankel did not ask for
Alpine's trade runs. The
sample blotter did not
identify Alpine or Scottsdale
as broker-dealer, and did not

|  |  |  |
|---|---|---|
|  | identify any customers. Frankel never acquired Ziv (or any other broker-dealer). |  |
| 17.<br><br>On August 15, 2016, Frankel sent an email containing Confidential Information and Plaintiff's documents from his employee email account to his personal email account. Frankel Depo. 134:1; 135:14-136:25; Exh. 18 | Deny. Frankel Dep. 134:1 – 137:8 (On August 15, 2016, Frankel sent himself FINRA inquiry to work on for Alpine). | Frankel admitted that the document he sent to his personal email address contained information that is not publicly known. |
| 18.<br><br>On August 28, 2016, Frankel sent an email containing Confidential Information and Plaintiff's documents from his employee email account to his personal email account. Frankel Depo. 132:6-133:19; Exh. 17 | Deny. Frankel Dep. 132: 6 – 133: 19 (On August 28, 2016, Frankel sent himself FINRA inquiry to work on for Alpine) | Frankel admitted that the document he sent to his personal email address contained information that is not publicly known. |
| 19.<br><br>On October 6, 2016, Frankel sent an email containing Confidential Information and Plaintiff's documents from his employee email account to his personal email account. Frankel Depo. 79:20-80:15; 81:6-8; Exh. 9 | Deny. Frankel Dep. 79: 20-25; 80: 1-15; 81: 6-8 (No admission that Frankel emailed himself FINOP Pre-Exit Meeting Report in October 2016 for any reason other than to serve Alpine's interests). | Frankel admitted that the document he sent to his personal email address contained information that is not publicly known. |
| 20.<br><br>On October 13, 2016, Frankel sent an email containing Confidential Information and Plaintiff's documents from his employee email account to his personal email account. Frankel Depo. 76:2-77:16; 78:11-14; Exh. 8 | Deny. Frankel Dep. 76: 2-25; 77: 1-16; 78: 11- 14 (No admission that Frankel emailed himself FINRA 3120 Report in October 2016 for any reason other than to serve Alpine's interests). | Frankel admitted that the document he sent to his personal email address contained information that is not publicly known. |

| | | |
|---|---|---|
| 21.<br><br>On January 3, 2017, Frankel sent an email containing Confidential Information and Plaintiff's documents from his employee email account to his personal email account. Frankel Depo. 130:7-131:20; Exh. 16 | Deny. Frankel Dep. 130: 7 – 131: 20 (In January 2017, Frankel sent himself FINRA inquiry to work on inquiry for Alpine). | Frankel admitted that the document he sent to his personal email address contained information that is not publicly known. |
| 22.<br><br>On April 12, 2017, Frankel sent an email containing Confidential Information and Plaintiff's documents from his employee email account to his personal email account. Frankel Depo. 128:14-129:20; Exh. 15 | Deny. Frankel Dep. 128: 14 – 129: 20 (In 2017, Frankel sent himself public relations document to work on for Alpine). | Frankel admitted that the document he sent to his personal email address contained information that is not publicly known. |
| 23.<br><br>On May 2, 2017, Frankel sent an email containing Confidential Information and Plaintiff's documents from his employee email account to his personal email account. Frankel Depo. 124:10-18; 125:10-22; Exh. 14 | Deny. Frankel Dep. 124: 10-18; 125: 10-22; 127: 3-24 (On May 2, 2017, Frankel sent himself FINRA inquiry to work on inquiry for Alpine). | Frankel admitted that the document he sent to his personal email address contained information that is not publicly known. |
| 24.<br><br>On July 13, 2017, Frankel sent an email containing Confidential Information and Plaintiff's documents from his employee email account to his personal email account. Frankel Depo. 122:10-124:1; Exh. 13 | Deny. Frankel Dep. 122: 10 – 124:2 (In July 2017, Frankel emailed himself Gribben consulting agreement to work on for Alpine). | Frankel admitted that the document he sent to his personal email address contained information that is not publicly known. |
| 25.<br><br>On August 31, 2017, Frankel sent an email containing Confidential Information and | Deny. Frankel Dep. 92: 1-12; 92: 19-25; 93: 1- 6; 94: 24-25; 95: 1-7 (Frankel emailed himself loan term sheet to work on the term sheet for | Frankel admitted that the document he sent to his personal email address |

