UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE HURRY FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

    Plaintiffs,

v.                                                                                  Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

    Defendant.
_____/

CHRISTOPHER L. FRANKEL,

    Counter-claimant,

v.

CAYMAN SECURITIES CLEARING
AND TRADING LTD; THE HURRY
FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

    Counter-defendants.
_____/

**Frankel's Request for Judicial Notice of**
**Alpine's Business Failure / Damage Admissions in SEC Regulatory Action**

The defendant, Christopher L. Frankel, through counsel and under Federal Rule of Civil Procedure 201(b)(2), (c)(2), and (d), requests the Court to take judicial notice of the following admissions by the plaintiff, Alpine Securities Corporation ("**Alpine**"), in the United States Securities and Exchange Commission's action filed against Alpine on June 5, 2017, over a year before Alpine has alleged in its lawsuit against Frankel that Frankel began misappropriating

Alpine's allegedly confidential information in 2018 (Doc. 61). On October 9, 2019, Judge Denise Cote entered a civil penalty judgment for the SEC and against Alpine for $12,000,000. *See* Permanent Injunction and Final Judgment Against Alpine Securities Corporation (Doc 241) in case no. 17-cv-4179-DLC (S.D.N.Y., October 9, 2019), attached as **Exhibit A**. In response to the $12 million judgment, Alpine has filed the following memorandum and declaration in which Alpine has made following admissions regarding the destruction of Alpine's business caused by the SEC action:

1. On October 10, 2019, Alpine filed an emergency motion and memorandum to stay the $12,000,000 judgment in the United States Court of Appeals for the Second Circuit. *See* Memorandum of Law in Support of Emergency Motion by Defendant-Appellant [Alpine] for Stay Pending Appeal (Doc 17-2) in *U.S. Securities and Exchange Commission v. Alpine Securities Corp.*, Case no. 19-3272 (2d Cir., October 10,2019), attached as **Exhibit B**. In its memorandum, Alpine stated:

- that the SEC's judgment "will force closure of Alpine absent a stay" (*id.* at 2);

- that Alpine "will not be able to survive to pursue its appeal absent a stay" (*id.* at 2, n.2);

- that "Alpine has limited capital of less than $1,500,000.00, is presently operating at a loss, and cannot pay the $12 million civil penalty imposed by the district court" (*id.* at 9); and

- that Alpine cannot survive "unless the judgment is stayed prior to November 8, 2019" (*id.* at 10).

2. In its memorandum, Alpine attributed its failure to the SEC's action, not to any misappropriation of confidential information by Frankel. (Ex. B at 10). Alpine admitted that the SEC's action (combined with changes in settlement of microcap securities) have led to a "dramatic decline" in revenue for Alpine, which "is struggling even to regain profitability." Alpine stated:

> Alpine is a small regional clearing firm that has incurred ***enormous expense and reputational and economic harm, including loss of its relationships with its customers and critical counterparties, because of this [SEC] proceeding***. Those circumstances, combined with dramatic changes imposed by the National Securities Clearing Corporation ("NSCC") in relation to settlement of microcap transactions, have led to a ***dramatic decline in its revenues*** and the firm is ***struggling even to regain profitability***.

(Ex. B at 10) (emphasis added).

3. Alpine filed with its emergency motion and memorandum to stay the SEC's $12,000,000 judgment the declaration of Maranda Fritz. *See* Declaration of Maranda Fritz in Support of Defendant-Appellant's Emergency Motion for a Stay Pending Appeal (Doc 17-4), attached as **Exhibit C**.

4. In her declaration, Ms. Fritz described how Alpine has lost customers to competitors based on prediction of Alpine's demise from the SEC action:

> The SEC's case against Alpine [on June 5, 2017] has substantially and negatively altered Alpine's business. ***As a result of [the SEC's] case, Alpine's competitors have been contacting Alpine's customers and predicting the demise of the firm as a way to draw these customers away from Alpine***.

(Fritz Decl. ¶ 217 (citing Doubek Decl. ¶ 5) (emphasis added)).

