# EXHIBIT "D"

# 19-3272

## United States Court of Appeals
## For the Second Circuit

───────────────────────────

U.S. SECURITIES AND EXCHANGE COMMISSION,

*Plaintiffs - Appellees,*

— v. —

ALPINE SECURITIES CORPORATION,

*Defendant – Appellant.*

───────────────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK IN CASE NO. 17 CV 4179

**DECLARATION OF CHRISTOPHER DOUBEK**

MARANDA E. FRITZ
THOMPSON HINE LLP
335 MADISON AVENUE, 12TH FLOOR
NEW YORK, NY  10017
212-344-5680
MARANDA.FRITZ@THOMPSONHINE.COM

I, Christopher Doubek, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct:

1. I am a resident of Salt Lake County, Utah, am over 18 years of age, and make the statements herein based on my personal knowledge.

2. I am currently the Chief Executive Officer ("CEO") and Chief Compliance Officer of Alpine Securities Corporation ("Alpine"), having been recognized by FINRA to hold that position.

3. I, along with the other officers of Alpine, manage and oversee the operations of Alpine.

4. Since assuming the position of CEO, I have familiarized myself with the history of Alpine's business and its present financial circumstances.

5. I am familiar with the action brought by the Securities and Exchange Commission ("SEC") against Alpine, including the issues concerning Alpine's financial condition the detailed information that Alpine provided to the district court in response to the SEC's request for a civil monetary penalty against Alpine.

6. In response to the SEC's motion for remedies, Alpine filed a detailed declaration from its current Chief Financial Officer ("CFO") David Brant. A full copy of Mr. Brant's Declaration is found at Dkt. 203-1.

7. In Mr. Brant's Declaration, he explained the financial information that

1

Alpine, as a registered broker-dealer, is required to file with the SEC. Section 17 of the Securities Exchange Act, Rule 17a-10(a)(1) (17 CFR § 240.17a-10), requires that all broker-dealers who are registered with the SEC to complete and submit SEC Form X-17A-5 Part II on a monthly basis and submit SEC Form X-17A-5 Part III on an annual basis. The annual Part III must be audited by an independent public accountant and include the accountant's opinion on the financial statements. The auditor must be a member of and in good standing with the Public Company Accounting Oversight Board. *See* Brant Decl., at ¶ 3 [Dkt. 203-1].

8. Form X-17A-5 Part II, the Financial and Operational Combined Uniform Single Report ("FOCUS Report"), presents a combination of the financial and operational health of a broker-dealer who is registered with the SEC. Part II of each monthly FOCUS Report includes Alpine's "Statement of Financial Condition," which outlines, among other things, Alpine's assets, liabilities, ownership equity, computation of capital, computation of basic net capital requirements, computation of aggregate indebtedness, computation of alternate net capital requirement, statement of income and loss, and formula for determination of customer account reserve requirements of brokers and dealers. *Id*. at ¶ 4.

9. Also, pursuant to Section 17 of the Securities Exchange Act and Rule 17a-5, Alpine is required to submit an annual ***audited*** financial report. Alpine submits this annual report to, among others, the SEC, FINRA, SIPC, NSCC,

2

Alpine's Board of Directors, and Alpine's key vendors, including Alpine's settlement bank. A non-confidential version of this annual report is made publicly available. *Id.* at ¶ 5.

10. Attached as Exhibit A to Mr. Brant's Declaration was a copy of Alpine's most recent confidential audited financial report for fiscal year 2018 (October 1, 2017 through September 30, 2018) (the "2018 Audit Report"). *Id.* at ¶ 7.

11. Mr. Brant submitted additional details regarding the 2018 Audit Report and Alpine's financial condition. *Id.* at ¶¶ 8-9.

12. The 2018 Audit Report and Alpine's FOCUS Reports also state Alpine's excess net capital. Net capital requirements, addressed in Exchange Act Rule 15c3-1, establish minimum amounts that a firm must maintain in order to be permitted by the SEC to continue to purchase or sell securities. Alpine operates under the "Alternative Method" of its net capital requirement pursuant to which the SEC and FINRA require the greater of $250,000 or 2% of Aggregate Debits per Rule 15c3-3. To satisfy that requirement, Alpine is at all times required to maintain $250,000 to comply with its net capital requirements. It is also periodically subject to additional requirements including an "Early Warning" threshold amount (120% of the minimum) which brings the total capital requirement to $300,000. *Id.* at ¶ 10.

13. In addition to those net capital requirements, Alpine is required by the National Securities Clearing Corporation ("NSCC") to maintain substantially more capital to be permitted to provide clearing and settlement services and function as a clearing firm for its correspondent firms. Alpine is a clearing broker member in good standing of the NSCC and a Depository Trust Company ("DTC") participant and must use the NSCC's services to settle almost all of its trades. In order to remain a member of NSCC and have access to NSCC's essential clearing and settlement services, NSCC recently increased Alpine's deposit requirement so that it was required to have on deposit at NSCC more than $2 million. *Id*. at ¶ 11.

