UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE HURRY FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

     Plaintiffs,

v.                                                          Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

     Defendant.

_____/

CHRISTOPHER L. FRANKEL,

     Counter-claimant,

v.

CAYMAN SECURITIES CLEARING
AND TRADING LTD; THE HURRY
FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

     Counter-defendants.

_____/

## FRANKEL'S MOTION *IN LIMINE* TO PROHIBIT REFERENCE TO OR ATTEMPTS TO OFFER EVIDENCE CONCERNING DAMAGES

The defendant, Christopher L. Frankel ("**Frankel**"), through counsel and under the Court's Case Management and Scheduling Order (Doc. 29), moves *in limine* to prohibit the plaintiffs, their witnesses, and their lawyers from referring to or attempting to offer evidence concerning damages because the plaintiffs adduced no evidence to support damages. The plaintiffs performed no damage analysis and disclosed no evidence of damages in discovery; the

plaintiffs should not, therefore, be permitted to suggest that they sustained damage, or to attempt to offer evidence concerning damages.

## THE PLAINTIFFS ADDUCED NO EVIDENCE TO SUPPORT DAMAGES

1.      The plaintiffs adduced no evidence to support their claims that Frankel's alleged breaches of contract, and alleged misappropriation of their trade secrets, caused harm or damage.

2.      On February 1, 2019, the plaintiffs admitted in their initial disclosures that they did not know whether Frankel's alleged misconduct had caused any damages or losses.  The plaintiffs' "damages and losses arising from Defendant's misconduct … are unknown at this time." (Doc. 35-2).

3.      In their initial response (served February 13, 2019) to Frankel's request to produce requesting, among other things, "[a]ll documents which support the damage allegations in your complaint," the plaintiffs stated that they would provide "documents sufficient to show their damages."  (Doc. 35-4).

4.      In their supplemental response (served June 7, 2019) to Frankel's interrogatory 8 requesting information concerning the plaintiffs' alleged damages, Alpine and Scottsdale stated: "Plaintiffs state that Defendant has been unjustly enriched at their expense.  Plaintiffs do not presently have an estimate of this damage amount or method of calculation because discovery is continuing …. Further, this information requires expert opinion, and expert reports are not yet due." (Doc. 118-8).

5.      In their supplemental response (also served June 7, 2019) to Frankel's request for production of damages documents, the plaintiffs stated that "they have no responsive documents in their possession, custody, or control."  (Doc. 118-9).

6.     In their second supplemental response (served August 5, 2019) to Frankel's request for production of damages documents, the plaintiffs stated that they would provide "documents sufficient to show their damages."  (Doc. 118-10).

7.     On August 5 and 6, the plaintiffs produced their "damages" documents, Exhibits 29 to 34 to Hurry Dep. (Doc. 115). See Hurry Dep. 156:4–157:13 (Doc. 115).

8.     On August 7, 2019, John Joseph Hurry testified as the plaintiffs' corporate representative regarding the plaintiffs' allegations in their second amended complaint including their damages. Hurry testified the plaintiffs' "damage" documents show drops in revenue.  Hurry speculated that the drops in revenue coincided with suspected misconduct by Frankel.  Hurry Dep. 156:4–177:10 (Doc. 115).

9.     Hurry admitted that the plaintiffs had done no damages analysis (Hurry Dep. 157:2–13 (Doc. 115)), that the plaintiffs had not determined whether Frankel had engaged in misconduct, and, if so, whether the misconduct had caused the revenue drops. (Hurry Dep. 157:15–177:10 (Doc. 115).

10.     Hurry testified that the plaintiffs had not yet decided what documents to use in performing a damage analysis, and Hurry did not know whether plaintiffs would use the "damage documents" in any damage analysis which the plaintiffs might eventually perform. Hurry Dep. 173:8–174:13 (Doc. 115).

11.     Discovery closed on August 9, 2019.

12.     On August 23, 2019, Frankel moved to strike the plaintiffs' damages expert (Doc 117) because the plaintiffs had not provided the required disclosure for the expert.

13.     On September 23, 2019, the Court granted Frankel's motion to strike the plaintiffs' damages expert.  (Doc. 130).

14.     The plaintiffs failed to adduce any evidence to support damages, *i.e.*, evidence that Frankel's misconduct caused revenue loss resulting in lost profits, or documents showing and quantifying any actual harm or loss caused by Frankel's misconduct.

