UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE HURRY FAMILY REVOCABLE TRUST;
SCOTTSDALE CAPITAL ADVISORS
CORPORATION; and ALPINE SECURITIES
CORPORATION,

       Plaintiffs,

v.

CHRISTOPHER FRANKEL,

       Defendant.
                                       /

Case No. 8:18-cv-02869-VMC-CPT

## PLAINTIFFS' SUPPLEMENT TO OPPOSITION TO FRANKEL'S MOTION IN LIMINE TO PROHIBIT REFERENCE TO OR ATTEMPTS TO OFFER EVIDENCE CONCERNING DAMAGES [DOC. 158]

Plaintiffs, The Hurry Family Revocable Trust, Scottsdale Capital Advisors Corporation ("Scottsdale"), and Alpine Securities Corporation ("Alpine") (collectively "Plaintiffs"), file this Supplement to their *Opposition to Frankel's Motion in Limine to Prohibit Reference to or Attempts to Offer Evidence Concerning Damages* [Doc. 158], and state in support as follows:

On March 9, 2020, Plaintiffs moved for discovery sanctions against Mr. Frankel and to temporarily stay this action and re-open discovery [Doc. 189]. Among other things, Plaintiffs' motion asked the Court to deny, or prohibit Mr. Frankel from supporting, his Motion in Limine [Doc. 148] seeking to preclude Plaintiffs from referencing or attempting to offer evidence in support of their damages. At a hearing held on March 11, 2020, Her Honor granted in-part Plaintiffs' Motion to Re-Open Discovery [Doc. 193], re-opening discovery for the limited purpose of requiring Mr. Frankel to produce certain documents and sit for an additional deposition on limited topics, while denying Plaintiffs' request concerning Mr. Frankel's Motion in Limine. [*See* Doc. 193]. During the March 11, 2020 hearing, one of the primary issues upon

{BC00285070:1}

which Plaintiffs' sought limited discovery was Mr. Frankel's Vision Financial Services compensation as it relates to Plaintiffs' customers:

> THE COURT: I'm ready to rule right now. So you should not come back, unless I'm missing something, because I'm ruling right now. Under B -- so I'm looking at page 6 of your request, Mr. Turkel. Under B, you can get No. 1, not No. 2. I'm denying No. 2. I'm denying No. 3. You can get No. 4. I'm denying No. 5, and you can get No. 6. That's the ruling.
>
> MR. HOLDER: Your Honor, included in 1 would be unredacting the Vision agreement with unredacted compensation, and that's our point. They served a document request in this case at one point that would have allowed him to redact monetary amounts. No. 1 is an effort to get his compensation numbers.
>
> MR. TURKEL: Judge, let me be clear. I don't care about his compensation. ***What I care about is whether he profited off of clients that would be subject to a nondisclosure, nonsolicitation agreement, trade secrets violation. That's it. It's not trying to find out what he made. It's trying to find out what our clients paid that entity and if they were clients that he brought over. It's a very simple, very common damages theory in these cases***. So it's not – I think they are misspeaking when they keep saying I'm not allowed to know his comp.
>
> THE COURT: I will permit 1. If there is some kind of redaction that everybody is comfortable with, I'm comfortable with it, too. That's my ruling on that.

[3/11/20 Hearing Transcript 70:10-71:11]

> MR. HOLDER: And then the one issue that I wanted to just make sure we are clear on, because the first document in the list that the Court is ordering us to produce is unredacted copies of the Vision agreements and drafts, and this is the schedule

{BC00285070:1}                                         2

|||
|---|---|
| | to the Vision agreement. It has his compensation number and another number related to his compensation that are presently redacted, and that is what we would ask to continue to redact. |
| THE COURT: | You are okay with that, right, Mr. Turkel, that they continue to redact that? |
| MR. TURKEL: | Judge, so we are all clear about what I am looking for – |
| THE COURT: | Because you said earlier you didn't care about his compensation. |
| MR. TURKEL: | And in a general, broad concept, *I care about whether he was going to be paid money for bringing in clients that would fall within the trade secrets, breach of contract claims we brought, and he was incentivized to do that and was paid for it. I don't need his total comp. I don't need 1099s. I need to know whether he's making money off the clients that we contend he stole*. |
| THE COURT: | Well, why can't you depose him on that? |
| MR. TURKEL: | They will object, I think, if you say I'm not allowed to ask that. |
| THE COURT: | I haven't said that. I don't know what the right answer is, but I haven't said that. |
| MR. HOLDER: | That's something that they could have asked about in his prior deposition and chose not to. They knew he was working for Vision. They knew in his last deposition. They asked him all about – |
| THE COURT: | This isn't, let's start back at square one, Mr. Turkel. We are not starting back at square one. Where we are starting, Mr. Turkel, is you get to ask him questions about that which they didn't produce and so you didn't have that information at your disposal when you took his deposition. |
| MR. TURKEL: | Correct. |

THE COURT: So this isn't, hey, we are going back to the beginning.

