```
 1                    UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
 2                          TAMPA DIVISION

 3

 4   THE HURRY FAMILY REVOCABLE    )  Tampa, Florida
     TRUST, et al.,                )
 5                                 )
                     Plaintiffs,   )  No. 8:18-cv-2869-T-33CPT
 6                                 )
                                   )  Docket No. 231
 7              vs.                )
                                   )  June 26, 2020
 8   CHRISTOPHER FRANKEL,          )
                                   )
 9                   Defendant.    )  Courtroom 14B
     _____)
10

11

12                         MOTION HEARING
          BEFORE THE HONORABLE VIRGINIA M. HERNANDEZ COVINGTON
13                    UNITED STATES DISTRICT JUDGE

14

15                    (Zoom Videoconference)

16

17

18

19

20

21
                            Official Court Reporter:
22
                            Scott Gamertsfelder, RMR, FCRR
23                          801 North Florida Avenue
                            Tampa, Florida 33602
24                          Telephone:  (813) 301-5898

25   (Proceedings reported by stenotype; Transcript produced by
     computer-aided transcription.)
```

1                    **A P P E A R A N C E S**

2   **PLAINTIFF COUNSEL:**

3          **Kenneth G. Turkel, Esq.**
           **Anthony J. Cuva, Esq.**
4          Bajo Cuva Cohen Turkel, PA
           100 North Tampa Street, Suite 1900
5          Tampa, Florida 33602
           (813) 221-2626
6

7   **DEFENSE COUNSEL:**

8          **David C. Banker, Esq.**
           **Harold D. Holder, Esq.**
9          Bush Ross, PA
           1801 North Highland Avenue
10         Tampa, Florida 33601
           (813) 224-9255

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

1

2   June 26, 2020                                         9:40 a.m.

3                            - - -

4           (Court called to order.)

5           THE COURT:  Good morning.  We are here for a

6   hearing in Case No. 8:18-cv-2869-T-33CPT.  I'll begin by

7   having counsel state their appearances.  Who do we have for

8   the plaintiff?

9           MR. TURKEL:  Kenneth Turkel and Anthony Cuva for

10  the Plaintiff.

11          THE COURT:  For the defense?

12          MR. BANKER:  From the defense, David Banker and

13  Harold Holder.

14          THE COURT:  Very good.  I appreciate everybody

15  being available today through Zoom.  I'm going to tell you

16  that it's my intention to rule on as many motions in limine

17  as possible today.  If I don't feel comfortable ruling on

18  something, if I feel like I need to hear testimony before

19  making that decision, I'll deny it without prejudice and

20  explain it to you.

21          The reason that I'm doing this is I want to try to

22  get this case as trial-ready as possible, but that doesn't

23  mean that this case is going to go to trial anytime soon.

24  The first case that we are going to try in Tampa Division

25  will be in August, and it's going to be a criminal case, and

1   it's either going to be my case in the middle of the month or

2   another judge's case at the end of the month, and those are

3   both criminal cases.  I do not know what's going to happen

4   with the civil docket.  I don't know.

5           I don't know if we are going to make a decision to

6   bring jurors in here for civil cases; and even if we did, who

7   would we get?  Who would we get?  Who would be willing to

8   come if they are scared of the virus and getting sick.  It is

9   really challenging, and heaven knows how long this is going

10  to last.  I'm just telling you, I have no idea what's going

11  to happen in terms of trials.  Otherwise, this case would

12  have been tried, I don't know, April, May, whenever it was.

13          MR. TURKEL:  May.

14          THE COURT:  May.  But at least I'm going to rule

15  on these so that at least we have got that out of the way and

16  at least you have an idea.  If you are choosing to have

17  discussions on alternate resolutions, at least it will give

18  you an idea of how those rulings would go.  Or if I can't

19  rule on it, at least you know that and you will be prepared.

20          So I just wanted to let you know about that and to

21  let you know that August -- this will not go to trial in

22  August.  Absolutely not, and I don't know what we are doing

23  in September.  I just don't know.

24          Two cases can't go to trial at the same time

25  because of social distancing.  We can't pick two juries the

1   same day, is really what I should have said.  I think because

2   of other social distancing things, this courthouse is so

3   poorly designed for that, that I think only one trial can go

4   at a time.  I think that's what we are looking at right now.

5   Maybe two.  I'm sorry to say, civil will have to take a

6   backseat to criminal.  I'm sorry to say for you, because this

7   is a civil case, it will have to take a backseat to criminal

8   for now.  So that's what is going on.

9           So what we are looking at are the pending motions

10  that I have at docket 146, which is the motion to bifurcate;

11  I have 147, which is a motion in limine; and then another

12  motion in limine at docket 148.  So those are the items that

13  I have on the agenda for today.

14          We kind of stopped in your tracks on the motion to

15  bifurcate when we were talking about a bench trial, but I

16  gave a deadline to respond and that deadline has come and

17  gone.  As I understand, you want a jury trial, which is

18  absolutely your right.  So that now has come back to the

19  forefront, the motion to bifurcate.

20          MR. TURKEL:  I think I can make short work of

21  that.  I informed Mr. Banker last Friday we would withdraw

22  that.  I'm sorry the Court spent undue time.  I think the

23  sense we got, and probably rightly so, was Your Honor wasn't

24  bifurcating.  We filed the motion.  I understand that, but

25  the issue, I think, ultimately becomes the fact that we are

1 going to have to discuss in the context, whenever we try this

2 case, of which counts you try sort of as a shadow fact-finder

3 to the jury, because they are inequitable.  I don't think we

4 need to deal with that right now.

5    The law on that is not particularly simple, but

6 that's sort of a game day call for the Court, Your Honor, the

7 intertwining of the equitable claims and the legal claims

8 that you sit as fact-finder on some, all, whatever.  But I

9 don't see any need to bifurcate it.  I think that's probably

10 asking for problems anyway.

11    The one thing I did tell Mr. Banker last Friday --

12 we had a meet and confer on outstanding things -- is that I

13 should have filed formal notice of withdrawal to not waste

14 your time.

15    THE COURT:  That's okay.

16    MR. TURKEL:  That one is off the docket.

17    THE COURT:  It's not a problem in the least.  So

18 I'm glad that you resolved it, and I appreciate it very much.

19 You kind of read me right on that, Mr. Turkel.

20    MR. TURKEL:  I understand.  It's just not the kind

21 of case I would normally file a motion to bifurcate in, and

22 we looked at it, and I just didn't think it was really

23 something that was the right call.  So that one is off the

24 docket, Judge.  We withdraw it.

25    THE COURT:  Okay.  So are we ready to talk about

1  the motions in limine?  Are you ready to make those

2  arguments?  Is there anything else that you want to discuss

3  with me before we go on?  Or how would you like to do it?

4          MR. TURKEL:  Judge, we filed -- my predecessor

5  filed an omnibus motion in limine in compliance with the CMO,

6  and where the Court rules in that sense, it requires all of

7  them to be stated in one document.  Here's what I can say,

8  and I can go any way the Court wants on this.

9          He moved largely on 401, 402, 403.  I think a lot

10  of these incidents of other lawsuits, other bad acts and so

11  forth, are going to run more into 404(b) bad acts evidence,

12  perhaps.  Normally in a case where character was implicated,

13  maybe they would be character-type evidence.  But, Judge,

14  truthfully, I'm sort of a trial lawyer first.  All I really

15  care about is them not mentioning the stuff on opening

16  statement in front of a jury because I don't think you are

17  going to be able -- even with the briefing, I don't think

18  that it would be right to do anything at this point other

19  than to deny them without prejudice because until you hear --

20  the way I understand their defense is somewhat simple.  We

21  didn't take anything.  If we took it, it wasn't confidential;

22  and if it was confidential, there are no damages.

23          Kind of the neighbor's goat defense, I call it.  I

24  don't have a goat; but if I did, he didn't eat your grass.

25  But if he did eat your grass, it's because you didn't have a

1   fence.

2           I really don't see this case as having character

3   traits that normally make character relevant under 404

4   implicated.  So that takes me to 404(b), other bad acts.

5   Other bad acts have to be offered for a specific, articulated

6   list of reasons.  *Williams* rule in Florida.  In the federal

7   system, 404(b).  I don't see it, but I equally don't think

8   that these are calls you make on synopses that are proffered

9   in a motion in limine.

10          I don't think you can make the call until you hear

11  the arguments and see the context of how they intend to bring

12  it into trial.  My concern is nobody mentions it in opening

13  statement, and that leaves us to deal with the evidence as

14  they seek to bring it in.  I just don't think you can try a

15  case on motions in limine.

16          As much as I think these are all viable, valid

17  objections, I don't think they should be able to bring a

18  lawsuit in, other state-related litigation, other

19  FINRA-related sanctions that are unrelated to a contract case

20  and trade secret case and a very specific fact pattern here.

21  I just think it's more proper to make the call at trial.

22          So what we are really seeking right now, Judge, is

23  an order prohibiting reference to these other bad acts, which

24  is the large bulk of these motions.  They are all, in one

25  form or another, SEC actions, FINRA actions, FINRA sanctions,

1    evidence of a pump and dump that has nothing to do with this

2    case.  They should just be barred from mentioning them in

3    opening; and if the Court reserved the right to exclude them

4    on proper objection raised at the time, they are raised.  So

5    I don't mean to be so general, Judge, but I just think that's

6    going to be an underlying theme on every one of those motions.

7              THE COURT:  Okay.  Let me hear from -- who will be

8    addressing this, Mr. Holder, Mr. Banker?

9              MR. HOLDER:  Yes, I'll respond.  We can get into

10   more specifics.  We briefed the issue and cited some of the

11   things that I think their motion relates to, but there are

12   two primary things we would hope to accomplish with some of

13   these other proceedings.

14             The other proceedings show, No. 1, that the

15   information is not confidential and that's because, for

16   example, they have in this case said that what they call

17   their trade blotter is confidential, and that's a list of

18   trades, the date they were made, and the volume of the trades.

