## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

THE HURRY FAMILY REVOCABLE
TRUST; SCOTTSDALE CAPITAL
ADVISORS CORPORATION; and
ALPINE SECURITIES CORPORATION,

     Plaintiffs,

v.                                    Case No.: 8:18-cv-2869-VMC-CPT

CHRISTOPHER L. FRANKEL,

     Defendant.

_____/

## **JURY INSTRUCTIONS**

## **INSTRUCTION 1**

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case. When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

## **INSTRUCTION 2**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it — even if you do not agree with the law — and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

2

## INSTRUCTION 3

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

3

## <u>INSTRUCTION 4</u>

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

(1)   Did the witness impress you as one who was telling the truth?
(2)   Did the witness have any particular reason not to tell the truth?
(3)   Did the witness have a personal interest in the outcome of the case?
(4)   Did the witness seem to have a good memory?
(5)   Did the witness have the opportunity and ability to accurately observe the things he or she testified about?
(6)   Did the witness appear to understand the questions clearly and answer them directly?
(7)   Did the witness's testimony differ from other testimony or other evidence?

## INSTRUCTION 5

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

## INSTRUCTION 6

During the trial, you heard answers that a party gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, the party gave the answers in writing while under oath. You must consider the answers to as though the party gave the answers on the witness stand.

## **INSTRUCTION 7**

In this case it is the responsibility of the plaintiffs, Hurry Family Revocable Trust, Scottsdale Capital Advisors Corporation, and Alpine Securities Corporation, to prove every essential part of their claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Hurry Trust's, Scottsdale's, and Alpine's claims are more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the party making that claim or contention.

When more than one claim is involved, you should consider each claim separately. In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the Hurry Trust's, Scottsdale's, or Alpine's claims by a preponderance of the evidence, you should find for Defendant Christopher Frankel as to that claim.

## <u>INSTRUCTION 8</u>

In this case, the defendant, Christopher Frankel, asserts affirmative defenses. Even if the Hurry Trust, Scottsdale, and Alpine prove their claims by a preponderance of the evidence, Mr. Frankel can prevail in this case if he proves an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that Mr. Frankel does not have to disprove the Hurry Trust's, Scottsdale's, and Alpine's claims, but if Mr. Frankel raises an affirmative defense, the only way he can prevail on that specific defense is if he proves that defense by a preponderance of the evidence.

## INSTRUCTION 9

I will give you detailed instructions of law later in these instructions. But I will now give you an overview of each claim in the case, including what has to be proven on each claim.

The plaintiffs, Hurry Family Revocable Trust, Scottsdale Capital Advisors Corporation, and Alpine Securities Corporation, claim the defendant, Christopher Frankel, breached two confidentiality agreements by using, disclosing, and failing promptly to return "Confidential Information."

To establish a breach of agreement, the plaintiffs must prove the following by a preponderance of the evidence:

    (1) There was an agreement with Mr. Frankel;
    (2) Mr. Frankel breached the agreement; and
    (3) That breach resulted in damage to the plaintiffs.

Scottsdale and Alpine also contend that Mr. Frankel misappropriated their trade secrets. To establish a misappropriation of trade secrets claim, the plaintiffs must prove the following by a preponderance of the evidence:

    (1) The plaintiffs own valid trade secrets;
    (2) Mr. Frankel misappropriated those trade secrets; and
    (3) The plaintiffs were damaged by Mr. Frankel's misappropriation of those trade secrets.

Mr. Frankel denies breaching the confidentiality agreements and denies misappropriating trade secrets.

In the verdict form that you will take into the jury room, you will be asked to answer a series of questions concerning each of these factual issues.

## **INSTRUCTION 10**

We will start with the Plaintiffs' breach of agreements claim. The Hurry Trust claims that Mr. Frankel breached Paragraph 5 of the June 22, 2015, Non-Disclosure Agreement, which states: "Within ten (10) business days of receipt of the Discloser's written request, the Recipient will return to the Discloser all documents, records and copies thereof containing Confidential Information."

