UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE HURRY FAMILY REVOCABLE
TRUST; SCOTTSDALE CAPITAL
ADVISORS CORPORATION;
ALPINE SECURITIES CORPORATION;
and CAYMAN SECURITIES CLEARING
AND TRADING LTD.,

      Plaintiffs,

v.                             Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

      Defendant.

_____/

### Frankel's Motion for Determination of Entitlement to Attorney's Fees and Expenses

The defendant, Christopher L. Frankel ("**Frankel**"), through counsel and under Federal Rule of Civil Procedure 54 and Local Rule 7.01, requests a determination that he is entitled to an award of his attorney's fees and expenses against the plaintiffs that pursued this lawsuit through trial, The Hurry Family Revocable Trust ("**Hurry Trust**"), Scottsdale Capital Advisors ("**Scottsdale**"), and Alpine Securities Corporation ("**Alpine**"), and against the plaintiff that abandoned its alleged claims by not joining as a plaintiff in the second amended complaint, Cayman Securities Clearing and Trading Ltd. ("**Cayman**").

## I.    FACTUAL AND PROCEDURAL HISTORY

Frankel prevailed on all of the plaintiffs' claims except for Scottsdale's and Alpine's claim for misappropriation of their alleged trade secrets. Cayman

abandoned all of its claims in May 2019; the Hurry Trust abandoned its claims for misappropriation of alleged trade secrets in May 2019; all plaintiffs abandoned their claims for violation of Florida's Deceptive and Unfair Trade Practices Act ("**FDUTPA**") in May 2019; and the Hurry Trust, Scottsdale, and Alpine failed to prove their claims for breach of Frankel's pre-employment and post-employment, non-disclosure agreements at the trial in April 2021.

The plaintiffs demanded contractual and / or statutory fees on all of their claims, except on their common law, unfair competition claims, which all of the plaintiffs abandoned in their second amended complaint, filed on May 10, 2019. Doc 61 (Second amended complaint).

In their initial complaint filed on November 21, 2018, all four plaintiffs, Cayman, the Hurry Trust, Scottsdale, and Alpine, sued Frankel in Count I - for breach of the pre-employment, non-disclosure agreement (Exhibit "A") and demanded attorney's fees and costs under Arizona Revised Statute § 12-341.01; in Count II - for violation of the Federal Defend Trade Secrets Act and demanded attorney's fees and costs under 18 U.S.C. § 1836(b)(3)(D); in Count III - for violation of the Florida Uniform Trade Secret Act and demanded attorney's fees under Fla. Stat. § 688.005; in Count IV - for violation of FDUTPA and demanded attorney's fees under Fla. Stat. §§ 501.2105 and 501.211; and in Count V - for common law, unfair competition, the only claim on which the plaintiffs did not demand statutory or contractual attorney's fees. Doc 1 (Initial complaint) at pp. 5 - 11.

When the plaintiffs sued on November 21, 2018, they "were unaware that Scottsdale Capital Advisors, Alpine Securities Corporation, and Defendant Christopher Frankel ... had entered into a second nondisclosure agreement ... that superseded the Original NDA as to those parties until the Hurry Parties were reviewing documents in order to respond to Frankel's production requests." Doc 34-1 (Declaration of Jordan Susman, former counsel for plaintiffs, in support of plaintiffs' motion to amend initial complaint) at ¶4 on pp. 1 − 2. On February 11, 2019, the plaintiffs, therefore, moved to amend their initial complaint to add a claim by Scottsdale and Alpine for breach of the post-employment, non-disclosure agreement (Exhibit "B"). Doc 34 (Plaintiffs' motion for leave to file first amended complaint) at p. 2.

In their first amended complaint filed on February 26, 2019, all four plaintiffs, Cayman, Hurry Trust, Scottsdale, and Alpine, asserted the same claims against Frankel, except Scottsdale and Alpine replaced their claim for breach of the pre-employment, non-disclosure agreement with a claim for breach of the newly discovered, "superseding," post-employment, non-disclosure agreement (Exhibit "B"). Doc 37 (First amended complaint) at ¶19 on p. 4; *see also* Doc 61 (Second amended complaint) at ¶18 on p. 3. In their first amended complaint, Cayman and Hurry Trust sued in Count I - for breach of the pre-employment, non-disclosure agreement and demanded attorney's fees under Arizona Revised Statute § 12-341.01; Scottsdale and Alpine sued in Count II - for breach of the post-employment, non-disclosure agreement and demanded attorney's fees

under Paragraph 7(h); all four plaintiffs sued in Count III - for violation of the Federal Defend Trade Secrets Act and demanded attorney's fees under 18 U.S.C. § 1836(b)(3)(D); all four plaintiffs sued in Count IV - for violation of the Florida Uniform Trade Secret Act and demanded attorney's fees under Fla. Stat. § 688.005; and all four plaintiffs sued in Count V - for violation of FDUTPA and demanded attorney's fees under Fla. Stat. §§ 501.2105 and 501.211. Doc 37 (First amended complaint) at pp. 6 – 11.

