UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE HURRY FAMILY REVOCABLE
TRUST; SCOTTSDALE CAPITAL
ADVISORS CORPORATION; and
ALPINE SECURITIES
CORPORATION,                                    CASE NO.: 8:18-cv-02869-VMC-CPT

       Plaintiffs/Counter-Defendants,

vs.

CHRISTOPHER FRANKEL,

       Defendant/Counter-Plaintiff.
_____/


**PLAINTIFFS' MOTION FOR ENTRY OF A PERMANENT INJUNCTION AND
TO AMEND THE JUDGMENT IN CONFORMITY THEREWITH
AND INCORPORATED MEMORANDUM OF LAW**

Table of Contents

INTRODUCTION...............................................................................................3

BACKGROUND.................................................................................................3

ARGUMENT AND INCORPORATED MEMORANDUM OF LAW ................8

    A.    Each of Plaintiffs' claims provides a right to injunctive relief. .......................8

        i.    The Florida Uniform Trade Secrets Act and the Defend Trade Secrets Act provide for injunctive relief as a remedy............................................................9

        ii.    Injunctive relief is appropriate under Arizona law for breach of contract claims. ................................................................................................................10

    B.    The legal standard for this Court to enter a permanent injunction. .............12

    C.    The Court should enjoin Frankel from using or disclosing Alpine and Scottsdale's trade secrets and Confidential Information. ....................................13

        i.    Scottsdale and Alpine have suffered and will continue to suffer irreparable injuries if Frankel is not enjoined, and they lack an adequate remedy at law....13

        ii.    The balance of the hardships weighs in favor of Alpine and Scottsdale....17

        iii.    A permanent injunction in favor of Scottsdale and Alpine would serve the public interest...............................................................................................18

    D.    This Court should enjoin Frankel from using or disclosing the Hurry Trust's Confidential Information and require him to return or destroy any of the Hurry Trust's Confidential Information that remains in his possession. .........................20

        i.    The Hurry Trust suffered an irreparable injury and lacks an adequate remedy at law. ................................................................................................................20

        ii.    The balance of the hardships weighs in favor of The Hurry Trust. ...........22

        iii.    A permanent injunction in favor of the Hurry Trust serves the public interest. ................................................................................................................22

    E.    Conclusion..............................................................................................23

CERTIFICATE OF SERVICE..........................................................................25

4815-0301-5912, v. 14

Pursuant to Rules 59(e) and 65, Federal Rules of Civil Procedure, Plaintiffs, The Hurry Family Revocable Trust ("Hurry Trust"), Scottsdale Capital Advisors Corporation ("Scottsdale"), and Alpine Securities Corporation ("Alpine") (collectively "Plaintiffs"), file this Motion seeking (1) entry of a permanent injunction in a form as described below in on pages 23 through 25 of this Motion in Plaintiffs prayer for relief; and (2) entry of an amended final judgment reflecting the entry of the permanent injunction.

## INTRODUCTION

After a week-long trial, the jury determined that Defendant, Christopher Frankel ("Frankel"), materially breached two contracts, had no legal defense or factually  valid excuse to justify those breaches, and misappropriated Alpine's and Scottsdale's trade secrets. Both contracts and both trade secrets statutes at issue provide for injunctive relief as a remedy. Based on the jury's finding of liability, Plaintiffs' contractual and/or statutory entitlement to injunctive relief, and the testimonial and documentary evidence establishing Plaintiffs' irreparable harm, Plaintiffs respectfully request that the Court enter a permanent injunction in a form set forth  below on pages 23 through 25 of this Motion in Plaintiffs' prayer for relief.

## BACKGROUND

This case included four claims against Frankel: (1) Hurry Trust's claim that Frankel breached the June 22, 2015 Non-Disclosure and Confidentiality Agreement ("NDA"); (2) Alpine's and Scottsdale's claim that Frankel breached the July 1, 2015 Employee Non-Disclosure & Computer Use Agreement ("Employee NDA"); (3)

4815-0301-5912, v. 14

Alpine's and Scottsdale's claim that Frankel violated the Defend Trade Secrets Act; and (4) Alpine's and Scottsdale's claim that Frankel violated the Florida Uniform Trade Secrets Act.

