UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE HURRY FAMILY REVOCABLE
TRUST; SCOTTSDALE CAPITAL
ADVISORS CORPORATION;
ALPINE SECURITIES CORPORATION;
and CAYMAN SECURITIES CLEARING
AND TRADING LTD.,

    Plaintiffs,

v.                                               Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

    Defendant.
_____/

**Frankel's Opposition to
Plaintiffs' Motion for Permanent Injunction**

The defendant, Christopher L. Frankel ("**Frankel**"), requests that the Court deny *Plaintiffs' Motion for Entry of a Permanent Injunction and to Amend the Judgment in Conformity Therewith* (Doc. 325) filed by Hurry Family Revocable Trust ("**Hurry Trust**"), Scottsdale Capital Advisors ("**Scottsdale**"), and Alpine Securities Corporation ("**Alpine**"), in which plaintiffs request the Court find six items to be trade secrets, prohibit Frankel from using or disclosing any trade secrets or confidential information, and order Frankel to return all trade secrets and confidential information in his possession.

The request for permanent injunction must be denied because (1) the Financial Industry Regulatory Authority ("FINRA") has exclusive jurisdiction to issue permanent injunctions involving FINRA members; (2) the plaintiffs did not

have the jury determine what information was confidential and / or trade secret; (3) the plaintiffs did not "succeed on the merits" on their breach of contract claims; (4) the plaintiffs did not establish that irreparable harm is likely if the permanent injunction is not granted; and (5) the plaintiffs did not raise as issues for trial, and did not request the Jury to determine, whether Frankel retained any confidential and / or trade secret information, or to whom, if anyone, he disclosed such information.

## I. INTRODUCTION

During the nearly two and a half years from the filing of their lawsuit until trial, the plaintiffs never sought an injunction to protect their alleged "confidential information" and "trade secrets." Nor did the plaintiffs move for an injunction during the month and five days after the Jury returned the Verdict.

On the twenty-eighth day after the Clerk entered the Judgment—the last possible day on which the plaintiffs could move to amend the Judgment—in the final hour before the deadline, the plaintiffs moved to amend the Judgment to include a permanent injunction.

Alpine and Scottsdale seek an injunction that includes a finding by the Court, "as a matter of law," that six items are "trade secrets." But Alpine and Scottsdale did not request the Jury to determine what items were "trade secret." Instead, the plaintiffs asked the Jury to award monetary damages for the plaintiffs' alleged injuries caused by misappropriation of unspecified portions of vast information in the thirteen items which the plaintiffs claimed as their trade

secrets at trial. The Jury found that Alpine and Scottsdale owned a trade secret or secrets, but the Jury did not identify the "trade secret(s)." Frankel may not, therefore, be prohibited from using or compelled to return six items that were never determined to be "trade secrets."

Similarly, the plaintiffs may not ask the Court to enter a permanent injunction prohibiting Frankel from using or disclosing, and requiring him to return, information which the Jury did not determine was "confidential."

The Jury found that that none of the plaintiffs sustained any injury, harm, or damage caused by Frankel's breach of the non-disclosure agreements and misappropriation of unidentified trade secret(s). Now the plaintiffs claim the Court must automatically find that they suffered irreparable harm because the Jury did not award compensatory damages. That is not and cannot be the law, as explained by Judge Posner in the case cited in Part II(C) below.

The plaintiffs' delay and inconsistent actions, during years of litigation and multiple lawsuits, belie their claim of imminent, irreparable harm absent entry of a permanent injunction. Their injunction motion must be denied.

