UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE HURRY FAMILY REVOCABLE
TRUST; SCOTTSDALE CAPITAL
ADVISORS CORPORATION;
ALPINE SECURITIES CORPORATION;
and CAYMAN SECURITIES CLEARING
AND TRADING LTD.,

    Plaintiffs,

v.                                                 Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

    Defendant.
_____/

## Frankel's Opposition to Plaintiffs' Motion for Judgment on Withdrawn Counterclaim

The defendant, Christopher L. Frankel ("**Frankel**"), through counsel and under Fed. R. Civ. P. 59(e), opposes the motion (Doc 326) of the plaintiffs, The Hurry Family Revocable Trust ("**Hurry Trust**"), Scottsdale Capital Advisors Corporation ("**Scottsdale**"), and Alpine Securities Corporation ("**Alpine**"), to amend the final judgment (Doc 304) to enter judgment against Frankel on his withdrawn counterclaim for declaratory judgment.

The plaintiffs waived their untimely request for judgment on Frankel's counterclaim by not objecting to Frankel's withdrawal of the counterclaim, not requiring submission of the counterclaim to the jury, and not requesting judgment on the counterclaim at the conclusion of the trial. The plaintiffs may not cure their failures under the guise of a Rule 59(e) motion to "correct" the judgment.

The plaintiffs are not entitled to judgment against Frankel on the withdrawn counterclaim because, as explained in Frankel's renewed motion for judgment as a matter of law, the plaintiffs lost on all their claims including Alpine's and Scottsdale's trade secret misappropriation claims.

The plaintiffs are not entitled to judgment because the jury made no findings refuting the declaration requested in Frankel's counterclaim. The counterclaim requested a declaratory judgment:

> (a)   Declaring Frankel's obligations under the [pre-employment and Employee Non-disclosure] Agreements and identifying the confidential information, if any, that Frankel is prohibited from using or disclosing; [and]
>
> (b)   declaring that Frankel is entitled to compete with plaintiffs and solicit plaintiffs' clients and that such competition and solicitation does not breach the Agreements, does not constitute misappropriation of the plaintiffs' trade secrets or confidential information, does not violate Florida's Unfair and Deceptive Trade Practices Act, and does not constitute unlawful, unfair, or dishonorable competition with the plaintiffs.

Doc 14 (Counterclaim / prayer for relief) at p. 19; Doc 95 (Re-asserted counterclaim / prayer for relief) at p. 27.

On the Hurry Trust's, Alpine's, and Scottsdale's breach of contract claims, the jury may have determined that Frankel breached the Non-disclosure Agreements by failing timely to return unspecified documents containing confidential information and that Frankel's untimely return of the unspecified documents caused no harm or damage. On Alpine's and Scottsdale's trade secret misappropriation claims, the jury may have determined that Frankel acquired

unspecified information which he should have known to be trade secret and that his acquisition caused no harm or damage. The jury could not have determined that Frankel used an unspecified trade secret unjustly to enrich himself because Alpine and Scottsdale presented no evidence showing that Frankel used the unspecified trade secret unjustly to enrich himself after going to work for Vision Financial Markets, LLC in May 2018.

Using the non-specific verdict demanded by the plaintiffs, the jury made no findings, supported by evidence, refuting the declaration requested in Frankel's withdrawn counterclaim.

### The Plaintiffs Did Not Object to Withdrawal of the Counterclaim; Did Not Request Jury Determination of the Counterclaim; and Did Not Demand Judgment on the Counterclaim During Trial

On December 17, 2018, Frankel asserted his declaratory judgment counterclaim under 28 U.S.C. § 2201 against the four plaintiffs in response to their initial complaint. In his counterclaim, Frankel protested that the plaintiffs had refused to tell him what information they considered confidential; that the plaintiffs had ignored Frankel's timely, pre-suit offer to search for and return their documents; and that the plaintiffs were unlawfully attempting through their lawsuit to convert Frankel's pre-employment, Non-disclosure Agreement (upon which all four plaintiffs initially sued) into a non-compete or non-solicitation agreement. Doc 14 (Initial counterclaim) at ¶¶ 5, 6, and 10 at pp. 17 – 18. The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, gave Frankel no claim for

attorney's fees. Any entitlement to fees had to arise under the agreements and statutes on which the plaintiffs based their claims.

