UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE HURRY FAMILY REVOCABLE
TRUST; SCOTTSDALE CAPITAL
ADVISORS CORPORATION;
ALPINE SECURITIES CORPORATION;
and CAYMAN SECURITIES CLEARING
AND TRADING LTD.,

    Plaintiffs,

v.                                                  Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

    Defendant.
_____/

### Frankel's Motion To Stay Execution and Discovery in Aid of Execution on Judgment and To Approve Security

The defendant, Christopher L. Frankel ("**Frankel**"), under Fed. R. Civ. P. 62(b) and 67(a), requests the Court to stay execution on the judgment of the plaintiffs, Alpine Security Corporation ("**Alpine**") and Scottsdale Capital Advisors Corporation ("**Scottsdale**"), including discovery in aid of execution, through determination of the parties' post-trial motions, and to approve security for the stay.

On May 7, 2021, the Deputy Clerk entered a judgment for $932,000 for Alpine and Scottsdale, on their claims for trade secret misappropriation against Frankel, based on the jury's verdict that Frankel's misappropriation of unspecified trade secrets by unspecified means had caused "$0" of "actual damage" to Alpine and Scottsdale, but that Frankel had been "unjustly enriched as a legal result of" of his unspecified misappropriation in the amount of $932,000.  Doc 304 (Judgment) at p. 2; Doc 302

1

(Verdict) at questions 14 – 17 on pp. 4 – 5.

The jury found that the plaintiffs had sustained no damage on their breach of contract claims, not even unquantifiable damage, and declined to award even nominal damages on the breach of contract claims. Doc 302 (Verdict) at questions 4, 8, and 12 on pp. 2 – 4. The Deputy Clerk, therefore, entered judgment against all three plaintiffs, The Hurry Revocable Trust, Alpine, and Scottsdale, on their breach of contract claims. Doc 304 (Judgment) at pp. 1 – 2.

Between May 21 and July 18, 2021, the plaintiffs and Frankel filed proposed bills of costs, requests for attorneys' fees, and other post-trial motions and briefs under Fed. R. Civ. P. 50, 54, 59, and 65, disposition of which could significantly alter the judgment. *See* Frankel's bill of costs and motion for fees and costs under Rule 54 (Docs 308 and 309) and plaintiffs' opposition (Doc 327); plaintiffs' bill of costs, motion for fees and costs under Rule 54, and amended bill of costs (Docs 310, 311, and 323) and Frankel's opposition (Doc 324); plaintiffs' motion (and reply) for injunction under Rules 59 and 65 (Docs 325 and 340) and Frankel's opposition (Doc 330); plaintiffs' motion to amend judgment under Rule 59 (Doc 326) and Frankel's opposition (Doc 334); Frankel's renewed motion (and reply) for judgment as a matter of law and / or new trial under Rules 50 and 59 (Docs 328 and 343) and Alpine's and Scottsdale's opposition (Doc 332); and Frankel's motion to amend judgment under Rule 59 (Doc 329) and plaintiffs' opposition (Doc 333); *see also* Frankel's opposition to plaintiffs' motion to strike (Doc 342). In his renewed motion for judgment as a matter of law (and reply), Frankel requested entry of judgment against Alpine and Scottsdale on their

misappropriation claims because the evidence did not support their claims.  Docs 328 and 343.

On July 19, 2021, Alpine and Scottsdale served on Frankel discovery in aid of execution on their misappropriation judgment.  *See* interrogatories attached as **Exhibit "A"** and request to produce attached as **Exhibit "B"**.  Frankel has filed this motion and memorandum to stay execution, including Alpine's and Scottsdale's discovery in aid of execution.

