UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE HURRY FAMILY REVOCABLE
TRUST; SCOTTSDALE CAPITAL
ADVISORS CORPORATION;
ALPINE SECURITIES CORPORATION;
and CAYMAN SECURITIES CLEARING
AND TRADING LTD.,

    Plaintiffs,

v.                                                      Case No. 8:18-cv-02869-VMC-CPT

CHRISTOPHER FRANKEL,

    Defendant.
_____/

## Frankel's Request for Judicial Notice of FINRA's Expulsion of Alpine

The defendant, Christopher L. Frankel ("**Frankel**"), under Federal Rule of Evidence 201, requests the Court to take judicial notice of the Panel Decision of the Financial Industry Regulatory Authority ("**FINRA**") expelling the plaintiff, Alpine Securities Corporation ("**Alpine**"), from the securities business because Alpine "converted and misused customer funds, engaged in unauthorized trading, charged and paid customers unfair prices in securities transactions, charged customers unreasonable and discriminatory fees, and made an unauthorized capital withdrawal." Decision at p. 1 (attached as **Exhibit "A"**).

Page 1 of 10

On March 24, 2022, FINRA published the Decision on its website, [https://www.finra.org/media-center/newsreleases/2022/finra-extended-hearing-panel-expels-alpine-securities-orders-alpine](https://www.finra.org/media-center/newsreleases/2022/finra-extended-hearing-panel-expels-alpine-securities-orders-alpine). Thus, the Decision is publicly available.

The Court should take judicial notice of the Decision because FINRA's expulsion of Alpine, unless reversed, will bar Alpine from operating as a broker-dealer. FINRA is the self-regulatory organization for broker-dealers registered with the SEC to conduct securities business, and a broker-dealer must be a member of FINRA to operate. *See generally, Saad v. S.E.C.*, 718 F.3d 904, 907 (D.C. Cir. 2013) (discussing regulatory overview under 15 U.S.C § 78*o*-3).

Alpine clears all of the trades for Scottsdale Capital Advisors ("**Scottsdale**"), so FINRA's expulsion of Alpine, unless reversed, will also eliminate Scottsdale's ability to operate. As John Hurry explained in requesting FINRA not to expel Alpine: "Scottsdale's only clearing firm is Alpine Securities, so without the firm, Scottsdale cannot trade." Decision at p. 70 (footnote omitted).

The Decision refutes Alpine's and Scottsdale's claims that portions of Alpine's 2016 audit (Doc 369 – 1 at PageID 6768-6792 / PX1), and Alpine's and Scottsdale's pricing, are trade secret.

The Decision publishes Alpine's profits and losses from March 2017 through December 2018. Alpine's net income from March 2017 through March 2017 was $8,628,596; Alpine's net profit for January 2018 exceeded $1.4 million; Alpine's net profit for February 2018 was $752,000; and Alpine's net profit for March 2018 was $528,000. Decision at p. 1o.

Alpine had a net loss of ($44,707) for the second quarter of 2018 and a net loss of ($71,238) for the third quarter of 2018. Decision at pp. 11-12.

Alpine had net income of $1,460,117 for the fourth quarter of 2018, which Alpine generated by charging its customers fees which the Panel determined to be unreasonable and required Alpine to reverse and repay. Decision at 28-29.

The Decision explained that Alpine lost money in 2018 because Alpine lost its ex-clearing relationships and incurred large expenses. The large expenses included personnel expenses and legal expenses for defending regulatory actions, high rent charged by an unregulated affiliate of Alpine (owned by John Hurry), and a credit line provided by an unregulated affiliate of Alpine (also owned by John Hurry). Alpine had to pay 36% interest during 2018, and 120% interest during 2019, for the credit line provided by John Hurry's unregulated company. Decision at pp. 9 and 11-12.

The Decision published Alpine's business plan, formulated by John Hurry in August 2018, to reverse Alpine's 2018 losses. Among other things, Alpine's business plan included "a new set of [increased] fees."

> Given the firm's dramatic decrease in profitability in 2018, Alpine Securities struggled to continue its practice of distributing profits to its parent on a monthly basis.  Hurry determined that, in order to bring the firm back to profitability, management had to shrink the firm "substantially and quickly," implement a new business model, discontinue the firm's retail business, and establish a new set of fees….

Decision at p. 14 (footnote omitted).

Effective August 31, 2018, Alpine increased its monthly fee for maintaining an account from $100 per year to $60,000 per year ($5,000 per month). Alpine also began charging a "market-making / execution fee" of 2.5% of principal and an "illiquidity and volatility" charge of 1% per day of the of the deposit required by National Securities Clearing Corporation to clear trades. Decision at p. 15.

The Decision explained that Alpine generated substantial revenue by charging its customers the $5,000 monthly account fee.

> In the latter part of 2018, Alpine Securities took more than $1.7 million in cash from its customers by charging the $5,000 monthly account fee….It [Alpine] reported net income of $1,460,117 for the fourth quarter of 2018….Much of this income was driven by the $5,000 monthly account fee….

Decision at 28-29 (footnotes omitted).  As of February 2019, Alpine "had realized income of $1,235,268 from the $5,000 monthly account fee...." Decision at p. 41 (footnote omitted).

The Decision published Alpine's commission charge, 4.5%; Alpine's settlement fee, 1.5%; and Alpine's ticket fee, $95, $20 higher that the ticket fee to which John Hurry testified in his trial testimony.  Decision at pp. 58-59; Doc 318 (Hurry) at 166:4-167:16.

The Decision analyzed Alpine's fees, explaining that Alpine, through its aggregated fees, had charged its customers "a total commission well in excess of 5%, and in many instances well in excess of 10% per trade..."  Decision at pp. 58-59.