| | | |
|---|---|---|
| Plaintiff's documents from his employee email account to his personal email account. Frankel Depo. 92:1-12; 92:19-93:6; 94:24-95:1; Exh. 11 | Alpine; he did not disclose term sheet, and he did not use for personal benefit or to harm Alpine or Scottsdale). | contained information that is not publicly known. |
| 26.<br><br>On July 31, 2018, Frankel sent an email containing Confidential Information and Plaintiff's documents from his employee email account to his personal email account. Frankel Depo. 86:15-20; 89:11-90:15 Exh. 10 | Deny. Frankel Dep. 86: 15-20; 88: 4-25; 89: 1- 10; 89: 11-25; 90: 1-15; 90: 16-25; 91: 1-4; 91: 5-7 (Frankel emailed himself list of top 50 clients as "wrap-up" work for Alpine to determine adverse impact Hurry's proposed fee increase might have on Alpine's business; did not disclose list or use for personal benefit). | Frankel admitted that the document he sent to his personal email address contained information that is not publicly known. |
| #.<br><br>August 8, 2018, Frankel sent an email containing Confidential Information and Plaintiff's documents from his employee email account to his personal email account. Frankel Depo. 66:18-67:1; 67:15-17; 69:13-70:14; 70:24-71:2; Exh. 7 | Deny. Frankel Dep. 66: 18-25; 67:1; 67: 15-17; 69: 13-25; 70: 1-14; 70: 24-25; 71: 1-2; 71: 21- 23 (No admission that Frankel ever misused or disclosed employee's draft employment agreement; Frankel worked on draft employment agreement for Alpine to try to retain employee for Alpine) | Frankel admitted that the document he sent to his personal email address contained information that is not publicly known. |
| 27.<br><br>On September 18, 2018, Frankel sent an email containing Confidential Information and Plaintiff's documents from his employee email account to his personal email account. Frankel Depo. 59:15-60:10; 60:23-62:2; 62:16-18; Exh. 6 | Deny. Frankel Dep. 59: 15-25; 60: 1-10; 60: 23- 25; 61: 1-25; 62: 1-2; 63: 16-17 (Frankel considered using loan document for its subject headings as template to create possible capital raise document, but never raised capital and never created capital raise document; no admission that Frankel misused or disclosed loan document). | Frankel admitted that the document he sent to his personal email address contained information that is not publicly known.<br><br>Frankel admitted that he sought to use the document as a template for his personal use. |
| 28. | Deny. Frankel Dep. 40: 8-25; 41: 1-19; 43: 19- 25; 44: 1-7; | |

| On October 7, 2018, Frankel sent emails containing Confidential Information and Plaintiff's documents from his employee email account to his personal email account. Frankel Depo. 40:8-41:19; 43:19-44:7; 114:5-14; 115:3-8; 116:11-117:3: 117:16-20; 119:1-121:4; Exhs. 2, 12 | 44: 14-17 (Frankel never looked at, cared about, disclosed, or misused Trust documents). Deny. Frankel Dep. 114: 5-14; 115: 3-18; 116: 11-25; 117: 1-15; 117: 16 - 121: 16 (Frankel sent himself email regarding non-custodial bank application to get current addresses of Acsensus employees with whom he had worked for 20-plus years (121: 5-16); Frankel did not send email or attachments to anyone else, and Frankel did not use attachments for his benefit or to harm Alpine or Scottsdale). | Frankel admitted that the document he sent to his personal email address contained information that is not publicly known.

Frankel admitted he needed the contact information therein "to help another group try to become a nonbank custodian." |
| 29.

Frankel also directed an Alpine employee to gather and give him two days' worth of Alpine's trade runs. Frankel Depo. 152:13-153:13; 155:2-6; Exh. 20 | Deny. Frankel Dep. 152: 13 – 154: 1; 155: 2 – 156: 17; 29: 6-23 (Frankel lawfully requested and obtained what he understood to be a sample trade blotter, which contained publicly available information, and Frankel sent the sample blotter to Ziv, a Chicago broker-dealer, as a sample of the type of business Frankel "would like to do" if he were to acquire Ziv (or any other brokerdealer). Frankel did not ask for Alpine's trade runs. The sample blotter did not identify Alpine or Scottsdale as broker-dealer, and did not identify any customers. Frankel never acquired Ziv (or any other broker-dealer). | Frankel improperly proffers legal argument. |
| 30.

The blotter of Alpine's trade runs is proprietary to Alpine as | Deny. Hurry Dep. 90: 15 – 91: 10 (Hurry acknowledged that the blotter does not identify Alpine or the | Frankel improperly proffers legal argument. |