5. Ms. Fritz also described other reasons for the demise of Alpine's business, none of which she attributed to Frankel. Ms. Fritz stated:

- "Alpine is also facing severe collateral regulatory consequences, with FINRA and the Deposit Trust Company ('DTC') representatives citing the fact of this case and the penalty amount as an issue in relation to whether Alpine should be able to continue as a member or be allowed to continue trading. If Alpine is found to have failed to satisfy its net capital and deposit requirements, it will no longer be allowed to trade, and regulators have contended that the judgment, if not stayed, will impact those calculations." (Fritz Decl ¶ 218 (citing Doubek Decl. ¶ 6)).

- "Also, Alpine is a clearing broker member in good standing of the National Securities Clearing Corporation ("NSCC") and a DTC participant and must use the NSCC's services to settle all of its trades." (Fritz Decl. ¶ 219 (citing Doubek Decl. ¶ 7)).

- "During this same period of time as Alpine's case with the SEC, NSCC has continuously increased the fees and deposits required for microcap transactions to the point where the volume of transactions that can be conducted by Alpine is dramatically reduced. NSCC also has cited this [SEC] case as a reason why it is imposing on Alpine deposit requirements, based on criteria associated with their credit risk parameters, that are literally double the amount required of similar firms conducting similar transactions."  (Fritz Decl. ¶ 220 (citing Doubek Decl. ¶ 8)).

- "Alpine previously held a line of credit with Alpine Securities Holding Corporation, however that line has recently been terminated by the lender. This has negatively impacted Alpine's ability to trade and thereby generate revenue." (Fritz Decl. ¶ 221 (citing Doubek Decl. ¶ 9)).

- "Alpine has also recently lost multiple critical executing relationships, directly impacting its ability to trade, for reasons directly related to the SEC issue and concerns raised regarding the amount of the penalty imposed by the district court."  (Fritz Decl. ¶ 222).

- "Thus, Alpine is facing enormous financial challenges and is currently operating at a loss." (Fritz Decl. ¶ 223 (citing Doubek Decl. ¶ 11)).

- "Given the relatively small size of the firm, the fact that it is already financially struggling, that its business has been substantially reduced, and that its compliance and legal costs continue to increase, Alpine has not been able to access additional capital at this point either from third parties or from its direct or indirect owners to pay the penalty or secure a bond for the judgment entered in this case for $12,000,000." (Fritz Decl. ¶ 224 (citing Doubek Decl. ¶ 12)).

6. Alpine attached the declaration of Christopher Doubek, Alpine's Chief Executive Officer and Chief Compliance Officer, as an exhibit to Ms. Maranda's declaration. *See* Declaration of Christopher Doubek, attached as **Exhibit D**.

7. Like Ms. Fritz, Mr. Doubek described the reasons for the demise of Alpine's business, none of which he attributed to Frankel:

- "The SEC's case against Alpine has substantially and negatively affected Alpine's relationships with its customers and its counterparties. For example, Alpine's competitors have been contacting Alpine's customers and predicting the demise of the firm as a way to draw these customers away from Alpine." (Doubek Decl. ¶ 23).

- Mr. Doubek wrote at paragraph 24: "NSCC has continuously increased the fees and deposits required for microcap transactions to the point where the volume of

    transactions that can be conducted by Alpine is dramatically reduced. This factor has not changed since the filing of Mr. Brant's Declaration [on June , 2019] and has also become worse. I have been in communication with representatives of NSCC who have cited this [SEC] case as a reason why it is imposing on Alpine deposit requirements, based on criteria associated with their credit risk parameters, that are literally double the amount required of similar firms conducting similar transactions." (Doubek Decl. ¶ 24).

- "Since the filing of Mr. Brant's Declaration [on June 10, 2019], Alpine has also lost its line of credit with Alpine Securities Holding Corporation which was terminated by its lender, further impacting Alpine's ability to trade and thereby generate revenue." (Doubek Decl. ¶ 23).