14. Schedule I to the 2018 Audit Report shows the computation of Alpine's excess net capital and alternative net capital requirements. *Id*. at ¶ 12 (citing to the 2018 Audit Report, at p. 13, Ex. A).

15. Alpine's excess net capital is also stated on page 6 of each monthly FOCUS Report. Mr. Brant's Declaration attached as Exhibits B-1 through B-19 copies of each monthly FOCUS Report from October, 2017 through April, 2019 – encompassing the period covered by the 2018 Audit Report, and each FOCUS Report since that time until April 2019, the most recently filed FOCUS Report. *Id*. at ¶ 13 (Exs. B-1 through B-19 attached thereto).

16. Mr. Brant explained that, over the last two years, on average, Alpine has held excess net capital in the amount of approximately $1,500,000. *Id*. at ¶ 14.

4

17. Mr. Brant stated that Alpine had, at the time of his Declaration (June 10, 2019) approximately $1,800,000 in excess net capital, higher than its historical average over the last two years, and higher than $1,043,267 – the amount listed at the time of the 2018 Audit Report. *Id*. at ¶ 15.

18. Mr. Brant also explained that, given Alpine's financial condition and the net capital and deposit requirements, any penalty in excess of approximately $800,000.00 would force Alpine out of compliance with its net capital and deposit requirements and would result in the firm being unable to continue its operations. *Id*. at ¶ 18.

19. Mr. Brant testified that he explored means of obtaining financing that would enable Alpine to continue in business even if a penalty were imposed that put Alpine out of compliance with its net capital requirements. Mr. Brant confirmed that, given Alpine's current circumstances, funding is simply not available. It is likely that annual profits from the business, after payment of applicable taxes, will remain at or below the level of approximately $2 million, and Mr. Brant had been advised by potential third party lenders and those who have an interest in the business that they are unable to inject additional funds into the business in the face of a penalty that renders the business unprofitable and jeopardizes its continuing operations. Mr. Brant confirmed, therefore, that a

5

penalty that forces it out of compliance with net capital will end the business. *Id.* at ¶ 21.

20.     The details of Alpine's financial condition were included in Alpine's Memorandum in Opposition to the SEC's Motion for Remedies, found at Dkt. 205, pp. 60-62.

21.     The district court has nonetheless ordered Alpine to pay a $12,000,000 penalty. As is clear from Mr. Brant's Declaration and Alpine's financial documents, including the 2018 Audit Report and monthly FOCUS Reports, Alpine does not have the ability to pay a penalty in the amount of $12,000,000 nor is it able to secure a bond.

22.     I can also confirm that Alpine's financial condition has further deteriorated since the submission of Mr. Brant's Declaration to the district court.

23.     The SEC's case against Alpine has substantially and negatively affected Alpine's relationships with its customers and its counterparties.  For example, Alpine's competitors have been contacting Alpine's customers and predicting the demise of the firm as a way to draw these customers away from Alpine.

24.     Also, as explained in Mr. Brant's Declaration, NSCC has continuously increased the fees and deposits required for microcap transactions to the point where the volume of transactions that can be conducted by Alpine is

dramatically reduced. This factor has not changed since the filing of Mr. Brant's Declaration and has also become worse. I have been in communication with representatives of NSCC who have cited this case as a reason why it is imposing on Alpine deposit requirements, based on criteria associated with their credit risk parameters, that are literally double the amount required of similar firms conducting similar transactions.

25. Since the filing of Mr. Brant's Declaration, Alpine has also lost its line of credit with Alpine Securities Holding Corporation which was terminated by its lender, further impacting Alpine's ability to trade and thereby generate revenue.

26. Thus, Alpine is facing enormous financial challenges and is currently operating at a loss. Alpine presently has capital of approximately $2 million, all of which is committed to the net capital and the deposit requirements that enable it to conduct its business, i.e., clearing and settlement of trades.

27. For the same reasons, Alpine has been unable to arrange for a bond for this appeal because Alpine does not possess and cannot pledge assets required to secure the bond.

28. Given the relatively small size of the firm, the fact that it is already financially struggling, that its business has been substantially reduced, and that its compliance and legal costs continue to increase, Alpine does not have and cannot access capital to pay or secure a bond for penalty amount of $12,000,000 and

7

therefore asks that the Court issue a stay of the judgment so that Alpine can continue to operate as this Court considers the issues presented on this appeal.

Dated: October 10, 2019

_____
Christopher Doubek

8