## ARGUMENT

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires that a plaintiff disclose "a computation of each category of damages claimed" and produce "the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." If a plaintiff does not initially disclose a computation of damages and supporting evidence and does not supplement their initial disclosures or otherwise provide a computation of damages and supporting evidence in discovery, then the plaintiff should not be allowed to present for the first time at trial a computation of damages and supporting evidence. *See generally* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . .  at a trial, unless the failure was substantially justified or is harmless."); *e.g. Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179– 80 (9th Cir. 2008) (affirming exclusion of evidence of undisclosed damages); *Austrian Airlines Oesterreichische Lufverkehrs AG*, 2005 WL 977850, at *2 (S.D.N.Y. Apr. 28, 2005) (same); *Gilvin v. Fire*, 2002 WL 32170943, at *3 (D.D.C. Aug. 16, 2002) (same); *Am. Realty Trust, Inc. v. Matisse Partners, L.L.C.*, 2002 WL 1489543, at *4-6 (N.D. Tex. July 10, 2002) (same).

**A.**     **Hurry Trust should be prohibited from suggesting or attempting to offer evidence at trial that Frankel's alleged breach of the Original Non-Disclosure Agreement caused harm or damage to the Hurry Trust.**

The Hurry Trust sued Frankel in Count I for breach of the Original Non-Disclosure Agreement under Arizona law. Second Am. Compl. ¶¶ 32–38 (Doc. 61). Under Arizona law, "[i]t is well established that, in an action based on breach of contract, the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages." *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004). Arizona law does not allow nominal damages unless the plaintiff has adduced evidence showing "actual damages" that are "slight or difficult to calculate." *Firetrace USA, LLC v. Jesclard*, No. CV-07-2001, 2010 WL 3523067, at *1–3 (D. Ariz. Sep. 3, 2010). Under Arizona law, plaintiffs seeking nominal damages must show that the plaintiffs "have suffered (or will suffer) an injury of some kind." *Id.*

The Hurry Trust alleged that Frankel breached the Original Non-Disclosure Agreement by failing to return "Confidential Trust Information." Second Am. Compl. ¶ 36 (Doc. 61). The Hurry Trust did not allege that Frankel used or disclosed "Confidential Trust Information." Second Am. Compl. ¶¶ 32–38 (Doc. 61).  Hurry Trust adduced no evidence that Frankel's alleged failure to return "Confidential Trust Information" harmed or damaged the Hurry Trust. The Hurry Trust must prove damage or harm to recover even nominal damages for breach of contract under Arizona law. *Chartone*, 83 P.3d at 1111.

The plaintiffs have not produced, and cannot produce, any documents showing that Hurry Trust suffered any damaged or harm. Nor could Hurry, testifying as corporate representative of Hurry Trust, describe any harm or damage suffered by Hurry Trust. *See* Hurry Dep. 112:21–113:17 (Doc. 115). The only "damages" documents offered (which did not show any damages) were related to Alpine and Scottsdale, and not to Hurry Trust. *See* Exhibits 29 to 34 to Hurry Dep. (Doc. 115). See Hurry Dep. 156:4–157:13 (Doc. 115). The plaintiffs, their witnesses, and

their lawyers should therefore be prohibited from suggesting or attempting to offer evidence at trial that Frankel's alleged breach of the Original Non-Disclosure Agreement caused harm or damage to the Hurry Trust.

### B. Alpine and Scottsdale should be prohibited from suggesting or attempting to offer evidence that Frankel's alleged misappropriation caused harm or damages.

Alpine and Scottsdale sued Frankel in Count II for breach of the Employee Non-disclosure Agreement under Arizona law. As discussed above, under Arizona law, Alpine and Scottsdale have the burden of proving "actual damages." *Chartone*, 83 P.3d at 1111; *Firetrace*, 2010 WL 3523067, at *1–3. Alpine and Scottsdale adduced no evidence to support their allegations of harm or damage caused by Frankel's alleged breach of the Employee Non-disclosure Agreement. Similarly, Alpine and Scottsdale adduced no evidence to prove damage or harm to support their claims in Count III for violation of the Defend Trade Secrets Act (DTSA) and Count IV for violation of the Florida Uniform Trade Secrets Act (FUTSA).