MR. TURKEL: Judge, I understand that. But one of the things they did produce is this elaborate independent contractor agreement that sets forth the terms upon which he is going to be working there, and it's pointed and it has very expressed provisions. And to the extent that it incentivizes him to steal from us, we think that's fair game. They don't have to agree with it, but it's not asking to give me his 1099s, W-2s or whatever. I just want to know if he was going to get paid -- if he brought in a client and that client happened to be ours, did he get a bonus for that client? How much did that client generate? Because, Judge, if we prove a violation, those damages would be recoverable.

MR. HOLDER: He was already working at Vision during the last deposition. They could have asked him that precise question.

THE COURT: Move closer to the microphone.

MR. HOLDER: Yes, Your Honor. Mr. Frankel was already working at Vision during the last -- during his first deposition. They could have asked him that question, that question Mr. Turkel just asked, during his first deposition. And so I don't understand why that's in play now and –

THE COURT: Well, here's the only thing I can think of. They would say, we didn't have these documents, so we didn't have the right information to be able to ask or formulate those questions.

MR. TURKEL: Moreover, Judge, he downplayed his interaction with former clients of my client in the deposition. I went and looked at some of his answers, and so now he's going to be subject to being impeached with these. If he didn't and he didn't take them and he wasn't paid, then they shouldn't have a problem with it.

THE COURT: If it's a new document, then you can ask it in the deposition. If it's not a new document, if it's not

|   |   |
|---|---|
|   | new information, no. That's the way it works. Okay. That's the way it works, Mr. Turkel. Again, this isn't open season; let's start all over again; let's cover what we didn't cover before. This should be a very limited deposition. All right. So this information contained in B, you think you can turn it over by March -- I'm happy to say March 30th or 31st. I don't want to push you here. If you think you can get it earlier, terrific. If you can do it by March 25th, 14 days, that's fine. |
| MR. HOLDER: | We are working very hard to make this happen as soon as possible so that there is no reason for -- we don't want to be the cause of any type of slowdown. |
| THE COURT: | Exactly. |
| MR. BANKER: | We will strive to get it before March 25th. |

[3/11/20 Hearing Transcript 77:2-80:16]

Mr. Frankel subsequently produced pdf copies of documents falling into the categories identified by the Court in the March 11, 2020 ruling and thereafter appeared for his continued deposition on April 3, 2020. However, during the deposition Mr. Frankel refused to answer certain questions related to his compensation. Also, although Plaintiff testified that the dates on two contracts he produced were incorrect, he has refused to provide electronically-stored information or metadata associated with these contracts so his claims about the incorrect dates can be verified. Specifically, Mr. Frankel refuses to provide the following:

1. <u>Compensation</u>: Mr. Frankel refused to answer questions concerning his compensation at Vision. [4/3/2020 trans. pp. 91:19—92:14][1]. His newly produced contract with Vision indicates Mr. Frankel was paid based on a "share of profits" of the "Deposit Group" (a/k/a/ "Corporate Services

---

[1] Plaintiffs will provide a copy of the 4/3/2020 deposition transcript to the Court at the 4/30/2020 Pretrial Conference, as certain portions contain information that has been deemed "confidential" in discovery.

Group")[2] he started at Vision. This profit sharing is based on a formula that was redacted in the agreement Mr. Frankel produced. [See Depo. Ex. 40—Designated "Confidential"][3] Mr. Frankel's compensation based on Deposit Group revenue necessarily includes revenue generated by Plaintiffs' customers—whose accounts ran through the Deposit Group. This is precisely the information (i.e. "whether he's making money off the clients that we contend he stole") Plaintiffs sought through their motion. [See 3/11/2020 Trans. p. 77:15-23] This information is directly relevant to Plaintiffs' damages and should not have been withheld by Mr. Frankel.

2. <u>Deposit Group Calculations</u>: Mr. Frankel produced an email string from the time period when he was negotiating the terms of his agreement and compensation with Vision related to "Deposit Group Calculations," but Mr. Frankel refused to testify about the Deposit Group Calculations and the attachment to this email (which contains data associated with the net income and gross revenue of the Deposit Group—presumably including Plaintiffs' customers) was not produced [Depo. Ex. 25; 4/3/2020 Trans. pp. 18:23-20:17]. These omitted calculations concerning the revenue and income of the Deposit Group upon which Mr. Frankel's compensation is based necessarily include revenues and income generated by Plaintiffs' customers. This information and the attachment to the email [Depo. Ex. 25] is directly relevant to Plaintiffs' damages and should not have been withheld by Mr. Frankel.

3. <u>Atlas Bank Consulting</u>: Mr. Frankel also refused to answer questions concerning whether he used or disclosed Plaintiff's information in connection with the work he performed and was compensated for by Atlas Bank [4/3/2020 Trans. pp. 81:14—82:14]. This information is discoverable, and was fair game at Mr. Frankel's continued deposition because Mr. Frankel gave no indication at his first deposition that he was still performing work for and being paid by Atlas—information that only came to light as a result of the new documents associated with Mr. Frankel's contract with Vision[4]:

> Q: And when you were a consultant for -- for Alpine during that time that -- August 1st through October 31st [**2018**], did you consult at other places?