19             In other cases, they have publicly filed

20   information on their trades, the same information they claim

21   is confidential in this case, and so limiting -- I think we

22   can -- the Court could decide right now that's in play and

23   that's something we could mention in our opening statement

24   and then introduce at the trial.

25             The second thing -- and I'm happy to go into more

1   detail about the specific examples of that.  I will note that

2   in document 135, which is our request for judicial notice of

3   some of these proceedings, we outline the instances in which

4   they disclosed the trade data and how it's the same trade

5   data they claim is confidential in another instance in our

6   case.

7           The second reason that we would offer evidence of

8   these other proceedings is related to the damages, and the

9   plaintiffs still haven't disclosed to us how they compute

10  their damages, but certainly adverse regulatory actions taken

11  by the SEC and FINRA and the effects that has on the

12  plaintiffs' business, when they claim that Mr. Frankel -- we

13  don't know exactly what their theory is, but we expect them

14  to say Mr. Frankel caused adverse effects on their business.

15          We would certainly be allowed to, both in our

16  opening and introduced at trial, have evidence there are

17  other reasons why their business failed, including the

18  adverse regulatory actions taken against them, including the

19  statements they make in those adverse regulatory actions.

20          For example, in a mandamus petition that they

21  filed in that case, they describe the NSCC charges as

22  strangling their business and threatening their business.  So

23  that's another instance where they can't on the one hand, you

24  know, say that Mr. Frankel is causing harm to their business

25  without allowing us to also offer alternative reasons,

1   including in the opening statement, which I think is a very

2   important time when we explain our defenses in the case.

3           The other instances, there was a FINRA action

4   taken regarding certain fee increases that the Hurry entities

5   imposed on their clients and common area maintenance charges

6   that were challenged as improper by FINRA, all of which

7   Mr. Hurry testified about in his deposition, and we have

8   cited in our brief his testimony that is confirming some of

9   those things.

10          Those go right to the damages in this case and

11  things that caused their businesses to fail that had

12  absolutely nothing to do with Mr. Frankel.  To be limited

13  from mentioning that in opening statements would have a

14  significant effect on the presentation of our defenses in the

15  case, and I don't think it would be proper to do that without

16  at least hearing a basis for excluding them.

17          THE COURT:  Often the way that these things are

18  handled is that a limiting instruction can be given to the

19  jury for them to know in what way they can consider certain

20  things, such as the FINRA action that you were discussing a

21  few moments ago.

22          I heard what Mr. Turkel said.  Sometimes you do

23  need to listen to what witnesses say before you know how

24  everything falls into place; but I think specifically, for

25  instance, Mr. Frankel has some motions in limine to prohibit

1   references to or attempts to offer evidence concerning

2   damages, and I think that the plaintiff does as well here

3   with respect to damages.

4         What would be wrong with doing that?  Putting

5   aside for a moment the issue of the opening statements, what

6   would be wrong with today resolving these issues with respect

7   to damages matters so that you know where the Court stands

8   with respect to that?

9         MR. TURKEL:  Your Honor, I think to a degree,

10  given Mr. Holder's arguments, it all ties together.  I would

11  tell you this just in a vacuum.  The idea that they want to

12  contend that other litigation is relevant because of this

13  trade blotter with an aggregate of client trades, not

14  something you can go online and get, aggregated data by

15  client, by trade, we contend is confidential and at the core

16  of confidential.

17        This would be a good example why, to me, even

18  though they are my motions, they are not talking about it in

19  opening.  That's another matter.  Mr. Holder said we think

20  the other litigation is relevant because they disclose this

21  -- quote -- trade blotter.  It's on page 3 of document 152

22  that was filed.

23        They say Alpine's trade blotter is confidential

24  information, that there is an issue of material fact as to

25  whether the trade blotter is confidential information under

1    the nondisclosure agreement, whether it's a trade secret.

2              Then they go and talk about Alpine has publicly

3    disclosed its trade data, for example, a reference to trades

4    processed by Alpine for clearing through NSCC/CS system for

5    its clients.

6              Judge, a broker-dealer would not consider

7    providing trade information to a clearinghouse as a breach of

8    confidentiality.  The clearinghouse is the only way most

9    broker-dealers can clear a trade, so it's within an avenue

10   that they are going to have to disclose to be clear.

11             Maybe a wire house like Merrill Lynch who doesn't

12   need clearing, may not need to use a separate clearinghouse,

13   but smaller broker-dealers do.  So, you know, my point would

14   be this, Judge.  All of these arguments that they are making

15   by this other litigation and sanctions would be relevant with

16   the 103, 104 series of the Federal Rules of Evidence,

17   conditional relevance, right?

18             They would have to tie it up, and that's generally

19   where a limiting instruction comes in and the risk of trying

20   this, because you tell the jury that this is only relevant if

21   they can prove XYZ, which is why we generally don't talk

22   about some of this stuff in opening statement.

23             So I think there is a gross difference, Judge,

24   between them trying to satellite -- try all these satellite

25   matters as a way of impugning my client's integrity and

1    character when it's not relevant under the character rules,

2    and, really, they are trying to put in as prior bad acts.

3           If there is tangential relevance as to material

4    elements of the case, for instance, you disclose confidential

5    documents to a third party, that is one thing.  But what they

6    argue in their brief, they disclose it to a clearinghouse,

7    well, Judge, that's not going to cut the muster.  That's not

8    a breach of a confidentiality, at least without you hearing

9    some testimony on it and them tying it up.

10          I don't think they can tie it up.  They don't have

11   a securities expert.  They don't have somebody that can talk

12   about clearinghouses.

13          Where I draw the distinction, Judge, on the

14   testimony of damages, they've essentially filed a motion for

15   summary judgment, which is, we don't like the way you are

16   going to prove your damages, so we don't think you should be

17   able to talk about your damages.

18          That's just what it is.  We cited the case from

19   the Southern District.  It was literally on all fours on

20   this, and you can't disguise a motion in limine -- motion for

21   summary judgment as a motion for limine.

22          What they are saying in theirs -- they are not

23   saying the damages are irrelevant.  They are not saying that

24   the damages that could be testified to are incompetent or

25   violation of a rule.  They are just saying we don't like the

Proceedings via Zoom Videoconference                                    15

1   fact they didn't give us the documents and we don't like how

2   they are going to testify.  We don't think it's the right

3   way, so therefore, shouldn't be able to testify.

4           Judge, I want to be very clear about this.  We

5   filed a supplement after Mr. Frankel's deposition during

6   which we point out to the Court -- and that's document 218.

7   Mr. Frankel wouldn't answer questions that we believe were in

8   the purview of your ruling about these Vision documents.

9           But I want to be very clear for you, for them, for

10  the record as to what I inherited and where I think this case

11  is heading.  This case gets filed before he goes to Vision.

12  He goes to Vision sometime May or June of last year.

13          While this case is being litigated, he is

14  essentially committing the acts that form the basis for

15  damages.  Now, as the Court knows, we didn't know about this

16  because Vision didn't produce their documents before the

17  discovery cutoff, and they didn't do it because they were

18  told by Frankel, if I were you, I would just blow it off.

19  I'm sure you remember that e-mail from the hearing that we

20  had to reopen the record where Frankel, the defendant, had

21  e-mailed Vision, saying don't produce the document.

22          Judge, essentially while the case is going on and

23  the damages are being built, they are stonewalling us as to

24  the evidence of those damages.  So I move this Court -- I

25  understand that I inherited something that was post-discovery

1  cutoff and my limitations were going to be narrowed by you,

2  and I accepted it, Judge, and I think you did the right

3  thing.

4        So we go to Frankel and we ask him questions, and

5  they are all pointed out.  We excerpted the deposition in

6  document 218.  "But wait a minute.  When you went over to

7  Vision, were you going to be incentivized by this client

8  coming over?  How much were you going to get?  Were you going

9  to get anything?"  And he just sua sponte, Judge -- not on

10 objection of counsel -- refused to answer these questions.

11       Judge, what we are stuck with here -- and I think

12 Mr. Susman, frankly, did the right thing as it relates to

13 candor toward a tribunal.  He filed the case.  He knew this

14 guy was doing something.  He said, we will find out during

15 discovery.

16       They assist the third parties in not responding to

17 the discovery.  They played fast and loose with the

18 documents.  And even when you order it, they don't answer

19 fully and completely questions about it.  And so what is

20 Mr. Hurry stuck with, Judge?  He is stuck with this:  This

21 guy took confidential information and we lost clients.

22       Some of those clients, we know now from the Vision

23 documents, went to Vision.  Now, they can move you for DV on

24 that, they can tell the jury I didn't prove my case.  But

25 trying to foreclose us arguing, that is not a motion in

1    limine.  That's a motion for summary judgment.

2            Both parties filed exhaustive summary judgment

3    motions, Your Honor.  You wrote a very detailed order.  If

4    they had such problems with the confidentiality then, they

5    would have made a more persuasive argument then.  But that's

6    not a motion in limine.  That's where I see a difference

7    here.

8            There are motions in limine, Judge, on evidentiary

9    issues relating to things governed by 404(b), the 600

10   character series of evidence rules.  At best are

11   conditionally relevant, subject to tying up at trial,

12   evidence.  Whereas theirs is the wholesale:  Don't let them

13   put on a damages case.  They don't have an expert.  Don't let

14   their guy talk about damages.

15           That's our position, Judge.  I hope that clears it

16   up.

17           THE COURT:  All right.  Who is to respond to that?

18   Mr. Holder?

19           MR. HOLDER:  Your Honor, Mr. Banker is prepared to

20   address our motion in limine on damages, but I would just --

21   there are a couple of things he said about the motion in

22   limine that they were presenting.

23           First of all, the disclosure was not made to the

24   NSCC.  The disclosure was made in a publicly filed court

25   document that anyone with internet access can go and obtain.

1   The trade data was disclosed to the world, and there is no

2   expert necessary to render an opinion that that's not

3   treating anything confidentially.