Scottsdale and Alpine claim that Mr. Frankel breached Paragraph 2 of the July 1, 2015, Employee Nondisclosure Agreement, which states: "Employee will not disclose such information to anyone outside the Company without Company's prior written consent. Nor will Employee make use of any Confidential Information for Employee's own purposes or the benefit of anyone other than the Company."

Scottsdale and Alpine also contend that Mr. Frankel breached Paragraph 4 of the Employee Nondisclosure Agreement. Paragraph 4 states: "When Employee's employment with Company ends, for whatever reason, Employee will promptly deliver to Company all originals and copies of all documents, records, software programs, media, and other materials containing any Confidential Information."

Each Agreement defines the term "Confidential Information."

To establish a breach of agreement, the plaintiffs must prove the following by a preponderance of the evidence:

(1) There was an agreement with Mr. Frankel;
(2) Mr. Frankel breached the agreement; and
(3) That breach resulted in damage to the plaintiffs.

10

A breach of agreement occurs when a party fails to perform an obligation under the agreement. Not every breach of an agreement is a material breach. A material breach occurs when a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions.

The Hurry Trust, Scottsdale, and Alpine have the burden of proving by a preponderance of the evidence that any breach by Mr. Frankel was material.

**INSTRUCTION 11**

In deciding what an agreement provision means, you should attempt to determine what the parties intended at the time that the agreement was formed. You may consider the surrounding facts and circumstances as you find them to have been at the time that the agreement was formed. It is for you to determine what those surrounding facts and circumstances were.

To determine what the parties intended the terms of an agreement to mean, you may consider the language of the written agreement; the acts and statements of the parties themselves before any dispute arose; the parties' negotiations; any prior dealings between the parties; any reasonable expectations the parties may have had as the result of the promises or conduct of the other party; and any other evidence that sheds light on the parties' intent.

You may find that, even after you have determined and considered the surrounding facts and circumstances, what the parties intended a particular written provision to mean is still not clear to you. If, and only if, you have determined and considered the facts and circumstances surrounding the formation of the contract and still cannot determine which of the possible, reasonable meanings was intended by the parties, you should apply the following rule of law: In choosing between the possible meanings of language in a written agreement, the meaning that operates against the interests of the party who supplied the words is generally the preferred meaning.

This rule of law has been described as a rule of "last resort," and is to be applied only if other rules of interpretation have been exhausted and only if, at that point, there remain two possible and reasonable explanations.

**INSTRUCTION 12**

If you find that Mr. Frankel materially breached the June 22, 2015, agreement by failing or refusing to return the Hurry Trust Documents containing "Confidential Information" within ten business days, then you must decide whether the Hurry Trust prevented or excused Mr. Frankel from returning its documents containing "Confidential Information."

Mr. Frankel has the burden of proving by a preponderance of the evidence that the Hurry Trust prevented or excused Mr. Frankel from returning its documents containing "Confidential Information."

If you find that Mr. Frankel materially breached the July 1, 2015 Employee Nondisclosure Agreement by failing or refusing to return Scottsdale's and Alpine's documents containing "Confidential Information," then you must decide whether Alpine or Scottsdale prevented or excused Mr. Frankel from returning their documents containing "Confidential Information."

Mr. Frankel has the burden of proving by a preponderance of the evidence that Alpine or Scottsdale prevented or excused him from returning their documents containing "Confidential Information."

13

## **INSTRUCTION 13**

The Hurry Trust, Scottsdale, and Alpine claim that Mr. Frankel has not performed according to the Agreements. Mr. Frankel contends that he did substantially perform.

Substantial performance means that Mr. Frankel has performed all that is required by the contract, except for slight defects that can easily be cured.