The four plaintiffs abandoned their claims for common law, unfair competition in their first amended complaint. Doc 37 (First amended complaint).

On April 26, 2019, the Court granted Frankel's motion to dismiss the first amended complaint because the plaintiffs had not made specific, factual allegations to support their claims for breach of the non-disclosure agreements or their trade secret claims, *i.e.*, the plaintiffs had not alleged specific facts showing that they had any Confidential Information protected by the non-disclosure agreements, or that they had trade secrets protected by the Federal and Florida Trade Secret Acts. The Court granted the plaintiffs leave to file a second amended complaint by May 10, 2019. Doc 47 (Order granting Frankel's motion to dismiss first amended complaint).

Cayman could not allege specific facts showing that it had any Confidential Information and trade secrets, so Cayman abandoned all of its claims by not joining as a plaintiff in the second amended complaint filed on May 10, 2019. Doc 61 (Second amended complaint). Cayman could not withdraw from the lawsuit

because Cayman obtained no stipulation or court order authorizing Cayman's withdrawal. S*ee* Fed. R. Civ. P. 41(a)(1) (Prohibiting plaintiff's withdrawal from lawsuit, except by stipulation or court order, after the defendant has answered the complaint). Frankel answered the plaintiffs' initial complaint, but moved to dismiss their first amended complaint. Docs 14 (Frankel's answer to initial complaint) and 38 (Frankel's motion to dismiss first amended complaint).

The Hurry Trust could not allege specific facts showing that it had any trade secrets, so the Hurry Trust abandoned its trade secret claims by not asserting any trade secret claims in the second amended complaint. Doc 61 (Second amended complaint).

All four plaintiffs abandoned and did not assert their alleged, FDUTPA claims in the second amended complaint. Doc. 61 (Second amended complaint).

In the second amended complaint filed May 10, 2019, Hurry Trust sued in Count I - for breach of the pre-employment, non-disclosure agreement and demanded attorney's fees under Arizona Revised Statute § 12-341.01; Scottsdale and Alpine sued in Count II - for breach of the post-employment, non-disclosure agreement and demanded attorney's fees under Paragraph 7(h); Scottsdale and Alpine sued in Count III - for violation of the Federal Defend Trade Secrets Act and demanded attorney's fees under 18 U.S.C. § 1836(b)(3)(D); and Scottsdale and Alpine sued in Count IV - for violation of the Florida Uniform Trade Secret Act and demanded attorney's fees under Fla. Stat. § 688.005. Doc 61 (Second amended complaint) at pp. 6 - 16.

On May 24, 2019, Frankel filed his initial motion for fees and expenses against all four plaintiffs because all four plaintiffs had abandoned claims on which they had demanded fees. Doc 67 (Frankel's initial motion) at pp. 1 – 3. The Court heard Frankel's initial motion for fees on July 2, 2019, and Frankel and the plaintiffs agreed during the hearing that determination of Frankel's claim for fees, costs, and expenses should be deferred until after the conclusion of the lawsuit. Docs 74 and 79 (Notice and amended notice setting hearing on Frankel's initial motion for fees and costs).

On July 3, 2019, the Court denied Frankel's initial motion for fees and costs as premature, without prejudice and with leave to reassert his claim for fees and expenses after the conclusion of the lawsuit. The Court ruled that Frankel had "preserved" his claim for fees and expenses against the plaintiffs by filing his initial motion for fees and costs. Doc 89 (Endorsed order on initial motion).

As of May 24, 2019, when Frankel filed his initial motion for fees and costs, Frankel's claim for fees was approximately $130,283.oo for fees, and his claim for expenses was approximately $1,287.49. Doc 67 (Frankel's initial motion) at p. 4.

All four plaintiffs had initially claimed that Frankel's pre-employment, non-disclosure agreement was the operative, non-disclosure agreement. The pre-employment, non-disclosure agreement did not include an attorney's fee provision, so all four plaintiffs had initially demanded fees for breach of the pre-employment agreement under Arizona Revised Statute § 12-341.01. Doc 1 (Initial complaint) at Count I on pp. 5 - 6.