This Court presided over a jury trial on these claims beginning on April 26, 2021 and ending on April 30, 2021. During trial, Frankel admitted that he knew a "week or two" in advance that his last day as Alpine's CEO was August 1, 2018. [04-27-2021 Trial Trans. Frankel Direct 152:23-153:13]. The day before his final day as Alpine's CEO and in the weeks after, Frankel forwarded Alpine and Scottsdale's Confidential Information[1] and trade secrets, as well as the Hurry Trust's Confidential Information, to his personal email addresses on multiple occasions, including the following:

- July 31, 2018 – A list of Alpine and Scottsdale's top 50 clients with revenue numbers [04-27-2021 Trial Trans. Frankel Direct 100:6-101:7; Pls.' Ex. 31];

- August 8, 2018 – A draft Employment Agreement [04-27-2021 Trial Trans. Frankel Direct 103:16-21; Pls.' Ex. 8];

- September 18, 2018 – an Alpine Secured Revolving Credit Facility Term Sheet [04-27-2021 Trial Trans. Frankel Direct 88:13-89:2; Pls.' Ex. 3]; and

---

[1] The term "Confidential Information" is defined in both the the NDA and Employee NDA. Pursuant to the definition set forth in each agreement, "Confidential Information" necessarily includes Alpine and Scottsdale's trade secrets.

4

- October 7, 2018 – Three emails attaching, among other things, Alpine's Written Supervisory Procedures, Alpine's Confidential 2016 Financial Statements with Reports, a document with the number of accounts and value of accounts including information for both Scottsdale and Alpine, Alpine's bylaws, the Hurry Trust's Certificate of Trust, and the First Amendment to the Hurry Trust [04-27-2021 Trial Trans. Frankel Direct 107:25-108:7; 110:4-18; 115:23-116:1; Pls.' Ex 1, 2, 48].

Alpine and Scottsdale spent considerable resources over the years in an ongoing effort to develop and improve their employment contracts, rules, procedures, loan term sheets – all documents which Frankel took. [04-29-2021 Trial Trans. Hurry Direct 162:6-163:21]. It is no coincidence that the documents Frankel took would provide a tremendous advantage to someone trying to start their own broker dealer. *Id.* Even Frankel acknowledged that the information he took would be valuable to Alpine's and Scottsdale's competitors. [04-27-2021 Trial Trans. Frankel Direct 108:13-109:1].

To protect their trade secrets and Confidential Information, Alpine and Scottsdale employ multiple layers of security to prevent the information from entering the stream of commerce because if it got into the hands of their competitors, Alpine and Scottsdale would lose some of their competitive advantage. [04-26-2021 Trial Trans. Cruz Direct 81:20-82:2]. Specifically with respect to the top 50 customer list, it would be impossible to quantify the damages accruing from the information's release into the stream of commerce. [04-26-2021 Trial Trans. Cruz Direct 142:25-143:10]. In essence, the top 50 customer list would give competitors a direct map on who to call

5

and how much their business is worth. [04-29-2021 Trial Trans. Hurry Direct 160:2-17].

Frankel also admitted to distributing and using an Alpine trade blotter [Pls.' Ex. 44 and 46] he received from Randall Jones—who was, at the time, an Alpine employee. [04-27-2021 Trial Trans. Frankel Direct 147:25-148:4]. Not only did Frankel obtain the trade blotter from an Alpine employee, but he distributed and used it while this litigation was pending. [Pls.' Ex. 45, 46]. The trade blotter Frankel distributed included trade secret information from both Alpine and Scottsdale. [04-26-2021 Trial Trans. Cruz Direct 132:17-135:17; 04-29-2021 Trial Trans. Hurry Direct 159:7-14]. Access to Alpine and Scottsdale's trade blotter would enable a competitor to obtain invaluable and otherwise unobtainable insight into the businesses, including their commissions earned, the risks associated with their book of business, the costs of doing business, the business' revenue, the businesses' margins and profitability. [4-29-2021 Trial Trans. Hurry Direct 155-158:13; 164:8-171:10].

Worse yet, if someone had both the top 50 Alpine and Scottsdale customer list and the trade blotter, they would have a massive advantage in determining the best ways to compete with the companies. [04-29-2021 Trial Trans. Hurry Direct 160:23-161:25; 164:8-171:10]. The top 50 clients, which took decades to develop, represent a very large portion of the firms' revenue–as much as 80%–and when combined with the trade blotter, a competitor could determine the risk, profitability, and revenues associated with those clients. *Id.* This potent combination of confidential and trade

secret information would allow a competitor to take the Alpine and Scottsdale's business. [04-29-2021 Trial Trans. Hurry Direct 161:21-162:5].

When questioned on his efforts to compile and return Plaintiffs' Confidential Information, Frankel claimed he used a "third-party computer vendor" to copy emails from his personal email accounts using the search terms specified in his Rule 26 disclosures. [04-27-2021 Trial Trans. Frankel Cross 239:13-240:12]. However, the computer vendor proved to be a mystery at trial. Frankel couldn't identify this computer vendor. [04-28-2021 Trial Trans. Frankel Re-Direct 184:22-24]. Frankel didn't introduce a report or an affidavit from the computer vendor into evidence. And the computer vendor didn't testify at trial to explain the search it conducted or the mechanisms it utilized to ensure that the Confidential Information was removed from Frankel's possession, custody, or control.