## II.  ARGUMENT

### A. FINRA has exclusive jurisdiction to issue permanent injunctions involving FINRA members under FINRA Rule 13804.

FINRA Rule 13804 gives FINRA exclusive jurisdiction to issue permanent injunctions involving FINRA members. *See* FINRA Rule 13804 (2018); *see also Morgan Stanley Smith Barney, LLC v. Abel*, Case No. 3:18–cv–00141–J–

34MCR, 2018 WL 1725689, at *1 (M.D. Fla. Febr. 4, 2018) (discussing FINRA's exclusive jurisdiction to issue permanent injunctions under FINRA Rule 13804 in disputes involving FINRA members). Specifically, FINRA Rule 13804 allows a FINRA member seeking a permanent injunction to seek a temporary injunction from a court. *Id.* Simultaneously, however, the member must also file with FINRA a statement of claim requesting "permanent injunctive and all other relief with respect to the same dispute." *Id.* If the Court grants temporary injunctive relief, FINRA Rule 13804 requires the members to proceed under an expedited arbitration schedule for a permanent injunction before FINRA within 15 days of the court's issuance of the temporary injunction. *Id.*

As FINRA members, or through direct and indirect ownership of a FINRA member, the plaintiffs are subject to FINRA's procedures for obtaining a permanent injunction against Frankel. Yet, in filing their *Motion for Permanent Injunction*, the plaintiffs have ignored FINRA Rule 13804 and improvidently have asked the Court to enter a permanent injunction against Frankel. But FINRA Rule 13804 gives FINRA sole authority to enter such an injunction. The plaintiffs' failure to seek a temporary injunction from the Court and to file a statement of claim with FINRA bars their request for a permanent injunction.

### B. Plaintiffs have not established success on the merits.

A permanent injunction may only be entered if the movant establishes "actual success on the merits." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) ("The standard for a permanent injunction is essentially the

same as for a preliminary injunction except that the plaintiff must show actual success on the merits instead of a likelihood of success."; explaining that an injunction "must be predicated upon a cause of action, . . . [listing examples] . . ., regarding which a plaintiff must show a likelihood or actuality of success on the merits.").

> **1.  The plaintiffs have not established "success on the merits" because they did not ask the jury to determine what information was "trade secret" and / or "confidential."**

To establish "actual success on the merits," the movant must obtain specific factual findings in its favor regarding the information that is the subject of the requested injunction. *E.g.*, *Warranty Corp., Inc. v. Hans*, Case No. 98-0889, 2000 WL 284261, at *1–3 (S.D. Ala., Mar. 9, 2000).

In *Warranty Corp.*, the plaintiffs moved for a permanent injunction based on the jury's verdict that the defendant breached a confidentiality agreement. *Id.* at *1–2. In denying the motion, the court concluded that the general verdict did not establish that the plaintiffs were successful on the merits with respect to the information that was the subject of the requested injunction:

> The problem with the plaintiff's argument is that the jury returned only a general verdict that the defendant breached the confidentiality agreement. The plaintiffs asserted at trial that the defendant misappropriated and used several dozen different types of confidential business information, and it is impossible to determine from the jury's verdict which of these, or how many, the jury found to have been misappropriated and/or used in violation of the confidentiality agreement.
>
> More particularly, it is impossible to say whether the jury found in favor of the plaintiffs with respect to any of the six categories of information whose use they seek to have enjoined.

*Id.* at *2.

The court in *Warranty Corp.* reasoned that the plaintiffs were not entitled to "a second bite at the apple" by requesting the Court, post-verdict, to make its own fact findings. *See id.* at *2. The plaintiffs should have requested specific findings from the jury, and the plaintiffs' failure to do so precluded the plaintiffs from establishing the "success on the merits" element necessary for permanent injunctive relief:

> The indeterminacy of the jury's verdict therefore precludes the plaintiffs from establishing that they were successful on the merits with respect to the information whose use they seek to have enjoined. The plaintiffs could have avoided this quandary by requesting specific interrogatories to the jury. They did not do so and, as the party bearing the burden of proof, they bear also the resulting risk of a non-specific verdict.

*Id.* at *3. The *Warranty Corp.* court ruled that the plaintiffs could not establish success on the merits with respect to the information that was the subject of the requested injunction because the jury made no specific finding regarding that information:

> To summarize: Because the jury was not required to find for the plaintiffs with respect to the categories of information sought to be enjoined, and because the general verdict furnishes no basis for determining that the jury did so, the plaintiffs have not established that they were successful on the merits with respect to these categories of information.

*Id.* at *3.