The prayer for relief in Frankel's counterclaim requested a judgment declaring Frankel's obligations under the pre-employment, Non-Disclosure Agreement; determining what information of the plaintiffs was confidential; declaring that Frankel was free to compete and to solicit the plaintiffs' clients; declaring that Frankel had not misappropriated any trade secrets; and declaring that Frankel had not violated the Florida Deceptive and Unfair Trade Practices Act ("**FDUTPA**"). Doc 14 (Initial counterclaim) at p. 19.

On January 7, 2019, the plaintiffs answered Frankel's counterclaim, asserting in their first affirmative defense that Frankel's counterclaim was duplicative and unnecessary because adjudication of the plaintiffs' claims would afford the relief sought by Frankel in his counterclaim. The plaintiffs thus alleged in their first affirmative defense:

> The Counterclaim fails to allege an actual justiciable controversy to support a claim for declaratory relief. Defendant merely seeks an advisory opinion about his interpretation of the Non-Disclosure Agreement. Moreover, the Counterclaim is duplicative and unnecessary because the adjudication of Plaintiff's claims will afford the relief supposedly sought through the counterclaim and render it moot.

Doc 23 (Answer and defenses to counterclaim) at p. 2. The plaintiffs requested attorney's fees in answering the counterclaim, but alleged no statutory or contractual entitlement to fees. Doc 23 (Answer and defenses to counterclaim) at p. 3.

On July 16, 2019, Frankel answered the second amended complaint and reasserted his declaratory judgment counterclaim against all plaintiffs. Frankel also asserted in Count II a malicious prosecution counterclaim against Cayman because Cayman had not been able to allege any facts to support its claims and had to withdraw all of its claims from the second amended complaint. Doc 95 (Counterclaim) at pp. 24 – 28. The plaintiffs again asserted as their first affirmative defense that the declaratory judgment counterclaim in Count I was "duplicative and unnecessary because the adjudication of Plaintiffs' claims will afford the relief supposedly sought through the Counterclaim and render it moot." Doc 106 (Answer and defenses to counterclaim) at p. 3.

Neither the plaintiffs nor Frankel needed to take, or took, any discovery concerning the declaratory judgment counterclaim because the counterclaim challenged the plaintiffs' claims, requested identification of their confidential information, and requested a declaration that Frankel was free to compete and solicit clients.[1]

Cayman moved to dismiss the malicious prosecution count in the counterclaim. Doc 105. Frankel consented to dismissal without prejudice, and the

---

[1] The plaintiffs appear to suggest an entitlement to fees following Frankel's withdrawal of the counterclaim. While Rule 41 may "prevent voluntary dismissals which unfairly affect the other side," the plaintiffs fail to show any prejudice or unfair effects from the withdrawal of a counterclaim that they characterized as "duplicative and unnecessary," and on which they took no discovery. *McCants v. Ford Motor Co.*, 781 F.2d 855, 856 (11th Cir. 1986). The case cited by the plaintiffs, *Russell-Brown v. Jerry, II*, 270 F.R.D. 654, 661 (N.D. Fla. 2010), involved a party that had filed three separate lawsuits on the same claims and had shown, in all suits, a "clear history" of "vexatiously delaying this Court's adjudication of the dispositive issues."

Court dismissed the malicious prosecution count against Cayman on August 22, 2018. Doc 112.

On January 15, 2020, Frankel filed his replacement, joint pretrial statement, which was the final version of the pretrial statement, and Frankel filed his proposed jury instructions and verdict form. The replacement pretrial statement described the counterclaim in the concise statement of the action. Frankel's preliminary jury instruction 1 also described the counterclaim, as did his proposed, verdict form which asked the jury to answer three questions determining the counterclaim. Doc 170 (Replacement pretrial statement / concise statement of nature of action) at p. 2; Doc 171 – 1 (Preliminary instruction 1.1) at p. 5; Doc 171 – 3 (Verdict / questions 30 - 32) at p. 15.

Shortly thereafter, Frankel's counsel told plaintiffs' counsel that Frankel withdrew his declaratory judgment counterclaim and would not submit the claim to the jury. Frankel decided that the "adjudication of Plaintiffs' claims will afford [sufficient] relief … [which Frankel] sought through the Counterclaim," as the plaintiffs had alleged in their first affirmative defense. Doc 23 at p. 2; Doc 106 at p. 3. Plaintiffs' counsel did not object and did not request a stipulation or order withdrawing the counterclaim.