Frankel may obtain a stay of execution, including a stay of discovery in aid of execution, by providing security approved by the Court under Fed. R. Civ. P. 62(b). *Fehlhaber v. Fehlaber*, 664 F. 2d 260, 262–63 (11th Cir. 1981) (Stay of execution stays discovery in aid of execution).  Frankel requests the Court: (1) to require security of no more than $330,000 cash, to be deposited with the Court under Fed. R. Civ. P. 67(a); (2) to stay execution upon deposit of the cash; (3) to reassess the stay and the amount of security upon disposition of the parties' post-trial motions; and (4) to allow Frankel to withdraw the cash and forfeit the stay, or to provide any additional security required to extend the stay, if he wishes to do so, upon disposition of the parties' post-trial motions.

Frankel's proposed cash security, no more than $330,000, is 125% of $264,000, the compensation which Vision Financial Markets, LLC paid Frankel for 2019.  Doc 318 (Frankel) at 17:2—8.  Vision's payment of $264,000 to Frankel was the only evidence of any compensation received by Frankel (Doc 318 (Frankel) at 21:22—23:3), and $264,000 is, therefore, the maximum measure of any unjust enrichment damages

which the jury could have awarded, if the evidence had shown that Frankel had used Alpine's and Scottsdale's trade secret(s) unjustly to enrich himself. *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 332 (Fla. 5th DCA 2007) (unjust enrichment limited to benefit received by the defendant). As the former Fifth Circuit explained, "the primary concern in most cases is to measure the value *to the defendant* of what he actually obtained from the plaintiff …." *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 539 (5th Cir. 1974) (italics added).

No more than $330,000 cash security should be required, pending disposition of the post-trial motions, because Alpine's and Scottsdale's misappropriation judgment cannot survive Frankel's post-trial motions. As explained in Frankel's renewed motion for judgment as a matter of law and / or for new trial under Fed. R. Civ. P. 50(b) and 59(a) (Doc 328) and Frankel's reply (Doc 343), the jury did not have "a legally sufficient evidentiary basis" to find that Alpine and Scottsdale had any trade secret(s) or that Frankel had used any trade secret(s) unjustly to enrich himself by $932,000, $264,000, or any other amount.

Also as explained in Frankel's renewed motion for judgment as a matter of law and reply (Docs 328 and 343), Alpine and Scottsdale deprived Frankel of a full and fair opportunity to refute Alpine's and Scottsdale's unjust enrichment damages by ambushing Frankel at trial with undisclosed, damage calculations, and by inducing the Court erroneously to exclude the testimony of John Fife and David Jarvis, either of whom would have refuted Alpine's and Scottsdale's misappropriation claims and unsupported, unjust enrichment damages. Frankel has addressed in this motion and

4

memorandum the absence of evidence to support Alpine's and Scottsdale's misappropriation judgment because the sustainable amount of the judgment, if any, should determine the amount of security for the requested stay.

Alpine and Scottsdale had no trade secrets and failed to prove that Frankel used any trade secrets unjustly to enrich himself in any amount.

The anonymous blotter (JX 5) was not a trade secret because the blotter did not identify the selling, buying, or clearing brokers; did not identify any customers; and did not state any charges, fees, or commissions for the anonymous trades. Instead, the blotter provided only public information: that unknown brokers had traded the securities on the blotter for unknown customers at publicly reported prices on August 27 and 28, 2018. Doc 316 (Cruz) at 45:2—46:5. Alpine's and Scottsdale's General Counsel, D. Michael Cruz, acknowledged it is "impossible" to determine from the blotter the brokers or customers who made the trades on the blotter. Doc 316 (Cruz) at 45:21—23. Frankel gave unrefuted testimony that he had (and still has) "absolutely no idea" who the customers are on the anonymous blotter. Doc 317 (Frankel) at 186:12—25. Cruz testified that the anonymous blotter does not even provide the information which competing brokers share with each other in executing trades with each other. Doc 316 (Cruz) at 50:16—20.