The Decision published Alpine's average commission charge of 8.75% per trade on "principal transactions," which included Alpine's "market making" fee, from November 1, 2018, through September 24, 2019, as follows:

> [B]etween November 21, 2018 and September 24, 2019, Alpine Securities charged a market-making fee in 236 principal transactions (involving retail customers, not through correspondent firms) totaling $45,495....The 236 trades totaled a combined principal amount of $1,819,790.  In addition to the market-making fee, the firm also charged total commissions of $79,546, ticket charges totaling $17,935, one execution fee of $261, and total settlement fees of $16,088....Adding the charges together, Alpine Securities charged customers total fees of

> $159,325, which equaled an average commission of 8.75% per trade on principal transactions....

Decision at p. 59 (footnotes omitted).

The Decision published Alpine's average commission charge of 8.82% per trade on "agency trades," which included Alpine's "execution" fee, from March 1, 2019, through September 24, 2019, as follows:

> [B]etween March 1, 2019 and September 24, 2019, Alpine Securities charged an execution fee in 204 agency trades (involving retainer customers, not through correspondent firms) totaling $44,675....The 204 trades equaled a combined principal amount of $1,787.019.  In addition to the execution fee, the firm also charged total commission of $78,180, ticket charges totaling $19,190, and total settlement fees of $15,595....Adding the charges together, Alpine Securities charged customers total fees of $157,640, which equaled an average commission of 8.82% on each agency trade.

Decision at p. 59 (footnotes omitted).

The Decision analyzed the impact of Alpine's market-making and execution fees on "retail" trades, as follows:  "On 440 retail trades in which Alpine Securities charged a market-making fee or an execution fee, the firm's total charges (fees and commissions) were between 5% and 10% for approximately 225 trades and between 10% and 15% for approximately 130 trades....Alpine Securities still has not refunded $83,199 that it collected for market-making / execution fees."  Decision at pp. 59-60.

The Decision published Alpine's collection of $1,527,925 in illiquidity and volatility fees from September 2018 and through July 2019, when FINRA brought the enforcement proceeding. Decision at p. 63.

The Decision published Alpine's "certificate withdrawal fee" of $1,500 which Alpine charged for obtaining a stock certificate from Depository Trust Corporation. Alpine increased the fee from $1,000 to $1,500 as part of Hurry's business plan to make Alpine profitable. Decision at p. 63. Alpine reduced the fee to $500 after FINRA initiated the enforcement proceeding in July 2019. Decision at p. 63.

The Decision found "Alpine Securities' treatment of its customers to be deplorable and well below the standard that customers of [FINRA] member firms are entitled to expect." Decision at p. 77. The Decision concluded that new management would not make any difference as long as John Hurry and his family owned Alpine.

> [T]he record suggests that many key decisions resulting in the misconduct at issue here came from John Hurry, regardless of who served as chief executive officer, and he and his family trusts continue to own the firm....John Hurry's testimony makes it abundantly clear to us that he believes that Alpine Securities acted properly, and he has demonstrated a willful disinterest in the firm's regulatory responsibilities....

Decision at pp. 77-78 (footnotes omitted).

### Memorandum of Law

The Court may take judicial notice of facts that are not subject to reasonable dispute in that they are either "(1) generally known within the trial court's territorial jurisdiction or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b).  The Court may take judicial notice of documents from another proceeding because they are capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned.  *See Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010). The Court may take judicial notice of an order from another tribunal to recognize the judicial act that the order represents or the subject matter of the other litigation.  *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

In this case, the Court may take judicial notice of the FINRA panel decision expelling Alpine to recognize the official act of Alpine's expulsion from the securities business. *See Jones*, 29 F.3d at 1553.  Furthermore, the Court may take judicial notice of the FINRA panel decision to recognize the subject matter of the litigation, including FINRA's public treatment of information which Alpine is claiming as trade secret in its pending injunction motion (Doc 325).  *See id.*

Alpine's expulsion, Scottsdale's inability to trade securities, and FINRA's publication of information claimed as trade secret by Alpine and Scottsdale are additional facts warranting denial of Alpine's and Scottsdale's permanent injunction motion.  Doc 325 (Injunction motion).  Injunctions issue to prevent *future* harm. *See, e.g., OneSource Facility Services, Inc. v. Mosbach*, 205CV525FTM34DNF, 2008 WL 11430039, at *6 (M.D. Fla. Nov. 20, 2008).  In addition to the jury's finding of no harm, *see* Doc 302 (Verdict) at pp. 2-5,  Alpine's expulsion (unless reversed) eliminates any risk of future harm to Alpine or Scottsdale because Alpine may no longer conduct business.

Furthermore, FINRA's public analysis of Alpine's finances and pricing refutes Alpine's claims that portions of its 2016 audit and its pricing (Doc 369-1) are trade secret.

WHEREFORE, Frankel requests that the Court take judicial notice of the FINRA decision attached as Exhibit "A" and grant any further relief deemed proper.

    */s/ David C. Banker*
    David C. Banker (Fla. Bar No. 352977)
    J. Carter Andersen (Fla. Bar No. 0143626)
    Harold D. Holder (Fla. Bar No. 118733)
    BUSH ROSS, PA
    1801 N. Highland Avenue
    Tampa, Florida 33602
    Phone: 813-224-9255
    dbanker@bushross.com;

candersen@bushross.com;
hholder@bushross.com
*Attorneys for Defendant*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)**

I CERTIFY that on April 1, 2022, I conferred by telephone with counsel for the plaintiffs, and the plaintiffs oppose the relief requested herein.

*/s/ David C. Banker*

## **CERTIFICATE OF SERVICE**

I CERTIFY that on April 1, 2022, I caused the foregoing request for judicial notice to be filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

*/s/ David C. Banker*