| | | |
|---|---|---|
| it is shows all of the trades cleared through Alpine on those dates.  This information is not publicly available, and Alpine derives economic advantages by the public not knowing this information.  This material was not provided by Alpine to Frankel. Cruz Decl. ¶ 9<br><br>Frankel Depo. 155:2-6 | customers who made the trades, and that the blotter is only confidential if coupled with identification of the customers who made the trades). At page 155: 2-6, Frankel acknowledged that the anonymous trades on the blotter, while publicly available, would not necessarily be listed in the format on the blotter. Frankel explained that he lawfully requested and obtained what he understood to be a sample trade blotter, and that he sent the sample blotter to Ziv, a Chicago broker-dealer, as a sample of type of business Frankel "would like to do" if he were to acquire Ziv (or any other brokerdealer). Frankel did not ask for Alpine's trade runs. The sample blotter did not identify Alpine or Scottsdale as broker-dealer, and did not identify any customers. Frankel never acquired Ziv (or any other broker-dealer). (Frankel Dep. 152: 13 – 154: 1; 155: 2 – 156: 17; 29: 6-23). | |
| 31.<br><br>Frankel's employment was terminated in October 2018. Hurry Depo. 61:24-62:6<br><br>Frankel Depo. 26:4-10 | Deny. Frankel's employment as Alpine's CEO terminated on August 1, 2018, but he continued as a non-exclusive consultant for Alpine through October 31, 2018. (Frankel Dep. 22: 13-20; 26: 4-13; Frankel Declaration (Doc. 16- 1) at ¶12) | |
| 32.<br><br>Upon his termination, Frankel did not notify Plaintiffs that he | Deny. Frankel continued as a non-exclusive consultant for Alpine until October 31, 2018. (Frankel Dep. 26: 4- | |

| | | |
|---|---|---|
| had their documents in his possession, nor did Defendant delete or return said documents. Cruz Decl. ¶ 10<br><br>Frankel Depo. 44:24-45:4; 63:18-22; 64:16-19; 66:2-4; 71:21-23; 75:18-24: 78:11-14; 78:18-20; 85:8-18; 90:19-24; 96:12-14; 122:1-7; 124:3-8; 127:25-128:13; 129:21-130:4; 131:21-132:3; 133:20-25: 137:13-21 | 13; Frankel Declaration (Doc. 16-1) at ¶12). Frankel received the plaintiffs' demand for return of their documents containing Confidential Information on Friday, November 9, 2018. On the next business day, Monday, November 12, Frankel sent an email to plaintiffs' counsel offering to return the plaintiffs' documents containing Confidential Information if the plaintiffs would tell him what they considered confidential, or all documents if the plaintiffs could not decide what was confidential. The plaintiffs ignored Frankel's offer and sued him less than 10 business days after Frankel received the plaintiffs' demand. In their demand, the plaintiffs only referenced and attached the Initial Nondisclosure Agreement; they did not reference or attach the Employee Nondisclosure & Computer Use Agreement. The Initial Nondisclosure Agreement gave Frankel ten business days to return confidential documents after receipt of written request from the plaintiffs. (See Frankel's Declaration (16-1), plaintiffs' demand and referenced Non-Disclosure Agreement (16- 4), and Frankel's timely reply (16-5). Frankel testified that he deleted the plaintiff's | Frankel improperly proffers legal argument and extraneous facts. |

| | | |
|---|---|---|
| | documents after a computer consultant retrieved them and Frankel produced them with his initial disclosures on February 1, 2019. (Frankel Dep. 47, 1-17); Frankel's initial disclosures served February 1, 2019 (Doc. 35-3)). | |
| 33.<br><br>On November 9, 2018, Plaintiffs sent a letter to Frankel, requesting the return of all documents, records, and/or copies thereof in his possession, custody, or control that contain any Confidential Information. Frankel Depo. 46:5-22; Exh. 3 | Frankel admits that he received the plaintiff's letter demanding return of their documents containing Confidential Information on Friday, November 9, 2018. (See Frankel Declaration (Doc. 16-1, 16-4, and 16-5)). | |
| 34.<br><br>Despite having Plaintiffs' documents in his possession, Frankel did not return any documents in response to this request. Frankel Depo. 46:23-25 | Deny. The plaintiffs 'demand letter represented that the Initial Nondisclosure Agreement required Frankel to return the plaintiffs' documents 10 business days after his receipt of written demand. On the next business day, Monday, November 12, after receiving the plaintiffs' demand on Friday, November 9, 2018, Frankel sent an email to plaintiffs' counsel offering to return the plaintiffs' documents containing Confidential Information, if the plaintiffs would tell him what they considered confidential, or all documents, if the plaintiffs could not decide what was confidential. The plaintiffs ignored Frankel's offer and | Frankel improperly proffers legal argument and extraneous facts |