- "Thus, Alpine is facing enormous financial challenges and is currently operating at a loss. Alpine presently has capital of approximately $2 million, all of which is committed to the net capital and the deposit requirements that enable it to conduct its business, i.e., clearing and settlement of trades." (Doubek Decl. ¶ 26).

- "Given the relatively small size of the firm, the fact that it is already financially struggling, that its business has been substantially reduced, and that its compliance and legal costs continue to increase, Alpine does not have and cannot access capital to pay or secure a bond for penalty amount of $12,000,000 and therefore asks that the Court issue a stay of the judgment so that Alpine can continue to operate as this Court considers the issues presented on this appeal." (Doubek Decl. ¶ 28).

    8.    Thus, Alpine filed with the U.S. Second Circuit Court of Appeals a memorandum and supporting declarations that blame the SEC action for Alpine's "reputational and economic harm, including loss of its relationships with its customers and critical counterparties"; its declining revenues; and its struggle to regain profitability. (*See* Ex. B at 10). For reasons that have nothing to do with Frankel, Alpine's demise is apparent to its customers, which are flocking to competitors. (*See* Fritz Decl. ¶ 217). Similarly, Alpine blames the SEC action for, among other things, its "collateral regulatory consequences"; its loss of the line of credit that enabled Alpine to trade; and its loss of "multiple critical executing relationships." *See* ¶¶ 5–7 *supra*. These statements bind Alpine and are admissions that the Court should consider in resolving the pending summary judgment motions. Frankel therefore requests that the Court take judicial notice of these filings and the $12 million civil penalty judgment to which they are directed.

5

**MEMORANDUM OF LAW**

The Court may take judicial notice of facts that are not subject to reasonable dispute in that they are either "(1) generally known within the trial court's territorial jurisdiction or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b). The Court may take judicial notice of documents filed in other courts "to establish the fact of such litigation and related filings" and of orders for the purpose of "recognizing the 'judicial act' that the order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

In this case, the Court should take judicial notice of the $12 million civil penalty judgment entered against Alpine on October 9, 2019 (Exhibit A) and Alpine's emergency filings on October 10, 2019 (Exhibits B, C, D). In its emergency filings, Alpine admitted that the SEC's case, not Frankel's alleged misappropriation, destroyed Alpine's business.

Alpine's admissions are opposing party statements under Federal Rule of Evidence 801(d)(2), and the Court should consider these admissions in deciding the pending motions for summary judgment, including Frankel's motion for summary judgment based in part on Alpine's failure to adduce any evidence to support damages.  In the SEC action, Alpine has attributed its impending failure, reputational harm, loss of business, and damages to the SEC action, not to Frankel's alleged misappropriation of confidential information which allegedly did not begin until over a year after the SEC sued.  Alpine's business failure / damage admissions in the SEC case bind Alpine in this case and require entry of summary judgment against Alpine based on its lack of damages.

## LOCAL RULE 3.01(G) CERTIFICATION

The undersigned counsel certifies that counsel for the defendant has conferred with counsel for the plaintiffs, and the plaintiffs have not agreed to the relief requested.

*s/ Harold Holder*
David C. Banker (Fla. Bar No. 352977)
J. Carter Andersen (Fla. Bar No. 0143626)
Harold D. Holder (Fla. Bar No. 118733)
BUSH ROSS, PA
1801 N. Highland Avenue
Tampa, Florida 33602
Phone: 813-224-9255
Fax:    813-223-9620
Primary: dbanker@bushross.com;
candersen@bushross.com;
hholder@bushross.com
Secondary:   aflowers@bushross.com
ksalter@bushross.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that I caused the foregoing to be served via electronic email on plaintiffs' counsel at the following addresses on October 22, 2019:

Shane B. Vogt, Esquire
Kenneth G. Turkel, Esquire
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, FL  33602
kturkel@bajocuva.com
svogt@bajocuva.com

Charles J. Harder, Esquire
Jordan Susman, Esquire
HARDER LLP
132 South Rodeo Drive, Suite 301
Beverly Hills, CA 90212-2406
charder@harderllp.com
jsusman@harderllp.com
*Attorneys for Plaintiffs*

By:   */s/ Harold Holder*

7