In discovery, Alpine and Scottsdale did not disclose any explanation of or supporting evidence for their alleged damages. Their initial disclosures in February 2019 described their damages as "unknown." (Doc. 35-2). Their subsequent discovery responses revealed that their damages were still unknown in June 2019, at which time their excuse was that the damages would require an expert opinion (Doc. 118-9), and at which time they admitted that they had no evidence of damages "in their possession, custody, or control." (Doc. 118-8). Four days before the close of discovery, Alpine and Scottsdale produced "damages" documents (Doc. 118-10), but their corporate representative designated to testify about the alleged "damages" admitted that there had been no damages analysis and could only offer speculation that drops in revenue coincided with suspected misconduct by Frankel. Hurry Dep. 156:4–177:10 (Doc. 115).

When asked whether the plaintiffs had done any damage analysis, Hurry, as their corporate representative, testified: "We've looked at the evidence and the timeline, and we've seen revenues significantly drop accordingly. At this point, without having the full discovery, we are still piecing that together." (Hurry Dep. 155:14–20 (Doc. 115)). When asked when the damage analysis would be done and who would do it, Hurry responded: "It's in the process." (Hurry Dep. 173:24–174:1 (Doc. 115)). When asked whether exhibits 29 through 33 were the documents that plaintiffs would use to determine their damages, Hurry testified "they certainly could be some of them." (Hurry Dep. 174:10–13 (Doc. 115)).

Hurry acknowledged that the plaintiffs had received adverse publicity and regulatory scrutiny which "had not been helpful." (Hurry Dep. 192:7–23 (Doc. 115)). Hurry acknowledged that the extraordinary Common Area Maintenance charge, for which FINRA had sued and challenged as an unauthorized capital extraction, may have rendered Alpine at least temporarily unprofitable, but that Alpine had nonetheless "been able to pay all the bills and stay in capital." (Hurry Dep. 202:12–25; 203:1–19 (Doc. 115)). The plaintiffs clearly had not done and could not offer any meaningful damage analysis which had factored in the numerous variables which potentially could have affected the plaintiffs' revenue and profits since Alpine terminated Frankel's employment at the end of July 2018.

The plaintiffs asserted they needed an expert witness "to opine on the value of the confidential information misappropriated and misused by Defendant as well as Plaintiffs' damages" (Doc 83 at 3), but the plaintiffs never offered an expert opinion valuing their allegedly misappropriated information or determining damages. The Court has stricken the plaintiffs' damages expert. (Doc. 130).

The plaintiffs have not disclosed any valid explanation of or supporting evidence for their alleged damages. The plaintiffs, their witnesses, and their lawyers should therefore be prohibited from suggesting or attempting to offer evidence at trial that Frankel's alleged breach of the Employee Non-disclosure Agreement and alleged violations of DTSA and FUTSA caused harm or damage to Alpine or Scottsdale.

## CONCLUSION

WHEREFORE, the defendant, Christopher L. Frankel, requests that the Court enter an order prohibiting the plaintiffs, their witnesses, and their lawyers from suggesting or attempting to offer evidence that Frankel's alleged breaches of contract and misappropriation caused harm or damage.

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 3.01(g)

On December 16, 2019, counsel for Frankel, David Banker, conferred with counsel for the plaintiffs, Jordan Susman, in compliance with Local Rule 3.01(g), and were unable to agree regarding the relief requested herein.

Dated: December 16, 2019

By:   */s/ Harold Holder*
David C. Banker (Fla. Bar No. 352977)
Harold D. Holder (Fla. Bar No. 118733)
BUSH ROSS, PA
1801 N. Highland Avenue
Tampa, Florida 33602
Phone: 813-224-9255
Fax:     813-223-9620
Primary: dbanker@bushross.com;
hholder@bushross.com
Secondary: aflowers@bushross.com
 *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 16, 2019, all counsel of record who consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/EFC participants:

Shane B. Vogt, Esquire
Kenneth G. Turkel, Esquire
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, FL  33602
kturkel@bajocuva.com
svogt@bajocuva.com

Charles J. Harder, Esquire
Jordan Susman, Esquire
HARDER LLP
132 South Rodeo Drive, Suite 301
Beverly Hills, CA 90212-2406
charder@harderllp.com
jsusman@harderllp.com
*Attorneys for Plaintiffs*

By: *Harold Holder*_____