---

[2] The "Deposit Group" or "Corporate Services Group" is the group Mr. Frankel started and runs at Vision through which he stole Plaintiffs' customers using Plaintiffs' confidential and proprietary information.

[3] Depo. Ex. 40 will be made available to the Court at the Pretrial conference on 4/3/2020, if necessary, because it also has been designated "confidential."

[4] Mr. Frankel's contract with Vision contains a provision specifically addressing his consulting agreement with Atlas bank and noting the continuing nature of that agreement.

{BC00285070:1}                                    6

> A: I think there was a little bit of overlap yes.
> Q: Where at?
> A: For Atlas Bank Panama.
> Q: What did you do for them?
> A: I was consulting for them. Again, they had a contract to purchase a broker-dealer that I think that they executed back in September of 2017, and they were trying to get FINRA approval to consummate the purchase. They thought that a broker-dealer basically – because the firm used to self-clear. What they -- they found out, you know, about I would say 45 days after I signed the agreement, they got the approval to purchase the firm. But then what they found out was FINRA told them that they needed to go through a 1017 process to self-clear. So they never consummated the purchase.
>
> [8/7/19 Deposition of C. Frankel 146:25-147:12]

4. <u>Electronically-stored information/Metadata/Electronic Versions of Agreements</u>: Prior to his continued deposition, Mr. Frankel produced a hard copy of a draft Client Agreement between a company he incorporated when he was departing Plaintiffs' business (Securities Settlement Solutions, LLC) and Vision Financial Services; which agreement on its face is dated **August 1, 2018**. That date is significant because Mr. Frankel was still working as a consultant for Plaintiffs in August 2018 and testified at his first deposition that his relationship with Vision did not commence until **2019**. During his April 3, 2020 deposition, Mr. Frankel disputed the August 1, 2018 date on the face of this agreement but did not produce any transmittal email sending the draft agreement to Vision on a later date (as he claims to have done) and did not produce the Client Agreement in electronic form containing metadata showing when the Client Agreement was created and/or modified. [4/3/2020 Trans. pp. 10:9—11:24, 12:5-11]. Similarly, Mr. Frankel contested the date on the face of his signed consulting agreement with Atlas Bank, but did not produce any transmittal emails associated with that agreement nor the agreement in electronic form with its metadata [4/3/2020 Trans. pp. 86:8—88:4].

Plaintiffs' counsel subsequently asked Mr. Frankel to provide the above-referenced documents and information. He refused.

Rule 37(c) specifically provides a party is not allowed to use undisclosed discovery material in support of a motion (*i.e.,* Doc. No. 148). "Even in the absence of a discovery order,

a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–07 (2d Cir. 2002) (citing *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 135–36 (2d Cir. 1998); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). "Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process." *Gratton v. Great American Communications*, 178 F.3d 1373, 1374 (11th Cir. 1999).

Mr. Frankel should not be permitted to pursue a motion seeking to preclude Plaintiffs from offering evidence to establish their damages in this case while he simultaneously refuses to provide discovery concerning the damages his actions caused. This is precisely the type of unfair prejudice Rule 37 was designed to prevent.

## CONCLUSION

**WHEREFORE**, Plaintiffs respectfully request the Court enter an order denying Mr. Frankel's Motion in Limine (Doc 148) or, alternatively, defer ruling on Mr. Frankel's Motion until he complies with this Court's Order [Doc. 193] and provides all the aforementioned discovery.

Dated: April 29, 2020.                    Respectfully submitted,

*/s/ Kenneth G. Turkel*
Kenneth G. Turkel – FBN 867233
E-mail: kturkel@bajocuva.com
Shane B. Vogt – FBN 257620
E-mail: svogt@bajocuva.com
Anthony J. Cuva – FBN 896251
E-mail: acuva@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel: (813) 443-2199
Fax: (813) 443-2193

*Attorneys for Plaintiffs*

## CERTIFICATION OF COUNSEL

Pursuant to Rule 37 and Local Rule 3.01(g), Plaintiffs' counsel conferred with Defendant in a good faith effort to resolve the above-referenced discovery dispute. Defendant's counsel indicated that Mr. Frankel was unwilling to provide the discovery identified herein.

Dated: April 29, 2020.
/s/ Kenneth G. Turkel
Kenneth G. Turkel – FBN 867233
E-mail: kturkel@bajocuva.com
Shane B. Vogt – FBN 257620
E-mail: svogt@bajocuva.com
Anthony J. Cuva – FBN 896251
E-mail: acuva@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel: (813) 443-2199
Fax: (813) 443-2193

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 29, 2020, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

/s/ Kenneth G. Turkel
Attorney