4        We are not suggesting in our motion that it was

5   disclosed to the NSCC and that caused an issue with the

6   confidentiality of the documents.  We are suggesting that

7   because they publicly filed it in that case, that's the

8   reason why it wasn't treated -- the trade data wasn't treated

9   as confidential.

10        But Mr. Banker is prepared on the motion -- a

11  little bit spilled over to your motion in limine, and I don't

12  know if that's the direction the Court wants to go.

13        THE COURT:  That's fine.  Absolutely.  Mr. Banker.

14  Go ahead.

15        MR. BANKER:  Sure.  Thank you, Your Honor.

16        Before I move to the motion in limine on damages,

17  let me just correct the record on one thing, and I want you

18  to understand very carefully.

19        The trade blotter that Frankel is accused of

20  misappropriating, anonymous, it doesn't have customer names

21  on it.  It doesn't reveal the broker.  It is an absolutely

22  useless piece of information.

23        What you will see -- and yet -- and yet, Hurry

24  claims that this anonymous blotter is top secret and

25  confidential and that our guys had taken it and then Hurry

1    publishes a brief in the D.C. Circuit -- wasn't it in the

2    D.C. Circuit where the mandamus was filed?  He files far more

3    than the blotter contains.  He has the client names, the

4    trade prices, he's got the stocks, he has infinitely more

5    detail.  And for him to claim that this unanimous trade

6    blotter is some kind of secret is ludicrous, and that is an

7    absolute impeachment of their entire claim.

8            The man is going to claim that the anonymous

9    blotter is confidential when he publishes what he publishes?

10   That has to be admissible.  That is an absolute lack of

11   candor or lack of truthfulness.  So I'm going to -- I'll calm

12   down.

13           Let me talk about the damages, and we have really

14   gotten off track on this, Your Honor.  And let me just

15   refresh you on the history, because this history is so

16   important.  The lawyer who filed this ran off and filed a

17   half-cocked lawsuit, and that was our position from the

18   beginning.  And he had absolutely -- now, he sent us a demand

19   letter.  He didn't even give us time to respond.  He said we

20   had a deadline, and he went ahead before we even could get to

21   the deadline.

22           He had absolutely no evidence, and he shouldn't

23   have done that.  That's not the way gentlemen and gentle

24   ladies, civil lawyers behave.  I guarantee you that

25   Mr. Turkel would not have done that.  I guarantee that

1    Mr. Cuva would not have done that.  Certainly Mr. Holder and

2    I would not have done that.

3            You don't send a demand letter when you know you

4    are going to sue anyway.  You don't even wait for the

5    response.  That created a very big problem for the client

6    because the client had absolutely no evidence of any damages

7    or any harm.

8            And you know what is really interesting, Judge?

9    The client is not clairvoyant.  The client cannot know what

10   Mr. Frankel is ultimately going to do six months after the

11   lawsuit commenced, which is to join Vision, right?  So this

12   case morphed from a case about our guy's effort to buy a

13   broker-dealer in Chicago named Ziv, with top secret

14   information and an anonymous blotter that is worthless, that

15   Hurry publishes far more information in the public records of

16   the courts -- it's all about that case.  It's all about the

17   broker-dealer Ziv.  That's what the lawsuit is about, and

18   that's what is referenced in the complaint.

19           Then all of a sudden, you know, Hurry joins Vision

20   six months later, and now what is the lawsuit about?  Now

21   it's all about Vision.  Well, how could Hurry know that

22   Frankel was going to use confidential information to join

23   Vision?  It's just preposterous.

24           And what is really just under my skin about this,

25   Judge -- and I think it's fair for you to be annoyed about

1   this, too, is this Vision stuff is old hat.  This is ancient

2   information.  And let me tell you why it's ancient

3   information.

4         If you look at our opposition to Hurry's motion

5   for sanctions -- I'll tell you where the docket file is.  It

6   was filed as Exhibit 1 to document 192.  Document 192.  So

7   when we filed our opposition to the motion for sanctions, to

8   try to reopen discovery in this case, we attached the Vision

9   lawsuit.  Hurry sued Vision way back in September of 2019.

10         Before Jordan Susman took his deposition Hurry is

11   talking about the real lawsuit is the lawsuit against Vision.

12   And he ended up suing Vision, and he claimed that Randy Jones

13   and Vision and Rothman conspired to steal all of the Hurry

14   business using Hurry's confidential information.

15         It didn't say a thing about Frankel.  Not a thing

16   about Frankel.  That lawsuit is in the record.  That thing is

17   filed at the beginning of September, and we don't hear a peep

18   about Vision until we come up to the pretrial conference, and

19   Hurry has got no damages and Hurry knows he can't prove his

20   case.

21         And all of a sudden -- all of a sudden this

22   lawsuit becomes all about Vision when Vision didn't even

23   exist when the lawsuit was filed.  So let's not get wrapped

24   around the axle here.  This is a really simple motion in

25   limine, and all you need to do is look at the rules, Judge.

1   You don't even need to go beyond the rules, although we have

2   a Ninth Circuit case, and the rules say -- and everybody

3   knows this.  Certainly Mr. Turkel knows the rules and

4   complies with the rules, but others haven't.

5            So the first thing that you have to do, you have

6   to file your initial disclosures under Rule 26 and you have

7   to file your damage calculations, right?  And it's no excuse

8   under the rule that you can't be precise.  You have to do the

9   best you can.

10           And guess what, Judge?  You have to supplement

11  that damage calculation.  You have to under rule -- let me

12  read it.  Under 26(A) you have to make the damage disclosure.

13  Under 26(E) you have to supplement the damage disclosure.  In

14  other words, you can't say we don't have evidence of damages

15  yet.  That's no answer.  You have to supplement it.  And they

16  haven't done that yet.

17           THE COURT:  Okay.  So let me ask you something,

18  Mr. Banker.  What documents do you admit that Hurry produced,

19  because I think they produced -- wasn't it Exhibits 29 to 34

20  when Hurry was deposed?

21           MR. BANKER:  Oh, those are worthless.  Those are

22  worthless.  All those are are revenue records showing certain

23  amounts of revenue.  And Hurry acknowledges -- if you read

24  our brief, he acknowledges in our deposition -- he says they

25  are worthless.  We think that maybe these drops in revenue

1   might correlate with misconduct by Mr. Frankel, but we

2   haven't put that together yet, and we haven't even decided

3   what documents we are going to use to do our damage analysis.

4          THE COURT:  Well, what would be wrong with having

5   those admitted and then Frankel can -- in cross-examination

6   you can do whatever you need to do to minimize their impact

7   or to show weaknesses in it?

8          MR. BANKER:  Well, because, Judge, I mean, the

9   fact that your revenue is up or down in any given month

10  proves nothing.  You have to show -- first of all, you would

11  have to show that a particular client didn't do business with

12  Hurry and that that caused the revenue drop.  Then the

13  revenue drop might matter.  But the amount recoverable would

14  not be the revenue.  It would be the profits.

15         So I mean, there is a threshold.  They have to

16  show that a particular client stopped doing business with

17  Hurry because of something that Frankel did.  They have not

18  begun to show that with anybody.  They haven't even

19  identified the clients that we allegedly took.

20         They never bothered to ask Frankel about

21  particular clients in his deposition.  You know, did Joe

22  Jones leave?  You know, did you share information with Joe

23  Jones?  They haven't deposed any clients.  They haven't done

24  anything.  It's just financial statements.  It's like my law

25  firm's financial statements.  Are revenues up; are revenues

1    down.  It doesn't -- it proves nothing.

2           But the critical part in this they didn't even

3    grasp.  In their late filed brief, they didn't even timely

4    respond to our motion in limine.  Their response was way

5    overdue.  They didn't get an extension.  They didn't get an

6    order extending it, but they get off on summary judgment and

7    all this stuff when the operative provision is -- this is the

8    answer, Judge.  It's under Rule 37.  Rule 37(E).  And if you

9    look at 37(C) -- I'm sorry, 37(C).  It says, "Failure to

10   disclose or supplement earlier response or admit.  If a party

11   fails to provide information as required by Rule 26(A), the

12   initial disclosures, the party is not allowed to use that

13   information to supply evidence at a hearing or trial."

14          It's done.  That's what the rule says.  The motion

15   in limine is just -- that's all it is, and that's what we

16   cite is 37(C).  And that's what the Ninth Circuit case says,

17   that's what the other cases that Mr. Holder, who is a

18   terrific legal scholar, cited for you.  I mean, they never

19   provided a damage disclosure.  They never supplemented a

20   damage disclosure.

21          THE COURT:  Let me ask Mr. Turkel.  Mr. Turkel,

22   what documents -- or Mr. Cuva -- did plaintiffs produce

23   outside of the Hurry deposition documents?  That's my first

24   question.  Did you ever disclose a computation of damages?

25          MR. TURKEL:  Judge, the additional documents that

1  would be used at trial would be documents that were produced

2  during the Vision production.  Let's be very clear, Judge,

3  about this.

4          When this case was filed, I think Mr. Banker to a

5  degree is correct that what we thought Mr. Frankel was doing

6  was taking documents and information to go obtain this other

7  broker-dealer Ziv.

8          While this case was pending, he goes and gets

9  hired by Vision, the place he ultimately goes and the place

10  where we contend he ultimately takes clients.  There are

11  documents that Vision produced that show Mr. Frankel

12  soliciting clients of our firm or helping with the

13  solicitation to take them to Vision.

14          This idea that Vision -- the rhetoric that flows

15  is somewhat amazing.  We subpoenaed -- or I should say that

16  my predecessor at the time when we were strictly local and

17  was not active in the case, subpoenaed Vision before the

18  discovery cutoff, Judge.

19          As it got close to the discovery cutoff -- and

20  this was the whole premise of the motion to reopen, which I

21  know was very tough for this Court because you are generally

22  not inclined to do that, but I showed you the e-mail that

23  Frankel sent to them, saying, I would just tell them to buzz

24  off.