To determine whether Mr. Frankel has substantially performed his obligations under the Agreements, you should consider the nature of the promised performance, the purpose of the Agreements, and the extent to which any defects in performance have defeated that purpose.

Mr. Frankel must prove substantial performance.

14

## **INSTRUCTION 14**

If you find that Frankel is liable to Hurry Trust, Scottsdale, and / or Alpine for breach of agreement, then you must then decide the full amount of money that will reasonably and fairly compensate Plaintiffs for the damages proved by the evidence to have resulted naturally and directly from the breach of contract.

The damages you award for breach of agreement must be the amount of money that will place the Hurry Family Trust, Scottsdale, and / or Alpine in the position that they would have been in if the Agreements with Mr. Frankel had been performed. To determine those damages, you should consider the following:

A.     Direct Damages

      a. The profit that Scottsdale and/or Alpine would have received had the Agreements with Mr. Frankel been performed;

      b. The return of the value of the Confidential Information that the Hurry Trust , Scottsdale, and/ or Alpine provided to Mr. Frankel;

      c. Whether the Hurry Trust, Scottsdale, and / or Alpine, by not having to perform their parts of the Agreements, have avoided any cost or loss which should be deducted from their damages.

B.     Nominal Damages

If you find that the Hurry Trust, Scottsdale, and / or Alpine have established they have been damaged, but that they have not proven the amount of damages with reasonable certainty, nominal damages may be awarded. Nominal damages do not compensate for loss or harm, but are instead awarded to vindicate rights, the infringement of which has not caused provable injury.

**INSTRUCTION 15**

Scottsdale and Alpine claim that Mr. Frankel misappropriated one or more trade secrets belonging to Scottsdale and/or Alpine.

To prove their trade secret claims, Scottsdale and/or Alpine must prove the following facts by a preponderance of the evidence:

> (1) The plaintiffs own valid trade secrets;
> (2) Mr. Frankel misappropriated those trade secrets; and
> (3) The plaintiffs were damaged by Mr. Frankel's misappropriation of those trade secrets.

Scottsdale and Alpine claim they own various trade secrets including the financial, business, and economic information contained in:

a. Alpine's trade blotter reflecting trades on August 27 and 28, 2018;
b. Alpine Securities Corporation's WSP Manual dated October 1, 2015;
c. Ken Ralston Employment Agreement Draft dated April 13, 2018;
d. Alpine's pricing for its customers;
e. Scottsdale's pricing for its customers;
f. Alpine's annual audit report for the fiscal year ending September 30, 2016;
g. Statements of account for Alpine and Scottsdale as of April 10, 2017;
h. Alpine's blanket fidelity bond for the fiscal year ending November 1, 2017;
i. A May 7, 2018 email from an attorney for Alpine that included a term sheet for a multi-million dollar, secured revolving credit facility;
j. A July 31, 2018 internal email regarding Alpine's fee schedule that included a listing of Alpine's top-50 accounts by commission amount;
k. An August 21, 2017 email from the general counsel of Scottsdale that included a term sheet for a loan to Alpine to fund National Securities Clearing Corporation's calls;
l. An internal audit report dated May 1, 2016 prepared by Alpine's chief compliance officer; and
m. Internal emails from September and October 2016 that included a Financial and Operations Principal's report dated April 18, 2016.

To prove that Scottsdale and/or Alpine own trade secrets, they must prove that the information in the forgoing documents is their property.

Trade Secret.

A trade secret may take many forms, including all forms and types of financial, business, scientific, technical, economic, or engineering information. A trade secret may include patterns,

16

plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes. A trade secret may be tangible or intangible. A trade secret does not have to be stored, compiled, or memorialized. But if it is, it does not have to be stored, compiled, or memorialized in any particular manner, such as physically, electronically, graphically, photographically, or in writing.