In the first and second amended complaints, the Hurry Trust continued to assert a claim for breach of the pre-employment, non-disclosure agreement (Exhibit "A") and continued to demand fees under Arizona Revised Statute § 12-341.01, but Scottsdale and Alpine asserted claims for breach of the post-employment, non-disclosure agreement and demanded fees under Paragraph 7(h). Docs 37 and 61. Paragraph 7(h) of the post-employment, non-disclosure agreement awards the prevailing party "the right to collect from the other party its reasonable attorney's fees and costs and necessary expenditures" in a dispute concerning the agreement. "In a dispute arising out of or related to this Agreement, the prevailing party shall have the right to collect from the other party its reasonable attorney fees and costs and necessary expenditures." Exhibit "B" at ¶7(h).

Frankel prevailed on the plaintiffs' alleged FDUTPA claims because the plaintiffs abandoned their FDUTPA claims in the second amended complaint filed on May 10, 2019. Doc 61 (Second amended complaint).

Frankel prevailed on Cayman's claim for breach of the pre-employment, non-disclosure agreement because Cayman had no Confidential Information protected by the agreement, could not allege facts to support its claim for breach of the agreement, and instead had to abandon its claim for breach of the agreement by not joining in the second amended complaint filed on May 10, 2019. Docs 37 (First amended complaint), 47 (Order dismissing first amended complaint), and 61 (Second amended complaint).

Frankel prevailed on the Hurry Trust's, Scottsdale's, and Alpine's claims for breach of the non-disclosure agreements by the jury's determinations that Frankel's breaches of the agreements caused no injury or damage to the Hurry Trust, Scottsdale, and Alpine. Doc 302 (Verdict) at pp. 1 – 4 (Jury responded to questions 4, 8, and 12 that Frankel's breaches of pre- and post-employment, non-disclosure agreements had not "cause[d] any damage" to the Hurry Trust, Alpine, or Scottsdale). Injury or damage is an essential element, which the plaintiffs had to prove, to establish their breach of contract claims under the governing law of Arizona. *Chartone, Inc. v. Bernini,* 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004); *Gilmore v. Cohen,* 95 Ariz. 34, 36, 386 P.2d 81, 82 (1963).

In agreed Jury Instruction 9, the Hurry Trust, Scottsdale, and Alpine acknowledged their obligation to prove that breach of the non-disclosure agreements had "resulted in damage to the plaintiffs." Doc 301 (Instruction 9) at p. 9.

In agreed Jury Instruction 14, the Hurry Trust, Scottsdale, and Alpine acknowledged that they had to prove that they "ha[d] been damaged" to establish their breach of contract claims: "*If you find that the Hurry Trust, Scottsdale, and / or Alpine have established that they have been damaged*, but that they have not proven their the amount of damages with reasonable certainty, nominal damages may be awarded. Nominal damages do not compensate for loss or harm, but are instead awarded to vindicate rights, the infringement of which has not caused provable injury." (Italics added). Doc 301 (Instruction 14) at p. 15.

The Hurry Trust, Scottsdale, and Alpine requested nominal damages, but the jury declined to award nominal damages, determining instead that Frankel's breaches of the non-disclosure agreements had not caused any damage to the Hurry Trust, Scottsdale, or Alpine. Doc 302 (Verdict) at pp. 1 – 4 (Jury responded to questions 4, 8, and 12 that Frankel's breaches of pre- and post-employment, non-disclosure agreements had not "cause[d] any damage" to the Hurry Trust, Alpine, or Scottsdale).

Frankel is entitled to fees on Cayman's and the Hurry Trust's alleged trade secret claims because Cayman and the Hurry Trust pursued their trade secret claims "in bad faith." Cayman and Hurry Trust had no trade secrets, could not plead facts to support trade secret claims, and had to abandon their trade secret claims. Docs 37 (First amended complaint), 47 (Order dismissing first amended complaint), and 61 (Second amended complaint).

Frankel will prevail on Scottsdale's and Alpine's trade secret claims because the jury determined that Frankel's alleged misappropriation of Scottsdale's and Alpine's trade secret(s) had not caused *any* damage to Scottsdale or Alpine (Doc 302 (Verdict) at p. 5 (Jury responded to questions 16 (A) and (B) that Frankel's misappropriation had caused "$0" of "actual damage" to Alpine and "$0" of "actual damage" to Scottsdale)); because no evidence supported the jury's unjust enrichment award; and because Scottsdale and Alpine requested the unjust enrichment award in violation of the Court's order requiring the plaintiffs

to prove that Frankel's compensation at Vision had come from clients who switched their accounts from Scottsdale and Alpine. Docs 288 and 290.[1]

Scottsdale and Alpine have no fee claim for Frankel's alleged misappropriation of their trade secret(s) because the jury determined that Frankel's misappropriation had not been "willful and malicious," thereby eliminating Alpine's and Scottsdale's claims for attorney's fees under 18 U.S.C. § 1836(b)(3)(D) and Fla. Stat. § 688.005. Doc 302 (Verdict) at p. 5 (Jury responded to question 18 that Frankel's misappropriation had not been "willful and malicious.").