Not only did Frankel fail to introduce competent evidence regarding the mystery computer vendor's work, but the evidence also established that he did not delete or destroy all of the Confidential Information. For instance, Frankel testified that he did not delete the email he received from Randall Jones transmitting the trade blotter, while also claiming that he could not locate it. [04-27-2021 Trial Trans. Frankel Direct 136:12-138:11].

Equally troubling, Frankel admitted to printing Plaintiffs' Confidential Information—purportedly to work from home—but Frankel introduced no credible evidence that he returned or destroyed that information. [04-28-2021 Trial Trans. Frankel Cross 32:10-33:11; 04-28-2021 Trial Trans. Frankel Cross 95:12-16].

7

In short, beyond Frankel's speculation regarding what his computer vendor did or did not do, Frankel presented no competent evidence that he deleted or destroyed **all** of Plaintiffs' Confidential Information—including Alpine's and Scottsdale's trade secrets. To the contrary, the evidence establishes that Frankel still has some of the information in his possession, custody, or control.

At the conclusion of the trial, the jury returned a verdict finding that Frankel (1) materially breached the NDA [Joint Ex. 1]; (2) materially breached the Employee NDA [Joint Ex. 2]; (3) was not prevented or excused by Plaintiffs from performing his obligations under the NDA and Employee NDA to return the Confidential Information; and (4) misappropriated Alpine's and Scottsdale's trade secrets. *See* Dkt. 302. Although the jury determined that neither breach of contract caused Plaintiffs actual monetary damages, the jury concluded that Frankel was unjustly enriched through his misappropriation of Alpine's and Scottsdale's trade secrets. *See id.*

Based on the jury's findings of liability regarding Frankel's breach of the contracts and misappropriation of Alpine's and Scottsdale's trade secrets, and applicable law, this Court should enter a permanent injunction as set forth on pages 23 through 25 of this Motion in Plaintiffs'' prayer for relief.

## ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

The law and the facts of this case support entry of a permanent injunction prohibiting Frankel from using, disclosing, or retaining the Confidential Information and trade secrets he misappropriated.

### A. Each of Plaintiffs' claims provides a right to injunctive relief.

8

### i. The Florida Uniform Trade Secrets Act and the Defend Trade Secrets Act provide for injunctive relief as a remedy.

This Court should analyze the Florida Uniform Trade Secrets Act ("FUTSA") and the Defend Trade Secrets Act ("DTSA") together. *Hurry Family Revocable Tr. v. Frankel*, 2019 WL 6311115, at *13 (M.D. Fla. Nov. 25, 2019). Both the FUTSA and the DTSA authorize the Court to permanently enjoin Frankel from continuing to use Alpine's and Scottsdale's trade secrets. Fla. Stat. § 688.003; 18 U.S.C. § 1836(b)(3)(A)(i).[2] In trade secrets cases, "both injunctive and monetary relief are appropriate: monetary relief to compensate the plaintiff for existing losses and injunctive relief to prevent future loss through further use or disclosure of the trade secret." Restatement (Third) of Unfair Competition ("Restatement") § 44, cmt. b & Reporter's Notes to cmt. b (1995);[3] *see also Sensormatic Elecs. Corp. v. TAG Co. US, LLC*, 632 F. Supp. 2d 1147, 1187 (S.D. Fla. 2008) (plaintiff manufacturer was entitled to permanent injunction under FUTSA prohibiting rival manufacturer from using or disclosing plaintiff's manufacturing specifications because future disclosure or use of the specifications would cause irreparable injury); *Delucca v. GGL Indus., Inc.*, 712 So.2d 1186, 1187 (Fla. 4th DCA 1998) (upholding permanent injunction under FUTSA prohibiting employee from disclosing former employer's trade secrets, consisting of tax returns, documents reflecting income, customers' names and

---

[2] "Actual or threatened misappropriation may be enjoined," and "[i]n appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order."

[3] Case law interpreting other states' uniform trade secrets acts is persuasive because the Florida Trade Secrets Act "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this act among states enacting it." Fla. Stat. § 688.009.

addresses, etc., despite the employee's testimony that he was "no longer employed and ha[d] destroyed all evidence which he had in his possession," reasoning that "the trial court may well have found [that testimony was] not . . . credible"); *Thomas v. Alloy Fasteners, Inc.*, 664 So.2d 59, 60 (Fla. 5th DCA 1995) (employer was entitled to permanent injunction under FUTSA against use of confidential information about employer's pricing and profit structure contained in "order edit lists" that were misappropriated by former employee).