Alpine and Scottsdale are requesting for the Court to find, as a matter of law, that each of the six items listed in their *Motion for Permanent Injunction* is a "trade secret":

> WHEREFORE, Plaintiffs respectfully request this Court (1) enter a permanent injunction, as follows:

Page **6** of **20**

> (a) Finding, as a matter of law, that the following are Alpine's and Scottsdale's trade secrets:
> a. The top 50 customer list with revenue information;
> b. The trade blotter;
> c. Alpine's pricing information;
> d. Scottsdale's pricing information;
> e. Alpine's confidential financial statements;
> f. Alpine's Written Supervisory Procedures

Doc. 325 at 23.

In denying cross motions for summary judgment, this Court ruled that the jury must determine as a question of fact whether a particular item is a trade secret. *See* Doc. 139 ("As the Eleventh circuit has noted, whether certain information ultimately constitutes a 'trade secret' is a question of fact . . . . Thus, whether these documents are trade secrets under the respective statutes is a question for the jury." (Internal citations omitted)).

The Jury Instructions and Verdict Form in this case did not require the Jury to determine what information of Alpine and Scottsdale was trade secret. *See* Docs. 301, 302.[1] The Verdict Form instead asked whether "Alpine and/or Scottsdale own valid trade secrets" and whether the Jury found "that Defendant, Mr. Frankel, misappropriated Alpine's and/or Scottsdale's trade secrets." Doc. 302 at 4, ¶¶ 14, 15. The Jury Instructions stated that "Scottsdale and Alpine claim

---

[1] Frankel proposed a verdict form which would have required the jury specifically to determine what information was Confidential and what was trade secret. The plaintiffs insisted upon, and the Court adopted, a verdict which did not require the jury specifically to identify what information was Confidential and what was trade secret. *Compare* Doc 171 – 3 (Frankel's proposed verdict requesting jury to identify Confidential Information and trade secret(s)) at pp. 2, 3 – 7, and 11 - 14 *with* Doc 168 – 2 (Plaintiffs' proposed verdict not requiring jury to identify any Confidential Information or trade secret(s)) at pp. 1 - 7 and Doc 302 (Verdict not requiring jury to identify Confidential Information or trade secret(s)) at pp. 1 – 4.

they own various trade secrets including the financial, business, and economic information contained in" a list of thirteen different items that the plaintiffs listed in the Jury Instructions. Doc. 301 at 16, ¶¶ (a)–(m).

In returning a general verdict finding "that Alpine and/or Scottsdale own valid trade secrets" which Frankel misappropriated, the Jury did not determine what information in **any of the thirteen items** was a trade secret. *See* Doc. 301 at 16, ¶¶ (a)–(m); Doc. 302 at 4, ¶¶ 14. The plaintiffs are now requesting for the Court to find, as a matter of law, that **all of the information in each of the six items** listed in their *Motion for Permanent Injunction* is a "trade secret."

The Jury also did not determine by its verdict what information of Alpine and Scottsdale was confidential and did not determine what Frankel did to misuse the information: failed timely to return, used for personal benefit, or disclosed. Doc. 302 (Verdict) at 2 – 3, ¶¶ 6, 10.

The plaintiffs refused to accept Frankel's proposed verdict form that would have required itemized findings. *Compare* Doc. 171-3 at 2–7, 11–14, *with* Doc. 168-2 at 1–7. Accordingly, the plaintiffs cannot establish "success on the merits" and may not obtain a permanent injunction, just as the plaintiffs in *Warranty Corp.* could not establish success on the merits and could not obtain a permanent injunction. 2000 WL 284261, at *1–3.

The Jury did not determine whether one or both of the Hurry Trust's documents were "confidential." Instead, the Jury determined only that Frankel failed timely to return the Hurry Trust's confidential information.

> **2. The plaintiffs cannot establish "success on the merits" because they lost their breach of contract claims.**

The plaintiffs cannot establish "success on the merits" on their contract claims because the jury returned a verdict for Frankel, and the clerk entered a judgment for Frankel on the plaintiffs' contract claims. *See* Docs. 302, 304. *See, e.g.*, *OneSource Facility Services, Inc. v. Mosbach*, Case No. 2:05-cv-525, 2008 WL 11430039, at *4 (M.D. Fla., Nov. 8, 2008) (plaintiff did not establish success on the merits because the jury rendered verdict for the defendant after finding that the defendant's breach did not cause damage).