Instead, on February 10 and February 18, 2020, the plaintiffs and Frankel *removed* from their jury instructions and verdict forms all instructions and verdict questions regarding the counterclaim. *See* Docs 183 – 1 (Plaintiffs' jury instruction 1) at p. 5; Doc 183 – 2 (Plaintiffs' verdict form) and 183 – 3 (Frankel's verdict form)

filed February 10, 2020; *see also* Doc 187 – 1 (Replacement jury instruction 1) at pp. 4 – 4; Doc 187 – 3 (Replacement verdict form) filed February 18, 2020.

At the pretrial conference before jury selection on April 23, 2021, Frankel's counsel suggested that the Court read to the jury the case description in Instruction 19, Overview of Claims and Elements, because the parties had deleted the description of the counterclaim in Instruction 19. Plaintiffs' counsel stated: "I'm fine with that, Judge. There was – I sort of feel duty-bound to tell the Court that there's a joint statement of the case in the pretrial, as is the norm, it's document 170." Doc 311 – 1 at 20:21–24. Plaintiffs' counsel said he liked the jury instruction description of the case better than the concise statement of the case in the pretrial statement. Doc 311 – 1 at 21:1–3.

The Court stated that it normally read the concise statement of the case in the pretrial statement, but Frankel's counsel explained: "[W]e dropped the countersuit for declaratory judgment …. That's not part of the case, so I would just say that he [Frankel] denies [the plaintiffs'] claims" in describing the case to the jury. Doc 311 – 1 at 21:21–25. "I'd use the jury instruction [description of the case], I agree with Ken, I think that's better …." Doc 311 – 1 at 22:1–2.

Plaintiffs' counsel concluded: "I like what Mr. Banker read … jury instruction 19, without the elements [of the plaintiffs' claims] that come after. If you just read the first paragraph of that [jury instruction 19 as the case description for the jury], that's fine with me." Doc 311 – 1 at 22:6–11. The Court, therefore, read to the jury

the case description in Instruction 19 and did not reference Frankel's withdrawn counterclaim. Doc 311 – 1 at 22:12–22.

Neither side requested, and the Court did not give, any instructions or verdict questions to the jury concerning the withdrawn counterclaim. Doc 301 (jury instructions); Doc 302 (verdict). The plaintiffs did not request entry of judgment against Frankel on the counterclaim before or during trial.

The jury rendered its verdict on April 30, 2021, and the Deputy Clerk entered the final judgment on May 7, 2021, but the plaintiffs did not request entry of judgment against Frankel on the counterclaim, withdrawn in February 2020, until June 4, 2021. Doc 326 (Plaintiffs' motion for entry of amended judgment).

Rule 59(e) "gives a district court the chance 'to rectify its own mistakes ....'" *Banister v. Davis*, 140 S.Ct. 1698, 1703 (2020) (quoting *White v. New Hampshire Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982)). Consistent with this purpose, federal courts limit Rule 59(e) to "reconsider[ing] matters properly encompassed in a decision on the merits" and "will not address new arguments or evidence that the moving party could have raised before the decision issued." *Id.*; *see also Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005) ("Linet however cannot use a Rule 59(e) motion to ... raise argument ... that could have been raised prior to the entry of judgment.").

The plaintiffs did not object to withdrawal of Frankel's counterclaim, did not request a stipulation or order withdrawing the counterclaim, withdrew jury instructions and verdict questions concerning the counterclaim, did not request

jury determination of the counterclaim, and did not request entry of judgment on the counterclaim before entry of final judgment. Plaintiffs cannot now argue entitlement to judgment on a withdrawn counterclaim when they could have but failed to raise those arguments before the Clerk entered the final judgment. Rule 59(e) is not the place to raise new issues. *See id.*

### **The Plaintiffs Lost Their Claims Challenged in Frankel's Counterclaim**

The plaintiffs are not entitled to judgment because they lost or must lose all of their claims. Frankel's withdrawn counterclaim requested a declaratory judgment identifying the plaintiffs' confidential information and declaring that Frankel could compete and solicit clients.

The plaintiffs lost their breach of contract claims because they failed to present any evidence that Frankel's failure timely to return the plaintiffs' documents had caused any harm or damage. *See, e.g.*, *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004) (plaintiffs have the "burden of establishing damages as an essential element of their breach-of-contract claim"). Accordingly, the jury rejected the plaintiffs' breach of contract claims, finding that Frankel's failure to return unspecified, confidential documents had caused "NO" damage, not even nominal damage, to the Hurry Trust, Alpine, or Scottsdale. Doc 302 (Verdict / answers to questions 4, 8, and 12) at pp. 2 – 4; Doc 301 (Jury instruction 14 / direct and nominal damages) at p. 15.