Frankel denied knowing that the blotter listed two days of Alpine's trades (Doc 316 at 122:8—10), but even if he had known that the blotter was Alpine's, Alpine and Scottsdale offered no evidence that Frankel used, and no explanation for how he could have used, the blotter unjustly to enrich himself at Vision beginning in May 2019,

almost nine months after the trades on anonymous blotter. Alpine and Scottsdale offered no evidence that John Fife's companies, Chicago Venture Partners, L.P., Iliad Research and Trading, L.P., or St. George Investments LLC, made any of the trades on the anonymous blotter. Alpine and Scottsdale offered no evidence that Vision ever traded in any of the securities on the blotter, either before or after May 2019.

Alpine and Scottsdale offered no evidence that Frankel used the blotter in opening Vision accounts for Fife's companies. The uncontroverted evidence showed that *Fife's companies solicited Frankel to open accounts with Vision in May 2019.* Doc 317 (Frankel) at 130:23–133:7; PX 58.

Alpine and Scottsdale offered no explanation for how Frankel could have used the blotter to undercut any "secret" pricing which Alpine and Scottsdale may have given Fife's companies. The blotter provided no commissions, fees, or other charges for the unknown customers who made the trades on the blotter, so John Hurry *assumed ranges of commissions and ticket fees* in his specious "analysis" of the blotter. Doc 318 (Hurry) at 164:18—167:16 (testifying about JX 5 and Hurry's blotter "analysis," Doc 343-1). Hurry's "analysis" proved nothing!

The names on the customer list (PX 7 and duplicate 31), specifically the names of Fife's companies, were not trade secret. Frankel gave uncontroverted testimony that he had known of John Fife and had worked with his companies since 2008; that Fife, like other institutional microcap investors, opened accounts at as many brokerage firms as possible; that Fife advertised his microcap investment business by website; that Fife and other institutional, microcap investors were easily identified from public sources;

6

that Frankel already knew at least half of the clients on the customer list before joining Alpine; that the customers on the list are "pretty well-known if you're in the [microcap] space"; that Chicago Venture is a well-known and "towards the top of the people that are regularly engaged in [microcap] financings"; that finding institutional microcap investors like Fife's businesses "is pretty doggone easy …. It's just a matter of whether you want to deal with them or not"; that Alpine had been "turning away business every day" in the fall of 2018 because Alpine had lost its "ex-clearing" relationships, had to clear through the Depository Trust Company, and had struggled to comply with DTC's capital requirements; that Chicago Venture had tried unsuccessfully to open an account with Vision in January 2019; and that Fife's businesses, through Chris Stalcup, solicited Frankel to open Vision accounts Fife's companies in May 2019.  Doc 317 (Frankel) at 45:22–46:11; 46:12–48:8; 45:5–9; 99:22–100:2; 100:17–23; Doc 318 (Frankel) at 57:16–58:9; Doc 316 (Frankel) at 254:24–255:9; Doc 318 (Frankel) at 226:20–227:11; Doc 318 (Frankel) at p. 56:22–57:12; Doc 317 (Frankel) at 130:23–133:7; PX 58.

Alpine did not develop the customer list by market analysis or research; the list simply showed 50 of Alpine's clients retrieved by commissions paid.  Doc 317 (Frankel) at 100:17–23.  Frankel gave uncontroverted testimony that he used the customer list (PX 31) solely for the benefit of Alpine and Scottsdale.  Doc 317 (Frankel) at 98:20–23.

Alpine, Scottsdale, and Frankel agreed that public information, and information learned from other sources before Frankel joined Alpine, was not

confidential or trade secret.  Employee Nondisclosure Agreement (JX 2) at ¶2; Doc 315 (Cruz) at 173:11–24; 174:18–175:1.  And, of course, public information, and information lawfully learned from other sources, is not trade secret information protected under the Florida and Federal Trade Secret Acts.  18 U.S.C. § 1839(3) and Fla. Stat. § 688.002(4) (trade secret must be "secret," "not generally known," and not "readily ascertainable through proper means").