| | | |
|---|---|---|
| | sued him less than 10 business days after Frankel received the plaintiffs' demand. In their demand, the plaintiffs only referenced and attached the Initial Nondisclosure Agreement; they did not reference or attach the Employee Nondisclosure & Computer Use Agreement. The Initial Nondisclosure Agreement gave Frankel ten business days to return confidential documents after receipt of written request from the plaintiffs. (See Frankel's Declaration (16-1), plaintiffs' demand and referenced Non-Disclosure Agreement (16-4), and Frankel's timely reply (16-5). | |
| 35.<br><br>On February 11, 2019, Frankel made his first document production, which included Plaintiffs' documents and information that Frankel previously emailed to himself. Susman Decl. ¶ 4.<br><br>Frankel Depo. 45:24-46:1; 66:2-4; 75:21-24: 85:14-18; 90:22-24; 122:5-7; 124:6-8; 128:8-13; 130:2-4; 132:1-3; 133:23-25: 137:19-21 | Frankel admits that he engaged a forensic computer expert to retrieve all emails and documents received at his personal email addresses and that Frankel produced these emails and documents in accordance with the protocol described in his Initial Disclosures served on February 1, 2019. (Doc. 35-3). | |
| 36.<br><br>Shortly after Frankel's termination from Alpine and after Plaintiffs requested the return of their information, Frankel sent the trade run | Deny. Frankel Dep. 152: 13 – 154: 1; 155: 2 – 156: 17; 29: 6-23 (Frankel lawfully requested and obtained what he understood to be a sample | Frankel improperly proffers legal argument and extraneous facts |

| | | |
|---|---|---|
| document to the owner of a broker-dealer that he was attempting to purchase as evidence of the amount of daily activity that he believed he could achieve. Frankel Depo. 152:13-23; 155:7-156:5; 156:13-17; Exh. 20 | trade blotter, which contained publicly available information. Frankel sent the sample blotter to Ziv, a Chicago broker-dealer, as a sample of type of business Frankel "would like to do" if he were to acquire Ziv (or any other brokerdealer). Frankel did not ask for Alpine's trade runs. The sample blotter did not identify Alpine or Scottsdale as broker-dealer, and did not identify any customers. Frankel never acquired Ziv (or any other broker-dealer). | |
| 37.<br><br>Frankel also worked with AtlasBanc Holdings Corporation / Atlas FinTech Holdings Corp. to acquire Koonce Securities. Frankel Depo. 36:7-12; 147:2-18<br><br>Susman Decl. ¶¶ 5, 6 Exh. 1 | Deny. While working as a non-exclusive consultant for Alpine, Frankel also consulted for AtlasBanc Panama concerning its effort to buy a US broker-dealer. AltasBanc Panama never "consummated" the purchase. Frankel was a non-exclusive consultant who was permitted to consult with AtlasBanc concerning its failed effort to acquire a US broker-dealer. (Frankel Dep. 36: 3 - 37: 10; 146: 25 – 147: 18; Frankel Declaration (Doc. 16-1) at ¶12). | Frankel improperly proffers legal argument and extraneous facts. |
| 38.<br><br>Frankel provided Alpine's trade runs to Atlas, Koonce, and the DTCC.  Susman Decl. ¶¶ 5, 7 Exh. 2 | Deny. Frankel explained that he lawfully requested and obtained what he understood to be a sample trade blotter, and that he sent the sample blotter to Ziv, a Chicago broker-dealer, as a sample of type of business Frankel "would like to do" if he were to acquire Ziv (or any other | Frankel improperly proffers legal argument and extraneous facts.<br><br>Frankel improperly did not produce in discovery the trade blotter or his communications with Atlas, Koonce or the DTCC. |

| | broker-dealer). Frankel did not ask for Alpine's trade runs. The sample blotter did not identify Alpine or Scottsdale as broker-dealer, and did not identify any customers. Frankel never acquired Ziv (or any other broker-dealer). (Frankel Dep. 152: 13 – 154: 1; 155: 2 – 156: 17; 29: 6-23). The plaintiffs did not ask Frankel about, and did not have him authenticate, Frankel's alleged submissions of the sample blotter to Atlas, Koonce, or DTCC. Frankel's alleged submissions of the blotter to Atlas, Koonce, or DTCC may not, therefore, be considered on summary judgment, but even if the alleged submissions could be considered, Frankel's responses about his submission of the blotter to Ziv make clear that Frankel did nothing wrong. | |
|---|---|---|

Dated this 4th day of October 2019.

/s/ Jordan Susman
Charles J. Harder, Esq.
Jordan Susman, Esq.
HARDER LLP
132 South Rodeo Drive, Fourth Floor
Beverly Hills, CA  90212-2406
Tel: (424) 203-1600
Fax: (424) 203-1601
E-mail:  charder@harderllp.com
E-mail:  jsusman@harderllp.com

Kenneth G. Turkel – FBN 867233
Shane B. Vogt – FBN 257620
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900

Tampa, Florida 33602
Tel:  (813) 443-2199
Fax: (813) 443-2193
E-mail:  kturkel@bajocuva.com
E-mail:  svogt@bajocuva.com
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 4, 2019, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

*/s/ Jordan Susman*
Attorney