25          Judge Tuite had granted that motion because they

1   had no excuse.  Vision had no excuse for not producing the

2   documents other than they had been informed the discovery

3   cutoff was coming and there wouldn't be discovery reopened.

4   It was important, Judge.  You have the defendant in the case

5   instructing a critical third-party witness not to produce

6   documents, telling him discovery is going to be shut down

7   soon.

8          Judge Tuite asked them -- asked Vision's counsel,

9   Judge, no less than five times, on what authority did you

10  refuse to produce these documents after agreeing to produce

11  them?  It's not as if this came up after the fact or when a

12  separate lawsuit was filed against Vision, Judge.

13         The subpoena went out before discovery cutoff; and

14  if we had had it prior to and they hadn't played games with

15  the documents, then we would have been able to address it

16  within the discovery cutoff.

17         THE COURT:  Let me ask you, on the second

18  deposition, did Frankel get deposed on the new Vision

19  documents?

20         MR. TURKEL:  That's correct.  We filed a

21  supplement and we excerpted his testimony where he literally,

22  without counsel objecting, at points said, I'm not going to

23  answer that question.  And we filed it as a supplement to

24  this to show you they are asking you to exclude evidence of

25  damages when their own client won't even answer questions

1    within the purview of your order.

2            I love it, Judge.  If they want to take that

3    position at trial and he wants to sit in front of you and not

4    answer questions that were within the purview of the

5    documents that we deposed him on, that's great, because to me

6    they are waiving their objection to these damages.

7            But what's clear is this, Judge.  When they talk

8    about supplementing, okay, and a sanction under 37(E), on

9    their initial disclosures there are two witnesses.  Two.

10   That's it.  On their trial witness list that they filed in

11   January, there are 24 witnesses.

12           They didn't supplement their disclosures at all as

13   to these other 22 witnesses.  I did not find out until this

14   morning who they actually intend on calling, and I'm not sure

15   I got that even in a form that tells me.  But they didn't

16   supplement anything, Judge.  And frankly, Judge, if you want

17   to discuss candor toward the tribunal, in honesty, what they

18   should have done is when their client went to Vision in May

19   of last year, while discovery was still very ripe and this

20   case was still very much being litigated, they should have

21   supplemented everything and said, here's where he went and

22   here's where he's negotiating a contract and here's where

23   he's negotiating with your client.

24           They didn't supplement anything.  They hid it,

25   Judge.  And then they kept going to Judge Tuite and doing

1  this.  Well, Judge, we can't produce unless they tell us what

2  they are looking for, when their obligation would have been

3  to update everything with respect to the new employer.

4          And, Judge, you know, you get this sense after you

5  go through some of this lawyer stuff that we have gone

6  through as to what the strategy was, and the strategy was

7  simple.  And Mr. Banker actually just said it.  Well, we

8  don't know what he's going to do six months later.  Hurry

9  doesn't know.

10          Well, what did the client do?  What did the

11  defendant do, Judge?  He breached the contract during this

12  lawsuit with the new employer, and then the burden got put on

13  us to guess what he was doing when we couldn't satisfy these

14  thresholds because they didn't supplement.

15          Judge Tuite closed this out of discovery because

16  they had a duty to supplement as to all this Vision stuff.

17  Frankly, Judge, if they had, I would've moved to amend and

18  put it in the pleading.  But they've tried it by consent

19  anyway because they know it's within the purview of the same

20  violation, just a different entity.

21          They didn't do one thing to supplement their

22  discovery, supplement their initial disclosures up to and

23  including the pretrial order and the filing of witness and

24  exhibit lists, which they literally added 22 witnesses which

25  weren't disclosed in their initial Rule 26.

1              So if you want to talk about sanctions, I can move

2    to strike their proceedings for that.  They should have

3    supplemented it last year.  None of this, Judge, gets around

4    the fact that if you look at the *A.T.O. Golden Construction*

5    *Corp.*, Southern District, a case from 2018 that we cited at

6    page 2 of document 158, our briefing, "The Court held that a

7    motion in limine was not the proper vehicle to raise the

8    issue that the defendants were denied discovery of lost

9    profits evidence and that, therefore, plaintiffs should be

10   precluded from bringing a lost profits claim at trial."

11             And the court said exactly what you said.  If it's

12   that bad, bring it up.  Cross him.  Fight the proof.

13   Convince the jury they are wrong.  Whatever.  I think the

14   jury is going to see right through this, frankly, and see the

15   stonewalling and Frankel refusing to answer and they are

16   going to see it for what it is, but that's a jury question,

17   Judge.  That's what the *A.T.O. Golden Construction Corp.* case

18   said.  It was the exact same thing; it's more suitable on

19   summary judgment, not by motion in limine.

20             Judge, as to the Vision lawsuit, it was filed late

21   last year.  He was excluded from it because he's being tried

22   down here.  He's definitely a co-conspirator.  I'll tell you

23   what.  If the defendants want to stipulate to abate this

24   case, we will tee that back up and add him in and we will

25   litigate the big case first and Mr. Frankel's case can sit in

1  abatement while we do that.  I'll be happy to do that and

2  take this off your docket if they have that big of a problem

3  with that case.

4          But very often, Judge, when you have conspiracies,

5  co-conspirators can be sued in the main case, they can be an

6  unindicted co-conspirator, for lack of a better word, and

7  referred to but not sued because we are suing them down here.

8  Really it has nothing to do with this case at all.

9          THE COURT:  So what I'm trying to -- and I

10  appreciate that.  What I'm trying to find out is what was

11  not -- or what was or was not disclosed by the plaintiffs.

12          MR. TURKEL:  Judge, the Vision documents that

13  include evidence of our clients being solicited by Vision.

14  We were narrowed there, Judge.  I played the cards that the

15  Court let me play because we got this order compelling Vision

16  to produce and then a limited deposition.

17          But all the Vision documents, his contract with

18  Vision, the reference to our clients that are on e-mails with

19  Vision, and so forth.  As far as the exact amounts, he

20  wouldn't answer those questions at his deposition, Judge.  If

21  we set this far off for a jury trial, I can move to compel

22  it.  I think they are obligated to supplement.  I certainly

23  think they can militate against granting this motion, and

24  that's in document 18.

25          MR. BANKER:  Judge, to answer your question, you

1   asked what was not disclosed by the plaintiffs.  The answer

2   is nothing was disclosed by the plaintiffs.  And Mr. Turkel,

3   I know, got lost in what he was saying, but the answer to

4   your question is, they never to this day, even now, have

5   supplemented the initial disclosure about their inability to

6   prove damages.

7           I have no idea what their damages are.  They have

8   not -- they have never provided a computation.  The only

9   documents -- you asked, what did they produce?  They produced

10  the documents at Hurry's deposition in early August and, you

11  know, they are just revenue documents.  They don't tell you

12  anything.  There is no loss post-analysis.  There is no

13  identification of loss of revenue attributable to a

14  particular client.  There is no analysis that some

15  information about that client caused the client to leave and

16  for that revenue to be lost.

17          So the answer is, nothing has been produced.  And,

18  you know, the cases that they cited, the summary judgment

19  cases, are in posit.  They are not dealing with 37(E) -- or

20  37(C).  I forget what the letter is.  They don't talk about

21  that.  Those are talking about where it's the quality of the

22  lost profits evidence.

23          You know, there is a factual issue that in those

24  cases they say, you know, that's not a motion in limine.

25  That's the motion for summary judgment or an issue for the

1  trier of fact.

2          Here we don't even get there.  They don't even

3  make the initial disclosure that says what their damages are,

4  their basis for calculating.  They have never done that.

5          So let me tell you something.  I mean, this is

6  so -- I resent these accusations.  You know, the problem in

7  this case is that Hurry never got a noncompete.  He never got

8  a non-solicitation.  He got a confidentiality, which is not

9  so great if you don't want people trying to solicit your

10  business.  You really need something else.

11          In the case, you'll remember -- and you were very

12  faithful in reading all this stuff.  I didn't realize that

13  the law was so restrictive that Hurry doesn't have a right to

14  monitor Frankel's activities.  He couldn't even get discovery

15  until he could state a cause of action.  And here the

16  complaints were so vague he could never state a cause of

17  action until, like, five months into the case, in May.

18          So when the case moved into a last-ditch effort to

19  say it wasn't Siv, it must be Vision, of course we filed

20  witnesses to addressed the emerging claims that Hurry is

21  trying to make, that he's trying to concoct to salvage the

22  case when he's never produced any damages.

23          So there is one other point that I'm going to

24  make.  On these Vision documents, it is such a red herring,

25  Judge.  Remember what the timing is on this.  Frankel was

1    already at Vision.  Susman had the opportunity to ask any

2    question that he wanted about work with Vision.  They were

3    already teeing up a lawsuit against Vision.  They knew that

4    Vision -- they contended that Vision stole all this business.

5    They didn't ask about any of that stuff.  They sued Vision

6    separately and then they dropped the lawsuit.  They withdrew

7    the lawsuit in November of last year.  They didn't even

8    continue to pursue it.

9            So I don't know what they are doing.  I don't know

10   why they bring this up two days before the pretrial

11   conference.  I think the reason is pretty clear.  They can't

12   prove their case, and that's not my problem.  Maybe you don't

13   file a lawsuit if you don't have evidence of damages, when

14   you don't have evidence of wrongdoing.  But when you are just

15   trying to slow somebody down and to monitor their activities

16   to keep them from trying to take your business, when you

17   don't have a non-solicitation or noncompete, maybe you

18   shouldn't do that.  And maybe the consequence of doing that,

19   you find yourself stuck in the case where they can't prove

20   it.  That's not my problem.

21            THE COURT:  Let me ask Mr. Turkel a couple of

22   questions here.  Mr. Turkel, when I look at Rule 37(C), it

23   appears to me that if you don't produce something, under

24   Rule 26, that can't be used at trial unless the failure was

25   substantially justified or it's harmless.