To qualify as a trade secret, Scottsdale and/or Alpine must prove the following by a preponderance of the evidence:

1. The information is not generally known to another person who can obtain economic value from the disclosure or use of the information;

2. Another person cannot readily discover the information through proper means;

3. The information derives independent economic value, actual or potential, from not being known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information; and

4. Scottsdale and/or Alpine have taken reasonable steps to keep the information secret.

<u>Misappropriation.</u>

Scottsdale and/or Alpine claim that Mr. Frankel acquired, disclosed, or used the trade secrets without the right to do so. This is called "misappropriation."

For Scottsdale and/or Alpine to prove that Mr. Frankel misappropriated the trade secrets, Scottsdale and/or Alpine must prove the following by a preponderance of the evidence:

1. Mr. Frankel acquired, disclosed, or used the trade secrets without Scottsdale or Alpine's express or implied consent;
2. Mr. Frankel knew or should have known that the trade secrets were acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or to limit the use of the trade secrets.

17

Each act of acquiring, disclosing, or using trade secrets may constitute a separate act of misappropriation. "Express consent" is consent that is clearly and unmistakably stated. "Implied consent" is consent that is inferred from one's conduct rather than from one's direct expression.

## **INSTRUCTION 16**

Discovery of a trade secret by lawful means is permitted under the law. If Mr. Frankel proves by a preponderance of the evidence that he lawfully acquired Scottsdale's and Alpine's trade secrets at the time of the alleged misappropriation, then you should find the trade secrets were not obtained by improper means.

Mr. Frankel has the right to independently obtain, discover, develop, or compile Scottsdale's and Alpine's trade secret(s). For example, information can be lawfully acquired if Mr. Frankel derived the information from publicly available sources. However, the fact that some or all of the components of the trade secret are well-known does not preclude protection for a secret combination, compilation, or integration of the individual elements.

**INSTRUCTION 17**

If Scottsdale and/or Alpine have not proved their claims for misappropriation of trade secrets, your verdict must be for Mr. Frankel on these claims, and you do not consider damages on these claims.

If Scottsdale and/or Alpine have proved their claims for misappropriation of trade secrets, you must decide the issue of damages. To the extent that it is not duplicative (that is, double counting), you may award the amount of:

    a.  Scottsdale's and/or Alpine's actual damages suffered as a result of Mr. Frankel's misappropriation of trade secrets; and

    b.  Mr. Frankel's unjust enrichment that is a result of his misappropriation of trade secrets, even if that amount is more than the actual damages suffered by Scottsdale and/or Alpine.

# INSTRUCTION 18

If you find that Mr. Frankel has engaged in willful and malicious misappropriation of the trade secret, you may award "exemplary" damages, that is, damages meant to make an example of Mr. Frankel. Exemplary damages may be awarded in an amount not more than two (2) times the amount awarded for compensatory damages (the amount awarded for actual damages plus unjust enrichment).

The burden of proof that applies to your determination of whether or not the misappropriation was willful and malicious is "Clear and Convincing." This is a higher standard of proof than proof by a preponderance of the evidence. It means the evidence must persuade you that the claim or defense is highly probable or reasonably certain.

## INSTRUCTION 19

You've been permitted to take notes during the trial. Most of you – perhaps all of you – have taken advantage of that opportunity. You must use your notes only as a memory aid during deliberations. You must not give your notes priority over your independent recollection of the evidence. And you must not allow yourself to be unduly influenced by the notes of other jurors. I emphasize that notes are not entitled to any greater weight than your memories or impressions about the testimony.

## INSTRUCTION 20

The fact that I have given you instructions concerning the issue of the Hurry Trust's, Scottsdale's, and Alpine's damages should not be interpreted in any way as an indication that I believe that the Hurry Trust, Scottsdale, and Alpine should, or should not, prevail in this case.

Your verdict must be unanimous — in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges — judges of the facts. Your only interest is to seek the truth from the evidence in the case.

## INSTRUCTION 21

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible — either in writing or by talking to you in the courtroom.

Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.