The plaintiffs have no fee claims because the plaintiffs abandoned or failed to prove their claims, and the jury concluded that Frankel had not willfully and maliciously misappropriated Scottsdale's and Alpine's trade secret(s). Doc 302 (Verdict) at p. 5 (Jury responded to question 18 that Frankel's misappropriation had not been "willful and malicious.").

The clerk entered a judgment consistent with the jury's verdict. Doc. 304. Specifically, the clerk entered a judgment "in favor of the Defendant Christopher Frankel and against the Hurry Family Trust" on the Hurry Trust's claim for breach of contract; "in favor of the Defendant Christopher Frankel and against Alpine Securities Corporation" on the Alpine's claim for breach of contract; "in

---

1. Frankel reserves his right to move for a determination of his entitlement to recover attorney's fees and expenses on Alpine and Scottsdale's claims for misappropriation of trade secrets if the Court grants Frankel's forthcoming motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) on Alpine and Scottsdale's claims for misappropriation of trade secrets.

favor of the Defendant Christopher Frankel and against Scottsdale Capital Advisor's Corporation" on Scottsdale's claim for breach of contract. Doc. 304. The clerk also entered a judgment in favor of Alpine and Scottsdale on their claims for misappropriation of trade secrets, which Frankel will be challenging by a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b).

Frankel has claims for attorney's fees and expenses (a) against Cayman under the pre-employment, non-disclosure agreement and Arizona Revised Statute § 12-341.01, the Federal and Florida Trade Secret Acts, and FDUTPA; (b) against the Hurry Trust under the pre-employment, non-disclosure agreement and Arizona Revised Statute § 12-341.01, the Federal and Florida Trade Secret Acts, and FDUTPA; and (c) against Scottsdale and Alpine under the post-employment, non-disclosure agreement and FDUTPA.

Frankel's fees through April 30, 2021, were approximately $493,763.54 and his costs and expenses were approximately $10,072.54.[2]

## II.   APPLICABLE RULES

A claim for attorney fees and related nontaxable expenses must be made by motion no later than 14 days after entry of the judgment. Fed. R. Civ. P.

---

2.  Frankel's fees and costs through April 30, 2021, include his fees and costs through his initial motion for fees and costs filed on May 24, 2019. Doc 67 (Frankel's initial motion for fees and costs). Frankel is separately filing a bill of costs for the taxable costs incurred in this action. The estimated expenses set forth in this motion include the taxable costs set forth in Frankel's bill of costs; however, Frankel is only seeking recovery of those costs to the extent that they are not taxed by the clerk.

54(d)(2)(A), (B). The court may establish procedures to resolve fee-related issues by local rule. Fed. R. Civ. P. 54(d)(2)(C).

Local Rule 7.01(a) provides a "bifurcated procedure" for a party claiming post-judgment attorney's fees and related, non-taxable expenses. Local Rule 7.01(b) requires that a party first file a motion to determine entitlement. After the court determines entitlement, the party claiming fees and expenses must file a supplemental motion on the amount of its fees and expenses under Local Rule 7.01(c).

## III.   ARGUMENT

### A.   Frankel prevailed and is entitled to recover his attorney's fees and expenses from all plaintiffs on their FDUTPA claims.

The prevailing party in a claim under FDUTPA may recover reasonable attorney's fees and expenses from the non-prevailing party. § 501.2105, Fla. Stat. (2018). If a defendant prevails on a FDUTPA claim at an interim stage in the proceedings, then the defendant may recover the attorney's fees and expenses incurred up through and including the proceedings that ended the FDUTPA claim. *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 371 (Fla. 2013).

### 1.   Frankel prevailed on the plaintiffs' FDUTPA claims.

In this case, the dismissal of the plaintiffs' FUDTPA claims became a judgment on the merits, entitling Frankel to recover attorney's fees and expenses as the prevailing party. *See* Docs. 1, 37, 47, 61; *Federated Dept. Stores, Inc. v.*

*Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'"); *Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.*, 572 Fed. Appx. 796, 802 (11th Cir. 2014) ("[A] dismissal without prejudice under Rule 12(b)(6) becomes a dismissal with prejudice when no timely amendment is made and no request for an extension is submitted." (citing *Hertz Corp. v. Alamo Rent–A–Car, Inc.*, 16 F.3d 1126, 1127 n. 3 (11th Cir.1994)).