The Restatement explains why injunctive relief is often appropriate in trade secret cases:

> Injunctive relief is often appropriate in trade secret cases to insure against additional harm from further unauthorized use of the trade secret and to deprive the defendant of additional benefits from the appropriation. If the information has not become generally known, an injunction may also be appropriate to preserve the plaintiff's rights in the trade secret by preventing a public disclosure. If the trade secret has already entered the public domain, an injunction may be appropriate to remedy any head start or other unfair advantage acquired by the defendant as a result of the appropriation.

Restatement, § 44, cmt. c (1995).

### ii. *Injunctive relief is appropriate under Arizona law for breach of contract claims.*

Arizona courts recognize that it is appropriate to enter an injunction to enjoin a defendant who has been found to have already breached a contract from engaging in further breaches. *See Pure Wafer Inc. v. City of Prescott*, 275 F. Supp. 3d 1173, 1176 (D. Ariz. 2017). Although the line between specific performance and an injunction requiring a party to comply with or refrain from breaching a contract is blurry, "courts

often characterize requests for specific performance of contractual duties as requests for injunctive relief." *Id*. And "when plaintiffs seek an injunction based on a breach of contract, courts often enjoin the defendants from further breaches of the contract." *Id.* at 1177.

Injunctive relief is particularly appropriate here. The parties expressly agreed that this type of relief would be proper and necessary to protect the parties' interests under the contract. Paragraph 6 of the NDA provides:

> EQUITABLE RELIEF. The Recipient hereby acknowledges that unauthorized disclosure or use of Confidential Information could cause irreparable harm and significant injury to the Disclosure. Accordingly, the Recipient agrees that the Discloser will have the right to seek and obtain immediate injunctive relief to enforce obligations under this Agreement in addition to any other rights and remedies it may have.

Similarly, Paragraph 7(f) of the Employee NDA provides:

> Injunctive Relief: Any misappropriation of any of the Confidential information in violation of this Agreement may cause Company irreparable harm, the amount of which may be difficult to ascertain, and therefore Employee agrees that Company shall have the right to apply to a court of competent jurisdiction for an order enjoining any such further misappropriation and for such other relief as Company deems appropriate. This right is to be in addition to the remedies otherwise available to Company.

Given the above contract terms, Frankel understood that the Hurry Trust, Alpine, and Scottsdale contemplated that the unauthorized use or disclosure of their Confidential Information could cause irreparable harm. It should come as no surprise

11

to Frankel that Plaintiffs now seek injunctive relief after he materially breached both contracts.

**B. The legal standard for this Court to enter a permanent injunction.**

Equitable claims, such as a claim for a permanent injunction, are matters to be resolved by the court rather than a jury. *See Ford v. Citizens and Southern Nat. Bank, Cartersville,* 928 F.2d 1118, 1122 (11th Cir. 1991); *United States v. Meyer,* 276 F.Supp.3d 1290, 1293-1294 (S.D. Fla. 2019). Although the jury determines questions of liability on legal claims, the Court is bound by the jury's liability findings across all the claims, regardless of whether they seek damages or equitable relief. *Romano v. John Hancock Life Ins. Co. (USA)*, 2021 WL 949939, at *10 (S.D. Fla. Mar. 12, 2021) (citing *Cont'l Vineyard LLC v. Dzierzawski*, No. 12 C 3375, 2018 WL 11195945, at *2 (N.D. Ill. Apr. 5, 2018)) ("This means that a jury will decide the question of liability on the breach of fiduciary duty claim, and the Court will be bound by that liability finding across all of Plaintiffs' claims, whether seeking damages or equitable relief.").

"To obtain a permanent injunction, a plaintiff must show (1) that he has suffered an irreparable injury; (2) that his remedies at law are inadequate; (3) that the balance of hardships weighs in his favor; and (4) that a permanent injunction would not disserve the public interest." *Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)); *River Springs Ranch Prop. Owners Ass'n v. L'Heureux*, No. 1 CA-CV 09-0560, 2010 WL 5030913, at *3 (Ariz. Ct. App. Oct. 26, 2010) (citing *eBay, Inc.*,

547 U.S. at 391).[4] "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and ... such discretion must be exercised consistent with traditional principles of equity." *eBay*, 547 U.S. at 394, 126 S.Ct. 1837. "Factors that may point to a danger of future violations include past violations, involuntary cessation of the violations, and their **continuance in disregard of the lawsuit**." *SAL Leasing, Inc. v. State ex rel. Napolitano*, 198 Ariz. 434, 442, 10 P.3d 1221, 1229 (Ct. App. 2000) (emphasis added).

## C. The Court should enjoin Frankel from using or disclosing Alpine and Scottsdale's trade secrets and Confidential Information.