> **C. The plaintiffs cannot establish irreparable harm.**
>
> **1. The Jury found that the plaintiffs suffered no injury.**

The plaintiffs concede that they must establish irreparable harm for which legal remedies are inadequate in order to obtain a permanent injunction. Doc. 325 at 12. But the plaintiffs' *Motion for Permanent Injunction* does not cite a single case granting an injunction after the jury returned a verdict finding that a plaintiff had suffered zero actual damages from alleged misappropriation of a trade secret or breach of non-disclosure agreement. Indeed, the Jury's finding of no damages refutes any claim that the plaintiffs have suffered or will suffer irreparable harm. *E.g.*, *OneSource Facility Services, Inc.*, 2008 WL 11430039, at *4.

Without citing any supporting authority, the plaintiffs inexplicably argue in their *Motion for Permanent Injunction* that "the fact that the jury did not find

direct monetary harm exemplifies the fact that Alpine and Scottsdale's [sic] suffered an irreparable injury." Doc. 325 at 15. That is not and cannot be the law. *See Allan Block Corp. v. County Materials Corp.*, 512 F.3d 912, 919 (7th Cir. 2008) (Posner, J.) ("The fact that a jury awards zero damages does not mean that damages could not be calculated and so could not provide an adequate remedy; it could just mean that the plaintiff was not injured.").

In *Allan Block*, Judge Posner explained that "[t]o allow a plaintiff to base a claim for an injunction on an *adverse* jury verdict would be topsy-turvy." *Id.* at 919. Thus, in that case, Judge Posner concluded that "the best interpretation of the jury award of zero damages" was that the plaintiff failed to prove that it sustained damages. *Id.* That determination by the jury was binding on the trial court, which should not have granted injunctive relief. *Id.*

Judge Posner did recognize that in some cases a plaintiff may argue that "his failure to obtain damages was due not to his failure to prove injury but rather the difficulty of quantifying the damages resulting from the injury." *Id.* But that cannot be the case here—the Jury received a specific instruction that the Jury could award nominal damages if the Jury found that the plaintiffs "have established that they have been damaged, but that they have not proven the amount of damages with reasonable certainty." Doc. 301 at 15.[2]

---

2. This instruction further explained that "Nominal damages do not compensate for loss or harm, but are instead awarded to vindicate rights, the infringement of which has not caused provable injury." Doc. 301 at 15.

The Jury found that Frankel's breach of the non-disclosure agreements had not caused *any damage*, not even nominal damage. Doc. 302 at 2, ¶ 2; at 3, ¶ 8; at 4, ¶ 12. Similarly, the Jury found that $0 was the "total amount of any actual damage caused by Mr. Frankel's misappropriation." Doc. 302 at 5, ¶ 16.

The plaintiffs' delay in seeking an injunction also refutes their post-verdict claim of irreparable harm. *See OneSource Facility Services, Inc.*, 2008 WL 11430039, at *6 (finding that "Plaintiff's failure to seek preliminary injunctive relief taken together with its failure to establish proximate cause further support a finding that Defendants have successfully rebutted the presumption[3] of irreparable harm").

In *OneSource*, the plaintiffs did not seek a preliminary injunction before trial, and instead waited until after the jury's verdict to request a permanent injunction. *Id.* at *1–2. The *OneSource* court denied the plaintiffs' request for permanent injunction because the plaintiffs had not established actual success on the merits and they had not sought preliminary injunctive before trial, which refuted their claim of irreparable harm. *Id.* at *5 (citing *Don King Prods., Inc. v. Chavez*, 717 So. 2d 1094, 1095 (Fla. 4th DCA 1998)). *See also Warranty Corp.*, 2000 WL 284261, at *4–5 (plaintiff's failure to seek a preliminary injunction before trial refuted the allegation of irreparable harm and supported denial of a

---

3. That case involved a claim for breach of a restrictive covenant (a non-solicitation agreement) under which section 542.335, Florida Statutes, created a rebuttable presumption of irreparable injury. There is no rebuttable presumption of irreparable injury in this case—plaintiffs must prove irreparable harm.

post-trial motion for a permanent injunction) (citing *High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*, 49 F.3d 1551, 1557 (2d Cir.1995); *Quince Orchard Valley Citizens Association, Inc. v. Hodel*, 872 F.2d 75, 79–80 (4th Cir.1989); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir.1985); *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 826 (5th Cir.1976)); *id.* at *5 n.5 ("as *Citibank* explicitly noted, the plaintiffs' delay does not procedurally bar injunctive relief but rather negates a substantive element necessary for such relief.") (citing *Citibank*, 756 F.2d at 276).