Despite the jury's finding of no damage, the plaintiffs suggest they can still obtain judgment in their favor on the declaratory judgment counterclaim. But the

case they cite, *Collins v. Foster*, No. 07-20526-CIV, 2009 WL 5125276 (S.D. Fla. Dec. 28, 2009), addressed a prisoner's § 1983 suit for violation of his Eighth Amendment rights. Section 1983 authorizes not only damage claims, but claims for declaratory and injunctive relief as well—even in the absence of damage. *See* 42 U.S.C. § 1983; *Collins*, 2009 WL 5125276, at *1. A breach of contract, by contrast, requires proof of damages as an essential element. *Chartone*, 83 P.3d at 1111.

Alpine and Scottsdale also must lose their claims for misappropriation of trade secrets because, as explained in Frankel's renewed motion for judgment as a matter of law, Doc 328, they presented no evidence of a trade secret and no evidence of actual or unjust enrichment damages.

*First*, claims for misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq. ("DTSA") and Florida Uniform Trade Secrets Act, Fla. Stat. 688.001, et seq. ("FUTSA") require proof of a "trade secret." *See* 18 U.S.C. § 1836(b)(1), (3); Fla. Stat. §§ 688.002(2), 688.004. Alpine and Scottsdale have no trade secrets.

PX 3 and 31 (duplicates), Alpine's list of top 50 clients based on commissions paid during the first half of 2018, was not a trade secret. Doc 316 at 20:22–24. The customer names were not confidential because the customers were well known in the microcap business; only the commission amounts were confidential. Doc 316 at 21:18–23. Alpine did not develop the list by market analysis or research; the list simply showed 50 of Alpine's clients retrieved by commissions paid. Doc 317 at

100:17–23. The list did not include any customer analysis, trading preferences, trading history, or even customer contacts. PX 3 and 31.

D. Michael Cruz, General Counsel for Alpine and Scottsdale, explained that the names of the customers on the list were not confidential, but were well known in the microcap securities business. Doc 315 (Cruz testimony) at 78:11–79:4 (Alpine's customers are institutions which fund microcap businesses in exchange). Alpine's customers were "constantly trying to push business through to us [Alpine and Scottsdale], and, you know, it's our job as gatekeeper to make sure that … only quality securities … are allowed to settle and put into the marketplace." Doc 315 (Cruz testimony) at 132:17–134:8.

Cruz explained that Alpine primarily sold stock for institutional customers. Doc 315 (Cruz testimony) at 137:7–12.

Frankel corroborated that finding institutional microcap customers "is pretty doggone easy …. It's just a matter of whether you want to deal with them or not." Doc 316 (Frankel's testimony) at 254:24–255:9. Institutional microcap investors seek out accounts with *all* broker-dealers who will sell the investors' stock. Doc 317 (Frankel's testimony) at 46:12–18.

Alpine and Scottsdale offered no evidence to refute Frankel's testimony that he already knew at least half of the clients on Alpine's client list from working with the clients before joining Alpine. Doc 317 (Frankel's testimony) at 98:20–100:5; Doc 317 (Frankel's testimony) at 99:11–100:2.

Alpine and Scottsdale offered no evidence to refute Frankel's testimony that he had worked with John Fife's companies including Chicago Venture since 2008 when Frankel was CEO of COR Clearing (Doc 317 (Frankel's testimony) at 45:22–46:11); that Fife's company, Chicago Venture, used a website to publish its microcap investment business (Doc 317 (Frankel's testimony) at 45:5–9); and that Chicago Venture was a well-known player in the microcap investment business (Doc 318 (Frankel's testimony) at 57:16–58:9).

JX 5, the anonymous blotter, was not a trade secret. The anonymous blotter showed only public information: unidentified broker-dealer(s) had sold shares of identified securities at stated prices per share on August 27 and August 28, 2018.

The blotter did not show the broker-dealer(s) which sold the securities, did not show the broker-dealer(s) which bought the securities, did not show the customers of either the selling or buying broker-dealer(s), and did not show any of the anonymous broker-dealer(s)' charges. It showed no commissions and no ticket fees, which is why John Hurry had to assume commission rates ranging from 3% to 5 % and ticket fees ranging from $15 to $75 on the 607 trades in his "analysis" of the blotter.  JX 5; Doc 318 (Hurry testimony) at 164:18–167:16; *see* demonstrative aid used by John Hurry during his testimony attached as **Exhibit "A."**

Cruz acknowledged that it is "impossible" to identify the broker-dealer or the customers from the anonymous blotter.  Doc 316 (Cruz testimony) at 45:17–13.