Alpine and Scottsdale offered no evidence that Frankel used (or needed) the customer list to accept Fife's companies' solicitation to open Vision accounts in May 2019.

Alpine's and Scottsdale's pricing was not trade secret.  Alpine and Scottsdale published their pricing on their websites.  Doc 316 (Cruz) at 52:17–19; Doc 317 (Frankel) at 28:11–30:5; DX 140; 43:14–44:16. Chris Stalcup of Chicago Venture approached Frankel about opening an account with Vision in May 2019 and tried to get Frankel to reduce Vision's commission rate from 3.5% to 3%, but Frankel refused.  Doc 317 (Frankel) at 130:16–133:7; PX 58; 220:10–18.  Frankel gave uncontroverted testimony that he refused to negotiate Vision's charges with Stalcup or any other another customer.  Doc 317 (Frankel) at 220:10—18.

**Frankel gave uncontroverted testimony that he used no confidential information of Alpine or Scottsdale in opening an account for Chicago Venture or in refusing to negotiate Vision's fees with Chicago Venture.  Doc 317 (Frankel) at 136:1–10.**  Alpine and Scottsdale offered no evidence what Alpine and Scottsdale charged Fife's companies or what Vision charged Fife's companies.

Alpine and Scottsdale offered no evidence why Fife's companies opened accounts with Vision in May 2019. Alpine and Scottsdale offered no evidence that they lost any of Fife's business to Vision either before or after May 2019, despite Judge Covington's orders requiring Alpine and Scottsdale to offer evidence that customers switched accounts, from Alpine or Scottsdale to Vision, to prove damages. Docs 288 and 290.

Alpine and Scottsdale offered no evidence that Frankel knew of or used any alleged "secret" pricing to undercut Alpine and Scottsdale in accepting Fife's solicitation to open Vision accounts in May 2019. Certainly Stalcup could tell Frankel what Alpine and Scottsdale charged Fife's companies. Alpine and Scottsdale offered no evidence that any of the pricing discussed in the email exchanges between Frankel and Stalcup (PX 58) was secret.

Alpine and Scottsdale claimed that they sometimes gave unpublished, discounted pricing to good customers, but offered no evidence that Fife's companies were good customers who received unpublished, discounted pricing. Doc 316 (Cruz) at 73:1—74:6. Alpine and Scottsdale offered no evidence what discounted pricing they gave good customers.

Alpine and Scottsdale offered no evidence that Frankel used or needed, and no explanation for how he could have used, any of Alpine's and Scottsdale's other, alleged trade secrets in accepting Fife's companies' solicitation to open Vision accounts in May 2019. Alpine and Scottsdale, thus, offered no evidence that Frankel used, and no explanation for how he could have used Alpine's Written Supervisory Procedures

9

Manual (PX 1 at p. 204 / Frankel_002237); New World Fortuity Fund's non-exclusive, loan term sheet (PX 3); Ken Ralston's draft employment agreement (PX 8); Alpine's 2016 audit (PX 1 at p. / Frankel_001582—001608); the account summary for 2017 (PX 1 at Frankel_001610); or Alpine's bylaws (PX 2 at Frankel_001541–54); in accepting Fife's companies' solicitation to open Vision accounts in May 2019.

**Frankel gave uncontroverted testimony that he did not use any confidential information to disadvantage Alpine or Scottsdale (Doc 317 (Frankel) at 49:21–24; Doc 318 (Frankel) at 230:24–231:5), and that he did not use any confidential information in dealing with any client who had done business with Alpine or Scottsdale.** Doc 317 (Frankel) at 136:1–10; Doc (Frankel) 318 59:7–74:15; 80:17–20.