1          So is your argument that your noncompliance is

2     substantially justified due to Frankel's actions here?  Or am

3     I missing something?  Why don't you take a moment to talk

4     about that.

5          MR. TURKEL:  Yes, Judge.  Judge, if you look at

6     document 158, our response to this motion, or you could even

7     look at docket 148, paragraphs 7 and 8, they acknowledge

8     Frankel concedes that the plaintiffs produced damages

9     documentation on August 5th and 6th, 2019.  And John Hurry

10    gave testimony pointing to drops in revenue and contributing

11    to causation and breach of nondisclosures.  That's in their

12    moving papers, paragraph 7 and 8 in their motion in limine.

13         Judge, there is not an issue about whether there

14    was testimony provided and that certain damages documentation

15    were being produced.  We don't have other documentation that

16    has not been produced.  What happened was --

17         THE COURT:  Let me go back and make certain I

18    understand.  Would that be Exhibits 29 to 34 to the Hurry

19    deposition?

20         MR. TURKEL:  Let me double-check their

21    representation.  If you look at paragraph --

22         MR. BANKER:  Those are the damage numbers.

23         THE COURT:  Okay.  I wanted to make certain I'm

24    focusing on the right one.

25         MR. TURKEL:  Right.  Now, he also gave testimony

1    about that.  Now, Judge, I don't think Mr. Banker is talking

2    about failure to supplement based on Vision documents that we

3    got after the pretrial this year that were produced pursuant

4    to court order, subject to some subsequent motions to compel

5    that occurred way after Hurry's deposition.

6           I would have no problem, frankly, if he wanted to

7    depose Hurry again on the Vision documents.  He hasn't asked.

8    But, Judge, look at document 218.  I guess my point is this,

9    Judge.  At the time, if you put yourself in the shoes of the

10   plaintiff, he knows an employee has left and just -- Judge,

11   you ruled on summary judgment on the merits of whether things

12   are trade secrets or not.  There is no reason for us to argue

13   to you about whether there is a question of fact.  You've

14   already found there is a question of fact as to whether these

15   trade blotters and documents would constitute trade secrets.

16          For purposes of argument, just assume for a second

17   you've got this defendant, this employee who leaves and takes

18   documents you contend are trade secrets, and you know that

19   there's been a drop in revenues on certain clients and you

20   note that you have certain documents and that you testify,

21   but you don't know exactly what they have done because like

22   most of these cases you never know that until you get to the

23   place where they land.  That's Vision.  I'm not going to get

24   into the Connecticut lawsuit on Vision and why this was

25   tabled.  I'm not counsel in that lawsuit.  I don't think

Proceedings via Zoom Videoconference                                  36

1    there is anything new that Mr. Banker painted.

2              There were a lot of procedural issues up there,

3    and it's not gone forever.  But the long and short of it is

4    this, Judge.  The Vision documents that you compelled -- that

5    Judge Tuite compelled and we got a deposition on, if you look

6    at document 218, okay, page 6, which is our supplement in

7    response to this motion in limine, we identify three

8    categories of areas of inquiry where Mr. Frankel refused to

9    answer questions.  One of them was his compensation.

10             As I told you at the hearing on that deposition, I

11   didn't need his 1099s or W-2s.  What I needed was whether his

12   compensation was tied to clients he brought over, and we

13   cited that, Judge, and he would not answer these questions.

14             Category two, deposit group calculations.  There

15   is a string of e-mails that were produced in the Vision

16   documents called deposit group calculations.  He wouldn't

17   testify about them.  Those calculations, which if the other

18   documents that we got connect to them, the other Vision

19   documents concern revenue and income of this deposit group,

20   that includes clients that were our clients before

21   Mr. Frankel left.  He, just on his own, refused to answer

22   these questions, Judge.

23             Now, those documents, the Vision documents, the

24   Frankel subsequent deposition, they are certainly not part of

25   Mr. Banker's argument that we didn't supplement.  They

1   happened after the pretrial.  They happened subsequent to

2   motions that Judge Tuite and yourself entered, right?  So

3   those are going to be part of the damages case.  We will put

4   Mr. Frankel up and we will let him refuse to answer those

5   questions in front of a jury, too, because it just shows that

6   what they are doing here, they don't want to tell us exactly

7   how much money he took.

8            Now, what does that tell me from an evidentiary

9   perspective?  Well, it's a privilege that I'm going to get an

10  inference instruction on, or they can waive their privilege

11  and they can talk about it.  I don't know why they don't want

12  to talk about it.  But that set of documents and that

13  testimony is certainly relevant.

14           There is no way that has to do with this motion --

15  this argument about a 37(E) or 37(C) sanction because we

16  didn't even know until after the pretrial.  Right?  And this

17  is what I'm telling you, Judge.  It's kind of like this idea

18  of someone killing their parents and complaining they are an

19  orphan.  They complain about the lack of evidence and they

20  complain about it all, but they are stonewalling the evidence

21  in return.  If it's that bad, Judge, and there is no proof

22  there, then why is their client not answering questions about

23  it?

24           THE COURT:  I tend to agree that the Vision

25  documents should be part of the trial based on what I'm

1    hearing today.  What other comments or thoughts do both of

2    you have with respect to that?  Mr. Turkel?  Let me hear from

3    Mr. Turkel first, and then I'll go to Mr. Banker.

4              So, for instance, we have got -- if documents and

5    testimony on damages evidence which were produced during

6    regular discovery and the Vision documents in deposition, I'm

7    not certain what would be wrong with having that be part of

8    the trial.  But I want to make certain -- since I'm doing

9    this in a vacuum and not in the trial setting, I want to make

10   certain that I understand everything, because under Rule 37,

11   if something hasn't been produced under Rule 26, it shouldn't

12   be admitted in trial.  But what I'm hearing is that the

13   damages evidence produced during regular discovery and the

14   Vision documents in deposition -- I'm not certain what's

15   wrong with allowing that to be part of the trial.

16             But, again, I want to make certain I'm not missing

17   anything, and I want to hear additional argument on that.

18   Let me hear from Mr. Turkel first and then I'll hear from

19   Mr. Banker.  Mr. Turkel.

20             MR. TURKEL:  Yes, Judge.  It goes back to the

21   simple premise that we sought discovery from Vision.  They

22   didn't do it before the cutoff.  We had to file motions to

23   get it.  Those motions, by the time they went through you and

24   Judge Tuite, ended up in February-ish, post-pretrial, where

25   we had to get this evidence the magistrate judge found we

1  were entitled to and should have been produced in August of

2  last year.

3          So I don't know how we could in any way, shape, or

4  form be sanctioned for not supplementing with evidence that

5  we didn't have prediscovery cutoff or even pre-pretrial.

6          THE COURT:  Would you say, then, that the Vision

7  documents in Mr. Frankel's second deposition are fair game?

8          MR. TURKEL:  They would have to be.  I didn't even

9  really understand them to be taking the position that that

10  information was not relevant.

11          Judge, by the same token, it's the same thing.  I

12  could sit here and cry foul and, frankly, when you went back,

13  if I wanted to drill down on it, they should have been

14  supplementing their disclosures when their client got hired

15  by Vision in June of last year, prediscovery cutoff.

16          Not only did they not do that, Judge -- let's be

17  very clear.  Here's irrefutable evidence that the client told

18  Vision not to produce documents.  It's in the e-mail that's

19  before this Court.  It's in the record.  He said, I would

20  tell them to buzz off and not produce it.  Counsel is on that

21  e-mail.  They should have been supplementing with all the

22  Vision information when their client got hired last year, but

23  they didn't.

24          Now we get their pretrial witnesses, and there are

25  24 witnesses, 22 of them not on their initial disclosures.

1   So everybody is playing this Vision game with newfound

2   evidence.  And for us, stuff that was even after the pretrial

3   order.  I don't see how you could possibly sanction us for

4   that, Judge, with all due respect.  We didn't have it timely

5   because of the misconduct of the third-party Vision and

6   defendant's complicity in same.

7           So, yes, it has to be fair game here.  And, Judge,

8   just to be practical about it, I told Mr. Banker on numerous

9   occasions, and Mr. Holder, that if there is any subsequent

10  depositions they want -- we have two witnesses that I think

11  showed up not in our initial disclosures but on the pretrial

12  witness list, as opposed to their 22, but still, we will work

13  with them.  We will have time obviously now.  The trial will

14  not happen when we thought, and we should get this additional

15  stuff in a way that everyone is comfortable trying.

16          But the idea we get blocked on evidence that had

17  it been disclosed timely -- they even served a predicate,

18  Judge, to amend -- is absurd.  We are locked down on what

19  Hurry said in his deposition.  We're not trying add to what

20  his deposition said or the documents produced at his

21  deposition.  It's not like we are adding that.  What we are

22  adding is the Vision discovery we got pursuant to court order

23  post-discovery cutoff.

24          So if you will, go back and look at the *A.T.O.*

25  evidence, the Southern District case I discussed.  But if

1  they want to argue the competency of John Hurry's testimony

2  about what he saw as damages is fine.  We have learned a lot

3  more from Vision.  And the bottom line is, right now, whether

4  I handle it by getting a negative inference on Frankel's

5  refusal to answer the questions or seek relief from you or

6  Judge Tuite on it, I don't really know.  It's before the

7  Court in our supplement.  He should have answered these

8  questions, Judge.

9        THE COURT:  Let me ask you something, Mr. Turkel.

10  Did you ever produce a computation of damages other than

11  these documents we have already discussed?

12        MR. TURKEL:  Judge, we did not produce a summary

13  of damages, but I don't think there is anything in the law

14  that said I can't put a corporate rep on or a CEO to testify

15  here's what our revenues were and here's what they weren't.

16  I don't have to have an expert to do that.  They moved to

17  strike an expert anyway because they said we didn't have

18  disclosures.

19        Judge, it's sort of a horse-before-the-cart

20  thing -- or cart-before-the-horse thing.  If we had the

21  Vision stuff timely, we may have been able to do all this,

22  but we didn't.  And then when we ask for it, Judge, their own

23  client won't tell us the numbers.