Thus, Frankel is entitled to recover the approximately $130,283.oo in attorney fees and the approximately $1,287.49 in expenses that Frankel incurred up through and including the proceedings that terminated the FDUTPA claims. *See Diamond Aircraft*, 107 So. 3d at 371.

Indeed, other courts have recognized that a plaintiff bringing a FDUTPA claim cannot drop the claim to avoid liability for prevailing party fees. *KIPU SYSTEMS LLC, v. ZENCHARTS LLC*, 17-24733-CIV, 2021 WL 1891710, at *6 (S.D. Fla. Apr. 6, 2021) ("Although Plaintiff never argues that the decision to drop the FDUTPA claim prior to trial is a way to prevent the Non-Judgment Defendants from being declared the prevailing party, that contention would have been unsuccessful." (citing *Victory Int'l (USA), LLC v. Perry Ellis Int'l, Inc.*, 2009 WL 1956236, at *1 (S.D. Fla. July 7, 2009)).

### 2. Frankel should recover his fees under the FDUTPA factors for fee awards.

FDUTPA defendants have the same entitlement to prevailing party fee awards as FDUTPA plaintiffs. *Humane Soc. of Broward County, Inc. v. Florida Humane Soc.*, 951 So. 2d 966, 968–71 (Fla. 4th DCA 2007). In that case, the court rejected the plaintiff's argument that a different standard should apply to the defendants' entitlement to prevailing party fees under FDUTPA. *Id.* The court reasoned that "[t]he plain language of [FDUTPA] does not suggest that the Legislature intended to treat prevailing defendants differently than prevailing plaintiffs." *Id.* at 971.

The court explained that FDUTPA provides trial courts with discretion "in determining FDUTPA fee awards," and the court listed seven factors that may be considered in exercising this discretion:

> In exercising its discretion, factors that a trial court might consider include, but are not limited to
> (1) the scope and history of the litigation;
> (2) the ability of the opposing party to satisfy an award of fees;
> (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;
> (4) the merits of the respective positions—including the degree of the opposing party's culpability or bad faith;
> (5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;
> (6) whether the defense raised a defense mainly to frustrate or stall;
> (7) whether the claim brought was to resolve a significant legal question under FDUTPA law.

*Id.* at 971–72.

In this case, the factors support awarding fees to Frankel as the prevailing party on the plaintiffs' FDUTPA claims.

Under factor (1), "the scope and history of the litigation," the FDUTPA claims ended when the plaintiffs had to abandon the claims in their second amended complaint following dismissal of the first amended complaint for failure to state a claim. The plaintiffs never had viable, FDUTPA claims and should not have asserted FDUTPA claims in their first two complaints.

Under factor (2), "the ability of the opposing party to satisfy an award of fees," no evidence suggests that the plaintiffs cannot satisfy an award of fees. This is not the typical FDUTPA claim in which a consumer is challenging a company's deceptive or unfair practices. The plaintiffs are sophisticated securities firms with millions in annual revenue and a family trust that owned the securities firms. After abandoning their FDUTPA claim, the plaintiffs went on to spend a fortune pursuing their other claims, using a jury consultant and an entourage of lawyers, paralegals, and vendors to try the case.

Under factor (3), "whether an award of fees against the opposing party would deter others from acting in similar circumstances," a fee award in this case would deter other companies and employers from bringing meritless FDUTPA claims against former employees. The law did not allow the plaintiffs to tack on FDUTPA claims to their alleged claims for misappropriation of trade secrets, and yet, the plaintiffs tried to do exactly that. *See* Doc. 38 at 14–15 (discussing *XTec, Inc. v. Hembree Consulting Services, Inc.*, 183 F. Supp. 3d 1245, 1262–63 (S.D. Fla. 2016) and cases cited therein). Before bringing a FDUTPA claim against a former employee, an employer should first determine whether the claim has

merit. The plaintiffs did not do so in this case, and an award of fees to Frankel for prevailing on the plaintiffs' FDUTPA claims would deter other "non-consumer" employers from bringing meritless FDUTPA claims against former employees.

Under factor (4), "the merits of the respective positions—including the degree of the opposing party's culpability or bad faith," the plaintiffs' FDUTPA claims never had merit. The plaintiffs so conceded when they did not even attempt to plead a FDUTPA claim in their second amended complaint. The plaintiffs are Hurry-controlled entities, and Frankel has filed requests for judicial notice, providing the Court with multiple examples of Hurry's bad faith and improper litigation conduct in other cases. *See* Docs. 15, 22, 134, 138, 244, 250.