Alpine and Scottsdale satisfied each of the four elements entitling them to a permanent injunction prohibiting Frankel for using or disclosing Alpine's and Scottsdale's Confidential Information and trade secrets.

### i. Scottsdale and Alpine have suffered and will continue to suffer irreparable injuries if Frankel is not enjoined, and they lack an adequate remedy at law.

"[I]njunctive relief is routinely granted in trade secret cases" because of "[t]he inadequacy of monetary relief and the risk of a destruction of trade secret rights through public disclosure." Restatement (Third) of Unfair Competition § 44, cmt. c & Reporter's Notes on cmts. b & g (1995) (collecting cases). Because the injuries

---

[4] "In a diversity case, whether to grant a permanent injunction is governed by state law." *Am. Debt Counseling, Inc. v. Exclaim Mktg., LLC.*, 2013 WL 12092097, at *4 (S.D. Fla. May 16, 2013) (quoting *Hanger Prosthetics & Orthotics, Inc. v. Morgan*, 2000 WL 1843820, at *1 (S.D. Ala. Oct. 17, 2000)); *see also Molex, Inc. v. Nolen*, 759 F.2d 474 (5th Cir.1985) (applying Texas law to determine whether plaintiff was entitled to permanent injunctive relief). *Liberty Couns. v. Fla. Bar Bd. of Governors*, 12 So. 3d 183, 186 n. 7 (Fla. 2009). Plaintiffs asserted claims under Arizona law, federal law, and Florida law. However, Arizona, Florida, and federal law all apply substantially the same standard to determine whether a permanent injunction is appropriate.

stemming from the misappropriation of trade secrets are not easily quantifiable, courts recognize that the injuries they cause are irreparable. *See Hatfield v. AutoNation, Inc.*, 939 So. 2d 155, 156 (Fla. 4th DCA 2006) (finding misappropriated confidential information, under FUTSA, gave rise to irreparable harm); *SMS Audio, LLC v. Belson*, 2016 WL 8739764, at *5 (S.D. Fla. Aug. 16, 2016) ("injuries stemming from misappropriation of trade secrets are not easily quantifiable and, thus, properly characterized as irreparable."). Similarly, the disclosure and consequent loss of control of trade secrets and confidential information can constitute irreparable harm. *See, e.g. WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 853 (N.D. Cal. 2019), *modified in part*, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019) ("It is well established that the loss of market position and the disclosure of trade secrets can constitute irreparable harm."); *Timber Automation, LLC v. FiberPro, LLC*, 2020 WL 5878211 (W.D. Ark. Oct. 2, 2020) ("the loss of intangible assets, such as the loss of control of confidential and proprietary information or the loss of reputation and goodwill, can constitute irreparable injury"); *G.W. Henssler & Assocs., Ltd. v. Marietta Wealth Mgmt., LLC*, 2017 WL 6996372 (N.D. Ga. Oct. 23, 2017) ("Loss of confidential and proprietary information is per se irreparable harm"); *Saini v. Int'l Game Tech.*, 434 F.Supp.2d 913, 919 (D. Nev. 2006) ("disclosure of confidential information or trade secrets would create irreparable injury to [movant]").

Here, Scottsdale and Alpine suffered irreparable injuries as a result of Frankel's disclosure and use of Scottsdale's and Alpine's trade secrets and Confidential

14

Information. In its verdict, the jury found that Frankel misappropriated Alpine's and Scottsdale's trade secrets and Confidential Information, but that they suffered no direct monetary damages. The jury also determined that Frankel used those trade secrets to unjustly enrich himself and that he disclosed those trade secrets and other Confidential Information to third parties. These facts alone are sufficient to establish that Alpine and Scottsdale have been irreparably harmed. Further, the fact that the jury did not find direct monetary harm exemplifies the fact that Alpine and Scottsdale's suffered an irreparable injury.

Unless this Court enjoins Frankel from continuing to breach the Employee NDA and using the trade secrets, and orders a complete inventory and return of all of Alpine's and Scottsdale's Confidential Information and trade secrets within that same injunction, Alpine and Scottsdale will continue to suffer irreparable injury and Frankel will continue to profit from the information he stole —while he works for a direct competitor. *See Freedom Med., Inc. v. Sewpersaud*, 469 F. Supp. 3d 1269, 1278 (M.D. Fla. 2020), *order clarified,* , 2020 WL 3487642 (M.D. Fla. June 25, 2020); *Sensormatic Elecs. Corp.*, 632 F. Supp. 2d at 1182, 1187 (future disclosure or use of plaintiff's trade-secret specifications would erode plaintiff's market share, which would cause irreparable injury).