### 2. The plaintiffs' delay and inconsistent actions refute their claim of irreparable harm.

The plaintiffs' prosecution of this lawsuit and their two other, related lawsuits refute their claims of irreparable harm allegedly caused by misuse and misappropriation of confidential information and trade secrets.

According to the plaintiffs' trial presentation, Jim Kelly told John Hurry *before* the plaintiffs sued Frankel on November 21, 2018, that Frankel had Alpine's trade blotter. On February 1, 2019, Frankel returned the plaintiffs' documents with his initial disclosures, including their list of top 50 customers by commissions paid through mid-2018, PX 3 and 31 (duplicates). Doc. 35 – 3 (Frankel's initial disclosures) at 3. The plaintiffs thus knew no later than February 2019 that Frankel at one time had Alpine's trade blotter and its list of top 50 customers, and yet, the plaintiffs did nothing. The plaintiffs knew by June

5, 2019, that Frankel was working with their competitor, Vision Financial Markets, LLC. Doc. 76 – 1 at p. 2.

Despite this knowledge, plaintiffs *never* requested this Court enjoin Frankel to protect their allegedly trade secret and confidential information.

The hollowness of their request for injunctive relief is also exemplified in lawsuits against Frankel's employer, Vision. On September 11, 2019, Alpine and Scottsdale sued Vision, its owner, Howard Rothman, and Randall Jones, a former employee of Alpine and Scottsdale, contending that the three defendants had conspired to steal Alpine's and Scottsdale's trade secret Client Lists through Alpine's ex-clearing arrangement with Vision.  Alpine and Scottsdale claimed as their trade secret "Client Lists" detailed lists containing "clients' trade histories, taxes, trust holdings, salaries, pensions, beneficial owners, and control people" and "available funds, stock activities, current investment holdings / balances, trade conformations, incurred commissions and fees, trade confirmations, investment objectives and experiences, account values, wiring information, money positions, and predefined compliance reports."  Doc 249 - 1 (Alpine's and Scottsdale's complaint) at ¶¶15 and 16; ¶23; ¶¶ 30 – 51.  The top 50 list which Frankel used to work on Alpine's business contained none of the foregoing information.  Strikingly absent from Alpine's and Scottsdale's allegations were any allegations that that Vision had Alpine's list of top 50 customers by commissions paid through mid-2018, or that Vision had Alpine's blotter, and yet,

Alpine and Scottsdale knew long before suing Vision in September 2019 that Frankel was working for Vision and at one time had the customer list and blotter.

Alpine and Scottsdale inexplicably dismissed their lawsuit on November 18, 2019, without seeking a preliminary injunction to protect their allegedly trade secret, customer list misappropriated by Vision, Rothman, and Jones. Doc. 249 – 2 at ¶6.

Alpine and Scottsdale again sued Jones, Vision, and Rothman, and also sued David Jarvis, his law firm, Steven Gribben, his law firm, Atlas Fintech Holdings Corp., John Schiable, Koonce Securities, LLC, and Franklin Scott Koonce in Hillsborough County Circuit Court on November 6, 2020, alleging that Jones, Jarvis, Gribben, and Frankel, former employees or consultants of Alpine and / or Scottsdale, had conspired since "the latter half of 2017 … to sabotage and steal Plaintiffs' OTC business" by misappropriating, among other things, Alpine's and Scottsdale's "Customer Information" containing the same, detailed customer information described in the prior lawsuit. Doc 1 – 3 in case no. 8:20-civ-02831 at ¶¶33, 34, 45, and 86.  Alpine and Scottsdale again made no allegation concerning the top 50 customer list or the anonymous trade blotter.