Alpine and Scottsdale offered no evidence to refute Frankel's testimony that he had (and still has) "absolutely no idea" who the customers are on the anonymous blotter (Doc 317 (Frankel's testimony) at 186:12–25), and that he did not know that the anonymous blotter showed 2 days of trades cleared by Alpine in August 2018.  Doc 316 at 42:11–13; JX 5.

Alpine offered no evidence that any portion of its Written Supervisory Procedures Manual was a trade secret.  Alpine bought the 2015 edition of the WSP Manual published by Wolters Kluwer Financial Services, and Alpine used Wolters Kluwer's "Broker Dealer Wizard" to fill in Alpine-specific information.  PX 1 / WSP Manual at p. 504 (Frankel_002237).  Wolters Kluwer published and sold its Broker Dealer Wizard and WSP Manual to enable any broker-dealer "to create a compliance manual addressing SEC, FINRA, NYSE, and MSRB rules and regulations."  PX 1 / WSP Manual at p. 504 (Frankel_002237).  Frankel "finalized" the WSP Manual for Alpine.  Doc 315 (Cruz testimony) at 168:11–16.

Alpine's and Scottsdale's "pricing," their commissions and fees, were not trade secrets.  Alpine and Scottsdale published their commissions and fees on their websites.  Doc 316 (Cruz testimony) at 52:17–19; Doc 317 (Frankel testimony) at 43:14–44:16.  Alpine and Scottsdale published most of the information on their financial statements.  Doc 316 (Cruz testimony) at 52:20–54:20.

Without legally sufficient evidentiary support for any "trade secret," Frankel must prevail on the misappropriation claims as a matter of law, as explained in his renewed motion for judgment as a matter of law.  Doc 328.

*Second*, claims for misappropriation under DTSA and FUTSA require proof of damages, either actual loss or unjust enrichment.[2] *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020) ("To succeed on a claim for misappropriation of trade secrets under the DTSA, a plaintiff must prove: . . . (3) that the misappropriation caused or threatened damage to the plaintiff."); *Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1335–39 (S.D. Fla. 2006) ("AlphaMed's prosecution of its misappropriation of trade secrets claim was fatally flawed because it provided no evidence by which a reasonable jury could establish actual damage to AlphaMed, unjust enrichment to Arriva and Spinelli, or a reasonable royalty for the value of AlphaMed's trade secret documents."), *aff'd*, 294 F. App'x 501 (11th Cir. 2008).

So when a plaintiff failed to present evidence of actual loss or unjust enrichment to support its claims for misappropriation of trade secrets, the district court vacated a jury's verdict of liability and nominal damages and entered judgment for the defendant. *Alphamed Pharm.*, 432 F. Supp. 2d at 1334–35, 1358. The Eleventh Circuit affirmed "the judgment of the district court based on its well-reasoned opinion." 294 F. App'x at 501.

Here, Alpine and Scottsdale presented no evidence of actual damage or unjust enrichment, as explained in Frankel's renewed motion for judgment as a matter of law. Doc 328.

---

[2] While an injunction can also suffice, the plaintiffs here cannot obtain injunctive relief, as explained in Frankel's opposition to the plaintiffs' motion for permanent injunction. Doc 330.

As for actual loss, the jury determined that any trade secret misappropriation by Frankel had caused "$0" of "actual damage" to Alpine and "$0" of "actual damage" to Scottsdale. Doc 302 (Verdict) at p. 5.

While the jury found $932,000 in unjust enrichment, its award lacked a legally sufficient basis because Alpine and Scottsdale presented no evidence that Frankel used their alleged trade secrets unjustly to enrich himself and no evidence of the amount of alleged unjust enrichment. *See* Doc 328 (Renewed Motion for Judgment as a Matter of Law) at pp. 1 – 24.

DTSA and FUTSA both require any unjust enrichment to be "caused by the misappropriation" of the trade secret. 18 U.S.C. § 1836(b)(3)(B)(i)(II); Fla. Stat. § 688.004(1). Alpine and Scottsdale offered no evidence explaining how Frankel used, or even could have used, their alleged trade secrets unjustly to enrich himself while working for Vision. Alpine and Scottsdale offered no evidence showing the amount of unjust enrichment "caused" by unproven use of unidentified, non-existent, trade secret(s) at Vision.