Alpine and Scottsdale thus failed to prove that they had trade secret(s) and that Frankel *used* any trade secrets unjustly to enrich himself. Without evidence that Frankel used trade secrets unjustly to enrich himself, the jury had no evidentiary basis for awarding any unjust enrichment damages. 18 U.S.C. § 1836(b)(1); Fla. Stat. § 688.002(2); *Univ. Computing*, 504 F.2d at 539 ("The defendant must have actually put the trade secret to some commercial use."); 18 U.S.C. § 1836(b)(3)(B) (authorizing damages for unjust enrichment "caused by" misappropriation); Fla. Stat. § 688.004(1) (same). Frankel denied using any alleged trade secrets, and the jury could only speculate that he did. *See, e.g.*, *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982) ("[A]n inference is not reasonable if it is 'only a guess or a possibility,' for such an inference is not based on the evidence but is pure conjecture and

speculation.").

Alpine and Scottsdale also had to prove, but failed to prove, the amount of unjust enrichment "resulting from" his alleged trade secret use. *Am. Safety Ins. Serv.*, 959 So. 2d at 332 (unjust enrichment is limited to benefit received by the defendant). Alpine and Scottsdale argued that **the jury should award Frankel's *estimate of commissions paid by Fife's companies to Vision* ($200,000 per month x 50% margin, from July 9, 2019 through April 30, 2021) *as Alpine's and Scottsdale's direct damages of $931,935.48*.** Alpine and Scottsdale argued that the jury should award **three years of Frankel's 2019 Vision compensation, $264,000, for unjust enrichment damages of $792,000**, with no evidence of Frankel's compensation for 2020 and 2021, and no evidence of the extent to which commissions from Fife's companies paid Frankel's 2019 compensation. The jury thus awarded a patently incorrect amount, Vision's estimated commission revenue, for unjust enrichment damages.  Doc 319 (Plaintiffs' closing argument) at 57:18—66:11; Doc 343-2 (Plaintiffs' closing argument demonstrative aid – direct and unjust enrichment damages).

Fed. R. Civ. P. 62(b) stays execution against a judgment debtor who provides security approved by the Court.  "At any time after judgment is entered, a party may obtain a stay by providing bond or other security.  The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security."  Fed. R. Civ. P. 62(b).

The Middle District has typically set the amount of security at 125 percent of the

judgment. In *United States ex rel. Yates v. Pinellas Hematology & Oncology, P.A.*, No. 8:16-CV-799-T-02CPT, 2020 WL 674155, at *1 (M.D. Fla. Feb. 11, 2020), Judge Jung explained: "The Middle District's local rules, unlike some other districts' [rules], give no suggested formula for a supersedeas bond …. Judges in the Middle District, however, have exercised discretion to set the bond at 125 percent of the judgment to cover, among other items, the delay damages and post-judgment interest …." (citations omitted).

Fed. R. Civ. P. 67(a) authorizes Frankel to provide security by depositing cash with the Court.

WHEREFORE, Frankel requests the Court (1) to require security of no more than $330,000 cash, to be deposited with the Court under Fed. R. Civ. P. 67(a); (2) to stay execution upon deposit of the cash; (3) to reassess the stay and the amount of security upon disposition of the parties' post-trial motions; and (4) to allow Frankel to withdraw the cash and forfeit the stay, or to provide any additional security required to extend the stay, if he wishes to do so, upon disposition of the post-trial motions.

### Certificate of Service and Compliance with Local Rule 3.01(g)

I certify that on August 6, 2021, I caused the foregoing motion to be filed with CM/ECF, which will send electronic notice to all counsel of record. I further certify that I conferred by telephone with counsel for the plaintiffs, and that the plaintiffs do not agree to the relief requested in this motion.

*s/ David C. Banker, Esquire*
David C. Banker (Fla. Bar No. 352977)
J. Carter Andersen (Fla. Bar No. 0143626)
Harold D. Holder (Fla. Bar No. 118733)
BUSH ROSS, PA
1801 N. Highland Avenue
Tampa, Florida 33602
 Attorneys for Frankel