24        I mean, Judge, if I didn't know that the Court's

25  inclination was always so strong about reopening, I would be

1  asking, let me get financials from Vision and compel this guy

2  to tell me what he took, because that's where this case is.

3         Judge, I don't want an advisory opinion; but if

4  they are going take the position that this guy is allowed not

5  to answer what clients he stole and what revenues they

6  generated and then say there is no damages, I may not have

7  choice but to file that motion.

8         I kind of thought we were a nonjury trial, which

9  we were talking about right up until this week.  So I kind of

10  thought it wouldn't matter so much.  But if we are going to

11  jury try this thing, I may have to do it.  I apologize in

12  advance, because I know you will probably be upset if I do,

13  but I think I may have to with this Vision thing.

14         I just want the truth, Judge.  I don't want to be

15  told I have a junk lawsuit when their guy is not telling me

16  the truth about what he took.  And I think that's a pretty

17  simple concept to accept.  So that's all that I have, Your

18  Honor.  I think you should deny this motion.

19         MR. BANKER:  Judge, may I speak?

20         THE COURT:  Mr. Banker.

21         MR. BANKER:  Here's the truth.  Mr. Turkel's

22  client was required to produce a computation of damages.  To

23  answer your question, he has never provided that.  So the

24  answer is, unequivocally no, that has never been provided.

25  That is basic information that he had to provide.

1          This lawsuit, discovery closed in August.  The

2   lawsuit was in the can at that point.  If discovery needed to

3   be opened because of Vision, or reopened, and if the case was

4   going to be a new case about Vision instead of whatever Hurry

5   alleged or believed that Frankel had done before he joined

6   Vision, the remedy to do that was to bring it to your

7   attention in September -- on September 11, 2019, when Hurry

8   sued Vision and when Hurry sued Randy Jones and Howard

9   Rothman and never mentioned Frankel.

10          Why are we even talking about Vision?  This

11   lawsuit was in the works way back in September.  So

12   Mr. Frankel is entitled to have the case tried that Hurry

13   brought.  The case that Hurry brought, discovery closed in

14   August.  It's not Hurry's -- it's not Frankel's problem that

15   Hurry doesn't have evidence, that he has trouble getting

16   records from Vision.  Frankel didn't tell Vision.  Vision is

17   not Frankel's automaton.

18          He said, if I were you, I would ignore it.  He

19   didn't say, ignore it.  I'm telling you to ignore it.  It's

20   up to Vision.  They are big boys.  And you know what?  If

21   Hurry decides that there is something that Vision has that's

22   so critical to proving his lawsuit, he needed to bring it to

23   your attention way back in the Fall of last year.  And we got

24   bupkis until a couple of days before the pretrial conference.

25          You have to wonder about that timing.  Let me tell

1    you something -- and I know Mr. Turkel has not read all of

2    Frankel's testimony.  These Vision documents don't help him

3    at all.  You said that they couldn't ask because it still had

4    the noncompete --

5              MR. TURKEL:  I was at the deposition, actually.

6              MR. BANKER:  -- because he's not entitled to ask

7    him about his compensation.  We didn't unredact any of the

8    information about his compensation.  That remained off

9    limits.  What they were entitled to ask was what clients did

10   you lure over?  What was the amount of revenue that came

11   over?  They didn't ask those questions.  They didn't ask

12   those questions.  And the documents don't help them prove

13   that information.

14             That's a separate lawsuit.  That's a lawsuit

15   against Vision about revenue that Vision took.  And if you

16   look at Frankel's deposition -- and I can't say whether he

17   was going to file it with the pretrial conference.  I don't

18   know if he did or not, but I can get it to you.

19             On page 62 and 63, this is nowhere referenced in

20   their papers.  They ask the one question that was relevant,

21   and answer was no.  They said -- Mr. Vogue asked, "So there

22   was a system in place" -- this is beginning at line 13 --

23   "system in place at some time where Vision people" --

24             THE COURT:  Slow down, Mr. Banker.  Just slow

25   down.

1          MR. BANKER:  -- "bringing that business in?"

2     Answer:  "No.  No.  He didn't get any credit for business

3     brought in, whether it was Hurry's business or whether it was

4     Joe Blow's business."

5          Follow-up question.  "Was there any component of

6     your compensation at Vision whereby you would get

7     compensation or profit sharing that would directly tie to

8     specific customers?"  Answer, 63, line 9.  "No.  No."

9          There is simply these documents that they've got.

10    They simply know -- they didn't ask for -- they didn't ask

11    our guy to produce.  They didn't have Vision to produce

12    revenue records.  They didn't ask for this stuff.  They still

13    have to go fishing.

14         The documents that they've got prove nothing of

15    their case.  They don't prove Frankel took in clients.  They

16    don't prove any revenue was attributable to a client.  His

17    compensation doesn't reveal that, and that's off limits

18    anyway.

19         The man has spent a fortune on this case.

20    Defendants are entitled -- you know, people have to play by

21    the rules.  The case that we prepared to try from the start

22    closed in August.  If they wanted to pursue a new separate

23    case, they needed to bring it to your attention way back in

24    September when they sued Vision.  They didn't do that, and

25    it's way too late to be trying to turn this into a totally

1  different lawsuit than what they started with.  Siv is

2  irrelevant at this point.  That's what they sued, because he

3  was buying SIF.  We are totally beyond SIF.  SIF is no longer

4  a witness.

5       Is that my fault that SIF is no longer a witness?

6  Not really.  They changed the pleading.  Now it's Vision, I

7  guess.  Although, Vision is not even mentioned in their

8  complaint.  So poor Frankel has spent a fortune.  He's ready

9  to defend the case they sued, that they filed.  Let's go.

10       THE COURT:  Well, what is your take on abatement,

11  if this is a different lawsuit?  Mr. Turkel said he's fine

12  with abating this lawsuit for a while.

13       Right, Mr. Turkel?  Did you say that?  Did I

14  misunderstand you?

15       MR. TURKEL:  Judge, I think what's constructive

16  right now, I'm not hearing the argument about the competency

17  of damages.  What I'm hearing is essentially a summary

18  judgment, saying that we shouldn't be able to seek any

19  remedies for the Vision conduct that was disclosed only upon

20  court order, upon motions to comply and they refused to

21  produce.  So that's essentially what I'm hearing.

22       He is saying Vision is not part of this lawsuit,

23  notwithstanding the fact that the -- quote -- case that was

24  locked up in August wasn't locked up because I had to seek

25  court relief to get the documents.

1          THE COURT:  We did reopen discovery.  I did reopen

2    discovery on the Vision information.  So I did specifically

3    do that.

4          MR. TURKEL:  Right.  And, Judge, he doesn't know

5    what the Connecticut counsel knew or didn't know in the

6    Connecticut case that was filed.

7          I guess my point is this, Judge.  I'm going to try

8    to be practical, both to save the Court's time and to save

9    counsel's time, but there are a few different ways I can

10   approach this.

11         One, Judge, is that if -- they have tried the

12   Vision issue by consent.  At no point, even in this motion in

13   limine, had they raised the idea that Vision shouldn't be

14   part of it.  They simply said, at the end of August, before

15   you had to file your motions to compel, you didn't produce

16   enough damages evidence.

17         We can do one of two things.  I can certainly move

18   to amend, Judge.  I think I've got the good cause, if they

19   are taking the position that this late disclosed evidence

20   that you reopened discovery for is somehow not part of the

21   case.

22         Obviously, I think we made a compelling case

23   because I don't think this Court is often inclined to reopen

24   discovery, but you saw what we were handed.  So I can do

25   that.  I am more than willing, Judge, to take that

1   Connecticut case, heat that back up, add Frankel into that

2   and try the whole mess.  Now, the reason -- I'll be very open

3   to the Court -- is that when you deal with concepts of

4   judicial comity, Judge, it's usually the first filed case,

5   right?  So if I had already tried that and tried to abate

6   this, they would say, well, you can't abate this one.  It's

7   the first one.

8            The last thing I want to have res judicata on this

9   case, on the bigger conspiracy case that will ultimately be

10  litigated.  It's just a practical problem.  I mean, I can do

11  both of them.  At some point somebody raises comity on at

12  least a portion of the conspiracy.

13           Frankel is not the only guy, but the bottom line

14  is, this isn't a motion in limine.  This is a wholesale

15  motion for summary judgment.  They are prohibiting us from

16  trying the case that we had to develop post-discovery cutoff

17  because they didn't produce.

18           Judge, I think I'm going to have to file things,

19  frankly, I would normally not want to file before this Court

20  at this point in time.  But, frankly, Judge, between COVID

21  and this new take on this argument, I think I pretty much

22  either have to amend or find grounds to ask this Court to

23  abate while I pursue the bigger case.

24           I don't see any other choice, if this is what they

25  are arguing, because if you were to say I'm not going to let

1  you try the Vision issue, then at that point, Judge, I think

2  at that point I would probably have to take the whole thing

3  up because the Vision issue is the case.  That's where he

4  ended up.

5          He didn't end up at the business he was

6  negotiating when we filed.  He ended up somewhere else, and

7  they saw fit in May, June of last year, when he was

8  negotiating with Vision, not to tell anybody.  Okay.  Not to

9  supplement anything and say, hey, he's not at SIF.  He's gone

10 to Vision.

11         Maybe we would have amended then, Judge.  I don't

12 know.  But it's a really bizarre argument, in my opinion, and

13 has very little to do with the competency of damages evidence

14 and everything to do with the fact they tried to exclude the

15 pay.

16         This a preclusive motion.  This is a dispositive

17 summary judgment on trying their client's employment and what

18 he did at Vision.

19         He wouldn't tell us, Judge, the revenue at Vision.

20 They sat there -- I was at the deposition.  He said, No, I'm

21 not going to answer that.  So I think the best thing to do,

22 Judge -- and I'm not -- I'll file my motion and you can deny

23 it, but I think I have to seek leave to amend at this point,

24 unless they want to waive this pleadings argument they are

25 making.