Under factor (5), "whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless," the plaintiffs' FDUTPA claims never had merit and never should have been brought. The law simply did not allow the plaintiffs to try to tack on FDUTPA claims to their trade secret misappropriation claims. *See* Doc. 38 at 14–15 (discussing *XTec, Inc.*, 183 F. Supp. 3d at 1262–63 and cases cited therein).

Under factor (6), "whether the defense raised a defense mainly to frustrate or stall," Frankel successfully moved to dismiss the meritless FDUTPA claims, not to frustrate or stall the progress of the case. Doc. 38, 47.

Under factor (7), "whether the claim brought was to resolve a significant legal question under FDUTPA law," the plaintiffs did not seek to resolve any

significant legal question under FDUTPA by trying to tack on FDUTPA claims to their claims for misappropriation of trade secrets.

**B.  Frankel "succeeded" and is entitled to recover his attorney's fees and expenses from Cayman and Hurry Trust on their claims for breach of the pre-employment, non-disclosure agreement.**

Cayman and Hurry Trust brought claims against Frankel for breach of the pre-employment, non-disclosure agreement. *See* Docs. 1, 37, 61. In those claims, Cayman and Hurry Trust alleged entitlement to prevailing party attorney's fees and expenses under Arizona Revised Statute § 12-341.01.

Section 12-341.01(A) permits an award of attorney fees to the "successful party" in a "contested action arising out of a contract." *E.g.*, *Caldwell v. J & J Rocket Co.*, 680 Fed. Appx. 632, 633 (9th Cir. 2017) (mem.) (affirming fee award and explaining that "Arizona law gives courts discretion to award attorney's fees to the successful party in a contract case." (citing § 12-341.01)).

**1.  Frankel "succeeded" on Cayman's claim for breach of contract.**

Cayman's withdrawal of its claim for breach of contract is a judgment on the merits in favor of Frankel. *See* Docs. 1, 37, 47, 61; *Federated Dept. Stores*, 452 U.S. at 399 n.3 (quoted above in Part A.1); *Dependable Component Supply*, 572 Fed. Appx. at 802 (quoted above in Part A.1). Thus, Frankel is entitled to recover the approximately $130,283.oo in attorney fees and the approximately $1,287.49 in expenses that Frankel incurred up through and including the proceedings that ended Cayman's claim for breach of contract.

### 2. Frankel "succeeded" on Hurry Trust's claim for breach of contract.

Consistent with the jury's verdict, the clerk entered a judgment "in favor of the Defendant Christopher Frankel and against the Hurry Family Trust" on the Hurry Trust's claim for breach of contract. Doc. 304. Thus, Frankel is entitled to recover the recover the approximately $493,763.54 in attorney fees and the approximately $10,072.54 in expenses that Frankel incurred in prevailing on this claim.

### 3. Frankel is entitled to fees under the Arizona Supreme Court's factors for awarding fees under section 12-314.01(A).

The Arizona Supreme Court has identified six factors for awarding fees under section 12-314.01(A):

1) the merits of the unsuccessful party's claim;
2) whether the successful party's efforts were completely superfluous in achieving the ultimate result;
3) whether assessing fees against the unsuccessful party would cause extreme hardship;
4) whether the successful party prevailed with respect to all relief sought;
5) whether the legal question presented was novel or had been previously adjudicated; and
6) whether a fee award would discourage other parties with tenable claims from litigating.

*Am. Const. Corp. v. Philadelphia Indem. Ins. Co.*, 667 F. Supp. 2d 1100, 1106–07 (D. Ariz. 2009) (citing *Assoc. Indemn. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985)).

In this case, the factors support Frankel's request for fees as the successful party on Cayman and Hurry Trust's breach of contract claims.

Under factor (1), "the merits of the unsuccessful party's claim," Cayman could not plead specific facts to support, and had to abandon, its non-existent claim for breach of pre-employment, non-disclosure agreement. The jury determined that the Hurry Trust had no claim for breach of the pre-employment, non-disclosure agreement because the Hurry Trust sustained no damage or harm from Frankel's alleged breach.

The Hurry Trust tried to abandon its breach of contract claim when the plaintiffs proposed to file a first amended complaint without any breach of contract claim by the Hurry Trust, and instead asserted breach of contract claims only by Scottsdale and Alpine. Doc 35-5 (Proposed, first amended complaint). Without any evidence of harm or damage, the Hurry Trust continued to pursue its breach of contract claim (Docs. 37, 61) through trial to try to avoid Frankel's fee claim.