Although Frankel purportedly "returned" the Confidential Information during discovery, there is no evidence that Frankel deleted or destroyed the Confidential Information. Frankel claims he used a third-party computer vendor to copy emails from his personal email accounts using the search terms specified in his Rule 26

15

disclosures. However, at trial Frankel testified he could not   remember the forensic computer company's name   and he did not offer or introduce into evidence a report from the vendor or any documentary evidence at all proving  the computer vendor's alleged search and consequent data retrieval as represented by Frankel's counsel in their Rule 26 disclosures [04-28-2021 Trial Trans. Frankel Re-Direct 184:22-24].. The computer vendor did not testify to explain the search it conducted or the mechanisms utilized to ensure that all of the Confidential Information was removed from Frankel's possession, custody, or control. As a result, beyond Frankel's speculation regarding what the computer vendor did or did not do, Frankel presented no competent evidence that he returned, deleted, or destroyed Plaintiffs' Confidential Information—including Alpine's and Scottsdale's trade secrets.

Even if the third-party computer vendor did delete and destroy the Confidential Information and trade secrets that it obtained from Frankel's computer, the evidence at trial established that some of the information was *not* deleted and that Frankel also had hard copies of some of these documents. In fact, Frankel admitted to printing Plaintiffs' Confidential Information—purportedly to work from home. But Frankel introduced no evidence that he returned or destroyed that information.

The irreparable harm that Alpine and Scottsdale have suffered and continue to suffer is apparent. *Sensormatic Elecs. Corp.*, 632 F. Supp. 2d at 1182, 1187 (future disclosure or use of plaintiff's trade-secret specifications would erode plaintiff's market share, which would cause irreparable injury). Their Confidential Information and trade secrets have been used and disclosed, and they have no confirmation that

16

Frankel—the perpetrator of this use and disclosure—has deleted, destroyed, and is no longer using such information. Under the circumstances, Scottsdale and Alpine face a continued loss of customers, goodwill, and market competitiveness should Frankel continue using their Confidential Information and trade secrets. As such, irreparable harm has been established.

Further, no monetary damages can remedy the harm Alpine and Scottsdale will continue to suffer should Frankel continue to use their trade secrets. Likewise, no monetary damages can remedy the harm Alpine and Scottsdale have already suffered from the use and disclosure of their Confidential Information. Once information loses its confidentiality, there is no amount of money that will make it confidential again. *See, e.g. SMS Audio, LLC,* 2016 WL 8739764, at *5; *G.W. Henssler & Assocs., Ltd.,* 2017 WL 6996372; *Timber Automation, LLC,* 2020 WL 5878211; *AT&T Commc'ns of Cal. v. Pac. Bell,* 1996 WL 940836 (N.D. Cal. July, 3, 1995).

The evidence at trial established that Alpine and Scottsdale have devoted substantial time and resources to developing these trade secrets and maintaining their confidentiality. No amount of money can compensate Alpine and Scottsdale for the actual or potential continued dissemination of their Confidential Information. Accordingly, Alpine and Scottsdale lack an adequate remedy at law.

### ii.     *The balance of the hardships weighs in favor of Alpine and Scottsdale.*

In balancing the harms, the scales tip overwhelmingly in favor of a permanent injunction. Alpine and Scottsdale will suffer substantial harm if this Court does not prohibit Frankel from exploiting the Confidential Information and trade secrets the

17

jury determined he misappropriated. They are likely to face ongoing losses due to the misappropriation. *See Sensormatic Elecs. Corp.*, 632 F. Supp. 2d at 1182. Given that Frankel still has at least some of this information in his possession and that he works for a competitor of Alpine and Scottsdale, the risk of ongoing harm is significant.

On the other hand, Frankel will suffer no harm should this Court enjoin him from using Alpine and Scottsdale's trade secrets, which he has no right to use in the first place. *See id.* ("The balance of hardships favors injunctive relief because the burden placed on defendants by an injunction would consist only of the cost of forgoing infringing conduct. This can hardly be accorded substantial weight in an equitable balancing of factors. On the other hand, [plaintiff] faces harm to its market share and reputation in the market for [trade secret products], which it went to great efforts to research and develop. This harm easily outweighs any potential harm to defendants"). Frankel signed the Employee NDA and, in doing so, knew what he was agreeing to do. Frankel will suffer no hardship should this Court enjoin him from further violations of the agreement and require that he return or destroy all of Alpine and Scottsdale's Confidential Information still in his possession. Such an injunction does nothing more than hold him to the obligations he committed to when he signed the agreement.