Alpine and Scottsdale alleged irreparable harm in all fourteen claims and requested a preliminary injunction. Doc 1 – 3 in case no. 8:20-civ-02831 at Count XII, Counts I – XIV, and Prayer for Relief), but after the FINRA member defendants removed the case, Alpine and Scottsdale agreed to FINRA arbitration against the FINRA defendants on February 1, 2021.  Alpine and Scottsdale

further agreed to stay their non-removed claims against the non-FINRA defendants pending FINRA's arbitration decision. Doc 26 in Case no. 8:20-cv-02831.

On March 26, 2021, apparently in no hurry to protect their confidential information and trade secrets, *the Hurry Trust, Alpine, and Scottsdale moved to continue the trial of this case pending completion of the yet-to-be-scheduled, FINRA arbitration!* Doc 246 at p. 1. The Hurry Trust, Alpine, and Scottsdale estimated that the arbitration "should occur within the next 9 to 12 months barring any unforeseen circumstances." Doc 246 at p. 6.

Alpine entered into an "ex-clearing" relationship with Vision at the beginning of 2020, knowing that Frankel worked at Vision and that Frankel at one point had Alpine's list of top 50 clients and its blotter. Doc 316 (Cruz testimony) at p. 49, 22 – 50, 9. In ex-clearing through Vision, Alpine shared with Vision much more information, including customer names, than the information on the anonymous blotter. Doc 316 (Cruz testimony) at p. 50, 10 – 20; Doc 317 (Frankel testimony) at 180:15–181:10. Indeed, competing broker-dealers share more information in trading microcap securities with each other than the information on the anonymous trade blotter. Doc 316 (Cruz testimony) at p. 60, 11 – 17.

Alpine obtained no confidentiality agreement from Vision in clearing trades through Vision. Doc 318 (Frankel testimony) at 86:11–15.

Injunctive relief "can only be awarded to prevent <u>future</u> injuries, not to remedy past harm." *OneSource Facility Servs., Inc. v. Mosbach*, 2008 WL 11430039, at *6. Plaintiffs' years of delay in seeking any injunctive relief in this case, and their inconsistent actions in related litigation and their "ex-clearing" relationship with Vision, refute irreparable harm. *Id.* ("Plaintiff's decision to wait until more than six months after the expiration of the Agreement and after it received an unfavorable jury verdict undermines the conclusion that there is no adequate remedy or that there is continuing irreparable harm.").

### 3. The plaintiffs did not give Frankel notice and opportunity to defend, and the jury did not decide, the fact issues upon which the plaintiffs have requested a permanent injunction.

The plaintiffs did not raise as issues for trial, and did not request jury instructions and verdict questions to determine, whether Frankel retained any of their confidential and / or trade secret information, or to whom, if anyone, he disclosed such information. The plaintiffs' failure to obtain jury determinations on these fact issues bars the plaintiffs' request for a permanent injunction on these issues.

Due process bars the plaintiffs' request for a permanent injunction on these issues because the plaintiffs did not give Frankel notice and fair opportunity to defend their surprise trial contentions that Frankel may not have returned or may not have destroyed all of their documents containing confidential or trade secret information.

The plaintiffs did not list Frankel's alleged retention and / or destruction of the plaintiffs' documents as an issue of fact remaining to be litigated. The plaintiffs did not request the jury to determine whether Frankel retained or destroyed any of the plaintiffs' documents. Doc 165 (Plaintiffs' unilaterally submitted pretrial statement / Concise Statement of Fact Issues Remaining to be Litigated) at pp. 6 - 8; Doc 170 (Replacement joint pretrial statement / Concise Statement of Fact Issues Remaining to be Litigated) at pp. 5 – 12; Doc 302 (Verdict).