Alpine and Scottsdale offered no evidence to refute Frankel's testimony that he used Alpine's customer list (PX 31) solely for the benefit of Alpine and Scottsdale. Doc 317 (Frankel's testimony) at 98:20–100:5.

Alpine and Scottsdale offered no evidence that Chicago Venture, Iliad Research, or St. George made any of the trades on the anonymous blotter, or that Vision traded any of the securities on the blotter either before or after Frankel began working for Vision in May 2019. Doc 318 (Hurry testimony) at 184:16–19.

Because Alpine and Scottsdale presented no evidence that Chicago Venture, Iliad Research, and St. George made any of the trades on the anonymous blotter, and no evidence that Vision traded any of the securities on the anonymous blotter, Alpine and Scottsdale failed even to offer an explanation for how Frankel could have used the anonymous blotter unjustly to enrich himself at Vision.

Contrary to the requirement in the Court's orders, Alpine and Scottsdale offered no evidence that Chicago Venture, Iliad Research, or St. George "switched" any accounts from Alpine to Vision. Docs 288 and 290.

Alpine and Scottsdale offered no evidence that Frankel used or even how he could have used the WSP Manual unjustly to enrich himself at Vision.

Alpine and Scottsdale offered no evidence that Frankel used knowledge of any "secret pricing" unjustly to enrich himself at Vision. Frankel gave unrebutted testimony that he refused to negotiate Vision's charges with Fife's representative, Chris Stalcup, in opening accounts for Fife's companies on May 22 and 23, 2019. Doc 316 at 121:10–17; PX 58.

Alpine and Scottsdale offered no evidence that Frankel used, and no explanation how he could have used, Alpine's 2016 financial statement, Ken Ralston's employment agreement, or New World Fortuity Fund's loan term sheet unjustly to enrich himself at Vision.

Without any evidence that Frankel used an alleged trade secret, the jury had no legally sufficient basis to find unjust enrichment "caused by" misappropriation. 18 U.S.C. § 1836(b)(3)(B)(i)(II); Fla. Stat. § 688.004(1); *see Walmart Inc. v. Cuker*

*Interactive, LLC*, 949 F.3d 1101, 1110–11 (8th Cir. 2020) (affirming reduction of verdict awarding damages for misappropriation where counterclaim plaintiff failed to establish proximate cause);[3] *cf. Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 332 (Fla. 5th DCA 2007) (unjust enrichment damages are limited to the actual benefit to the defendant).

In short, Alpine and Scottsdale utterly failed to prove that they had any trade secret, that they suffered any actual damage, or that Frankel used any trade secret unjustly to enrich himself.

## Conclusion

Accordingly, the plaintiffs are not entitled to final judgment in their favor on Frankel's withdrawn counterclaim and are not entitled to an award of their attorney's fees spent on the counterclaim. And as explained in Frankel's renewed motion for judgment as a matter of law, judgment must be entered against the plaintiffs on the trade secret misappropriation claims, just as judgment has been entered against all plaintiffs on their breach of contract claims. Doc 328. The plaintiffs' motion for entry of an amended judgment (Doc 326) should be denied.

---

[3] *Walmart* considered a substantially similar Arkansas statute that provided for an award of unjust enrichment "caused by misappropriation." *See* Ark. Code Ann. § 4-75-606. There, the jury instructions for misappropriation included a "proximate cause" requirement, 949 F.3d at 1110, just as the jury instructions here provided any unjust enrichment must be "a result of [the] misappropriation." Doc 301.

## Certificate of Service

I certify that on June 25th, 2021, I caused the foregoing motion to amend judgment to be filed with CM/ECF, which will send electronic notice to all counsel of record.

*s/ David C. Banker, Esquire*
David C. Banker (Fla. Bar No. 352977)
J. Carter Andersen (Fla. Bar No. 0143626)
Harold D. Holder (Fla. Bar No. 118733)
BUSH ROSS, PA
1801 N. Highland Avenue
Tampa, Florida 33602
Phone: 813-224-9255
Fax:    813-223-9620
Primary: dbanker@bushross.com;
candersen@bushross.com;
hholder@bushross.com
Secondary: aflowers@bushross.com
ksalter@bushross.com
*Attorneys for Defendant*