1          Judge, by listing Vision witnesses and by arguing

2     Vision in the pretrial papers, I think it was their duty at

3     that point to say, I don't think we are trying Vision.  I

4     don't know how they could have said it.  We were still

5     seeking court relief for discovery at that time.

6          These things happen, Judge.  It's not ideal but,

7     frankly, neither is COVID and the timing issues it created.

8     Maybe it all comes together and I move for leave to amend.  I

9     don't know.

10         THE COURT:  Mr. Banker, I'll let you respond to

11    that.

12         MR. BANKER:  This is such a backward universe.

13    Mr. Turkel, like my kids, you know, everything suddenly

14    becomes my problem, right?  And it's very frustrating to hear

15    that.  And I think that Mr. Turkel is not, you know, fully

16    versed in the case because he's late coming in.  The fact of

17    the matter is, when Hurry -- I'm sorry, when Frankel went

18    with Vision, he had to file his license with Vision.  So it

19    was a matter of public record.

20         If you look at the Vision lawsuit that Hurry

21    filed, you can see the chronology.  Hurry has known all about

22    Vision all along.  Hurry was negotiating to buy Vision.

23    Randy Jones was his lead negotiator.  I mean, all of this was

24    going on while this lawsuit was going on.

25         They know Howard Rothman.  These guys knew about

1   Vision before I did.  For Mr. Turkel to say that Frankel had

2   some duty to supplement, that's really from another universe.

3   That's the most preposterous statement that's been made

4   today.

5            You know, I haven't tried anything by consent,

6   right?  And what you said -- and I understand, Judge, and it

7   made sense.  You said that Ken could take a deposition on

8   these after-produced documents, and he did.  But the fact of

9   the matter is, those documents don't get him where he needs

10  to be.  They don't prove anything.

11           That was the scope of the exam.  Those documents

12  aren't about Vision revenue.  They aren't about clients that

13  were taken.  There is no way that you can make a damages

14  disclosure from those documents.  You just can't do it, and

15  they haven't even tried to do it.

16           So he's entitled to try and use those Vision

17  documents.  I don't care.  I just want to stick with the

18  rule, which is, we had a discovery cutoff.  They filed a

19  lawsuit.  We had a discovery cutoff.  They knew the rule.

20  They agreed to try a case as it existed in August of last

21  year.  My guy, you know, spent a lot of money preparing that

22  case to be tried.

23           If they had a problem with that, they needed to

24  bring that to your attention a long, long time ago.  We are

25  not supposed to start a whole new case right now, at great

Proceedings via Zoom Videoconference                                    52

1    expense to my guy.  I think the simple solution -- all this

2    is, you need to look no further than 37(C).  Make them

3    disclose today -- use the Vision documents if they want to --

4    what their damage calculation is.  Because I'm telling you,

5    they can't do it.  It's impossible.

6           They do not -- they cannot give you a damage

7    disclosure because they have never given us a damage

8    disclosure, and they don't know what it is.  That's what we

9    are dealing with.  And I'm saying, enforce Rule 37(C).

10   That's not the way you are supposed to conduct litigation,

11   and it's not Frankel's fault.  It's not Frankel's fault.

12          Don't for a minute bring in Frankel or Harold or

13   me.  We have done our duty as advocates.  And let me tell

14   you.  Maybe the other side hasn't done its duty, but that's

15   not my problem.  And let's not try and foist this on anybody

16   other than where the buck ought to stop.

17          THE COURT:  All right.  Here's what I think.  I

18   think that regular discovery documents that were produced

19   under Rule 26 and Vision documents that were produced after

20   this Court's order can come in.  Those documents are part of

21   the case per my order, per Judge Tuite's order.  I think

22   anything else with respect to damages that hasn't been

23   produced, it's not coming in.  So that's my ruling.

24          I need to go back and double-check exactly what

25   motion in limine that is.  But just generically -- generally,

1   I should say, not generically, generally that's my ruling

2   based on what I looked at before and what I've heard today.

3         You know, I don't know about abatement.  I think

4   the best thing, Mr. Turkel, if that's what you want to do, is

5   to file a motion.  I think that's the kind of matter that is

6   best resolved by a written order and by written pleadings and

7   to give Mr. Banker the opportunity to respond to it.

8         Generally speaking, if we didn't have the

9   COVID-19, I would say let's just go forward.  Well, we would

10   have gone forward in April or May.  I don't know what to tell

11   you.  I really don't know what to tell you.

12         MR. TURKEL:  I appreciate the sentiment, and I

13   think to me what is constructive, I guess, is the ability to

14   just warn the Court, the extent that motion goes up, at least

15   you'll have some context as to why and this just didn't come

16   up out of the blue.  So we will take a look; and if we think

17   there is grounds and it makes sense, then we will file that.

18         Judge, I want to be very transparent and, again,

19   I'm not in the way of seeking any indications from the Court

20   but just letting the other side know that given the way this

21   damages issues was brought up by them -- and I certainly

22   heard some things today that were different than we

23   anticipated, we will move to compel his client's refusal to

24   answer these deposit group calculations because I think the

25   numbers are in there.  But that's a fight for a different

1   day.  I just, again, don't want to be seen by anybody as not

2   being transparent about where we are going with this, and the

3   Court can grant or deny these motions as the Court sees fit.

4         I know the Court will always do that.  I just want

5   to be transparent to the other side, given we are kind of in

6   a pretrial context about that issue and the abatement issue,

7   which we will look at, Judge.  I don't know if it's there.

8   Comity is an interesting area of the law; who was the first

9   one in.  But I think there are some compelling circumstances

10  here, so we will see what we can find on it.

11        THE COURT:  What I will do is I'm going to grant

12  in part and deny in part document 148.  That's Mr. Frankel's

13  motion in limine.

14        So you've got your omnibus motion, document 147.

15  Just give me a moment to turn to that, and we will see what

16  we can come up with.  I just need a moment to turn to that.

17        Plaintiff's omnibus motion in limine, No. 1

18  through 13, document 147.  Mr. Frankel responded in

19  opposition, document 152.  So let's see, Mr. Turkel, who will

20  be arguing that?  Will you be?  Or Mr. Cuva?

21        MR. TURKEL:  On the omnibus motion?

22        THE COURT:  Yes.

23        MR. TURKEL:  Judge, I think I addressed them at

24  the beginning, which I felt that largely would be objection

25  to evidence that would probably be better handled --

Proceedings via Zoom Videoconference                                              55

1              THE COURT:  Are you sure?  Okay.  So you want me

2      to just deny those without prejudice?  I'm happy to go

3      through these, if you would like to argue them.  The other

4      way to go is to deny them without prejudice and you can raise

5      them at trial.  I know that's what you said, but I'm just

6      trying to get some things out of the way.

7              MR. TURKEL:  Judge, I think where I came down on

8      it was what I usually do, is just precluding them from

9      mentioning them in opening statement because most of these

10     things are conditional relevance-type arguments that they are

11     making, saying that they are relevant for this point or for

12     that point.

13             For instance, when we talk about the confidential

14     information being filed in another case, that would be

15     subject to litigation privilege.  We would be immune from

16     conduct we pursued in litigation.  I don't know if there is a

17     protective order in that case.

18             I can take them one by one; but, Judge, I'm happy

19     enough right now if they could just not deal with it in

20     opening statement.  If not, I can go through them one by one.

21     Judge, I'm prepared to do either one.  I don't want the Court

22     to have to make my decision.  But what I'm concerned about is

23     them mentioning them in opening.  I can handle the objections

24     beyond that.

25             THE COURT:  Is that something, Mr. Banker or

1   Mr. Holder, that you can live with, or what's your position

2   on that?

3          MR. HOLDER:  Your Honor, I addressed that briefly

4   at the beginning of this hearing, and I can go back into more

5   details again.  But I think some of these are clear issues

6   that they are admissible, and so they go to the

7   confidentiality and they go to damages issues.

8          Their public disclosure of the trade data they

9   call confidential in our case, their public disclosures of

10  that data in other instances is admissible in our case.  And

11  to limit us from mentioning something like that in our

12  opening statement -- I think that the opening statement is an

13  important time to explain to the jury our theories of the

14  case, and to limit us when there's grounds to rule that

15  evidence is admissible, we don't agree to such a limitation.

16         Then, with respect to the other reason that these

17  issues are -- these motions -- and I'm trying to address them

18  all at once, but the other reason is -- the damages issues

19  and the adverse regulatory actions taken, the other reasons

20  why their businesses are failing, the fact that in other

21  cases they said, for example, that the NSCC's charges are

22  strangling their business and that they are a threat to

23  Alpine's continued existence, prohibiting us from mentioning

24  that in opening statement is not something that we are able

25  to agree to.  And there are grounds right now to rule that

1    those things are admissible.  And certainly if they want to

2    object at the trial, but to limit us at opening statement I

3    don't think would be proper.

4           And the other kind of component of that is, also,

5    Mr. Hurry's testimony about the fee increases that Alpine

6    imposed and about the common area maintenance charges that

7    Hurry entities charged to each other that had a strain on

8    Alpine's business and Scottsdale's business, those are also

9    things that the Court has information now to rule they are

10   admissible.  But I don't think -- we can wait until trial,

11   but I don't think the Court has the information now, and I

12   don't think it will be proper to limit our opening statement

13   from those key aspects of our case, which we would like to

14   present at the outset, and it's an important part of our case.

15          THE COURT:  I understand.  What is your response

16   to plaintiff's position that this might be subject to the

17   litigation privilege, certain documents shouldn't be admitted

18   because of the litigation privilege?  How would you respond

19   to that?

20          MR. HOLDER:  Your Honor, I'm not -- I would like

21   to -- I don't think that was raised in their brief, and it's

22   not something that I've fully researched and would respond

23   to.  But what I would say, I understand the litigation

24   privilege to be a defense, in certain contexts, to claim

25   about things you said in litigation.  I don't understand the

58

1    litigation -- I'm not aware of a litigation privilege that

2    applies to exclude evidence that in one case you are making

3    statements that are inconsistent with another case, and I'm

4    not -- I haven't seen a case where the litigation privilege

5    has been used that way.