Under factor (2), "whether the successful party's efforts were completely superfluous in achieving the ultimate result," none of Frankel's efforts were "completely superfluous." Frankel's motions and discovery concerning Cayman forced Cayman to abandon its non-existent claims. Frankel's efforts through and including trial defeated the Hurry Trust's breach of contract claim.

Under factor (3), "whether assessing fees against the unsuccessful party would cause extreme hardship," as explained in addressing FDUTPA fee factor (2), Cayman and the Hurry Trust are litigious, well-funded plaintiffs who rush to sue and spare no expense in pursuing litigation.

Under factor (4), "whether the successful party prevailed with respect to all relief sought," neither Cayman nor Hurry Trust obtained any of the relief sought. Frankel prevailed in all respects.

Under factor (5), "whether the legal question presented was novel or had been previously adjudicated," this case did not involve any novel legal questions that justified Cayman's or Hurry Trust's unsuccessful pursuit of their claims. Hurry Trust had to prove that Frankel's alleged breach caused harm or damage, and Hurry Trust failed to do so. Cayman had no justification for pursuing a non-existent claim for breach of contract.

Under factor (6), "whether a fee award would discourage other parties with tenable claims from litigating," a fee award in this case would not discourage other parties with tenable claims for breach of contract from litigating. Rather, a fee award would discourage untenable claims by claimants who do not have evidence to support all elements of their claims.

**C.      Cayman and the Hurry Trust brought their claims for misappropriation of non-existent, trade secrets in bad faith, so Frankel is entitled to recover his attorney's fees and expenses against Cayman and Hurry Trust on their abandoned, trade secret claims.**

The federal and Florida trade secret acts give the Court discretion to award fees against plaintiffs who sue "in bad faith" for alleged misappropriation of trade secrets. 18 U.S.C. § 1836(b)(3)(D) ("a court may . . . [i]f a claim of misappropriation is made in bad faith . . . award reasonable attorney's fees to the prevailing party"); § 688.005, Fla. Stat. ( "If a claim of misappropriation is made

in bad faith . . . the court may award reasonable attorney's fees to the prevailing party").

The Eleventh Circuit has not determined what constitutes "bad faith" under § 1836(b)(3)(D), but district courts in the Eleventh Circuit have looked to general case law on "bad faith" fee awards in other contexts to determine "bad faith" under § 1836(b)(3)(D). *E.g.*, *Temurian v. Piccolo*, 18-62737-CIV, 2021 WL 1121003, at *6 (S.D. Fla. Mar. 24, 2021). In *Temurian*, the Southern District explained:

> [T]he Eleventh Circuit has not addressed what constitutes "bad faith" for the purposes of the DTSA, but there is ample precedent as to what constitutes "bad faith" warranting the award of attorneys' fees. (R. & R. at 10.) "In determining the propriety of a bad faith fee award, 'the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case.' " *Mar. Mgmt., Inc. v. United States*, 242 F.3d 1326, 1333 (11th Cir. 2001) (citing *Rothenberg v. Sec. Mgmt. Co.*, 736 F.2d 1470, 1472 (11th Cir. 1984)). Bad faith is determined by focusing on a party's conduct and motive rather than on the validity of the case. *Kreager v. Solomon & Flanagan*, 775 F.2d 1541, 1543 (11th Cir. 1985). The bad faith standard is not limited to suits that are filed in bad faith but also extends to bad faith acts preceding and during litigation. *Id.* For there to be a finding of bad faith, a plaintiff's conduct must be objectively specious or frivolous and there must be evidence of subjective misconduct. *Knights Armament Co. v. Optical Sys. Tech*, No. 6:07-CV-1323-ORL, 2012 WL 3932863, at *4 (M.D. Fla. Aug. 20, 2012).

*Id.* These concepts are consistent with at least one other Circuit. *RJB Wholesale, Inc. v. Castleberry*, 788 Fed. Appx. 565, 566 (9th Cir. 2019).

In this case, Cayman and Hurry Trust had no trade secrets and no trade secret claims. When required to allege specific facts to support their trade secret

claims, Cayman and Hurry Trust had to abandon their claims, demonstrating that Cayman and the Hurry Trust brought the claims in bad faith.

The Court may also consider Cayman's and Hurry Trust's pre-suit conduct as evidence of their bad faith. *Temurian*, 2021 WL 1121003, at *6 ("The bad faith standard is not limited to suits that are filed in bad faith but also extends to bad faith acts preceding and during litigation."). Before suing, Cayman and Hurry Trust sent Frankel a demand letter (Doc. 16-4) to which he timely responded and offered to return all of their documents and information (Doc. 16-5). Cayman and Hurry Trust then sued Frankel before the deadline in their demand letter for returning confidential information (Doc. 1).