Based on the foregoing, the balance of hardships weighs heavily in favor of Alpine and Scottsdale.

      iii.    *A permanent injunction in favor of Scottsdale and Alpine would serve the public interest.*

4815-0301-5912, v. 14

Protecting Scottsdale and Alpine's Confidential Information and trade secrets serves the public interest. *Sewpersaud*, 469 F. Supp. 3d at 1279. Courts have recognized that the public interest is served by strong intellectual property protections. *Sensormatic Elecs. Corp.*, 632 F. Supp. 2d at 1182. (citing *Abbot Labs v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006)). Public policy interests also require the protection of a company's trade secrets and confidential information. *See Metso Mins. Indus. Inc. v. Oakes*, 2014 WL 1632927, at *3 (D. Ariz. Apr. 23, 2014) ("In addition, granting the injunction is consistent with the public policy of protecting a company's interest in its trade secrets and confidential information."). Likewise, it is in the public interest to protect contractual rights. *See E\*Trade Fin. Corp. v. Eaton,* 305 F. Supp. 3d 1029, 1037 (D. Ariz. 2018)("[T]he public interest is served by protecting a company's right to proprietary information, business operations and contractual rights.") (quoting *Compass Bank v. Hartley*, 430 F.Supp.2d 973, 983 (D. Ariz. 2006)); *Burger King Corp. v. Lee,* 766 F.Supp. 1149, 1157 (S.D. Fla. 1991) ("The public interest is certainly disserved by Defendant's continuing disregard of his contractual commitments and undertakings."); *Oakes*, 2014 WL 1632927, at *3.

Here, Frankel entered into the Employee NDA, which: (1) requires him to keep the Confidential Information and trade secrets confidential; (2) prohibits him from disclosing the Confidential Information and trade secrets to third parties; and (3) forbids him from using the Confidential Information and trade secrets outside of his business relationships with Plaintiffs. The public interest is served by protecting Alpine's and Scottsdale's rights under this agreement and is disserved by permitting

19

Frankel to disregard his contractual obligations. Accordingly, public policy concerns weigh in favor of entry of an injunction.

**D. This Court should enjoin Frankel from using or disclosing the Hurry Trust's Confidential Information and require him to return or destroy any of the Hurry Trust's Confidential Information that remains in his possession.**

The Hurry Trust established each of the four factors entitling it to a permanent injunction.

> ***i.   The Hurry Trust suffered an irreparable injury and lacks an adequate remedy at law.***

Irreparable harm exists in situations where compensatory damages are unsuitable. *Pure Wafer Inc.*, 275 F. Supp. 3d at 1177. And while a breach of contract can generally be remedied by money damages, irreparable harm may nonetheless be present in a breach of contract case. *Id.*

This case presents a quintessential scenario in which a party suffers irreparable harm but has no adequate remedy to recover monetary damages. The Amendments to the Hurry Trust and the Certificate of Trust are confidential documents that the Hurry Trust keeps private. [04-29-2021 Trial Trans. Hurry Direct 146:8-20; 147:10-149:16; Pls. Ex. 52]. And Frankel emailed himself that Confidential Information in violation of the NDA. Frankel then chose not to return that information after the Hurry Trust demanded its return within the ten-day time period set forth in the contract. [4-28-2021 Trial Trans., Frankel Re-Direct, 223:8-224:1; 225:20-25 – 226:1-5]. At trial, Frankel testified that he "returned" this Confidential Information by having a third-party vendor collect the information and then providing it in discovery. However, Frankel

adduced no evidence from this third-party vendor to confirm that it deleted the Confidential Information from Frankel's accounts.

Based on the evidence or perhaps more appropriately the lack of evidence presented by Frankel at the trial,, the third-party vendor apparently still has possession or control over the Confidential Information, Frankel did not identify the vendor at trial and Frankel has not otherwise disclosed the company's identity at any point before or after the trial. In short, Frankel's disregard for the Hurry Trust's Confidential Information has caused the Hurry Trust to lose control over the confidentiality of that information. This loss of control of confidential and proprietary information is sufficient to demonstrate irreparable harm. *See Timber Automation, LLC,* 2020 WL 5878211 ("the loss of intangible assets, such as the loss of control of confidential and proprietary information or the loss of reputation and goodwill, can constitute irreparable injury"); *G.W. Henssler & Assocs., Ltd.,* 2017 WL 6996372 ("Loss of confidential and proprietary information is per se irreparable harm"); *Saini,* 434 F.Supp.2d at 919 ("disclosure of confidential information or trade secrets would create irreparable injury to [movant]"). Furthermore, "[u]nder Arizona law, once a protectable interest is established, irreparable injury is presumed to follow if the interest is not protected." *Oakes*, 2014 WL 1632927, at *3 (quoting *Phoenix Orthopaedic Surgeons, Ltd. v. Peairs,* 790 P .2d 752, 757 (Ariz.Ct.App.1989)).