Under the Court's Case Management and Scheduling Order, the parties' pretrial statement and the final pretrial conference govern the trial: "At the conclusion of the final pretrial conference, all pleadings are deemed to merge into the Joint Final Pretrial Statement, which will control the course of the trial. Local Rule 3.06(e)." Doc. 29. It is the pretrial statement which puts the parties on notice of the issues to be tried and controls the future course of the lawsuit. *Ins. Co. of N. Am. v. M/V Ocean Lynx*, 901 F.2d 934, 941 (11th Cir. 1990.). "[O]nce a pretrial statement has been filed by the parties, "[a]ll pleadings filed by any party prior to the filing of the pretrial statement shall be deemed to be merged therein, or in any subsequent pretrial order entered by the [c]ourt." *Horowitch v. Diamond Aircraft Indus., Inc.*, 2009 WL 3790415 at \*2 (M.D. Fla. Nov. 9, 2009). The additional affirmative acts sought by the plaintiffs in their *Motion for Permanent Injunction* go beyond the issues raised and relief sought in the pretrial statement.

There is no dispute that Frankel hired a vendor to conduct a comprehensive search of his personal email account to return the plaintiffs' information as part of his initial disclosures. *See* Doc. 139 (summary judgment order); Doc. 35 - 3 (Frankel's initial disclosures) at p. 3. The plaintiffs never requested disclosure or discovery concerning the third party vendor which copied Frankel's email accounts, never protested that Frankel's search protocol to retrieve and return their documents had been inadequate, never requested a forensic examination of Frankel's email accounts, and never complained that Frankel retained any of their documents, inadvertently or otherwise.

On August 7, 2019, Frankel testified at his deposition that he deleted all of the plaintiffs' documents after third party vendor copied his personal email accounts on January 25, 2019. Doc. 116 at 47, 1 – 17. The plaintiffs did not express concern or request verification that Frankel had successfully deleted and returned all of their documents.

In the cross motions for summary judgment, the plaintiffs did not contend or present evidence that Frankel had failed to return their documents—the only issue for trial was whether Frankel *promptly* returned their information. *See* Doc. 139 ("Here, Plaintiffs made their demand that the documents be returned on November 9, 2018. Frankel returned the documents through discovery in early February 2019 – approximately three months later. Given these circumstances, it is unclear what the parties meant by a 'prompt' return of Plaintiffs' documents and whether a three-month lag would be considered "prompt" under the

contract. The parties have presented no evidence on this question and have pointed the Court to no case law clarifying how Arizona courts have interpreted such a contract provision. Thus, there is no evidence before the Court that three months is not 'prompt' within the meaning of the Employee NDA. Such a factual determination is for the jury to make.").

Frankel did not learn until the plaintiffs filed their *Motion for Permanent Injunction* that the plaintiffs would attempt retroactively to use trial testimony to request that the Court make findings as a matter of law that go beyond the Jury's findings in the Verdict. Frankel did not have fair notice and opportunity to defend the plaintiffs' surprise trial contention that Frankel allegedly retained or did not destroy all of the plaintiffs' documents. Nor did Frankel have notice that the plaintiffs would seek injunctive relief beyond that identified in the pretrial statement.

### D.   Conclusion

There is simply no basis to enjoin Frankel to return documents the Jury never identified as trade secret or confidential information. After never pursuing injunctive relief in this case, plaintiffs cannot now claim they face immediate, future irreparable injury after the Jury found Frankel caused them no injury.

WHEREFORE, the defendant, Christopher L. Frankel, requests that the Court deny *Plaintiffs' Motion for Entry of a Permanent Injunction and to Amend the Judgment in Conformity Therewith* (Doc. 325) and grant any relief deemed proper to protect Frankel's interest and rights.

## Certificate of Service

I certify that on June 18, 2021, I caused the foregoing to be filed with CM/ECF, which will send electronic notice to all counsel of record.

*s/ David C. Banker, Esquire*
David C. Banker (Fla. Bar No. 352977)
J. Carter Andersen (Fla. Bar No. 0143626)
Harold D. Holder (Fla. Bar No. 118733)
BUSH ROSS, PA
1801 N. Highland Avenue
Tampa, Florida 33602
Phone: 813-224-9255
Fax:    813-223-9620
Primary: dbanker@bushross.com;
candersen@bushross.com;
hholder@bushross.com
Secondary:  aflowers@bushross.com
ksalter@bushross.com
*Attorneys for Defendant*