6              If there was such an authority for that, then I

7    would like an opportunity to respond to it.  But the

8    litigation privileges with which I am familiar are

9    protecting, for example, against a defamation claim.  You

10   have a litigation privilege to make assertions in your

11   pleadings and you can't be sued for defamation.  But you

12   don't have a privilege to say one thing to one tribunal and

13   say another thing to another tribunal.

14             I actually think that's kind of a judicial

15   estoppel argument, that Alpine can't in another case say the

16   NSCC charges are strangling its business and then assert a

17   litigation privilege to avoid that admission in any other

18   case, from being used against it in this case.  But, again,

19   if there is authority for that, I would like to have an

20   opportunity to address it.

21             THE COURT:  Okay.  Anything you would like to say,

22   Mr. Turkel?

23             MR. TURKEL:  Judge, if we are going to do these

24   the way it appears to do them, in looking at their papers,

25   for instance, the implication of litigation privilege would

1    be this.  We shouldn't be penalized for having -- this isn't

2    an inconsistent statement.  They were required in another

3    lawsuit to disclose information to defend or litigate the

4    lawsuit.

5           They cite, on page 3 of their papers, Alpine has

6    publicly disclosed its trade data, including, for example, a

7    reference to trades processes by Alpine for clearing through

8    NSCC net system for its clients.

9           On November 23rd, 2018, November 26, 2018, they

10   are referencing -- and I'm pretty sure this lawsuit was

11   already filed at that point.  So the idea we have already

12   called Mr. Frankel out for his use of confidential

13   information in a lawsuit and then in another lawsuit we have

14   to say, yeah, this information is an issue, I don't see where

15   they get the idea this is inconsistent or anything else.

16          Moreover, I think if it was done pursuant to a

17   viable discovery request or something else, it could be

18   privileged.  But my bigger point is this, Judge.  Trials are

19   not scripted, as the Court knows.  If they want to risk

20   mistrying the case by talking about these conditionally

21   relevant things that they may or may not be able to tie up by

22   the time a witness gets on the stand, if that's a risk they

23   want to take with the Court's time and the jury's time and my

24   time, that's fine with me.

25          I don't think the Court can resolve it at this

1   point.  I don't think that there is enough context in the

2   papers to tell whether this actual theory they have passes

3   muster.

4        There is a blurb on page 3 of their case.  That's

5   why I went kind of where I usually go as a trial lawyer,

6   right?  Don't step in it during opening.  Wait until the

7   witnesses come on; and if it's conditionally relevant, we can

8   proffer or tie it up with the witness.

9        If you're not going to object when they state it

10  during the opening, they can take the chance if they want to

11  and Mr. Baker can complain a year from now that his client

12  spent a gazillion dollars because his client will have to

13  retry the case.

14       I'm just trying to be practical, Judge.  These are

15  evidentiary things.  I think they are viable areas for the

16  Court to consider.  If they want to meet and confer and tell

17  me exactly what they want to put in, because they asked about

18  a lot of different things, then I'll try to resolve it like

19  that.  I was looking for sort of the default setting in some

20  respects, which is, reserve on it, deny without prejudice

21  subject to how they tie it up at trial.

22       THE COURT:  That's what I'm inclined to do.

23  Looking through these, I think that it's very hard to rule on

24  these in a vacuum.  So what I'm going to do is with respect

25  to document 147, motions in limine Nos. 1 through 13, I will

Proceedings via Zoom Videoconference

61

1    deny without prejudice and you are free to raise it at trial.

2    However, I'm not going to hamstring at this juncture the

3    defense and say you can't raise some of the things that you

4    wanted to talk about in opening statement.  I don't think

5    that's fair either.

6              So at this juncture, if you want to meet and

7    confer, that's fine; but I'm not going to put that preclusion

8    in place, Mr. Turkel, that you've discussed earlier.  I think

9    it's conditionally relevant.

10             MR. TURKEL:  Right.  We have a rule of evidence

11   that deals with conditional relevance.  I've raised it, so

12   the Court knows.  And frankly, Judge, I've had plenty of

13   trials where I had to make that decision and opposing counsel

14   had to make that decision; am I going to take that leap?

15   That's all I can do at this point.  I think it's a lot more

16   constructive, frankly, than to try these subissues in a

17   motion in limine.  I'm fine with that, Judge.

18             THE COURT:  I appreciate that.  That's my ruling

19   on that.

20             You decide what you want to do on that abatement.

21   I don't know what to tell you.

22             MR. TURKEL:  I need to look a little closer at the

23   law, Judge.  I'm just trying to be transparent about it.

24             THE COURT:  I appreciate it.

25             MR. TURKEL:  I appreciate the Court's sentiments

1  on it; and if we file it, obviously, the Court will see the

2  motion.

3         THE COURT:  Anything else to cover today, because

4  with respect to scheduling, it isn't going to happen in

5  August.  I don't know about September.  I really don't know.

6         MR. TURKEL:  Judge, we are told across the state

7  pretty much that the courts are going to tell us when they

8  are open to scheduling again.  I don't know what to tell the

9  Court beyond that.  It would be par for the course right now.

10         THE COURT:  I'm going to tell you what the problem

11  is.  The problem is bringing in jurors on a civil case.  If

12  there are criminal cases that need to take place in

13  September, then that's going to take precedence.

14         For instance, I have a criminal case that I think

15  is going to go in August.  The person has been in custody for

16  a year.  He's looking at a three-year statutory maximum.  If

17  I have something that's going to be tried, it's going to be

18  that one.

19         I just had a case that was transferred to another

20  judge, who is no longer handling Fort Myers cases.  That case

21  is going to go in August if I had kept it.  It was just

22  automatically reassigned randomly.  That would have gone in

23  August, and that judge has another case to go in September.

24  So those are two cases -- criminal cases for either August or

25  September that I've just heard about, and I know another

1   judge has a case that's going to go at the end of August.

2   Those are all criminal cases that are going to take

3   precedence.

4          And I don't know that with social distancing how

5   many trials we can do in the Tampa Division because there is

6   no place for them -- for jurors to social distance themselves

7   in the jury assembly room.  So I don't know what we are going

8   to do.

9          We would either have to find another courtroom for

10  them to sit in to deliberate.  That we could do.  But it's

11  just complicated.  I just think those criminal cases are

12  going to get first dibs.  That's why I tell you I think

13  August is for sure out.  I can categorically say that.

14  September is another story.  We will just wait and see how

15  the August trials go.

16         But I think, for instance, that case that the

17  other judge has, that's a two- or three-week trial here in

18  Tampa, criminal case.  I don't know if it's going to knock

19  all civil cases out.  I have no idea.  I don't know.  I think

20  we can do more than one at a time, but it's just a bit of a

21  challenge.

22         MR. TURKEL:  Judge, we are here.  We can wait and

23  hear from the Court as things develop.  There is nothing new.

24  This is happening in every district I'm in; state, federal.

25  I think all of us -- I had Judge Porcelli in another case.

1  Literally set a trial three months later than he had

2  originally suggested because he said the chance of getting it

3  tried would be better in November than August next year.

4  That's the backlog that is going to hit in August of next

5  year and would make the date less viable because these things

6  are happening.  We are open to whatever the Court wants,

7  whether that's setting a status conference, calling us

8  informally to discuss calendaring.

9        THE COURT:  Actually the magistrates, to a certain

10  extent, are busier, believe it or not, than we District Court

11  judges are on a lot of things.  I've kept up.  I've had a lot

12  of hearings by Zoom.  I've done my sentencings by Zoom.  Last

13  three weeks I've been doing some in person.  I've been moving

14  my cases, so I don't have a backlog.  But the magistrates, on

15  a lot of things, they haven't been able to do them by Zoom.

16  The parties haven't agreed, and they have got a lot.  They

17  have a lot on their platter.

18        MR. BANKER:  Judge, on this case, you've moved

19  very diligently about dealing with all these motions all

20  along the way.

21        THE COURT:  Well, I'll tell you, I'm not giving up

22  my cases.  I'm taking senior status in three weeks, when I

23  turn 65.

24        MR. BANKER:  You can't be taking senior.  That's

25  impossible.  Turkel should be taking senior status.

```
1              MR. TURKEL:  I really feel like it.

2              THE COURT:  2004 I was appointed.

3              MR. TURKEL:  That's crazy to me.

4              THE COURT:  Hard to believe.  Time just moves on.

5    I turn 65 in three weeks, so I'm taking senior status.

6              MR. BANKER:  You better register for Medicare.

7              THE COURT:  I'm getting all those letters.  I'm

8    getting the mail from the assisted living facilities.

9              I just wanted to let you know you will not see my

10   cases wholesale reassigned to anybody else.  I'm keeping my

11   cases and will continue to take cases beyond the draw,

12   exactly the way that I have always done.

13             Well, that's it.

14             MR. BANKER:  Thanks a lot.

15             THE COURT:  Thank you very much.  I appreciate

16   everybody's participation today.

17             MR. TURKEL:  Thank you.

18             (Proceedings concluded at 11:17 a.m.)

19                            - - -

20

21

22

23

24

25
```

```
UNITED STATES DISTRICT COURT   )
                               )
MIDDLE DISTRICT OF FLORIDA     )
```

## REPORTER CERTIFICATE

I, Scott N. Gamertsfelder, Official Court Reporter for the United States District Court, Middle District of Florida, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript from the stenographic notes taken by the undersigned in the matter of *THE HURRY FAMILY REVOCABLE TRUST, et al. Vs. CHRISTOPHER FRANKEL*, Case No. 8:18-cv-2869-T-33CPT (Pages 1 through 65), and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


/s/ *Scott N. Gamertsfelder,* RMR, FCRR

*Official Court Reporter*

                              Date: July 27, 2020