Frankel returned all of the plaintiffs' documents with his initial disclosures (Doc. 35-3), then served discovery requests for Cayman and Hurry Trust to identify the documents or information that they were claiming Frankel misappropriated (Doc. 46-1). Cayman and Hurry Trust objected and refused to identify the documents or information that was the subject of their claims (Doc. 35-1). It was not until the Court dismissed Cayman and Hurry Trust's claims and required Cayman and Hurry Trust to identify the documents or information that was the subject of their claims that Cayman and Hurry Trust abandoned their misappropriation claims. *See* Docs. 37, 38, 47, 61. Cayman and Hurry Trust considered dropping their claims in the proposed, first amended complaint (Doc. 35-5), but instead continued to pursue claims (Doc. 37) to try to forestall Frankel's fee claim.

Frankel is entitled an award of approximately $130,283.oo in attorney fees and $1,287.49 in expenses for Cayman's and Hurry Trust's "bad faith" pursuit of claims for misappropriation of non-existent, trade secrets.

### D.   Frankel prevailed on Alpine's and Scottsdale's claims for breach of the post-employment, non-disclosure agreement and is entitled to recover his attorney's fees and expenses from Alpine and Scottsdale.

Alpine and Scottsdale brought claims against Frankel for breach of the post-employment, non-disclosure agreement. *See* Docs. 1, 37, 61. In those claims, Alpine and Scottsdale claimed "successful" and prevailing party, attorney's fees and expenses under Arizona Revised Statute § 12-341.01 and under paragraph 7(h) of the post-employment, non-disclosure agreement.

Paragraph 7(h) of the post-employment, non-disclosure agreement states: "In a dispute arising out of or related to this Agreement, the prevailing party shall have the right to collect from the other party its reasonable attorney fees and costs and necessary expenditures." Doc. 61 at 24. Per the jury's verdict and the clerk's judgment, Frankel prevailed on Alpine's and Scottsdale's claims for breach of the post-employment, non-disclosure agreement. *See* Doc 304 (entering judgment for Frankel and against Alpine and Scottsdale on Alpine's and Scottsdale's claims for breach of contract).

The Court need not consider the factors for discretionary fee awards under § 12-341.01 because Alpine and Scottsdale agreed to reimburse Frankel's fees in the post-employment, non-disclosure agreement. Even if weighing the factors

were appropriate, the same analysis that applies to Hurry Trust's unsuccessful claim for breach of contract applies to Alpine's and Scottsdale's unsuccessful claims for breach of contract. *See* Part B.3 *supra.* Alpine and Scottsdale did not investigate the merits of their claim before suing. Indeed, Alpine and Scottsdale sued without determining the operative agreement which governed their breach of contract claims. Doc 34-1 (Declaration of Jordan Susman, former counsel for plaintiffs, in support of plaintiffs' motion to amend initial complaint) at ¶4 on pp. 1 – 2.

Frankel is entitled to recover from Scottsdale and Alpine the approximately $493,763.54 in attorney fees and $10,072.54 in expenses that Frankel incurred in prevailing on their breach of contract claims.

* * *

WHEREFORE, Frankel requests an order granting this motion and determining that Frankel is entitled to recover his attorney's fees and expenses incurred in prevailing on (a) Cayman's, Hurry Trust's, Alpine's, and Scottsdale's FDUTPA claims; (b) Cayman's and Hurry Trust's claims for breach of the pre-employment, non-disclosure agreement; (c) Cayman's and Hurry Trust's claims for misappropriation of trade secrets; and (d) Alpine's and Scottsdale's claims for breach of the post-employment, non-disclosure agreement. Frankel also requests any further relief deemed proper to protect his interests and rights.

**Certificate of Compliance with Local Rule 3.01(g)**

I certify that on May 20, 2021, counsel for Frankel conferred with counsel

for the plaintiffs by telephone. The plaintiffs oppose the relief requested.

**Certificate of Service**

I certify that on May 21, 2021, I caused the foregoing motion to be filed

with CM/ECF, which will send electronic notice to all counsel of record.

*s/ David C. Banker, Esquire*

David C. Banker (Fla. Bar No. 352977)
J. Carter Andersen (Fla. Bar No. 0143626)
Harold D. Holder (Fla. Bar No. 118733)
BUSH ROSS, PA
1801 N. Highland Avenue
Tampa, Florida 33602
Phone: 813-224-9255
Fax:    813-223-9620
Primary: dbanker@bushross.com;
candersen@bushross.com;
hholder@bushross.com
Secondary:  aflowers@bushross.com
ksalter@bushross.com
*Attorneys for Defendant*