Although it is clear the Hurry Trust suffered harm, the jury concluded that the Hurry Trust suffered no monetary damages as a result of Frankel's breach of the agreement. However, as explained above, once information loses its confidentiality,

there is no amount of money that will make it confidential again. Accordingly, this case presents the exact situation in which the courts have ruled that an injunction is the appropriate remedy.

ii.   **The balance of the hardships weighs in favor of The Hurry Trust.**

Frankel signed the NDA and, in doing so, knew the duties and obligations to which he agreed. Frankel will suffer no hardship should this Court enjoin him from further violations of the agreement and require that he return or destroy all the Hurry Trust's Confidential Information still in his possession. Such an injunction does nothing more than hold him to the obligations he agreed to when he signed the agreement. Conversely, the Hurry Trust will suffer substantial hardship should Frankel continue his flagrant disregard of his contractual duties, including the potential for its Confidential Information to be disclosed or used by others not entitled to the Confidential Information.

iii.   **A permanent injunction in favor of the Hurry Trust serves the public interest.**

"[T]he public interest is served by protecting a company's right to proprietary information, business operations and contractual rights." *See Eaton,* 305 F. Supp. 3d at 1037 (quoting *Compass Bank v. Hartley*, 430 F.Supp.2d 973, 983 (D. Ariz. 2006)); *Lee,* 766 F.Supp. at 1157 ("The public interest is certainly disserved by Defendant's continuing disregard of his contractual commitments and undertakings."). Here, the NDA requires Frankel to keep the Confidential Information confidential, prohibits Frankel from disclosing the Confidential Information to third parties, and forbids

4815-0301-5912, v. 14

Frankel from using the Confidential Information outside of his business relationships with Plaintiffs. Upholding these contractual obligations and requiring Frankel to comply with the terms of the agreements through an injunction serves the public interest.

### E. Conclusion

The Plaintiffs proved through the evidence at trial each of the elements required for entry of a permanent injunction to protect their Confidential Information (which includes Alpine's and Scottsdale's trade secrets).Consequently, the Court should enter a permanent injunction in their favor and against Frankel.

**WHEREFORE**, Plaintiffs respectfully request this Court (1) enter a permanent injunction, as follows:

(a) Finding, as a matter of law, that the following are Alpine's and Scottsdale's trade secrets:

    a.  The top 50 customer list with revenue information;

    b.  The trade blotter;

    c.  Alpine's pricing information;

    d.  Scottsdale's pricing information;

    e.  Alpine's confidential financial statements;

    f.  Alpine's Written Supervisory Procedures; and

(b) Prohibiting Christopher Frankel from using or disclosing any Confidential Information, as that term is defined in the NDA and the Employee NDA;

4815-0301-5912, v. 14

(c) Requiring Christopher Frankel to return in native format and then destroy all Confidential Information, as that term is defined in the NDA and the Employee NDA, still in his possession, custody, or control or in the possession, custody, or control of his attorneys;

(d) Prohibiting Christopher Frankel from using or disclosing any trade secrets identified in paragraph (a);

(e) Requiring Christopher Frankel to destroy any copies of any trade secrets identified in paragraph (a) that are in his possession, custody, or control or in the possession, custody, or control of his attorneys and/or agents;

(f) On or before the 30th day from the entry of this Order, requiring Christopher Frankel to serve on Plaintiffs a written report, under oath, setting forth in detail the steps taken to identify and destroy the Confidential Information and trade secrets still in his possession, custody, or control or in the possession, custody, or control of his attorneys and/or agents;

(g) On or before the 30th day from the entry of this Order, requiring Christopher Frankel to serve on Plaintiffs a written report, under oath, identifying each person to whom he provided any Confidential Information or trade secrets. The written report must also include the following for each person identified:

    a. a description of all Confidential Information or trade secrets disclosed,

    b. the date(s) on which he disclosed any Confidential Information or trade secrets,

24

c.  the manner in which he disclosed the Confidential Information or trade

secrets (i.e. via email, hand delivery, instant message, etc.);

(2) amend the Judgment to reflect entry of the permanent injunction; and

(3) grant such further relief as the Court deems just and proper, including awarding

Plaintiffs' their attorneys' fees and costs.

/s/ *Kenneth G. Turkel*
Kenneth G. Turkel – FBN 867233
E-mail: kturkel@bajocuva.com
Shane B. Vogt – FBN 257620
E-mail: svogt@bajocuva.com
Anthony J. Cuva – FBN 896251
E-mail: acuva@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel: (813) 443-2199
Fax: (813) 443-2193
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 4, 2021, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

/s/ *Kenneth G. Turkel*
Attorney

25